**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| *v.* | Case No. 1:21-cr-00582 |
| **MICHAEL A. SUSSMANN,** | |
| *Defendant*. | |

**DEFENDANT'S MOTION FOR A BILL OF PARTICULARS
AND MEMORANDUM IN SUPPORT**

Defendant Michael A. Sussmann, by and through undersigned counsel and pursuant to Federal Rule of Criminal Procedure 7(f), respectfully moves this Court to direct the Special Counsel to provide Defendant with a bill of particulars, as set forth below.

## I.   INTRODUCTION

On September 19, 2016, Michael Sussmann, a distinguished national security and cyber security partner at Perkins Coie LLP, met alone with James Baker, then the General Counsel of the Federal Bureau of Investigation ("FBI"), to alert him that a major media outlet was about to publish an article about suspicious internet contacts between the Trump Organization and a certain Russian Bank.  Mr. Sussmann arranged for this meeting on behalf of his client, a cyber expert involved in identifying and analyzing the relevant data underlying the suspicious internet contacts. And Mr. Sussmann did so to make the FBI aware of the matter, which raised national security concerns, and to ensure that the FBI would not be caught off guard when the article was published.

Special Counsel John Durham now alleges, in an Indictment filed on September 16, 2021, that Mr. Sussmann told Mr. Baker that he was not meeting with him on behalf of any client at all. At bottom, the Special Counsel has brought a false statement charge on the basis of a purported

oral statement made over five years ago for which there is only a single witness, Mr. Baker; for which there is no recording; and for which there are no contemporaneous notes by anyone who was actually in the meeting.  Not only that, but the Special Counsel has brought this false statement charge even though Mr. Sussmann has consistently maintained—including in testimony under oath[1]—that he met with Mr. Baker on behalf of a cyber expert client, and even though Mr. Baker has testified under oath in ways that corroborate, rather than undermine, Mr. Sussmann's account.[2] For example, Mr. Baker has testified that he did not remember Mr. Sussmann specifically saying whether he was meeting on behalf of a particular client, and that what he *did* remember is that Mr. Sussmann met with him because cyber experts had come across suspicious information that they wanted brought to the FBI.[3]

The Indictment is seriously vulnerable to challenge as a matter of law, and Mr. Sussmann will make relevant pretrial motions at the appropriate time.  For now, Mr. Sussmann moves for a bill of particulars.  While the Indictment in this matter is 27 pages long, the majority of the allegations are not relevant to the crime the Special Counsel has chosen to charge.  And on that charge, a single alleged false statement, the Indictment plainly fails to provide Mr. Sussmann with

---

[1] *See Interview of Michael Sussmann Before the H. Permanent Select Comm. on Intelligence* at 65, 67 (Dec. 18, 2017), https://intelligence.house.gov/uploadedfiles/ms53.pdf.

[2] *See Interview of James A. Baker Before the H. Comm. on the Judiciary Joint with the Comm. on Government Reform and Oversight* at 111-12 (Oct. 3, 2018) [hereinafter "Baker Testimony (Oct. 3, 2018)"], https://s3.documentcloud.org/documents/5805759/Baker-Transcript.pdf.

[3] *See Interview of James A. Baker Before the H. Comm. on the Judiciary Joint with the Comm. on Government Reform and Oversight* at 122 (Oct. 18, 2018), https://s3.documentcloud.org/documents/5812051/Bakter-Transcript-Part-2.pdf ("In that first interaction, I don't remember him specifically saying that he was acting on behalf of a particular client."); Baker Testimony (Oct. 3, 2018) at 44, 111 ("What I recall is he told me that there were some cyber experts that somehow would come across this information and brought it somehow to his attention, and that they were alarmed at what it showed, and that, therefore, they wanted to bring it to the attention of the FBI.").

the detail and clarity that the law requires and that is essential in enabling Mr. Sussmann to prepare his defense.  As set forth in greater detail below:

*First*, the Indictment fails to allege the precise false statement that Mr. Sussmann purportedly made.  It is simply not enough for the Indictment to make allegations generally about the *substance* of the purported false statement.  Rather, the law requires that the Special Counsel identify the *specific* false statement made, *i.e.*, the precise words that were allegedly used.  It is particularly critical for Mr. Sussmann to receive notice of the precise false statement being charged given that: (a) the statement is unrecorded, five years old, and witnessed by only a single individual who has already disclaimed memory of the statement; and (b) the Indictment itself lacks a single consistent theory about even the substance of the false statement, sometimes suggesting that Mr. Sussmann said he was not *meeting with the FBI* on behalf of any client, while other times claiming that Mr. Sussmann said he was not doing *work on the Russian Bank issue* on behalf of any client. *Compare* Indictment ¶¶ 4, 27(a), 28, 30 *with id.* ¶¶ 4, 46.

