## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Criminal Case No. 21-582 (CRC)** |
| | : | |
| **MICHAEL A. SUSSMANN,** | : | |
| | : | |
| **Defendant.** | : | |

## GOVERNMENT'S OPPOSITION TO DEFENDANT'S
## MOTION FOR A BILL OF PARTICULARS

The United States of America, by and through its attorney, Special Counsel John H. Durham, respectfully submits this opposition to the defendant's Motion for a Bill of Particulars (Document 17, hereinafter "Mot."). For reasons stated below, the government submits that the motion should be denied. The grand jury's detailed, 27-page speaking indictment more than adequately informs the defendant of the charges against him and provides him with sufficient information and facts to prepare his defense at trial. Moreover, all or nearly all of the information that the defendant seeks either has already been, or soon will be, made available to him through the government's discovery. Accordingly, the defendant's motion seeking an order for a bill of particulars fails as a matter of well-settled law.

## FACTUAL BACKGROUND

The defendant is charged in a one-count indictment with making a materially false statement to an FBI official, in violation of Title 18, United States Code, Section 1001.

### A. The Defendant's False Statement

As set forth in the government's detailed Indictment, on Sept. 19, 2016 – less than two

months before the 2016 U.S. Presidential election – the defendant, a lawyer at a large international law firm ("Law Firm-1"), met with the FBI General Counsel at FBI Headquarters in Washington, D.C.  The defendant had requested the meeting to provide the General Counsel with purported data and "white papers" that allegedly demonstrated a covert communications channel between the Trump Organization and a Russia-based bank ("Russian Bank-1").  In the course of the meeting, the defendant lied, falsely stating to the General Counsel that he was not providing the allegations to the FBI on behalf of any client. This false representation led the General Counsel to understand that the defendant was providing the information as a good citizen, rather than a paid advocate or political operative.  In fact, the defendant had assembled and conveyed the allegations to the FBI on behalf of at least two specific clients, including a technology executive ("Tech Executive-1") at a U.S.-based Internet company ("Internet Company-1") and the Hillary Rodham Clinton Presidential Campaign (the "Clinton Campaign").

Soon after his meeting with the defendant, the FBI General Counsel spoke with the FBI's Assistant Director of the Counterintelligence Division (the "FBI Assistant Director").  During their conversation, the General Counsel conveyed the substance of his meeting with the defendant.  The FBI Assistant Director took contemporaneous notes of this conversation, which reflect that the defendant told the FBI General Counsel that he was "not doing this for any client."

The defendant's billing records – many of which are cited and quoted throughout the Indictment – reflect that the defendant repeatedly billed the Clinton Campaign for his work on the Russian Bank-1 allegations, including before, during, and after his meeting with the FBI General Counsel.

The Indictment also describes how, beginning in approximately July 2016, the defendant

had worked with Tech Executive-1, other cyber researchers, and a U.S.-based investigative firm to assemble the purported data and white papers that the defendant ultimately provided to the FBI and the media.  In connection with these efforts, Tech Executive-1 exploited his access to non-public data at multiple internet companies and enlisted the assistance of researchers at a U.S.-based university who were receiving and analyzing large amounts of Internet data in connection with a pending federal government cybersecurity research contract.  Tech Executive-1 – who would later claim to have been offered the top government cybersecurity job in the event Hillary Clinton were to win the election– tasked these researchers to mine Internet data to establish "an inference" and "narrative" tying then-candidate Trump to Russia.  In directing these researchers to exploit their access in this manner, Tech Executive-1 indicated that he was seeking to please certain "VIPs," referring to individuals at the defendant's law firm and the Clinton Campaign.

In the course of these efforts, Tech Executive-1 also exploited his own company's access to the sensitive internet data of a high-ranking executive branch office of the U.S. government, both before and after the Presidential election.

The Indictment further details that in February 2017, the defendant provided an updated set of allegations – including the Russian Bank-1 data and other information – to a second agency of the U.S. government ("Agency-2").  In a meeting with multiple Agency-2 employees on February 9, 2017, the defendant made a substantially similar false statement as he had made to the FBI General Counsel.  In particular, the defendant asserted that he was not representing a particular client.  In truth and in fact, the defendant was representing Tech Executive-1 during the February 9 meeting with Agency-2 – a fact he subsequently acknowledged under oath in his December 2017 testimony before Congress (although he did not identify the client by name).

