```
 1                  IN THE UNITED STATES DISTRICT COURT
                       FOR THE DISTRICT OF COLUMBIA
 2
         - - - - - - - - - - - - - - - - x
 3       THE UNITED STATES OF AMERICA,
                                              Criminal Action No.
 4                    Plaintiff,             1:21-cr-00582-CRC-1
                                             Wednesday, December 8, 2021
 5       vs.                                 2:05 p.m.

 6       MICHAEL A. SUSSMANN,

 7                    Defendant.
         - - - - - - - - - - - - - - - - x
 8

 9       _____

10                  TRANSCRIPT OF STATUS CONFERENCE
            HELD BEFORE THE HONORABLE CHRISTOPHER R. COOPER
11                  UNITED STATES DISTRICT JUDGE
         _____
12       APPEARANCES:

13       For the United States:     ANDREW DeFILIPPIS, ESQ.
                                     SPECIAL COUNSEL'S OFFICE
14                                   145 N Street Northeast
                                     Washington, DC 20002
15                                   212-637-2231
                                     andrew.defilippis@usdoj.gov
16
         For the Defendant:         SEAN M. BERKOWITZ, ESQ.
17                                   LATHAM & WATKINS LLP
                                     330 North Wabash Avenue
18                                   Suite 2800
                                     Chicago, IL 60611
19                                   312-876-7700
                                     sean.berkowitz@lw.com
20

21       Court Reporter:            Lisa A. Moreira, RDR, CRR
                                     Official Court Reporter
22                                   U.S. Courthouse, Room 6718
                                     333 Constitution Avenue, NW
23                                   Washington, DC  20001
                                     202-354-3187
24

25
```

```
 1                         P R O C E E D I N G S
 2              THE COURTROOM DEPUTY:  Your Honor, we're on the
 3      record for Criminal Case 21-582, United States of America
 4      vs. Michael A. Sussmann.
 5              Counsel, please identify yourselves starting with
 6      the government.
 7              MR. DeFILIPPIS:  Good afternoon, Your Honor;
 8      Assistant Special Counsels Andrew DeFilippis, Michael
 9      Keilty, and Johnny Algor for the United States.
10              THE COURT:  Okay.  Good afternoon, gentlemen.
11              MR. BERKOWITZ:  Good afternoon, Judge; Sean
12      Berkowitz, Michael Bosworth, Natalie Rao, Catherine Yao, and
13      Michael Sussmann, who is present by video.
14              THE COURT:  Okay.  Good afternoon, everyone.
15              Mr. Sussmann, can you see and hear me?
16              THE DEFENDANT:  Yes, I can, Your Honor.
17              THE COURT:  Okay.  And I presume you consent to
18      going forward by video this afternoon?
19              THE DEFENDANT:  Yes, I do, Your Honor.  Thank you.
20              THE COURT:  All right.  Good to see everybody.
21              When we were here last, we talked a little bit
22      about the bill of particulars motion, and we issued a minute
23      order inviting further argument today so why don't we start
24      there.
25              Mr. Berkowitz, at the last status it seemed like
```

1    many of the requests would be answered through discovery.

2    Where are we?  What particulars have you not been provided

3    that you think you still are entitled to?

4           And if you'd like to be heard on that, now is the

5    time.

6           MR. BERKOWITZ:  Thank you, Your Honor.

7           We think it makes sense to hold off on substantive

8    argument on our motions for the near term.  Let me tell you

9    a little bit about the reasons for that.

10          A major thrust of the government's opposition, as

11   you noted, was that they would provide all of the

12   information or nearly all of the information will be made

13   available or will be made available soon.  That's what they

14   said in their filing of October 20th, and we've only

15   recently started to receive information.

16          In response to key points in our motion last

17   Friday, a couple of months after we filed our motion, we did

18   receive some of Mr. Baker's statements.  That's still not

19   complete, and we understand there's more to come.  And the

20   statements we've received are heavily redacted.

21          And we have not yet seen his grand jury testimony

22   in classified form.  It was provided in the SCIF yesterday

23   afternoon, and we'll obviously be reviewing that.

24          And so we'll want to take a look at all of that

25   before we argue on it.  There is additional discovery we

1    expect to receive.  It speaks to the motion.

