IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**MICHAEL A. SUSSMANN,**<br><br>*Defendant*. | Case No. 1:21-cr-00582 |

**DEFENDANT MICHAEL A. SUSSMANN'S RESPONSE TO THE SPECIAL COUNSEL'S MOTION TO INQUIRE INTO POTENTIAL CONFLICTS OF INTEREST AND CROSS-MOTION TO STRIKE**

1.  Defendant Michael A. Sussmann ("Mr. Sussmann" or "Defendant"), by and through his undersigned counsel, submits this response to the Special Counsel's Motion to Inquire into Potential Conflicts of Interest (the "Motion"). *See* Dkt. No. 35. Counsel for Mr. Sussmann previously advised the Special Counsel that Mr. Sussmann has been fully apprised of the issues that the Special Counsel sought to raise; he understood his right to consult independent counsel; and he intended to waive any potential conflicts of interest. To the extent that the Special Counsel intended to bring potential conflicts of interest to the Court's attention and request that Mr. Sussmann waive those issues on the record, Mr. Sussmann does not oppose the Motion.

2.  Unfortunately, the Special Counsel has done more than simply file a document identifying potential conflicts of interest. Rather, the Special Counsel has again made a filing in this case that unnecessarily includes prejudicial—and false—allegations that are irrelevant to his Motion and to the charged offense, and are plainly intended to politicize this case, inflame media coverage, and taint the jury pool.

3.  In his Motion, the Special Counsel included approximately three pages of purported "Factual Background." *See* Dkt. No. 35 at 2–5. Approximately half of this Factual Background

provocatively—and misleadingly[1]—describes *for the first time* Domain Name System ("DNS") traffic potentially associated with former President Donald Trump, including data at the Executive Office of the President ("EOP"), that was allegedly presented to Agency-2 in February 2017. *See id.* at 3–4. These allegations were not included in the Indictment; these allegations post-date the single false statement that was charged in the Indictment; and these allegations were not necessary to identify any of the potential conflicts of interest with which the Motion is putatively concerned. Why then include them? The question answers itself.

4. Sadly, the Special Counsel seems to be succeeding in his effort to instigate unfair and prejudicial media coverage of Mr. Sussmann's case. Indeed, since the Motion was filed, numerous outlets published stories suggesting that the Special Counsel's latest filing revealed a vast conspiracy involving Mr. Sussmann and the Clinton Campaign. *See, e.g.*, Brooke Singman, *Clinton campaign paid to 'infiltrate' Trump Tower, White House servers to link Trump to Russia: Durham*, FOX NEWS (Feb. 13, 2022), https://www.foxnews.com/politics/clinton-campaign-paid-infiltrate-trump-tower-white-house-servers; Jesse O'Neill, *Clinton campaign paid tech workers to dig up Trump-Russia connections: Report*, N.Y. POST (Feb. 13, 2022, 1:11 AM), https://nypost.com/2022/02/13/hillary-clinton-campaign-paid-tech-workers-to-dig-up-donald-

---

[1] For example, although the Special Counsel implies that in Mr. Sussmann's February 9, 2017 meeting, he provided Agency-2 with EOP data from after Mr. Trump took office, the Special Counsel is well aware that the data provided to Agency-2 pertained only to the period of time before Mr. Trump took office, when Barack Obama was President. Further—and contrary to the Special Counsel's alleged theory that Mr. Sussmann was acting in concert with the Clinton Campaign—the Motion conveniently overlooks the fact that Mr. Sussmann's meeting with Agency-2 happened well after the 2016 presidential election, at a time when the Clinton Campaign had effectively ceased to exist. Unsurprisingly, the Motion also omits any mention of the fact that Mr. Sussmann never billed the Clinton Campaign for the work associated with the February 9, 2017 meeting, nor could he have (because there was no Clinton Campaign). *See* Dkt. No. 35 at 3-4. And the Special Counsel persists in alleging that Mr. Sussmann billed the Clinton Campaign for his meeting with the FBI in September 2016, when that is false as well.

trump-russia-connections/; Jerry Dunleavy, *Durham says Democrat-allied tech executive spied on Trump's White House office*, WASHINGTON EXAMINER (Feb. 12, 2022, 7:42 PM), https://www.washingtonexaminer.com/news/justice/durham-says-democrat-allied-tech-executive-spied-on-trumps-white-house-office; Joel B. Pollack, *John Durham Filing Suggests Clinton Operatives Spied on Trump in 2016 and in White House*, BREITBART (Feb. 12, 2022), https://www.breitbart.com/politics/2022/02/12/john-durham-filing-suggests-clinton-operatives-spied-on-trump-in-2016-and-in-white-house/.

5.  Worse still, Mr. Trump seized upon the Special Counsel's filing, stating that it "provides indisputable evidence that my campaign and presidency were spied on by operatives paid by the Hillary Clinton Campaign in an effort to develop a completely fabricated connection to Russia." He went on to call this a scandal "far greater in scope and magnitude than Watergate," said that "[i]n a stronger period of time in our country, this crime would have been punishable by death," and demanded "reparations." @realLizUSA, TWITTER (Feb. 12, 2022, 6:47 PM), https://twitter.com/realLizUSA/status/1492646490346598404. Shortly thereafter, other political leaders endorsed Mr. Trump's position. *See, e.g.*, Andrea Blanco & James Gordon, *GOP Rep. Jim Jordan says Trump is 'right on target' to suggest EXECUTIONS for Hillary's campaign aides after Special Counsel found they paid a tech firm to hack into his WH and Trump Tower servers*, DAILY MAIL (Feb. 13, 2022, 5:27 PM), https://www.dailymail.co.uk/news/article-10508653/GOP-Rep-Jim-Jordan-says-Trump-right-target-suggest-executions-Clintons-aides.html.

