**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| *v.* | Case No. 1:21-cr-00582 |
| **MICHAEL A. SUSSMANN,** | |
| *Defendant*. | |

**DEFENDANT'S REPLY TO THE SPECIAL COUNSEL'S OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS THE INDICTMENT**

Defendant Michael A. Sussmann, by and through undersigned counsel, respectfully submits this reply to the Special Counsel's Opposition to Defendant's Motion to Dismiss the Indictment (the "Opposition"), *see* Dkt. No. 44.

**INTRODUCTION**

In our opening brief in support of Mr. Sussmann's Motion to Dismiss, we argued that this is a case of extraordinary prosecutorial overreach. The Special Counsel's Opposition only further demonstrates why that is so.

First, the Special Counsel has not identified a single analogous precedent for this prosecution. We previously noted that the defense is aware of no case in which an individual has provided a tip to the government and been charged with making a false statement for something other than providing a false tip. The Special Counsel has not called the Court's attention to a single case (or even failed prosecution) to the contrary.

Second, the Special Counsel has embraced an almost unbounded theory of materiality that, aside from being unprecedented, is contrary to the law. We explained that, to be material, an alleged false statement must affect a discrete decision and must have a sufficient nexus to that

decision.  The Special Counsel, however, believes that any statement made to any investigative agency can be material, even where there is no discrete decision to be made and even where there is no investigation pending.  This is not—and cannot be—the law.  To accept this view of materiality would be to read that element out of Title 18, United States Code, Section 1001.  But as the Special Counsel concedes elsewhere, the only reason why Section 1001 is constitutional is because it has a meaningful materiality limitation in the first place.  In the context of a tip, the only false statement that could be material is a false tip.  Because this Indictment charges a statement ancillary to the tip that Mr. Sussmann provided, it must be dismissed.

Third, the Special Counsel advances a series of arguments about what the "evidence at trial" will prove.  But the law is clear that this Motion to Dismiss can only be evaluated on the basis of the allegations in the Indictment.  The Special Counsel intentionally included specific allegations about materiality in his 27-page speaking Indictment.  But the Opposition does not include a single cite to those allegations.  Not one.  Much as the Special Counsel may now wish to run from these allegations, he remains bound by them.  And they are plainly insufficient as a matter of law to establish that the purported false statement is material.

Finally, the Special Counsel's insensitivity to the constitutional and prudential concerns raised by this prosecution is jarring.  The Special Counsel may believe those concerns are "fanciful," but Michael Sussmann—a prominent and respected national security lawyer—now finds himself on the other side of an unprecedented prosecution brought by a Special Counsel who has filled his Opposition with concerning rhetoric about "political deceit."  Mr. Sussmann's concerns are the opposite of fanciful.  They are real.  And they further militate in support of dismissing this unjust and unlawful prosecution of an innocent man.

**ARGUMENT**

**A.     The Special Counsel's Expansive Theory of Materiality is Inconsistent With the Law**

In our opening brief, we explained that a false statement can only be material where it: (1) concerns a specific governmental decision; and (2) has a sufficient nexus to that specific governmental decision.  *See* Dkt. No. 39 at 5-11.  Applying this standard in the context of tips to law enforcement, we demonstrated that where, as here, an individual has provided a tip to an investigative agency and there is no investigation pending, the only false statement that could be material is a false statement about the subject of the potential investigation, i.e., the false tip itself. That is why, we noted, there is ample Section 1001 precedent for charging individuals who have provided a false tip to the government, but there is not a single precedent for charging a tipster with a false statement other than the false tip.

The Special Counsel has not meaningfully engaged with or rebutted any of this analysis. Instead, the Special Counsel has simply argued that: (1) a false statement can be material whenever it affects a governmental function; and (2) any challenge to the materiality of the false statement here is premature.  These arguments are without merit.

> *1.     Materiality requires the identification of both a discrete governmental decision and a sufficient nexus to that decision.*

To be sure, and as we pointed out in our opening brief, D.C. Circuit law generally provides that a false statement can be material where it affects either a specific governmental decision or a specific function of the agency "to which it was addressed."  *See* Dkt. No. 44 at 6; *see also United States v. Moore*, 612 F.3d 698, 701 (D.C. Cir. 2010).  But the Special Counsel is simply wrong to suggest that where an individual has provided a tip to an investigative agency, a "false statement survives long past the initiation of an investigation and encompasses the means and methods of an investigation."  Dkt. No. 44 at 6.

