**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| *v.* | Case No. 1:21-cr-00582 |
| **MICHAEL A. SUSSMANN,** | |
| *Defendant.* | |

**DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE TESTIMONY OR EVIDENCE
PERTAINING TO FORMER FBI ASSISTANT DIRECTOR BILL PRIESTAP'S AND
DEPUTY GENERAL COUNSEL TRISHA ANDERSON'S NOTES AND
MEMORANDUM IN SUPPORT**

When the defendant, Michael A. Sussmann, met with James Baker in September 2016, Mr. Baker did not record the meeting, take any notes of the meeting, create an official report of the meeting, or otherwise memorialize it.  Now, in an improper attempt to bolster Mr. Baker's testimony, the Special Counsel seeks to publish or adduce evidence of notes that two people *who were not even in the meeting* took regarding what was allegedly said in the meeting, even though these two people—Assistant Director E. William "Bill" Priestap of the Federal Bureau of Investigation ("FBI")'s Counterintelligence Division and former FBI Deputy General Counsel Trisha Anderson—have no reliable memory of even speaking to Mr. Baker about the meeting. The Special Counsel claims that the notes may be properly admitted as past recollections recorded of Mr. Baker's prior consistent statements.  The Special Counsel is simply not correct, and Mr. Sussmann accordingly moves to preclude introducing the notes, eliciting any testimony about them, or publishing them.

**BACKGROUND**

On September 19, 2016, Mr. Sussmann and Mr. Baker—and no one else—met at the FBI's Washington, D.C. headquarters.  Indictment ¶ 27.  Mr. Baker did not take any notes during the meeting; Mr. Baker did not ever prepare a report about the meeting; and Mr. Baker did not otherwise record the meeting.  At some point after the meeting, according to the Special Counsel, Mr. Baker described the meeting to a former Assistant Director of the FBI's Counterintelligence Division, E. William "Bill" Priestap, *id.* ¶ 28, and separately to "a former FBI Deputy General Counsel," Trisha Anderson, Dkt. No. 33 at 4, both of whom purportedly took notes about their conversations with Mr. Baker (collectively, the "Notes").

**A.     The Priestap Notes**

Mr. Priestap's notes (the "Priestap Notes") provide, in part, "Michael Sussman[n] – Atty: [Law Firm-1] – said not doing this for any client"; "Represents DNC, Clinton Foundation, etc."; "Been approached by Prominent Cyber People (Academic or Corp. POCs)"; and "People like: [three names redacted]."  Indictment ¶ 28 (emphasis omitted).

The Indictment characterizes the Priestap Notes as a contemporaneous record of Mr. Priestap's conversation with Mr. Baker.  *See id.*  But beyond offering that they "looked like his writing and organizational style," Mem. of Special Counsel's June 2, 2021 Interview of E.W. Priestap, SCO-3500U-018701, at -01, Mr. Priestap said he "[doesn't] remember why [he] wrote them down and who gave [him] the information," E.W. Priestap's June 3, 2021 Grand Jury Test., SCO-3500U-018746, at -98.  Not only that, but Mr. Priestap "[does] not recall actually writing these notes," *id.* at SCO-3500U-018815, nor can he confirm that the notes actually reflect any conversation he had with Mr. Baker, as opposed to a conversation he had with someone else, *id.* Indeed, Mr. Priestap *"advised he did not remember Baker conveying to him the information about Sussmann,"* Mem. of Special Counsel's June 2, 2021 Interview of E.W. Priestap at SCO-3500U-

018702, and was "not certain whether th[e] conversation reflected in the notes . . . was with Mr. Baker or maybe with someone else," E.W. Priestap's June 3, 2021 Grand Jury Test. at SCO-3500U-018815. Mr. Priestap also has "[n]o idea" why the phrase "said not doing this for any client"—written diagonally to the side of the main body of the notes—was written at all, and could offer no explanation for why those words were "perhaps darker or thicker than some of the other notes." *Id.* at SCO-3500U-018816.

