IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>*v.*<br><br>**MICHAEL A. SUSSMANN,**<br><br>*Defendant*. | Case No. 1:21-cr-00582 |

**DEFENDANT'S MOTION TO DISMISS THIS CASE IF THE SPECIAL COUNSEL DOES NOT IMMUNIZE RODNEY JOFFE AND MEMORANDUM IN SUPPORT**

The Special Counsel has made Rodney Joffe a cornerstone of its case against Mr. Sussmann. Most conspicuously, the Special Counsel charges that Mr. Sussmann falsely told James Baker that he was not conveying information on behalf of a client when Mr. Sussmann was actually conveying it on behalf of Mr. Joffe. While Mr. Joffe is prepared to testify in Mr. Sussmann's defense—and to offer critical exculpatory testimony on behalf of Mr. Sussmann, including that Mr. Joffe's work was not connected to the Clinton Campaign—the Special Counsel is making it impossible for Mr. Sussmann to call Mr. Joffe as an exculpatory witness at trial. The Special Counsel is doing so by manufacturing incredible claims of continuing criminal liability for Mr. Joffe that are forcing Mr. Joffe to assert his Fifth Amendment right. It is now April 2022. It is simply inconceivable that Mr. Joffe faces any real continuing criminal exposure in connection with the Special Counsel's investigation. The Special Counsel is yet again overreaching, and doing so in violation of Mr. Sussmann's Fifth and Sixth Amendment rights. Accordingly, and consistent with the law of multiple circuits confronting prosecutorial misconduct of the sort here, Mr. Sussmann asks that this Court present the Special Counsel with the option of granting Mr. Joffe immunity or seeing this case dismissed.

**BACKGROUND**

A criminal defendant "has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law." *Washington v. Texas*, 388 U.S. 14, 19 (1967).  Pursuant to this right, D.C. Circuit law makes clear that the government cannot improperly interfere with a defendant's ability to call exculpatory witnesses at trial.  *See United States v. Davis*, 974 F.2d 182, 186 (D.C. Cir. 1992) ("[P]rosecutorial and judicial actions aimed at discouraging defense witnesses from testifying ha[ve] been deemed to deprive the criminal defendant of his Sixth Amendment compulsory process right." (citing *Webb v. Texas*, 409 U.S. 95 (1972) (per curiam))).  Indeed, where the government has prevented exculpatory witnesses from testifying by impermissibly threatening their prosecution, D.C. courts have reversed those defendants' convictions.  *See, e.g.*, *United States v. Smith*, 478 F.2d 976, 979 (D.C. Cir. 1973) (reversing convictions because "the prosecutor's warning was plainly a threat that resulted in depriving the defendants of [the witness's] testimony").

In *Smith*, for example, the D.C. Circuit reversed the defendants' convictions because the prosecution advised an exculpatory witness "that if he took the stand . . . he 'would' be prosecuted . . . . He was then not charged with any offenses and the plain inference from the circumstances was that if he did not testify he would not be prosecuted for any of said offenses." *United States v. Simmons*, 670 F.2d 365, 369 & n.1 (D.C. Cir. 1982) (describing *Smith*, 478 F.2d at 978-79). The D.C. Circuit explained that "[t]he admonition that the prosecutor gave to [the witness] was obviously calculated to induce him not to testify for the defense.  It was a threat over and above any advice that the record indicated was timely, necessary or appropriate." *Id.*  And, in *United States v. Blackwell*, but for the defendant's failure to "call[] [the exculpatory witness] as a defense witness" at trial, the D.C. Circuit noted that it "might have concluded that . . . misinformation"

provided by the prosecution to the exculpatory witness about the potential for reinstatement of charges "constituted harmful and reversible error." 694 F.2d 1325, 1343 (D.C. Cir. 1982).

