## CONSULTING AGREEMENT

This AGREEMENT ("Agreement") is entered into as of April 1, 2016, by and between Bean LLC dba Fusion GPS ("Consultant") and Perkins Coie LLP ("PC"). PC and Consultant shall sometimes be referred to herein collectively as the "Parties" and individually as a "Party."

### WITNESSETH

WHEREAS, PC desires to avail itself of the expertise and consulting services of Consultant, and Consultant desires to make its expertise and consulting services available to PC upon the terms and conditions hereinafter set forth;

WHEREAS, PC is providing legal advice to specific clients identified to Consultant ("Specific Clients") related to defamation, libel and similar laws in which accuracy is an essential legal element;

WHEREAS, Consultant is providing the consulting services described herein in support of the provision of legal advice to Specific Clients of PC, including potential and/or on-going litigation before courts and/or administrative agencies, and/or for other purposes related to professional services provided by PC to its Specific Clients;

NOW, THEREFORE, in consideration of the agreements herein contained, the Parties hereto agree as follows:

**1. CONSULTING SERVICES.** Consultant hereby agrees to perform the following consulting services (the "Services") during the Term (as defined below) of this Agreement:

(a) Provide public record information and strategy to aid PC in the provision of legal services, including potential and actual litigation, to Specific Clients.

(b) Perform such other services that PC may, from time to time, request in support of legal services provided to Specific Clients.

Consultant further agrees that it will use its best efforts during the performance of such consulting services to promote the interests of PC and Specific Clients and to devote to the business and affairs of PC and Specific Clients during the Term of this Agreement such portion of Consultant's time and energies as is necessary to perform such Services. Consultant shall perform the Services in an efficient, expeditious, professional and skillful manner.

Consultant shall be responsible, at its own expense, for complying with all federal, state, and local laws, ordinances, rules, regulations, orders, licenses, permits and other governmental requirements applicable to the Services to be performed by Consultant during the Term of the Agreement.

2. **TERM OF AGREEMENT AND TERMINATION**

(a) The term (the "Term") of this Agreement shall commence as of the date of the first month's payment by PC, and shall terminate on the earliest of the following:(1) October 31, 2016; (2) the date on which Consultant ceases to perform the Services set forth above; or (3) the Agreement is terminated in accordance with Section 2(b). This Agreement may be extended at any time upon agreement of the Parties in writing.

CONFIDENTIAL TREATMENT REQUESTED

D003183

SC-00004920

(b) PC may terminate this Agreement at any time with or without cause and without penalty on ten (10) days' prior written notice, in which case PC's sole liability and Consultant's exclusive remedy is limited to reimbursement of costs and expenses incurred prior to the date of termination in accordance with Section 3(b), and payment of the compensation earned by Consultant in accordance with Section 3(a).

(c) Consultant may terminate this Agreement with cause if PC materially breaches its payment obligations hereunder, provided Consultant has delivered written notice of default and PC has not cured such default within give (5) business days.

### 3. COMPENSATION.

(a) **Rate of Compensation.** Consultant shall receive as compensation a fee of fifty thousand dollars ($50,000) each month, due on the first day of the subsequent month. Payment shall be made via wire transfer or check as agreed to by the Parties. If Services in any month are rendered for less than the full month for whatever reason, payment shall be made on a pro rata basis based on the number of days for which Services were rendered. The Parties agree to resolve any dispute regarding payment of invoice in good faith.

(b) **Reimbursement of Expenses.** Consultant shall be reimbursed for payment of all ordinary travel or copying expenses incurred in the performance of the Services described in Section 1 above. Consultant shall obtain the prior approval of PC before incurring any extraordinary expenses in excess of $2500 in a calendar month. When incurring any expense, Consultant shall retain each receipt and deliver to PC upon request.



### 5. NONDISCLOSURE AND CONFDENTIALITY.

(a) Consultant may not, directly or indirectly, at any time during the Term of this Agreement or thereafter, and without regard to when or for what reason this Agreement shall terminate, divulge, furnish, make accessible, or permit the disclosure to anyone (other than PC or other persons employed or designated by PC) any Confidential Information.

(b) The term "Confidential Information" shall include knowledge or information of any type whatsoever acquired by Consultant in the course of providing Services to PC, including (but not limited to) knowledge or information relating to the plans, strategies, business or activities of PC and its clients, including business and

activities relating to the Services rendered under this Agreement, whether disclosed orally or visually to Consultant and whether stored on any tangible medium or memorialized by Consultant. The term Confidential Information includes all originals, recorded, and unrecorded copies of such Confidential Information, as well as information derived therefrom and portions thereof. Such Confidential Information also includes, but is not limited to, all written or audio materials obtained, generated, produced or otherwise acquired during the course of the consultancy, including (but not limited to) any notes, charts, plans, strategies, lists, computer files, electronic mail messages, SMS messages, phone logs or other memoranda, whether handwritten, typed, or otherwise created. Information shall be Confidential Information even if no legal protection has been obtained or sought for such information under applicable laws and whether or not Consultant has been notified that such information is Confidential Information.

(c) Consultant agrees that the terms and conditions of this Agreement and all work performed by Consultant hereunder shall be treated by Consultant in the strictest confidence and shall not be disclosed to anyone other than persons authorized by PC to receive such information. Consultant shall refer promptly all queries from third parties, including the press, regarding PC or its Specific Clients, in whatever form or circumstances they are made, to PC.

(d) Consultant shall not be liable for disclosure of Confidential Information if such disclosure is pursuant to judicial action or other lawfully compelled disclosure, provided that Consultant notifies PC, by registered mail, of the need for such disclosure within five (5) days after such need becomes known and gives PC a reasonable opportunity to contest such disclosure.

