IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>*v.*<br><br>**MICHAEL A. SUSSMANN,**<br><br>*Defendant*. | Case No. 1:21-cr-00582 |

**DEFENDANT'S MOTION TO EXCLUDE THE GOVERNMENT'S PROPOSED EXPERT WITNESS TESTIMONY**

Defendant Michael A. Sussmann, by and through his counsel, hereby moves to exclude the government's proposed expert testimony of Federal Bureau of Investigation ("FBI") Unit Chief/Special Agent David Martin.

**INTRODUCTION**

Beginning on September 23, 2021—more than six months ago and only days after Mr. Sussmann was indicted—Mr. Sussmann repeatedly requested that the Special Counsel identify any expert witnesses it intends to call at trial. For months, the Special Counsel never once suggested that it intended to call an expert witness, nor did it produce to Mr. Sussmann any witness statements for an expert when it produced Jencks Act material on March 18, 2022 in accordance with this Court's order. Now—a mere six weeks before trial—the Special Counsel has provided a perfunctory and legally deficient notice that he intends to call Special Agent David Martin of the FBI to offer highly technical and complex testimony at trial, including (at his sole discretion) on a topic that the Special Counsel has told the Court he does not intend to put at issue at trial, namely, the accuracy of the data that Mr. Sussmann provided to the FBI, as well as the accuracy of the conclusions drawn from that data. *See* Mar. 31, 2022 Tr. of Mot. Hr'g & Status Conf. (hereinafter,

"Hearing Transcript") at 42 ("I don't want to suggest that we are going to make [the accuracy of the data] an aspect of our case-in-chief[.]").

As the defense indicated to the Court on March 31, 2022, Mr. Sussmann is amenable to expert testimony from Special Agent Martin that helps educate the jury about basic, uncontroversial issues like what Domain Name System ("DNS") data is (though the Expert Disclosure provides insufficient notice regarding what specifically Special Agent Martin would say about this topic). However, Mr. Sussmann objects to any expert testimony regarding the accuracy of the data or the accuracy of conclusions drawn from the data. Such testimony is not relevant to the sole crime charged in this case; the Special Counsel's notice to call an expert to address such issues is wildly untimely; the Special Counsel has not even given adequate notice of what specifically his intended expert would say about these issues; and Mr. Sussmann would be unfairly prejudiced by the Special Counsel's plan to offer expert testimony on these issues. There simply is not sufficient time before trial for Mr. Sussmann to evaluate Special Agent Martin's opinions and meaningfully consult an expert of his own about them, given the volume of the data and the range of the conclusions offered about them. In short, the Special Counsel should not be permitted to try this case by ambush.

## BACKGROUND

Mr. Sussmann was charged on September 16, 2021 with a single count of making a false statement to the FBI regarding whether he was "acting on behalf of any client." Indictment, ¶ 46.[1] Days later, on September 23, 2021, the defense orally requested that the Special Counsel disclose

---

[1] Notably, the Indictment makes *no* allegation regarding the accuracy of the data that Mr. Sussmann provided to the FBI or the specific conclusions reached about the data. Moreover, the Indictment does not allege (nor could it) that Mr. Sussmann, a lawyer without a technical background, *knew* the data was inaccurate or even had the professional expertise to evaluate its accuracy.

2

any expert witnesses he intended to call at trial, a request that was subsequently memorialized on September 27, 2021.  *See* Letter from Sean Berkowitz, and Michael Bosworth, Latham & Watkins LLP, to John Durham, Special Counsel, Dep't of Just., (Sept. 27, 2021), at 3.  The defense *again* raised the topic of expert disclosures during a call with the Special Counsel on March 11, 2022.  But at no point leading up to the Special Counsel's belated disclosure—including in a letter sent by the Special Counsel just a day before the disclosure—did the Special Counsel indicate that he intended to call any expert witnesses.

