**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| **UNITED STATES OF AMERICA** |
| v. |
| **MICHAEL A. SUSSMANN**, |
| Defendant. |

Case No. 21-cr-582 (CRC)

**OPINION AND ORDER**

Last September, a grand jury indicted Washington, D.C.-based lawyer Michael A.

Sussmann on a single count of making a false statement in a matter within the jurisdiction of the

government of the United States in violation of 18 U.S.C. § 1001(a)(2).  Indictment ¶ 46.  The

false statement allegedly occurred during a September 19, 2016 meeting at FBI headquarters

between Mr. Sussmann and the Bureau's then-General Counsel, James A. Baker.  Id. ¶ 3.

According to the Indictment, Sussmann requested the meeting to provide the FBI with

information—including three "white papers" and associated data files—that he said would

support media reports of a secret communications channel between a Russian bank and the

Presidential campaign of Donald Trump.  Id. ¶ 24, 27.  The Indictment claims that Sussmann

concealed from Baker that he was providing the information to the FBI in a political capacity.

Specifically, Sussmann allegedly told Baker that he was not attending the meeting on behalf of

any client when, in fact, he had assembled and was conveying the information on behalf of two

specific clients: (1) a technology-industry executive named Rodney Joffe and (2) the Hillary

Clinton presidential campaign.  Id. ¶ 30.  The FBI opened an investigation based on the

information Sussmann provided, but ultimately determined that there was insufficient evidence

to support the existence of a communication channel between the Trump campaign and the

Russian bank.  Id. ¶ 7.  Sussmann has pled not guilty to the charge and denies lying to the FBI.

The case is being prosecuted by Department of Justice Special Counsel John H. Durham, who was tasked by former Attorney General William Barr with investigating the origins of the FBI's investigation of Russian interference in the 2016 presidential election.  Trial is scheduled to begin on May 16, 2022.  However, Mr. Sussmann has moved for pretrial dismissal of the Indictment under Federal Rule of Criminal Procedure 12(b)(3)(B) for failure to state an offense. For a statement to be criminal under 18 U.S.C. § 1001, it must be both "false, fictitious, or fraudulent" and "material."  Sussmann's sole argument for dismissal is that, even taking the allegations in the Indictment as true, his purported misrepresentation to Baker was immaterial as a matter of law and therefore cannot support a conviction under § 1001.  The Court will deny the motion.

The standard for materiality under § 1001 in this circuit is whether the statement has "a natural tendency to influence, or is capable of influencing, either a discrete decision or any other function of the [government] agency to which it was addressed."  United States v. Moore, 612 F.3d 698, 701 (D.C. Cir. 2010).  Focusing on the first part of the standard, Sussmann argues that his alleged statement to Baker—that he was not at the meeting on behalf of a client—could not possibly have influenced what was, in his view, the only "discrete decision" before the Bureau at the time: whether to initiate an investigation into the Trump campaign's asserted communications with the Russian bank.

At the outset, Sussmann's argument that the materiality of his statement must be assessed only in relation to the FBI's decision to commence an investigation is based on an overly narrow conception of the applicable standard.  He largely ignores the second part of the test: whether the statement could influence "any other function" of the agency.  Applying that prong of the materiality standard, the D.C. Circuit has stated that "a 'lie distorting an investigation already in

progress' also would run afoul of § 1001." Moore, 612 F.3d at 701 (quoting United States v. Hansen, 772 F.2d 940, 949 (D.C. Cir. 1985)).  Sussmann seeks to cabin this holding to statements made during the course of an ongoing investigation, but the Court sees no basis for that bright-line divide.  As the Special Counsel argues, it is at least possible that statements made to law enforcement prior to an investigation could materially influence the later trajectory of the investigation.  Sussmann offers no legal authority to the contrary.

Whether Sussmann's alleged statement was *in fact* capable of influencing either the commencement or the later conduct of the FBI's investigation is a very different question, and one that the parties hotly dispute.

For his part, the Special Counsel resists the notion that the FBI faced a binary choice— i.e., to open a "full investigation" or not—in deciding how to respond the information Sussmann conveyed.  He anticipates evidence at trial will show that the Bureau could have instead taken a number of incremental steps, including conducting a less formal "assessment" of the information, initiating a "preliminary investigation," or delaying a decision until after the election.  Opp'n at 9.  And "had [Sussmann] truthfully informed Baker that he was providing the information on behalf of one or more clients," the Special Counsel claims, "[Baker] and other FBI personnel might have asked a multitude of additional questions material to the case initiation process." Id. at 9, 11.[1]  According to the Special Counsel, those potential questions and other

_____

[1] When evaluating a motion to dismiss a criminal indictment, the court is bound by the language of the indictment, and must assume the truth of its factual allegations.  United States v. Knowles, 197 F. Supp. 3d 143, 149 (D.D.C. 2016).  Sussmann maintains that the Court therefore cannot consider the Special Counsel's arguments about what the evidence at trial "will prove." Reply at 11.  While the Court cannot consider evidence outside the indictment, the Court does not read the cases Sussmann cites for the proposition that it must also disregard the arguments by the government that merely explain or describe how it will go about proving what is already charged in the Indictment.  See, e.g., United States v. Harmon, 474 F. Supp. 3d 76, 105 (D.D.C.

behind-the-scenes investigatory steps likely would have explored Sussmann's motivations and

those of his clients for bringing the information to the FBI's attention, which, in turn, the Special

Counsel submits, may have influenced both whether and what type of investigation to open.

