# EXHIBIT A



**U. S. Department of Justice**

*Special Counsel*

---

*Washington, D.C. 20530*

March 23, 2022

<u>Via Email</u>

Sean M. Berkowitz, Esq.
Latham & Watkins LLP
330 North Wabash Avenue
Suite 2800
Chicago, IL 60611

Michael Bosworth, Esq.
Latham & Watkins LLP
1271 Avenue of the Americas
New York, NY 10020

        Re: United States v. Michael A. Sussmann
        <u>Criminal Docket No. 1:21-cr-00582 (CRC)</u>

Dear Counsel:

    The government submits this letter to supplement its notice pursuant to Federal Rule of Evidence 404(b). While we believe that the below evidence falls squarely within the definition of direct evidence of the charged offense, our recent discussions, including the conference call we held last Friday, have raised the prospect that you may hold a different view. We therefore are providing herein notice pursuant to Rule 404(b) for three additional categories of evidence. We are doing so in an abundance of caution and to aid your preparation for trial.

    In addition, we provide below additional details concerning the reasoning for admitting the four categories of evidence previously noticed in our March 18, 2022 letter. Please also note that we currently intend to prove all of the facts set forth in the Indictment at trial. With regard to any facts in the Indictment and those set forth below, the government will move to admit this evidence as direct evidence or, in the alternative, as "other act" evidence pursuant to Federal Rule of Evidence 404(b) to prove the defendant's motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

*March 23, 2022*
*Page 2 of 5*

## **Additional Notice**

I.   The Origins of the Purported Data Underlying the Russian Bank-1 and Russian Phone-1 Allegations

As the Indictment alleges, Tech Executive-1 and his associates gathered and analyzed purported data from numerous sources as part of their broader efforts to find and disseminate derogatory information regarding Donald Trump. These sources included several internet companies, Trump Tower, Trump's Central Park West apartment building, and the Executive Office of the President of the United States ("EOP"). Facts concerning the origins of such purported data and related allegations constitute direct evidence of the charged offense because they provide important factual context for the defendant's conduct and tend to prove the existence of the defendant's attorney-client relationships with Tech Executive-1 and the Clinton Campaign. To the extent the defense argues or the Court concludes, however, that some or all of this evidence constitutes "other crimes, wrongs, or acts" pursuant to Rule 404(b), the Government intends to ague that such evidence is still admissible to show the defendant's motive, intent, preparation, plan, and absence of mistake or accident. In particular, this evidence is relevant to prove the existence of a shared "plan" between the defendant, Tech Executive-1, and/or the Clinton Campaign to collect and disseminate materials through the defendant that they believed would prompt negative scrutiny of Trump. Such evidence also is relevant to prove these parties' "preparation" for the defendant's dissemination of such allegations, including by assembling data and drafting several white papers. Moreover, to the extent such data was obtained in a manner that may be considered objectionable – whether through invasions of privacy, breaches of contract, or other unlawful or unethical means – such evidence is relevant to prove the involved persons' "motive[s]" to mislead the FBI and others about the origins of the relevant data and allegations.

II.   Evidence Concerning the Strength and Reliability of the Data and Allegations

As the Indictment also alleges, the Special Counsel's Office has gathered evidence concerning the strength and reliability (or lack thereof) of the purported data and allegations that the defedant provided to the FBI and Agency-2. For example, Tech Executive-1 and his associates expressed varying views over time concerning the truth or falsity of the Russian Bank-1 allegations and other, related allegations. On one occasion, Tech Executive-1 sent an email in which he deemed the Russian Bank-1 data a "red herring." In addition, other researchers discussed the possiblity that the data may have been "spoofed," or that political bias may have infected their work. Evidence collected during the Government's investigation also reflects that the relevant white papers may have misstated, overstated, and/or cherry-picked facts, and that certain personnel at the FBI and Agency-2 concluded that the purported data was potentially incomplete, fabricated, and/or exaggerated. Still other evidence reflects that one or more researchers expressed in emails that they believed there was in fact a secret channel of communications between the Trump Organization and Russian Bank-1.

Evidence concerning the meaning, reliability, and strength (or lack thereof) of the relevant data and allegations constitutes direct evidence of the charged false statement. To the extent the

defense argues or the Court concludes, however, that some or all of this evidence constitutes "other crimes, wrongs, or acts" pursuant to Rule 404(b), the Government intends to argue that such evidence is still admissible to show the defendant's motive, intent, preparation, plan, and absence of mistake or accident. In particular, such evidence and communications are relevant to prove, among other things, that the defendant, Tech Executive-1, and/or the Clinton Campaign had a common "plan" to disseminate purportedly derogatory materials about a Presidential candidate during an election season, insofar as the materials that Tech Executive-1 and others discussed and analyzed were the same materials that Sussmann later provided to the FBI and Agency-2. This, in turn, is relevant to prove that the defendant and his clients "inten[ded]" to disseminate materials on behalf of those clients in connection with their attorney-client relationships. And it is also relevant to prove that these parties had a specific "motive" to mislead the FBI, namely, to prevent law enforcement scrutiny of the relevant clients' roles and of the origins, strength, or reliability of the Russian Bank-1 data and allegations. Such evidence and communications are also relevant to prove the defendant's and/or Tech Executive-1's "knowledge" about the perceived strengths and weaknesses of the allegations.

