# EXHIBIT C

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| *v.* | Case No. 1:21-cr-00582 |
| **MICHAEL A. SUSSMANN,** | |
| *Defendant*. | |

**DEFENDANT'S RESPONSE TO THE SPECIAL COUNSEL'S RULE 404(b) NOTICES
AND MOTION TO EXCLUDE CERTAIN EVIDENCE UNDER RULES 403 AND 404(b)**

Defendant Michael A. Sussmann, by and through his counsel, hereby responds to the Special Counsel's letters concerning "other acts" evidence proffered pursuant to Rule 404(b) and moves to exclude several categories of evidence or argument contained therein.  Specifically, this Court should exclude evidence or argument regarding:  (1) the gathering of data by Rodney Joffe, and/or other data scientists, and fellow business personnel of Mr. Joffe (collectively "Mr. Joffe and Others"); (2) the accuracy of the data gathered by Mr. Joffe and Others, and the conclusions drawn therefrom; (3) anything other than Mr. Sussmann's own relevant statements during a February 9, 2017 meeting with Agency-2; (4) anything other than relevant statements made by Mr. Sussmann during his December 2017 testimony before the House Permanent Subcommittee on Intelligence ("HPSCI"); (5) anything other than the specific statements issued by Perkins Coie LLP ("Perkins Coie") and its Managing Partner in October 2018 or Mr. Sussmann's statements prompting them, if any; and (6) Mr. Sussmann's purported failure to preserve certain text messages from the relevant time period in violation of Perkins Coie policies.

# INTRODUCTION

The Special Counsel has charged a single count of 18 U.S.C. § 1001(a)(2) concerning whether Mr. Sussmann was "acting on behalf of any client" when conveying information to then-Federal Bureau of Investigation ("FBI") General Counsel James Baker during a September 19, 2016 meeting.  Indictment ¶ 27.  And yet, the Special Counsel now seeks to introduce several categories of "other acts" evidence pursuant to Federal Rule of Evidence 404(b) that have nothing whatsoever to do with that charged false statement and, in some instances, nothing whatsoever to do with Mr. Sussmann himself.  Specifically, the Special Counsel wants to introduce:  (1) evidence as to how the data provided to the FBI and Agency-2 was gathered by Mr. Joffe and Others; (2) evidence concerning the accuracy of that data and its analysis; (3) evidence concerning Mr. Sussmann's February 2017 meeting with Agency-2; (4) evidence concerning Mr. Sussmann's December 2017 HPSCI testimony; (5); evidence concerning statements issued by Perkins Coie and its Managing Partner in October 2018; and (6) purported evidence that Mr. Sussmann failed to preserve certain text messages in violation of Perkins Coie policies.  J. Durham Letter to S. Berkowitz at 2-4 (Mar. 23, 2022) [hereinafter "Supplemental Notice"].

The defense does not object to the introduction of evidence of Mr. Sussmann's statements regarding his representation of a client to Agency-2 (category 3 above), during his HPSCI testimony (category 4 above), or in connection with Perkins Coie's statements to the media in October 2018 (category 5 above).  Nor does the defense object to the evidence that directly bears on Mr. Sussmann's state of mind regarding the data and conclusions he presented to the FBI or Agency-2.  What the defense does object to is the Special Counsel's proposal to, once again, overreach in this case.  The Special Counsel seeks to introduce evidence of purportedly objectionable data gathering and overstated analysis of the data, even though Mr. Sussmann had no involvement in—or awareness of—either; he seeks to introduce other purported false

statements even though none were made; and he seeks to introduce evidence of "obstruction of justice" based on a purported violation of Perkins Coie policy, even though there was no such violation—a fact that the Special Counsel would have learned had he even bothered to obtain and read the relevant policies in the first place.

Such conduct is not properly admitted against Mr. Sussmann pursuant to Rule 404(b) or Rule 403 for the reasons set forth below.  To avoid creating a series of prejudicial and inflammatory sideshows, the Special Counsel must be precluded from his attempted overreach:  the Special Counsel should be forced to keep the focus of the trial where it belongs—on the single false statement that he has actually charged.

## BACKGROUND

This Court's pretrial order could not have been clearer:  the Special Counsel was required to provide notice of any Rule 404(b) evidence he seeks to introduce by March 18.  *See* Dkt. No. 30 at 2-3.  On that deadline, the Special Counsel provided Mr. Sussmann with brief notice of his intention to offer four types of evidence pursuant to Rule 404(b)—evidence concerning Mr. Sussmann's February 2017 meeting with Agency-2; evidence concerning Mr. Sussmann's voluntary testimony before HPSCI in December 2017; evidence concerning certain statements made by Perkins Coie in October 2018; and evidence that Mr. Sussmann failed to preserve certain text messages, in violation of Perkins Coie policies.  J. Durham Letter to S. Berkowitz (Mar. 18, 2022) [hereinafter "Original Notice"].  But the Special Counsel did not provide any justification as to *why* this evidence was admissible, as Rule 404(b) requires.

Five days after the Court's deadline had passed, the Special Counsel sent a "Supplemental Notice" to Mr. Sussmann.  Amazingly, this improper Supplemental Notice for the first time provided the requisite justification for the four categories of Rule 404(b) evidence listed in the Original Notice.  And the Supplemental Notice went on to alert Mr. Sussmann to *two new*

categories of Rule 404(b) evidence that the Special Counsel apparently seeks to introduce—
evidence as to how the data provided to the FBI and Agency-2 was gathered by Mr. Joffe and
Others, and evidence concerning the accuracy of that data and its analysis.  *See* Suppl. Notice at 2.
The Special Counsel's Office did not bother to give any excuse for its untimely actions or its
violation of the Court's order.

Read together, the Special Counsel's timely and untimely notices indicate that the he
intends to introduce six categories of evidence as direct evidence or, in the alternative, as "other
act" evidence pursuant to Rule 404(b).

