UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Criminal Case No. 21-582 (CRC) |
| : | |
| MICHAEL A. SUSSMANN, : | |
| : | |
| Defendant. : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE THE GOVERNMENT'S PROPOSED EXPERT WITNESS TESTIMONY**

The United States of America, by and through its attorney, Special Counsel John H. Durham, respectfully submits this opposition to the defendant's Motion to Exclude the Government's Proposed Expert Witness Testimony (Document 66, hereinafter "Mot."). For reasons stated below, the government submits that the motion should be denied.

**FACTUAL BACKGROUND**

The defendant is charged in a one-count indictment with making a materially false statement to an FBI official, in violation of Title 18, United States Code, Section 1001. As set forth in the Indictment, on Sept. 19, 2016 – less than two months before the 2016 U.S. Presidential election – the defendant, a lawyer at a large international law firm ("Law Firm-1"), met with the FBI General Counsel at FBI Headquarters in Washington, D.C. The defendant had requested the meeting to provide the General Counsel with purported data and "white papers" that allegedly demonstrated a covert communications channel between the Trump Organization and a Russia-based bank ("Russian Bank-1"). In the course of the meeting, the defendant lied, falsely stating to the General Counsel that he was not providing the allegations to the FBI on behalf of any client. This false

1

representation led the General Counsel to understand that the defendant was providing the information as a good citizen, rather than a paid advocate or political operative. In fact, the defendant had assembled and conveyed the allegations to the FBI on behalf of at least two specific clients, including a technology executive ("Tech Executive-1") at a U.S.-based Internet company ("Internet Company-1") and the Hillary Rodham Clinton Presidential Campaign (the "Clinton Campaign").

The Indictment alleges that, beginning in approximately July 2016, Tech Executive-1 had worked with the defendant, a U.S. investigative firm retained by Law Firm-1 on behalf of the Clinton Campaign (the "U.S. Investigative Firm"), numerous cyber researchers, and employees at multiple Internet companies to assemble the purported data and white papers. In connection with these efforts, Tech Executive-1 exploited his access to non-public and/or proprietary Internet data. Tech Executive-1 also enlisted the assistance of researchers at a U.S.-based university ("University-1") who were receiving and analyzing large amounts of Internet data in connection with a pending federal government cybersecurity research contract.

The Government's evidence at trial will establish that among the Internet data Tech Executive-1 and his associates exploited was domain name system ("DNS") Internet traffic pertaining to (i) a particular healthcare provider ("Healthcare Company-1"), (ii) Trump Tower, (iii) Donald Trump's Central Park West apartment building, and (iv) the Executive Office of the President of the United States ("EOP").

The Indictment further alleges that on February 9, 2017, the defendant provided an updated set of allegations – including the Russian Bank-1 data and additional allegations relating to Trump – to a second agency of the U.S. government ("Agency-2"). The Government's evidence at trial

will establish that these additional allegations relied, in part, on the purported DNS traffic that Tech Executive-1 and others had assembled pertaining to Trump Tower, the EOP, and Healthcare Company-1.  In his meeting with Agency-2, the defendant provided data which he claimed reflected purportedly suspicious DNS lookups by these entities of internet protocol ("IP") addresses affiliated with a Russian mobile phone provider ("Russian Phone Provider-1").  The defendant further claimed that these lookups demonstrated that Trump and/or his associates were using a type of Russian-made wireless phone in the vicinity of the White House and other locations.

On March 30, 2022, the Government disclosed to the defense, pursuant to Federal Rule of Criminal Procedure 16(a)(1)(G), notice of its intention to call an expert witness to testify regarding DNS data and other matters relevant to cyber investigations.  More specifically, the Government disclosed that Special Agent David Martin, an FBI Unit Chief who is assigned to the FBI's Cyber Division, Technical Analysis Unit, would testify regarding the following:

- A description to the jury about the basic mechanics, architecture, and terminology of the DNS system and DNS data so that the jury can understand the various technical terms and concepts which appear in documents and other evidence that the Government intends to offer;

- An explanation to the jury regarding how certain private companies and entities maintain DNS "resolvers" and provide services involving DNS data, which includes processing and storing DNS data;

- A description of how private companies and entities gain access to DNS data and how they collect and commercialize that data;

- An explanation of certain examples of DNS data to assist the jury in understanding particular fields that appear within the data;

- A description to the jury concerning the types of conclusions that can be drawn about (i) online activities based on a review of DNS data, and (ii) the origins and sources of DNS data; and

- An explanation to the jury regarding the Onion Router ("TOR") and common terms used in connection with TOR, including the concept of a "TOR exit node" and the types of investigative steps and methods used for analyzing online activities involving TOR.

