DOJ_REQ_ 0000159

■■■■■■■■■■■■■■■■■■■■

Memorandum for the Record            09 February 2017

■ On 09 February 2017, ■ Kevin ■■■■■■ and Steve ■■■■■■ met with Michael Sussman, a lawyer with the firm Perkins Coie, to discuss information which Mr. Sussman had previously indicated might be of interest to the US Government. At the most recent meeting Mr. Sussman provided both written documents and thumb drives which he claimed contained data related to potential Russian activities connected to then Presidential candidate/elect Trump.

■ As background, Mr. Sussman had previously reached out to CIA's General Counsel, Caroline Krass, in mid-December 2016. As he recalled, she had advised that she would be in touch after some coordination with the FBI, but he never heard back from her, anyone from CIA OGC, or the FBI. He said that he tried to re-contact the GC, but that no one ever returned his call, which led him to reach out to ■■■■■■■■■■■■■■ who referred the matter to CIMC.

■ Mr. Sussman advised that he was not representing a particular client and the information he was volunteering to us was not privileged. His contacts wished to provide information to the USG through Mr. Sussman, preferring anonymity citing a potential threat from the Russian Intelligence Services. Mr. Sussman said that he believed his contacts were acting in good faith and out of a sense of loyalty to the USG. Mr. Sussman himself said that he did not expect anything from the USG, nor did he require feedback or further contact, though he would be open to future contact if the CIA had such a need. He was up-front in disclosing that his law firm was active in supporting several democratic causes and office holders including both the DNC and then-Presidential candidate Hillary Clinton, but that such work was unrelated to his reasons for contacting the CIA. He merely wanted to pass along information that he thought would be of interest to the USG and then let the CIA and FBI validate the information and take whatever actions they believed were necessary.

■ Mr. Sussman noted that one of his contacts was a US person and clearance holder, but that the information his contact had collected (the content of the thumb drives) was "private collection," suggesting that the data had been collected by his contacts as a matter of personal interest. He also advised that his contacts believe their actions have put themselves at some personal risk.

■ Mr. Sussman gave a general description of the data he was providing (on a thumb drive), noting that it was related to "domain name system" (DNS) information; his contacts had gathered information indicating that a Russian-made Yota-phone had been seen by them connecting to WIFI from the Trump Tower in New York, as well as from a location in Michigan, at the same time that then-candidate Trump was believed to be at these locations. In December 2016, the Yota-phone was seen connecting to WIFI from the Executive Office of the President (the White House). Mr. Sussman was asked if the information provided would show instances when the Yota-phone and then candidate Trump were not believed to be collocated, to which Mr. Sussman answered, "yes."

SCO-074877

DOJ-REQ-0000160

███████████████

███ Mr. Sussman also provided information pertaining to alleged server communications between then candidate Trump server, Alpha Bank (described by Mr. Sussman as a "Kremlin proxy"), and Spectrum Health (located in Michigan). When contacted by the press about their communications with the Trump candidacy; Alpha Bank was said by Mr. Sussman to have denied any communications; the Trump candidacy server was taken off line; another Trump candidacy server under a different naming protocol came on line days later; and it is storied that the first server to connect with the newly established Trump candidacy server was the Alpha Bank server. Mr. Sussman provided a separate thumb drive that he said contained data that supported these claims.

███████ advised Mr. Sussman that given the location of such activities (within the US) and involvement of US Persons, we would need to refer all relevant information to the FBI. ███ also advised that we had a crimes reporting obligation and would need to report any evidence of criminal activity to the FBI/DOJ. Mr. Sussman had no objections to providing any relevant information to the FBI. He mentioned that he had previously contacted FBI's General Counsel, Jim Baker, on a similar, though unrelated, matter. Based on how the FBI had handled that matter, and because he thought the CIA had the necessary technical expertise, he wanted to pass the current information directly to the CIA.

███████ asked if Mr. Sussman's contact would be willing to speak directly with the FBI and Mr. Sussman said "that could be on the table and he wouldn't rule it out." Mr. Sussaman added that his contacts would likely be willing, at a future date, to show USG authorities how they could directly access information similar to that which he provided on the thumb drives.

███████████████