IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>*v.*<br><br>**MICHAEL A. SUSSMANN,**<br><br>*Defendant*. | Case No. 1:21-cr-00582 |

**DEFENDANT'S OPPOSITION TO**
**SPECIAL COUNSEL'S MOTION TO COMPEL**

Defendant Michael A. Sussmann, by and through his counsel, submits this brief in opposition to the Special Counsel's Motion to Compel the Production of Purported Privileged Communications Withheld by Non-Party Entities For In Camera Inspection by the Court ("Motion to Compel" or "Motion"), ECF No. 64.

## INTRODUCTION

In denying Mr. Sussmann's motion to dismiss the Indictment, the Court observed that the battle lines in the case have been drawn. *See* Op. & Order at 5, ECF No. 67. But now, less than six weeks before trial, the Special Counsel improperly and unfairly seeks to redraw the battle lines. The Special Counsel may style his Motion to Compel as a modest request for *in camera* review of 38 documents. *See* Motion ¶ 1 (describing the Motion as concerning only "certain limited documents"). But there is nothing modest or limited about this Motion. The Special Counsel is mounting a last-minute frontal assault on third-party assertions of attorney-client privilege and work product protection that affect what could be the production of thousands of documents, the testimony of numerous witnesses, and, most importantly, Mr. Sussmann's fundamental defense strategy.

The Special Counsel's Motion should be denied, because he is wrong on the substance. *See* Non-Party Fusion GPS's Opp. to Gov't's Mot. to Compel Prod. of Purported Privileged Commc'ns for *In Camera* Inspection by Court, forthcoming. But his Motion should also be denied on the independent grounds that he moved at the wrong time, in the wrong forum, using the wrong process, and seeking the wrong documents.

*First*, the Special Counsel's Motion is untimely. Despite knowing for months, and in some cases for at least a year, that the non-parties were withholding material as privileged, he chose to file this Motion barely a month before trial—long after the grand jury returned an Indictment and after Court-ordered discovery deadlines had come and gone.

*Second*, the Special Counsel's Motion should have been brought before the Chief Judge of the District Court *during the pendency of the grand jury investigation*, as the rules of this District and precedent make clear.

*Third*, the Special Counsel has seemingly abused the grand jury in order to obtain the documents redacted for privilege that he now challenges. He has admitted to using grand jury subpoenas to obtain these documents for use at Mr. Sussmann's trial, even though Mr. Sussmann had been indicted at the time he issued the grand jury subpoenas and even though the law flatly forbids prosecutors from using grand jury subpoenas to obtain *trial* discovery. The proper remedy for such abuse of the grand jury is suppression of the documents.

*Fourth*, the Special Counsel seeks documents that are irrelevant on their face. Such documents do not bear on the narrow charge in this case, and vitiating privilege for the purpose of admitting these irrelevant documents would materially impair Mr. Sussmann's ability to prepare for his trial.

# ARGUMENT

## A.   The Special Counsel's Motion to Compel is Untimely

By any measure, the Special Counsel's Motion is wildly untimely.

*First*, this Motion should have been filed at the time that the particular privilege claims were made, and well before Mr. Sussmann was indicted, not over six months later, and certainly not weeks before trial.  Here, the Motion seeks to compel compliance with subpoenas that were issued, in some cases, over a year ago.  And as the Special Counsel concedes, non-parties have been withholding responsive documents based on assertions of attorney-client privilege and attorney work product since that time.  *See* Motion ¶¶ 3-6 (noting that Fusion GPS ("Fusion") received a grand jury subpoena as early as March of 2021 and explaining that non-parties, including Fusion, have been asserting privilege "since receiving service of [the] subpoenas").

The time for the Special Counsel to challenge assertions of privilege was at the time they were made, not months later in the weeks before trial.  Tellingly, *all* of the cases cited by the Special Counsel in his Motion that involved grand jury subpoenas involved motions that were brought and resolved during the pendency of the grand jury investigation.  *See, e.g.*, *In re Grand Jury*, 475 F.3d 1299, 1301 (D.C. Cir. 2007) ("[T]his case involves an ongoing grand jury investigation[.]"); *In re Grand Jury Proc. (Violette)*, 183 F.3d 71, 72 (1st Cir. 1999) (target of grand jury investigation intervened during investigation to oppose enforcement of subpoenas); *In re Lindsey*, 158 F.3d 1263 (D.C. Cir. 1998) (challenging grand jury subpoena before investigation "[led] to impeachment proceedings"); *United States v. Kovel*, 296 F.2d 918 (2d Cir. 1961) (contempt proceeding arising out of witnesses failure to provide grand jury testimony occurred prior to indictment).  None of the cases involved a motion to compel *grand jury* subpoena compliance post-indictment, let alone in the weeks before trial.

