**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>*v.*<br><br>**MICHAEL A. SUSSMANN,**<br><br>*Defendant*. | Case No. 1:21-cr-00582 |

**DEFENDANT'S REPLY TO THE SPECIAL COUNSEL'S OPPOSITION TO
DEFENDANT'S MOTIONS *IN LIMINE* AND RULE 404(b) OBJECTIONS**

Defendant Michael A. Sussmann, by and through undersigned counsel, respectfully submits this reply to the Special Counsel's Opposition to Defendant's Motions *in Limine* and Rule 404(b) Objections, *see* ECF No. 70 (hereinafter "SCO Opp.").  Since April 4, the parties have submitted significant briefing regarding evidence and argument the Special Counsel seeks to introduce at trial.  This brief is intended to help frame the disputes that remain outstanding with respect to the defense's motions *in limine* in anticipation of oral argument before the Court on April 27, 2022.  As set forth in greater detail below, the Special Counsel continues to overreach: he seeks to admit evidence that the law squarely forbids, he seeks to prove unduly prejudicial allegations he has not charged, and he seeks to prove conduct that is utterly irrelevant to the one discrete crime he *has* charged.  And, at the same time that he seeks to admit endless *irrelevant* evidence, he also seeks to prevent Mr. Sussmann from introducing relevant—indeed *essential*—exculpatory evidence in the form of testimony from his former client, Rodney Joffe.  For the reasons that follow, Mr. Sussmann's motions *in limine* should be granted in full.

**ARGUMENT**

I.    **THE SPECIAL COUNSEL SHOULD BE PRECLUDED FROM OFFERING EVIDENCE OF NON-PARTY ASSERTIONS OF ATTORNEY-CLIENT PRIVILEGE AT TRIAL**

The Special Counsel's words and deeds make clear that he intends to offer evidence of particular clients' assertions of attorney-client privilege.  But no matter how much he tries to style this evidence as "highly probative," it simply is not permitted by law.

*First*, the Special Counsel this week took the astonishing and legally inappropriate step of subpoenaing witnesses for the *express purpose* of having them testify to the invocation of the attorney-client privilege in front of the jury.  Specifically, the defense learned that on April 19, 2022, the Special Counsel issued trial subpoenas to the Clinton Campaign and the Democratic National Committee, and explained that the Special Counsel was requesting the testimony of witnesses regarding the assertion of attorney-client privilege in front of the jury.[1]  But courts have explicitly prohibited such an approach.  *See, e.g.*, *Broyles v. Cantor Fitzgerald & Co.*, No. CV 10-854-JJB-CBW, 2016 WL 7656028, at *2 (M.D. La. Sept. 8, 2016) (prohibiting party "from calling a witness for the purpose of drawing an assertion of the attorney-client privilege in open court." (citation omitted)); *United States v. Chapman*, 866 F.2d 1326, 1333 (11th Cir. 1989) ("[A]s a general matter it is improper to permit a witness to claim a testimonial privilege in front of the jury where the witness's intention not to testify is known beforehand."); *Tallo v. United States*, 344 F.2d 467, 469-70 (1st Cir. 1965) ("[I]t is improper to require a defendant to claim . . . privileges in the presence of a jury"); *Bowles v. United States*, 439 F.2d 536, 542 (D.C. Cir. 1970) ("[A] witness should not be put on the stand for the purpose of having him exercise his [Fifth Amendment]

_____

[1] Counsel for both the Clinton Campaign and the Democratic National Committee have advised the defense that they will consider filing motions to quash if the Court deems them necessary or proper in excluding this plainly impermissible testimony.

privilege [against self-incrimination] before the jury"); *United States v. Morris*, 988 F.2d 1335, 1340 (4th Cir. 1993) ("[A] prosecutor may not call the accused's wife to the witness stand for the purposes of making her invoke the privilege in front of the jury.").  And notably, the Special Counsel's Opposition does not cite a single case in support of his proposed approach—nor can he—because the testimony he seeks to offer is clearly impermissible.

*Second*, the Special Counsel represented in his Opposition that he does not intend to offer privilege logs into evidence at trial.  *See* SCO Opp. at 2.  But on the same day he filed his Opposition, he produced trial exhibits to the defense and specifically marked three different privilege logs as evidence he intends to offer at trial.  Gov't's Tr. Exs. 618, 619, 620.  Such privilege logs—and any others like them—are plainly inadmissible under the law.  *See, e.g.*, *Nabisco, Inc. v. PF Brands, Inc.*, 191 F.3d 208, 226 (2d Cir. 1999) (prohibiting drawing of negative inference from "refusal to produce [a document] based on claim of the privilege" because such a rule would result in "seriously harmful consequences"); *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, No. 17-md-2785-DDC-TJJ, 2022 WL 226130, at *17 (D. Kan. Jan. 26, 2022) (holding privilege logs were inadmissible in part because "any probative value of a privilege log is outweighed by the danger of unfair prejudice"); *Broyles*, 2016 WL 7656028, at *2 (M.D. La. Sept. 8, 2016) (prohibiting party from "show[ing] that documents…ha[d] been withheld on the grounds of [the attorney-client] privilege").  And while the Special Counsel claims his position is supported by *Huawei Technologies Co. v. T-Mobile US, Inc.*, that case simply holds that a witness can be impeached by a fact in a privilege log—not that the privilege log can be introduced to show the assertion of privilege itself.  No. 2:16-CV-00052-JRG-RSP, 2017 WL 7052463, at *1-2 (E.D. Tex. Sept. 20, 2017).

