UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**MICHAEL A. SUSSMANN,**<br><br>Defendant. | Case No. 1:21-cr-00582 (CRC) |

# ORDER

Defendant Michael Sussmann is charged with a single count of making a materially false statement to an FBI official, in violation of 18 U.S.C. § 1001. Indictment ¶ 46. The charge arises out of a September 2016 meeting between Mr. Sussmann and the FBI's then-General Counsel, James A. Baker, during which Sussmann provided Mr. Baker with three "white papers" and associated data files that he said would substantiate a reported link between a Russia's Alfa Bank and Donald Trump's presidential campaign. Id. ¶¶ 2–3. The false statement charged in the Indictment does not relate to the substance of the shared material, but rather to Sussman's alleged erroneous statement that he was not attending the meeting on behalf of a client. Id. ¶ 30.

Trial is set to begin next month. The parties have filed a bevy of pre-trial evidentiary motions. At Mr. Sussmann's request, the Court heard expedited argument on two issues that bear on the preparation of his defense: (1) Sussmann's motion *in limine* to preclude evidence regarding the gathering or accuracy of the data provided to the FBI, see ECF No. 60 ("Data Mot."); and (2) Sussmann's motion to exclude the government's proposed expert witness testimony, see ECF No. 66 ("Expert Mot."). As explained below, the Court will grant in part and deny in part each motion. The Court also reserves certain issues for further evaluation after this week's hearing on the remainder of the evidentiary motions.

A. <u>Motion in Limine on Data</u>

The Court begins with Mr. Sussman's motion to preclude the introduction of evidence about how the data he provided to the FBI was gathered, the accuracy of that data, and purportedly related information in the dossier put together by former British intelligence officer Christopher Steele. The Court will reserve judgment on much of this motion, as many of these issues are linked closely with the subjects of other motions *in limine* that have yet to be argued. However, whether and to what extent the Court will allow in evidence about the data's accuracy bears directly on Sussmann's request to exclude the government's proposed expert testimony. With respect to those issues, the Court will grant the motion in part and deny it in part, although it again reserves judgment on certain issues.

The Court begins with the parties' concessions, which narrow the field of play significantly. In its opposition brief, the government explains that, should Sussmann "concede or decline to dispute the fact that no secret channel of communications *actually existed*" between the relevant computer server, the Trump Campaign, and Alfa Bank, it would not seek to offer proof concerning the ultimate accuracy and reliability of the data. Gov's Opp'n to Def.'s Mots. *In Limine* at 20, ECF No. 70. At the hearing, defense counsel stated that he will not seek to affirmatively prove the existence of a link between Alfa Bank and the Trump Campaign. <u>See</u> Mot. Hr'g Tr. at 4: 6–8. With that representation, the Court will hold the government to its word, and will not allow it to put on extensive evidence about the accuracy of the data Mr. Sussmann provided to the FBI unless Mr. Sussmann does so first.

That does not end the inquiry, however, as the parties disagree about (1) what remains of the government's data-related evidence; and (2) what Mr. Sussmann could do at trial to put the data's accuracy at issue.

Starting with the first question, the Court will permit the government to put on evidence reflecting the FBI's ultimate conclusions—which the Court understands to be that the Alfa Bank allegations were unsubstantiated—as well as the "particular investigative and analytical steps" the FBI took to reach them. Gov's Opp'n to Def.'s Mots. *In Limine* at 20. Such evidence is relevant to the government's theory of materiality: that Mr. Sussmann's alleged statement that he was not representing a client caused the FBI to handle the subsequent investigation differently than it otherwise would have. See Indictment ¶ 32. How that investigation ultimately proceeded and the conclusions it reached are relevant to that inquiry.

Some of the evidence the government discussed at the recent hearing does not fall into those permissible categories. In particular, the Court will not allow representatives of the companies who maintained the servers that purportedly received communications from Alfa Bank servers to testify about their involvement in the FBI's investigation. Contrary to the government's assertions, see Mot. Hr'g Tr. at 7:23–8:15, this evidence does not appear to be probative of why the FBI took the investigative steps it did, and is at a minimum unnecessarily duplicative of other, more direct evidence of the same. See Fed. R. Evid. 403; United States v. Pole, 741 F.3d 120, 125–26 (D.C. Cir. 2013) (deferring to district court's exclusion of duplicative evidence where "limited probative value . . . was substantially outweighed by the distraction that might have resulted"). For the same reasons, the Court will not allow extensive discussion of another federal agency's investigation into the same data Mr. Sussmann provided, except to the extent that agency's findings and analysis had direct bearing on the course of the FBI's investigation.

