**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **Case No. 1:21-cr-00582 (CRC)** |
| *v.* | |
| **MICHAEL A. SUSSMANN,** | |
| *Defendant.* | |
| **TECH EXECUTIVE-1,** | |
| *Proposed Intervenor.* | |

**NON-PARTY TECH EXECUTIVE-1'S RESPONSE**
**IN OPPOSITION TO THE GOVERNMENT'S MOTION TO COMPEL**

Non-party Tech Executive-1, by and through his undersigned counsel, hereby submits this opposition to the *Government's Motion to Compel the Production of Purported Privileged Communications Withheld by Non-Party Entities for In Camera Inspection by the Court.* (Dkt. 64, or the "Motion").[1]

The Motion does not contest that Tech Executive-1 had an attorney-client relationship with Mr. Sussmann, the defendant. *See, e.g.*, Motion at ¶ 27. Although reaching "no final conclusions" itself (Motion at ¶ 1), the Special Counsel's Office ("SCO") seeks to have this Court review certain communications *in camera* to determine whether the privilege applies. A small set of these communications involve Tech Executive-1. Specifically, there are four e-mails (and attachments) between Tech Executive-1 and an employee of U.S. Investigative Firm—two

---

[1] Tech Executive-1 uses the pseudonym that the Government uses to refer to him in the Motion.

of which also copied Tech Executive-1's attorney, Mr. Sussmann.  *See* Motion at ¶¶ 31-32 & Ex. A, Entries 31-38.

Despite the SCO's conclusory assertions to the contrary, Tech Executive-1 submits this opposition to explain precisely why the documents at issue are privileged because they fall squarely within the "intermediary" exception, which holds that the attorney-client privilege "undeniably extends to communications with one employed to assist the lawyer in the rendition of professional legal services." *Linde Thomson v. Resolution Tr. Corp.*, 5 F.3d 1508, 1514 (D.C. Cir. 1993) (quotation marks omitted).[2]

The SCO's arguments that the privilege is inapplicable fail.  Although it properly sets forth the governing standard (Motion at ¶ 9), the SCO utterly fails to faithfully apply it.  Instead, it relies on its own unsupported *ipse dixit* that the communications were "in furtherance of collaborating and promoting the Russian Bank-1 allegations, not facilitating legal advice" and "related to political opposition research."  Motion at ¶ 35.  In reality, the U.S. Investigative Firm, including the employee with whom Tech Executive-1 communicated, was contacted for the purpose of providing critical assistance (beyond the expertise of Mr. Sussmann) to facilitate the legal advice Tech Executive-1 sought from his attorney.

Most startlingly, the SCO's main argument (itself unsupported by legal authority) is that any privilege "was waived" by disclosure to a third party (U.S. Investigative Firm) because that third-party consultant was retained by the lawyer and law firm, not Tech Executive-1.  Motion at ¶¶ 1, 34, 36.  The SCO has it backwards.  As even the cases it relies upon in the Motion confirm, the presence of a third party "*whether hired by the lawyer or by the client*" to act as an

---

[2] Tech Executive-1 also adopts the procedural objections to the SCO's Motion made by Michael Sussmann in Sections A and B of his opposition to the SCO's Motion to Compel, and the work product argument made at pages 8-13 and 22 of the opposition filed by Fusion GPS.

intermediary does not destroy the privilege. *United States v. Kovel*, 296 F.2d 918, 922 (2d Cir. 1961) (emphasis added). What matters is whether "the communication was made for the purpose of securing either an opinion on law, legal services, or assistance in some legal proceeding." *Goldstein v. FDIC*, 494 B.R. 82, 90 (D.D.C. 2013). The facts and law here are clear that it was, so the Court should sustain Tech Executive-1's claim of privilege.

