IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>MICHAEL A. SUSSMANN,<br><br>    Defendant. | Criminal Case No. 21-582 (CRC) |

### DECLARATION OF JOSHUA A. LEVY

I, Joshua A. Levy, declare under penalty of perjury as follows:

1. I am a partner with the law firm of Levy Firestone Muse LLP, 900 17th Street NW, Suite 1200, Washington, DC, 20006, attorney for Bean LLC d/b/a Fusion GPS and a member in good standing of the bar of the District of Columbia.

2. I submit this declaration in support of Fusion GPS's Response in Opposition to the Government's Motion to Compel (Dkt. No. 64). I am familiar with all of the facts and circumstances set forth herein.

3. Attached as Exhibit 1 is a true and correct copy of Marc Elias's testimony before the House Permanent Select Committee on Intelligence on December 13, 2017.

4. Attached as Exhibit 2 is a true and correct copy of the news article Mike McIntire, *Donald Trump Settled a Real Estate Lawsuit, and a Criminal Case Was Closed*, N. Y. TIMES (Apr. 5, 2016), available at: https://www.nytimes.com/2016/04/06/us/politics/donald-trump-soho-settlement.html.

5. Attached as Exhibit 3 is a true and correct copy of the news article Peter Goodman, *Trump Suit Claiming Defamation Is Dismissed*, N.Y. TIMES (July 15, 2009), available at: https://www.nytimes.com/2009/07/16/business/media/16trump.html.

6. Attached as Exhibit 4 is a true and correct copy of the news article Alan Rappeport, *Donald Trump Threatens to Sue Club for Growth Over Ad Campaign*, N.Y. Times (Sep. 22, 2015), available at: https://www.nytimes.com/politics/first-draft/2015/09/22/donald-trump-threatens-to-sue-club-for-growth-over-ad-campaign/.

7. Attached as Exhibit 5 is a true and correct copy of the news article Kimberly Pierceall, *Trump lawsuit aims to set record straight on where he slept in Las Vegas*, Las Vegas Sun (Oct. 29, 2015), available at: https://lasvegassun.com/news/2015/oct/29/trump-lawsuit-aims-to-set-record-straight-on-where/.

8. Attached as Exhibit 6 is a true and correct copy of the news article Marc Caputo, *Trump threatens top Bush donor with defamation suit over 'hater' ads*, Politico (Dec. 7, 2015), available at: https://www.politico.com/story/2015/12/trump-threatens-mike-fernandez-defamation-216496.

9. Attached as Exhibit 7 is a true and correct copy of the news article Nick Penzenstadler and Susan Page, *Exclusive: Trump's 3,500 lawsuits unprecedented for a presidential nominee*, USA Today (Jun. 1, 2016), available at: https://www.usatoday.com/story/news/politics/elections/2016/06/01/donald-trump-lawsuits-legal-battles/84995854/.

10. Attached as Exhibit 8 is a true and correct copy of the news article Ashley Parker and David E. Sanger, *Donald Trump Calls on Russia to Find Hillary Clinton's Missing Emails*, N.Y. Times (July 27, 2016), available at: https://www.nytimes.com/2016/07/28/us/politics/donald-trump-russia-clinton-emails.html.

11. Attached as Exhibit 9 is a true and correct copy of Glenn Simpson's testimony before the House Permanent Select Committee on Intelligence on Nov. 14, 2017.

12. Attached as Exhibit 10 is a true and correct copy of an excerpt from Glenn Simpson and Peter Fritsch's book Crime in Progress explaining that the book does not address their work or communication with Perkins Coie, because those communications remain confidential.

13. On March 15, 2021, Andrew DeFilippis of the Special Counsel's Office ("SCO") sent an email to me stating that he understands I represent Fusion GPS and asked for a phone call. This communication was the first that Fusion GPS or its counsel had received from the Special Counsel's office. On March 16, 2021, co-counsel for Fusion GPS and I participated in a phone call with Mr. DeFilippis and other SCO attorneys and investigators, including Special Counsel John Durham. On that call, Mr. DeFilippis indicated an interest in seeking documents and testimony from Fusion GPS related to the Alfa server communications. I explained that Fusion GPS would like to cooperate with the investigation, while protecting any implicated privileges that privilege holders had been claiming over Fusion GPS' work in parallel proceedings dating back to the spring of 2017. The SCO attorneys, including Mr. Durham, raised a number of questions about the legitimacy of the privileges claimed, and counsel for Fusion GPS suggested that a conversation about these privileges in the abstract was impractical and reiterated the company's intention to cooperate with the investigation.

