IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>v.<br><br>**MICHAEL A. SUSSMANN,**<br><br>*Defendant*. | Case No. 1:21-cr-00582 |

**DEFENDANT'S RESPONSE TO SPECIAL COUNSEL'S
OBJECTIONS TO PROPOSED TRIAL EXHIBITS**

Defendant Michael A. Sussmann, by and through his counsel, hereby provides the following response to the Special Counsel's Objections to the Defendant's Proposed Trial Exhibits (hereinafter, "Special Counsel's Objections"), ECF No. 119, and specifically the Special Counsel's request therein that the defense proffer a basis for admissibility for notes taken by Department of Justice ("DOJ") personnel at a March 6, 2017 briefing for the then-Acting Attorney General by the Federal Bureau of Investigation ("FBI") ("March 2017 Notes").[1]

In late March 2022, the Special Counsel produced extraordinarily significant *Brady* material. *See Brady v. Maryland*, 373 U.S. 83 (1963). Specifically, the Special Counsel produced handwritten notes of several participants at a meeting held in March 2017, at which senior members of the FBI briefed DOJ's Acting Attorney General about various aspects of the FBI's

---

[1] The Special Counsel also requested that the defense "proffer a non-hearsay basis" for "multiple pages of handwritten notes taken by an FBI Headquarters Special Agent concerning his work on the investigation of the [Alfa Bank] allegations," marked as Defense Exhibits 353, 370, and 410. Special Couns.'s Objs. at 3-4. However, the defense notes that the Special Counsel included the same notes on his own exhibit list. *See* Special Couns.'s Ex. 279. In any event, the defense marked the notes for identification purposes. If or when it becomes necessary to offer the exhibits into evidence, the defense will raise the issue with the Court and provide appropriate reasoning at that time.

1

investigation into potential Russian influence in the 2016 presidential election ("Russia Investigations"). During that meeting—at which James Baker (FBI General Counsel), Bill Priestap (Assistant Director of FBI's Counterintelligence Division), and Trisha Anderson (FBI National Security & Cyber Law Branch Deputy General Counsel), among others, were present—Andrew McCabe (Deputy Director of FBI) described the FBI's investigation of the Alfa Bank allegations. Specifically, Mr. McCabe stated that the Alfa Bank allegations were provided to the FBI by an attorney *on behalf of his client*.[2]

This new information directly contradicts the Special Counsel's core allegation in this case: that Mr. Sussmann falsely told Mr. Baker that he was not meeting with Mr. Baker on behalf of any client. Indeed, the Special Counsel has focused on a short text message that Mr. Sussmann sent on Sunday, September 18, 2016 to Mr. Baker to set up a meeting for the following day. That text message from Mr. Sussmann represents just one moment in time. One day later, Mr. Sussmann had a thirty-minute meeting with Mr. Baker. Their meeting was not recorded; there are no notes of the meeting; Mr. Baker did not write a report regarding the meeting; and no one else was present for the meeting. Mr. Sussmann and Mr. Baker also had several phone conversations over the course of that week, including on Wednesday, September 21 and on Thursday, September 22. As was true of the September 19 meeting, Mr. Baker did not record those calls; he did not take notes of those calls; and he did not write a report regarding those calls.

---

[2] The defense has requested that the Special Counsel search for any additional records that may shed further light on the meeting and certain of those requests remain outstanding. To date, the Special Counsel has represented that the only additional notes from attendees at the meeting that he has identified do not reference whether or not Mr. Sussmann was acting on behalf of a client. The absence in those notes of any reference to whether Mr. Sussmann was acting on behalf of a client also raises questions regarding materiality of the charged conduct: if the *on behalf of* information were truly material to the FBI's investigation, presumably all note takers would have written it down.

