LEAVE TO FILE GRANTED

*[signature]* CR Cap, USDT
May 12, 2022

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MICHAEL A. SUSSMANN,<br><br>Defendant. | Case No. 21-582 (CRC) |

# NON-PARTY ERIC LICHTBLAU'S MOTION FOR PROTECTIVE ORDER
# AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

Jay Ward Brown (D.C. Bar No. 437686)
Chad R. Bowman (D.C. Bar No. 484150)
Maxwell S. Mishkin (D.C. Bar No. 1031356)
BALLARD SPAHR LLP
1909 K Street NW, 12th Floor
Washington D.C. 20006-1157
Telephone: (202) 661-2200
Facsimile: (202) 661-229
brownjay@ballardspahr.com
bowmanchad@ballardspahr.com
mishkinm@ballardspahr.com

*Attorneys for Non-Party Eric Lichtblau*

Non-Party Eric Lichtblau, a journalist under trial subpoena, respectfully files this Motion for Protective Order by and through his undersigned counsel to bring the issue of the proper scope of his testimony, and the reporter's privilege, to the Court's attention in advance of his being called as a witness by the defense.

## INTRODUCTION

Mr. Lichtblau is an award-winning news reporter who, during the time relevant to this prosecution, was employed in the Washington, D.C. bureau of *The New York Times*.[1] He co-authored an October 31, 2016 article headlined "Investigating Donald Trump, F.B.I. Sees No Clear Link to Russia," that is referenced in the Indictment. Indictment ¶ 2, ECF No. 1; *see also* Bowman Decl. ¶ 3. Mr. Lichtblau is identified as "Reporter-1" in the Indictment, and *The New York Times* is identified as "Newspaper-1." *See generally* Indictment. According to the Indictment, Mr. Lichtblau communicated with the defendant, Michael A. Sussmann, in advance of Mr. Sussmann's September 19, 2016 meeting with FBI officials. *Id.* ¶ 25.[2] Statements that the defendant allegedly made at that meeting form the basis for the charge in this case, "a single count of making a false statement" in violation of 18 U.S.C. § 1001(a)(2). *See* Op. & Order ("MTD Order") at 1 (April 13, 2022), ECF No. 67; Indictment ¶ 46.

Mr. Sussmann has waived confidentiality with respect to his communications with Mr. Lichtblau, and last month he served a trial subpoena on Mr. Lichtblau. Bowman Decl. ¶ 5,

---

[1] Mr. Lichtblau and a colleague at *The New York Times* won a Pulitzer Prize for National Reporting in 2006 for their coverage of a warrantless wiretapping program by the National Security Agency program approved by President George W. Bush. *See* Declaration of Chad R. Bowman ("Bowman Decl.") ¶ 2. He was also part of a team that won a Pulitzer Prize in 2018 for reporting on Donald Trump's advisers and their connections to Russia. *Id.* In addition to 15 years at the *Times* (from 2002-17), he has reported for *The Los Angeles Times*, *Time* magazine, *The New Yorker*, and CNN, and has authored two books. *Id.*

[2] The prosecution also alleges additional communications between defendant and Mr. Lichtblau after the key September 19, 2016 meeting. Indictment ¶ 34.

Ex. A. Through counsel, Mr. Lichtblau promptly raised his concerns about protecting other, privileged and still-confidential news sources and unpublished newsgathering information. *Id.* Counsel for Mr. Sussmann ultimately agreed to limit the scope of questioning at trial to the communications between Mr. Sussmann and Mr. Lichtblau—*i.e.*, information subject to the waiver. *Id.*[3] Such communications conceivably may be relevant to what Mr. Sussmann knew on September 19, 2016 and therefore whether he knowingly made a materially false statement to the FBI.