*Second*, the Indictment charges only an affirmative misrepresentation in violation of 18 U.S.C. § 1001(a)(2), but the Indictment also makes confusing and stray allegations about omissions that would ordinarily be the basis of a separate violation of 18 U.S.C. § 1001(a)(1).  *See id.* ¶ 30.  This raises serious questions about which specific crime the Special Counsel intended to charge—a misrepresentation in violation of 18 U.S.C. § 1001(a)(2) or an omission in violation of 18 U.S.C. § 1001(a)(1)?  Mr. Sussmann is entitled to understand which particular crime he must defend himself against.  Without prejudice to any other pretrial motions Mr. Sussmann may bring on the matter, Mr. Sussmann is also entitled to additional particulars regarding the alleged omissions in the Indictment, including regarding the legal duty, if any, that required him to disclose the allegedly omitted information the Indictment suggests he should have disclosed.

*Third*, the Indictment fails to provide adequate particulars regarding the ways in which the alleged false statement was material.  The Indictment does make several allegations regarding materiality, and yet these allegations are vague, imprecise, and inconsistent.  Suggesting the FBI might have asked more questions, taken other steps, or allocated resources differently, without specifying how or why it would have done so, leaves Mr. Sussmann having to guess about the meaning of the allegations that the Special Counsel has leveled against him.  Accordingly, without prejudice to any pretrial motions Mr. Sussmann may make regarding materiality, Mr. Sussmann requests that the Court order the Special Counsel to provide more detail about why the purported false statement was material.

*Fourth*, the Indictment alleges that Mr. Sussmann repeated the purported false statement made to Mr. Baker at yet another meeting, to two other government agents representing another government agency five months later.  *Id.* ¶¶ 39, 42.  But again the Indictment fails to provide particulars as to the exact words of the purported statement, the context in which it was made, and why it was material.  *Id.* ¶ 42.  In addition, the Indictment fails to include that there were more than two government agents at this second meeting, and fails to identify *all* of the government individuals in attendance and to whom Mr. Sussmann allegedly repeated the false statement.  *Id.* Having made these allegations, the Special Counsel must provide further precision in order to allow Mr. Sussmann to even begin to decide how to respond appropriately.

*Fifth and finally*, the Indictment conceals the actual identity of certain individuals and entities alleged to have witnessed and otherwise been involved in the conduct giving rise to the false statement charge, including the names of the agents and representatives of the campaign on whose behalf Mr. Sussmann was allegedly working.  *Id.* ¶ 6.  The entire animating theory of the Special Counsel's Indictment is that, in meeting with the FBI and the other government agency,

Mr. Sussmann was secretly working on behalf of Hillary Clinton's 2016 campaign for president (the "Clinton Campaign").  The Special Counsel should be required to identify with which agents and representatives of the Clinton Campaign Mr. Sussmann was allegedly working so that Mr. Sussmann can adequately prepare his defense.

Counsel for Mr. Sussmann previously asked the Special Counsel to provide the detail and particulars identified above, but the Special Counsel declined to do so.  That decision simply cannot be reconciled with the law.  Pursuant to the Constitution, the Federal Rules of Criminal Procedure, and well-settled case law, Mr. Sussmann is entitled to understand the charge against him, to prepare his defense, and to safeguard against unfair surprise at trial.  *See* U.S. Const. amend. VI (the accused has the right "to be informed of the nature and cause of the accusation"); Fed. R. Crim. P. 7(c)(1); *Russell v. United States*, 369 U.S. 749, 761 (1962) (a defendant is entitled to know the charges against him); *see also Stirone v. United States*, 361 U.S. 212, 217 (1960) (a defendant has a "substantial right to be tried only on charges presented in an indictment returned by a grand jury"); *United States v. Butler*, 822 F.2d 1191, 1193 (D.C. Cir. 1987).  The seriously flawed Indictment in this case simply does not meet these standards.  And because the Indictment in this case fails to provide the detail and clarity that the law requires in a false statement case, Mr. Sussmann respectfully requests intervention by this Court.

## II.    ARGUMENT

The Sixth Amendment guarantees defendants in a criminal case the right to be informed of the charges against them.  U.S. Const. amend. VI; *Russell*, 369 U.S. at 761.  Under Federal Rule of Criminal Procedure 7(c)(1), an indictment must be "a plain, concise, and definite written statement of the essential facts constituting the offense charged."  Fed. R. Crim. P. 7(c)(1).  Where the government fails to state the charges against a defendant with this required specificity, Rule

7(f) provides that "[t]he court may direct the government to file a bill of particulars."  Fed. R. Crim. P. 7(f).