3

As alleged in the Indictment, the defendant's false statement to the FBI misled government personnel and deprived them of information that might have permitted the government more fully to assess and uncover the origins of the relevant data and analysis, including the identities and motivations of the defendant's clients.

**B.  The Government's Discovery**

On October 7, the government made its first production of discovery to the defense.  The production included more than 6,000 documents, comprising approximately 81,000 pages.  In particular, the production included (i) a copy of the aforementioned notes taken by the FBI Assistant Director, including additional notes not quoted in the Indictment, and (ii) documents received in response to grand jury subpoenas issued to fifteen separate individuals, entities, and organizations – including among others, political organizations, a university, university researchers, an investigative firm, and numerous companies.

On or about September 23, September 28, October 1, October 7, October 13, October 14, and October 20, 2016, the government also conducted telephone calls with the defense to discuss discovery issues, answer counsel's questions, address technical issues, and preview its forthcoming discovery productions.

On October 20, 2021, the government accommodated a recent request by the defense to review in-person the original notes cited in the Indictment and provided counsel access to those notes in government office space.  Upon the approval of defense counsel's security clearances, the government will also accommodate, to the extent possible, a related request by the defense to review additional and currently-classified notes contained in the same notebook.

The government is working expeditiously to declassify large volumes of materials to provide to the defense.  Within the next approximately two weeks, the government expects to make a further production of materials that is currently being declassified, which will include, among other things:

(i)     more than 30 declassified reports of interviews conducted in the course of this aspect of the Special Counsel's investigation, including interviews of the FBI General Counsel and the FBI Assistant Director referenced above;

(ii)    emails and other documents shown to witnesses during the above-referenced interviews;

(iii)   investigators' notes taken during the above-referenced interviews;

(iv)    transcripts of grand jury testimony for multiple witnesses;

(v)     the majority of the FBI's electronic "case file" pertaining to its investigation of the Russian Bank-1 allegations, with relatively minor redactions to protect especially sensitive classified information which may be the subject of a motion pursuant to the Classified Information Procedures Act; and

(vi)    emails, memoranda, reports, and other records obtained from Agency-2, including write-ups of the defendant's February 9, 2016 meeting with Agency-2 personnel and his prior meeting with a former Agency-2 employee.

In providing the above materials, the government is substantially exceeding its obligations under the Jencks Act and Rule 16, and is seeking to take an expansive approach to its *Brady* obligations. The government is also engaged in ongoing conversations with the defense regarding outstanding discovery, further defense requests, and declassification issues.  After producing the above-

described materials, the government expects to produce additional materials in subsequent productions, which will include additional interview memoranda, emails, and other records. The government will continue to meet and confer regularly with the defense on discovery matters.

## ARGUMENT

The defendant's core contention – that a bill of particulars is appropriate because the Indictment lacks sufficient "detail and clarity" for the defendant to prepare his defense – is without merit. The defendant asserts that particulars are warranted because the Indictment (1) does not allege the precise false statement that the defendant made; (2) makes "confusing and stray" allegations which were not charged; (3) fails to provide particulars regarding how the false statement is material; (4) does not allege the precise false statement made to other government agents; and (5) does not identify by name the representatives and agents of the Clinton Campaign. *See* Mot. at 2-5. But what the defendant's Motion really seeks is "detail and clarity" concerning how the government intends to argue its proof to the jury – information to which he is not entitled at this stage of the proceedings. Accordingly, the defendant's Motion can most accurately be described as an attempt to gain insight into the government's trial strategy. The outcome sought by the defendant's Motion is inconsistent with well-settled law, and ignores the extensive disclosures already contained in the Indictment and those made (and soon to be made) in discovery. For these reasons, the Motion should be denied.