2            THE COURT:  Just on the point about Mr. Baker's

3    statements.  So is it your position that so long as the

4    government provides you, you know, any 302s, any

5    congressional testimony, any grand jury testimony, any FBI

6    IG testimony or statements that he has made, then that is

7    sufficient to satisfy your request for the precise words

8    that were used?

9            MR. BERKOWITZ:  I would say yes with a caveat,

10   Your Honor, and that caveat is until we see what's in there

11   we won't know for certain.  There may be issues or further

12   questions that are raised, but I can't anticipate what those

13   would be and don't want to be inefficient with the Court's

14   time.

15           THE COURT:  Okay.  Very well.

16           MR. BERKOWITZ:  There are some additional areas of

17   discovery we expect to receive.  For example, we've asked

18   for identities of all of the Agency 2 employees who attended

19   the meeting with Mr. Sussmann as well as the identity of

20   those individuals who sent emails about Mr. Sussmann's

21   meeting with Agency 2 beforehand.  They told us that they

22   intend to produce the information.  We haven't received a

23   date by which we'll receive it, and I want to just for a

24   moment pause to just underscore why that request is so

25   important.

1      The special counsel, as you know, has alleged that

2  Mr. Sussmann told Agency 2 he didn't have a client, but we

3  have received a draft memo summarizing Mr. Sussmann's

4  meeting, and that expressly described the sources of the

5  information as Mr. Sussmann and his client.  And in the days

6  leading up to that meeting, Agency 2 employees sent emails

7  to one another including statements such as Sussmann said

8  that he represents a client that does not want to be known

9  and the plan should be to convince Sussmann that it is in

10  his and his client's interest to go to the FBI.

11      So having a date certain by which we could get

12  that information, there may be witnesses that we want to

13  call, and we're unclear as to what's taking so long with

14  that.

15      THE COURT:  So, I'm sorry, are the memos that

16  you've been given memos reflecting statements by the

17  witnesses that the government has identified to you as folks

18  who will say that he told us he was not there on behalf of

19  any client?

20      MR. BERKOWITZ:  We don't know who the specific

21  parties are in all instances, Your Honor, and I think that's

22  one of the things that we're looking to get.

23      THE COURT:  So, in other words, are these memos

24  just impeachment material, or do they reflect that there are

25  other employees of Agency 2 that Mr. Sussmann may have

1    spoken with?

2          MR. BERKOWITZ:  I believe that they are the same

3    employees, Your Honor, and I think that we just -- we just

4    don't know for certain, and I think that's the level of

5    information that we're looking for.

6          THE COURT:  Okay.  Mr. DeFilippis, can you shed

7    any light on that question?

8          MR. DeFILIPPIS:  Sure, Your Honor.

9          So the defense is talking about a memorandum to

10   file that two employees of Agency 2 drafted following their

11   meeting with Mr. Sussmann.  The agency, Agency 2, has

12   informed us they are prepared to give the defense in

13   classified discovery essentially an answer key or a document

14   that would identify the names of those two employees, and

15   then to the extent we have produced emails from the agency

16   thus far with redacted names, they would unredact or provide

17   a key that lists the names on those emails.  So we expect

18   that we can do that next week, and we're prepared to arrange

19   that with Agency 2 and get it to defense counsel.

20          I will note that with regard to the memo and a

21   reference to the use of the word "client," although we're

22   not, you know, interested in a full factual debate before

23   the Court, in the final version of the memo -- there was a

24   reference to "client" in one of the earlier versions of the

25   memo which one of the employees spotted and then corrected

1    in the final memo.  So, again, not looking to debate the

2    defense on the facts, but we expect they will have those

3    names in the following week.

4              THE COURT:  Okay.  Let's get them that by next

5    week.  And they have all the versions and drafts of the memo

6    in question?

7              MR. DeFILIPPIS:  They have all the ones that we

8    have.  We're doing an additional search just to make sure

9    there are no further drafts of the memo.  We've run some

10   additional search terms over at that agency and so we'll be

11   producing any results of that, you know, in short order when

12   we get them.  But we have given them what we have right now.