6.  And this is not the first time in this case that the Special Counsel has sought to include allegations about uncharged conduct in public filings and done so using inflammatory and prejudicial rhetoric. Take, for example, the very Indictment that the Special Counsel filed in this single-count, false statement case. The Indictment is 27 pages long and reads as though there was

a vast conspiracy, involving the Clinton Campaign and Mr. Sussmann, to defraud the FBI into investigating Donald Trump as part of an "October surprise." But the Indictment does not charge anyone other than Mr. Sussmann; the Indictment does not charge a conspiracy; and the Indictment does not even charge a fraud.

7. To make this case a partisan affair and to inflame media coverage, the Special Counsel chose to include allegations that Mr. Sussmann was part of a wide-ranging scheme involving a number of uncharged parties including the Clinton Campaign, Law Firm-1, Campaign Lawyer-1, a U.S. Investigative Firm, Tech-Executive-1, and a number of computer data researchers who all worked together to unfairly influence the 2016 election. In so doing, the Special Counsel featured grossly misleading excerpts of emails among Tech-Executive-1 and other researchers, omitting statements that showed the researchers agreed with the findings and otherwise operated in good faith. *See, e.g.*, Dkt. No. 1 ¶¶ 23, 24. Tellingly, however, the Special Counsel has never alleged in the Indictment or subsequently that the data provided by the researchers was manipulated or fabricated, or that Mr. Sussmann had any reason to believe that the allegations he presented to the FBI's General Counsel were untrue or misleading in any way.

8. More recently, in his 19-page "Discovery Update" filed on January 25, 2022, the Special Counsel again went out of his way to include uncharged and inflammatory allegations. In his filing, which sought an extension of time to produce certain discovery, the Special Counsel stretched to include the gratuitous claim that his Office had an "active, ongoing criminal investigation of the defendant's conduct and other matters." Dkt. No. 33 ¶ 1. However, the Special Counsel has been investigating for years, and some of the Special Counsel's "ongoing" investigation seems to be work that should have been completed *before* indicting Mr. Sussmann. For example, the Special Counsel has alleged that Mr. Sussmann met with the FBI on behalf of

the Clinton Campaign, but it was not until November 2021—two months after Mr. Sussmann was indicted—that the Special Counsel bothered to interview any individual who worked full-time for that Campaign to determine if that allegation was true. It is not.

9. Given the Special Counsel's pattern of including unnecessary prejudicial material in public filings, there can be no doubt that the superfluous "Factual Background" in the Special Counsel's motion is intended to further politicize this case, inflame media coverage, and taint the jury pool. *See United States v. Duran*, 884 F. Supp. 526, 527 (D.D.C. 1995) ("Because no right ranks higher than the right of the accused to a fair trial, in cases that arouse intense public interest . . . adverse publicity can endanger the ability of the defendant to receive a fair trial.") (internal quotation marks and citations omitted); *Patton v. Yount*, 467 U.S. 1025, 1031 (1984) ("Adverse pretrial publicity can create . . . a presumption of prejudice in a community").

10. As a result, Mr. Sussmann hereby requests that the Court strike the Factual Background portion of the Special Counsel's motion pursuant to the Court's inherent power to "fashion an appropriate sanction for conduct which abuses the judicial process." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991); *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017). In addition, Mr. Sussmann reserves all rights to submit appropriate motions and seek appropriate relief concerning this conduct should the Indictment not be dismissed and should the case proceed to trial, including by seeking extensive *voir dire* about potential jurors' exposure to prejudicial media resulting from the Special Counsel's irresponsible actions.

## CONCLUSION

For the reasons set forth above, Mr. Sussmann respectfully requests that the Court (i) allow him to proceed with his current counsel of choice, Latham & Watkins LLP, following his waiver of any potential conflicts of interest, and (ii) strike the Factual Background portion of the Motion.

Dated: February 14, 2022

        Respectfully submitted,

        */s/ Sean M. Berkowitz*
        Sean M. Berkowitz (*pro hac vice*)
        LATHAM & WATKINS LLP
        330 North Wabash Avenue
        Suite 2800
        Chicago, IL 60611
        Tel: (312) 876-7700
        Fax: (312) 993-9767
        Email: sean.berkowitz@lw.com

        Michael S. Bosworth (*pro hac vice*)
        LATHAM & WATKINS LLP
        1271 Avenue of the Americas
        New York, NY 10020
        Tel: (212) 906-1200
        Fax: (212) 751-4864
        Email: michael.bosworth@lw.com

        Natalie Hardwick Rao (D.C. Bar # 1009542)
        Catherine J. Yao (D.C. Bar # 1049138)
        LATHAM & WATKINS LLP
        555 Eleventh Street, NW
        Suite 1000
        Washington, DC 20004
        Tel: (202) 637-2200
        Fax: (202) 637-2201
        Email: natalie.rao@lw.com
        Email: catherine.yao@lw.com