For one thing, the Special Counsel has not cited a single case or single precedent in support of that extravagant claim—not a single case providing that a statement made prior to the initiation of an investigation can be material to the subsequent conduct of an investigation. That in and of itself is telling. But it is also unsurprising, as this claim runs contrary to the very words of the standard that the Special Counsel has cited and relied on. Where, as alleged here, a purported false statement was directed toward prompting an agency to initiate an investigation in the first place, there is no legally significant difference between the governmental "decision" affected by the false statement and the governmental "function." That is, the *decision* at issue is whether or not to initiate an investigation, and the *function* at issue is likewise the potential initiation of an investigation. Put another way, the potential initiation of an investigation is the only agency action or function "to which [the purported false statement] was addressed." *See* Dkt. No. 44 at 5 (citation omitted); *see also United States ex rel. Morsell v. Symantec Corp.*, 130 F. Supp. 3d 106, 123 n.16 (D.D.C. 2015) (describing *Moore*, 612 F.3d at 701, as holding that "'a statement is material if it has a natural tendency to influence, or is capable of influencing' an agency's action").

Thus, for all the reasons set forth in our opening brief, where an individual has provided a tip to an investigative agency, the false statement can be material only where: (1) it concerns the specific governmental decision—or function—to initiate an investigation, *see, e.g.*, *United States v. Creel*, 458 F. App'x 412, 414 (5th Cir. 2012) ("To determine materiality under § 1001, we seek to ascertain . . . *the decision that the agency was attempting to make*." (emphasis added) (citation omitted)); *United States v. Stadd*, 636 F.3d 630, 638-39 & n.9 (D.C. Cir. 2011) (recognizing *Moore* but holding that "[t]he jury charge correctly" defined a "material" statement as one that "has a natural tendency to influence, or is capable of influencing, *the decision* of the decision-making body to which it was addressed" (emphasis added) (citation omitted)); and (2) the statement has a

sufficient nexus to that decision or function, *see, e.g.*, *United States v. Naserkhaki*, 722 F. Supp. 242, 248 (E.D. Va. 1989) (explaining that "[w]here, as here, a misstatement relates to an ancillary, non-determinative fact, it is not material and cannot support a conviction under Section 1001")[1]; *United States v. Facchini*, 874 F.2d 638, 643 (9th Cir. 1989) (noting that a "[false] statement must . . . be capable of having some non-trivial effect on a federal agency"). And the only false statement that can satisfy this standard in the context of a tip is a false tip itself. *See, e.g.*, *United States v. Hansen*, 772 F.2d 940, 949-950 (D.C. Cir. 1985) (holding that because defendant's omissions "tended to conceal information that would have *prompted investigation or action*," they met the test of materiality, i.e., "whether the statement 'has a natural tendency to influence, or was capable of influencing, the decision of the tribunal in making a [particular] determination'" (emphasis added) (citation omitted)); *United States v. Carrasquillo,* 239 F. App'x 634, 635 (2d Cir. 2007) (Although the government was "not actively investigating whether defendant owned an unauthorized firearm," defendant's false "statement that he had never owned an off-duty firearm was clearly material . . . as it *went to the heart* of whether [the defendant] had the means of engaging in . . . possibly unprofessional conduct," for which the government "had the authority to investigate" and which the government then investigated. (emphasis added)). That is why there

---

[1] The Opposition claims that *Naserkhaki* was abrogated by the Supreme Court, and cites to *United States v. Dedman*, 527 F.3d 577, 599 (6th Cir. 2008) for that premise. *See* Dkt. No. 44 at 8 n.2. However, as *Dedman* explains, this abrogation concerned procedure and *not* the substance of the *Naserkhaki* materiality holding. Specifically, *Dedman* holds that in cases involving *multiple* false statement charges, a Section 1001 conviction may be upheld even if *several* of the statements at issue fail to satisfy Section 1001's materiality requirement as a matter of law. *See* 527 F.3d at 598-99 ("*If the government alleged three false statements but two lacked sufficient evidence, how do we know which false statement the unanimous jury used*? We are certainly concerned that the jury may have relied upon an unsupported statement, *but our precedent requires that we presume that the jury used the false statement that was supported by sufficient evidence,* and *that we uphold a conviction where there was sufficient evidence for at least one of the alleged false statements*." (emphases added)). Of course, that holding is wholly irrelevant here, where the Indictment only alleges one false statement that is immaterial as a matter of law.