Mr. Baker, meanwhile, did not write, approve, or review the Priestap Notes. He did not even learn of their creation or contents until the Special Counsel presented them to him in June 2020, more than three and a half years after the notes were purportedly made. *See* Mem. of Special Counsel's June 11, 2020 Interview of J. Baker, SCO-3500U-009262, at -70. By that time, Mr. Baker's memory of Mr. Sussmann's alleged statement had long since become unreliable, as evidenced by his inconsistent statements on the topic over the preceding two years. *Compare* J. Baker Oct. 18, 2018 Jt. Com. Test. Tr. at 122 (testifying that he did not remember Mr. Sussmann "specifically saying that he was acting on behalf of a particular client"), *with* J. Baker July 15, 2019 Interview with DOJ OIG, SCO-3500U-009213, at -43 (stating that Mr. Sussmann had mentioned "some number of people that were his clients"), *with* Mem. of Special Counsel's June 11, 2020 Interview of J. Baker at SCO-3500U-009270 (before being shown the notes, stating that Mr. Sussmann "did not specify that he was representing a client regarding the matter, nor did Baker ask him if he was representing a client," and "it did not *seem* like Sussmann was representing a client" (emphasis added)). Lacking a reliable recollection, Mr. Baker simply assumed the Priestap Notes to be an accurate reflection of Mr. Sussmann's alleged statement. *See* Mem. of Special Counsel's June 18, 2020 Interview of J. Baker, SCO-3500U-009298, at -301.

### B.      The Anderson Notes

Ms. Anderson's notes (the "Anderson Notes") include, on top, "Deputies Mtg. 9/19/16," and then, after a redaction and under a second heading reading "9/19[/]16," go on to state: "Sussman[n] Mtg w/ Baker" and "No specific client but group of cyber academics talked w/ him abt research," followed by the phrase, "article this Friday – NYT/WaPo/WSJ."  Anderson Notes at SCO-3500U-000018.  The relevant sentence fragment contains no subject revealing *who* had "[n]o specific client," nor any other context for that phrase.  Ms. Anderson, who was first asked about these notes by the Special Counsel over five years after they were written, has no meaningful memory of the notes or their context: she has only a "vague recollection" of discussing this topic with Mr. Baker and cannot "recall specifics."  Mem. of Special Counsel's Jan. 5, 2022 Interview of T. Anderson, SCO-3500U-000087, at -88, -96.  When shown the notes, Ms. Anderson stated that she had been "surprised" to learn about the "no specific client" phrase, and she "d[id] not now recall hearing from Baker his use" of that phrase; she could only assume that she got that phrase from Mr. Baker "because her notes reflect[ed] it."  *Id.* at -88.  She has also separately warned the Special Counsel that she lacks a reliable memory with respect to "specific details discussed in internal meetings."  Mem. of Special Counsel's May 26, 2021 Interview of T. Anderson, SCO-3500U-000021, at -25.

Once again, Mr. Baker did not write, approve, or review the Anderson Notes.  And once again, he learned of their creation or contents only when the Special Counsel presented them to him more than five years later.  *See* Mem. of Special Counsel's Dec. 2, 2021 Interview of J. Baker, SCO-3500U-009381, at -81.  Mr. Baker also has "no specific recollection" of this meeting with Ms. Anderson, and has only been able to speculate about what he "would have" said to her.  *Id.* Importantly, when shown the Anderson Notes, Mr. Baker assumed that he must have discussed the conversation with Mr. Sussmann *at a deputies meeting*, simply because the Anderson Notes

said "Deputies Mtg"—even though Ms. Anderson said she believed, based on the notes, that she spoke to Mr. Baker about this topic at a different meeting.  Mem. of Special Counsel's Jan. 5, 2022 Interview of T. Anderson at SCO-3500U-000088.