In other circuits too, courts are clear that the government cannot prevent exculpatory witnesses from testifying through improper threats of criminal exposure. *See United States v. Morrison*, 535 F.2d 223, 227-28 (3d Cir. 1976) ("repeated [Fifth Amendment] warnings which culminated in a highly intimidating personal interview" were found to have "infringed defendant's constitutional right to have [the witness's] freely-given testimony"); *United States v. MacCloskey*, 682 F.2d 468, 479 (4th Cir. 1982) ("the U.S. Attorney's eleventh hour call . . . suggesting that [the witness] would be well-advised to remember the Fifth Amendment" "independently warrants the grant of a new trial"); *United States v. Hammond*, 598 F.2d 1008, 1012 (5th Cir. 1979) (finding "substantial governmental interference" with defense witness based on prosecutorial threat that witness would have "nothing but trouble" in another pending trial if he continued to testify); *United States v. Aguilar*, 90 F. Supp. 2d 1152, 1164-68 (D. Colo. 1998) (finding "defendant's due process/compulsory process claim . . . meritorious" in part due to prosecutor's warning that "there might be a problem with [the witness's] plea bargain"); *United States v. Lord*, 711 F.2d 887, 891 (9th Cir. 1983) ("record can also be read to suggest . . . prosecutorial misconduct," because exculpatory witness "testified that . . . the prosecutor told him that whether he would be prosecuted depended on his testimony" and because "[t]he prosecutor indicated that he told [the witness] about the self-incrimination privilege and that the government would not prosecute [the witness] if he submitted to an interview and testified truthfully").

Where the government improperly threatens criminal prosecution to prevent an exculpatory witness from testifying, courts typically present the government with a choice—either dismissing the case or granting use immunity "pursuant to 18 U.S.C. §§ 6002, 6003." *Morrison*,

535 F.2d at 229; *see also Lord*, 711 F.2d at 892-93 ("the court should enter a judgment of acquittal for [defendant] unless the prosecution requests use immunity for [witness] at a new trial"); *United States v. Bahadar*, 954 F.2d 821, 826 (2d Cir. 1992) (Second Circuit leaves "the immunity decision to the executive branch but interpos[es] the judicial power to subject the government to certain choices of action . . . requiring the government to grant defense witness immunity at the risk of dismissal of the indictment."). To determine whether to present the government with such a choice, courts typically employ a two-prong test requiring the defendant to show: (1) the government has forced a potential witness to invoke the Fifth Amendment through misconduct, such as (a) "threats, harassment, or other forms of intimidation," (b) conferring immunity "on some witnesses and not on others" unmoored from "legitimate law enforcement concerns," or (c) "deliberately den[ying] 'immunity for the purpose of withholding exculpatory evidence and gaining a tactical advantage through such manipulation;'"[1] and (2) the relevant witness's testimony is "material, exculpatory and not cumulative and is not obtainable from any other source." *United States v. Ebbers*, 458 F.3d 110, 119 (2d Cir. 2006) (citations omitted).

Although the D.C. Circuit has not expressly adopted this analytical framework, there is no reason it should not be applied here. In *Smith* and *Blackwell*, the D.C. Circuit demonstrated that it will reverse convictions outright where the government has, in fact, impermissibly prevented exculpatory witnesses from testifying. *See Smith*, 478 F.2d at 979; *Blackwell*, 694 F.2d at 1343. It follows that the D.C. Circuit would also offer the government the pretrial alternative of granting witness immunity short of the ultimate consequence of dismissal. *Cf. Simmons*, 670 F.2d at 371

---

[1] Prosecutorial misconduct "does not require a defendant to show specific intent on the part of the Government to interfere with his due process rights. . . 'If the suppression of evidence results in constitutional error, it is because of the character of the evidence, not the character of the prosecutor.'" *United States v. Quinn*, 728 F.3d 243, 260 (3d Cir. 2013) (quoting *United States v. Agurs*, 427 U.S. 97, 110 (1976)).