(e) Consultant shall be responsible for any breach of this Section 5 caused by any of its employees, agents or subcontractors. The provisions of this section shall survive termination or expiration of this Agreement.

(f) Upon termination of this Agreement for whatever reason or upon breach of any of the obligations set forth in this Agreement, Consultant shall return all Confidential Information (as defined above) to PC, regardless of the form in which it appears or is stored (including information stored on tapes, computer discs, compact disc or other media).

(g) Should Consultant provide any legal analysis, counsel, advice or services to PC during the Term of the Agreement, Consultant shall maintain and cause any agents under its direction to maintain attorney-client privilege and confidences to the fullest extent permitted by law and in accordance with applicable professional regulations or rules.

6. <u>ASSISTANCE WITH GOVERNMENT INQUIRY.</u> Consultant agrees to provide, in a timely manner, all documents and services, including personal services, necessary to assist PC in connection with any audit, inquiry or investigation of PC or its clients by the Federal Election Commission or by any other government agency or in connection with any matter relating to compliance by PC or its Specific Clients with the federal or state election laws and/or regulations implementing them, relating to Consultant's Services under this Agreement.

7. <u>LITIGATION.</u> In the event of litigation against Consultant arising from work performed under this Agreement, except in cases involving gross negligence or misconduct by Consultant (or its directors, owners, employees or approved subcontractors), PC may provide representation as PC determines in its sole discretion.

CONFIDENTIAL TREATMENT REQUESTED

D003185

D003185
SC-00004922

8. **OTHER CONSULTING SERVICES.** PC and Consultant agree that Consultant may provide independent consulting services to other individuals or entities. Provided, however, that:

(a) Such other independent consulting services shall in no way impair Consultant's ability to provide consulting services to PC pursuant to this Agreement.

(b) In performing consulting work for other individuals or entities, Consultant shall observe in full the confidentiality requirements set forth in Section 6 of this Agreement.

(c) In providing services to its other clients:

(i) Consultant may not use or convey any information about the plans, projects, activities, or needs of PC or its Specific Clients.

(ii) Consultant may not use or convey any information developed previously by Consultant in providing Services to PC or its Specific Clients.

(d) Notwithstanding the restrictions set forth in sub-section (c) of this Section, nothing shall prevent Consultant from using or conveying information obtained from a publicly available source, in providing services to its other clients.

9. **INDEPENDENT CONTRACTOR.** Consultant shall perform Services pursuant to this Agreement as an independent contractor with respect to PC, and nothing in this Agreement shall create, or be deemed to create, any relationship of employer and employee or of master and servant between PC and Consultant. As an independent contractor, Consultant is responsible for payment of all applicable obligations to state and/or federal governmental agencies, including, but not limited to, income tax, unemployment tax, business registration fees, etc.

10. **OWNERSHIP OF WORK PRODUCT.** All work product, files, donor lists, constituent lists, or any campaign lists, documents, artwork, computer records, and other materials produced or obtained by Consultant in furtherance of work performed for PC become and remain the exclusive property of PC. Upon termination of this Agreement for whatever reason or upon breach of any of the obligations set forth in this Agreement, Consultant shall return all such materials to PC.

11. **ASSIGNMENT.** Except as specifically set forth in this Agreement, the rights and interests of Consultant in this Agreement may not be sold, transferred, assigned, pledged or hypothecated. The rights and obligations of PC hereunder shall be binding upon and run in favor of the assigns of PC. In the event of any attempted assignment or transfer of rights hereunder contrary to the provisions hereof, PC shall have no further liability for payments hereunder.

[redacted]

███████████████████████████████████████

13. **GOVERNING LAW; CAPTIONS.** This Agreement contains the entire agreement between the Parties and shall be governed by the law of the District of Columbia. It may not be changed orally, but only by agreement in writing signed by the Party against whom enforcement of any waiver, change, modification or discharge is sought. Section headings arc for convenience of reference only and shall not be considered a part of this Agreement.

14. **PRIOR AGREEMENTS.** This Agreement supersedes and terminates all prior agreements between the Parties relating to the subject matter herein addressed.

15. **NOTICES; APPROVALS.** Other than requests for approvals as provided for under this Agreement, any notice or other communication required or permitted hereunder shall be in writing and shall be deemed effective when delivered in person or, if mailed, on the date of deposit in the mail, postage prepaid addressed, or if via e-mail, upon receipt of by the receiving party, in the case of Consultant, to Bean LLC, 1700 Connecticut Ave, NW, Suite 400, Washington, DC 20009, attention Peter Fritsch; and in the case of PC to it at its offices at 700 13th Street, NW, Suite 600, Washington, DC 20005, attention: Marc E. Elias (melias@perkinscoie.com); or such other address as shall have been specified in writing by either Party to the other. All requests for approval shall be directed to Marc E. Elias as he may designate in writing.

16. **COUNTERPARTS.** This Agreement may be executed in counterparts, each of which is deemed an original, but all of which together are deemed to be one and the same agreement. Notwithstanding anything to the contrary herein, a signed copy of this Agreement delivered by facsimile, e-mail or other means of electronic transmission is deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

[Signature Page Follows.]

CONFIDENTIAL TREATMENT REQUESTED

D003187

D003187
SC-00004924

IN WITNESS WHEREOF, PC and Consultant each have caused this Agreement to be signed by its duly authorized representative as of the day and year first above written.

PERKINS COIE LLP

By: *[signature]*

Date: _____
_____

FUSION GPS

By: Glenn Simpson

Date: ___April 11, 2016___

_____

CONFIDENTIAL TREATMENT REQUESTED

[Signature Page to Fusion-PC Consulting Agreement]

D003188

D003188
SC-00004925