On March 30, 2022—almost two weeks after the Special Counsel's March 18, 2022 deadline to produce residual Rule 16 discovery material and Jencks Act material, s*ee* Minute Entry dated Jan. 28, 2022; Pretrial Order (ECF 30)—the Special Counsel indicated for the first time that he intended to call an expert witness to testify about DNS data and the Onion Router ("TOR").  *See* Letter from John Durham, Special Counsel, Dep't of Just., to Sean Berkowitz, and Michael Bosworth, Latham & Watkins LLP (Mar. 30, 2022) (hereinafter "Expert Disclosure"), attached hereto as Exhibit A.[2]  In particular, the Expert Disclosure provides that Special Agent Martin will "describe for the jury the basic mechanics, architecture, and terminology of the DNS system and DNS data" and "explain [TOR]," a "free and open-source software for enabling anonymous communications" that was referenced in a white paper that Mr. Sussmann submitted to the FBI.  *See* Expert Disclosure, at 1-2.[3]

The Expert Disclosure also broadly reserves the right of the Special Counsel to offer testimony as to the reliability, authenticity, and completeness of the technical data, stating that

---

[2] Notably, the Special Counsel has not provided Mr. Sussmann with any witness statements for his purported expert pursuant to the Jencks Act, 18 U.S.C. § 3500.

[3] Though Mr. Sussmann disputes the sufficiency of the Expert Disclosure as to these topics, *see infra* at 8-10, he does not object generally to testimony from Special Agent Martin that merely explains the underlying technology to the jury.

3

Special Agent Martin will testify—to the extent the defense seeks to "imply, assert, or seek to prove the authenticity of the relevant DNS data or the actual truth of the allegations at issue concerning a secret channel of communications between the Trump Organization and Alfa Bank"—regarding: 1) the authenticity of the data; 2) the possibility that such data was fabricated or manipulated; 3) whether the DNS data Mr. Sussmann provided supports the conclusion that there was a covert communication channel between the Trump Organization and a Russian bank; 4) whether the DNS data provided to Agency-2 supports a conclusion that Trump and or his associates used Russian-made phones in the vicinity of Trump properties and the White House; and 5) the validity and plausibility of "other assertions and conclusions" in the white papers provided to the FBI and Agency-2.  Expert Disclosure at 2-3.  Notably, the Special Counsel has completely failed to identify what specific opinion Special Agent Martin intends to offer on these topics as well as any specifics regarding what makes the data or the conclusions about the data inaccurate.

     At a hearing the following day on March 31, 2022, the Special Counsel told the Court that he did not intend to make the accuracy of the data "an aspect of [his] case-in-chief" but suggested that such data might be relevant if it "were cherry-picked, manipulated, or fabricated because it might go to the motive the defendant could have had to conceal the origins of the data."  Hearing Transcript, at 42.  During a phone call shortly after the hearing, the defense reiterated its position to the Special Counsel that Mr. Sussmann would not object to testimony by Special Agent Martin regarding the basics of DNS and TOR.  The Special Counsel refused to narrow the scope of the expert testimony, however, and suggested that Special Agent Martin may testify about the accuracy of the data and the conclusions drawn from that data.  The Special Counsel also revealed his intention to have other witnesses testify about the same topic.

Apart from the fact that much of this proffered testimony is completely irrelevant, the Expert Disclosure (which is only three pages in total) is untimely and utterly fails to describe the specific expert opinions Special Agent Martin intends to offer, the bases for those opinions, or how specifically Special Agent Martin is qualified to offer them. For the reasons described below, Special Agent Martin should be precluded from testifying as an expert witness in this case on anything other than basic, uncontroversial background topics such as what DNS data is.

## LEGAL STANDARDS

Federal Rule of Criminal Procedure 16(a)(1)(G) requires the government, at the defendant's request, to provide the defendant with a written summary of expert testimony the government intends to offer during its case-in-chief that "describe[s] the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." A district court has "broad discretion" to exclude expert testimony where a party fails to comply with this discovery rule. *United States v. Day*, 524 F.3d 1361, 1367 (D.C. Cir. 2008).

In addition, expert testimony is admissible only if it is relevant and its probative value is not substantially outweighed by its prejudicial effect. Fed. R. Evid. 401, 403. Unfair prejudice is "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Fed. R. Evid. 403, Advisory Committee Notes. Courts, in weighing possible prejudice against probative force under Rule 403, exercise "more control over experts than over lay witnesses" because "[e]xpert evidence can be both powerful and quite misleading because of the difficulty in evaluating it." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 595 (1993) (internal citation omitted).