  The Special Counsel also contends that Sussmann's statement meaningfully influenced

the conduct of the FBI's investigation once it was underway.  Had Sussmann revealed his

attorney-client relationship with Mr. Joffe, the Special Counsel posits, "the FBI likely would

have asked certain questions and conducted interviews during the investigation that would bear

directly upon the information's reliability and/or [Joffe's] motivation in providing the

information."  Opp'n at 11.

---

2020) (citing statement in the government's brief "that 'evidence at trial will show'" that the
defendant's company was used to transmit bitcoin to designated recipients, as alleged in the
indictment). The other cases Sussmann cites deal with entirely different circumstances. E.g.,
United States v. Harris, No. CRIM. 06-00124 (ESH), 2006 WL 2882711, at *3 (D.D.C. Oct. 5,
2006) (defendant's argument that she filed her tax returns in good faith, based on documents
outside the indictment, was not proper at the motion to dismiss stage); United States v. Safavian,
429 F. Supp. 2d 156, 159 (D.D.C. 2006) (district court would not consider documents produced
in discovery, "including e-mails, interview notes, and witness statements," in evaluating a
motion to dismiss the indictment); United States v. Hall, 20 F.3d 1084, 1087–88 (10th Cir. 1994)
(affirming a pretrial dismissal under Rule 12(b) based on the insufficiency of the evidence where
the underlying facts were undisputed and the government failed to object to the district court's
resort to evidence beyond the four corners of the indictment).

  Regardless, the Indictment itself describes the Special Counsel's theory of materiality in
essentially the same manner as does his briefing. See Indictment ¶ 32 ("[H]ad SUSSMANN
truthfully disclosed that he was representing specific clients, it might have prompted the FBI
General Counsel to ask Sussmann for the identity of such clients, which, in turn, might have
prompted further questions.  In addition, . . . the FBI might have taken additional or more
incremental steps before opening and/or closing an investigation.").  The Court does not read the
government's argument that "the evidence at trial will prove" that the FBI could have taken any
of these incremental steps as asking the Court to consider documents or evidence outside the four
corners of the Indictment.

Sussmann attacks the Special Counsel's materiality theories on several fronts. The crux of his objections is that his purported statement lacks a sufficient nexus to the initiation of the investigation, or its subsequent pursuit, to support a conclusion that it was capable of influencing the FBI's decision-making in any meaningful way. Sussmann contends that Mr. Baker and others at the FBI were fully aware of the political nature of his client representations, which the Indictment itself notes. Indictment ¶ 9 (noting Sussmann's representation of the Democratic National Committee and the Clinton Campaign on cybersecurity matters). And he strongly challenges the Special Counsel's contention that the statement could have lulled the FBI into not exploring the sources and origins of the underlying information. It beggars belief, Sussmann suggests, that crack FBI investigators would not have asked such seemingly obvious follow-up questions as "who gave you this information?" or "how was the data developed?" simply because they believed he was not conveying the information on behalf of a particular client.

The battle lines thus are drawn, but the Court cannot resolve this standoff prior to trial. In United States v. Gaudin, the Supreme Court unanimously held that because materiality is an element of a § 1001 offense, it is a question that generally must be answered by a jury. 515 U.S. 506, 512 (1995). Indeed, all the cases Sussmann cites where courts have found alleged false statements to be immaterial were decided after a trial and on appeal from post-trial motions under Rule 29. See, e.g., United States v. Johnson, 19 F.4th 248 (3d Cir. 2021); United States v. Litvak, 808 F.3d 160 (2d Cir. 2015); United States v. Camick, 796 F.3d 1206 (10th Cir. 2015). So, while Sussmann is correct that certain statements might be so peripheral or unimportant to a relevant agency decision or function to be immaterial under § 1001 as matter of law, the Court is unable to make that determination as to this alleged statement before hearing the government's evidence. Any such decision must therefore wait until trial. See United States v. Cisneros, 26 F.

5

Supp. 2d 24, 41 (D.D.C. 1998) (declining to decide § 1001 materiality on a pretrial motion to dismiss brought by former HUD Secretary "before the Government has had the opportunity to present its evidence at trial").

Accordingly, it is hereby **ORDERED** that Defendant's [39] Motion to Dismiss the Indictment is DENIED.

   **SO ORDERED**.


_____
CHRISTOPHER R. COOPER
United States District Judge

Date:  April 13, 2022