### **Reasons for Admitting Evidence Described in the Government's March 18, 2022 Letter**

We now turn to provide additional information regarding the potential bases for admitting the evidence described in our March 18 letter as non-propensity evidence pursuant to Rule 404(b).

### III.     The Defendant's Meeting with Agency-2

Evidence concerning the defendant's meeting with Agency-2 is relevant and admissible under Rule 404(b) to prove the defendants' motive, intent, plan, absence of mistake, and lack of accident. In particular, the defendant's February 2017 statement to Agency-2 personnel that he was not acting on behalf of a particular client substantially mirrored that statement he made to the FBI General Counsel five months earlier. Accordingly, the defendant's conduct supports the inference that both statements reflected a common "plan" and an "intent" to conceal the role of certain clients in the defendant's work. Such evidence also further supports the inference that the defendant's false statements to two different agencies were not simply a product of "mistake" or "accident" but, rather, reflected a deliberate effort to deny the involvement of any clients. In addition, such statements evince a "motive" by the defendant to conceal the political nature and objectives of his work. Finally, during the meeting with Agency-2, the defendant made another false and/or misleading statement when he told Agency-2 personnel, in substance and in part, that he had brought information to the FBI on a similar, but "unrelated" matter, referring to the Russian Bank-1 allegations. This statement was false and/or misleading because information regarding the Russian Bank-1 allegations was among the materials the defendant provided to Agency-2, and it therefore was not "unrelated."[1] This additional statement is also relevant as part of the broader factual context of the Agency-2 meeting and suppports an inference of the defendant's "intent"

---

[1] The defendant made a similar misleading statement on this issue to Mark Chadason.

and "plan" to deceive Agency-2 by prompting them to act on information without truthfully describing or disclosing relevant background.

    IV.    <u>Law Firm-1's Statements to the Media</u>

Law Firm-1's October 2018 statements to the media – which the defendant reviewed and/or assisted in drafting – are relevant and admissible under Rule 404(b) to prove, among other things, the defendant's "motive" and "intent." In particular, these statements and related evidence demonstrate that the defendant approved of, and participated in, his employer's issuance of false and/or misleading statements to the media that concealed the Clinton Campaign's role as a billed party for the defendant's work. Such deceptive actions by the defendant arguably reflect his continued "motive" and "intent" in 2018 to conceal what he previously concealed from the FBI in 2016, namely, the involvement of politically motivated parties in his work on the Russian Bank-1 allegations. In addition, this evidence is relevant to prove the defendant's "knowledge," "intent," and "plan," insofar as the defendant exhibited a consistent pattern of seeking to obscure the Clinton Campaign's role as a beneficiary of, and billed party for, the Russian Bank-1 allegations.

    V.    <u>The Defendant's December 2017 Congressional Testimony</u>

Separate and apart from its relevance as direct evidence of the defendant's false statement to the FBI General Counsel on September 19, 2016, the defendant's December 2017 Congressional testimony is relevant and admissbile pursuant to Rule 404(b) to prove, among other things, the defendant's "motive," "intent," "plan," and "knowledge." In particular, the defendant's testimony misleadingly conveyed the impression to Congress that the defendant's only client for the Russian Bank-1 allegations was Tech Executive-1. That testimony avoided mention of the fact that the only client billed for the defendant's pre-election work on those allegations was the Clinton Campaign. Therefore, this testimony is relevant to prove the defendant's "motive," "knowledge," "intent," and "plan," insofar as the defendant exhibited a consistent pattern of seeking to obscure the Clinton Campaign's role as a beneficiary of, and billed party for, the Russian Bank-1 allegations.

    VI.    <u>The Defendant's Failure to Preserve Firm Records During the Relevant Time Period</u>

The defendant's failure to preserve relevant law firm records and/or provide them to Law Firm-1 upon his departure is similarly relevant to prove the defendant's "motive," "knowledge," "intent," and "plan." The defendant's failure to provide these records to his employer prevented Law Firm-1 from learning about specific, highly relevant communications – including a September 18, 2016 text message containing substantially the same false statement as the one alleged in the Indictment. The defendant's failure to preserve and provide such records supports the inference that the defendant had "knowledge" that his electronic communiations would incriminate him and, therefore, acted intentionally to conceal them. Such evidence also tends to support the inference that the defendant harbored a specific "motive" to conceal his communications, namely, to avoid criminal liability or professional embarrassment. When combined with other evidence, these

March 23, 2022
Page 5 of 5

failures by the defendant also support an inference that the defendant intentionally executed a "plan" over time to conceal the involvement of particular clients in his work, and to prevent the discovery of evidence reflecting his own false statements on that subject.

    Please do not hesitate to contact the undersigned should you have any questions or concerns regarding this notice.

                                                Very truly yours,

                                                JOHN H. DURHAM
                                                Special Counsel

                              By:    /S/_____
                                                Jonathan E. Algor IV
                                                Andrew J. DeFilippis
                                                Michael T. Keilty
                                                Brittain Shaw
                                                Assistant Special Counsels
                                                U.S. Department of Justice