*First*, the Special Counsel seeks to introduce evidence of the manner in which Mr. Joffe
and Others gathered the purported data underlying the information concerning Alfa Bank and
Russian phones on Trump-related computer networks, among others (the "YotaPhone
Information").  *Id.*  He claims that the way in which Mr. Joffe and Others gathered the data suggests
that it was "obtained in a manner that may be considered objectionable," including "through
invasions of privacy, breaches of contract, or other unlawful or unethical means."  *Id.*  However,
the Special Counsel offers *no evidence* whatsoever that Mr. Sussmann was involved in these
data gathering efforts.  Nonetheless, the Special Counsel claims that these data gathering efforts—
conducted by Mr. Joffe and Others alone—proves a shared plan between Mr. Sussmann, Mr. Joffe,
"and/or the Clinton Campaign to collect and disseminate materials . . . that they believed would
prompt negative scrutiny of Trump."  *Id.*  Further, he suggests that evidence as to how the data
was gathered may be relevant to prove "preparation" for Mr. Sussmann's dissemination of the
allegations; or a "motive" to mislead the FBI and others about the manner in which the data was
gathered.  *Id.*

*Second*, the Special Counsel seeks to introduce evidence as to the accuracy of both the data, and the conclusions drawn therefrom, that Mr. Sussmann provided to the FBI and Agency-2. *See id.* (claiming that the data underlying the allegations may have been "spoofed" and that the white papers may have been "misstated, overstated, and/or cherry-picked"). The Special Counsel suggests that this evidence is indicative of a "plan," but fails to provide any explanation as to why any "plan" regarding the accuracy of the data and its analysis is relevant to the only plan that would matter—a plan implicating the charged conduct, namely a false statement to Mr. Baker as to who Mr. Sussmann's clients were. In any event, this evidence appears to rest exclusively on communications sent by Mr. Joffe and certain emails between researchers, and there is no evidence that Mr. Sussmann (or the Clinton Campaign for that matter) was privy to or aware of such evidence. *Id.* Even so, the Special Counsel seeks to admit this evidence as to the accuracy or inaccuracy of the data pursuant to Rule 404(b) to purportedly show the existence of a "plan"; Mr. Sussmann's intent to disseminate materials on behalf of certain clients; a motive to mislead the FBI; and Mr. Sussmann's "knowledge" as to the accuracy or inaccuracy of the data.[1] *Id.* at 3.

*Third*, the Special Counsel seeks to introduce evidence of a "similar set of allegations" and a "substantially similar false statement" related to a February 9, 2017 meeting between Mr. Sussmann and Agency-2 employees. Original Notice at 2. That meeting came about after Mr. Sussmann met with an Agency-2 contractor, Mark Chadason, and told Mr. Chadason that he represented a client, Mr. Joffe, who wanted to provide the YotaPhone Information to Agency-2,

---

[1] The Special Counsel has also indicated that he will seek to have evidence as to how the data was gathered, as well as evidence concerning the purported accuracy of the data and its analysis, admitted as direct evidence, which Mr. Sussmann contests separately. *See* Def. Mot. *in Lim.* to Preclude Evid. Regarding Gathering of Data, Accuracy of Data or its Analysis, or the Steele Dossier and to Strike Same (Apr. 4, 2022) [hereinafter "Defendant's Motion *in Limine* Regarding the Data or Steele Dossier"].

which Mr. Sussmann believed had clear national security implications.  Ultimately, as alleged, Mr. Sussmann met with the Agency-2 personnel, provided them with the YotaPhone Information as well as updated Alfa Bank Information, and informed them that "that he was not representing a particular client in providing the allegations to Agency-2."  Original Notice at 2.

The Special Counsel seeks to admit that statement at trial.  *Id.*  As discussed above, the Special Counsel also seeks to admit evidence regarding the gathering of the data and its accuracy and analysis.  And moreover, in its Supplemental Notice the Special Counsel announced for the first time that he also apparently seeks to introduce an additional statement purportedly made at the February 2017 meeting, namely that Mr. Sussmann "told Agency-2 personnel, in substance and in part, that he had brought information to the FBI on a similar but 'unrelated' matter, referring to the [Alfa Bank] allegations."  Suppl. Notice at 3.  The Special Counsel claims this evidence is admissible pursuant to Rule 404(b) to support an inference of an "intent" and "plan" to deceive Agency-2.  *Id.* at 3-4.

*Fourth*, the Special Counsel seeks to introduce evidence regarding Mr. Sussmann's voluntary testimony before HPSCI in December 2017.  During that testimony, in response to a question from a member of Congress as to whether it was correct that "your client directed you to have these engagements with the FBI and [Agency-2] and to disseminate the information that client provided you," Mr. Sussmann explained

> Well, I apologize for the double negative.  It isn't not correct, but when you say my client directed me, we had a conversation, as lawyers do with their clients, about client needs and objectives and the best course to take for a client.  And so it may have been a decision that we came to together.  I mean, I don't want to imply that I was sort of directed to do something against my better judgment, or that we were in any sort of conflict, but this was – I think it's most accurate to say it was done on behalf of my client.

Interview Tr. of M. Sussmann at 66-67, Exec. Session of HPSCI (Dec. 18, 2017).  The Special Counsel now seeks to introduce that testimony where Mr. Sussmann "a[c]knowledged bringing the allegations to the FBI and Agency-2 on behalf of a specific client, namely Tech Executive-1." Original Notice at 2.  However, the Special Counsel also seeks to introduce evidence and argument that Mr. Sussmann's HPSCI "testimony is at best misleading insofar as it failed to disclose that the defendant billed work on the allegations to the Hillary Clinton Campaign."  *Id.*  The Special Counsel claims that such evidence is admissible pursuant to Rule 404(b) to show motive, knowledge, intent, and plan, as to "a consistent pattern of seeking to obscure the Clinton Campaign's role as a beneficiary of, and billed party for, the Russian Bank-1 allegations."  Suppl. Notice at 4.  However, the Special Counsel does not identify a single question asked during Mr. Sussmann's testimony that would have called for a response concerning the Clinton Campaign.

*Fifth*, the Special Counsel seeks to introduce statements to the media concerning Mr. Sussmann's September 2016 meeting with Mr. Baker, which were drafted and issued by Mr. Sussmann's former law firm, Perkins Coie, and its then-Managing Partner.  Original Notice at 2. Those statements were prompted by speculative and misleading media coverage making baseless allegations against Mr. Sussmann, including, among other things, that the information Mr. Sussmann provided to Mr. Baker was used when the government sought an order for electronic surveillance of Carter Page pursuant to the Foreign Intelligence Surveillance Act ("FISA"), and that Mr. Sussmann was the "point man" for Perkins Coie's Democratic National Committee ("DNC") and Clinton Campaign accounts.[2]  In response to this erroneous reporting, both Perkins Coie and its Managing Partner issued statements in an attempt to provide needed clarification that

---

[2] *See, e.g.*, Kimberly A. Strassel, *Who is Michael Sussmann*?, Wall St. J. (Oct. 11, 2018 7:03 PM), https://www.wsj.com/articles/who-is-michael-sussman-1539299003?mod=journal_lists_kimberley-a-strassel_the-sussmann-case.