Additionally, the Government provided notice that it would call an expert witness in a rebuttal case, or otherwise, should the defense – through cross examination of Government witnesses or testimony of its own witnesses – suggest, imply, or seek to prove the authenticity of the relevant DNS data or the truth of the allegations concerning a covert communications channel between the Trump Organization and Russian Bank-1.

## ARGUMENT

The defendant argues that the Court should preclude the Government from offering expert testimony because the Government's expert notice was untimely, deficient, and the proposed testimony is irrelevant and prejudicial. Still, the defendant recognizes that the jury would be aided by Special Agent Martin's testimony, but only "regarding basic, uncontroversial matters such as what DNS data." Mot. at 12. The evidence in this case will be replete with concepts and terminology that are "outside the ken of the average person," and therefore appropriately explained by an expert. *United States v. Felder*, 993 F.3d 57, 72 (2d Cir. 2021). As explained below, excluding the Government's proposed expert is inconsistent with well-settled law, and ignores other

4

remedies, such as allowing the Government to provide a supplemental disclosure or a brief adjournment of trial, which would be more appropriate here based on the defendant's claim of late notice. The Government has provided adequate, timely notice of its intention to call an expert witness and satisfied the requirements of Rule 16. Thus, for the reasons below, the Motion should be denied.

### A. Applicable Law

Federal Rule of Criminal Procedure 16(a)(1)(G) provides that "[a]t the defendant's request, the government must give to the defendant a written summary of any [expert] testimony that the government intends to use ... during its case-in-chief at trial," which must "describe the [expert] witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." Rule 16(d) vests broad authority to the district court to regulate discovery and with a range of remedial options, which includes a continuance, exclusion of the evidence, or "any other order that is just under the circumstances." Fed. R. Crim. P. 16(d)(2).

Rule 702 of the Federal Rules of Evidence 702 governs the admissibility of expert witness testimony. Under Rule 702, "[a] witness . . . qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if . . . the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702.

There are therefore two prerequisites to the admission of expert testimony: that the proffered testimony "be both reliable and relevant." *United States v. Nwoye*, 824 F.3d 1129, 1136 (D.C. Cir. 2016). "[T]o ensure the reliability and relevancy of expert testimony," *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999), the district court has a threshold obligation to independently

determine to what extent a witness can testify as an expert, as well as to ensure that the expert's testimony stays within permissible constraints. *Id.* "In general, Rule 702 has been interpreted to favor admissibility" *see, e.g., Khairkhwa v. Obama*, 793 F. Supp. 2d 1, 10 (D.D.C. 2011), and indeed, the exclusion of expert testimony is "the exception rather than the rule." Fed. R. Evid. 702 advisory committee's note.

### B. The Government's Expert's Testimony Will Aid the Jury's Understanding of the Evidence

#### 1. The Government's Expert Notice is Not Untimely

The defendant first argues that the Government's March 30, 2022 notice was untimely. As the defendant correctly states, Federal Rule of Criminal Procedure 16 does not contain a specific timing requirement. Instead, Rule 16 (a)(1)(G) "is intended to minimize surprise that often results from unexpected expert testimony, [to] reduce the need for continuances, and to provide the opponent with a fair opportunity to test the merit of the expert's testimony through focused cross-examination." Fed. R. Crim. P. 16 advisory committee's note (1993 Amendment).

First, the Government's expert disclosure here was not untimely. Indeed, the D.C. Circuit has previously held that the Government's expert disclosure six weeks prior to trial was timely. *See United States v. Martinez*, 476 F.3d 961, 967–68 (D.C.Cir.2007) (upholding the admission of expert testimony under Rule 16 where the government provided information as to the challenged testimony approximately six weeks before trial and in opposition to a motion to exclude the testimony). In contrast, in cases where courts have found that the government's notice was untimely, the disclosure of the expert occurred on the eve of trial. *See United States v. Martinez*, 657 F.3d 811, 817 (9th Cir.2011) (government disclosure of expert five days before trial not "timely" but district court was within its discretion to deny a continuance where expert's testimony was a month away); *United*

*States v. Hoffecker*, 530 F.3d 137, 184–88 (3d Cir.2008) (defendant's disclosure of expert three business days before jury selection untimely); *United States v. Johnson*, 228 F.3d 920, 922, 926 (8th Cir.2000) (government's disclosure of expert six days before trial in violation of district court order untimely).