3

*Second*, the Special Counsel's Motion effectively amounts to a request for additional discovery, and he was obligated to get and produce all discovery months ago. Indeed, under the terms of this Court's scheduling order, the Special Counsel was required to produce all unclassified discovery by January 28, 2022. Pretrial Order at 2, ECF No. 30. The Special Counsel did not raise this issue any time before that due date, as he certainly could have. Nor did the Special Counsel raise this issue with the Court when the Special Counsel sought an extension of the unclassified discovery deadline in order to get and receive additional categories of unclassified discovery. *See* Suppl. Filing Re Gov't's Disc. Update & Req. for Add'l Time to Produce Residual Disc. Materials, ECF No. 34. Nor did he even raise the issue before the extended date by which he was permitted to produce such additional categories of unclassified discovery. The Special Counsel's failure to comply with the Court's deadlines, or to request an extension of time, is simply unjustified. *Cf. Klugel v. Clough*, 252 F.R.D. 53, 55-56 & n.4 (D.D.C. 2008) (denying motion to compel filed two months after close of discovery as untimely where party failed to seek an extension of the discovery deadline); *Carey Can., Inc. v. Columbia Cas. Co.*, 940 F.2d 1548, 1559 (D.C. Cir. 1991) (affirming denial of motion to compel brought only one month before the close of discovery and five years after the action commenced "because appellants did not seek modification of the court's earlier order in a timely fashion").

Indeed, courts regularly deny motions to compel that fail to comply with discovery deadlines. *See, e.g., Suntrust Bank v. Blue Water Fiber*, L.P., 210 F.R.D. 196, 201 (E.D. Mich. 2002) (party who had filed a motion to compel over three months after the close of discovery waived his rights by failing to promptly enforce them); *United States v. Stokes*, No. 5:08-CR-343-D(1), 2009 WL 2407679, at *1 (E.D.N.C. Aug. 5, 2009) (denying defendant's motion to compel unredacted versions of documents as untimely when it was filed after deadline to file pretrial

4

motions). That is in part because allowing parties to disregard court orders "undermine[s] the court's ability to control its docket, disrupt[s] the agreed-upon course of the litigation, and reward[s] the indolent and the cavalier." *United States v. All Assets Held at Bank Julius Baer & Co.*, No. 04-CV-798 (PLF/GMH), 2019 WL 1167743, at *4 (D.D.C. Mar. 13, 2019) (citation omitted). But disregarding court orders is, in effect, what the Special Counsel has done here. And not for the first time. *See, e.g.*, Def.'s Resp. to Special Couns.'s Mot. *in Limine*, ECF No. 68, at 32-35 (addressing the Special Counsel's violation of Court order regarding Fed. R. Evid. 404(b)).

Because the Supreme Court "has long made clear that a district court need not relinquish control of its docket to a party who repeatedly fails to comply with the court's procedures," *Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 151 (D.C. Cir. 1996) (citation omitted), and because discovery violations are particularly troubling "when they are committed by the government during a criminal trial," *United States v. Cruz-Velasco*, 224 F.3d 654, 665 (7th Cir. 2000), the Court should reject the Special Counsel's refusal to play by the rules and deny the Motion to Compel.

*Third* and perhaps most alarmingly, the Special Counsel has known of the specific privilege assertions at issue for months, and in some cases for at least a year, yet has inexplicably and inexcusably sat on his hands until April 6, 2022—less than six weeks before trial is scheduled to begin.