*Third*, although the Special Counsel continues to seek to parade redacted documents before the jury, none of the four cases he cites actually supports his theory that this would be proper. In one case, no party objected to the admission of the redacted documents, *see Romero v. Helmerich & Payne Int'l Drilling Co.*, No. 15-CV-00720-NYW, 2017 WL 3268878, at *3-4 (D. Colo. Aug. 1, 2017); in another case, the Court precluded the introduction of the privilege logs in question, finding that even if relevant, they would be more prejudicial than probative, *see In re EpiPen*, 2022 WL 226130, at *17; and the final two cases involved redactions to *non-privileged* language, not redactions made on the basis of attorney-client privilege, *see In re E.I. Du Pont De Nemours & Co. C-8 Pers. Inj. Litig.*, No. 2:13-CV-170, 2016 WL 659112, at *59-60 (redactions made to coarse language that was prejudicial) and *United States v. Sussman*, 709 F.3d 155, 173-74 (3d Cir. 2013) (redactions made to documents from another matter that were prejudicial). By contrast, Mr. Sussmann's motion cited numerous cases holding that admitting redacted documents, or otherwise making the jury aware that a party had withheld information on the basis of the attorney-client privilege, would be improper. *See, e.g.*, *In re Gen. Motors LLC Ignition Switch Litig.*, No. 14-MD-2543 (JMF), 2015 WL 8130449, at *3 (S.D.N.Y. Dec. 3, 2015); *United States v. Foster*, 309 F.2d 8, 15 (4th Cir. 1962); *Goldberg v. 401 N. Wabash Venture LLC*, No. 09 C 6455, 2013 WL 1816162, at *1, *7 (N.D. Ill. Apr. 29, 2013). And while the Special Counsel suggests this case is different because it involves questions regarding attorney-client relationships, he again cites no case that supports the proposition that this distinction makes any difference. It does not.

*Finally*, even if some of the above evidence could properly be admitted—which it cannot—it should still be precluded here as unduly prejudicial given (1) the potential for the jury to draw adverse inferences from assertions of privilege by third parties and over which Mr. Sussmann has

no control, and (2) there is other evidence available to the Special Counsel regarding the existence

of attorney-client relationships.

## II.    THE COURT SHOULD EXCLUDE THE NOTES AUTHORED BY MR. PRIESTAP AND MS. ANDERSON

In the Defendant's Motion *in Limine* to Exclude Testimony or Evidence Pertaining to

Former [Federal Bureau of Investigation ("FBI")] Assistant Director Bill Priestap's and Deputy

General Counsel Trisha Anderson's Notes, ECF No. 58 ("Motion to Exclude the Notes"), the

defense explained why Mr. Priestap's and Ms. Anderson's *triple hearsay* notes (the "Notes") are

inadmissible either as prior consistent statements or as past recollections recorded.  And the

Opposition fails to meaningfully engage with any of the defense's arguments.

*First*, the Special Counsel essentially argues that because the Notes contain prior consistent

statements of Mr. Baker, they are admissible.  SCO Opp. at 6-8.  But the question is not simply

whether it is proper to admit evidence of Mr. Baker's prior consistent statements; the question is

*what kind of evidence* the Special Counsel can use to prove those prior consistent statements.  In

Mr. Sussmann's opening brief, the defense explained that where one witness's statement is

recorded in the notes of another, the notes may only be "properly treated as a prior consistent

statement" where, "immediately following the [underlying conversation]," the declarant "adopted

the notes as accurate and in accord with his own recollection."  Mot. to Exclude Notes at 11 n.1,

ECF No. 58 (quoting *United States v. Rubin*, 609 F.2d 51, 62 (2d Cir. 1979), *aff'd*, 449 U.S. 424

(1981)).  The Special Counsel does not acknowledge, let alone respond to, that argument.  The

defense also explained that, where the government seeks to introduce a prior consistent statement

through a third-party witness, the third-party witness must be subject to meaningful cross-

examination.  *Id.* at 9-11.  The Special Counsel seems to concede that is the law with his citation

to *United States v. Montague*—a case that expressly held that a witness can testify to a declarant's

5

prior consistent statements only where the witness is subject to cross-examination.  958 F.2d 1094, 1099 (D.C. Cir. 1992).  But the Special Counsel does not bother to explain how Mr. Priestap or Ms. Anderson can be subject to meaningful cross-examination here—and that is because he cannot, given that they both have stated in interviews that they have no memory of the alleged prior consistent statements at issue.