Finally, the Court takes a moment to explain what *could* open the door to further evidence about the accuracy of the data Mr. Sussmann provided to the FBI. As the defense

3

concedes, such evidence might be relevant if the government could separately establish "what Mr. Sussmann knew" about the data's accuracy. Data Mot. at 3. If Sussmann knew the data was suspect, evidence about faults in the data could possibly speak to "his state of mind" at the time of his meeting with Mr. Baker, id., including his motive to conceal the origins of the data. By contrast, Sussmann would not open the door to further evidence about the accuracy of the data simply by seeking to establish that he reasonably believed the data were accurate and relied on his associates' representations that they were. Such a defense theory could allow the government to introduce evidence tending to show that his belief was not reasonable—for instance, facially obvious shortcomings in the data, or information received by Sussmann indicating relevant deficiencies. But it would not open the door to a lengthy and complex exploration of the underlying data.

Beyond these broad guidelines, the Court will reserve any other judgment about the issues raised in Sussmann's motion regarding discussions of data.

B. Motion to Exclude Expert Testimony

With this background in mind, the Court can more easily resolve Mr. Sussmann's request to exclude testimony from the government's proposed expert, FBI Special Agent David Martin. "The district court has a gatekeeping responsibility to ensure that any expert testimony is based on 'scientific knowledge' that 'will assist the trier of fact to understand or determine a fact in issue.'" United States v. McGill, 815 F.3d 846, 903 (D.C. Cir. 2016) (quoting Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 592 (1993)); see also Fed. R. Evid. 702. The Court will

largely deny the motion and allow Special Agent Martin's proposed testimony, subject to some limitations consistent with the analysis above.[1]

Assuming Special Agent Martin is qualified as an expert, the Court will allow him to testify about three general topics: first, and most significantly, background information necessary to understand the relevant data, including the "basic mechanics, architecture, and terminology" of the kind of computer systems at issue; second, the type of conclusions that can be drawn from analyzing the kind of data Sussmann shared with the FBI; and third, the methods investigators would use to validate or further examine that data. All six proposed testimony topics listed in the government's opposition brief appear to fall within those parameters. See Gov's Expert Opp'n at 3–4, ECF No. 69. These topics are generally relevant to the theory of materiality the government plans to pursue in its case in chief, and expert testimony on those subjects will aid the jury in understanding the technical aspects of the case. The Court will reserve ruling on any objections to specific testimony until trial.

The government suggests that Special Agent Martin's testimony may go further, depending on what theories Sussmann pursues in cross-examination or his defense case. Consistent with its findings above, the Court will allow the government's expert to testify about the accuracy (or lack thereof) of the specific data provided to the FBI here only in certain limited

---

[1] Mr. Sussmann also urges the Court to exclude the expert testimony on the ground that the government's notice was untimely and insufficiently specific. See Expert Mot. at 6–10; Fed. R. Crim. P. 16(a)(1)(G). Because the Court will limit Special Agent Martin's testimony largely to general explanations of the type of technical data that has always been part of the core of this case—much of which Mr. Sussmann does not object to—any allegedly insufficient or belated notice did not prejudice him. See United States v. Mohammed, No. 06-cr-357, 2008 WL 5552330, at *3 (D.D.C. May 6, 2008) (finding that disclosure nine days before trial did not prejudice defendant in part because its subject was "hardly a surprise") (citing United States v. Martinez, 476 F.3d 961, 967 (D.C. Cir. 2007)).

circumstances. In particular, if Sussmann seeks to establish at trial that the data were accurate, and that there was in fact a communications channel between Alfa Bank and the Trump Campaign, expert testimony explaining why this could not be the case will become relevant. But, as the Court noted above, additional testimony about the accuracy of the data—expert or otherwise—will not be admissible just because Mr. Sussmann presents evidence that he "relied on Tech Executive-1's conclusions" about the data, or "lacked a motive to conceal information about his clients." Gov's Expert Opp'n at 11. As the Court has already explained, complex, technical explanations about the data are only marginally probative of those defense theories. The Court will not risk confusing the jury and wasting time on a largely irrelevant or tangential issue. See United States v. Libby, 467 F. Supp. 2d 1, 15 (D.D.C. 2006) (excluding evidence under Rule 403 where "any possible minimal probative value that would be derived . . . is far outweighed by the waste of time and diversion of the jury's attention away from the actual issues").

* * *

For the foregoing reasons, it is hereby

**ORDERED** that [60] Defendant's Motion *in Limine* To Preclude Evidence Regarding the Gathering of Data, the Accuracy of Data or its Analysis, or the Steele Dossier is GRANTED in part and DENIED in part. It is further

**ORDERED** that [66] Defendant's Motion to Exclude the Government's Proposed Witness Testimony is GRANTED in part and DENIED in part.

**SO ORDERED**.

DATE: <u>April 25, 2022</u>

                                                                            CHRISTOPHER R. COOPER
                                                                            United States District Judge