## ARGUMENT

### A.     The Communications Were For The Purpose of Assisting and Facilitating the Provision of Legal Advice by Mr. Sussmann to Tech Executive-1

It is well-established that the attorney-client privilege "extends to communications with one employed to assist the lawyer in the rendition of professional legal services." *Linde Thomson*, 5 F.3d at 1514; *see also Kovel*, 296 F.2d at 921 ("The assistance of these agents being indispensable to his work and the communications of the client being often necessarily committed to them by the attorney or by the client himself, the privilege must include all the persons who act as the attorney's agents." (citing 8 Wigmore, Evidence, § 2301; Annot., 53 A.L.R. 369 (1928)). As this Court and the D.C. Circuit have explained, this "intermediary" exception applies where the third-party consultant is "providing assistance in developing litigation and legal strategies" and the "fundamental question" in determining its application is whether "'the communication was made for the purpose of securing either an opinion on law, legal services, or assistance in some legal proceeding.'" *Goldstein*, 494 B.R. at 90 (quoting *United States v. Motorola*, 1999 WL 552553). By contrast, "[i]f what is sought is not legal advice but only [consulting] service … no privilege exists." *Kovel*, 296 F.2d at 922.

Here, the relevant facts establish that, notwithstanding the Government's conclusory assertions, the purpose of the four communications at issue was to obtain U.S. Investigative Firm's assistance in cybersecurity and technical matters to allow Mr. Sussmann to provide Tech

Executive-1 competent, informed legal advice.  First, Tech Executive-1 had a pre-existing attorney-client relationship with Mr. Sussmann.  Motion at ¶ 27.  As part of that relationship, Tech Executive-1 engaged Mr. Sussmann to assist him in a specific legal matter – namely, to advise him how to share sensitive information concerning an extremely litigious Presidential candidate with either investigative journalists or Government agencies without revealing his identity and exposing himself to potential liability, frivolous litigation, and/or threats of violence and/or harassment.  Mr. Sussmann, however, lacked the requisite investigative and technical expertise and resources to provide fully informed legal advice about the best course of action.  Under such circumstances, Tech Executive-1 believed that (1) Perkins Coie utilized the resources and services of U.S. Investigative Firm to assist the firm in gathering and analyzing information, including highly technical information, in order to advise clients, and (2) U.S. Investigative Firm's services would be useful in the formulation of the legal advice Tech Executive-1 had sought.  *See Kovel*, 296 F.2d at 922 (explaining the intermediary exception applies where the consultant's advice is "necessary, or at least highly useful, for the effective consultation between the client and the lawyer which the privilege is designed to permit").[3]

As the surrounding circumstances and the e-mails at issue suggest, Tech Executive-1 understood and expected that his communications with U.S. Investigative Firm were privileged and made pursuant to his attorney-client relationship with Mr. Sussmann.  *Goldstein*, 494 B.R. at 90 ("Also relevant is whether the client reasonably intended the attorney to keep the communication confidential."); *Collardey v. All. for Sustainable Energy, LLC*, 406 F. Supp. 3d 977, 981 (D. Colo. 2019).  ("The investigation documents further support a finding that the employees participated in the interviews with the understanding that their communications

---

[3] Notably, at the time of the events at issue in this matter, Tech Executive-1 had never heard of, or had a prior relationship with U.S. Investigative Firm and had never engaged or been engaged by them.

would be treated as confidential and used to facilitate the provision of legal advice to Alliance.").
Indeed, as the Government itself concedes, the communications themselves, on their face, show
that Tech Executive-1 considered them privileged, confidential, and part of his attorney-client
relationship to get legal advice from Mr. Sussmann.  *See* Motion at ¶¶ 31-32.  All four
communications are entitled "Privileged Client/Attorney Communication".  *See id*. & Ex. A.
And, Tech Executive-1 copied Mr. Sussmann on the two communications he sent.  *See id*.[4]