14. On March 22, 2021, the SCO served a grand jury subpoena on Fusion GPS for documents related to the Alfa server communications, and I accepted service of the subpoena on behalf of Fusion GPS.

15. On April 22, 2021, Fusion GPS produced documents in response to the subpoena. On April 22, 2021, August 26, 2021 and January 10, 2022, Fusion GPS, at the direction of counsel for the privilege holders, produced privilege logs in response to the same subpoena.

16.   On July 9, 2021, the SCO served a second grand jury subpoena for documents on Fusion GPS. This subpoena sought a broad spectrum of documents related to Fusion GPS's research conducted during the 2016 US election and its communications in 2016 and 2017 related to that research. On August 26, 2021, October 1, 2021, November 3, 2021, December 14, 2021 and March 11, 2022, Fusion GPS produced documents in response to this subpoena. Also on March 11, 2022, Fusion GPS produced a privilege log in response to this subpoena.

17.   The privilege claims asserted in the privilege logs were made at the direction of the privilege holders on whose behalf Perkins engaged and tasked Fusion GPS.

18.   Perkins represented the Democratic National Committee ("DNC") and the Hillary for America Campaign Committee, Inc. ("HFACC") in connection with the 2016 presidential election.

19.   For attorneys representing political entities, like Perkins, research firms such as Fusion can assist lawyers in assessing both their own clients' vulnerabilities and those of their clients' political opponents. Lawyers often require these services to properly serve their clients — including in the context of current or anticipated legal proceedings. For example, attorneys in this space often rely on research findings from sub-vendors when performing legal review of public communications to confirm that there is an adequate factual basis for any claims or allegations, so their client does not run the risk of civil litigation.

20.   That is why Perkins retained Fusion GPS in 2016. To assist Perkins in its legal representation of its clients—and explicitly anticipating potential litigation against HFACC and DNC, including related to defamation, libel and similar laws in which accuracy is an essential legal element, based on public statements they might make regarding then-candidate Trump. Perkins formally engaged Fusion GPS through a written engagement letter on April 11, 2016 to provide

investigative expertise. Fusion GPS's services in support of Perkins' provision of legal advice to its clients, including for potential and ongoing litigation, included review and analysis of publicly available records and compiling and assessing information gathered by its subcontractors.

21. On June 18, 2021, at the direction of the privilege holders, Fusion GPS produced a redacted version of its engagement letter with Perkins. It is attached as Exhibit C to the Government's Motion to Compel. The letter clearly states that Fusion GPS was contracted by Perkins to: "a) Provide public record information and strategy to aid PC in the provision of legal services, including potential and actual litigation, to Specific Clients; [and] b) Perform such other services that PC may, from time to time, request in support of legal services provided to Specific Clients."

22. Fusion GPS's expertise included extensive knowledge regarding, among other things, Russia, the Kremlin, foreign interference in United States elections, Russian organized crime, Russian oligarchs and their relationships with Putin and the Kremlin, Russian lobbying and public relations activities in the United States. These issues, as related to then-candidate Trump, were central to Fusion's work.

23. As envisioned in the Perkins-Fusion GPS engagement letter, Fusion GPS utilized its knowledge and expertise with respect to both Russia and then-candidate Trump, as well its open source research and experience analyzing research material, including technically complex data, to assist Perkins in providing legal advice, in anticipation of litigation, to the DNC and HFACC during the 2016 election cycle.