And yet, at some point between September 18, 2016 and March 6, 2017, the FBI apparently came to believe that Mr. Sussmann *did* have a client in connection with his meeting with Mr. Baker, and that the Alfa allegations were provided "on behalf of his client." The FBI could not have come to that belief based on conversations they had with Mr. Sussmann after his phone calls with Mr. Baker the week of September 19, 2016, because the FBI chose not to interview Mr. Sussmann about the information he provided to Mr. Baker, and the FBI chose not to ask Mr. Sussmann about or interview the cyber experts whom Mr. Sussmann identified as the source of the information he shared with the FBI.

Therefore, it is highly significant that, as of March 2017, when the FBI was asked to provide DOJ leadership with a summary of the Alfa Bank investigation (which by that time had concluded), the FBI at the highest levels described the Alfa Bank allegations as having come from an "attorney . . . on behalf of his client," *see* **Ex. A**, Tashina Gauhar Notes, at SCO-074100, or from an attorney who had a client, but "d[id]/n[ot] say who [the] client was," *see* **Ex. B**, Mary McCord Notes, at SCO-074070. The significance of the March 2017 Notes is further underscored by the fact that Mr. Baker, Mr. Priestap, and Ms. Anderson, all of whom are on the Special Counsel's witness list, attended that March 2017 meeting. To the extent the Special Counsel argues, as the defense expects he will, that Mr. Baker's recollection of the meeting has been "refreshed" by Mr. Priestap's notes, it is obvious that the Special Counsel's failure to refresh Mr. Baker's recollection with the contradictory March 2017 Notes is relevant to Mr. Baker's credibility as well as the manner in which the Special Counsel has handled a critical witness.

The defense intends to adduce evidence of this meeting at trial, including the March 2017 Notes taken by those in attendance. In his objections to Mr. Sussmann's exhibits, the Special Counsel questions whether a non-hearsay basis exists to admit the March 2017 Notes at trial and

also questions why Mr. Sussmann did not file a motion *in limine* regarding the March 2017 Notes. This submission addresses those concerns.

## BACKGROUND

According to materials produced to the defense on March 18, 2022, a meeting was held at FBI Headquarters on March 6, 2017, a few months after Mr. Sussmann met with Mr. Baker. Notes taken at this meeting appear to reflect that it was precipitated by a request from the then-Acting Attorney General for a briefing on the FBI's various Russia Investigations. Attendees included high-ranking DOJ officials, such as Dana Boente (Acting Attorney General), Mary McCord (Acting Assistant Attorney General), Tashina Gauhar (Associate Deputy Attorney General ("DAG") responsible for the Office of DAG's national security portfolio), and Scott Schools (Associate DAG), among others. *See* **Ex. C**, Calendar Invitation for the March 6, 2017 "Briefing for the (A)DAG." Attendees from the FBI included Mr. McCabe, Mr. Baker, Ms. Anderson, and Mr. Priestap. *See* **Ex. D**, Scott Schools Notes, at SCO-074089.

At the briefing, as related to the Alfa Bank investigation, Mr. McCabe appears to have provided a general summary of the allegations that had been brought to the FBI. Most importantly, notes from other participants at the meeting indicate that Mr. McCabe explained that the allegations were brought to the FBI by an attorney "*on behalf of his client*," *see* **Ex. A**, Tashina Gauhar Notes, at SCO-074100 (emphasis added), but that the attorney "d[id]/n[ot] say *who [the] client was*," *see* **Ex. B**, Mary McCord Notes, at SCO-074070 (emphases added). There is no indication whatsoever from any participants' notes that Mr. Baker—or Mr. Priestep or Ms. Anderson—refuted or corrected Mr. McCabe's explanation. Such a statement—recorded by multiple participants, made in the presence of Mr. Baker, Mr. Priestep, and Ms. Anderson, and

4

regarding the FBI meeting that is the subject of the charge against Mr. Sussmann—is both admissible and material to the defense.