The Special Counsel, however, has refused to similarly limit the scope of questioning. *Id.* ¶ 8. Following a period of consideration, the prosecution on May 2, 2022 stated that it could not provide "any assurance" that cross-examination of Mr. Lichtblau would be confined to his communications with Mr. Sussmann. *Id.* To the contrary, counsel for the government stated that certain of Mr. Lichtblau's email communications with third parties during the course of his news reporting were within the prosecution's possession, and that the prosecution might examine Mr. Lichtblau about aspects of his reporting separate and apart from his communications with the defendant. *Id.* During discussions, the Special Counsel acknowledged the Department of Justice's new policy restricting the use of compulsory process to obtain information from reporters,[4] but indicated a view that any reporter's privilege was "pierced" by a trial subpoena. *Id.*

In light of Mr. Sussmann's waiver, Mr. Lichtblau does not move to quash the subpoena outright. He is prepared to testify to the best of his recollection about his communications with

---

[3] Non-party Rodney Joffee, who was present for certain of those meetings, has similarly waived confidentiality, through counsel. Bowman Decl. ¶ 6.

[4] The policy is memorialized in the Office of the Attorney General's July 21, 2021 Memorandum, available online at https://www.justice.gov/ag/page/file/1413001/download, and attached as Exhibit B to the Bowman Declaration for the Court's convenience.

the defendant ("Sussmann Communications Testimony"). However, the Special Counsel has expressed an intention to pursue questioning that may seek or lead to the identification of *other* confidential news sources ("Confidential Source Testimony") or encompass newsgathering communications other than those with the defendant ("Newsgathering Testimony"). Based on representations by the Special Counsel that the prosecution may inquire into these subjects, and because these subjects are both privileged and beyond the proper scope of inquiry under the Court's recent evidentiary rulings, Mr. Lichtblau respectfully submits this motion seeking to limit the scope of any trial examination to Sussmann Communications Testimony alone.

## ARGUMENT

**I.   The Court Should Grant Mr. Lichtblau's Motion Because Allowing His Unrestricted Examination Would Be Unreasonable In These Circumstances.**

Before even reaching the issue of the reporter's privilege, the Court should grant the motion under the Federal Rules of Criminal Procedure. Rule 17 in particular provides that "the court may quash or modify [a] subpoena if compliance would be unreasonable or oppressive." Fed. R. Crim. P. 17(c)(1).[5] And, as the Supreme Court has long held, "what is reasonable depends on the context." *United States v. R. Enters., Inc.*, 498 U.S. 292, 299 (1991) (internal marks omitted).

Here, in the context of a criminal trial on a single charge, the Court has determined that the government should "steer clear of evidence regarding the accuracy of the data" provided by Mr. Joffee on alleged computer connections between Trump Organization and Russian bank, as well as "whether 'Mr. Joffee's role in the collection was somehow 'objectionable' or illegal." Op. & Order ("In Limine Order") at 17 (May 7, 2022), ECF No. 121. In addition, the Court has

---

[5] Rule 16 further provides that "[a]t any time the court may, for good cause . . . grant other appropriate relief" in the nature of a protective order. Fed. R. Crim. P. 16(d)(1).

3

rejected a "time-consuming and largely unnecessary mini-trial to determine the existence and scope of an uncharged conspiracy to develop and disseminate the Alfa Bank data." *Id.*

For the same reason that "[e]vidence of improper data collection by Mr. Joffee or others done without Mr. Sussmann's knowledge is, at best, only marginally probative of his supposed motive to lie to the FBI," *id.* at 6, testimony about reporting done by Mr. Lichtblau apart from his communications with Mr. Sussmann—*i.e.*, involving *other* communications with *other* sources and potential sources—would be *entirely* lacking in probative value. Because reporters like Mr. Lichtblau were seeking to verify the data, any testimony would necessarily delve into the accuracy of data, a subject this Court has sharply limited. *Id.* at 5 ("As the Court has previously ruled, unless the defense opens the door for admission by vouching for the data, the government will not be allowed to put on extensive evidence about its accuracy."). And, because conspiracy evidence is foreclosed, *id.* at 14-15, no hearsay exception applies to Mr. Lichtblau's reporting communications other than with Messrs. Sussmann and Joffee. Fed. R. Evid. 801(c); In Limine Order at 7-8; *see also In re Sealed Case*, 121 F.3d 729, 754-55 (D.C. Cir. 1997) ("Rule 17(c) precludes use of a trial subpoena to obtain evidence that is not relevant to the charges being prosecuted or where the claim that subpoenaed materials will contain such evidence represents mere speculation.").