The purpose of a bill of particulars is to "give the defendant notice of the essential facts supporting the crimes alleged in the indictment or information, and also to avoid prejudicial surprise to the defense at trial."  1 Fed. Prac. & Proc. Crim. § 130, Westlaw (database updated Apr. 2021).  While a bill of particulars cannot save an invalid indictment,[4] a bill of particulars can help "ensure that the charges brought against a defendant are stated with enough precision to allow the defendant to understand the charges, to prepare a defense, and perhaps also to be protected against retrial on the same charges."  *Butler*, 822 F.2d at 1193; *see also Russell*, 369 U.S. at 770 ("[I]t is a settled rule that a bill of particulars cannot save an invalid indictment."); *United States v. Thomas*, 444 F.2d 919, 922 (D.C. Cir. 1971) (recognizing same).  And providing information in discovery does not permit the government to avoid a bill of particulars.  *See United States v. Anderson*, 441 F. Supp. 2d 15, 19 (D.D.C. 2006); *United States v. Trie*, 21 F. Supp. 2d 7, 21 (D.D.C. 1998).  This Court has discretion to order a bill of particulars, and should grant such a motion "to the extent it believes it is necessary to allow the defendant[] to adequately prepare for and avoid surprise at trial."  *United States v. Bazezew*, 783 F. Supp. 2d 160, 167 (D.D.C. 2011).

A.     **The Special Counsel Must Provide Particulars Regarding the False Statement Mr. Sussmann Allegedly Made to Mr. Baker**

While the Indictment in this false statement case is 27 pages long, most of the detailed allegations concern events and discussions unrelated to the single false statement crime with which Mr. Sussmann is actually charged.  What the Indictment fails to allege—and what Mr. Sussmann is entitled to know as a matter of law—is what specific false statement the Special Counsel believes

---

[4] Mr. Sussmann reserves his right to file any and all pretrial motions, including motions to dismiss the Indictment in whole and/or in part.

Mr. Sussmann made.  The Special Counsel should accordingly be required to identify the exact words of Mr. Sussmann's alleged false statement; the specific context in which the statement was made so that the meaning of the words is clear; and what part of the statement is allegedly false.

"[I]n a false statements case, '[t]he starting point for everything is the statement.'"  *Trie*, 21 F. Supp. 2d at 21 (quoting *United States v. Clifford*, 426 F. Supp. 696, 703 n.4 (E.D.N.Y. 1976)).  In this respect, however, the Special Counsel's Indictment fails at the outset.  The Indictment simply fails to allege, as it must, the exact words of the false statement Mr. Sussmann purportedly made.  *Id.* at 21-22 (requiring the government to "provide information as to exactly what the false statements are, what about them is false, who made them, and how [defendant] caused them to be made"); *see also United States v. Brown*, No. 07-75 (CKK), 2007 WL 2007513, at *16 (D.D.C. July 9, 2007); *United States v. Weinberger*, No. 92-cr-235, 1992 WL 294877 at *4 (D.D.C. Sept. 29, 1992) ("Under § 1001, the indictment has to provide adequate notice of the *wording* of the statements alleged to be false." (emphasis added)).

To be sure, the Indictment does include a number of allegations about the *substance* of the false statement Mr. Sussmann allegedly made, variously alleging that Mr. Sussmann "stated falsely that he was not doing his work on the aforementioned allegations 'for any client,'" that "he was not acting on behalf of any client," "not doing this for any client," and that "he was not acting on behalf of any client in conveying particular allegations concerning a Presidential candidate." Indictment ¶¶ 4, 27(a), 28, 30, 46.  The law is clear, however, that "[i]n a criminal false statement case, it is insufficient for the government to tell defense counsel 'the substance' of what the false statements are or to offer to make a particular witness available for interview prior to trial." *Anderson*, 441 F. Supp. 2d at 19; *see also Weinberger*, 1992 WL 294877, at *4.  In order to adequately prepare for trial, Mr. Sussmann accordingly must understand—and is entitled to know

now—exactly what the Special Counsel alleges he said, not a paraphrased or summary version of it.  *Trie*, 21 F. Supp. 2d at 21-22 (the government must "provide information as to exactly what the false statements are").

It is especially critical that the Special Counsel be required to identify the precise words of the false statement—and the context that makes the meaning of the words clear—because in this case there are no recordings, transcripts, corroborating witnesses, or contemporaneous notes from the meeting between Mr. Sussmann and Mr. Baker.  Not only that, but the purported oral statement occurred over five years ago; the only witness to the statement has already testified under oath that he has no specific memory of Mr. Sussmann mentioning a client; and the Special Counsel seems determined to try to improperly bolster the lone witness (Mr. Baker) by relying on the handwritten notes of another government witness—which, aside from being plainly inadmissible hearsay—are utterly unclear and imprecise.  *See* Indictment ¶ 28.