### A. Applicable Law

A request for a bill of particulars under Rule 7(f) of the Federal Rules of Criminal Procedure is appropriate only where necessary to inform a defendant of the charges against him with sufficient precision to enable him to prepare his defense, to avoid unfair surprise and preclude double

jeopardy. *See Wong Tai v. United States*, 273 U.S. 77, 82 (1927). Indeed, "an indictment need only include 'a plain, concise, and definitive written statement of the essential facts constituting the offense charged[.]'" *United States v. Concord Mgmt. & Consulting LLC*, 385 F. Supp. 3d 69, 73 (D.D.C. 2019) (*quoting* Fed. R. Crim P. 7(f)). The question, therefore, is not whether the information would be helpful to the defendant, but rather, whether the information is necessary. *See United States v. Sanford Ltd.*, 841 F. Supp. 2d 309, 316 (D.D.C. 2012) (*quoting* Charles Alan Wright & Andrew Leipold, *Federal Practice and Procedure*: Criminal § 130 (4th ed. 2008)). If a defendant seeks information to which he is entitled at an early stage of the case, and that information is provided in the indictment or through some other means, such as discovery, a bill of particulars is not warranted. *United States v. Butler*, 822 F.2d 1191, 1193 (D.C. Cir. 1987).

"A bill of particulars properly includes clarification of the indictment, not the government's proof of its case." *United States v. Lorenzana-Cordon*, 130 F. Supp. 3d 172, 174 (D.D.C. 2015). (internal quotation marks and citation omitted). In deciding whether to order a bill of particulars, "the court must balance the defendant's need to know evidentiary-type facts in order to adequately prepare a defense with the government's need to avoid prematurely disclosing evidentiary matters to the extent that it will be unduly confined in presenting its evidence at trial." *Sanford Ltd.*, 841 F. Supp. at 316 (internal quotation marks and citation omitted). But "if the indictment is sufficiently specific, or if the requested information is available in some other form, then a bill of particulars is not required." *Lorenzana-Cordon*, 130 F. Supp. 3d at 174. (*quoting Butler*, 822 F.2d at 1193). Importantly, "a bill of particulars is not a discovery tool or a device for allowing the defense to preview the government's evidence." *United States v. Brodie*, 326 F. Supp. 2d 83, 91 (D.D.C. 2004). Nor is a bill of particulars appropriate if "by reasonable investigation in the light of

7

information contained in the indictment, or otherwise furnished by the prosecution, the defendant could avoid prejudicial [ ] surprise[ ]." *Concord Mgmt.*, 385 F. Supp. at 74 (*quoting United States v. U.S. Gypsum Co.*, 37 F. Supp. 398, 404 (D.D.C. 1941) (internal quotation marks omitted)).

Again, courts, in deciding whether to order a bill of particulars, "must balance the defendant's need to know evidentiary-type facts in order to adequately prepare a defense with the government's need to avoid prematurely disclosing evidentiary matters to the extent that it will be unduly confined in presenting its evidence a trial." *Sanford Ltd.*, 841 F. Supp. 2d at 316. To that end, "[t]he determination of whether a bill of particulars is necessary 'rests with the sound discretion of the trial court' and will not be disturbed absent an abuse of discretion." *United States v. Mejia*, 448 F.3d 436, 445 (D.C. Cir. 2006) (*quoting Butler*, 822 F.2d at 1194).

### B.  The Defendant's Motion

#### 1.  The Defendant Already Has Sufficient Notice of the Pending Charge

The defendant first argues that a bill of particulars is necessary because the Indictment does not identify the "exact words" of the defendant's false statement nor does it provide the "specific context" by which the false statement was made. Mot. at 7. The defendant advances this argument despite a 27-page speaking Indictment which more than adequately informs the defendant of the charges against him. The Indictment outlines not only the defendant's lie to the FBI General Counsel on September 19, 2016, in which he falsely stated that he was not providing the allegations to the FBI on behalf of any client, but also details the actions the defendant took with others to assemble the purported data and white papers. Because the Motion seeks improperly to preview and limit the government's trial evidence and theory of guilt, the defendant is not entitled to a bill of particulars, and his Motion should be denied.

As an initial matter, the Indictment sets forth in great particularity both the elements of the crime charged and the facts that the government intends to prove at trial.  The Indictment's specificity, coupled with the substantial discovery that has been (and will be) provided, is more than sufficient to place the defendant in a position to understand the charge against him and to prepare a defense.  *See United States v. Cisneros*, 26 F. Supp. 2d 24, 55-56 (D.D.C. 1998) (denying bill of particulars seeking identification of alleged false statements because "[r]ead as a whole, the Indictment clearly provides enough information to allow [the defendant] to understand the charges against him and prepare to defend himself against those charges").