13             THE COURT:  Okay.

14             MR. BERKOWITZ:  And, Judge, I obviously don't want

15   to be having a meet and confer on this, but to be really

16   clear, I believe there were two additional people in the

17   meeting.  We'd like to get the identities of everybody that

18   was in the meeting because they're percipient witnesses to

19   the statements, and we'd also like any interview summaries

20   or statements that DOJ has or grand jury testimony from

21   those Agency 2 witnesses to reflect what they may have said,

22   including what Mr. DeFilippis just said.

23             THE COURT:  Why don't you all work that out.

24   Obviously you know what the scope of relevant evidence is

25   and what might be *Brady* or *Jencks*, so I will leave that to

1    you, but let's get them the materials that they've requested

2    by next week unless you have objections to the scope of

3    their requests, okay?

4            MR. DeFILIPPIS:  Will do, Your Honor.

5            THE COURT:  Okay.  All right.  So if we're not --

6    if we're going to defer on the bill of particulars, which I

7    suppose makes sense at this point, do you want to move to

8    scheduling, Mr. Berkowitz, or are there other matters that

9    you want to take up?

10           MR. BERKOWITZ:  Judge, I will defer to you as to

11   the order.  I think scheduling makes sense.  There are a

12   couple of discovery issues I want to raise with you and will

13   be judicious about the particulars on those, but it may make

14   sense to talk about scheduling because that impacts the --

15   you know, when we would be getting certain discovery by

16   obviously.

17           THE COURT:  Yes.  So I've read the competing

18   proposals.  I certainly understand the defendant's desire to

19   get this over with and to move on with his life win, lose,

20   or draw, and he obviously has a right to a speedy trial

21   subject, of course, to the statutory exclusions.

22           You know, that said, the 11-week difference

23   between the two proposals does not strike me as all that

24   significant in terms of getting this case to trial

25   efficiently, and, of course, there are, you know, a number

1    of other factors at play, not the least of which is sort of

2    room availability and limitations on our ability to conduct

3    jury trials in a COVID environment where the numbers seem to

4    be moving in the wrong direction.

5          There is also going to be CIPA litigation, most

6    likely, or at least possibly, a significant legal motion

7    being filed by the defense, and law clerk changeovers.

8    There are any number of factors that come into play.

9          A couple of questions for you folks.  How long do

10   you think the trial of this case will last?

11         Mr. DeFilippis?

12         MR. DeFILIPPIS:  Yes, Your Honor.  From the

13   government's side and not knowing the length of any defense

14   case, I think we had discussed with the defense that

15   budgeting two weeks to be safe might be appropriate.

16         THE COURT:  Okay.

17         MR. BERKOWITZ:  And that is our best estimate as

18   well at this juncture, Your Honor.

19         THE COURT:  Okay.  And there's been a trial

20   scheduled in another special counsel matter in EDVA on April

21   18th.  Mr. DeFilippis, how long do you think that trial will

22   take?

23         MR. DeFILIPPIS:  Your Honor, I suspect it would be

24   approximately around the same time, about two weeks, to be

25   safe.

1          THE COURT:  Okay.  And are trial counsel in that

2     matter the same as trial counsel in this matter?

3          MR. DeFILIPPIS:  They're not, Your Honor.  In

4     fact, that defendant -- I'm sorry, for us, Your Honor.  The

5     defendant in that case just got his own new counsel, but for

6     the government it is.

7          THE COURT:  Okay.  That's what I meant.

8          And I know we've talked about particular

9     discovery, but how long do you think, absent an order by me,

10    it will take for the government to complete discovery of the

11    known discoverable materials at this point, both

12    unclassified and classified?

13         MR. DeFILIPPIS:  Your Honor, so we've given a lot

14    of thought to that, and we've looked at the pace of

15    declassification so far and the volume of materials that are

16    still left to be produced and gathered and searched for, and

17    our best estimate of that is that we could complete our

18    classified and unclassified discovery by the end of March,

19    in late March.  I think we had said March 25th of 2022.

20         And, again, that results largely from the fact

21    that the vast majority of government records relevant to

22    this case are classified.  And so to produce them in

23    unclassified discovery requires us to go through the process

24    with multiple agencies of declassification.