are legions of false statement cases in which the Department of Justice has charged individuals for providing a false tip. And that is why the Special Counsel has been unable to cite a single case in which the Department of Justice has charged a tipster for making a false statement other than a false tip itself.[2]

At bottom, the Special Counsel is advancing a theory that would render material any false statement made to any investigative agency at any time—even one that has *no* nexus to *any* hypothetical government function. That standard is inconsistent with Section 1001's insistence on materiality; that standard is inconsistent with precedent; and that standard must be rejected as a matter of law.

---

[2] In an attempt to downplay the weight of this authority, the Special Counsel observes that these cases "involved post-conviction appeals or motions to vacate the conviction after the Government presented its case at trial." Dkt. No. 44 at 7. That observation misses the mark. What is critical is not *when* courts have vacated false statement convictions, but the fact that, absent a sufficient nexus (or close connection) between the alleged false statement and the specific governmental decision at issue, a false statement charge cannot stand. And none of the cases cited in the Opposition proves otherwise, as each concerned *discrete* and *specific* functions that the false statements could influence—not, as here, ancillary false statements that concern abstract government "functions." *See United States v. Alemany Rivera*, 781 F.2d 229, 235 (1st Cir. 1985) (The function implicated by the defendant's false statement was HUD's "disbursement of escrow monies not to the true vendors of the equipment, but to [vendors affiliated with the defendant]"); *United States v. Lichtenstein*, 610 F.2d 1272, 1278-79 (5th Cir. 1980) (The function implicated by the defendant's false statements was the "proper designation on the proper export declaration forms" of certain goods, which "would have allowed evasion of the requirement that goods actually being laden as export cargo be listed on the ship's outward manifest . . . ."); *United States v. White*, 270 F.3d 356, 366 (6th Cir. 2001) (False statements in a plant's monthly report "could and did lead to the [Environmental Protection Agency's] seizure of other plant records which demonstrated more severe instances of noncompliance over a longer period of time . . . ."); *United States v. Moore*, 446 F.3d 671, 681 (7th Cir. 2006) (Defendant's false statements on a "contract to obtain HUD block grant funds" affected the administration of those specific funds); *United States v. Calhoon*, 97 F.3d 518, 530 (11th Cir. 1996) (Defendant's false statements as to reimbursable costs on a cost report "were sufficient . . . to authorize reimbursement without further investigation" and therefore impacted a specific function "as to reimbursability of the costs.").

> 2.     *It is proper to test the sufficiency of the Indictment at this stage of the proceedings.*

The Special Counsel has also argued that Mr. Sussmann's materiality challenge is premature and makes the stunning claim that that every question of materiality must be presented to a jury.  *See* Dkt. No. 44 at 7.  Not so.  It is black-letter law that a party may move to dismiss an indictment for "failure to state an offense," Fed. R. Crim. P. 12(b)(3)(B)(v), including for an indictment's failure to allege an essential element, *see, e.g.*, *United States v. Ezeta*, 752 F.3d 1182, 1184 (9th Cir. 2014) ("Dismissal of an indictment is appropriate when it fails to recite an essential element of the charged offense.").

Of course, in an ordinary case, a defendant cannot meaningfully bring a pretrial challenge to a Section 1001 indictment on materiality grounds.  After all, on a motion to dismiss an indictment for failure to state an offense, a court can only look at the facts alleged in an indictment.  *See United States v. Montgomery*, 2021 WL 6134591, at *2 n.1 (D.D.C. Dec. 28, 2021) ("[T]he Court's analysis of [d]efendants' motion to dismiss . . . must be limited to 'the four corners of the indictment.'" (citation omitted)); *see also United States v. Harmon*, 474 F. Supp. 3d 76, 87 (D.D.C. 2020) ("Adherence to the language of the indictment is essential because the Fifth Amendment requires that criminal prosecutions be limited to the unique allegations of the indictments returned by the grand jury." (citation omitted)).  And in an ordinary case, few facts are actually alleged in an indictment.