## LEGAL STANDARD

As "the party seeking to introduce hearsay evidence," the Special Counsel "has the burden of proving each element of the exceptions it asserts."  *United States v. Hsia*, 87 F. Supp. 2d 10, 13 (D.D.C. 2000).   Where the "admissibility determinations . . . hinge on preliminary factual questions," that burden must be "established by a preponderance of proof."  *Bourjaily v. United States*, 483 U.S. 171, 175 (1987).  And further, where evidence includes hearsay-within-hearsay (or, as here, hearsay within hearsay *within hearsay*, or "triple hearsay"), such evidence is only admissible if "each part of the combined statements . . . conform[s] with an exception to the rule [against hearsay].'"  *Gilmore v. Palestinian Interim Self-Gov't Auth.*, 843 F.3d 958, 970 (D.C. Cir. 2016) (second alteration in original) (quoting Fed. R. Evid. 805).

Here, to introduce the Priestap Notes and the Anderson Notes as Mr. Baker's prior consistent statements, the Special Counsel must satisfy the requirements of Rule 801(d)(1)(B)(i)-(ii): (A) "[t]he declarant testifies and is subject to cross-examination about a prior statement"; (B) the prior statement "is consistent with the declarant's testimony"; and (C) the statement is offered to either "rebut a[] . . . charge that the declarant recently fabricated [their testimony]" or "to rehabilitate the declarant's credibility as a witness."  Fed. R. Evid. 801(d)(1)(B)(i)-(ii).

To introduce the Priestap Notes and Anderson Notes as past recollections recorded of Mr. Baker's prior consistent statements, the Special Counsel must satisfy the requirements of Rule 803(5).  He must establish by a preponderance of the evidence that each recorded recollection: "(A) is on a matter the witness once knew about but now cannot recall well enough to testify fully

and accurately; (B) was made or adopted by the witness when the matter was fresh in the witness's memory; and (C) accurately reflects the witness's knowledge."  Fed. R. Evid. 803(5).

## ARGUMENT

Assuming the Special Counsel lays a proper foundation (which the defense does not concede), the Special Counsel may be permitted to elicit testimony from Mr. Baker about his own prior consistent statements to others.  But the Special Counsel should be precluded at trial from: (1) introducing the Notes themselves; (2) eliciting testimony about them; or (3) publishing or otherwise displaying the Notes.  There are two fundamental reasons why: (1) the Notes do not satisfy Rule 803(5)'s requirements for past recollections recorded; and (2) it would amount to unfair and improper bolstering of Mr. Baker in contravention of several rules of evidence.

### A.      The Notes Are Not Past Recollections Recorded

A recorded recollection is admissible under an exception to the Rule Against Hearsay only where the recording (A) "is on a matter the witness once knew about but now cannot recall well enough to testify fully and accurately," (B) "was made or adopted by the witness when the matter was fresh in the witness's memory," and (C) "accurately reflects the witness's knowledge."  Fed. R. Evid. 803(5).  Neither the Priestap Notes nor the Anderson Notes meet these requirements.

*First*, the Special Counsel cannot establish that the Notes concern matters Mr. Priestap or Ms. Anderson "once knew."  *Id.*  Mr. Priestap cannot say that the notes even reflect a conversation with Mr. Baker—he does not know.  *See* E.W. Priestap's June 3, 2021 Grand Jury Test. at SCO-3500U-018815 (Mr. Priestap was "not certain whether th[e] conversation reflected in the notes . . . was with Mr. Baker or maybe with someone else.").  And Ms. Anderson only has a "vague recollection" of a conversation with Mr. Baker and cannot say that the notes reflect any substance that Mr. Baker actually discussed with her in more detail.  Mem. of Special Counsel's Jan. 5, 2022 Interview of T. Anderson at SCO-3500U-000088.

*Second*, the Special Counsel cannot establish that the Notes were taken "when the matter was fresh" in either Mr. Priestap's or Ms. Anderson's memory because neither witness can confirm when, if ever, they "made or adopted" the Notes.   Fed. R. Evid. 803(5)(B).   Here, neither Mr. Priestap nor Ms. Anderson can say when they wrote the Notes, let alone how long after their conversations with Mr. Baker they wrote them.   Mr. Priestap stated that he "[doesn't] remember why [he] wrote them down and who gave [him] the information," E.W. Priestap's June 3, 2021 Grand Jury Test. at SCO-3500U-018798, nor does he "recall actually writing these notes," *id.* at -815.   And the Priestap Notes do not otherwise indicate a specific date or time.   Further, Mr. Priestap has expressly stated he has "no idea" when he wrote "said not doing this for any client," including whether he wrote it after he wrote the rest of the Priestap Notes.   *Id* at -816.   That phrase's diagonal placement and ostensibly different "font" additionally suggest it was an afterthought added later. Similarly, although the Anderson Notes are dated "9/19[/]16," they lack any indication as to the time they were written.   Ms. Anderson also could not recall precisely when they were written: based only on the way the notes were written, she "thinks" the relevant conversation occurred with Mr. Baker one-on-one, after the deputies meeting, but had no actual recollection.   *See* Mem. of Special Counsel's Jan. 5, 2022 Interview of T. Anderson at SCO-3500U-000088.