4

(remanding for an evidentiary hearing on possible prosecutorial misconduct and noting that if "the court decides to grant a new trial . . . [the witness] can be compelled to [testify] by a grant of immunity").[2]

## ARGUMENT

The Special Counsel is engaging in tactics that are improperly preventing Mr. Sussmann from calling Mr. Joffe as an exculpatory witness at trial. The Special Counsel's astonishing insistence that Mr. Joffe continues to face criminal exposure for conduct that occurred more than five years ago, the Special Counsel's discriminatory approach to immunity in this case, and the Special Counsel's unfair and unsupported threats all support a finding that the Special Counsel is engaging in precisely the types of misconduct that justify dismissal of a criminal case. Should the Special Counsel persist in refusing to immunize Mr. Joffe—a critical exculpatory witness who is prepared to testify on behalf of Mr. Sussmann—this Court must dismiss the charge against Mr. Sussmann to avoid a trial that "deprive[s] the criminal defendant of his Sixth Amendment compulsory process right." *Davis*, 974 F.2d at 186.

### A.   The Special Counsel Is Engaged in Prosecutorial Misconduct.

The Special Counsel's misconduct will improperly and unfairly force Mr. Joffe to invoke his Fifth Amendment right and interfere with Mr. Sussmann's right to call witnesses in his defense.

*First*, the Special Counsel continues to threaten Mr. Joffe with potential prosecution. After Mr. Joffe received a trial subpoena from Mr. Sussmann, counsel for Mr. Joffe asked the Special Counsel's Office whether Mr. Joffe remains a subject of its investigation. *See* Letter from Steven

---

[2] The *choice* between immunity and dismissal is distinct from the government being "compelled to grant a defense witness immunity," a question upon which the D.C. Circuit has expressly reserved. *United States v. Lugg*, 892 F.2d 101, 104 (D.C. Cir. 1989). Regardless, *nothing in this motion depends upon such a power*.

5

A. Tyrrell (Apr. 1, 2022), attached hereto as Exhibit A.  Incredibly, the Special Counsel's Office advised that Mr. Joffe remained a subject.  Moreover, when pressed and "[r]ather than provide any additional information . . . [the Special Counsel's Office] stated that . . . Mr. Joffe's status in the investigation was sufficient to establish a good faith basis to invoke the privilege against self-incrimination." *Id.* at 1.  As a result, "[b]ased on these circumstances, as well as [Mr. Joffe's] concern that the [Special Counsel's Office] has advanced extremely aggressive, if not unprecedented theories of prosecution, and has evinced an unwillingness to consider exculpatory evidence," Mr. Joffe informed defense counsel that he "will invoke his rights under the Fifth Amendment if called as a witness at" trial. *Id.* at 2.

When asked how Mr. Joffe could remain a subject of the Special Counsel's investigation given that more than five years had elapsed since the events described in the Indictment, *see* 18 U.S.C. § 3282 ("no person shall be prosecuted . . . unless the indictment is found or the information is instituted within five years"), the Special Counsel's Office vaguely noted that: "Yota[P]hone-related allegations"—which were provided to Agency-2 in February 2017— "continued to 'percolate through various branches of the government and around the private sector after that date, in various forms;'" that "certain fraud statutes have longer than a five-year limitations period, although [the Special Counsel's Office] did not specify what statutes might be implicated by the events in question;" and that the Special Counsel's Office "was unable to put an end date on [its] investigation at this point."  Ex. A at 2.  This "justification" for the continuing criminal exposure of Mr. Joffe is utterly without merit and transparently pretextual.  Mr. Sussmann has received hundreds of thousands of pages of discovery and scores of witness statements in this matter (including related to YotaPhones), even though Mr. Sussmann has not been charged with any crime related to YotaPhones.  The defense is unaware of any information suggesting that

6

Mr. Joffe took any action to promote YotaPhone allegations to the government in any way that could give rise to any conceivable criminal liability following April 2022.  The defense is also not aware of any theory of criminal liability that could be predicated on allegations that "percolated" through the government—let alone allegations that percolated through the "private sector."