## ARGUMENT

From the outset of this case—beginning with the sprawling 27-page speaking Indictment— the Special Counsel has tried to expand the scope of this case beyond the single charge he brought

against Mr. Sussmann.  Now, in an untimely and deficient notice, the Special Counsel has disclosed that he seeks to introduce expert testimony not only to explain what DNS data is, but about issues, including the technical accuracy or inaccuracy of the data, that are wholly irrelevant to the single false statement charge at issue and that the Special Counsel himself has told the Court he is not challenging.  For his part, Mr. Sussmann does *not* intend to offer evidence regarding the accuracy of such data and, as the Court is aware, has moved to exclude evidence on that very topic.  *See* ECF 60.  Such testimony will inevitably lead to precisely the type of confusion and unfair prejudice that the Federal Rules are designed to prevent, and for the reasons set forth below, this testimony must be precluded.  The only thing relevant to the charged crime regarding these topics is, at best, evidence that bears directly on Mr. Sussmann's state of mind or intent regarding the accuracy of the data or the accuracy of the conclusions drawn from the data.

      A.      **The Special Counsel's Expert Disclosure is Untimely**

While Federal Rule of Criminal Procedure 16 does not contain a specific timing requirement, the comments to the Rule provide that parties are to make expert disclosures "in a timely fashion." Fed. R. Crim. P. 16, 1993 Advisory Committee's Note.  Courts in this Circuit and elsewhere have excluded expert testimony where, as here, the opposing party is denied "a fair opportunity" to "prepare for and test the value of any expert testimony."  *United States v. Gray-Burriss*, No. CRIM.A. 10-178 RWR, 2012 WL 5193679, at *1 (D.D.C. Oct. 17, 2012) (excluding expert witness identified a month before trial).

The disclosure in this case is the opposite of timely.  For one thing, Mr. Sussmann has been asking about experts for months—since literally days after the Indictment in this case was filed— and the Special Counsel never once indicated he had any intention of calling an expert.  It is only now, months after unclassified discovery was due, weeks after witness statements have been produced, and a mere six weeks before trial that the Special Counsel has actually provided expert

notice. That is a basis for an exclusion in and of itself. *See generally Day*, 524 F.3d at 1372 (affirming exclusion of defendant's expert witness upon government's "repeated[] request[s]" for discovery because, among other things, the expert report was "tardy" and the purpose of Rule 16 "is to minimize surprise that often results from unexpected expert testimony, reduce the need for continuances, and to provide the opponent with a fair opportunity to test the merit of the expert's testimony through focused cross-examination") (internal citation omitted); *see also United States v. Wilson*, 493 F. Supp. 2d 484, 487-88 (E.D.N.Y. 2006) (excluding an expert and explaining that "one of counsel's most basic discovery needs is to learn that an expert is expected to testify") (internal citation omitted).

Not only that, but the expert testimony that the Special Counsel has noticed is extraordinarily complicated and highly technical: It relates to the accuracy and possible fabrication, manipulation, or "spoofing," of truly voluminous DNS data, as well as "the analytic significance and conclusions that can be drawn based on the provenance and origins" of that voluminous data. Expert Disclosure at 1-3. Because there is so little time left before trial, and because the issues are so involved, Mr. Sussmann does not have time to meaningfully prepare to cross-examine this expert at trial, nor does Mr. Sussmann have meaningful time to consult with an expert of his own about the Special Counsel's expert at this late date. The complexity of the testimony, particularly against the backdrop of the complicated national security issues in play, only underscores the prejudice to Mr. Sussmann arising from the Special Counsel's tactics. *See United States v. Nacchio*, No. 05-cr-00545-EWN, 2007 WL 4688422, at *4 (D. Colo. 2007) (excluding government's expert witness because, given the complexity of the case and the added burden arising from the Classified Information Procedures Act, disclosure 25 days before trial was "akin to making the disclosure on the eve of a more common criminal prosecution"). Here, as in

*Nacchio*, the Special Counsel's disclosure failed to "prevent surprise, give adequate notice, and allow the court to entertain motions with respect to the experts and conduct any necessary hearing in advance of trial to facilitate trial preparation." *Id.* (internal citation omitted). He has thus "failed to comply with the dictates of Rule 16(a)(1)(G)." *Id.*