Mr. Sussmann's meeting with Mr. Baker was "not connected to the firm's representation of the . . . Clinton Campaign, the DNC or any Political Law Group client" and "on behalf of a client with no connections to either the Clinton campaign, the DNC or any other Political Law Group Client." *Id.*

Nevertheless, the Special Counsel seeks to introduce evidence of these statements pursuant to Rule 404(b) to prove "motive" and "intent" to "conceal[] . . . the involvement of politically motivated parties in his work on the [Alfa Bank] allegations." Suppl. Notice at 4. The Special Counsel also suggests that these Perkins Coie statements purportedly show Mr. Sussmann's knowledge, intent, and plan as to a "consistent pattern of seeking to obscure the Clinton Campaign's role as a beneficiary of, and billed party for, the [Alfa Bank] allegations." *Id.*

*Sixth and finally*, the Special Counsel seeks to introduce evidence that Mr. Sussmann purportedly failed to preserve certain text messages that he exchanged with Mr. Baker using his personal device, as was purportedly required by Perkins Coie record retention policies. As the Special Counsel is aware, Mr. Sussmann had not retained the text messages in question—which contain exculpatory information—because he replaced the personal cellphone he used to send them and does not store his personal text messages on the cloud. Nevertheless, the Special Counsel argues that this was a violation of Perkins Coie policy. However, when asked to identify or produce which specific Perkins Coie policies addressed Mr. Sussmann's retention of these text messages, the Special Counsel was unable to do so. Instead, the Special Counsel disclosed that he did not have copies of the relevant firm policies when he made the allegation.

Subsequently, the defense issued a subpoena to Perkins Coie; obtained the relevant policies; and confirmed that none of those policies addressed text messages, let alone required their preservation. Instead, those policies—which govern the "retention and destruction" of client

records—make clear that only significant client communications must be retained, and that electronic communications concerning scheduling do not satisfy the relevant definition of "significant communication."

Despite lacking evidence that Mr. Sussmann violated any Perkins Coie record retention policies, the Special Counsel seeks to admit evidence of Mr. Sussmann's purported noncompliance pursuant to Rule 404(b) to show Mr. Sussmann's purported knowledge that these routine text messages were incriminating and that he had a motive to conceal them in order to obstruct justice. Suppl. Notice at 4.

## LEGAL STANDARD

Federal Rule of Evidence 404(b)(1) provides that "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."[3]  Under subsection (b)(2), such "other act" evidence is only admissible for another purpose.  *See id.* at 404(b)(2).  The Special Counsel bears the burden of identifying an admissible purpose for which any "other act" testimony or evidence can be used.  *United States v. Hernandez*, 780 F.2d 113, 118 (D.C. Cir. 1986).

In addition, evidence of other acts may only be admitted "subject to proof from which a jury reasonably could conclude by a preponderance of the evidence that the defendant committed the [acts]."  *United States v. Straker*, 567 F. Supp. 2d 174, 179 n.4 (D.D.C. 2008), *aff'd*, 800 F.3d 570 (D.C. Cir. 2015) (per curiam); *see also United States v. Ruffin*, 40 F.3d 1296, 1298 (D.C. Cir. 1994) ("[A] court may conditionally admit 'other crimes' evidence subject to proof from which

---

[3] This "[s]o-called 'propensity' evidence is excluded not because it is irrelevant, but because 'it is said to weigh too much with the jury and to so overpersuade them as to prejudice one with a bad general record and deny him a fair opportunity to defend against a particular charge.'"  *United States v. Appiah*, 2020 WL 3469688, at *6 (D.D.C. June 25, 2020) (quoting *Michelson v. United States*, 335 U.S. 469, 475-76 (1948)).

the jury reasonably could conclude, by a preponderance of the evidence, that the defendant committed the other crimes" and "when evidence is admitted subject to proof of connection, and the proponent of the evidence fails to adduce such proof, 'the trial court must instruct the jury to disregard the evidence.'" (citation omitted)); *United States v. Griggs*, 2004 U.S. Dist. LEXIS 23695, at *4-5 (S.D.N.Y. Nov. 23, 2004) ("In *Huddleston*, the Supreme Court held that the trial court is required to make preliminary determination as to whether the jury could reasonably find by a preponderance of the evidence that the alleged prior act did, in fact, occur." (citation omitted)); *United States v. Caesar*, 2022 U.S. Dist. LEXIS 14722, at *18 (E.D. Pa. Jan. 27, 2022) ("In order to admit evidence of a prior act under . . . Rule 404(b), there must be evidence from which a jury could find by a preponderance of evidence that the prior act occurred.").

Finally, even where Rule 404(b) evidence may be relevant, a court must exclude it if "the probative value of that evidence [is] outweighed [by] its prejudicial effect under Federal Rule of Evidence 403." *Hernandez*, 780 F.2d at 118.

## ARGUMENT

As a preliminary matter, the Special Counsel has violated this Court's order and failed to provide timely and complete notice of Rule 404(b) evidence. *See* Dkt. No. 30. Specifically in his Original Notice, the Special Counsel simply identified four categories of potential Rule 404(b) evidence, but did not, as required, provide justification for the admission of that evidence. *See* Fed. R. Evid. 404(b)(3) (mandating that "the prosecutor must . . . provide reasonable notice of any such evidence that the prosecutor intends to offer at trial, so that the defendant has a fair opportunity to meet it" and "articulate in the notice the permitted purpose for which the prosecutor intends to offer the evidence and the reasoning that supports the purpose").

Instead, the purported justifications for those four categories of evidence came five days later, on March 23, in an untimely Supplemental Notice. Further, the Supplemental Notice for the

first time sought to introduce two additional categories of evidence pursuant to Rule 404(b), neither of which was mentioned in the timely Original Notice that was submitted on this Court's March 18 deadline. The Special Counsel's inability to fully comply with that deadline and his failure to even acknowledge his untimely and incomplete Rule 404(b) notice, is grounds alone to reject it. *See United States v. Vega*, 188 F.3d 1150, 1153 (9th Cir. 1999) ("Failure to provide notice or obtain an excuse from the district court, renders the other acts evidence inadmissible, whether the evidence is used in the prosecution's case-in-chief or for impeachment.").