The cases that the defendant relies on also miss the mark. For instance, one case which the defendant relies on, *United States v. Day*, 524 F.3d 1361 (D.C. Cir. 2008), is readily distinguishable. There, the D.C. Circuit upheld the district court's exclusion of the defendant's expert witness because the defendant identified the expert with a "vague" two-page report less than two weeks before trial and after the district court had excluded the testimony of three other proposed defense experts. *Id.* at 1371-72. Similarly, in *United States v. Wilson*, the district court excluded the testimony of a defense expert when the defense had failed to provide notice of the expert until less than one week before trial. 493 F. Supp. 2d 484, 485-488 (E.D.N.Y. 2006).

The defendant's reliance on the unpublished opinion from the District of Colorado in *United States v. Nacchio* is likewise misplaced. 2010 WL 2323842 (D. Colo. Mar. 22, 2007). There the Government made disclosure of an expert report 25 days prior to trial which it had in draft form for at least a year. *Id.* at *2. Of note, the court's decision to exclude the Government's expert, as opposed to granting a continuance, was based in part on the court having already reviewed jury questionnaires for an eight-week trial and that a continuance would require the court to "go through [the] entire jury questionnaire process again." *Id.* at 5. Here, there has been no such failure of diligence, nor has one even been alleged. Moreover, if the Court were to find that the Government's notice was somehow untimely, the appropriate remedy would be a brief continuance of trial, not

7

the exclusion of highly relevant evidence which would be of assistance to the jury. Accordingly, the Government respectfully submits that its disclosure was timely.

Second, the Government has gone above its Rule 16 obligations in disclosing to the defense that it would call an expert in rebuttal or otherwise, to testify concerning the authenticity of the relevant DNS data or the actual truth of the allegations at issue concerning a secret channel of communications between the Trump Organization and Russian Bank-1. Consistent with the plain language of Rule 16 and case law in other circuits, the government's presentation of rebuttal expert testimony without prior notice does not violate Rule 16 since the Rule's notice requirements apply only to the government's case-in-chief. *See United States v. Windham*, 489 F.2d 1389, 1392 (5th Cir.1974) ("Rebuttal witnesses are a recognized exception to all witness disclosure requirements."); *see also United States v. DiCarlantonio*, 870 F.2d 1058, 1063 (6th Cir.1989) (Rule 16 does not require disclosure of expert rebuttal testimony not offered during government's case-in-chief); *United States v. Barrett*, 766 F.2d 609, 617 (1st Cir.1985) (same); *United States v. Angelini*, 607 F.2d 1305, 1308–09 (9th Cir.1979) (same).

## 2. The Government's Expert Disclosure is Adequate

The defendant next argues that the Government's expert disclosure is "substantively and materially deficient." Mot. at 8. The defendant is mistaken. As noted above, Rule 16(a)(1)(G) requires the government to provide a "written summary" of the expert testimony it intends to introduce at trial. But a Rule 16 disclosure "is not intended to serve as the basis for a judicial determination regarding admissibility." *United States v. Nacchio*, 519 F.3d 1140, 1151 (10th Cir. 2018) *vacated in part on reh'g en banc*, 555 F.3d 1234 (10th Cir. 2019). Instead, it is "designed to give opposing counsel notice that expert testimony will be presented, permitting 'more complete

pretrial preparation' by the opposing side[.]" *Id.*  Thus, a "[d]etailed extensive discussion is not required in the Rule 16 summary . . . '[as] the requirement of setting forth the bases and reasons for the witnesses' opinions does not track the methodological factors set forth by [] *Daubert* []." *United States v. McCluskey*, 954 F. Supp. 2d 1224, 1231 (D.N.M. 2013) (quotation omitted).

The Government's disclosure meets the requirements of Rule 16 and adequately provides a written summary as to Special Agent Martin's expected expert testimony.  As is detailed above, Special Agent Martin's expert testimony is necessary to aid the jury in understanding certain concepts, including the basic mechanics and terminology of the DNS system and DNS data.  Further, the Government expects testimony from other witnesses regarding the gathering of DNS data by Tech Executive-1 and his associates (including his taskings of individuals at University-1 and various internet companies).  Special Agent Martin's testimony explaining how certain companies gain access and provide services involving DNS data will likewise clearly assist the jury in understanding these issues.  In addition, the Government expects to present evidence in its case-in-chief regarding the FBI and Agency-2's conclusions about the Russian Bank-1 allegations, including the particular investigative and analytical steps taken by these agencies.  Again, Special Agent Martin's testimony will be helpful to the jury regarding what types of conclusions can be drawn about a person's or entity's online activities based on a review of DNS data.  Ultimately, the Government's disclosure satisfies Rule 16's notice requirement and provides the defense with adequate information to challenge the testimony at trial.