Here, the relevant privilege holders have been asserting privilege claims over Fusion's work for Perkins Coie LLP ("Perkins Coie")—the very issue raised by the Special Counsel's Motion—for years. *See, e.g.*, Def.'s Mem. in Opp. to Pls.' Mot. to Compel, *Fridman v. Bean LLC (a/k/a Fusion GPS)*, No. 1:17-cv-02041 (D.D.C. 2020), ECF No. 104 (setting forth privilege assertions). The privilege holders have also asserted privilege and work product claims over


motions). That is in part because allowing parties to disregard court orders "undermine[s] the court's ability to control its docket, disrupt[s] the agreed-upon course of the litigation, and reward[s] the indolent and the cavalier." *United States v. All Assets Held at Bank Julius Baer & Co.*, No. 04-CV-798 (PLF/GMH), 2019 WL 1167743, at *4 (D.D.C. Mar. 13, 2019) (citation omitted). But disregarding court orders is, in effect, what the Special Counsel has done here. And not for the first time. *See, e.g.*, Def.'s Resp. to Special Couns.'s Mot. *in Limine*, ECF No. 68, at 32-35 (addressing the Special Counsel's violation of Court order regarding Fed. R. Evid. 404(b)).

Because the Supreme Court "has long made clear that a district court need not relinquish control of its docket to a party who repeatedly fails to comply with the court's procedures," *Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 151 (D.C. Cir. 1996) (citation omitted), and because discovery violations are particularly troubling "when they are committed by the government during a criminal trial," *United States v. Cruz-Velasco*, 224 F.3d 654, 665 (7th Cir. 2000), the Court should reject the Special Counsel's refusal to play by the rules and deny the Motion to Compel.

*Third* and perhaps most alarmingly, the Special Counsel has known of the specific privilege assertions at issue for months, and in some cases for at least a year, yet has inexplicably and inexcusably sat on his hands until April 6, 2022—less than six weeks before trial is scheduled to begin.

Here, the relevant privilege holders have been asserting privilege claims over Fusion's work for Perkins Coie LLP ("Perkins Coie")—the very issue raised by the Special Counsel's Motion—for years. *See, e.g.*, Def.'s Mem. in Opp. to Pls.' Mot. to Compel, *Fridman v. Bean LLC (a/k/a Fusion GPS)*, No. 1:17-cv-02041 (D.D.C. 2020), ECF No. 104 (setting forth privilege assertions). The privilege holders have also asserted privilege and work product claims over

documents from the Special Counsel himself in this criminal investigation for at least a year. Fusion, for example, produced a privilege log to the Special Counsel in April 2021 (*i.e.*, a year ago) consistent with those claims, at the direction of the privilege holders. Perkins Coie likewise produced a privilege log to the Special Counsel in May 2021 (*i.e.*, eleven months ago), also consistent with those claims and at the direction of the privilege holders. And the Clinton Campaign and the Democratic National Committee ("DNC")—the ultimate privilege holders here—have also each *separately and repeatedly* informed the Special Counsel that they would not be revisiting or revising those assertions.

All the while, the Special Counsel challenged these assertions of privilege, making many of the same arguments he is making in this Motion. *See, e.g.*, Email from Andrew DeFilippis, Dep't of Just., to Josh Levy, Levy Firestone Muse (May 15, 2021) (requesting that Fusion "carefully consider the information that has been disclosed to third parties and in the public sphere when interpreting the scope of the applicable privileges and any waivers of such privilege that have been made to date"); Email from Andrew DeFilippis, Dep't of Just., to Sean Berkowitz, Latham & Watkins LLP (June 5, 2021) (challenging basis for Clinton Campaign's assertion of privilege over communications involving Rodney Joffe); Email from Andrew DeFilippis, Dep't of Just., to Patrick Stokes, Gibson, Dunn & Crutcher LLP, et al. (Aug. 9, 2021) (noting that the Special Counsel has "been trying for a number of weeks to get clarity regarding your views on the appropriate scope of attorney-client privilege in the matters relevant to our investigation, including privilege assertions that have been made to date"); Email from Shawn Crowley, Kaplan Hecker & Fink LLP, to Andrew DeFilippis, Dep't of Just. (Jan. 20, 2022) (informing Special Counsel's Office that the DNC would not be revisiting prior assertion of attorney-client privilege and work product protection).

Not only that, but the Special Counsel has been raising the specter of litigation for nearly a year—while the grand jury investigation was still pending—and still did nothing. As far back as last August, for example, the Special Counsel expressly indicated that he was contemplating filing motions and seeking relief from the Court. Email from Andrew DeFilippis, Dep't of Just., to Patrick Stokes, Gibson, Dunn & Crutcher LLP, et al. (Aug. 9, 2021) (requesting a call to discuss privilege issues with a hope "to avoid filing motions with the Court"); Email from Andrew DeFilippis, Dep't of Just., to Patrick Stokes, Gibson, Dunn & Crutcher LLP, et al. (Aug. 14, 2021) (stating that the Special Counsel "wanted to give all parties involved the opportunity to weigh in before we . . . pursue particular legal process, or seek relief from the Court"). And since January—before the deadline to produce unclassified discovery had passed—the Special Counsel suggested that such a filing was imminent, telling the DNC, for example, that he was "contemplating a public court filing in the near term." Email from Andrew DeFilippis, Dep't of Just., to Shawn Crowley, Kaplan Hecker & Fink LLP (Jan. 17, 2022).