*Second*, the Special Counsel suggests that the Notes can be admitted as past recollections recorded and argues simply that he "can and will . . . establish a proper foundation *at trial*."  SCO Opp. at 9-10 (emphasis added).  But the Special Counsel's proffer of evidence is manifestly insufficient to establish such a foundation.  He has not pointed to any specific evidence showing that the Notes concern matters either witness "once knew," Fed. R. Evid. 803(5)(A); he has not pointed to any specific evidence showing that the Notes were taken "when the matter was fresh" in their minds, Fed. R. Evid. 803(5)(B); and he has not pointed to any specific evidence showing that the Notes "accurately reflect[]" the knowledge of the witnesses, Fed. R. Evid. 803(5)(C).  And while he claims the defense is putting "the cart before the horse" by relying on the evidentiary record to date, SCO Opp. at 9—which is a puzzling assertion, given that he moved to admit these Notes on the basis of the same record, SCO Mot. at 9-10—it is well-settled that a Court can and should consider the available record in ruling on a motion *in limine*.  *See Graves v. Dist. of Columbia*, 850 F. Supp. 2d 6, 11 (D.D.C. 2011) (explaining trial judges' broad discretion to render evidentiary rulings "extends not only to the substantive evidentiary ruling, but also to the threshold question of whether a motion *in limine* presents an evidentiary issue that is appropriate for ruling in advance of trial").  The Special Counsel's real problem, in the end, is not that Mr. Sussmann's motion is premature; it is that he has insufficient evidence with which to oppose it.

**III.    THE COURT SHOULD DISMISS THIS CASE IF THE SPECIAL COUNSEL DOES NOT IMMUNIZE RODNEY JOFFE**

The Special Counsel concedes that this Court has the authority to ask him to immunize Rodney Joffe or else face dismissal of the Indictment.  SCO Opp. at 10-11.  And the Special Counsel concedes that the test articulated by the Second Circuit should be used to evaluate the defense's motion.  *Id.*  The Special Counsel principally argues in opposition that Mr. Sussmann's motion should be denied because: (1) the Special Counsel has not threatened Mr. Joffe; and (2) Mr. Joffe's proffered testimony would not be exculpatory.  *Id.* at 12-15.  But the Special Counsel misstates the law with respect to the former, and the facts with respect to the latter.

*First*, the Special Counsel seems to suggest that Mr. Sussmann must prove that Mr. Joffe has been "threatened, bullied, [or] harassed" in order to prevail on this motion.  SCO Opp. at 12.  Not so.  Indeed, the very case cited by the Special Counsel makes clear that it is appropriate to ask the government to confer immunity where the government has forced a potential witness to invoke the Fifth Amendment through "overreaching."  *United States v. Ebbers*, 458 F.3d 110, 119 (2d Cir. 2006).  And overreaching is precisely what the Special Counsel is doing here.  As explained in Mr. Sussmann's motion—and the letter it attaches from Mr. Joffe's counsel—the Special Counsel has told Mr. Joffe that he still faces exposure because: (1) various "'Yota[P]hone-related allegations'—which were provided to the [Central Intelligence Agency ("CIA")] in February 2017—'continued to "percolate through various branches of the government and around the private sector after that date;"'" and (2) "certain fraud statutes have longer than a five-year limitations period."  ECF No. 59 at 6-7 (quoting ECF No. 59-1 at 2).  Both claims are baseless for the reasons set forth in Mr. Sussmann's motion.  *Id*.  Moreover, it is telling that the Special Counsel chose not to identify a single reason why Mr. Joffe continues to realistically face criminal exposure, particularly given the Special Counsel's history of publicly making uncharged

allegations against Mr. Joffe in this case. *See generally* ECF Nos. 1, 61 at 10-32, 68-1. It is no answer for the Special Counsel to wave away the defense's arguments by simply asserting that "defense counsel is not—and could not be—aware of all the evidence that the Government has collected." SCO Opp. at 13. At a minimum, given the central role the Special Counsel has assigned Mr. Joffe in this case, the Court should require the Special Counsel to make an *ex parte* proffer of why and how Mr. Joffe could continue to reasonably face any criminal exposure in connection with the matters at issue here.