Although never explaining its legal significance (if any), the SCO cites one time entry on
September 1, 2016 that Mr. Sussmann billed to HFA for "confidential meetings regarding
confidential project."  Motion at ¶ 33.  The SCO, however, does not claim, nor could it, that
Tech-Executive-1 knew that Mr. Sussmann had billed time on September 1 to HFA, nor does the
SCO demonstrate how that time entry vitiates Tech Executive-1's valid assertions of privilege.
To the extent the SCO wishes to suggest that Mr. Sussmann did not provide legal services, it has
no support for that claim, and the evidence plainly established the existence of an attorney-client
relationship between Tech Executive-1 and Mr. Sussmann during the time of these
communications.[5]  Further, as a legal matter, the SCO has no support for the notion that the
billing of time to another client, or the fact that an investigative firm was providing similar
services in support of that other client, undercuts Tech Executive-1's claim that the
communications at issue were for the purpose of facilitating the legal advice he had sought from

---

[4] The Government's assertion that the "vast majority of entries" are communications "with no lawyers listed as a
sender, recipient, or copied party" (Motion at ¶ 4) is accordingly untrue as to Tech Executive-1.  Moreover, it is
irrelevant.  That Mr. Sussmann was not copied on two e-mails authored by the employee of U.S. Investigative Firm
does not alter the analysis because the purpose of the communications still were to assist Tech Executive-1 in
obtaining legal advice.

[5] For example, the SCO well knows Tech Executive-1 ultimately received invoices for services that Mr. Sussmann
provided during this time.

Mr. Sussmann.[6]  Nor could the SCO attempt to claim waiver by Mr. Sussmann over the privilege because the privilege is held by Tech Executive-1, not the attorney.  *See Nat'l Sec. Couns.*, 969 F.3d at 411-12.

For these reasons, these communications fit squarely within the "intermediary" exception and the SCO's misguided conclusory assertions to the contrary should hold no weight when considered against the actual facts.

### B. The SCO's Suggestion that the Privilege Cannot Apply Because the U.S. Investigative Firm Was Retained By A Lawyer and Not Tech Executive-1 Misunderstands *Kovel* and Its Progeny

The Motion relies on the unsupported proposition that because "Tech Executive-1 was not retained by, and did not himself retain" U.S. Investigative Firm, his communications with them are not covered by the intermediary exception as a matter of law, without regard to the content or purpose of the communications.  Motion at ¶ 34; *see also* Motion at ¶ 1, 35.  This disregards the "fundamental question" this Court asks, which notably turns on the purpose of the communication, not the identity of the retaining party.  *See Goldstein*, 494 B.R. at 90

*Kovel*, on which the Motion heavily relies, itself rejects the SCO's assertion twice.  It explained that by creating a dividing line between advice of the accountant versus advice of a lawyer, it was drawing a "rather arbitrary line between a case where the client communicates first to his own accountant (no privilege as to such communications, even though he later consults his lawyer on the same matter) … and others, where the client in the first instance consults a ***lawyer who retains an accountant*** as a listening post."  *Kovel*, 292 F.2d at 922 (emphasis added).  In other words, *Kovel* itself recognized that the fact that the intermediary was

---

[6] Based on the Elias Declaration, it also appears that the interests of Tech Executive-1, who was being advised by Mr. Sussmann, a partner of Mr. Elias, were aligned with those of other Perkins Coie clients who were concerned about being subjected to potential liability and frivolous litigation, including claims emanating from then-candidate Trump.

retained by the lawyer (and not the client) was indicative that the purpose of the retention and services was for legal advice and would be privileged. *See id.* Dispelling any doubt, it then said that "***whether hired by the lawyer or the client***, while the client is relating a complicated tax story to the lawyer, ought not destroy the privilege." *Id.* (emphasis added).