24. Perkins's anticipation of election-related litigation was subjectively held and objectively reasonable. By the time that Perkins had retained Fusion GPS, it was clear that (1) Donald Trump would be the Republican Presidential nominee; (2) his complex business and

litigation history was and would be the subject of intense media scrutiny; (3) Perkins' clients, HFACC and the DNC, would need to be prepared to respond to such issues as they emerged in the campaign; and (4) litigation risk from such statements was real, particularly given Donald Trump's history of defamation lawsuits against critics. *See, e.g.*, Ex. 7, Nick Penzenstadler and Susan Page, *Exclusive: Trump's 3,500 lawsuits unprecedented for a presidential nominee*, USA Today (Jun. 1, 2016), available at: https://www.usatoday.com/story/news/politics/elections/2016/06/01/donald-trump-lawsuits-legal-battles/84995854/ (reporting at least 3,430 lawsuits involving Trump were publicly filed prior to 2015; at least 70 had been filed after Trump announced his candidacy for President).

25.     When the House Permanent Select Committee on Intelligence of the U.S. House of Representatives asked lead Perkins attorney Marc Elias to explain the services Fusion GPS provided to Perkins in 2016, Elias testified under oath that:

> I was providing legal services for the [Hillary for America] campaign. For me to provide those services I needed expertise and access to information, public record. … I believe Donald Trump has been involved in 7,000 lawsuits. … I don't think I've ever been involved with a client of any kind in the political arena where you're talking about that volume of litigation. . . . So in order for me to be able to adequately understand that scope and be able to digest that and help make legal judgments that would be relevant to my client, I thought it would be helpful to have a consultant. . . .[Fusion GPS] seemed to have a general understanding of the breadth of his business holdings, his financial holdings, and the kinds of litigation he had been involved in. … And that was valuable when I was evaluating hiring them or hiring someone else, because Mr. Trump was not a typical candidate. If Mr. Trump had been in Congress for 20 years and had been on the Appropriations Committee, maybe I would have hired a former Appropriations Committee person who could explain to me how the appropriations process used to work when there were earmarks, something I wouldn't otherwise be familiar with, but which might be useful.  . . . Each client presents and needs a different set of legal skills and a different set of consultants to help me provide those legal skills.

Ex. 1, Executive Session, House of Representatives Permanent Select Committee on Intelligence, 115th Congress (2017) (Testimony of Marc Elias at 21-22).

26. Throughout the course of Fusion GPS's work for Perkins, Perkins was in regular contact with Fusion, including standing calls for updates on Fusion's investigative work on behalf of Perkins, in furtherance of Perkins's representation of HFACC and DNC.

27. HFACC and DNC, through Perkins, have continued to assert protection over privileged materials even after the engagement of Fusion ended prior to the November 8, 2016 Presidential election.

28. Accordingly, the documents withheld by Fusion GPS would reveal privileged and confidential research and analysis that Fusion performed at the overall direction and on behalf of Perkins related to, among other things, purported DNS communications between Alfa Bank and the Trump Organization, and confidential communications regarding the same. Fusion conducted that analysis and communication for the purpose and in furtherance of Perkins's provision of legal advice to its clients concerning, among other things, litigation risks facing those clients and/or other individuals and entities during the 2016 election cycle.

29. In 2019, Glenn Simpson and Peter Fritsch, two of Fusion GPS's owners, published a book called *Crime in Progress*. Prior to publishing the book, the privilege holders did not authorize Mr. Simpson, Mr. Fritsch, or Fusion GPS to waive privilege or disclose privileged material in that book or anywhere else. Mr. Simpson and Mr. Fritsch were careful not to disclose privileged material and stated, in the book: "The nature of our engagement with the law firm Perkins Coie prevents us from recounting our communications after we were retained. We described one meeting with Marc Elias that occurred before we were hired. Perkins has not released us from our obligations to keep our communications confidential, nor have other clients." Ex. 10, GLENN SIMPSON AND PETER FRITSCH, CRIME IN PROGRESS, 284 (2019).

30. During the course of 2021, the SCO e-mailed counsel for Fusion GPS with questions about the privileges asserted and held several phone calls with counsel for Fusion GPS regarding the same. In the summer of 2021, counsel for Fusion GPS ultimately referred the SCO to counsel for the privilege holders, who did not authorize Fusion GPS to waive privilege.

31. At no time has any privilege holder authorized Fusion GPS or anyone at Fusion GPS to waive privilege. Fusion GPS and its officers and employees have asserted and maintained these privilege claims since 2016 in parallel proceedings, and no court has overturned those privileges.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and abilities.

Executed on: April 18, 2022              /s/ Joshua A. Levy
                                         Joshua A. Levy