## ARGUMENT

Testimony from the March 6, 2017 meeting attendees, as well as the notes they took during that meeting, are highly relevant and exculpatory. As to the March 2017 Notes, there are three grounds on which they can be introduced at trial: first, as present sense impressions under Federal Rule of Evidence 803(1); second, as recorded recollections under Federal Rule of Evidence 803(5)—as the Special Counsel has previously argued with respect to the meeting notes he intends to offer, *see* Government's *Motions in Limine*, ECF No. 61 at 7-10—and third, as extrinsic impeachment evidence.

As a preliminary matter, we address the Special Counsel's suggestion that Mr. Sussmann should have filed a motion *in limine* regarding the March 2017 Notes. The Special Counsel neglects to mention that these handwritten notes were buried in nearly 22,000 pages of discovery that the Special Counsel produced approximately two weeks before motions *in limine* were due. Specifically, the Special Counsel produced the March 2017 Notes as part of a March 18, 2022 production. The Special Counsel included the March 2017 Notes in a sub-folder generically labeled "FBI declassified" and similarly labeled them only as "FBI/DOJ Declassified Documents" in his cover letter. *See* Letter from J. Durham to M. Bosworth and S. Berkowitz (Mar. 18, 2022). And although the Special Counsel indicated on a phone call of March 18, 2022 that some of the 22,000 pages were documents that made references to "client," he did not specifically identify the March 2017 Notes or otherwise call to attention to this powerful exculpatory material in the way that *Brady* and its progeny requires. *See United States v. Hsia*, 24 F. Supp. 2d 14, 29-30 (D.D.C. 1998) ("The government cannot meet its *Brady* obligations by providing [defendant] with access

to 600,000 documents and then claiming that she should have been able to find the exculpatory information in the haystack. To the extent that the government knows of any documents or statements that constitute *Brady* material, it must identify that material to [defendant]."); *United States v. Saffarinia*, 424 F. Supp. 3d 46, 86 (D.D.C. 2020) ("[T]he government's *Brady* obligations require it to identify any known *Brady* material to the extent that the government knows of any such material in its production of approximately 3.5 million pages of documents."). All this aside, the Special Counsel has also failed to explain why this powerful Brady material was produced years into their investigation, six months after Mr. Sussmann was indicted, and only weeks before trial.[3] Had the material been timely produced, Mr. Sussmann surely would have filed an appropriate motion *in limine* on the timeline for such motions.

That timing issue aside, the March 2017 Notes are clearly relevant, admissible, and indeed essential to Mr. Sussmann's case.

*First*, the defense anticipates that the note-takers' testimony will satisfy the requirements of Federal Rule of Evidence 803(1), which provides that "statement[s] describing or explaining an event or condition, made while or immediately after the declarant perceived it" are not excluded by the rule against hearsay. Here, although the note-takers do not have a strong recollection of the substance of the meeting apart from the information they recorded, the defense anticipates that they will testify to contemporaneously writing down what they observed and heard during the meeting and will testify as to the accuracy of their notes. With that foundation, the March 2017 Notes are thus admissible as present sense impressions. *See Cargill, Inc. v. Boag Cold Storage*

---

[3] In addition, the March 2017 Notes were produced *over one month after* the February 11, 2022 deadline for classified and declassified discovery, although they do not appear to fall within any of the categories of discovery for which the Special Counsel sought, and was granted, an extension to produce certain documents. *See* ECF No. 33, at 13-18.

*Warehouse, Inc.*, 71 F.3d 545, 555 (6th Cir. 1995) (finding notes admissible as present sense impressions where a witness testified that he took notes of events as they occurred and that there was "little 'likelihood of deliberate or conscious misrepresentation'" (citation omitted)); *Grayson v. Ressler & Ressler*, No. 15 Civ. 8740 (ER), 2018 WL 3611951, at *6 (S.D.N.Y. July 27, 2018) (noting that if a witness took contemporaneous notes, such statements could qualify under the present sense impression exception to the hearsay rule); *United States v. Ferber*, 966 F. Supp. 90, 97 (D. Mass. 1997) (notes describing statements of others were admissible under the present sense impression exception).