While a protective order is warranted for these reasons alone, it would also be manifestly unreasonable to compel Mr. Lichtblau to testify on any subjects other than his interactions with Mr. Sussmann because such questioning may seek or otherwise unavoidably lead to the disclosure of Confidential Source Testimony or Newsgathering Testimony, and Courts properly consider such journalistic interests when evaluating subpoenas. Indeed, this Court did just that in modifying a third-party subpoena that threatened to chill newsgathering activity in *Chen v. FBI*,

2020 U.S. Dist. LEXIS 242224 (D.D.C. Dec. 24, 2020). There, the plaintiff in a Privacy Act case had been the subject of television news reports and issued a subpoena to the cell phone provider of a third party who had communicated with that news organization, seeking "logs of all [his] cell phone calls and text messages" for a period of eight years. *Id.* at *6. The third party moved to quash and, as this Court explained:

> [T]he public interest requires the Court to tread carefully in enforcing a subpoena designed to investigate a news organization's dealings with its confidential sources. Although the First Amendment does not create an absolute privilege for reporter-source communications, "[c]ompelling a reporter to disclose the identity of a confidential source raises obvious First Amendment problems" because "journalists frequently depend on informants to gather news, and confidentiality is often essential to establishing a relationship with an informant." *Zerilli v. Smith*, 656 F.2d 705, 710-11 (D.C. Cir. 1981). Here, [plaintiff] seeks to learn about Fox's newsgathering by seeking discovery from a separate non-party, T-Mobile. As the D.C. Circuit recognizes, this is a less constitutionally problematic alternative to seeking discovery directly from the news organization. *See id.* at 713-14 (faulting Privacy Act plaintiffs for failing "to exhaust possible alternative sources of information" before seeking identity of leaker directly from journalist). Nevertheless, the Court is mindful that enforcing an overbroad subpoena in this case might produce an unwelcome chilling effect on First Amendment activity.

*Id.* at *11-12. Given these considerations, the Court "conclude[d] that the best course of action is to impose [certain] limitations on the subpoena," including "narrow[ing] the temporal scope of the subpoena to the period most relevant to [plaintiff's] lawsuit," which would protect "more recent communications with Fox News [that] appear less relevant" to the case. *Id.* at *12-13.

Narrowing the scope of questioning to which Mr. Lichtblau can be subjected at the upcoming trial in this matter is likewise the best course of action here, and for precisely the same reasons the Court articulated in *Chen*. Mr. Lichtblau's testimony about any subject other than his interactions with Mr. Sussmann can be of no conceivable relevance to this case, and allowing either party to question Mr. Lichtblau about such other, irrelevant topics clearly invites "an

5

unwelcome chilling effect on First Amendment activity" and creates "obvious First Amendment problems." *Id. See also, e.g., Hobley v. Burge*, 223 F.R.D. 499, 505 (N.D. Ill. 2004) (modifying subpoena issued to journalist in civil lawsuit on ground that the overbroad subpoena imposed an "undue burden" by compelling the reporter to "disclose [his] confidential research for which the [issuing parties] have not shown a substantial need that cannot be otherwise met," and where a limited subpoena "meets their needs without the unwarranted intrusion into [the journalist's] work").