To make matters worse—and to make particulars even more critical here—the Indictment itself is otherwise unclear and inconsistent about even the "substance" of the false statement Mr. Sussmann purportedly made.  For example, in the "to wit" clause, the Special Counsel alleges that Mr. Sussmann falsely stated that he was not "acting on behalf of any client in *conveying* particular allegations concerning a Presidential candidate."  *See id.* ¶ 46 (emphasis added); *see also id.* ¶ 4 (noting that Mr. Sussmann lied about the "capacity in which he was providing the allegations to the FBI").  But in other paragraphs, the Special Counsel alleges that Mr. Sussmann falsely stated "he was not doing his work on the aforementioned allegations 'for any client,'" or was not "acting on behalf of any client," seemingly broadening the scope of the alleged false statement.  *Id.* ¶ 4 (noting that Mr. Sussmann "stated falsely that he was not doing his work on the aforementioned allegations for any client"); *id.* ¶ 27(a) ("Sussmann stated falsely that he was not acting on behalf

of any client  . . ."); *id.* ¶ 28 ("Michael Sussmann  . . . said not doing this for any client." (alteration omitted)); *id.* ¶ 30 ("Sussmann's statement to the FBI General Counsel that he was not acting on behalf of any client was knowingly and intentionally false.").

What is the crime Mr. Sussmann must prepare to defend against?  Did he falsely state that he was not acting on behalf of a client "in conveying particular allegations" to the FBI?  *Id.* ¶ 46. Or did he falsely state that he was not doing "his work" on behalf of a client, and to what "work" does this refer?  *Id.* ¶ 4.  Or is it something else altogether?  Unfortunately, this Indictment requires Mr. Sussmann to guess, and the law does not sanction such guesswork on the part of a criminal defendant whose liberty is at stake.  *See Trie*, 21 F. Supp. 2d at 21-22; *Anderson*, 441 F. Supp. 2d at 19.  The purpose of a criminal indictment is to "furnish the accused with such a description of the charge against him as will enable him to make his defen[s]e," *and* "to inform the court of the facts alleged, so that it may decide whether they are sufficient in law to support a conviction, if one should be had."  *United States v. Cruikshank*, 92 U.S. 542, 558 (1875).  In order to ensure that Mr. Sussmann has adequate notice of the charge against him, and in order to ensure that the government meets its burden of proof, *see id.*, Mr. Sussmann is entitled to know *exactly* what the Special Counsel thinks he said, and why that statement was false at the time.

Accordingly, the Special Counsel should be required to disclose exactly what Mr. Sussmann's alleged false statement was, the context in which Mr. Sussmann made the false statement, and what part of the statement is allegedly false.  *See Anderson*, 441 F. Supp. 2d at 19. In particular, the Special Counsel must clarify whether Mr. Sussmann made a false statement by stating that he was not acting on behalf of a client in *conveying the allegations to the FBI*, or if he falsely stated that he was not doing any "work" on behalf of a client more generally.  *See* Indictment ¶¶ 4, 27(a), 28, 46.  Consistent with this clarification, the Special Counsel should

identify the context in which the allegedly false statement was made—for example, what question Mr. Sussmann was asked to which he allegedly responded falsely, and specify what the words "his work" refers to in Paragraph 4 of the Indictment, and what is meant by "acting [or acted] on behalf of any client" in Paragraphs 27(a) and 30.  *Id.* ¶¶ 4, 27(a), 30.  And, because the Special Counsel has endeavored in Paragraph 28 to make a government witness's notes relevant, the Special Counsel must also provide the statements Mr. Baker is alleged to have made to the Assistant Director regarding his meeting with Mr. Sussmann, and in particular, to clarify what "this" refers to in the Assistant Director's notes when those notes state "not doing this for any client."  *Id.* ¶ 28.

### B.    The Special Counsel Must Provide Particulars Regarding the Statutory Violation (and, if applicable, any Alleged Omissions)

Not only does the Indictment lack clarity about the specific false statement Mr. Sussmann is alleged to have made, the Indictment lacks clarity about the reason the alleged statement is false. On the one hand, the Indictment charges that Mr. Sussmann made an affirmative misrepresentation in violation of 18 U.S.C. § 1001(a)(2), *see* Indictment ¶ 46; on the other hand, the Indictment includes stray allegations suggesting that Mr. Sussmann made a material omission in violation of 18 U.S.C. § 1001(a)(1), *see id.* ¶ 30.  The Special Counsel should be required to clarify which crime he believes Mr. Sussmann committed and, to the extent the Special Counsel is proceeding on an omissions theory, he should be required to provide additional particulars (without prejudice to any motions Mr. Sussmann may make later).