Indeed, one need only look to Paragraph 46 of the Indictment which, standing alone, provides sufficient information to apprise the defendant of the nature of the charge, prepare his defense, and avoid unfair surprise:

> On or about September 19, 2016, within the District of Columbia, MICHAEL A. SUSSMANN, the defendant, did willfully and knowingly make a materially false, fictitious, and fraudulent statement or representation in a matter before the jurisdiction of the executive branch of the Government of the United States, to wit: **on or about September 19, 2016, the defendant stated to the General Counsel of the FBI that he was not acting on behalf of any client in conveying particular allegations concerning a Presidential candidate, when in truth, and in fact, and as the defendant well knew, he was acting on behalf of specific clients, namely, Tech Executive-1 and the Clinton Campaign**.

Ind. ¶ 46 (emphasis added).  "All that is required by [Rule 7 of the Federal Rules of Criminal Procedure] is that the indictment state the elements of the offense and fairly inform the defendant of the charges against him."  *United States v. Weinberger*, 92-CR-235, 1992 WL 294877 at *4 (D.D.C. Sept. 29, 1992).  Such is the case here.  The Indictment notifies the defendant with sufficient specificity of all of the elements essential to constitute the offense for which he is charged.

The law enunciates no further requirement.  The defendant's invitation to the Court to require more should be denied.

To be sure, the defendant's specific contention that the government is required to provide the "exact words" of the defendant's false statement is not supported by the law.  Indeed, the defendant cites no cases that support this proposition.  Instead, the defendant's Motion argues, in essence, that the Indictment is insufficient because there is no recording or verbatim transcript of the defendant's false statement on September 19, 2016 to the FBI General Counsel.  But multiple courts in this Circuit and elsewhere have rejected this argument.  *See United States v. Poindexter*, 951 F.2d 369, 408 (D.C. Cir. 1991) (denying motion to dismiss a § 1001 charge where no verbatim transcript existed because the lack of an exact statement is an "issue[] of the sufficiency of the evidence in a particular case, not [a] reason[] for carving a categorical exception from the statute")*; see also Cisneros*, 26 F. Supp. 2d at *43 (holding that the lack of a verbatim transcript of the defendant's actual statements "is an issue of the sufficiency and weight of the evidence, which are questions for the jury.")

Even still, the few cases that the defendant relies on to support his argument are easily distinguishable.  For instance, in *United States v. Trie*, 21 F. Supp. 2d 7 (D.D.C. 1998), the defendant was charged with, among other things, aiding and abetting false statements to the Federal Election Commission ("FEC") by causing the Democratic National Committee ("DNC") to submit false reports to the FEC.  The indictment provided no specificity as to what statements in the relevant reports were false.  *Id.* at 13.  There, the court held that the defendant was entitled to a bill of particulars clarifying the indictment, including information as "to exactly what the false

statements are, what about them is false, who made them, and how [the defendant cause them to be made]". *Id.* at 22-23.

The Indictment here bears little, if any, resemblance to the one at issue in *Trie*. Indeed, other courts have noted that *Trie* is an outlier and a "unique case because of the convoluted theory on which the defendant was indicted and the way in which the indictment was drafted." *United States v. Anderson*, 441 F. Supp. 2d 15, 19 (D.D.C. 2006); *see also Trie*, 21 F. Supp. 2d at 21 ("portions of the indictment are difficult to follow" and the false statement counts are "particularly enigmatic.") Far from making the vague and generalized allegations of the sort at issue in *Trie*, the Indictment here alleges with specificity what the false statement is (that the defendant was not acting on behalf of any client); what about that statement is false (that the defendant had assembled and conveyed the allegations to the FBI on behalf of at least two clients, Tech Executive-1 and the Clinton Campaign); who made them (the defendant); and how the defendant caused the statement to be made (through statements he made orally in a meeting with the FBI General Counsel at FBI Headquarters in Washington, D.C on September 19, 2016). *See, e.g.,* Ind. ¶¶ 4, 26-29. Accordingly, the court should deny the defendant's Motion because the Indictment provides more than sufficient information to the defendant of the charges against him and allows him to prepare his defense.