25         So we are working as expeditiously as possible on

1    that.  We've produced, as we said in our motion, a large

2    quantity of materials, over 90,000 pages, but what we don't

3    want to do, Your Honor, is promise a certain date and then

4    miss the deadline and then change everyone's schedules.  So

5    we wanted to be candid about what was ahead on discovery,

6    and so we think late March is our best assessment.

7                THE COURT:  Okay.  And, you know, we are obviously

8    not in a classified setting here.  I can imagine what the

9    nonclassified discovery entails in this case.  My

10   presumption is that the classified materials go not to what

11   happened in the meeting but rather potentially materiality

12   issues.

13               Obviously without going into detail, can you give

14   me a sense of how that material relates to the case and what

15   the volume of it is.

16               MR. DeFILIPPIS:  Sure, Your Honor.  And I think

17   it's, again, as Your Honor points out, difficult to do fully

18   here, but as you can imagine, in response to Mr. Sussmann's

19   meeting with Mr. Baker, there were a number of steps taken

20   by the government to investigate the claims.  Mr. Sussmann

21   then made a visit to another agency in early 2017 relating

22   these claims and other claims, and so to the extent that our

23   law enforcement and National Security Agency take

24   investigative steps, take account of information already in

25   their possession, it can implicate sources and methods and

1    classified issues and equities of multiple government

2    agencies.

3            And so as we evaluate and as the defense evaluates

4    their case, we have to take a careful eye toward which of

5    those materials from the resulting investigation and from

6    prior investigations or law enforcement or intelligence

7    activities might bear on the issues here and might bear on

8    the statements that Mr. Sussmann made and the investigation

9    that it triggered.

10           And so, again, without being in a secure setting,

11   Your Honor, those are the kinds of issues that we face.

12           THE COURT:  Okay.  Mr. Berkowitz, obviously we may

13   revisit this conversation in a secure context, but generally

14   speaking, what relevance does that have to your defense,

15   and, you know, are there categories of information that the

16   government may be concerned about that you are just not

17   interested in because it doesn't go to what you're trying to

18   use that information to show?

19           So, in other words, are we -- you know, can we

20   narrow -- or perhaps this is a conversation between the two

21   of you.  Can we narrow the amount of classified material or

22   classified references within the material that you're

23   actually seeking and are really interested in?

24           MR. BERKOWITZ:  So it's a fair question, Your

25   Honor.  Here's how I would answer it.

1          I think as an initial matter, if the

2    declassification process is what's holding things up --

3    because it sounds like that may be one of the issues they're

4    dealing with -- we have clearance and can review materials

5    in advance and make determinations to see if there are

6    things we don't need declassified.  It should not slow up

7    our preparation for the defense.

8          It will be a hassle, for sure, but I think that

9    there are certain things such as the Baker grand jury

10   testimony.  I can't get into the specifics of what's in

11   there since I haven't seen it and it's classified, but I'm

12   assuming it has to do with the meeting, and I don't

13   understand why that would -- that portion of it would be

14   protected.  And I think there's this overclassification --

15          THE COURT:  I'm sorry, why is the grand jury

16   transcript classified?  It's 6(e) obviously, but is it

17   classified as well, Mr. DeFilippis?

18          MR. DeFILIPPIS:  It is, Your Honor, although we've

19   submitted it for declassification.

20          THE COURT:  Okay.

21          MR. DeFILIPPIS:  And I don't expect it will be a

22   long wait.

23          Because the investigation -- the FBI's

24   investigation of this matter, because it was a

25   counterintelligence-related investigation, it was

1      classified, and the materials falling under it were

2      classified.  We expect things to hopefully speed up soon as

3      we have given to the defense in redacted unclassified form

4      virtually the entire FBI case file from the FBI's case file

5      system.  We have already declassified in redacted form every

6      what's known as a serial from that case file, every document

7      that was put to the official record, and they have received

8      that in both classified and unclassified discovery.

9              THE COURT:  Okay.  Well, is Mr. Berkowitz right,

10     that the declassification process is what's holding things

11     up?  And why can't you just give him and his cleared team

12     access to the classified materials, and he can tell you what

13     he's interested in?  I mean, this is essentially the CIPA

14     process, but in a collaborative way.