But this is no ordinary case.  Here, the Special Counsel asked the grand jury to return a 27-page speaking indictment containing extensive allegations about why Mr. Sussmann's purported statement is material.  *See, e.g.*, Indictment ¶ 5 (alleging that the purported false statement was material because it "misled the [Federal Bureau of Investigation ("FBI")] General Counsel and other FBI personnel concerning the political nature of his work and deprived the FBI of

information that might have permitted it more fully to assess and uncover the origins of the relevant data and technical analysis, including the identities and motivations of Sussmann's clients"); *id.* ¶ 32 (alleging that the purported false statement was material because "it was relevant to the FBI whether the conveyor of these allegations . . . was providing them as an ordinary citizen merely passing along information, or whether he was instead doing so as a paid advocate for clients with a political or business agenda" because that information "might have prompted further questions").

Because the Special Counsel chose to include extensive allegations about materiality in the Indictment, it is altogether proper and fitting for Mr. Sussmann to ask the Court to evaluate whether these allegations are sufficient as a matter of law.  *See, e.g.*, *United States v Hooker*, 841 F.2d 1225, 1227 (4th Cir. 1988) ("[I]n testing the sufficiency of an indictment, it is the statement of facts in the pleading, rather than the statutory citation that is controlling." (internal alterations and quotation marks omitted)); *United States v. Hall*, 20 F.3d 1084, 1087 (10th Cir. 1994) (explaining that "[a]n indictment should be tested solely on the basis of the allegations made on its face" and "[c]ourts should refrain from considering evidence outside the indictment when testing its legal sufficiency.").  They plainly are not.  Thus, Mr. Sussmann has plenty to work with in bringing a materiality challenge to the Section 1001 Indictment filed against him.  And there is no reason for Mr. Sussmann to wait to bring such a challenge.

## B.    The False Statement Charged Is Immaterial As A Matter Of Law

The Special Counsel next argues that Mr. Sussmann's purported false statement was material to the FBI's initiation of an investigation and material to the FBI's conduct of the investigation.  Again, his arguments are without merit.  And in any event, it is not necessary to even reach these arguments because the Special Counsel has not chosen to charge the only false statement that could be material in the tip context, namely, the false tip itself.

With respect to the initiation of an investigation, the Special Counsel seeks to establish that Mr. Sussmann's supposed false statement was material not by referring to any of the allegations actually included in the Indictment, but by making a series of grand claims about what the evidence at trial will show. Amazingly, the Special Counsel does not include a single citation to the allegations in the Indictment. Not one. Instead, the Special Counsel repeatedly invokes proof he expects to introduce at trial. *See, e.g.*, Dkt. No. 44 at 9 ("[T]he Government expects that *evidence at trial will prove* that the FBI *could have* taken any number of steps prior to opening what it terms a 'full investigation' . . . ." (emphases added)); *id.* at 10 ("[C]ontrary to the defendant's argument that a tipster's 'motivation' is insignificant and 'ancillary,' *the evidence at trial will demonstrate* that a person's motivation in providing information to the FBI *can be* a highly material fact in determining whether and how the FBI opens an investigation . . . ." (citation omitted) (emphases added)). But as the Special Counsel well knows, the Court "cannot consider facts beyond the four corners of the indictment." *United States v. Harris*, 2006 WL 2882711, at *3 (D.D.C. Oct. 5, 2006); *see also United States v. Safavian*, 429 F. Supp. 2d 156, 158-59 (D.D.C. 2006) (noting that the filing at issue "relie[d] heavily on documents that have been produced in discovery," which the Court could not "properly consider . . . in evaluating a motion to dismiss the indictment" as "the Court [is] [un]able . . . to consider matters outside the four corners of the indictment"). The Court accordingly cannot consider any of the "evidence" the Special Counsel inappropriately marshals in his Opposition.

When, by contrast, the Court considers the allegations actually included in the Indictment, it is clear that the charged false statement did not have any material impact on the FBI's decision to initiate an investigation. As we explained in our opening brief, while the Indictment contains a series of vague allegations about materiality, none of those allegations addresses whether Mr.