*Third*, and most significantly, both authors of the Notes have disclaimed that these Notes "accurately reflect[] [their] knowledge."   Fed. R. Evid. 803(5)(C).   This alone is fatal to the Special Counsel's intended course of action.   The Notes present one person's records of *another person's* statements.   Courts have made clear that in such circumstances, "[w]here a person perceives an event and reports it to another person who records the statement, *both* must ordinarily testify to establish that the statement is a past recollection recorded under Rule 803(5)," and, in addition to the original witness's testimony, "[t]he recorder must . . . *testify to the accuracy of his*

*transcription.*"  *United States v. Schoenborn*, 4 F.3d 1424, 1427-28 (7th Cir. 1993) (emphases added) (citation omitted); *see also United States v. Booz*, 451 F.2d 719, 725 (3d Cir. 1971) (adopting rule that "where . . . a record is the joint product of two individuals, one who makes an oral statement and one who embodies it in a writing, if *both* parties are available to testify at trial *as to the accuracy* with which each performed his role, the recollection may be admitted" (emphases added)).  And more generally, for a recorder to overcome Rule 803(5), he must offer "testimony [that] sufficiently supports" that the record "accurately reflected his knowledge at th[e] time [it was written], notwithstanding his inability (at the time of trial) to remember the [underlying] event itself."  *See, e.g.*, *Parker v. Reda*, 327 F.3d 211, 213-14 (2d Cir. 2003) (per curiam) (holding Rule 803(5) had been satisfied for a memorandum where the author testified unequivocally that he "wr[o]te it," had "personal knowledge" of the event underlying it, and it "reflect[ed] [his] knowledge of the event"—and where the author even signed and dated it).

Here, however, Mr. Priestap and Ms. Anderson have not confirmed the provenance and accuracy of the Notes and thus cannot clearly testify that they wrote the Notes, ever had personal knowledge of Mr. Baker's remarks underlying the Notes, or confirm that the Notes reflect their knowledge (setting aside Mr. Baker's own inconsistent recollection of the matters purportedly recorded in the Notes).  Mr. Priestap, for example, simply cannot say that his notes are accurate. After all, he did "not recall actually writing these notes," does not "remember why [he] wrote them down," and does not remember "who gave [him] the information."  E.W. Priestap's June 3, 2021 Grand Jury Test. at SCO-3500U-018798, -815.  As a result, he has not and cannot testify that his notes are accurate.  Ms. Anderson likewise cannot say that her notes are accurate.  She has only a "vague recollection" of even speaking to Mr. Baker and cannot "recall specifics."  Mem. of Special Counsel's Jan. 5, 2022 Interview of T. Anderson at SCO-3500U-000088, -96.  If anything, she has

suggested that her notes are *inaccurate*.  For example, they say "[n]o specific client," yet she does "not now recall hearing from Baker his use of the phrase 'no specific client.'"  *Id.*  Thus, "she was *surprised* to read about the 'no specific client' phrase and *does not* recall Baker emphasizing that fact to her."  *Id.* (emphases added).

In sum, the Special Counsel cannot prove by a preponderance of the evidence that either Mr. Priestap's or Ms. Anderson's Notes record information they once "knew"; that the Notes were made when the matters recorded were "fresh" in their minds; or that the contents of the Notes are even accurate.  Thus, they do not meet the requirements of a past recollection recorded, and therefore the Notes cannot be introduced at trial.