It is preposterous for the Special Counsel to suggest that he might bring a case against Mr. Joffe or anyone else involving YotaPhone allegations.  The Special Counsel has not brought a single such charge so far; indeed, its 27-page Indictment in this case, replete with pages of extraneous information, does not even mention YotaPhones, and the Special Counsel has not even charged a conspiracy to defraud the government in any form, let alone a conspiracy to defraud the government involving YotaPhone allegations.  And the notion that the Special Counsel's Office believes it has potentially several more years to do its work and to bring charges in this matter is nothing short of jaw-dropping.  *See id.* (vaguely pointing to "fraud statutes [with] longer than . . . five-year limitations period[s]" and stating an inability "to put an end date on the investigation").  The defense was not aware that the Special Counsel's appointment and work have the life expectancy he apparently contemplates.

Since there is no meaningful likelihood that Mr. Joffe can or will be prosecuted in relation to the Special Counsel's investigation, the Special Counsel's refusal to confirm that Mr. Joffe is a witness only—and his tacit threats of potential prosecution—have had the expected effect of precluding Mr. Joffe from testifying on Mr. Sussmann's behalf, are "over and above [what] that the record indicate[s is] timely, necessary or appropriate," *Simmons*, 670 F.2d at 369 (describing *Smith*, 478 F.2d at 979), and therefore amount to prosecutorial misconduct.  *See MacCloskey*, 682 F.2d at 479 ("the U.S. Attorney's eleventh hour call . . . suggesting that [the witness] would be well-advised to remember the Fifth Amendment" "independently warrants the grant of a new

trial"); *Hammond*, 598 F.2d at 1012 (finding "substantial governmental interference" based on prosecutorial threat that witness would have "nothing but trouble" in another pending trial if he continued to testify); *Aguilar*, 90 F. Supp. 2d at 1164-68 (finding "due process/compulsory process claim . . . meritorious" in part due to prosecutor's warning that "there might be a problem with [the witness's] plea bargain").

*Second*, although he refuses to confer immunity on Mr. Joffe, the Special Counsel *has* granted immunity to one other witness for whom he has produced material pursuant to 18 U.S.C. § 3500, and the defense understands that the Special Counsel is also considering granting immunity to at least one additional witness for whom § 3500 material has likewise been produced. Both witnesses are wholly peripheral to the sole charge brought in this case—whether Mr. Sussmann falsely told Mr. Baker that he was not acting on behalf of clients. The Special Counsel's unfounded selectivity in conferring immunity further reveals "excessive prosecutorial gamesmanship." *Blissett v. Lefevre*, 924 F.2d 434, 442 (2d Cir. 1991) (affirming judgment because the "record [t]here does not reveal such a discriminatory use of immunity"); *see also Earl v. United States*, 361 F.2d 531, 534 n.1 (D.C. Cir. 1966) (suggesting that "arguments could be advanced" that the immunity "statute *as applied* denied [defendant] due process," "had the Government in th[at] case secured testimony from one eyewitness by granting him immunity while declining to seek an immunity grant for [defense witness]").

*Third*, given the Special Counsel's repeated entreaties to Mr. Joffe to cooperate in the Special Counsel's investigation against Mr. Sussmann, including only weeks ago, the Special Counsel's refusal to confer immunity on Mr. Joffe, and the Special Counsel's insistence that Mr. Joffe continues to face criminal exposure, seems to be not only retaliatory, but tantamount to a "deliberate[] deni[al] [of] 'immunity for the purpose of withholding exculpatory evidence and

8

gaining a tactical advantage through such manipulation.'" *Ebbers*, 458 F.3d at 119 (citation omitted). As in *Smith*, "[i]f the witness were guilty of [the threatened offenses], he should have been charged with those offenses whether he testified or not. The [Special Counsel is] obviously threatening the witness to stop him from testifying-even truthfully." *Simmons*, 670 F.2d at 369 (describing *Smith*, 478 F.2 at 979).

### B. Mr. Joffe Is an Essential Defense Witness, Whose Testimony Is Material, Exculpatory, Noncumulative, and Otherwise Unobtainable.