### B. The Special Counsel's Expert Disclosure is Deficient

To make matters even worse, not only is the Special Counsel's disclosure untimely, the Expert Disclosure is also substantively and materially deficient. Rule 16 "require[s] a sufficient summary of the expert's testimony, and not simply a list of testimony topics." *United States v. Rogers*, No. CRIM.A. 05-292(RWR), 2006 WL 5249745, at *4 (D.D.C. July 17, 2006) (Rule 16 disclosure deficient where defendant offered only the topics on which expert would testify but did not state the actual conclusion to which he would testify). Like in *Rogers*, the Expert Disclosure here identifies various high level topics but fails to describe the actual opinions Special Agent Martin intends to offer. *See, e.g.*, Expert Disclosure, at 2 (explaining that Special Agent Martin will "further testify concerning the nature and types of conclusions that can – and cannot – be drawn about person's or entities' online activities based on a review of DNS data" and "common uses of TOR, as well as investigative steps and methods for analyzing online activities involving TOR," but failing to identify what specifically Special Agent Martin will say about these topics); *id.* at 2-3 (explaining that "the Government reserves the right to have UC Martin testify concerning" various topics pertaining to the accuracy of the DNS data, but not identifying specific opinions or conclusions). That the Disclosure leaves the parties to "presume what the testimony would be" confirms that it is deficient. *United States v. Machado-Erazo*, 901 F.3d 326, 337 (D.C. Cir. 2018). Mr. Sussmann is alleged to have provided voluminous data to the FBI and Agency-2, as well as a broad range of conclusions based on that data. To provide sufficient disclosure, any expert notice necessarily would have to identify which data was inaccurate and why, and which

conclusions were inaccurate and why. The Expert Disclosure here does no such thing and is manifestly inadequate as a result.

The bare-bones Disclosure similarly fails to provide the "bases and reasons" for any opinion or adequately explain how Special Agent Martin is qualified to testify specifically about DNS or TOR. The Special Counsel did not summarize the bases for Special Agent Martin's opinions, provide any underlying documents upon which Special Agent Martin relied in reaching his opinions, provide any report for his purported expert, or provide any witness statements for the expert. The Special Counsel's proposed expert notice is thus deficient for this reason, as well. *Cf.* Fed. R. Crim. P. 16, Advisory Committee's Note to 1993 Amendment (clarifying that the "summary of the bases relied upon by the expert . . . cover[s] not only written and oral reports, tests, reports, and investigations but any information that might be recognized as a legitimate basis for an opinion under Federal Rule of Evidence 703, including opinions of other experts"); *see also United States v. Naegele*, 468 F. Supp. 2d 175, 177 (D.D.C. 2007) (ordering defendant to provide government all of the underlying documents on which each of his four proffered experts relied in reaching their opinions and conclusions).

And while the Special Counsel provided a curriculum vitae ("CV") for Special Agent Martin that generally suggests he has experience in digital forensics, the CV does not so much as reference DNS or TOR and thus falls short of Rule 16's requirements. *See United States v. Shulick*, 18 F.4th 91, 106 (3d Cir. 2021) (disclosure that included only a curriculum vitae and a short description of what expert might testify to was insufficient under Rule 16).

In short, the flimsy Expert Disclosure that the Special Counsel has provided renders it impossible for Mr. Sussmann to adequately prepare his defense, impedes his ability to assess whether the proffered testimony is admissible under the Federal Rules of Evidence, and prevents

him from effectively consulting an expert of his own to rebut whatever opinion Special Agent Martin in fact intends to offer.

The Special Counsel apparently believes it is fair to simply inform Mr. Sussmann, at the eleventh hour, that he intends to call an expert on complicated, highly-technical matters and to do so without even giving Mr. Sussmann any sense of what specifically the expert will say—without giving any expert report, without providing any witness statements, and without even identifying the specific opinions and conclusions the expert will offer.  The Special Counsel's belief, however, is irreconcilable with fundamental principles of fairness or, more importantly, the well-settled law of this Circuit.  *See, e.g., Machado-Erazo*, 901 F.3d at 337–38 (district courts abuse their discretion when they admit expert testimony "without giving defendants sufficient prior notice"); *Naegele*, 468 F. Supp. 2d at 176 (expert disclosure requirements are intended "to permit [the requesting party] to prepare rebuttal reports and to prepare for cross-examination at trial").