Although the Special Counsel's Rule 404(b) notices are procedurally infirm, Mr. Sussmann does not object to the admissibility of certain discrete statements identified in them. However, the majority of the purported "other act" evidence identified by the Special Counsel has virtually nothing whatsoever to do with Mr. Sussmann, let alone the charged conduct, and therefore does not implicate Rule 404(b).[4]

And, even if that evidence were somehow technically admissible pursuant to Rule 404(b), its admission would inflame and prejudice the jury and necessitate extensive rebuttal evidence from Mr. Sussmann, causing multiple mini-trials that would result in a significant and unnecessary waste of this Court's, and the jury's, time. As explained in further detail below, such evidence

---

[4] Moreover, in several instances the Special Counsel baldly claims that the proffered evidence may be admitted "as 'other act' evidence pursuant to Federal Rule of Evidence 404(b) to prove the defendant's motive, intent, plan, and absence of mistake or accident," *see, e.g.*, Original Notice at 1; Suppl. Notice at 2, but merely parroting the language of the rule is insufficient to provide notice. *See, e.g.*, *United States v. Edwards*, 540 F.3d 1156, 1163-64 (10th Cir. 2008) (expressing disapproval where "the government simply asserted without explanation or analysis that the convictions were being offered 'to prove the defendant's intent in the current case, to prove his knowledge, to prove his motive in this case, to prove that there was no mistake or accident'" and holding that the lower court "abused its discretion by admitting this [Rule 404(b)] evidence" pursuant to such "unsupported assertions" by the government "that the evidence was obviously relevant for all of these purposes" (citation omitted)). Thus, Mr. Sussmann should only have to respond to evidence for which the Special Counsel has at least attempted to articulate a "permitted purpose . . . and the reasoning that supports th[at] purpose" as Rule 404(b)(3) requires.

must be excluded unless it directly relates to Mr. Sussmann's own statements or his state of mind at the relevant time.

>    **A.    Evidence Concerning the How the Data Was Gathered is Not Admissible under Rule 404(b) or Rule 403.**

The Special Counsel seeks to admit evidence as to how the data provided to both the FBI and Agency-2 was gathered by Mr. Joffe and Others, including that these efforts occurred "in a manner that may be considered objectionable—whether through invasions of privacy, breaches of contract, or other unlawful or unethical means," as direct evidence of the charged conduct.  Suppl. Notice at 2.  Putting aside that these allegations are wrong and the defense unreservedly disputes them, any evidence or argument that the Special Counsel seeks to offer are, as explained in greater detail in Mr. Sussmann's Motion *in Limine*, utterly irrelevant to the single false statement charged in this case and thus direct evidence of nothing.  *See* Def. Mot. *in Lim.* Regarding the Data or Steele Dossier.

In the alternative, the Special Counsel claims that evidence of how the data was gathered is admissible pursuant to Rule 404(b) to show, among other things, Mr. Sussmann's "motive, intent, preparation, plan, and absence of mistake or accident."  Suppl. Notice at 2.  We address this meritless claim here.

*First* and most importantly, the fundamental problem with the Special Counsel's proposal is that the Special Counsel has not made any allegation—nor is there any evidence—that Mr. Sussmann had any involvement in the gathering of such data.  And it is axiomatic that "[t]he language of Rule 404(b) does not apply to crimes, wrongs, or acts of another person."  *United States v. Taylor*, 701 F.3d 1166, 1172 (7th Cir. 2012).  Thus, "in order to trigger the application of Rule 404(b) there must be an allegation that the extrinsic offense was committed by the defendant."  *United States v. Krezdorn*, 639 F.2d 1327, 1333 (5th Cir. 1981); *see also United States v. Beechum*,

582 F.2d 898, 912-13 (5th Cir. 1978) (analyzing Rule 404(b) and explaining that "as a predicate to a determination that the extrinsic offense is relevant, the government must offer proof demonstrating that the defendant committed the offense.  If the proof is insufficient, the judge must exclude the evidence because it is irrelevant.").

Here, the Special Counsel has offered no evidence whatsoever linking Mr. Sussmann to the gathering of the data provided to either the FBI or Agency-2, both of which exclusively implicate the actions and communications of uncharged third parties.  Thus, it is manifestly improper for such evidence to be admitted against Mr. Sussmann pursuant to Rule 404(b) and this Court must exclude it.  *See United States v. Long*, 328 F.3d 655, 660 (D.C. Cir. 2003) ("Evidence of similar acts [offered pursuant to Rule 404(b)] must . . . be sufficient to support a jury finding that the defendant committed the other crime or act.").

*Second*, that fatal flaw also underscores why the Special Counsel's arguments that the evidence is relevant to prove Mr. Sussmann's "preparation" and "motive" are fanciful.  Again, there is no indication whatsoever that Mr. Sussmann had anything to do with how the data was gathered, much less how it was assembled or whether there was any purported impropriety as to the manner in which Mr. Joffe and Others gathered the data.  Absent that factual predicate, *Caesar*, 2022 U.S. Dist. LEXIS 14722, at *18-19, this evidence cannot be admitted pursuant to Rule 404(b) to show Mr. Sussmann's "preparation" or "motive."

*Third*, there is no merit to the Special Counsel's argument that the manner in which the data was gathered by Mr. Joffe and Others is permissible under Rule 404(b) to prove the existence of a shared "plan" between Mr. Sussmann, Mr. Joffe, and the Clinton Campaign.  Suppl. Notice at 3.  That argument is nonsensical.  Indeed, in order to be properly admitted as evidence of a "plan" under Rule 404(b), the evidence must be indicative of a common scheme to commit the *charged*

*crime*.  *See, e.g.*, *United States v. Qin*, 688 F.3d 257, 264 (6th Cir. 2012) (rejecting the government's proffered Rule 404(b) evidence because the charges at issue were "not so broad" as the sweeping "common scheme or plan" alleged by the prosecution, and "[b]y generalizing in this manner, the government increases the risk that the jury will interpret the 404(b) evidence in precisely the manner that the rule is intended to prohibit").

Here, the Special Counsel has charged Mr. Sussmann with making a false statement to Mr. Baker about his clients in September 2016; the Special Counsel has not charged Mr. Sussmann with a scheme to defraud.  The Special Counsel does not even attempt to explain how the data gathering efforts of third parties—conducted both before and after the September 2016 meeting and, indeed, after the 2016 election—can prove a shared plan for Mr. Sussmann to falsely tell Mr. Baker that he was not acting on behalf of a client.[5]  Nor does the Special Counsel provide any evidence that Mr. Sussmann or the Clinton Campaign had any involvement in those data gathering efforts anyway.  As a result, there simply is no way in which those data gathering efforts could implicate a shared plan for Mr. Sussmann to make a false statement about his clients when meeting with Mr. Baker.  These baseless allegations are inadmissible pursuant to Rule 404(b) and this evidence must be rejected.  *See, e.g.*, *W. All. Bank v. Jefferson*, 2016 U.S. Dist. LEXIS 59477, at *12-13 (D. Ariz. May 3, 2016) (rejecting 404(b) "plan" evidence because "[t]o be properly admissible under Rule 404(b) . . . there must be some overall scheme of which each of the [acts] is but a part" (citation omitted)); *Caesar*, 2022 U.S. Dist. LEXIS 14722, at *18 ("In order to admit evidence of a prior act under . . . Rule 404(b), there must be evidence from which a jury could find by a preponderance of evidence that the prior act occurred.").