In addition, the Government's disclosure of Special Agent Martin's *curriculum vitae* was sufficient under Rule 16.  In doing so, the Government provided notice of Special Agent Martin's qualifications which, based on his education, training, and experience in the area of cyber

investigations, is adequate to meet the requirements under Rule 16. Nevertheless, the Motion contends that the Government's disclosure did not provide the "bases and reasons" for Special Agent Martin's opinion or how he "is qualified to testify specifically about DNS or TOR." Mot. at 9. To the extent that the Government's prior disclosure did not adequately inform the defense of Special Agent Martin's qualifications, the Government intends to provide defense with a supplemental disclosure regarding his training and experience with DNS and TOR, including the following:

- As part of his cyber threat investigations, Special Agent Martin regularly analyzes network traffic, which includes DNS data;
- in furtherance of his investigations, Special Agent Martin reviews DNS data regularly, often on a daily and/or weekly basis ; and
- as an FBI Unit Chief, Special Agent Martin supervises analysts and other agents work product, which includes technical review of DNS data analysis.

Accordingly, the Government's notice is adequate, and any arguable deficiencies will be cured by the supplemental disclosure as outlined above.

### 3. The Proffered Expert Testimony is Relevant and Not Prejudicial

Finally, the defendant argues that any testimony regarding the accuracy of the data (and related conclusions) is irrelevant and unduly prejudicial. *See* Mot. at 10. That argument likewise should be rejected. As the Government memorialized in its expert notice to the defense, through discussions with defense counsel, the Government learned that the defense was inclined to not offer evidence, or engage in questioning, that would imply or seek to prove the authenticity of the DNS data provided to the FBI and Agency-2. In addition, the Government learned that the defense would

not engage in questioning or present evidence regarding the truth of the allegations at issue concerning a secret channel of communications between the Trump Organization and Russian Bank-1. As a result, the Government provided notice that should the defense attempt to seek to establish such conclusions regarding these areas through cross-examination or its own witnesses, that the Government reserved the right to call Special Agent Martin as an expert concerning the ultimate accuracy and/or reliability of the data.

The Government's disclosure here is entirely proper. As the Government has already disclosed to the defense, should the defense attempt to elicit testimony surrounding the accuracy and/or reliability of the data that the defendant provided to the FBI and Agency-2, Special Agent Martin would explain the following:

- That while he cannot determine with certainty whether the data at issue was cherry-picked, manipulated, spoofed or authentic, the data was necessarily incomplete because it was a subset of all global DNS data;
- That the purported data provided by the defendant nevertheless did not support the conclusions set forth in the primary white paper which the defendant provided to the FBI;
- That numerous statements in the white paper were inaccurate and/or overstated; and
- That individuals familiar with these relevant subject areas, such as DNS data and TOR, would know that such statements lacked support and were inaccurate and/or overstated.

Testimony regarding these areas is highly relevant should the defense seek to argue that the defendant relied on Tech Executive-1's conclusions and lacked a motive to conceal information about his clients. In like manner, Special Martin's testimony regarding these areas would also be relevant to explain Tech Executive-1's motive in concealing his involvement in promoting the

allegations concerning a secret channel of communications between the Trump Organization and Russian Bank-1. Ultimately, the Government should be entitled to introduce Special Agent Martin's testimony either in its case-in-chief or in rebuttal, as appropriate, should the defense attempt to elicit testimony surrounding the accuracy and/or reliability of the data.

## **CONCLUSION**

For the foregoing reasons, the Court should deny the defendant's Motion to Exclude the Government's Proposed Expert Witness Testimony.

Respectfully submitted,

JOHN H. DURHAM
Special Counsel

By:

 /s/
Jonathan E. Algor
Assistant Special Counsel
jonathan.algor@usdoj.gov

Andrew J. DeFilippis
Assistant Special Counsel
andrew.defilippis@usdoj.gov

Michael T. Keilty
Assistant Special Counsel
michael.keilty@usdoj.gov

Brittain Shaw
Assistant Special Counsel
deborah.b.shaw@usdoj.gov