This background proves that the Special Counsel knew he had to bring litigation to challenge the assertions of privilege; the Special Counsel told privilege holders he would challenge the assertions of privilege; and he still did nothing but delay—and in ways that have prejudiced Mr. Sussmann. The Special Counsel's course of conduct plainly violates the long-established principle that parties must raise issues of which they are aware in a timely manner or forfeit their rights to do so. *See, e.g.*, *Yakus v. United States*, 321 U.S. 414, 444 (1944) (a right may be forfeited "by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it" (citations omitted)); *DesRosiers v. Moran*, 949 F.2d 15, 22 n.8 (1st Cir. 1991) (explaining that plaintiff knew "well in advance of trial" that material existed but "failed to bring the matter of non-production to the court's attention" in a timely fashion and noting that "[i]n

similar circumstances, courts have often deemed discovery violations to have been waived"); *Hildenbrand v. W Holding Co.*, No. 07-cv-1886, 2012 WL 12995321, at *3 (D.P.R. July 23, 2012) (denying motion to compel brought "on the eve of discovery's close" because movant "sat on his hands too long and that he has therefore waived his right to the relief he seeks"); *Barnes v. United States*, No. 11-CV-582-HE-PJC, 2013 WL 12425651, at *2 (N.D. Okla. Oct. 15, 2013) (denying motion to compel for "inexcusable delay" where plaintiffs knew "for two full months that Defendants objected to the requested discovery, yet took no action until the very day of discovery cutoff").

*Fourth and finally*, it is particularly galling that the Special Counsel waited until the eleventh hour to file this motion because he is well aware of what an impact this could have on the case. For months, the Special Counsel has been asking Mr. Sussmann whether there would be any waiver of privilege in this case because of his concern that a privilege waiver at this stage in the proceedings would fundamentally impact the course of trial. Indeed, in a telephone conference with the defense in February, the Special Counsel stated that a waiver would raise "all kinds" of evidentiary issues in this case. Even though the Special Counsel understood the impact that a change in the privilege landscape would have, he still waited weeks and weeks longer to file this Motion.

The Special Counsel's gamesmanship should not stand. It is unjustified. It is unjust. And it threatens Mr. Sussmann's ability to meaningfully prepare for trial—a right the Constitution guarantees to him. *Cf. United States v. Kelly*, 420 F.2d 26, 29 (2d Cir. 1969) (reversing conviction and remanding because "[t]he course of the government smack[ed] too much of a trial by ambush, in violation of the spirit of the rules" when the government introduced drug test evidence without giving defense "a fair opportunity" to run its own tests); *United States v. Baum*, 482 F.2d 1325,

1331-32 (2d Cir. 1973) (reversing conviction and remanding where government knowingly withheld identity of witness and substance of testimony until trial, thus depriving the defendant of an "opportunity to meet the impact of [the] attack").

### B. The Special Counsel Should Have Brought This Motion Before the Chief Judge During the Pendency of the Grand Jury Investigation

The Special Counsel's Motion should also be denied because he is seeking relief from the wrong forum: to the extent the Special Counsel believed that any party had failed to appropriately comply with a *grand jury* subpoena, he should have sought relief from the Chief Judge during the pendency of the grand jury investigation, as the local rules of this District, precedent, and even the prior practice of Special Counsels make clear.