*Second*, the Special Counsel is simply wrong to suggest that Mr. Joffe's testimony would not be exculpatory. Exculpatory evidence, as the Special Counsel knows, is evidence "which would *tend to* show freedom from fault, guilt or blame." *United States v. Nelson*, 979 F. Supp. 2d 123, 131 (D.D.C. 2013) (citation omitted) (emphasis added); *cf. United States v. Safavian*, 233 F.R.D. 12, 16 (D.D.C. 2005) ("Most prosecutors are neither neutral (nor should they be) nor prescient, and any such [pretrial] judgment [that evidence is not materially exculpatory] necessarily is speculative . . . the government must always produce *any potentially* exculpatory or otherwise favorable evidence." (emphasis added)). Here, there can be no doubt that Mr. Joffe is in a position to offer testimony that "tend[s] to show freedom from fault." *Nelson*, 979 F. Supp. 2d at 131 (citation omitted). Here, among other things, the Special Counsel has alleged that Mr. Sussmann "lied about the capacity in which he was providing the allegations to the FBI" because he concealed that he was "act[ing] on behalf of" Mr. Joffe, ECF No. 1 ¶ 4; but Mr. Joffe is prepared to testify that Mr. Sussmann did not provide information to the FBI "to benefit Mr. Joffe." ECF No. 59 at 9. The Special Counsel has alleged that Mr. Joffe and the researchers had "serious doubts about whether the [Alfa Bank] data might have been 'spoofed,' a 'red herring,' 'wrong,' or a product of 'tunnel vision' or bias against Trump, provid[ing] [Mr. Joffe and Mr. Sussmann] with

motive to conceal the origins and provenance of the [Alfa Bank] allegations from the FBI," ECF No. 61 at 29; but Mr. Joffe is prepared to testify that "the researchers and Mr. Joffe himself held a good faith belief in the analysis." ECF No. 59 at 10. The Special Counsel has alleged that Mr. Joffe, "the Clinton Campaign, and their agents [] communicated and coordinated with each other;" ECF No. 61 at 10; but Mr. Joffe is prepared to testify that "Mr. Joffe was neither retained by, nor did he receive direction from, the Clinton Campaign." ECF No. 59 at 10. Thus, there can be no serious argument that Mr. Joffe is not in a position to provide exculpatory testimony.

## IV. THE COURT SHOULD PRECLUDE EVIDENCE REGARDING THE GATHERING OF THE DOMAIN NAME SYSTEM ("DNS") DATA

The Special Counsel principally contends that evidence of the manner in which data was gathered—including evidence that the data was purportedly gathered improperly—is relevant because it shows that Mr. Sussmann had a motive to conceal facts about his "clients" when he met with Mr. Baker. SCO Opp. at 19. But the Special Counsel's theory of relevance does not make logical sense, and, in any event, there is insufficient evidence of Mr. Sussmann's involvement in the gathering of the data, as well as insufficient evidence that Mr. Sussmann had any reason to believe the data was gathered in any improper manner even if he was involved.

*First*, the Special Counsel suggests that evidence of the manner in which data was gathered is relevant because it proves Mr. Sussmann's motive to lie to the FBI about his clients. *Id.* But the fundamental flaw in this theory is that Mr. Sussmann disclosed to Mr. Baker facts that would have enabled the FBI to ask precisely the kinds of questions about the data-gathering that the Special Counsel alleges Mr. Sussmann was trying to conceal. As even Mr. Baker has testified, Mr. Sussmann told Mr. Baker that the data he was providing to the FBI came *from cyber experts*. J. Baker Cong. Test. at SCO-3500U-003892, -959, -964 (Oct. 3, 2018). If there were a reason for Mr. Sussmann to lie about how the data was gathered, why would he disclose that the data came

from cyber experts?  Armed with this basic fact, when Mr. Baker called Mr. Sussmann two days after their meeting to inquire as to the identity of the news organization expected to publish a related story, he could also have inquired further about the source of the DNS data—but he did not do so.  And in the weeks and months that followed, the FBI easily could have asked Mr. Sussmann who those cyber experts were and how they gathered the data; the FBI didn't need Mr. Sussmann to disclose the existence of any *client relationship* in order to ask such basic questions.  As such, evidence of data-gathering cannot go to Mr. Sussmann's motive.  Nor can it even go to the materiality of the purported false statement, as the Special Counsel also claims.  *See United States ex rel. Morsell v. Symantec Corp.*, 130 F. Supp. 3d 106, 123 n.16 (D.D.C. 2015) ("'[A] statement is material if it has a natural tendency to influence, or is capable of influencing' an agency's *action*." (emphasis added) (quoting *United States v. Moore*, 612 F.3d 698, 701 (D.C. Cir. 2010))).  Here, the FBI knew the data came from unnamed cyber experts, but the FBI never once asked Mr. Sussmann who those experts were or how they gathered the data.  How material, then, could any of this have been?  The Special Counsel's efforts to shoehorn in a theory of relevance here, accordingly, fall short.