While the SCO ignores *Kovel*'s clear teaching, other Courts— including the D.C. Circuit—have not. *Linde Thomson* and *Singhal*, upon which the SCO also relies, explain that the privilege extends to "communications with *one employed to assist the lawyer*." *Linde Thomson*, 5 F.3d at 1514; *United States v. Singhal*, 842 F. Supp. 2d 1, 5 (D.D.C. 2011) (quoting same). And, the Southern District of New York has explained that "a client's confidential communications to a non-testifying expert retained by the lawyer to assist the lawyer in preparing the client's case—essentially the situation in *Kovel*—probably are privileged." *In re Grand Jury Subpoenas Dated Mar. 24, 2003 Directed to (A) Grand Jury Witness Firm & (B) Grand Jury Witness*, 265 F. Supp. 2d 321, 326 (S.D.N.Y. 2003). Put simply, the SCO has no support for its claim that the fact that Law Firm 1 (rather than Tech Executive-1) retained U.S. Investigative Firm, somehow means that U.S. Investigative Firm cannot serve as an intermediary to facilitate the legal advice Mr. Sussmann and Law Firm 1 were providing Tech Executive-1. Indeed, if anything, this fact weighs in favor of Tech Executive-1's claim of privilege because it further supports that the need for the legal advice was legal and not some other reason. *See In re Grand Jury Subpoena Dated Mar. 20, 2013*, No. 13-MC-189, 2014 WL 2998527, at *9 (S.D.N.Y. July 2, 2014) ("But no matter how necessary a private investigator's services might be, communications between an investigator and a client outside the presence of an attorney can *only be privileged if the attorney-not the client-retained the investigator*.").

### C.    Tech Executive-1 Has Not Waived the Privilege

The SCO's argument that Tech Executive-1 waived his privilege over these communications (Motion at ¶ 35) fails for the simple reason that, as discussed above, communicating with an employee of U.S. Investigative Firm fits squarely within the intermediary exception and does not constitute a waiver.  And, because Tech Executive-1 did not disclose these privileged communications to other parties (particularly the DNC and HFA), there is no reason for the Court to reach the Government's common interest argument (Motion at ¶ 36).

<h3 style="text-align:center"><u>CONCLUSION</u></h3>

For the foregoing reasons, Tech Executive-1 requests that this Court deny the SCO's Motion to Compel and refuse to require the production of the privileged communications between Tech Executive-1, his lawyer Mr. Sussmann, and the employee of U.S. Investigative Firm.

Dated: April 18, 2022                              Respectfully submitted,


*/s/ Steven A. Tyrrell*
Steven A. Tyrrell (D.C. Bar No. 998795)
Eileen Hren Citron (Bar No. 995117)
WEIL, GOTSHAL & MANGES, LLP
2001 M Street, N.W., Suite 600
Washington, D.C. 20036
Tel: (202) 682-7000
Fax: (202) 857-0940
steven.tyrrell@weil.com
eileen.citron@weil.com

*Counsel for Tech Executive-1*

8

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 18, 2022, I caused the foregoing to be filed and served via electronic mail upon all counsel of record:

Michael Bosworth
Latham & Watkins LLP
1271 Avenue of the Americas
New York, NY 10020
michael.bosworth@lw.com

Sean M. Berkowitz
Latham & Watkins LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
sean.berkowitz@lw.com

Catherine Yao
Natalie Hardwick Rao
Latham & Watkins LLP
555 11th Street, NW, Suite 1000
Washington, DC 20004
catherine.yao@lw.com
natalie.rao@lw.com

Andrew DeFilippis
Special Counsel's Office
145 N Street, NE
Washington, DC 20002
andrew.defilippis@usdoj.gov

Michael T. Keilty
Jonathan Edgar Algor, IV
DOJ-USAO
145 N Street, NE, Suite 3E 803
Washington, DC 20530
michael.keilty@usdoj.gov
jonathan.algor@usdoj.gov

Deborah Brittain Shaw
U.S. Department of Justice
Fraud Section, Securities & Financial Fraud
1400 New York Avenue, NW
Washington, DC 20005
brittain.shaw@usdoj.gov

*/s/ Steven A. Tyrrell*
Steven A. Tyrrell