*Second*, the defense anticipates that the note-takers' testimony will also establish the necessary requirements for reading their notes into the record under Federal Rule of Evidence 803(5). Handwritten notes fall into the "recorded recollection" exception to the rule against hearsay if the notes (A) are on a matter the witness once knew about but now cannot recall well enough to testify fully and accurately; (B) were made or adopted by the witness when the matter was fresh in the witness's memory; and (C) accurately reflect the witness's knowledge. Fed. R. Evid. 803(5). The defense expects Mr. Schools, Ms. McCord, and Ms. Gauhar to testify that they do not, independently from their notes, remember many details about the March 6, 2017 meeting and thus cannot recall the meeting well enough to testify about it fully and accurately. The defense further expects the witnesses to testify that they took the notes during the meeting (*i.e.*, contemporaneously and while it was fresh in their memory) and that the March 2017 Notes accurately reflect their knowledge at the time. Assuming the defense is able to lay these foundations with these witnesses, their notes would be admissible as recorded recollections. *See, e.g.*, *Moon v. Kwon*, 248 F. Supp. 2d 201, 210 n.5 (S.D.N.Y. 2002) (contemporaneous handwritten notes summarizing work day admissible pursuant to Fed. R. Evid. 803(5)); *see also* Opinion &

Order at 19, ECF No. 121 (indicating that notes can be read into the record as past recollection recorded if the note-taker's testimony satisfies the requirements of Rule 803(5)).

Under either hearsay exception, and to the extent the March 2017 Notes reflect statements made by Mr. McCabe, the defense does not intend to introduce such statements for their truth (*i.e.*, that Mr. Sussmann in fact brought the Alfa Bank allegations to Mr. Baker on behalf of a client). Rather, the defense intends to offer the statements as evidence of the awareness and state of mind of the FBI, Mr. Baker, and other FBI personnel regarding the origins of the Alfa Bank allegations. Such evidence is plainly relevant to show Mr. Baker's state of mind, the FBI's understanding of the information provided, and the lack of materiality of the alleged false statement.

Because the statements in the March 2017 Notes are not being offered for the truth of the matters asserted therein, they are not hearsay. *See* Fed. R. Evid. 801(c)(2) (defining hearsay as an out-of-court statement offered "to prove the truth of the matter asserted in the statement"); *see also* Advisory Committee Notes to Rule 801(c) ("If the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay."); *Devany v. United Parcel Serv., Inc.*, No. 18 Civ. 6684 (PGG), 2021 WL 4481911, at *4 n.10 (S.D.N.Y. Sept. 30, 2021) (notes admissible where offered not for their truth but instead "to demonstrate what was said" to another party).

*Third*, the defense anticipates that the March 2017 Notes will be admissible as impeachment evidence. Specifically, over a period of several years, Mr. Baker has offered inconsistent testimony regarding what Mr. Sussmann told him in their September 19, 2016 meeting. First, Mr. Baker stated he did not remember whether Mr. Sussmann specifically mentioned whether he was acting on behalf of a client. *See* J. Baker Oct. 18, 2018 Jt. Com. Test. Tr. at 122 (Oct. 18, 2018). Subsequently, Mr. Baker stated that Mr. Sussmann provided

information about what "some number of people *that were his clients*, . . . sort of cyber-security experts, had found." *See* J. Baker July 15, 2019 Interview with DOJ OIG at SCO-3500U-009243 (emphasis added). Later still, Mr. Baker asserted that Mr. Sussmann did not specify whether he was representing a client, and Mr. Baker never asked. Mem. of Special Couns.'s June 11, 2020 Interview of J. Baker at SCO-3500U-009270. Only after having his recollection purportedly refreshed with notes from Mr. Priestap *nearly four years after the fact* did Mr. Baker decide that Mr. Sussmann told him that he was not acting on a behalf a client, a fact that Mr. Baker concluded he "must have told" Mr. Priestap if the notes reflected that information. *See* Mem. of Special Couns.'s June 18, 2020 Interview of J. Baker at SCO-3500U-009301.