For all of the foregoing reasons, the Special Prosecutor cannot demonstrate that testimony from Mr. Lichtblau about his newsgathering *other than* communications with the defendant would be relevant, Fed. R. Evid. 401, would be subject to a hearsay exception, Fed. R. Evid. 803, or that any probative value would not be "substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence," Fed. R. Evid. 403. Accordingly, Mr. Lichtblau respectfully requests that any trial examination be limited to the Sussmann Testimony.

**B.      Confidential Source Testimony or Newsgathering Testimony Would Also Be Privileged Under the First Amendment and the Common Law**

In addition to being irrelevant and unduly burdensome, examination of Mr. Lichtblau beyond the Sussmann Testimony implicates the reporter's privilege. The D.C. Circuit has made it clear that, absent extraordinary circumstances, a journalist cannot be compelled to disclose information that he has received in the course of his newsgathering. No such extraordinary circumstances can be found here to justify compelling Mr. Lichtblau to testify about his reporting beyond his no-longer-confidential interactions with Mr. Sussmann himself.

1.  A Qualified Reporter's Privilege Applies Here

To protect journalists' ability to gather and report news of public concern, most federal Circuits, including the D.C. Circuit, recognize a reporter's privilege based on either the First Amendment or common law. *See, e.g., Shoen v. Shoen*, 5 F.3d 1289, 1292 & n.5 (9th Cir. 1993) (surveying cases and noting that the First, Second, Third, Fourth, Fifth, Eighth, Tenth, and D.C. Circuits have recognized a privilege for journalists). The strong federal policy to protect newsgathering is also expressed in the U.S. Department of Justice Guidelines, which apply in civil *and* criminal cases similarly to "safeguard[] the essential role of the free press in fostering government accountability and an open society." 28 C.F.R. § 50.10(a)(2). The Attorney General broadened that policy last year, barring compulsory process on reporters except in the most extraordinary circumstances, to vindicate "the important national interest in protecting journalists from compelled disclosure of information revealing their sources, sources they need to apprise the American people of the workings of their government." *See* Bowman Decl. Ex. B at 1.

The D.C. Circuit has applied the qualified privilege in both civil and criminal cases. *United States v. Ahn*, 231 F.3d 26, 36 (D.C. Cir. 2000); *Zerilli v. Smith*, 656 F.2d 705, 713 (D.C. Cir. 1981).[6] At least five other Circuits have similarly recognized a qualified privilege in criminal cases. *See, e.g., United States v. LaRouche Campaign*, 841 F.2d 1176, 1181 (1st Cir. 1988) ("disclosure of such confidential material would clearly jeopardize the ability of journalists and the media to gather information and, therefore, have a chilling effect on speech");

---

[6] The D.C. Circuit has rejected the existence of the constitutional privilege only in the context of federal grand jury investigations. *See In re Grand Jury Subpoena, Judith Miller*, 397 F.3d 964, 970 (D.C. Cir. 2005) (citing *Branzburg v. Hayes*, 408 U.S. 665 (1972)). Yet, even in that context, some protections remain. *Branzburg*, 408 U.S. at 709 (Powell, J., concurring) ("certainly, we do not hold . . . that state and federal authorities are free to annex the news media as an investigative arm of the government").

*United States v. Caporale*, 806 F.2d 1487, 1504 (11th Cir. 1986) ("information may only be compelled from a reporter claiming privilege if the party requesting the information can show that it is highly relevant, necessary to the proper presentation of the case, and unavailable from other sources"); *United States v. Burke*, 700 F.2d 70, 77 (2d Cir. 1983) ("We see no legally-principled reason for drawing a distinction between civil and criminal cases when considering whether the reporter's interest in confidentiality should yield to the moving party's need for probative evidence."); *United States v. Cuthbertson*, 630 F.2d 139, 147 (3d Cir. 1980) ("the interests of the press that form the foundation for the privilege are not diminished because the nature of the underlying proceeding out of which the request for the information arises is a criminal trial"); *Farr v. Pitchess*, 522 F.2d 464, 467-68 (9th Cir. 1975) (recognizing First Amendment rights but finding them outweighed in facts of case).