Of course, the law is clear that the Special Counsel is bound by the Indictment's charging language, including the language of the "to wit" clause.  *See Stirone*, 361 U.S. at 217 (a defendant has a "substantial right to be tried only on charges presented in an indictment returned by a grand jury"); *see also United States v. Willoughby*, 27 F.3d 263, 266 (7th Cir. 1994) ("'To wit' is an expression of limitation which, as our cases indicate, makes what follows an essential part of the

charged offense.  A conviction that rests, no matter how comfortably, on proof of another offense cannot stand."); *United States v. Saffarinia,* 424 F. Supp. 3d 46, 57 (D.D.C. 2020) (the indictment must contain all elements of the offense charged); *see also* Fed. R. Crim. P. 7(c)(1).[5]  And here, the "to wit" clause in the Indictment states only one charge: making an affirmative misrepresentation to the FBI.  *See* Indictment ¶ 46.  Specifically, the "to wit" clause alleges that Mr. Sussmann "stated to the General Counsel of the FBI that he was not acting on behalf of any client in conveying particular allegations concerning a Presidential candidate, when in truth, and in fact, and as the defendant well knew, he was acting on behalf of specific clients," in violation of 18 U.S.C. § 1001(a)(2).  *Id.*  Section 1001(a)(2) prohibits making a "materially false, fictitious, or fraudulent statement or representation" to the government.  18 U.S.C. § 1001(a)(2).

Confusingly, however, the Special Counsel alleges elsewhere in the Indictment that Mr. Sussmann "concealed and failed to disclose" certain information.   Indictment ¶ 30. Specifically, the Indictment alleges that, "as Sussmann concealed and failed to disclose, (i) Sussmann had spent time drafting one of the white papers he provided to the FBI General Counsel and billed that time to the Clinton Campaign, and (ii) the U.S. Investigative Firm—which at the time was also acting as a paid agent of the Clinton Campaign had drafted another of those white papers."  *Id*.  These allegations seem to echo the language of 18 U.S.C. § 1001(a)(1), a separate statutory violation not identified in the "to wit" clause in Paragraph 46.  *See id*. ¶¶ 30, 46.  Section 1001(a)(1) allows for the prosecution of anyone who "falsifies, conceals, or covers up by any trick, scheme, or device a material fact."  18 U.S.C. § 1001(a)(1).  This offense requires the government to show: "(1) the defendant had a duty to disclose material information, (2) the defendant falsified,

---

[5] *See also Wit*, Webster's New International Dictionary (2d ed. 1934) ("—to wit. a. That is to say; namely; scilicet;—used esp. in legal language, to call attention to a more particular specification of what has proceeded.").

concealed, or covered up such a fact by trick, scheme, or fraud, (3) the falsified, concealed, or covered up fact was material, (4) the falsification and/or concealment was knowing and willful, and (5) the material fact was within the jurisdiction of the Executive Branch." *United States v. Craig*, 401 F. Supp. 3d 49, 62-63 (D.D.C. 2019) (citation omitted).

It is axiomatic that Mr. Sussmann has a right to know the offense with which he has been charged, and that charge must be identified in the Indictment. *See Russell*, 369 U.S. at 761; *Stirone*, 361 U.S. at 217. Accordingly, the Special Counsel should be required to clarify what specific statutory provision Mr. Sussmann has allegedly violated: an offense under Section 1001(a)(1), an offense under Section 1001(a)(2), or both. This information is necessary both to enable Mr. Sussmann to prepare for trial and to determine what other motions, if any, he may need to bring. To the extent that the Special Counsel believes the Indictment is alleging a material omission under Section 1001(a)(1), and without prejudicing any other motions Mr. Sussmann may make on this issue, the Special Counsel should be required to clarify: (1) what specific information Mr. Sussmann failed to disclose; (2) to whom he failed to disclose it; (3) what legal duty required Mr. Sussmann to make the required disclosure; and (4) why the omission was material. *See United States v. Safavian*, 528 F.3d 957, 964 (D.C. Cir. 2008).

### C.     The Special Counsel Must Provide Particulars Regarding Materiality

Materiality is a key element of any false statement offense. *See United States v. Gaudin*, 515 U.S. 506, 511 (1995); *United States v. Moore,* 612 F.3d 698, 700-01 (D.C. Cir. 2010). The Indictment must contain all elements of the offense charged, *see Saffarinia*, 424 F. Supp. 3d at 57, and Rule 7(c)(1) mandates that an indictment must provide the "essential facts constituting the offense charged," Fed. R. Crim. P. 7(c)(1). Indeed, "[i]t has been stated time and again as a fundamental rule that in an indictment *all* the essential elements of the offense must be averred with sufficient clearness and particularity to enable the accused to understand the nature of the

charge against him and enable him intelligently to prepare to meet it." *United States v. Am. Med. Ass'n*, 110 F.2d 703, 715 (D.C. Cir. 1940) (emphasis added); *see also United States v. Le*, 310 F. Supp. 2d 763, 772-73 (E.D. Va. 2004) ("[A]n indictment that fails to allege each essential element of the offense is plainly insufficient and must be dismissed.  But an indictment that is not deficient in this regard may nonetheless fail to provide a defendant with sufficient information to prepare a defense, in which event this deficiency may be remedied . . . by requiring the government to file a bill of particulars." (footnote omitted)).

Here, however, while the Indictment has made several allegations regarding materiality, these allegations are vague, imprecise, and inconsistent.  Mr. Sussmann is again left to guess about what the Special Counsel means by the allegations leveled against him.  Accordingly, without prejudice to any pretrial motions Mr. Sussmann may make regarding materiality, Mr. Sussmann requests that the Special Counsel be ordered to provide more detail about why the purported false statement was material.  *See* Fed. R. Crim. P. 7(c)(1).