### 2. The Indictment Properly Alleges the Statutory Violation and No Particulars are Necessary

The defendant next contends that the Indictment "lacks clarity about the reason the alleged statement is false." Mot. at 10. Specifically, the defendant asserts that the Indictment contains "stray allegations" which suggest that the government is also alleging that the defendant made a material omission, in violation of 18 U.S.C. § 1001(a)(1). *Id.* As noted above in greater detail, the Indictment properly contains all elements of the offense charged here, an affirmative

misrepresentation, in violation of 18 U.S.C. § 1001(a)(2), and the Indictment requires no additional particulars.   Of course, the reference in Paragraph 30 of the Indictment that the defendant "concealed and failed to disclose" his work for Tech Executive-1 and the Clinton Campaign is directly relevant to, and a natural consequence of, the defendant's affirmative false statement to the FBI General Counsel that he was not acting on behalf of a client.   This affirmative misstatement that he was not acting on behalf of any client is exactly what gives rise to the concealment of his work on behalf of Tech Executive-1 and the Clinton Campaign.   That the government did not separately charge an omission or concealment theory of guilt in a separate count, or allege a violation of an additional statutory provision, is of no consequence to the charge at hand.   Thus, the Indictment properly alleges the offense charged and no greater particularity is required.

### 3.   No Particulars Regarding Materiality are Required

The defendant also seeks a bill of particulars to provide greater detail about why the defendant's lie to the FBI General Counsel that he was not providing the allegations to the FBI on behalf of any client is material.   Mot. at 12-16.   More specifically, the defendant seeks particulars regarding, among other things, a request to "identify the 'other reasons' [the defendant's] false statement was material," why "political nature" of the defendant's work here would be material and why "passing along information as a paid advocate" is material to the FBI.   Simply put, this request seeks to improperly preview and limit the government's trial evidence and should be denied. Because the defendant is not entitled to the government's trial strategy and has been afforded adequate details about the charges in the Indictment, the defendant's request is improper.  *United States v. Han*, 280 F. Supp. 3d 144, 149 (D.D.C. 2017) ("A bill of particulars is meant to allow [the defendant] to properly prepare for trial, not provide a method to force the prosecution to connect

every dot in its case").  Indeed, the defendant cites to no authority to support his request, and the arguments advanced in his Motion are more appropriately made in a closing argument before the jury once the government has presented its case, rather than at the commencement of proceedings when discovery is not yet complete.  *See, e.g.,* Mot. at 16 (arguing that "[t]he notion that the FBI would have been more skeptical of the information had it known of Tech Executive-1's involvement [in the allegations] is, in a word, preposterous.")[1]

### 4.  The Allegations of False and Misleading Statements to Agency -2 Personnel Do Not Warrant Further Particulars

The defendant further contends that it is entitled to a bill of particulars regarding the defendant's false statement to repeated false statement to employees of Agency-2, which was a substantially similar false statement as he had made to the FBI General Counsel.  As with the Indictment's allegations concerning the defendant's statements to the FBI, the Motion likewise asserts that the Indictment does not identify the "exact words" of the defendant's false statement to Agency -2 employees or provide the "specific context" in which the false statement was made.  Mot. at 16-17.  The defendant also requests that the government "identify by name Employee-1 and Employee-2" of Agency-2.  Mot. at 17.  The defendant is entitled to none of this information.

---

[1] The defendant's Motion also appears to miss the mark regarding the relevant test of materiality. "For the purposes of § 1001, the relevant question is not whether, in fact, the relevant body relied upon the false information in making its determination.  The test is merely whether the information had the capacity to influence the relevant decisionmaker.  Courts have repeatedly held that proof of 'actual reliance' is not necessary."  *Cisneros*, 26 F. Supp. 2d at 40.  And the Supreme Court has held that materiality is an element of § 1001 which must be determined by the jury.  *See United States v. Gaudin*, 515 U.S. 506 (1995).  At its core, the defendant's request that the government provide additional particulars regarding materiality is not an attempt to seek clarity, but rather an attempt at this early stage to obtain a summary of the government's specific proof at trial and subsequently cabin its evidence at trial.