15             MR. DeFILIPPIS:  And that is our -- that is what

16     we intend to do, Your Honor.  As we -- we intend to first

17     push things into classified discovery.  Pending the

18     declassification process, I expect we'll have another

19     tranche of materials relatively soon.

20             THE COURT:  But, I'm sorry, why is it pending the

21     declassified process?  That's what I take Mr. Berkowitz's

22     point to be.  Why do we need to go through a

23     declassification process when we can provide discovery to

24     cleared counsel in a classified form?

25             MR. DeFILIPPIS:  I'm sorry, Your Honor, we will

1    not wait for the declassification process to do that.

2              THE COURT:  Okay.

3              MR. DeFILIPPIS:  I'm just saying as it's being

4    declassified we will produce it in classified.

5              THE COURT:  Fine.  I'm sorry if I misunderstood.

6              MR. DeFILIPPIS:  No, no, no.

7              MR. BERKOWITZ:  And, Judge, just to get back to

8    your question, I think that the -- moving that process along

9    and putting deadlines in place, obviously it's a resource

10   issue more than anything else.  We can begin getting ready

11   and have been getting ready for the trial through the

12   discovery that's been produced in classified form, and so we

13   would be able to triage some of that for them if there's

14   something that we don't want them to spend time on because

15   we don't think it's material to the defense.

16              I think that that certainly is a reasonable

17   request that we could consider to expedite things and move

18   things along, but I just -- I don't -- I still don't

19   understand why it would take until, you know, March 22nd to

20   get through all of this.  And if we have an earlier

21   deadline, at a minimum it will cause the government, in my

22   view, to devote the resources necessary to try the case that

23   they've brought.  And in the classification format, if it's

24   at least there, we can start looking at it, and having a

25   date by which everything will be in classified form will be

1     helpful as well, even if that's, you know, a month from now.

2               THE COURT:  Okay.  Mr. Berkowitz, am I right to

3     assume that your legal motion that you described the last

4     time with respect to materiality does not hinge on any

5     discovery; that it is a -- it's a pure sufficiency issue?

6               MR. BERKOWITZ:  I don't think that it would -- I

7     do believe that we want to get certain additional discovery,

8     Judge, to be able to make sure that we're making all the

9     appropriate arguments.  I don't think that I can say it's

10    purely legal based on the face of the indictment.

11              THE COURT:  Okay.  All right.  So with respect to

12    the trial date, you know, unfortunately I don't have the

13    authority, sitting here, just to issue a trial date.  Unlike

14    EDVA, perhaps, we are operating under a master trial

15    calendar.  There's a limitation on the number of jury trials

16    that can take place at any given time.  Because of the

17    social distancing considerations, we can only use our

18    ceremonial courtroom for large voir dires, which I suspect

19    this one will be.

20              And so there are some limitations, and I need to

21    get clearance to schedule any trial from a committee that is

22    the keeper of the master calendar, in a sense, and so I

23    think this is -- where this is probably going is mid-late

24    May/early June.  But let me sort of run the traps, and we

25    will issue an order probably based on that schedule.

1            And, again, that takes into consideration, you

2    know, all of the equities here, including the two-week trial

3    that government counsel is participating in in EDVA.

4            Any other issues?

5            MR. BERKOWITZ:  Your Honor, I appreciate that, and

6    we'll obviously take a look at the schedule when you send it

7    out.  Needless to say, the sooner that that can get set --

8    recognizing that you have a lot of different constituents to

9    manage, and I understand that -- will help us manage on our

10   end.  It will also help us backtrack on other dates that

11   need to get set.

12           THE COURT:  Understood.  And I'm sure that you all

13   will cooperate with one another in getting this case to

14   trial as soon as we can.

15           MR. BERKOWITZ:  I do have a couple of other issues

16   when and if you're ready, Judge.  I don't want to cut you

17   off.