Sussmann's purported false statement could have influenced the only legally significant decision at issue—the FBI's decision whether to investigate the Russian Bank-1 Information.[3]  At most, the Indictment alleges that the purported false statement as to Mr. Sussmann's supposed client relationships was "relevant" because it "might have" led the FBI to take "additional or more incremental steps."  Indictment ¶ 32.  But relevance alone is insufficient to establish materiality because "[a] statement may be relevant but not material."  *Weinstock v. United States*, 231 F.2d 699, 701-02 (D.C. Cir. 1956); *see also id.* ("To be 'relevant' means to relate to the issue.  To be 'material' means to have probative weight, i.e., reasonably likely to influence the tribunal in making a determination required to be made."); *United States v. Johnson*, 19 F.4th 248, 259 (3d Cir. 2021) ("At other times, information presented to the government is 'relevant,' but ultimately still immaterial—after all, 'relevance' and 'materiality' are not synonymous." (internal quotation marks omitted) (citation omitted)).  And—in any event—the operative governmental decision at issue is not how the FBI might have conducted its investigation, but whether or not to open that investigation in the first place.  Because the Indictment does not contain any allegations sufficient to establish the materiality of the purported false statement in relation to that decision—the only decision that mattered—it must be dismissed.

---

[3] *See, e.g.*, Indictment ¶ 5 (suggesting that Mr. Sussmann's purported false statement was material because it "misled the FBI General Counsel and other FBI personnel concerning the political nature of his work and deprived the FBI of information that *might have* permitted it more fully to assess and uncover the origins of the relevant data and technical analysis, including the identities and motivations of Sussmann's clients" (emphasis added)); *id.* ¶ 6 (detailing what the FBI "*might have* learned" had it "uncovered the origins of the relevant data and analysis" (emphasis added)); *id.* ¶ 32 (alleging that Mr. Sussmann's purported false statement was material because it was "relevant" to the FBI whether he was providing the information "as an ordinary citizen" or whether he was doing so "as a paid advocate for clients with a political or business agenda" because such information "*might have*" led the FBI to take some incremental steps (emphasis added)).

With respect to the conduct of the investigation, the Special Counsel again improperly resorts to claims about what the evidence at trial will prove. *See, e.g.*, Dkt. No. 44 at 11 ("The *evidence at trial will also establish* that the defendant's false statement *had the capacity* to influence the FBI's conduct of this investigation." (emphases added)); *id.* at 12 ("But the government expects that *evidence at trial will establish* that the FBI general counsel was aware that the defendant represented the [Democratic National Committee ("DNC")] on *cybersecurity matters* arising from the Russian government's hack of its emails, *not* that he provided political advice . . . ." (first emphasis added)); *id.* at 13 ("[T]he government expects that [witnesses] *will testify at trial* that . . . ." (emphasis added)).  Here too, the Court must ignore these claims and instead evaluate the Indictment as it is, not as the Special Counsel would, in hindsight, prefer it to be.  *See Harris*, 2006 WL 2882711, at *3 ("Although [a party] may prove such facts at trial, this Court cannot consider facts beyond the four corners of the indictment.").  Moreover, these claims that the investigation may have been conducted in an incrementally different matter are wholly irrelevant to the only decision at issue—whether or not to initiate an investigation.

Even if the manner in which the FBI conducted its investigation were relevant—and it is not—the Indictment still fails to establish materiality.  Notably, the Indictment does not allege that the purported false statement had any actual impact on the outcome of the investigation or that the substantive information Mr. Sussmann provided was false.  Instead, the allegations in the Indictment and Opposition amount to little more than the Special Counsel's unsupported and speculative opinion that the FBI *could have* taken marginally different investigative steps.  But such baseless speculation cannot transform an immaterial statement into a material one.  *See Facchini*, 874 F.2d at 643 (noting that a "false statement must . . . be capable of having some non-trivial effect on a federal agency"); *see also People v. Klages*, 2021 WL 6059601, at *10 (Mich.

Ct. App. Dec. 21, 2021) (explaining that materiality "requires proof of something more than an investigator's unsupported and speculative opinion that he may have asked different questions, particularly absent evidence that the 'material fact' had any reasonable possibility of influencing the decision that matters"). And interpreting materiality to encompass the Special Counsel's unspecified allegations that the FBI *could have* conducted its investigation in a negligibly different way "would fling open the door to prosecuting every trivial misstatement (or trivial falsehood) offered during a [government] investigation" despite the fact "that a [defendant] deceives no one and [the defendant's] statement bears no importance whatsoever to the ultimate outcome of the investigation." *People v. Simon*, 2021 WL 6059599, at *16 (Mich. Ct. App. Dec. 21, 2021) (Gleicher, J., concurring). That is not—and cannot be—the law.