**B.     The Notes May Not Be Introduced To Unfairly And Improperly Bolster Mr. Baker**

The defense is aware of no case in which a party has been able to introduce purported prior consistent statements of one witness through the past recorded recollections of *another* witness who lacks any memory of the recorded statements.  It would be unprecedented—and unjust—to permit the Special Counsel to elicit testimony about the Notes, or offer them into evidence, when neither Mr. Priestap nor Ms. Anderson has any meaningful memory that would permit cross-examination.  Additionally, the Notes are, on their face, precisely the kind of unreliable statements that the hearsay rules are meant to proscribe.  Permitting their entry into evidence, permitting testimony about them, or permitting their publication to the jury would only serve to confuse the jury and prejudice Mr. Sussmann.

*1.     The Notes themselves cannot be used as evidence of prior consistent statements.*

The defense is not aware of a single case in which the government was permitted under Rule 803(d)(1)(B) to introduce purportedly prior consistent statements of a declarant *through* past recollections recorded by *another* witness, where that witness could not remember *anything* of

import about those records and thus could not be subject to meaningful cross-examination. Indeed, courts have said that where seeking to introduce a prior consistent statement through a third-party witness, Rule 801(d)(1)(B) requires that the third-party witness be subject to meaningful cross examination. *See, e.g.*, *United States v. Hebeka*, 25 F.3d 287, 292 (6th Cir. 1994) (accepting prior consistent statement where "[b]oth witnesses [the third-party witness and the declarant] were *subject to cross examination* concerning *their memory* of past events" (emphases added)); *United States v. Montague*, 958 F.2d 1094, 1095, 1099 (D.C. Cir. 1992) (holding government could admit a declarant's prior consistent statement "through the *testimony* of . . . of a third party" police officer that "took the statement, *identified* it, and *presented it to the jury*" (emphases added)); *Gibbs v. Doe*, No. 4:17-CV-00179-RBH, 2018 WL 5013596, at *2 (D.S.C. Oct. 16, 2018) ("Where admissible, the prior consistent statement may be testified to by either the witness himself or any other person *with personal knowledge of the statement*." (emphasis added) (quoting 30B Michael H. Graham, Federal Practice and Procedure § 7012, at 135 (2000))).

But here Mr. Priestap and Ms. Anderson cannot be subject to meaningful cross-examination about the Notes or what Mr. Baker purportedly said to them some time after Mr. Baker's meeting with Mr. Sussmann, because they simply do not remember either. Mr. Priestap cannot "recall actually writing these notes," E.W. Priestap's June 3, 2021 Grand Jury Test. at SCO-3500U-018815, let alone whether the underlying information even reflects a conversation he had with Mr. Baker or someone else, Mem. of Special Counsel's June 2, 2021 Interview of E.W. Priestap at SCO-3500U-018702. And Ms. Anderson has at best a "vague recollection" of a conversation with Baker, forgetting "specifics" and expressing "surprise[]" at the contents of her notes. Mem. of Special Counsel's Jan. 5, 2022 Interview of T. Anderson at SCO-3500U-000088, -96. Were the Special Counsel to nevertheless introduce the Notes as prior consistent statements,

the jury would be invited to treat these notes as gospel, even though *no one* can explain what they mean, whether they are accurate, when they were written, or a number of other key details.  And Mr. Sussmann would be without recourse to meaningfully challenge the Notes through a productive cross-examination of those witnesses.[1]

### 2.     The Notes are fatally unreliable.

Rule 801(d)(1)(B) aside, the Notes are also fundamentally unreliable.  Hearsay rules, at their core, are "grounded in the notion that untrustworthy evidence should not be presented to the triers of fact."  *Chambers v. Mississippi*, 410 U.S. 284, 298 (1973); *see also Hemphill v. New York*, 142 S. Ct. 681, 693 (2022) ("[F]ederal hearsay rules generally preclude all parties from introducing *unreliable*, out-of-court statements for the truth of the matter asserted." (emphasis added)).  Allowing the Special Counsel to admit or publish these *triple-hearsay* Notes would fly in the face of this core principle.  To be sure, Rule 801(d)(1)(B) allows for the *proper* rehabilitation of a witness with a prior consistent statement *assuming* the statements have an indicia of reliability or that the testifying witness can be subject to meaningful cross-examination.  *See* Fed. R. Evid. 801(d)(1) advisory committee notes to 1974 enactment ("[T]he context of a formal proceeding, an oath, *and the opportunity for cross-examination* provide firm additional assurances of the *reliability* of the prior statement." (emphases added)); Fed. R. Evid. 801(d)(1) advisory committee