The Special Counsel well knows the central and exculpatory role that Mr. Joffe would—and must—play in Mr. Sussmann's defense. Given that this case centers, in part, on Mr. Sussmann's attorney-client relationship with Mr. Joffe, there are only two witnesses who can offer first-hand testimony about that relationship: Mr. Sussmann and Mr. Joffe. Mr. Sussmann has a Fifth Amendment right to refrain from testifying. *Cf. United States v. Thomas*, 488 F.2d 334, 336 (6th Cir. 1973) (reversing and remanding due to prosecutorial misconduct, which "substantially interfered with any free and unhampered determination the witness might have made as to whether to testify and if so as to the content of such testimony. . . . *[T]he Government's misconduct had a direct bearing on the defense counsel's trial strategy, suggesting that had [the witness] testified appellant might not have*." (emphasis added)).

Therefore, the only available witness regarding Mr. Sussmann's attorney-client relationship is Mr. Joffe himself. And the defense believes that, if called to testify, Mr. Joffe would offer critical exculpatory testimony, including that: (1) Mr. Sussmann and Mr. Joffe agreed that information should be conveyed to the FBI and to Agency-2 to help the government, not to benefit Mr. Joffe; (2) the information was conveyed to the FBI to provide a heads up that a major newspaper was about to publish a story about links between Alfa Bank and the Trump Organization; (3) in response to a later request from Mr. Baker, Mr. Sussmann conferred with Mr.

9

Joffe about sharing the name of that newspaper before Mr. Sussmann told Mr. Baker that it was *The New York Times*; (4) the researchers and Mr. Joffe himself held a good faith belief in the analysis that was shared with the FBI, and Mr. Sussmann accordingly and reasonably believed the data and analysis were accurate; and (5) contrary to the Special Counsel's entire theory, Mr. Joffe was neither retained by, nor did he receive direction from, the Clinton Campaign.

## CONCLUSION

The Special Counsel cannot have it both ways. He cannot make Mr. Sussmann's representation of Mr. Joffe central to his case against Mr. Sussmann, while at the same time effectively preventing Mr. Sussmann from calling Mr. Joffe to offer exculpatory testimony at trial through pretextual, hollow claims and threats about Mr. Joffe's continuing criminal exposure. The Special Counsel's conduct here is exactly the sort of bad faith gamesmanship forbidden by the Fifth Amendment's guarantee of due process and the Sixth Amendment's guarantee of compulsory process. Indeed, Mr. Joffe's testimony is essential to Mr. Sussmann's ability to demonstrate to the jury that he is not guilty. As such, Mr. Joffe's testimony, through grant of use immunity, is critical to Mr. Sussmann's defense and must be allowed.

For these reasons, should the Special Counsel fail to promptly grant Mr. Joffe immunity pursuant to 18 U.S.C. §§ 6002 and 6003, Mr. Sussmann requests that the Court dismiss this case.

Dated:  April 4, 2022                           Respectfully submitted,

                                                */s/Sean M. Berkowitz*
                                                Sean M. Berkowitz (*pro hac vice*)
                                                LATHAM & WATKINS LLP
                                                330 North Wabash Avenue
                                                Suite 2800
                                                Chicago, IL 60611
                                                Tel: (312) 876-7700
                                                Fax: (312) 993-9767
                                                Email: sean.berkowitz@lw.com

                                                Michael Bosworth (*pro hac vice*)
                                                LATHAM & WATKINS LLP
                                                1271 Avenue of the Americas
                                                New York, NY 10020
                                                Tel: (212) 906-1200
                                                Fax: (212) 751-4864
                                                Email: michael.bosworth@lw.com

                                                Natalie Hardwick Rao (D.C. Bar # 1009542)
                                                Catherine J. Yao (D.C. Bar # 1049138)
                                                LATHAM & WATKINS LLP
                                                555 Eleventh Street, NW
                                                Suite 1000
                                                Washington, DC 20004
                                                Tel: (202) 637-2200
                                                Fax: (202) 637-2201
                                                Email: natalie.rao@lw.com
                                                Email: catherine.yao@lw.com