        **C.**      **The Proffered Expert Testimony is Irrelevant and Unduly Prejudicial**

Finally, and as set forth more fully in Mr. Sussmann's *motion in limine* regarding the accuracy of DNS data, ECF 60, any testimony regarding the accuracy of the data that Mr. Sussmann provided to the FBI or any other agency is wholly irrelevant to the false statement charge brought against him in any event.  Here, there is no allegation that Mr. Sussmann—who is not a DNS expert—believed or had any reason to believe there was any issue with the data, the analysis, or the conclusions drawn therefrom.  *See* Fed. R. Evid. 401 (evidence is relevant only if it has a tendency to make a fact of consequence more or less probable).  While evidence that directly reveals what Mr. Sussmann knew about the accuracy of the data at the time he provided it to the government may be relevant to his state of mind, expert testimony of the type identified by the Special Counsel here (*i.e.*, testimony that speaks to the technical accuracy of the data and related conclusions) is not.  *See United States v. Kaufman*, No. 19-cr-504 (LAK), 2021 WL 4084523, at

\*22-23 (S.D.N.Y. Sep. 7, 2021) (testimony regarding comparative analyses conducted after the conduct at issue "would have been improper *post hoc* speculation about [the defendant's] intent" as the defendant "could not have had knowledge of much of this information during the relevant time period . . . and in any case failed to show his awareness of any of it that existed during that time"). Because what Mr. Sussmann believed about the data is all that could possibly matter, expert testimony (from either side) is not required.

Even if relevant, moreover, any minimal probative value of such testimony is outweighed by the substantial danger of unfair prejudice and confusion of the issues, particularly given the added weight that jurors ascribe to expert testimony. *See, e.g.*, *United States v. Libby*, 467 F. Supp. 2d 1, 15-16 (D.D.C. 2006) (excluding testimony that was likely to "draw the jury's attention away from the actual controversies in this case" and "lead the jury to unduly focus on the foreign affairs of the country, which is totally irrelevant to this case."); *Nimely v. City of New York,* 414 F.3d 381, 397 (2d Cir. 2005) (acknowledging the "uniquely important role that Rule 403 has to play in a district court's scrutiny of expert testimony, given the unique weight such evidence may have in a jury's deliberations").

Indeed, permitting Special Agent Martin to testify about the accuracy of the data Mr. Sussmann provided to the government or the conclusions drawn from that data would force a mini-trial on the issue and involve a battle between experts on a highly complicated issue of fact that does not bear on the charged false statement. *See United States v. Levy*, No. S5 11 Cr. 62 (PAC), 2013 WL 655251, at \*1 (S.D.N.Y. Feb. 22, 2013) (precluding government from introducing evidence that risked creating a "mini-trial" regarding collateral issues and "confusing the issues actually alleged in the Indictment"); *Akbar v. City of Chicago*, No. 06-C-3685, 2009 WL 3335364, at \*3 (N.D. Ill. Oct. 14, 2009) (excluding evidence where introduction would require extensive

cross on ancillary issues). Because the proffered testimony is irrelevant or otherwise unduly prejudicial, it should be excluded.

## CONCLUSION

For the foregoing reasons, Mr. Sussmann requests that this Court issue an order precluding the Special Counsel from offering expert testimony from Special Agent David Martin except regarding basic, uncontroversial matters such as what DNS data is.

Dated:  April 8, 2022

Respectfully submitted,

/s/Sean M. Berkowitz
Sean M. Berkowitz (*pro hac vice*)
LATHAM & WATKINS LLP
330 North Wabash Avenue
Suite 2800
Chicago, IL 60611
Tel: (312) 876-7700
Fax: (312) 993-9767
Email: sean.berkowitz@lw.com

Michael Bosworth (*pro hac vice*)
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
Tel: (212) 906-1200
Fax: (212) 751-4864
Email: michael.bosworth@lw.com

Natalie Hardwick Rao (D.C. Bar # 1009542)
Catherine J. Yao (D.C. Bar # 1049138)
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004
Tel: (202) 637-2200
Fax: (202) 637-2201
Email: natalie.rao@lw.com
Email: catherine.yao@lw.com