---

[5] Nor can he explain why this plan would be for Mr. Sussmann to conceal that he was acting on behalf of a client but nonetheless disclose to Mr. Baker that the "objectionably gathered" information came from cyber experts.

Finally, even if this Court were to determine that such evidence, even if true, may somehow fall within the ambit of Rule 404(b), it should be excluded as significantly more prejudicial than probative pursuant to Rule 403.  It is clear that the Special Counsel's purpose in proffering the data gathering evidence is to besmirch Mr. Sussmann with the acts of *other individuals* with whom—apart from Mr. Joffe—Mr. Sussmann had virtually no interaction or communication.  But such evidence would confuse and mislead the jury; unfairly prejudice Mr. Sussmann by associating him with the acts of individuals who were wholly unaware of him, and he of them; and waste valuable trial time on collateral, technically-complex issues completely untethered from the single charged false statement.  *See generally* Def. Mot. *in Lim.* Regarding Data or Steele Dossier.

**B.**     **Evidence Concerning the Accuracy of the Data and its Analysis is Not Admissible Under Rule 404(b) or Rule 403.**

The Special Counsel's Supplemental Notice indicates that he also seeks to introduce evidence "concerning the strength and reliability (or lack thereof) of the purported data and allegations" provided to both the FBI and Agency-2.  Suppl. Notice at 2.  And while the Special Counsel seemingly represented to this Court that he had no intention of adducing evidence or making arguments that the data was inaccurate, Hr'g Tr. at 41:5-42:14 (Mar. 31, 2022), the Special Counsel nevertheless persists in reserving the right to have witnesses—including an expert—testify that (1) the data that Mr. Sussmann provided was inaccurate; and (2) that the analysis and conclusions drawn from that data were inaccurate.[6]  As explained in the Defendant's Motion *in*

---

[6] Indeed, the Special Counsel recently informed the defense that he intends to introduce testimony from personnel employed by companies who hosted or processed data for the Trump Organization regarding their views on the accuracy of the data and the conclusions drawn therefrom.  Such testimony is manifestly improper.  Third party lay witness testimony as to irrelevant and complex evidence, unconnected in any way to the defendant's knowledge is irrelevant; it carries with it a substantial risk of prejudice; and it runs afoul of the prohibition on lay witnesses testifying as to their opinion or conclusions.  *See, e.g.*, *Barillas v. City of L.A.*, 2021 U.S. Dist. LEXIS 194094, at *16 (C.D. Cal. Apr. 12, 2021) ("The jury may also be unduly influenced by negative feelings

*Limine* Regarding the Data or Steele Dossier, any such evidence or argument concerning the accuracy of the data or the conclusions drawn therefrom is utterly irrelevant to the single false statement charged in this conduct; direct evidence of nothing; and must be rejected.

In the alternative, the Special Counsel moves to admit evidence regarding the accuracy of the data or the conclusions drawn therefrom pursuant to Rule 404(b).  However, the Special Counsel's proposed rationale for doing so is similarly meritless.

*First*, to repeat a familiar refrain:  every single one of the Rule 404(b) purposes offered by the Special Counsel fails due to one fundamental problem—evidence concerning third parties does not and cannot satisfy Rule 404(b).  Simply put, the Special Counsel has identified no evidence whatsoever indicating that the data was anything but accurate, or that Mr. Sussmann, a lawyer and not a data expert, knew, or should have known, that there were any issues with either the data or the conclusions drawn therefrom.  Instead, when questioning the accuracy of the data or its analysis, all the Special Counsel can point to are communications between Mr. Joffe and Others, communications that Mr. Sussmann, plainly from the face of the communications, did not receive.[7] And of course, such communications can be of no moment where the Special Counsel has provided no indication that Mr. Sussmann was even aware of them, let alone a participant in them.  As such,

---

toward[s] this kind of [evidence] and make a decision based on emotion or another improper basis. Accordingly, the Court will exclude [the] evidence . . . ." (citation omitted)); *see also* Final Jury Instructions at 9, *United States v. Shi*, No. 17-cr-110 (CRC) (D.D.C. July 24, 2019), ECF No. 252 [hereinafter "Cooper Jury Instructions"] ("[A] witness may not testify as to his or her opinions or conclusions.").

[7] Specifically, the Special Counsel claims that "[Mr. Joffe] and his associates expressed varying views over time concerning the truth or falsity of the [Alfa Bank] allegations and other, related allegations" and that "other researchers discussed the possibility that the data may have been 'spoofed'" or otherwise misstated, overstated, or cherry-picked.  Suppl. Notice at 2.  But Mr. Sussmann was not included on any of the underlying communications the Special Counsel is referring to, and his Rule 404(b) notice provides no evidence whatsoever that Mr. Sussmann was even aware of those communications.  *See id.*

this evidence falls outside the scope of Rule 404(b) and must be excluded.  *See, e.g.*, *United States v. Gonzalez-Sanchez*, 825 F.2d 572, 582 n.25 (1st Cir. 1987) ("Inasmuch as this evidence does not concern past criminal activity of [the defendant], Rule 404(b) is inapplicable."); *United States v. Edwards*, 696 F.2d 1277, 1280-81 (11th Cir. 1983) (explaining that "Rule 404(b) is not implicated" where other "offenses were not alleged or shown to have been committed by [the defendant]").

Nor does Rule 404(b) allow the introduction of evidence of the plan that the Special Counsel has identified in his notice—a plan "to disseminate purportedly derogatory materials about a Presidential candidate during an election season."  Suppl. Notice at 3.  Putting aside that, as a factual matter, there was no plan along the lines suggested by the Special Counsel, this purported plan *is not* the crime that the Special Counsel has charged, which hinges solely on whether Mr. Sussmann made a false statement to Mr. Baker regarding whether he was providing Mr. Baker with information on behalf of a client.  To satisfy Rule 404(b)'s requirements, any alleged "plan" would have to implicate a plan for Mr. Sussmann to lie about his clients.  *See, e.g.*, *Qin*, 688 F.3d at 264.  There is no evidence whatsoever that third party perceptions as to the accuracy of the data or its analysis had anything to do with any plan to conceal whether or not Mr. Sussmann was acting on behalf of a client.