Local Criminal Rule 57.14(b) provides that the Chief Judge shall "determine all matters relating to proceedings before the grand jury." *See also In re Mots. of Dow Jones & Co.*, 142 F.3d 496, 498 (D.C. Cir. 1998) (describing Chief Judge's jurisdiction to "hear and determine all matters relating to proceedings before the grand jury," including judicial proceedings regarding "compelling [a] witness to answer"); *In re Evans*, 452 F.2d 1239, 1241 (D.C. Cir. 1971) (explaining that district judge who initially granted grand jury witness's motion for disclosure of certain government evidence subsequently "directed that his own order be vacated in view of [the Local Rule] which provides that the Chief Judge shall "determine all matters relating to proceedings before the grand jury"). The Local Rules also provide that "[a] motion or application filed in connection with a grand jury subpoena or other matter occurring before a grand jury . . . be filed under seal," Local Crim. R. 6.1, and thus had the Special Counsel filed at the proper time and in the proper place, he would have been required to file under seal—and without prejudicing the rights of multiple parties by filing publicly, as he has chosen to do now. Yet again, by waiting this long, it appears that the Special Counsel has needlessly made a public filing filled with

9

allegations that have attracted media attention. *See, e.g.*, Gregg Jarrett, "Durham's prosecution of Clinton's campaign lawyer keeps getting stronger as more lies are exposed," Fox News (Apr. 7, 2022), https://www.foxnews.com/opinion/durham-prosecution-clinton-campaign-lawyer-lies-gregg-jarrett; Jerry Dunleavy, "Durham asks judge to review Clinton campaign claims of attorney-client privilege," Wash. Examiner (Apr. 7, 2022), https://www.washingtonexaminer.com/news/justice/durham-asks-judge-to-review-clinton-campaign-claims-of-attorney-client-privilege; Margot Cleveland, "Will The Court Allow Special Counsel John Durham To See Clinton Campaign Documents?," Federalist (Apr. 7, 2022), https://thefederalist.com/2022/04/07/will-the-court-allow-special-counsel-john-durham-to-see-clinton-campaign-documents; Andrew Goudsward, "Durham Challenges Perkins Coie's Attorney-Client Privileges Claims Ahead of Michael Sussmann Trial," Law.com (Apr. 7, 2022 12:55 PM), https://www.law.com/nationallawjournal/2022/04/07/durham-challenges-perkins-coies-attorney-client-privilege-claims-ahead-of-michael-sussmann-trial/.

"[M]atters relating to proceedings before the grand jury" plainly encompass questions regarding the propriety of a party's compliance with a grand jury subpoena. *Evans*, 452 F.2d at 1241. That is why motions concerning compliance with grand jury subpoenas—both motions to compel and motions to quash—are uniformly filed before the Chief Judge. *See, e.g.*, *In re Grand Jury Proc.*, 201 F. Supp. 2d 5 (D.D.C. 1999) (Holloway Johnson, C.J.) (non-party brought motion to quash grand jury subpoena on work-product grounds); *In re Grand Jury Investigation of Possible Violation of 18 U.S.C. § 1461 et seq.*, 706 F. Supp. 2d 11, 12, 14 (D.D.C. 2009) (Lamberth, C.J.) (government brought motion to compel compliance with grand jury subpoena, including in light of non-party's assertion of Fifth Amendment self-incrimination privilege). Indeed, even prior Special Counsels have made clear that a challenge to a subpoena recipient's

invocation of attorney-client privilege should be litigated before the Chief Judge. *See In re Grand Jury Investigation*, No. MC 17-2336 (BAH), 2017 WL 4898143, at *1 (D.D.C. Oct. 2, 2017) (Howell, C.J.) (Special Counsel's Office brought motion to compel grand jury testimony in light of non-parties' invocation of attorney-client and work-product privileges).

Again, rather than litigate the question of subpoena compliance before the Chief Judge during the pendency of the grand jury investigation, the Special Counsel here sat on his hands and waited to raise the issue until a year after the subpoenas were issued, six months after Mr. Sussmann was indicted, approximately two months after unclassified discovery was supposed to have been produced, and mere weeks before trial. The Special Counsel has not cited a single case in which the government issued a grand jury subpoena, objected to a party's invocation of attorney-client privilege, and waited to litigate subpoena compliance until after indictment. And the Special Counsel certainly has not cited any case in which the government issued a grand jury subpoena, objected to a party's invocation of attorney-client privilege, and waited to litigate subpoena compliance until just before a defendant's trial was set to commence. That is because the tack taken by the Special Counsel here is inconsistent with the clear rules of this District, precedent, and fundamental principles of fairness. *See California v. Trombetta*, 467 U.S. 479, 485 (1984) (explaining that "criminal prosecutions must comport with prevailing notions of fundamental fairness" and that criminal defendants must thus "be afforded a meaningful opportunity to present a complete defense").