*Second*, the Special Counsel has not proffered any evidence or cited any fact that demonstrates Mr. Sussmann was "involved in" the gathering of data in any event.  *See* SCO Opp. at 17.  The evidence the Special Counsel points to in his Opposition—namely, Mr. Sussmann's billing records pertaining to white papers, a call with David Dagon just "[d]ays before" Mr. Sussmann's meeting with the FBI on September 19, 2016, the file names of documents on thumb drives Mr. Sussmann provided to the government, and statements allegedly made to the CIA in February 2017—do not serve as *any* evidence that Mr. Sussmann was involved in gathering the data itself.  *See id.* at 17-18.  Furthermore, not a single one of the communications between and

among the data researchers was sent by or to (or copied to) Mr. Sussmann.  Thus, there is nothing showing Mr. Sussmann himself had a role in gathering the data.

*Third*, even if the Court were to find that there was sufficient evidence that Mr. Sussmann was involved in the gathering of the data generally, there is no evidence that Mr. Sussmann believed or had reason to believe that DNS data was being gathered "in a manner that was illegal or unethical."  SCO Opp. at 19.  Not only has the Special Counsel failed to charge such conduct, the Special Counsel has failed to identify a single fact—testimony by any witness, an email, or any document—showing Mr. Sussmann believed or had reason to believe there was anything improper about the gathering of the data.  It would therefore be deeply prejudicial to Mr. Sussmann for the Special Counsel to offer any proof that the data was gathered improperly by people other than Mr. Sussmann and in a manner unknown to Mr. Sussmann.  *See United States v. Hawley*, 562 F. Supp. 2d 1017, 1048 (N.D. Iowa 2008) (excluding evidence that "would tend to invite a jury to punish [the defendant] for conduct that is not at issue in this case . . . confuse the issues[,] and generate a trial within a trial on collateral issues").

*Finally*, were the Court to permit the Special Counsel to prove up the propriety or impropriety of the data-gathering, this would force precisely the kind of mini-trial on confusing ancillary matters that the law forbids.  *See e.g.*, *United States v. Potapova*, 800 F. App'x 14, 16 (2d Cir. 2020) (upholding exclusion of evidence with "minimal probative value" that carried a "serious risk of jury confusion" given the scope and factual complexity); *United States v. Thibeaux*, 784 F.3d 1221, 1226 (8th Cir. 2015) (upholding the exclusion of evidence that was "likely to be complex [and] resulting in a mini-trial regarding a collateral matter").  For example, the Special Counsel apparently seeks to introduce evidence and testimony about whether or not the evidence was gathered in violation of a Defense Advanced Research Projects Agency contract

entered into by the Georgia Institute of Technology sometime *after* Mr. Sussmann's meeting with Mr. Baker.  The Special Counsel also apparently wants to prove that Mr. Joffe "exploited" his access to DNS data from various sources, including data maintained by his former employer, data received by his employer pursuant to government sub-contracts, and data maintained by companies in which he had an ownership interest.  *See* ECF No. 1 ¶¶ 6, 23(d), 23(e); ECF No. 35 ¶¶ 4-5.  The Special Counsel should not be permitted to waste time on a "sideshow that distracts the jury" and requires Mr. Sussmann to spend a "substantial amount of time discrediting" irrelevant allegations in the process.  *Sarin v. Poojan, Inc.*, No. 3:08-CV-1077, 2010 WL 5463250, at *6 (M.D. Pa. Dec. 29, 2010).

## V.      THE COURT SHOULD PRECLUDE EVIDENCE AND TESTIMONY CONCERNING CHRISTOPHER STEELE AND THE STEELE DOSSIER

The Special Counsel next spends pages detailing why evidence regarding Christopher Steele and the Steele Dossier (the "Steele Evidence") is relevant and admissible.  At bottom, the Special Counsel argues that this evidence is relevant to prove that: (1) Mr. Sussmann had relationships with the Clinton Campaign and Fusion GPS; (2) Mr. Sussmann performed work in connection with the Clinton Campaign's "opposition research efforts"; and (3) Mr. Sussmann intentionally shared the Alfa Bank research with the FBI to "further the interests of the Clinton Campaign."  *See* SCO Opp. at 24.  But there are three fundamental problems with the Special Counsel's arguments.

*First*, the Special Counsel does not need to introduce evidence regarding Mr. Steele to prove any or all of the above.  There is other evidence available to the Special Counsel regarding the existence of attorney-client relationships generally; regarding Mr. Sussmann's meeting with employees of Fusion GPS ("Fusion"); and regarding the impact that the allegations Mr. Sussmann presented to *The New York Times* could potentially have on the Clinton Campaign.  The Special