But the March 2017 Notes reveal that Mr. Baker was silent when Mr. McCabe stated that Mr. Sussmann brought the allegations to the FBI *on behalf of a client*. If Mr. Baker had disagreed with Mr. McCabe on such a purportedly important statement, presumably he would have made that known. And the same can be said for Mr. Priestap and Ms. Anderson. *Cf. United States v. Stock*, 948 F.2d 1299, 1301 (D.C. Cir. 1991) ("Prior statements that omit details covered at trial are inconsistent if it would have been 'natural' for the witness to include them in the earlier statement." (citation omitted)); *United States v. Williams*, 740 F. Supp. 2d 10, 11-12 (D.D.C. 2010) ("A prior inconsistent statement can take the form of either an affirmative statement or an omission."); *United States v. Rogers*, 549 F.2d 490, 496 (8th Cir. 1976) ("A statement's inconsistency may be determined from the circumstances and is not limited to cases in which diametrically opposite assertions have been made. Thus, inconsistencies . . . may be implied through silence . . . .").

Furthermore, in this situation is it appropriate to adduce this impeachment material as proof as Mr. Baker's prior inconsistent statement.[4] *See* Fed. R. Evid. 613(b) ("Extrinsic evidence of a witness's prior inconsistent statement" is admissible if "the witness is given an opportunity to explain or deny the statement and an adverse party is given an opportunity to examine the witness about it, or if justice so requires."); *see also Athridge v. Aetna Cas. & Sur. Co.*, 474 F. Supp. 2d 102, 111 (D.D.C. 2007) (extrinsic evidence of prior inconsistent statement admissible under Federal Rule of Evidence 613(b)).

In addition, as noted above, the Special Counsel apparently intends to elicit testimony suggesting that Mr. Baker landed on his latest version of events after reviewing notes from a separate meeting, taken by Mr. Priestap and provided to Mr. Baker by the Special Counsel. However, the Special Counsel conspicuously did *not* show Mr. Baker the March 2017 Notes when attempting to refresh his recollection. The March 2017 Notes are thus *also* admissible to attack the Special Counsel's prejudicial handling of a critical witness, as well as Mr. Baker's current recollection of events. *See United States v. Fieger*, No. 07-CR- 20414, 2008 WL 996401, at *2-3 (E.D. Mich. Apr. 8, 2008) (defendants permitted to "bring in the factual scenario" of the government's investigation, including by "asking witnesses about the circumstances surrounding their questioning by Government agents").

The March 2017 Notes are admissible pursuant to any of the above mechanisms. The Special Counsel's objection should be overruled.

---

[4] In its Opinion and Order regarding the Special Counsel's intention to offer notes from Mr. Priestap and Ms. Anderson as evidence of Mr. Baker's prior consistent statements, the Court explained that because "the notes are not Mr. Baker's," he "cannot testify to their contents." ECF No. 121 at 19. As relevant here, the defense intends to question Mr. Baker about what he said or did not say during the March 6, 2017 meeting, but intends to offer the March 2017 Notes only through the testimony of the note-takers.

Dated:  May 8, 2022                                        Respectfully submitted,

                                          */s/ Sean M. Berkowitz*
Sean M. Berkowitz (*pro hac vice*)
LATHAM & WATKINS LLP
330 North Wabash Avenue
Suite 2800
Chicago, IL 60611
Tel: (312) 876-7700
Fax: (312) 993-9767
Email: sean.berkowitz@lw.com

Michael Bosworth (*pro hac vice*)
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
Tel: (212) 906-1200
Fax: (212) 751-4864
Email: michael.bosworth@lw.com

Natalie Hardwick Rao (D.C. Bar # 1009542)
Catherine J. Yao (D.C. Bar # 1049138)
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004
Tel: (202) 637-2200
Fax: (202) 637-2201
Email: natalie.rao@lw.com
Email: catherine.yao@lw.com