Most relevant here, in *Ahn* a criminal defendant "sought to subpoena" several television reporters whose stations had "broadcast reports detailing [his] arrest." 231 F.3d at 35-37. The journalists "filed a motion to quash arguing that reporters possess a qualified privilege not to disclose confidential sources," and the district court granted that motion, finding "that the reporters' testimony was not 'essential and crucial' to [defendant's] case and was not relevant to determining [his] guilt or innocence," and concluding that defendant "had not demonstrated that the reporters' qualified privilege should be overcome." *Id.* The D.C. Circuit affirmed that ruling under an abuse-of-discretion standard, after finding that the plaintiff failed to establish a claim. *Id.*; *see also United States v. Whitmore*, 32 Media L. Rep. 1402, 1410 (D.D.C. 2002) (quashing subpoena to journalist on alternative grounds but noting that "there are very strong arguments" that subpoena sought testimony in violation of the "qualified privilege for a journalist"), *aff'd in relevant part*, 359 F.3d 609 (D.C. Cir. 2004).

8

To be sure, Judge Walton in *United States v. Libby* questioned the extent of the D.C. Circuit's holding in *Ahn*, stating that "[a]t most, the Circuit Court in *Ahn* assumed, without deciding, that the District Court had not erred in applying the balancing test and concluded that the balance had properly been made in that case." 432 F. Supp. 2d 26, 45-46 (D.D.C. 2006). As such, Judge Walton concluded that "news reporters and news organizations do not possess a First Amendment reporters' privilege" in federal criminal cases in the Circuit. *Id.* Yet Judge Walton acknowledged that a subsequent D.C. Circuit concurrence "could arguably lead to the inference that *Ahn* stands for the proposition that a balancing test must be employed in criminal cases at the trial stage." *Id.* at 45 n.23. Indeed, concurring in *Miller*, Judge Tatel stated that the D.C. Circuit has continued to "find[] constitutional protections for reporters" and expressly noted that, in *Ahn*, the court "affirmed the denial of a criminal defense subpoena on grounds that the defendant 'failed to carry his burden' of 'demonstrating that the reporters' qualified privilege should be overcome.'" 397 F.3d at 987-88 (Tatel, J., concurring).[7] Moreover, despite the skepticism expressed in *Libby*, other courts have continued to take *Ahn* at face value. *See, e.g., United States v. Wuterich*, 68 M.J. 511, 521 (N-M Ct. Crim. App. 2009) (citing *Ahn* for the proposition that "the District of Columbia Circuit ha[s] also applied the reporter's privilege in the criminal context" for "cases involving confidential material").

*Ahn* remains binding authority in this Circuit and is in line with nearly a half-dozen other Circuits. In addition, a reporter's privilege is derived not just from the First Amendment, but also rooted in the common law and Federal Rule of Evidence 501. Although the D.C. Circuit did not reach that question in *Miller*, Judge Tatel would have held that the common law provides

---

[7] It also is axiomatic that *Libby* "is not binding" on this Court. *Am. Council of the Blind v. WMATA*, 133 F. Supp. 2d 66, 74 n.2 (D.D.C. 2001).

9

such protection, even in the grand jury context, and Judge Henderson indicated that she would so rule if the issue were squarely before the court. 397 F.3d at 1003 (Tatel, J., concurring in judgment); *id.* at 983 (Henderson, J., concurring). *Compare also Cuthbertson*, 630 F.2d at 146-47 (recognizing common law protection in criminal case), *with Lee v. Dep't of Justice*, 401 F. Supp. 2d 123, 139 (D.D.C. 2005) (declining to recognize common law protection in civil case).[8]

### 2. The Privilege Cannot Be Overcome for Confidential Source Testimony or Newsgathering Testimony

At a minimum, the journalist's privilege afforded by the First Amendment and common law can be overcome only by a showing that the information sought from a reporter or news organization goes to "'the heart of the matter'" and has been sought only after "every reasonable alternative source of information" has been exhausted. *Zerilli*, 656 F.2d at 713 (citation omitted). Or, as the D.C. Circuit articulated the standard in *Ahn*, a criminal defendant seeking to compel the disclosure of information from a journalist must first demonstrate that such information is "'essential and crucial'" to his case. *Ahn*, 231 F.3d at 37 (quoting district court).