The Indictment makes allegations about materiality in two separate places.  In Paragraph 5, the Indictment alleges that Mr. Sussmann's false statement was material because, "among other reasons, Sussmann's false statement mislead the FBI General Counsel and other FBI personnel concerning the political nature of his work and deprived the FBI of information that might have permitted it more fully to assess and uncover the origins of the relevant data and technical analysis, including the identities and motivations of Sussmann's clients."  Indictment ¶ 5.  Then in Paragraph 32, the Indictment makes an entirely different set of vague allegations, suggesting that Mr. Sussmann's false statement was material because "among other reasons, it was relevant to the FBI whether the conveyor of these allegations . . . was providing them as an ordinary citizen merely passing along information, or whether he was instead doing so as a paid advocate for clients

with a political or business agenda." *Id.* ¶ 32.  The Indictment alleges further that had Mr.

Sussmann disclosed that he was representing specific clients, "it *might have* prompted the FBI

General Counsel to ask . . . for the identity of such clients, which in turn, *might have* prompted

further questions," and that the FBI "*might have* taken additional or more incremental steps before

opening and/or closing an investigation," and "*might have* allocated its resources differently, or

more efficiently, and uncovered more complete information about the reliability and provenance

of the purported data at issue." *Id.* (emphases added).

*First*, the Special Counsel should be required to identify the "other reasons"

Mr. Sussmann's false statement was material. *Id.* ¶¶ 5, 32.  It is unfair to raise the specter of an

additional rationale without actually substantiating the claim.  *See United States v. Hubbard*,

474 F. Supp. 64, 80 (D.D.C. 1979) (ordering bill of particulars to define "unnecessarily vague"

phrases used in the indictment).

*Second*, to the extent the Indictment alleges that Mr. Sussmann's purported false statement

was material in that it misled the FBI General Counsel and other FBI personnel concerning the

"political nature of his work," *see* Indictment ¶ 5, the Special Counsel should be required to provide

detail about what this actually means.  The Indictment, after all, makes clear that both Mr. Baker

and the Assistant Director were aware that Mr. Sussmann represented the Democratic National

Committee and other high-profile political clients.  *See id.* ¶ 28.  What then was the "political

nature of his work" that was unknown to the FBI?  The Special Counsel should be required to

explain what "his work" refers to and what about that work was unknown to the FBI.  This is

especially important to understand given that Mr. Baker has testified, under oath, that the FBI investigates evidence of a crime regardless of the political affiliation of the source of the evidence.[6]

*Third*, to the extent the Indictment alleges that Mr. Sussmann's purported false statement was material because it deprived the FBI of information that might have permitted it more fully to assess and uncover the origins of the relevant data and technical analysis, *id.* ¶ 5, the Special Counsel should be required to provide detail about why this was the case. As Mr. Baker has testified, he was well aware that the information Mr. Sussmann provided came from "cyber experts." *See supra* note 3. And indeed Mr. Sussmann is not charged with making a false statement about the origins of the information. The Special Counsel should be required to explain why, even if Mr. Sussmann disclaimed meeting with the FBI on behalf of a client—a charge Mr. Sussmann categorically denies—such a statement actually prevented Mr. Baker or anyone else from further "assess[ing] and uncover[ing] the origins of the relevant data." Indictment ¶ 5.

*Fourth*, to the extent the Indictment alleges that it was materially "relevant" whether Mr. Sussmann was passing along information as a paid advocate, *see id.* ¶ 32, the Special Counsel should be required to identify the relevance of this information, particularly given that Mr. Sussmann provided information to the FBI that raised serious national security concerns and given that the FBI otherwise enables and encourages civilians to provide tips about crimes,

---

[6] Mr. Baker was asked whether "the mere notion that someone who is a Democrat or Republican . . . comes to you with information, should that information somehow be discounted or considered less credible because of, you know, partisan affiliation?" Baker Testimony (Oct. 3, 2018) at 54. Mr. Baker responded: "Well, the FBI is responsible for protecting everybody in this country. Period, full stop. And we do that, without regard to who they are or what their political background is or anything else. If they believe they have evidence of a crime or believe they have been a victim of a crime, we will do what we can within our lawful authorities to protect them." *Id.*

including anonymously, without interrogating the tipster about his or her motives or affiliations (let alone charging them for allegedly failing to disclose such motives or affiliations).