To begin with, the Indictment does not charge the defendant's statements to Agency-2 as false statements in violation of Section 1001, but instead provides them as facts relevant to, and context for, the charged false statement.   Thus, the defendant is seeking greater detail about information that is more appropriately disclosed in discovery for the charged offense or as other act evidence under Federal Rule of Evidence 404(b), which requires the government to only "provide reasonable notice of the general nature of any such evidence" that it intends to offer at trial.  Fed. R. Evid. 404(b).  In addition, the defendant's request for particulars here fails for the same reasons as outlined above – that is, the Indictment "[r]ead as a whole . . . clearly provides enough information to allow [the defendant] to understand the charges against him and prepare to defend himself against those charges."  *Cisneros*, 26 F. Supp. 2d at 55-56.  Thus, the defendant is not entitled to the particulars that he seeks here.

Moreover, the defendant's request for the identities of the Agency-2 employees is premature.  As defense counsel is aware from multiple conversations regarding the government's discovery obligations, the government is working expeditiously to declassify and produce large volumes of materials to provide to the defense.  The government anticipates producing information in discovery that will provide the defendant with the identities of these two individuals.

### 5.  The Relevant Identities of the "Representatives and Agents of the Clinton Campaign" in the Indictment are Known to the Defense

Next, the defendant contends that the reference in Paragraph 6 of the Indictment to "representatives and agents of the Clinton Campaign" demands a bill of particulars.  Mot. at 18.  The defendant's argument is without merit.  Paragraph 6 is a portion of the "Introduction and Overview" section of the Indictment that summarizes facts later alleged with specificity.  And the later parts of the Indictment provide details underlying the more generalized allegation in Paragraph

14

6.  For example, Paragraph 25(e) of the Indictment states that Campaign Lawyer-1 had exchanged emails about the Russian Bank-1 allegations with the Clinton Campaign's campaign manager, communications director, and foreign policy advisor which the defendant had provided to a newspaper.  Ind. ¶ 25(e).  Indeed, the government also provided the true identities of each of those referenced individuals to defense counsel in a discovery letter dated October 20, 2021.  Likewise, Paragraphs 20(d) and 20(g) allege that the defendant, one of his law partners, and Tech Executive-1 each communicated via email with an investigative firm that was at the time acting as an agent of the Clinton Campaign. The government similarly has provided the identity of that investigative firm to the defense in its October 20 discovery letter, even though counsel was undoubtedly already aware of that firm's identity.  Moreover, it was a production of information *by the defendant's counsel* (*i.e.,* a privilege log) that first alerted the government to these cited emails.   Accordingly, the defendant is neither entitled to, nor needs any greater detail, regarding the identities of the individuals identified in Paragraph 25(e) at this stage, and any further information in that regard will be disclosed in due course in discovery prior to trial.  At bottom, the defendant's demand here is not an appropriate use of a motion for a bill of particulars and should be denied.

### 6.  The Requested Information is Available in Other Forms

Finally, all of the defendant's above-referenced arguments fail for the additional reason that all, or nearly all, of the information he seeks is or soon will be available to him in discovery materials provided by the government.  It is well-settled that when a defendant seeks information "[that] is available in some other form, then a bill of particulars is not required." *Butler*, 822 F.2d at 1193 (citations omitted).  As noted above, the government has produced, and will continue producing, voluminous discovery materials that will reveal, among other things, statements that key witnesses

made in interviews with the FBI and in testimony before the grand jury.  These statements and testimony will include numerous key witnesses' recollections of the events referenced in the Indictment, including their views regarding the relevance and materiality of the false statements at issue.  The government has also produced and will continue to produce emails, reports, and other records concerning the events and false statements at issue.  Accordingly, the Indictment and discovery, taken together, provide the defendant with more than sufficient particularity to understand the charges at issue and prepare his defense at trial.  *See Mejia*, 448 F.3d at 445-46 (bill of particulars unwarranted where defendant sought information about cooperating witness that was contained in law enforcement reports).

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should deny the defendant's Motion for a Bill of Particulars.

Respectfully submitted,

JOHN H. DURHAM
Special Counsel

By:

 /s/ Jonathan E. Algor
Jonathan E. Algor
Assistant Special Counsel
jonathan.algor@usdoj.gov

Andrew J. DeFilippis
Assistant Special Counsel
andrew.defilippis@usdoj.gov

Michael T. Keilty
Assistant Special Counsel
michael.keilty@usdoj.gov