18           THE COURT:  No.  Let's do it.

19           MR. BERKOWITZ:  Okay.

20           THE COURT:  What have you got?

21           MR. BERKOWITZ:  Let me, on one level, compliment

22   the government in a sense that they've produced a lot of

23   materials, but I want to temper that with the fact that

24   there are specific materials that we have requested that we

25   don't understand why we haven't seen, including since almost

1    Day 1 we've been asking for a memo that we understand was

2    prepared in another case involving Mr. Baker, an

3    investigation where Mr. Baker was interviewed.

4         We understand that the special counsel or someone

5    on his team drafted a memo questioning Mr. Baker's

6    credibility, and we don't understand why we haven't seen

7    that.  It hasn't been denied that such a memo exists, and we

8    think that that goes to the heart of things, and so we'd be

9    very interested in getting a date certain on that.

10        THE COURT:  Mr. DeFilippis?

11        MR. DeFILIPPIS:  Yes, Your Honor.  We have been

12   working diligently on the defense's request in that regard.

13   In fact, just today the special counsel team met with the

14   relevant agency in question that has equities in that memo

15   in addition to the DOJ.  They are undergoing a process of

16   getting that document in a form that will be releasable to

17   the defense with some redactions of national security

18   information that we don't think would bear on *Giglio* or

19   *Brady* and the like, so we are working on that.

20        And, Your Honor, we do think that this is fairly

21   standard, if anything, *Giglio* information.  It's not *Brady*.

22   It's not directly relevant to the charged case, but we

23   recognize that the defense wants to prepare, and that this

24   may be relevant to them, and so we are working on that.  We

25   are hopeful that early in the new year we will have it for

1    them to produce in redacted form.

2         THE COURT:  All right.  Why don't we set a date

3    for first week of January, and if you can't make that,

4    Mr. Berkowitz, we can revisit that issue, okay?

5         MR. BERKOWITZ:  That's great, Your Honor.

6         There are also some other specific requests we've

7    had for any other statements of Mr. Baker, including what

8    appears to be his first statement to the special counsel as

9    well as records including interviews reflecting other

10   investigations involving Mr. Baker either as a subject or a

11   witness.  That's obviously relevant to why his testimony may

12   or may not have changed, if he was subject to potential

13   exposure.  And I don't know that he was, but, you know,

14   given that this is a one-witness false statement case,

15   incredibly unusual from a DOJ prosecution standpoint, this

16   type of information is core and critical.  And, again, it's

17   frustrating that despite all of the materials we've received

18   we haven't gotten this, and it has been an ongoing topic of

19   discussion.

20        THE COURT:  Do they have all the statements, or

21   are there still some out there, Mr. DeFilippis?

22        MR. DeFILIPPIS:  Your Honor, with regard to what

23   Mr. Berkowitz called Mr. Baker's first statements to the

24   special counsel, he's referring to an interview that we did

25   of Mr. Baker in which we did not -- as Your Honor is aware,

1    our investigation is quite wide-ranging in terms of the

2    issues that we have been looking at, and we did a meeting

3    with Mr. Baker in which we did not touch on the charged

4    conduct or the issues relevant to it, and so we did not

5    produce that to the defense because we don't think it's

6    discoverable.

7            With regard to any other inquiries related to

8    Mr. Baker that the defense has asked us to search for, we've

9    made relevant requests in that regard and are treating that

10   with priority as *Giglio*-related, and, you know, can produce

11   that as *Giglio* to the extent that there is anything.

12           THE COURT:  Okay.  Well, obviously the

13   government's in a position to make a call as to whether

14   something's discoverable or not, and if he didn't say

15   anything about the issues in this case, and they've made a

16   draw that it's not discoverable, absent anything to the

17   contrary, I can't and I won't disturb that determination.

18           In the scheduling order, there will be a deadline

19   for *Brady* and *Giglio* materials, and so let's go with that

20   deadline for anything else that may or may not be out there

21   that you've made inquiries of other stakeholders from.

22           MR. DeFILIPPIS:  Understood.

23           THE COURT:  All right.  Anything else?

24           MR. BERKOWITZ:  You know, Judge, I could go

25   through some other issues but I think it wouldn't be the

1    best use of your time, to be a discovery master here, so we

2    will work with the department on the outstanding issues.  I

3    do think, however, knowing that we might appear before you

4    again is always an incentive, so if we can get a status date

5    in early January, that would be helpful.