Moreover, as the Indictment itself acknowledges and the Opposition reiterates, the FBI was already aware of the "political nature" of Mr. Sussmann's work. *See, e.g.*, Indictment ¶ 9 ("In connection with his representation of the DNC as the victim of a hack, [Mr. Sussmann] met and communicated regularly with the FBI, the DOJ, and other U.S. government agencies."); *id.* ¶ 28 ("Michael Sussman[n] – Atty: [Law Firm-1] . . . Represents DNC, Clinton Foundation, etc."); Dkt. No. 44 at 12. The Special Counsel suggests that "the FBI General Counsel was aware that the defendant represented the DNC on *cybersecurity matters . . . not* that he provided political advice or was participating in the Clinton Campaign . . . ." Dkt. No. 44 at 12. But this is a distinction without a difference. The important point is that the FBI was aware that Mr. Sussmann represented the DNC—which is precisely what the Indictment itself makes clear. Indeed, the Indictment alleges that the FBI General Counsel was fully aware of Mr. Sussmann's representation of the DNC and purported affiliation with Hillary Clinton and supposedly conveyed that information to the Assistant Director of the FBI's Counterintelligence Division when describing who Mr.

Sussmann is.  *See* Indictment ¶ 28 ("Michael Sussman[n] – Atty: [Law Firm-1] . . . Represents DNC, Clinton Foundation, etc.").

The Opposition's reliance on *Brogan v. United States*, 522 U.S. 398 (1998) does not compel a different conclusion.  *See* Dkt. No. 44 at 12.  If anything, *Brogan* supports Mr. Sussmann's Motion here.  In *Brogan*, the Court considered whether an individual can be charged under Section 1001 for falsely answering "no" to a question asking whether he has committed a crime.  522 U.S. at 401.  Specifically, the petitioner argued that liability could not attach to such an "exculpatory no" because only statements that "pervert governmental functions" can give rise to Section 1001 liability.  *Id.*  The Court rejected that argument because it "cannot imagine how it could be true that falsely denying guilt in a Government investigation does not pervert a governmental function."  *Id.* at 402.  And the Court's reasoning underscores why the false statement charged here is immaterial as a matter of law.  The Court stated that "[c]ertainly the investigation of wrongdoing is a proper governmental function; and since it is the very *purpose* of an investigation to uncover the truth, any falsehood relating to the subject of the investigation perverts that function."  *Id.*  Here, however, Mr. Sussmann's purported false statement does not relate "to the subject of the investigation."  *Id.*  There was no investigation to begin with and the only statement that could be charged in connection with a provision of a tip is the false tip itself. Since the alleged false statement is completely ancillary to the tip that Mr. Sussmann provided, Mr. Sussmann's purported false statement is, for all the reasons provided, immaterial as a matter of law.[4]

_____

[4] Further, contrary to the Special Counsel's suggestion, Mr. Sussmann is not arguing that materiality turns on the credulousness of investigators.  Rather, Mr. Sussmann is arguing that because he had otherwise made the FBI aware of his representation of partisan clients, that impacts whether the purported false statement about other the existence of another partisan client could

At bottom, nothing in the Opposition cures the Indictment's failure to establish the materiality of Mr. Sussmann's purported false statement.  Much as the Special Counsel may now wish to ignore the allegations in the Indictment, he is bound by them and cannot cure the Indictment's shortcomings with a brief that advances new allegations as to ways in which the FBI could have initiated or conducted its investigation differently.  *See United States v. Ring*, 628 F. Supp. 2d 195, 204 (D.D.C. 2009) (stressing that at the motion to dismiss stage, "the Court 'cannot consider facts beyond the four corners of the indictment'" (citation omitted)).  Moreover, even assuming the Special Counsel could prove all the new allegations in the Opposition at trial, it would not change the fact that a statement that is ancillary to the substance of a tip is immaterial as a matter of law.

### C.   The Special Counsel's Theory of Materiality Raises Serious Constitutional and Other Concerns

In our opening brief, we argued that the theory of materiality advanced by the Special Counsel undermines the critical limiting function that this essential element is intended to serve and creates risks including: (1) overcriminalization; (2) chilling First Amendment speech; and (3) chilling legal advocacy.