---

[1] The Special Counsel also cannot introduce the Notes as prior consistent statements *through Mr. Baker*.  A witness's statements recorded in someone else's notes may only be "properly treated as a prior consistent statement made by" the witness where the witness "immediately following the [underlying conversation], adopted the notes as accurate and in accord with his own recollection."  *United States v. Rubin*, 609 F.2d 51, 62 (2d Cir. 1979), *aff'd*, 449 U.S. 424 (1981); *see also United States v. Ho*, 984 F.3d 191, 209 (2d Cir. 2020) (finding prior consistent statement, "[a]s in *Rubin*," where the witness "could be said to have adopted, *at the time*, the view expressed in the [record]" (emphasis added)), *cert. denied*, 141 S. Ct. 2862 (2021).  Here, Mr. Baker did not "adopt[] the notes as accurate and in accord with his own recollection" of his purported conversations with Mr. Priestap or Ms. Anderson, and certainly not "immediately following" them. *Rubin*, 609 F.2d at 62.

notes to 2014 amendments (Rule 801(d)(1)(B) "does not allow impermissible bolstering of a witness"; and "[a]s before, to be admissible for rehabilitation, a prior consistent statement must satisfy the strictures of Rule 403."). But here, the Notes are anything but reliable: they reflect a game of bad-reception telephone. They consist of sentence fragments of what one person wrote down of what another person said about what another person said. The Notes are not formal reports; they were not sworn; they were not adopted; they were not dated; they were not typed; and they do not even reflect fully formed thoughts. Rather, they are scattershot scribblings of casual and long-forgotten conversations that lack necessary subjects and objects that would allow readers to agree on what the notes even convey. It comes as no surprise, then, that *no one*—not the note takers, not Mr. Baker, nor anyone else—remembers when the Notes were recorded, where they were recorded, why they were recorded, who recorded them, or even who provided the underlying information.

The Special Counsel focuses on the particular phrases "said not doing this for any client" and "[n]o specific client." But *who* said these statements? What does "this" mean? "No specific client" with respect to what? Mr. Priestap and Ms. Anderson cannot answer these basic questions. Indeed, because they had no independent recollection of the purported notes, they cannot discount the possibility that Mr. Baker told them "that [Mr. Sussmann] *did not specify* that he was representing a client regarding the matter, nor did Baker ask him if he was representing a client," as Mr. Baker told the Special Counsel before he was shown the Priestap Notes. Mem. of Special Counsel's June 11, 2020 Interview of J. Baker at SCO-3500U-009270 (emphasis added). Absent clear answers, the Notes lack sufficient probative value. And it would be wholly improper for the Special Counsel to invite the jury to draw conclusions that the witnesses themselves cannot draw.