*Second*, even if the Special Counsel could articulate a coherent rationale for admitting such evidence pursuant to Rule 404(b)—and he has not and cannot—the evidence would still have to be excluded under Rule 403.  Here, the Special Counsel has not alleged—nor is there any evidence—that Mr. Sussmann believed or had any reason to believe there was any issue with the accuracy of the data or the accuracy of the conclusions or analysis drawn from that data, or that he even had the necessary technical ability to make such evaluations.  Absent such allegations, even if this evidence were somehow admissible pursuant to Rule 404(b)—and it is not—it cannot pass

17

muster under Rule 403 because it is irrelevant.  None of this evidence goes to Mr. Sussmann's state of mind in relation to the charged crime.  It is elementary that a court must exclude evidence when "the probative value of that evidence [is] outweighed [by] its prejudicial effect under Federal Rule of Evidence 403."  *Hernandez*, 780 F.2d at 118.  Simply put, evidence as to the data's accuracy would confuse and mislead the jury; unfairly prejudice Mr. Sussmann by associating him with third party beliefs that he had no awareness of; and waste valuable trial time on collateral, technically-complex issues untethered from the actual charge—harms which are particularly pronounced as that evidence has no probative value as to Mr. Sussmann.

At bottom, any evidence as to the accuracy or inaccuracy of the data provided to both the FBI and Agency-2—or its analysis—does not satisfy the requirements of Rule 404(b) or Rule 403 and should be rejected.

### C.    The Court Should Preclude any Agency-2 Evidence or Argument Aside from Mr. Sussmann's Own Relevant Statements.

The Special Counsel seeks to introduce evidence, pursuant to Rule 404(b), that during "his meeting with Agency-2 employees, [Mr. Sussmann] made a substantially similar false statement as he had made to [Mr.] Baker," namely "that he was not representing a particular client in providing the allegations to Agency-2."  Original Notice at 1-2.  Though Mr. Sussmann disagrees with the Special Counsel's characterization and spin,[8] Mr. Sussmann does not object to the

---

[8] As a preliminary matter, the Special Counsel asserts that this statement—which occurred during a meeting primarily focused on different allegations— is "direct evidence" of the charge against Mr. Sussmann.  But he provides no explanation as to how a statement made in February 2017 could be direct evidence of anything that happened at a meeting with Mr. Baker that occurred five months earlier.

Moreover, the Special Counsel's claim that the statement is evidence of a shared plan involving Mr. Sussmann, Mr. Joffe, and the Clinton Campaign to conceal the identity of his clients is nonsensical.  For one thing, the Special Counsel simply ignores the fact that by the time of Mr. Sussmann's meeting with Agency-2, the 2016 Presidential Election was over and the Clinton Campaign had been inactive for months.  It simply cannot be that a statement made at a meeting

introduction of that discrete statement.[9]  Moreover, Mr. Sussmann reserves the right to introduce evidence contradicting the Special Counsel's assertions, and indeed at trial anticipates introducing evidence which will show that he clearly informed Agency-2 personnel that he was providing the allegations on behalf of his client, Mr. Joffe.

But troublingly, the Special Counsel does not just want to introduce a statement concerning Mr. Sussmann's client.  Instead, he wants to introduce additional evidence regarding the Agency-2 meeting, including evidence as to the manner in which the data underlying the "similar set of allegations" was gathered, that data's accuracy, and the accuracy of the conclusions drawn therefrom.  *See, e.g.*, Original Notice at 2; Suppl. Notice at 2-3.  But as explained above and in the Defendant's Motion *in Limine* Regarding the Data or Steele Dossier, any evidence as to how the underlying data was gathered, or the accuracy of that data or its analysis, solely implicates the conduct of Mr. Joffe and Others and has absolutely nothing to do with the substance of what Mr. Sussmann said to Mr. Baker about his clients during their September 2016 meeting.  Thus, this

---

months after an election's conclusion supports the existence of a plan involving one of the campaigns.  *See Jankins v. TDC Mgmt. Corp.*, 21 F.3d 436, 441 (D.C. Cir. 1994) (allegedly similar act that follows the one in dispute "weakens the link" between the two, because "[p]rojection of an evil purpose backward in time seems weaker than inferring its continuation"); *United States v. Watson*, 894 F.2d 1345, 1349 (D.C. Cir. 1990) ("The temporal (as well as the logical) relationship between a defendant's later act and his earlier state of mind attenuates the relevance of such proof . . . .").  For another, as discussed above, there is simply no evidence of any such plan and thus the Special Counsel cannot satisfy his threshold burden of proffering this evidence to show a shared plan.  *See, e.g.*, *Straker*, 567 F. Supp. 2d at 179 n.4 (Evidence of other acts may only be admitted "subject to proof from which a jury reasonably could conclude by a preponderance of the evidence that the defendant committed the [acts].").

[9] Of course, the admission of this evidence is subject to this Court's determination that the Special Counsel has otherwise met his burden in proving that those statements are properly authenticated and otherwise admissible under the Federal Rules of Evidence.

evidence must be rejected as both irrelevant and prejudicial,[10] *see* Def. Mot. *in Lim.* Regarding the Data or Steele Dossier, and inadmissible pursuant to Rule 404(b).

Nor should the Special Counsel be permitted to offer argument, raised for the first time in his Supplemental Notice, that Mr. Sussmann made an additional false statement to Agency-2. Specifically, the Special Counsel suggests that when meeting with Agency-2, Mr. Sussmann stated that "he had brought information to the FBI on a similar, but 'unrelated' matter." Suppl. Notice at 3. According to the Special Counsel, this statement "was false and/or misleading because information regarding the [Alfa Bank] allegations was among the materials . . . provided to Agency-2, and . . . therefore was not 'unrelated.'" *Id*. This is preposterous and another example of the Special Counsel's attempts to overreach in this matter. For one thing, it is clear from the drafts of the memorandum of Mr. Sussmann's meeting with Agency-2 that when Mr. Sussmann said he gave information to the FBI that was similar but unrelated to the information he gave Agency-2, he was referring to the YotaPhone Information—meaning he gave the FBI information that was similar but unrelated to the YotaPhone Information. *See* Mem. for Rec. at SCO-3500U-018096-98 (Feb. 9, 2017). The Special Counsel simply has no evidence beyond his own assertion—divorced from context and reality—that Mr. Sussmann's purported statement was in fact false, and therefore cannot even meet its burden of proof in showing that any such "false statement" occurred, *Caesar*, 2022 U.S. Dist. LEXIS 14722, at *18-19. Additionally, even if the Special Counsel is factually correct—and he is not—Mr. Sussmann's statement to Agency-2 has no bearing on the charged crime, i.e., whether Mr. Sussmann falsely told the FBI—five months before the Agency-2 meeting—that he was not conveying information on behalf of a client at that