### C. The Special Counsel Abused the Grand Jury Process to Obtain the Documents in Question

The Special Counsel's Motion should be denied for the additional reason that he appears to have abused the grand jury to obtain the documents that he now seeks to see in unredacted form.

The law is well-settled that "the United States may not use the grand jury for the sole or dominant purpose of trial discovery in an already indicted prosecution." *In re Grand Jury Proc.*, 201 F. Supp. 2d at 12 n.4. Indeed, "courts uniformly have held that once a targeted individual has been indicted, the government must cease its use of the grand jury in preparing its case for trial." *See Resol. Tr. Corp. v. Thornton*, 41 F.3d 1539, 1546 (D.C. Cir. 1994) (internal quotation marks and citation omitted); *see also United States v. Sitzmann*, 74 F. Supp. 3d 96, 123 (D.D.C. 2014), *aff'd*, 893 F.3d 811 (D.C. Cir. 2018) ("[I]t is improper for a prosecutor to use the grand jury for trial preparation.").

Here, however, the Special Counsel seems to have admitted to engaging in precisely the kind of improper conduct that the law proscribes. In his Motion, the Special Counsel states that "on September 16, 2021, the Government issued grand jury subpoenas to [Perkins Coie] and [Fusion], requiring them to produce—in redacted form—the documents previously listed on privilege logs prepared by counsel for those entities so that such documents would be available for admission into evidence at any trial in this matter." Motion ¶ 6. In other words, on September 16, 2021, the Special Counsel issued subpoenas for the documents whose redactions on the basis of attorney-client privilege and work product protection he now challenges. He issued those subpoenas for the purposes of obtaining trial discovery. But September 16 is the day that Mr. Sussmann was indicted. The Special Counsel's admitted use of grand jury subpoenas on the day of Indictment, to obtain trial discovery—not information to aid the grand jury—is a clear violation of law.

Given the Special Counsel's apparent improper conduct, any redacted documents produced in response to his invalid subpoenas should be suppressed, and the Court should not entertain his request to review any unredacted versions of those same documents. *See In re Grand Jury*

12

*Subpoena Duces Tecum Dated Jan. 2, 1985 (Simels)*, 767 F.2d 26, 30 (2d Cir. 1985) (quashing grand jury subpoena as an abuse of process and acknowledging that "it may be appropriate to enforce the rule against using a grand jury subpoena predominantly for trial preparation simply by barring use at trial of evidence obtained pursuant to the subpoena"); *United States v. Hundley*, No. S202CR.441(JSM), 2003 WL 21415394, at *1 (S.D.N.Y. June 19, 2003) (court would preclude witness from testifying at trial and suppress evidence derived from grand jury questioning if questioning had "strayed into areas that appear[ed] to be trial preparation").

### D. The Documents Sought by the Special Counsel Are Irrelevant

The Special Counsel's Motion should also be denied for the simple reason that the material he seeks to have reviewed is irrelevant on its face. Here, as the Court is well aware, the Special Counsel alleges only that Mr. Sussmann made a false statement to the Federal Bureau of Investigation ("FBI") regarding whether he was "acting on behalf of any client" in conveying certain information during a meeting in September 2016. Indictment ¶ 46. Yet the Special Counsel now seeks *in camera* review of 38 documents that do not and cannot shed any light on what Mr. Sussmann said to the FBI or why he said it. Indeed, all the documents at issue here involve internal and external communications only of Fusion, and all but three of the documents at issue do not concern Mr. Sussmann at all.

*First*, the Special Counsel seeks review of the unredacted retention letter between Perkins Coie and Fusion. But the Special Counsel already possesses that document in virtually unredacted form. The agreement, on its face, says nothing about who Mr. Sussmann's clients were and whether he was acting on behalf of any clients when meeting with Mr. Baker. There is no conceivable universe in which the redacted portions of that same document can be relevant. *See* Motion at Ex. C.

13

*Second*, the Special Counsel seeks review of 38 emails and attachments. The lion's share of these documents—35 of them—do not include Mr. Sussmann as either the sender, recipient, or copied party. And of these 35 documents, nearly all—33 of them—are exclusively *internal Fusion communications*. *See* Motion at Ex. A. As previously described in Mr. Sussmann's motion *in limine* regarding the gathering and accuracy of the data Mr. Sussmann provided to the FBI, *see* ECF No. 60, discussions between and among others are "simply irrelevant to [Mr. Sussmann's] state of mind." *United States v. Libby*, 467 F. Supp. 2d 1, 15-16 (D.D.C. 2006).[1] As to the other three emails, Mr. Sussmann did not send them or receive them, and they shed no light on what Mr. Sussmann said to Mr. Baker weeks later. This Court should not condone the piercing of privilege on such flimsy grounds as the Special Counsel's extraordinary conspiracy theories and rank speculation.