Counsel does not need any evidence of what Mr. Steele said or did in order to prove those facts—making the Steele Evidence cumulative at best.  *See United States v. Brown*, 597 F.3d 399, 407 (D.C. Cir. 2010) (finding cumulative evidence is that which "adds very little to the probative force of the other evidence in the case, so that if it were admitted its contribution to the determination of truth would be outweighed by its contribution to the length of the trial" (citation omitted)).  More critically, evidence of what Mr. Steele said or did cannot prove why Mr. Sussmann met with Mr. Baker on September 19.  The Special Counsel seeks to invite the jury to infer that because Mr. Steele separately shared information with the government, allegedly in coordination with agents of the Clinton Campaign, that necessarily means Mr. Sussmann also shared information with the FBI on the Clinton Campaign's behalf.  But this is a classic example of trying to prove guilt by association.  Such a method of proof is strictly forbidden.  *See United States v. Parada-Talamantes*, 32 F.3d 168, 170 (5th Cir. 1994) ("Because evidence of 'guilt by association' is typically highly prejudicial, it should be excluded."); *see also Old Chief v. United States*, 519 U.S. 172, 184 (1997) (stating that "what counts as the Rule 403 'probative value' of an item of evidence, as distinct from its Rule 401 'relevance,' may be calculated by comparing evidentiary alternatives").

*Second*, the Steele Evidence is not otherwise relevant.  Among other things, there is no evidence that Mr. Sussmann directed Mr. Steele to perform any work related to Alfa Bank; there is no evidence that the work product Mr. Steele created and gave to the FBI concerned the server allegations; there is no evidence that Mr. Sussmann provided Mr. Baker with Mr. Steele's report during their September 19 meeting; there is no evidence that Mr. Sussmann was even aware of the existence of Mr. Steele's report, let alone the fact that Mr. Steele shared it with the government; and there is no evidence that Mr. Sussmann knew of Mr. Steele's effort to share the server allegations with a U.S. State Department official in October of 2016.  SCO Opp. at 23-24.  And

overreach is too gentle a term to apply to the Special Counsel's contention that Mr. Sussmann suspiciously timed his meeting with Mr. Baker to coincide with the date on which "an overseas FBI agent" gave FBI headquarters other, irrelevant parts of the Steele Dossier. *Id.* at 24-25.

*Third and finally*, the Steele Evidence would be inflammatory and unduly prejudicial, and its introduction would, as with so much of the Special Counsel's desired evidence, lead to a trial within a trial. Mr. Steele and his dossier have been the subject of heated political debate for five years. To equate the public attention to the Steele Dossier with the public attention to Alfa Bank, as the Opposition does, is to deny the reality of American political life since the 2016 election, not to mention media coverage of this very case.[2] Were the Special Counsel to try to suggest that Mr. Sussmann and Mr. Steele engaged in a common course of conduct, that would open the door to an irrelevant mini-trial about the accuracy of Mr. Steele's allegations about Mr. Trump's ties to Russia—something that, like the Alfa Bank allegations, many experts continue to believe in, and about which the Special Counsel has tellingly failed to produce any significant discovery.

## VI. THE COURT SHOULD EXCLUDE THE SPECIAL COUNSEL'S PROFFERED RULE 404(B) EVIDENCE EXCEPT THE SPECIFIC STATEMENTS TO WHICH MR. SUSSMANN DOES NOT OBJECT

The Special Counsel's Opposition only serves to confirm what an unreliable and moving target the Special Counsel's position on Rule 404(b) evidence has been. On March 18, 2022, he provided insufficient notice as to only certain acts, *see* ECF No. 68-2; on March 23, 2022, he provided further notice concerning the March 18 acts, as well as notice of additional acts, in an

---

[2] *See, e.g.*, Marshall Cohen, *Special counsel Durham wants to bring up Trump-Russia dossier at trial against Clinton campaign lawyer*, CNN (Apr. 5, 2022), https://www.cnn.com/2022/04/05/politics/john-durham-trump-russia-dossier/index.html; Eric Tucker, *Lawyer charged in Durham case asks to block dossier evidence*, AP NEWS (Apr. 5, 2022), https://apnews.com/article/russia-ukraine-hillary-clinton-donald-trump-john-durham-europe-6b2d5a4797c052de58af213718a38833; Jerry Dunleavy, *Democratic lawyer Sussmann doesn't want Steele dossier brought up during Durham trial*, WASH. EXAMINER (Apr. 5, 2022), https://www.washingtonexaminer.com/news/democratic-lawyer-sussmann-doesnt-want-steele-dossier-brought-up-during-durham-trial.

unjustified and untimely supplement, *see* ECF No. 68-1; on April 4, 2022 he formally moved to admit only some of those acts, *see* ECF No. 61; and now, *for the first time*, in his Opposition, he has declared an intention to offer *additional* Rule 404(b) evidence—purported evidence concerning Christopher Steele and Mr. Sussmann's provision of the Alfa Bank allegations to certain members of the press—that he failed to move on and include in his Motion *in Limine*, and that he has never otherwise mentioned before.   Yet again, the Special Counsel's position is impossible to pin down, let alone understand.   In any event, other than the evidence that Mr. Sussmann has agreed can be admitted, the Special Counsel's efforts to pollute this trial with extraneous and irrelevant allegations of other uncharged conduct should not be countenanced.