For the reasons set forth in Part I, *supra*, neither the prosecution nor the defense can make the requisite showing under the First Amendment or the common law to justify unrestricted examination of Mr. Lichtblau. In this prosecution of the defendant on a single count of making an alleged false statement on September 19, 2016, Mr. Lichtblau's Confidential Source Testimony or Newsgathering Testimony—that is, testimony from Mr. Lichtblau about his

---

[8] The arguments supporting recognition of such protection grounded in the common law and Rule 501 are set forth in significant detail in Judge Tatel's separate opinion in *Miller*, 397 F.3d at 997-1003. This reasoning has become even more persuasive in light of recent Justice Department policy against service of compulsory process on journalists. *See* Bowman Decl. Ex. B. It also bears note that the District of Columbia affords journalists such as Mr. Lichtblau substantial protection against the compelled disclosure of "[a]ny news or information" they procure "in the course of pursuing professional activities that is not itself communicated in the news media," D.C. Code §§ 16-4702(1)-(2) & 16-4703.

reporting other than his communications with the defendant—cannot possibly be "essential and crucial" in any respect. Nor would testimony that might be deemed marginally relevant, such as the idea that "GPS Fusion and the researchers shared the ultimate goal of disseminating the Alfa Bank allegations to the press," be unavailable from other sources. In Limine Order at 11. Indeed, the Court has provisionally admitted into evidence documents establishing just this proposition. *Id.* Accordingly, a protective order should bar examination of Mr. Lichtblau regarding Confidential Source Testimony or Newsgathering Testimony for the additional reason that the information is protected from compelled disclosure by the First Amendment and at common law.

## CONCLUSION

For all of the foregoing reasons, the Motion for Protective Order should be granted and any examination of Mr. Lichtblau should be limited to his communications with the defendant.

Dated: May 11, 2022

Respectfully submitted,

**BALLARD SPAHR LLP**

/s/ Chad R. Bowman
Jay Ward Brown (D.C. Bar No. 437686)
Chad R. Bowman (D.C. Bar No. 484150)
Maxwell S. Mishkin (D.C. Bar No. 1031356)
1909 K Street NW, 12th Floor
Washington, D.C. 20006-1157
Telephone: (202) 661-2200
Facsimile: (202) 661-229
brownjay@ballardspahr.com
bowmanchad@ballardspahr.com
mishkinm@ballardspahr.com

*Attorneys for Non-Party Eric Lichtblau*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 11th day of May 2022, I caused true and correct copies of the foregoing to be served via electronic mail and U.S. Mail on the following:

Sean M. Berkowitz
LATHAM & WATKINS LLP
330 North Wabash Avenue
Suite 2800
Chicago, IL 60611
sean.berkowitz@lw.com

Michael Bosworth
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
michael.bosworth@lw.com

Natalie Hardwick Rao
Catherine J. Yao
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004
natalie.rao@lw.com
catherine.yao@lw.com

*Attorneys for Defendant Michael A. Sussmann*

Jonathan E. Algor
Andrew J. DeFilippis
Michael T. Keilty
Brittain Shaw
SPECIAL COUNSEL'S OFFICE
145 N Street NE
Washington, DC 20002
jonathan.algor@usdoj.gov
andrew.defilippis@usdoj.gov
michael.keilty@usdoj.gov
brittain.shaw@usdoj.gov

*Attorneys for the United States of America*

/s/ *Chad R. Bowman*
Chad R. Bowman