*Fifth*, to the extent the Indictment alleges that the FBI General Counsel and FBI *might have* done various things like ask "further questions," "taken additional or more incremental steps," "allocated its resources differently or more efficiently," or "uncovered more complete information" but for Mr. Sussmann's purported false statement, the Special Counsel should be required to particularize those potential questions, additional steps, resource allocations, or more complete information. *Id.* This is particularly necessary because Tech Executive-1—far from being a stranger to the FBI—was someone with whom the FBI had a long-standing professional relationship of trust and who was one of the world's leading experts regarding the kinds of information that Mr. Sussmann provided to the FBI. The notion that the FBI would have been *more skeptical* of the information had it known of Tech Executive-1's involvement is, in a word, preposterous.

Only through disclosure of this information to Mr. Sussmann can this Court "ensure that the charges brought against [Mr. Sussmann] are stated with enough precision to allow" Mr. Sussmann to defend himself. *Butler*, 822 F.2d at 1193; Fed. R. Crim. P. 7(c)(1).

D. **The Special Counsel Must Provide Particulars Regarding the Identities of *All* Agency-2 Personnel Who Heard the Statement at the Agency-2 Meeting, and Regarding the Specific Statements Allegedly Made to Agency-2 Personnel**

In addition to the alleged false statement made to Mr. Baker, the Indictment also alleges that Mr. Sussmann repeated this false statement to two anonymous employees from another government agency ("Agency-2") after the 2016 election, in February 2017. *See* Indictment ¶¶ 39, 42(a). Putting aside the impropriety of including such Fed. R. Evid. 404(b) evidence in the Indictment, and putting aside the incoherence of suggesting Mr. Sussmann lied to the FBI on behalf of the Clinton Campaign and then repeated the same lie to Agency-2 at a time when the Clinton

Campaign no longer existed, Mr. Sussmann is entitled to additional particulars regarding this purported false statement.

Without prejudicing any other motions Mr. Sussmann may make on this issue, the Special Counsel should first be required to clarify the false statement alleged to have been made to the two anonymous Agency-2 employees, and any other individuals present at the meeting, in February 2017. The Indictment states only that "Sussmann stated falsely—as he previously had stated to the FBI General Counsel—that he was 'not representing a particular client.'" Indictment ¶ 42(a). As with the charged false statement, the Special Counsel fails to allege the exact words of the statement that was repeated to the two anonymous Agency-2 employees referenced in the Indictment, the context in which it was made, what part of the statement was false, and why it was material. Moreover, the inconsistency in the Special Counsel's allegations as to what false statement Mr. Sussmann made to Mr. Baker, discussed *supra* at 8-9, make it impossible for Mr. Sussmann to know what exactly he is alleged to have repeated to the anonymous Agency-2 employees (and other individuals in attendance) and why it was false. Withholding the particulars of the alleged statement impermissibly hinders Mr. Sussmann's ability to make relevant pretrial motions regarding, or respond to any arguments relating to, this alleged statement. Accordingly, the Special Counsel should be required to provide: the precise statement made to Employee-1, Employee-2, and any other individuals in attendance; what part of the statement was false; the context in which the statement was made; and why it was material.

The Special Counsel should also be required to identify by name Employee-1 and Employee-2 to whom Mr. Sussmann allegedly made this statement, and the other government representatives present at the meeting who also heard the alleged false statement. Mr. Sussmann has a right to know the identity of all of the individuals to whom his allegedly false statement was

repeated, because withholding this information hinders his ability to prepare his defense. *See Butler*, 822 F.2d at 1193. That means that the Special Counsel must identify Employee-1, Employee-2, and the other individuals in the meeting at the time the alleged false statement was made, which is important here given that once again the Special Counsel relies on an after-the-fact document, *see* Indictment ¶ 46, prepared by—as we understand it—only two of the multiple Agency-2 personnel present at the meeting, in support of an oral statement made almost five years ago.

### E. The Special Counsel Must Provide Identities of the "Representatives and Agents of the Clinton Campaign"

Finally, Mr. Sussmann seeks the identities of certain representatives and agents of the Clinton Campaign mentioned in the Indictment that the Special Counsel has refused to provide to date.[7] The Indictment alleges that Mr. Sussmann, Tech Executive-1, and Law Firm-1 "coordinated, and were continuing to coordinate, with representatives and agents of the Clinton Campaign with regard to the data and written materials that Sussmann gave to the FBI and the media." Indictment ¶ 6. The Indictment does not identify by name the alleged "representatives and agents of the Clinton Campaign." *Id.*

The animating theory of the Special Counsel's Indictment is that Mr. Sussmann was secretly working on behalf of the Clinton Campaign, and he intentionally and falsely stated that he was not acting on behalf of any client in order to conceal his ties to the campaign. The Special Counsel should not be permitted, on the one hand, to allege that Mr. Sussmann was working on behalf of the Clinton Campaign, but on the other hand, decline to identify the specific individuals with whom he was purportedly working. Among other things, Mr. Sussmann may wish to call

---

[7] The Special Counsel has identified virtually all of the other anonymous individuals and entities referred to in the Indictment (except, as noted above, the Agency-2 employees).

such individuals as witnesses in his defense at trial, but, unless he knows of their identities, he will have no ability to do so.  At base, an indictment must provide a defendant with the "essential facts constituting the offense charged."  Fed R. Crim. P. 7(c)(1).  And no facts could be more essential than the names of the witnesses involved.