6              THE COURT:  Well, let's see what the schedule

7    looks like.  We may wind up having some motions hearings.

8              What were the dates in your proposal,

9    Mr. Berkowitz --

10             MR. BERKOWITZ:  Hold on.  I'm pulling that up

11    right now.

12             THE COURT:  -- for motions?

13             MR. BERKOWITZ:  So we had motions being filed by

14    February 18th.

15             THE COURT:  Okay.  Why don't we just set the trial

16    schedule, and if for some reason you need to hear from me on

17    something before then, before a motions hearing or, you

18    know, a pretrial conference, let me know.  But, you know --

19    or a CIPA matter -- we're going to spend enough time

20    together next year.

21             So if you need to hear from me, let me know, but

22    otherwise we'll just go by the pretrial schedule.

23             MR. BERKOWITZ:  All right, Judge, and I appreciate

24    that.

25             Would we -- would you want us to file a -- and I'm

1    not anticipating wanting to use more of your time than we

2    need, but if we do, should we file a motion?  Should we call

3    your clerk?  How would you like us to do that, if we need to

4    get before you?

5                THE COURT:  Just a motion requesting a status --

6                MR. BERKOWITZ:  Very good.

7                THE COURT:  -- and laying out the reasons for it.

8                MR. BERKOWITZ:  Understood.

9                THE COURT:  Okay?  All right.

10               All right.  Anything from the government?

11               MR. DeFILIPPIS:  Your Honor, just because we don't

12   have a conference date on the calendar, the government would

13   request to exclude time under the Speedy Trial Act perhaps

14   for 30 days for a control date.  We believe the interests of

15   the public and the defendant in a speedy trial are

16   outweighed here, and we would ask to exclude time.

17               THE COURT:  All right.  Any objection to that,

18   Mr. Berkowitz?

19               MR. BERKOWITZ:  Your Honor, I'd need to confer

20   with my client about whether we would agree to that in light

21   of the fact that we don't know the specific trial date.  And

22   I apologize for that, but I do -- I'm not at liberty to

23   agree.  I understand you may make that finding otherwise,

24   but I'm not at liberty right now to agree.

25               THE COURT:  All right.  The Court will make a

1  finding.  We will exclude the time between now and 30

2  days -- whatever that is, Ms. Jenkins -- from the otherwise

3  applicable speedy trial calculations.  We are still

4  operating under a standing order that limits jury trial

5  availability courthouse-wide based on the COVID situation

6  here in D.C. -- I suspect, just for your own edification,

7  that that order is going to be extended given where the

8  numbers are -- as well as to allow the defense to continue

9  to review and the government to produce what's been

10  described as voluminous discovery in the case, and given the

11  still pending motion on the bill of particulars, the Court

12  will exclude the next 30 days from the speedy trial

13  calculations in the interests of justice.

14          Anything else?

15          MR. DeFILIPPIS:  Not from the government, Your

16  Honor.

17          MR. BERKOWITZ:  Nothing further from the defense,

18  Your Honor.  I appreciate your time today.

19          THE COURT:  Okay.  Good to see you all, and have a

20  nice holiday, if we don't see each other before then.

21          MR. DeFILIPPIS:  Thank you, Your Honor.  You, too.

22          THE DEFENDANT:  Thank you, Your Honor.

23              (Whereupon the hearing was

24               concluded at 2:36 p.m.)

25

1

2                  **CERTIFICATE OF OFFICIAL COURT REPORTER**

3

4              I, LISA A. MOREIRA, RDR, CRR, do hereby

5    certify that the above and foregoing constitutes a true and

6    accurate transcript of my stenographic notes and is a full,

7    true and complete transcript of the proceedings to the best

8    of my ability.

9        **NOTE:**  This hearing was held remotely by Zoom or some

10   other virtual platform and is subject to the technological

11   limitations of court reporting remotely.

12               Dated this 9th day of December, 2021.

13

14

15                              /s/Lisa A. Moreira, RDR, CRR
                                Official Court Reporter
16                              United States Courthouse
                                Room 6718
17                              333 Constitution Avenue, NW
                                Washington, DC 20001

18

19

20

21

22

23

24

25