First, the Special Counsel does nothing to address the ways in which his expansive reading of materiality would foster overcriminalization.  Indeed, in his Opposition, the Special Counsel doubles down on his capacious reading of materiality, suggesting that any statement made to any investigative agency at any time can give rise to a federal felony.  *See* Dkt. No. 44 at 6.  It is not at all clear that the Special Counsel concedes that there is any limitation on the kinds of false statements that can be charged.

---

truly be "capable of influencing an agency's action."  *Symantec Corp.*, 130 F. Supp. 3d at 123 n.16 (internal quotation marks omitted).

Second, the Special Counsel dismisses the First Amendment concerns we raised by arguing that materiality protects against the chilling of constitutional speech. *See* Dkt. No. 44 at 14. According to the Special Counsel, materiality ensures that Section 1001 "only criminalizes those false statements and lies that are particularly likely to cause harm." *Id.* But materiality provides no such protection from First Amendment concerns when that element is rendered ineffective by being defined so broadly that any statement made to any investigative agency at any time can be considered material. On the contrary, if the Special Counsel's expansive view of materiality prevails, well-intentioned people with truthful information about suspicious activity or potential criminal wrongdoing would be discouraged from providing tips to law enforcement for fear of a felony prosecution under Section 1001. Such concern would be more than justified: the government could always argue (like the Special Counsel is doing in this case) that, but for an ancillary false statement, it might have taken some different step or asked some different question—and the government could bring felony charges as a result. What reasonable law-abiding citizen would wish to voluntarily provide a tip to the government when the consequence of being a good citizen could be an indictment?

Third, the Special Counsel also dismisses as "fanciful" the idea that this Indictment could have a chilling effect on day-to-day communications between lawyers and the government. Dkt. No. 44 at 15. But here, the Special Counsel has not only brought an unprecedented prosecution—charging a tipster for a false statement other than the tip itself—but has brought such an unprecedented prosecution against a well-respected national security lawyer. If this Indictment does not have a chilling effect on advocacy by lawyers interacting with investigative agencies in the federal government, it is not clear what would. The law, and this Court, should protect a sphere of advocacy whereby lawyers can engage the FBI and other law enforcement agencies on behalf

of their clients without fear of felony prosecution over innocuous, ancillary statements made during those interactions with the government.  And that is why the law already has protections in place to safeguard zealous advocacy by lawyers, such as the litigation privilege, which broadly immunizes lawyers for making defamatory statements concerning others in judicial and quasi-judicial proceedings, *see Messina v. Krakower*, 439 F.3d 775, 760 (D.C. Cir. 2006); and Section 1001 itself, which provides that the criminal prohibition does "not apply to a party to a judicial proceeding, or that party's counsel . . . ."  18 U.S.C. § 1001(b).

## CONCLUSION

This is a case of extraordinary prosecutorial overreach.  And that overreach is inconsistent with the law, with common sense, and with important constitutional and other prudential concerns. For all the foregoing reasons, the one-count Indictment against Mr. Sussmann must be dismissed for failure to state an offense.

Dated:  March 11, 2022                     Respectfully submitted,

                                          */s/ Sean M. Berkowitz*
                                          Sean M. Berkowitz (*pro hac vice*)
                                          LATHAM & WATKINS LLP
                                          330 North Wabash Avenue
                                          Suite 2800
                                          Chicago, IL 60611
                                          Tel: (312) 876-7700
                                          Fax: (312) 993-9767
                                          Email: sean.berkowitz@lw.com

                                          Michael Bosworth (*pro hac vice*)
                                          LATHAM & WATKINS LLP
                                          1271 Avenue of the Americas
                                          New York, NY 10020
                                          Tel: (212) 906-1200
                                          Fax: (212) 751-4864
                                          Email: michael.bosworth@lw.com

                                          Natalie Hardwick Rao (D.C. Bar # 1009542)
                                          Catherine J. Yao (D.C. Bar # 1049138)
                                          LATHAM & WATKINS LLP
                                          555 Eleventh Street, NW
                                          Suite 1000
                                          Washington, DC 20004
                                          Tel: (202) 637-2200
                                          Fax: (202) 637-2201
                                          Email: natalie.rao@lw.com
                                          Email: catherine.yao@lw.com