Nor can Mr. Baker attest to the Notes' reliability.  Critically, he has on several occasions wavered on key facts about his alleged meetings with these employees—and even contradicted the authors' own views of the Notes.  The Priestap Notes say, "said not doing this for any client."  But before seeing them for the first time in June 2020—more than 44 months after his purported conversation with Mr. Priestap—Mr. Baker had testified on multiple occasions to exactly the opposite.  He testified to Congress, for instance, that he did *not* remember Mr. Sussmann "specifically saying that he was acting on behalf of a particular client."  J. Baker Oct. 18, 2018 Jt. Com. Test. Tr. at 122.  Further contradicting the Priestap Notes, in July 2019, Mr. Baker opined that Mr. Sussmann *had* referred to "some number of people that *were* [Mr. Sussmann's] clients." J. Baker July 15, 2019 Interview with DOJ OIG at SCO-3500U-009243 (emphasis added).  And even as recently as June 2020, Mr. Baker explained to the Special Counsel that Mr. Sussmann "*did not specify* that he was representing a client regarding the matter, *nor did Baker ask him* if he was representing a client."  Mem. of Special Counsel's June 11, 2020 Interview of J. Baker at SCO-3500U-009270 (emphasis added).  As to the Anderson Notes, Mr. Baker interpreted them to "recall" that those Notes were created at a "deputies meeting," Mem. of Special Counsel's Dec. 2, 2021 Interview of J. Baker at SCO-3500U-009381, whereas Ms. Anderson said she understood her notes to indicate that the relevant conversation occurred *not* during a deputies meeting, but at a separate, subsequent meeting between herself and Mr. Baker.  Mem. of Special Counsel's Jan. 5, 2022 Interview of T. Anderson at SCO-3500U-000088.  In short, Mr. Baker's statements only reinforce that *no one* can accurately and authoritatively explain what the Notes mean.

          3.     *Introduction of these unreliable Notes would prejudice Mr. Sussmann, confuse the jury, and offer no otherwise probative benefit.*

In light of the foregoing, Federal Rule of Evidence 403's admonition against admitting evidence whose "probative value is substantially outweighed by a danger of . . . unfair prejudice,

confusing the issues, misleading the jury, . . . wasting time, or needlessly presenting cumulative evidence" must govern here.  *See* Fed. R. Evid. 403.  The prejudice to Mr. Sussmann from the introduction of the Notes would be great.  Their probative value, by contrast, is wanting.

Only Mr. Sussmann and Mr. Baker were privy to the alleged false statement charged here. Nobody else was in the meeting.  Mr. Baker did not record the meeting; Mr. Baker did not take notes during the meeting; and Mr. Baker did not prepare or cause to be prepared a report documenting their meeting.  The Special Counsel cannot now be permitted to bolster Mr. Baker's testimony through collateral, extrinsic, unreliable, and third-hand evidence.  Doing so would run a dangerous risk that the jury would impermissibly overvalue the unsworn say-so of two FBI employees who cannot be subject to meaningful cross-examination, simply because there are no recordings of the meeting itself.  For similar reasons, the Notes' admission would serve only to confuse the jury.  After all, the Notes confuse the very individuals who the Special Counsel says wrote them.  Accordingly, how could they *not* confuse the jury?

It may ultimately be proper for the Special Counsel to elicit testimony from Mr. Baker regarding his own prior consistent statements (a fact that the defense does not concede). But any attempt to go a step further to elicit testimony about, introduce, or publish the *Notes* finds no support in the law.

## CONCLUSION

For these reasons, Mr. Sussmann requests that this Court issue an order precluding the Special Counsel from offering the Notes of Mr. Priestap and Ms. Anderson into evidence, eliciting any testimony about them, or publishing them at any time.

Dated:  April 4, 2022                          Respectfully submitted,

                                               */s/Sean M. Berkowitz*
                                               Sean M. Berkowitz (*pro hac vice*)
                                               LATHAM & WATKINS LLP
                                               330 North Wabash Avenue
                                               Suite 2800
                                               Chicago, IL 60611
                                               Tel: (312) 876-7700
                                               Fax: (312) 993-9767
                                               Email: sean.berkowitz@lw.com

                                               Michael Bosworth (*pro hac vice*)
                                               LATHAM & WATKINS LLP
                                               1271 Avenue of the Americas
                                               New York, NY 10020
                                               Tel: (212) 906-1200
                                               Fax: (212) 751-4864
                                               Email: michael.bosworth@lw.com

                                               Natalie Hardwick Rao (D.C. Bar # 1009542)
                                               Catherine J. Yao (D.C. Bar # 1049138)
                                               LATHAM & WATKINS LLP
                                               555 Eleventh Street, NW
                                               Suite 1000
                                               Washington, DC 20004
                                               Tel: (202) 637-2200
                                               Fax: (202) 637-2201
                                               Email: natalie.rao@lw.com
                                               Email: catherine.yao@lw.com