---

[10] Indeed, this is precisely the type of evidence that caused former President Trump to inflame a portion of the public by claiming that "[i]n a stronger period of time in our country, this crime would have been punishable by death." *See, e.g.*, Dkt. No. 36, ¶ 5 (citation omitted).

meeting.  *See, e.g.*, *United States v. Manafzadeh*, 592 F.2d 81, 88 (2d Cir. 1979) (rejecting Rule 404(b) evidence proffered as indicia of a "plan" where the other act "occurred some four months . . . after the crime[] alleged in the indictment [was] not part of 'a connected or inseparable transaction'" and was instead "wholly unconnected" (citation omitted)).  The Special Counsel is simply trying to throw into the record as many allegations of misconduct as possible in the hopes that something will stick.

This is improper, and the Special Counsel cannot be permitted to do so.  Allowing the Special Counsel to offer all this additional evidence and argument regarding the meeting with Agency-2—which is not a meeting that is the subject of any pending charge—would only serve to confuse the jury, risk prejudicing Mr. Sussmann, and create the kind of sideshow that neither Rule 404(b) nor Rule 403 permits.

### D.   The Court Should Preclude any Evidence or Argument Regarding Mr. Sussmann's HPSCI Testimony Aside from Relevant Statements Regarding his Meetings with the FBI or Agency-2.

The Special Counsel also intends to offer evidence of certain statements contained in Mr. Sussmann's testimony before HPSCI:  specifically that, as part of his testimony, Mr. Sussmann "a[c]knowledged bringing the allegations to the FBI and Agency-2 on behalf of a specific client, namely Tech Executive-1."  Original Notice at 2.  Mr. Sussmann does not object to the introduction of this specific testimony, although Mr. Sussmann does disagree with the Special Counsel's characterization of that testimony.

But Mr. Sussmann does object to the Special Counsel's announced intent to introduce evidence and argument that Mr. Sussmann purportedly "avoided mention of the fact that the only client billed for the defendant's pre-election work on those allegations was the Clinton Campaign."  Suppl. Notice at 4.  This claim is ludicrous.  The Special Counsel has not identified a single question put to Mr. Sussmann by members of Congress or their staff that would have called for a

responsive answer concerning the Clinton Campaign.  Nor has the Special Counsel identified any free-standing obligation Mr. Sussmann had to volunteer this information when testifying before HPSCI.  The Special Counsel should not be permitted to make fanciful arguments suggesting that Mr. Sussmann was required to testify that he billed time to the Clinton Campaign during 2016 when the Special Counsel can identify no such requirement.  As a result, the Special Counsel cannot establish the necessary predicate for introducing such evidence or arguments pursuant to Rule 404(b).  *See, e.g.*, *Griggs*, 2004 U.S. Dist. LEXIS 23695, at *4-5 ("[T]he trial court is required to make preliminary determination as to whether the jury could reasonably find by a preponderance of the evidence that the alleged prior act did, in fact, occur.").

### E. The Court Should Preclude any Evidence or Argument Regarding the Perkins Coie Statements, Aside from those Statements Themselves or Any Of Mr. Sussmann's Statements Prompting Them.

Next, the Special Counsel seeks to admit two statements issued by Perkins Coie to the media in October 2018.  Suppl. Notice at 2.  Mr. Sussmann does not object to the introduction of those statements or evidence regarding the role he played in causing them to be made, although Mr. Sussmann once again disagrees with the Special Counsel's characterization of these statements.[11]

---

[11] For example, the Special Counsel asserts that the statements sought to conceal the involvement of "politically motivated parties" or to obscure the Clinton Campaign's role.  Not so.  The statements were issued to rebut misleading reporting by the media that resulted from a leak of Mr. Baker's Congressional testimony in early October 2018.  Simply put, numerous media outlets misrepresented Mr. Baker's testimony and suggested that the information Mr. Sussmann provided to Mr. Baker was used as the basis for an application to the FISA Court for electronic surveillance of Carter Page; and that Mr. Sussmann was the "point man" for Perkins Coie's DNC and Clinton Campaign accounts, amongst other erroneous assertions.  *See, e.g.*, Strassel, *supra* note 2.  These statements were not true, and Perkins Coie's statements attempt to clarify that false reporting cannot be divorced from that context.

However, Mr. Sussmann does object to the Special Counsel's intent to offer opinion testimony from others, including the Managing Partner of Perkins Coie, that the statement may have been false or misleading.  Such testimony plainly runs afoul of well-settled law which provides that the credibility, accuracy, and truth or falsity, of any statement is the provenance of the jury, *not* lay witnesses.  Indeed, as this Court's jury instructions make clear, "a witness may not testify as to his or her opinions or conclusions."  Cooper Jury Instructions at 9; *see also United States v. Savage*, 970 F.3d 217, 285 (3d Cir. 2020) (explaining that the Third Circuit's model jury instruction on lay witness testimony provides that "[w]itnesses are not generally permitted to state their personal opinions about important questions in a trial" (citation omitted)).  Thus, any evidence or argument as to the credibility of those statements falls outside the parameters of permissible lay witness testimony that Perkins Coie's Managing Partner may provide and must be rejected as more prejudicial than probative pursuant to Rule 403.

F.     **The Court Should Preclude all Evidence and Argument Regarding Mr. Sussmann's Purported Failure to Preserve Certain Text Messages, Purportedly in Violation of Perkins Coie Policies.**

Finally, the Special Counsel seeks to introduce evidence that he recently received from Mr. Baker.  Specifically, on March 4, 2022, Mr. Baker apparently retrieved from his personal phone copies of text messages that he had sent and received with Mr. Sussmann between 2016 and 2020. According to the Special Counsel, the text messages had been stored on the cloud and Mr. Baker had not thought to produce them earlier.  (Apparently, though Mr. Baker is a key witness in the case, the Special Counsel never saw fit to serve him with a subpoena.)  Those text messages include, among other things, texts indicating that Mr. Sussmann asked to meet with Mr. Baker in September 2016 not on behalf of a client but to help the Bureau; texts indicating that Mr. Sussmann told Mr. Baker he had to check with someone (i.e., his client) before giving him the name of the newspaper that was about to publish an article regarding the links between Alfa Bank and the

Trump Organization; and other texts, including a copy of a tweet that then-President Trump posted regarding Mr. Sussmann.