*Third*, 19 of the 38 documents are dated after Mr. Sussmann's meeting with the FBI. Motion at Ex. A.; *cf. United States v. Kaufman*, No. 19-cr-504 (LAK), 2021 WL 4084523, at *22-23 (S.D.N.Y. Sept. 7, 2021) (testimony about analyses conducted after the conduct at issue "would have been improper post hoc speculation about [the defendant's] intent"). The Special Counsel makes no attempt to explain why emails that Mr. Sussmann is not on, and that post-date Mr. Sussmann's meeting with Mr. Baker, could have any bearing on the single charge before this

---

[1] The Special Counsel makes much of the fact that (1) there was an August 11, 2016 email exchange between Mr. Sussmann, Mr. Elias, and Fusion employees with the subject "connecting you all by email" and (2) that thereafter, Fusion employees "began to exchange drafts of a document . . . the defendant would provide to the FBI General Counsel." Motion ¶¶ 29, 30. But in seeking to draw inflammatory and unsupported inferences, the Special Counsel ignores another email—that he produced in discovery—in which a Fusion employee stated that the document was "an [A]lfa memo unrelated to all [the Alfa Bank DNS information]." *See* Email from P. Fritsch to M. Hosenball (Oct. 5, 2016), SC-00027475, at SC-00027476.

14

Court: whether Mr. Sussmann made a false statement regarding the client(s) on whose behalf he met with Mr. Baker.

In any event, even if the documents were relevant—and they are not—any ruling that any portion of them is not covered by attorney-client privilege or work product protection would prejudice Mr. Sussmann and materially impact his ability to prepare to defend himself at trial, which is set to begin in under a month. Indeed, if it is determined that attorney-client privilege and/or work product protections do not apply to a particular kind of document or communication, that will necessarily affect a range of documents beyond those at issue in this motion; it will necessarily affect the scope of the testimony of any number of important witnesses; and it will necessarily affect Mr. Sussmann's fundamental trial strategy.

This untimely, improper Motion could force Mr. Sussmann into the untenable position of having to shift trial strategies at the eleventh hour, and thereby diminish his ability to adequately prepare.[2] Mr. Sussmann should not be put in that position because of the Special Counsel's inexcusable tardiness in litigating these privilege issues.

## CONCLUSION

For the foregoing reasons, Mr. Sussmann requests that this Court deny the Special Counsel's Motion to Compel.

---

[2] Mr. Sussmann would not, under any circumstances, be able to remedy the Special Counsel's tardiness by seeking a continuance of the trial date. Moreover, Mr. Sussmann remains steadfast in his desire for—and constitutional right to—a speedy trial, and he reserves all rights in connection with the Special Counsel's continued gamesmanship, including moving to dismiss the Indictment on speedy trial grounds. *See United States v. Alvin*, 30 F. Supp. 3d 323, 343 (E.D. Pa. 2014) (granting defendant's motion to dismiss indictment on speedy trial grounds, noting that the defendant "was put in the position of requiring" a prior continuance "by the Government's failure to turn over discovery" and "pattern of . . . surprising Defendants by disclosing evidence on the eve of trial").

15

Dated: April 18, 2022                                     Respectfully submitted,

*/s/Sean M. Berkowitz*
Sean M. Berkowitz (*pro hac vice*)
LATHAM & WATKINS LLP
330 North Wabash Avenue
Suite 2800
Chicago, IL 60611
Tel: (312) 876-7700
Fax: (312) 993-9767
Email: sean.berkowitz@lw.com

Michael Bosworth (*pro hac vice*)
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
Tel: (212) 906-1200
Fax: (212) 751-4864
Email: michael.bosworth@lw.com

Natalie Hardwick Rao (D.C. Bar # 1009542)
Catherine J. Yao (D.C. Bar # 1049138)
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004
Tel: (202) 637-2200
Fax: (202) 637-2201
Email: natalie.rao@lw.com
Email: catherine.yao@lw.com