      *First*, with respect to Mr. Sussmann's meeting with the CIA in February 2017: the Special Counsel only moved to introduce evidence that Mr. Sussmann made a "substantially similar false statement as he had made to the FBI General Counsel" during his meeting with the CIA.   *See* ECF No. 61 at 32-36; *see also* ECF No. 68 at 35-36.   The Special Counsel did not move on *any* other categories of evidence or argument concerning the CIA, and thus has waived his right to introduce such evidence pursuant to Rule 404(b).   *See* ECF No. 68 at 34-35.   In any event, such evidence is irrelevant for all the reasons previously argued.   Evidence and argument regarding the accuracy of the data Mr. Sussmann provided to the CIA, the accuracy of the allegations Mr. Sussmann provided to the CIA, or the manner in which that data was gathered are all utterly irrelevant to the false statement Mr. Sussmann has been charged with making to a different agency five months earlier. Evidence and argument regarding another false statement Mr. Sussmann purportedly made to the CIA concerning whether Mr. Sussmann provided "information to the FBI on a 'similar,' but

'unrelated' matter," SCO Opp. at 28—aside from being predicated on a distortion of the record[3]—
is simply not relevant either.

*Second*, the Special Counsel continues to repeat baseless refrains as to the admissibility of
irrelevant portions of Mr. Sussmann's testimony before the House Permanent Select Committee
on Intelligence ("HPSCI") and the impermissible inferences he seeks to draw therefrom.

Remarkably, the Special Counsel argues for the *first time* in his Opposition that he should
be permitted to offer portions of Mr. Sussmann's HPSCI testimony concerning Mr. Steele—
something the Special Counsel did not include in his original Rule 404(b) notice, his supplemental
Rule 404(b) notice, or his motion *in limine* to admit Rule 404(b) evidence.[4]  Of course, he has
waived his right to offer such evidence.  Moreover, such evidence is, for all the reasons above,
irrelevant.  *See supra*, at 12-14.

Next, the Special Counsel continues to claim that Mr. Sussmann's HPSCI testimony is
broadly admissible to show that Mr. Sussmann "failed to disclose the fact that the only client billed

---

[3] The Special Counsel cites to a short excerpt from one Memorandum for the Record ("MFR")
drafted by CIA employees on February 9, 2017, devoid of any context, in a misleading attempt to
make Mr. Sussmann's statement seem false.  *See* SCO Opp. at 29-30.  But the Special Counsel
fails to mention that at least *two drafts* of that MFR were prepared.  Indeed, as Mr. Sussmann
already explained nearly three weeks ago, *see* ECF No. 68-3 at 20, those drafts—and the context
in which they were prepared—make clear that he was describing the YotaPhone allegations (a
topic not discussed with Mr. Baker in September 2016) as being unrelated to the Alfa Bank
information he provided to the FBI, rendering his statement about "unrelated" matters completely
true.

[4] Although the Special Counsel also failed to properly notice portions of Mr. Sussmann's HPSCI
testimony concerning his provision of the Alfa Bank allegations to members of the press, Mr.
Sussmann does not object to the introduction of that testimony.  That being said, Mr. Sussmann
reserves all rights to offer evidence at trial that will place that testimony in its proper context, and
otherwise objects to the Special Counsel's purported inferences from those portions of his HPSCI
testimony.

for [his] pre-election work on th[e] [Alfa Bank] allegations was the Clinton Campaign."[5]   SCO Opp. at 31.   Yet again, the Special Counsel has not identified *a single question* put to Mr. Sussmann by members of Congress or their staff that would have called for a response concerning Mr. Sussmann's billing practices, or any affirmative obligation that would have required Mr. Sussmann to "volunteer" that information as the Special Counsel suggests he should have.   *See* ECF No. 68 at 41; ECF No. 68-3 at 22.   Absent that factual predicate, any such evidence or argument is inadmissible pursuant to Rule 404(b) and must be rejected.   *See* ECF No. 68 at 41.

The Special Counsel also reiterates his desire to introduce portions of Mr. Sussmann's HPSCI testimony concerning Fusion because Mr. Sussmann purportedly "fail[ed] to state or volunteer that [Fusion] . . . had drafted and provided to [him] one of the white papers that [he] then gave to the FBI General Counsel."   SCO Opp. at 33.   But as explained in Mr. Sussmann's Opposition, the record makes clear that Mr. Sussmann was not asked a single question that called for a response along these lines.   *See* ECF No. 68 at 42-44.   The Special Counsel's Opposition does not, and cannot, identify one.   This evidence is just another failed and unfairly prejudicial effort by the Special Counsel to conjure up a sense of wrongdoing by association where there is none.