Having made these allegations, the Special Counsel must illuminate them—by identifying the relevant individuals referenced—to allow Mr. Sussmann to decide how to respond appropriately.  *See Butler*, 822 F.2d at 1193 (the indictment must enable the defendant to understand the charges against him and prepare a defense); *cf. Hubbard*, 474 F. Supp. at 80 (ordering bill of particulars to define "unnecessarily vague" phrases used in the indictment). Therefore, Mr. Sussmann respectfully asks this Court to order the Special Counsel to provide a bill of particulars identifying, by name, the "representatives and agents of the Clinton Campaign" with respect to Paragraph 6.

## III.   CONCLUSION

For the foregoing reasons, this Motion for a Bill of Particulars should be granted, and the Court should order the Special Counsel to promptly:

    **A.**    Provide particulars regarding the specific false statement the Special Counsel alleges Mr. Sussmann made to Mr. Baker, namely:

        1.    The exact words of Mr. Sussmann's alleged false statement;

        2.    The specific context in which the statement was made so that the meaning of the words is clear;

        3.    What part of the statement is allegedly false, *i.e.*, *w*hether the statement was false because Mr. Sussmann allegedly stated he was not "acting on behalf of any client in conveying particular allegations concerning a Presidential Candidate" as alleged in Paragraph 46, or if he falsely stated that he was not doing any "work" on behalf of a client more generally, as alleged in Paragraphs 4, 27(a), 28;

        4.    What is meant by "his work," as referenced in Paragraph 4;

5.       What is meant by "acting [or acted] on behalf of any client" as alleged in Paragraphs 27(a) and 30; and

6.       What "this" refers to in the Assistant Director's notes referenced in Paragraph 28.

**B.**     Provide particulars regarding the statutory violation charged and, if applicable any alleged omissions, namely:

1.       Which crime the Special Counsel believes Mr. Sussmann has committed; and

2.       To the extent the Special Counsel alleges that Mr. Sussmann made a material omission in violation of 18 U.S.C. § 1001(a)(1), as suggested by Paragraph 30 of the Indictment –

      a.     the specific information Mr. Sussmann allegedly failed to disclose;

      b.    to whom he allegedly failed to make that disclosure;

      c.     what legal duty required Mr. Sussmann to disclose such information; and

      d.    why the allegedly omitted information was material.

**C.**     Provide particulars regarding how the alleged false statement to Mr. Baker was material, specifically:

1.       The "other reasons" Mr. Sussmann's false statement was material, as alleged in Paragraphs 5 and 32;

2.       What "his work" refers to as referenced in Paragraph 5, what about such work was unknown to the FBI, and how the "political nature of his work" was material to the FBI's investigation;

3.       How Mr. Sussmann's alleged false statement was material to the FBI's ability to "assess and uncover the origins of the relevant data and technical analysis," as alleged in Paragraph 5, when Mr. Sussmann disclosed the origins of the data and technical analysis;

4.       How Mr. Sussmann's role as a paid advocate was materially "relevant" to the FBI's investigation, as alleged in Paragraph 32, given that the information itself raised serious national security concerns and the FBI otherwise enables civilians to provide anonymous tips; and

5.       What potential questions, additional steps, resource allocations, or more complete information the FBI would have gathered absent Mr. Sussmann's false statement, as alleged in Paragraph 32.

**D.**     Provide particulars regarding the alleged false statement Mr. Sussmann made to *all* Agency-2 employees and representatives, as alleged in Paragraphs 39 and 42, namely:

1.     The exact words of Mr. Sussmann's alleged false statement;

2.     The specific context in which the statement was made so that the meaning of the words is clear;

3.     What portion of the statement is allegedly false;

4.     The identities of all individuals to whom the statement was made, including:

   a.     both Employee-1 and Employee-2 as referenced in Paragraph 42; and

   b.     anyone else present who also heard the false statement.

**E.**     Provide particulars regarding the identities of the "representatives and agents of the Clinton Campaign" referenced in Paragraph 6.

Dated: October 6, 2021

Respectfully submitted,

*/s/ Sean M. Berkowitz*
Sean M. Berkowitz (*pro hac vice*)
LATHAM & WATKINS LLP
330 North Wabash Avenue
Suite 2800
Chicago, IL 60611
Tel:  (312) 876-7700
Fax: (312) 993-9767
Email: sean.berkowitz@lw.com

Michael Bosworth (*pro hac vice*)
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
Tel:  (212) 906-1200
Fax: (212) 751-4864
Email: michael.bosworth@lw.com

Natalie Hardwick Rao (D.C. Bar # 1009542)
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004

Tel:  (202) 637-2200
Fax: (202) 637-2201
Email: natalie.rao@lw.com