The Special Counsel argues that Mr. Sussmann failed to preserve these text messages in violation of Perkins Coie policy and that this purported violation of the policy gives rise to an inference that Mr. Sussmann intended to obstruct justice. *See* Original Notice at 2-3. This is false. And the Special Counsel's willingness to level this explosive allegation without even bothering to first obtain copies of the relevant Perkins Coie policies they accuse Mr. Sussmann of violating—policies that, on their face, do not require the preservation of the texts at issue—is nothing short of shocking.

*First*, and most importantly, there was no violation of any Perkins Coie policies. The Special Counsel made that salacious allegation without performing the most basic diligence prior to making such allegations, i.e., getting a copy of the relevant policies. Indeed, when the defense asked the Special Counsel for copies of the policies that Mr. Sussmann allegedly violated, the Special Counsel indicated that they did not have them. Nor did the Special Counsel produce them to the defense in response to its request. The defense procured copies of the policies only by requesting that the Court issue a time-sensitive subpoena to Perkins Coie pursuant to Rule 17(b).

Thereafter, Perkins Coie provided three policies in response to Mr. Sussmann's Rule 17(c) subpoena and tellingly, none of the policies required the preservation of any of the text messages that Mr. Sussmann sent from his personal cellphone to Mr. Baker's personal cellphone. One policy concerns the retention and destruction of client records but says nothing about the type of records requiring retention, except where explaining that "[l]awyers should avoid retaining fragmentary handwritten notes that later could be misconstrued or taken out of context." Perkins Coie Retention & Destruction of Client Recs. at PC_MS000003. The second policy concerns the transfer and

release of client files, but also says nothing about the type of records requiring retention.  *See generally* Perkins Coie Transfer & Release of Files at PC_MS000013-18.  And the third policy concerns the retention and destruction of electronic client records for all matters.  *See generally* Perkins Coie Retention & Destruction of Elec. Client Recs. for All Matters at PC_MS000011-12. That policy too says nothing about the retention of records such as those in question here.  The policy on its face only applies to emails, not to other forms of electronic records such as text messages.  *Id.*  Moreover, that policy makes clear that the only email communications that have to be preserved are "significant communications about a client's legal matters."  *Id.* at PC_MS000011.  The policy explicitly provides that emails regarding scheduling, for example, do not rise to the level of a "significant communication" and would not, therefore, trigger the policy's retention requirements.  *Id.*  Thus even if the policy applied to text messages—and it did not—the policy would not have required Mr. Sussmann to preserve copies of his text messages with Mr. Baker.

Because the Special Counsel cannot establish the existence of *any* policy that required Mr. Sussmann to preserve his text messages with Mr. Baker, the Special Counsel cannot argue that Mr. Sussmann violated any firm policy.  And because Mr. Sussmann did not violate any firm policy, he cannot be permissibly accused of having obstructed justice where he was under no obligation from any source—Perkins Coie, the Special Counsel, or anyone else—to preserve his text messages with Mr. Baker.  *See, e.g.*, *Caesar*, 2022 U.S. Dist. LEXIS 14722, at *18 ("In order to admit evidence of a prior act under . . . Rule 404(b), there must be evidence from which a jury could find by a preponderance of evidence that the prior act occurred.").

Further, there are no other indicia of obstruction of justice.  As we told the Special Counsel several weeks ago, there is a routine explanation as to why Mr. Sussmann did not have those text

messages in his possession:  he replaced his personal device in November 2016 and did not store

his text messages on the cloud.  In any event, Mr. Sussmann was never asked to produce those text

messages, nor was he ever under any sort of obligation—legal or otherwise—to otherwise retain

them.  If anything, Mr. Sussmann has been comprehensive in his record retention practices, as

evidenced by the communications and billing records that the Special Counsel seeks to use against

him at trial.  And, the text messages in question included exculpatory material that Mr. Sussmann

did not retain possession of.  Given these facts, it is simply absurd to suggest that Mr. Sussmann

in any way obstructed justice.

Here, there is no evidence that Mr. Sussmann violated any policy; there is no evidence that

Mr. Sussmann obstructed justice; and the Special Counsel's unfounded allegation—made without

conducting any due diligence—is unprofessional, shocking, and slanderous.

## CONCLUSION

For the foregoing reasons, Mr. Sussmann requests that this Court exercise its discretion

and preclude the Special Counsel from offering any evidence or argument concerning:  (1) the

gathering of data by Mr. Joffe and Others; (2) the accuracy of the data gathered by Mr. Joffe and

Others and the conclusions drawn therefrom; (3) anything other than Mr. Sussmann's own relevant

statements during a February 9, 2017 meeting with Agency-2; (4) anything other than relevant

statements made by Mr. Sussmann during his December 2017 HPSCI testimony; (5) anything

other than the specific statements issued by Perkins Coie and its Managing Partner in October

2018 or Mr. Sussmann's statements prompting them, if any; and (6) Mr. Sussmann's purported

failure to preserve certain text messages from the relevant time period in violation of Perkins Coie

policies.  Additionally, portions of the Indictment that correspond to the foregoing categories of

evidence must be stricken.  *See* Def. Mot. *in Lim.* Regarding Data or Steele Dossier.  None of this

evidence has any place before the jury—whether offered as part of the Special Counsel's case in chief, for impeachment purposes, or on rebuttal—and it must be rejected.

Dated:  April 4, 2022

Respectfully submitted,

*/s/ Sean M. Berkowitz*
Sean M. Berkowitz (*pro hac vice*)
LATHAM & WATKINS LLP
330 North Wabash Avenue
Suite 2800
Chicago, IL 60611
Tel: (312) 876-7700
Fax: (312) 993-9767
Email: sean.berkowitz@lw.com

Michael Bosworth (*pro hac vice*)
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
Tel: (212) 906-1200
Fax: (212) 751-4864
Email: michael.bosworth@lw.com

Natalie Hardwick Rao (D.C. Bar # 1009542)
Catherine J. Yao (D.C. Bar # 1049138)
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004
Tel: (202) 637-2200
Fax: (202) 637-2201
Email: natalie.rao@lw.com
Email: catherine.yao@lw.com