---

[5] The Special Counsel's Opposition claims that he "[s]hould be [p]ermitted to [i]ntroduce [a]ll [r]elevant [p]ortions of [Mr. Sussmann's] Congressional Testimony," *see* SCO Opp. at 31, but subsequently makes a sweeping claim that Mr. Sussmann's "December 2017 Congressional testimony is relevant and admissible pursuant to Rule 404(b) to prove, among other things, [his] 'motive,' 'intent,' 'plan,' and 'knowledge.'"   *Id.*   Simply put, the Special Counsel has failed to adequately notice what specific portions of Mr. Sussmann's voluminous HPSCI testimony he seeks to introduce into evidence—and worse, has now inconsistently identified several portions of that testimony as admissible pursuant to Rule 404(b) across no fewer than four notices and filings. As Mr. Sussmann has explained, only those specific portions of his HPSCI testimony concerning his provision of the Alfa Bank information to the FBI and the CIA is admissible pursuant to Rule 404(b), and the Special Counsel cannot be permitted to use Rule 404(b) to introduce his HPSCI testimony—much of which is irrelevant—in its entirety.   *See* ECF No. 68 at 40-41.

*Third*, with respect to Perkins Coie's statements to the media, the Special Counsel's argument is inscrutable.  For one thing, the Special Counsel appears to suggest Mr. Sussmann moved to preclude evidence of Perkins Coie's statements to the media and "the role [Mr. Sussmann] played in causing them to be made."  SCO Opp. at 33.  He then goes on to argue why such evidence is relevant.  But Mr. Sussmann's motion was clear that "Mr. Sussmann *does not object to the introduction of* th[e] [Perkins Coie] statements or *evidence regarding the role he played in causing them to be made . . . .*"  ECF No. 68-3 at 22 (emphases added).

What Mr. Sussmann does object to—and has moved to preclude—is any effort by the Special Counsel to introduce lay witness testimony regarding the accuracy of those statements.  On this issue, the Special Counsel's position is difficult to pin down.  On the one hand, the Special Counsel seems to concede that it would be improper to ask John Devaney, former Managing Partner of Perkins Coie, his view on the accuracy of the statements he made to the media on behalf of Perkins Coie.  SCO Opp. at 34.  That is why, it seems, the Special Counsel made a point of saying he "does not plan to elicit the 'opinion' of the then-Managing Partner of [Perkins Coie] as to whether he *currently* 'thinks' the press statements were false or misleading."  *Id.*  On the other hand, the Special Counsel suggests that he *will* elicit testimony from Mr. Devaney about whether he "knew any of the media statements to be false *at the time* based on what he knew from his role in managing the firm."  *Id.*  It is entirely unclear what the Special Counsel means.  Mr. Sussmann is concerned that the Special Counsel intends to ask Mr. Devaney a series of hypotheticals, as suggested by the Special Counsel's interviews included within Mr. Devaney's Jencks Act materials.  *See, e.g.*, Mem. of Special Couns.'s Interview of J. Devaney at SCO-3500U-012388 (July 21, 2021) (In response to a hypothetical question from the Special Counsel, Mr. Devaney

"concurred that the statement . . . from the Perkins . . . spokesperson is inaccurate *if it is assumed* that the firm's billing records . . . are accurate." (emphasis added)).

Mr. Sussmann does not object to questions calling for non-privileged answers from Mr. Devaney regarding how the statements were drafted, what Mr. Devaney knew at the time the statements were drafted, and what Mr. Sussmann said or did to contribute to the drafting of the statements.  But it is wholly improper for the Special Counsel to ask Mr. Devaney a series of hypothetical questions designed to elicit testimony that Mr. Devaney would have regarded the statements as false *at the time* had he known additional or other facts.  That is precisely the kind of testimony the law forbids, and the Special Counsel should be precluded from eliciting it.

## CONCLUSION

For all the foregoing reasons, Mr. Sussmann requests that this Court grant his motions *in limine* in full.

Dated: April 22, 2022                   Respectfully submitted,

                                        */s/ Sean M. Berkowitz*
                                        Sean M. Berkowitz (*pro hac vice*)
                                        LATHAM & WATKINS LLP
                                        330 North Wabash Avenue
                                        Suite 2800
                                        Chicago, IL 60611
                                        Tel: (312) 876-7700
                                        Fax: (312) 993-9767
                                        Email: sean.berkowitz@lw.com

                                        Michael Bosworth (*pro hac vice*)
                                        LATHAM & WATKINS LLP
                                        1271 Avenue of the Americas
                                        New York, NY 10020
                                        Tel: (212) 906-1200
                                        Fax: (212) 751-4864
                                        Email: michael.bosworth@lw.com

                                        Natalie Hardwick Rao (D.C. Bar # 1009542)
                                        Catherine J. Yao (D.C. Bar # 1049138)
                                        LATHAM & WATKINS LLP
                                        555 Eleventh Street, NW
                                        Suite 1000
                                        Washington, DC 20004
                                        Tel: (202) 637-2200
                                        Fax: (202) 637-2201
                                        Email: natalie.rao@lw.com
                                        Email: catherine.yao@lw.com