## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Case No. 21-CR-582 (CRC)** |
| | : | |
| **MICHAEL A. SUSSMANN,** | : | |
| | : | |
| **Defendant.** | : | |

### GOVERNMENT'S RESPONSE TO NON-PARTY ERIC LICHTBLAU'S MOTION FOR PROTECTIVE ORDER

Defendant Michael Sussmann has subpoenaed Eric Lichtblau to testify at trial. Lichtblau intends to appear, but seeks a protective order restricting the government's ability to cross-examine him based on various evidentiary objections and a qualified reporter's privilege. Specifically, Lichtblau has filed a motion for a protective order seeking to limit the government's cross-examination to his communications with Sussmann and, apparently, Rodney Joffe. As set forth in further detail below, the Government respectfully submits that it should be permitted to inquire of Lichtblau concerning *any* relevant subject matters, including his communications with other individuals regarding the allegations Sussmann provided to the FBI in September 2016.

### Background

The government charged Sussmann by indictment with one count of making a false statement, in violation of 18 U.S.C. § 1001(a)(2). This charge relates to Sussmann's statement to the FBI General Counsel on September 19, 2016 that he was not acting on behalf of a client when presenting allegations regarding the Trump Organization and a Russian Bank (Alfa Bank). Indictment ¶ 3 (ECF No. 1). The Government's evidence further demonstrates that the defendant, acting on behalf of these two clients, conveyed the allegations to Lichtblau (a journalist then employed by the New York Times) before the FBI meeting. *Id*. ¶ 25.

The Movant has represented that the defendant, Michael Sussmann, has waived confidentiality with respect to his communications with Lichtblau and subpoenaed his testimony at trial.   In addition, the defendant agreed to limit the scope of his questioning on direct examination to his communications with Lichtblau.   Moreover, in footnote 3 of his filing, Lichtblau references a similar position being taken by Rodney Joffe regarding confidentiality issues.

The government, however, declined to enter into an agreement restricting its cross-examination of Lichtblau.   In the event Lichtblau testifies, the government should not be restricted in its cross-examination of Lichtblau to the self-serving categories of evidence that the Movant requests.   The government should be permitted to cross-examine Lichtblau about any communications he had with other individuals, including, but not limited to, Fusion GPS personnel and computer researchers, regarding the alleged connections between the Trump Organization and Alfa bank.   To the extent Sussmann, Fusion GPS, or others (including computer researchers) approached or communicated with Lichtblau concerning Alfa Bank or related matters, the government should be permitted to question Lichtblau about such exchanges, as they are relevant to the defendant's communications with Lichtblau on these same issues and are probative of the defendant's alleged actions on behalf of clients (Rodney Joffe and the Clinton Campaign). The government also intends to cross-examine Lichtblau on issues pertaining to the credibility and reliability of his testimony.[1]

---

[1] The government will abide by the Court's order of May 7, 2022 and, in accordance with that order, will not "put on extensive evidence" about the accuracy of the data provided by Sussmann or his clients to the FBI, Lichtblau, or others. *See* Op. & Order ("In Limine Order") at 5, ECF No. 121.

### Argument

**A.    Lichtblau cannot, as a trial witness, assert evidentiary objections to avoid cross-examination.**

Contrary to Lichtblau's claim (Mot. 3-6), Federal Rule of Criminal Procedure 17 provides no basis to enter his proposed protective order. Lichtblau has received a *defense* subpoena "command[ing] [him] to attend and testify" at trial.  Fed. R. Crim. P. 17(a).  This Court "may quash or modify the subpoena if compliance would be unreasonable or oppressive," Fed. R. Crim. P. 17(c), but that provision is plainly inapplicable.  Because Lichtblau has already agreed to appear at trial and provide testimony, his compliance with the defense subpoena is, by necessity, *not* unreasonable or oppressive.

Lichtblau contends that cross-examination about matters other than his communications with Sussmann, and again apparently with Joffe, would lack relevance under Federal Rule of Evidence 401, constitute inadmissible hearsay, and independently be subject to exclusion under Rule 403. Mot. at 6.  But Lichtblau is a witness in this proceeding, not a party. And only "[a] party may claim error in a ruling to admit or exclude evidence."  Fed. R. Evid. 103(a).

At base, Lichtblau has not cited any authority supporting the proposition that a witness can lodge evidentiary objections to lines of questioning at a criminal trial under the guise of Fed. R. Crim. P. 17(c).  Lichtblau must ground his request in a legal privilege, and not in the rules of evidence.

**B.    Lichtblau cannot invoke a qualified reporter's privilege to shield himself from cross-examination.**

Lichtblau alternatively claims (Mot. 6-11) that any cross-examination by the government on matters other than his communications with the defendant and, by implication, Joffe, impact his qualified reporter's privilege.  That claim lacks merit.

In *Branzburg v. Hayes*, 408 U.S. 665 (1972), the Supreme Court rejected claims of privilege by reporters who had been called to testify before a grand jury about criminal conduct involving confidential sources.   *Id*. at 667-679, 708-709.  The Court "decline[d]" to "interpret[] the First Amendment to grant newsmen a testimonial privilege that other citizens do not enjoy."  *Id.* at 690.  "[W]e cannot," the Court explained, "seriously entertain the notion that the First Amendment protects a news-man's agreement to conceal the criminal conduct of his source, or evidence thereof, on the theory that it is better to write about crime than to do something about it."  *Id.* at 692.  "Insofar as any reporter in these cases undertook not to reveal or testify about the crime he witnessed," the Court continued, "his claim of privilege under the First Amendment presents no substantial question."  *Id.*  The Court accordingly "insist[ed] that reporters, like other citizens, respond to relevant questions put to them in the course of a valid grand jury investigation or criminal trial," even if doing so would require revealing the identity of a confidential source.  *Id.* at 690-691.  And the Court expressly rejected any requirement that the government "demonstrate[] some 'compelling need' for a newsman's testimony" as a prerequisite to obtaining it.   *Id.* at 708; *see id.* at 680, 705-706.

*Branzburg* resolves the present dispute.  If Lichtblau testifies at trial, he must "respond to relevant questions put to [him]" by either party—just as any "other citizen[]" who takes the witness stand.  408 U.S. at 690-691; *see In re Grand Jury Subpoena, Judith Miller*, 438 F.3d 1141, 1147 (D.C. Cir. 2005) (explaining that, "[w]ithout doubt," *Branzburg* "is the end of the matter" when it comes to claims of a "reporter's privilege" in criminal cases).

Of course, *Branzburg* stressed, in the context of a grand-jury subpoena, that "[o]fficial harassment of the press undertaken not for purposes of law enforcement but to disrupt a reporter's relationship with his news sources would have no justification."  408 U.S. at 707-708;

*see also id*. at 709-710 (Powell, J., concurring) ("[N]o harassment of newsmen will be tolerated."). The same principle applies here. The government's cross-examination must solicit "relevant testimony with respect to criminal conduct" and not stray into areas "bearing only a remote and tenuous relationship to the subject of the [trial]" *Id*. at 709-710 (Powell, J., concurring).

The Federal Rules of Evidence patrol that boundary. The government's cross-examination questions must pertain to "the subject matter of the direct examination and matters affecting the witness's credibility." Fed. R. Evid. 611(b). This Court also has discretion to "allow inquiry into additional matters as if on direct examination," subject to the rules governing relevance and admissibility. *Ibid*. To that end, this Court has sufficient tools at its disposal to ensure that the government's cross-examination of Lichtblau at trial is relevant and appropriate.

2.    The government's intended cross-examination of Lichtblau easily passes muster under this framework. Sussmann advised the FBI General Counsel on September 19, 2016, that the Trump Organization and Russian-based Alfa Bank had a covert communications channel. At the time, Sussmann's law firm, Perkins Coie, had retained Fusion GPS—a company engaged in opposition research on then-candidate Donald Trump. Moreover, Sussmann told the FBI's General Counsel that the cyber researchers involved in the Alfa Bank allegations were "like" three named people Baker knew and who were respected experts in cyber matters. Cross-examination of Lichtblau regarding his interactions with Fusion and non-Fusion personnel falls squarely within matters central to this criminal proceeding, which turns on the alleged falsity of Sussmann's statements to the FBI General Counsel that (1) he was not working for any client when reporting this allegation; and (2) he reasonably believed the credibility of the Alfa Bank allegations.

Evidence regarding Lichtblau's communications with Fusion GPS personnel and others during the relevant time period is plainly probative of that question. The Government's evidence shows that Sussmann contacted Lichtblau to convey information about the Trump Organization's contacts with Alfa Bank. The government intends to ask Lichtblau on cross-examination, among other things, whether he had any communications with Fusion GPS personnel or others regarding this subject matter. If Fusion GPS (which was hired by the defendant's firm on behalf of the Hillary for America Campaign) and other persons known to Joffe and/or Sussmann similarly supplied opposition research-type information to Lichtblau regarding the Trump Organization as a part of a coordinated effort, this would be relevant to demonstrate that Sussmann was not acting merely as a concerned citizen trying to help the FBI when he met with FBI General Counsel and that his contrary representations were false. Indeed, the Government is aware that Sussmann and Joffe *did* enlist and/or task one or more other computer researchers to communicate with the media (including Lichtblau) concerning these matters.

3.    Lichtblau's assertion (Mot. 7) of a qualified reporter's privilege rests on *Zerilli v. Smith*, 656 F.2d 705 (D.C. Cir. 1981), and *United States v. Ahn*, 231 F.3d 26 (D.C. Cir. 2000), but neither decision helps him.

The D.C. Circuit in *Zerilli* recognized a qualified reporter's privilege "in civil cases, where the public interest in effective criminal law enforcement is absent." 656 F.2d at 711. And it distinguished the Supreme Court's decision in *Branzburg* as "limit[ing] the scope of the reporter's First Amendment privilege in criminal proceedings." *Ibid*. As shown by these plain terms, "*Zerilli* cannot possibly help [Lichtblau]" because "[e]ven if *Zerilli* states the law applicable to civil cases, this is not a civil case." *Miller*, 438 F.3d at 1149.

In *Ahn*, the defendant sought testimony from several television reporters to ascertain whether the government breached his plea agreement. The district court quashed the subpoena on the ground that "the reporters' testimony was not 'essential and crucial' to [his] case and was not relevant to determining [his] guilt or innocence." 231 F.3d at 37. The D.C. Circuit affirmed: "Because we agree that [the defendant] failed to carry his burden, we hold that the district court did not make an error of law or abuse its discretion in granting the reporters' motion." *Ibid*. That cursory statement cannot be read to have recognized a news-reporter's privilege; the D.C. Circuit simply assumed that a privilege existed and found the defendant had failed to overcome his burden in piercing it. *See United States v. Libby*, 432 F. Supp. 2d 26, 45 (D.D.C. 2006) (distinguishing *Ahn* on that basis).

To the extent any decisional rule can be gleaned from *Ahn*, it is that a qualified reporter's privilege gives way in a criminal proceeding where the reporter has testimony "relevant to determining [a defendant's] guilt or innocence." 231 F.3d at 37. As explained above, evidence that Fusion-GPS personnel and other individuals were in contacted with Lichtblau about the same subject matter as Sussmann bears on the central dispute in this proceeding—whether Sussmann was acting as a good citizen, or as a paid advocate for Rodney Joffe and the Hillary Clinton Campaign, when he met with the FBI General Counsel on September 19, 2016. Any qualified privilege has accordingly been overcome with respect this subject matter.

Lichtblau's remaining out-of-circuit citations (Mot. 7-8) are inapposite. No court has recognized a reporter's privilege to withhold testimony pertaining to an individual's guilt or innocence in a criminal proceeding. *See United States v. LaRouche Campaign*, 841 F.2d 1176, 1180-1182 (1st Cir. 1988) (defense request for possible impeachment evidence in criminal case); *United States v. Caporale*, 806 F.2d 1487, 1503-1504 (11th Cir. 1986) (defense request

for evidence related to possible jury tampering); *United States v. Burke*, 700 F.2d 70, 76-77 (2d Cir. 1983) (same); *United States v. Cuthbertson*, 630 F.2d 139, 146-147 (3d Cir. 1980) (defense request for potential impeachment evidence); *Farr v. Pitchess*, 522 F.2d 464, 467-468 (9th Cir. 1975) (state judge's order that a reporter reveal the identity of the person who had disclosed materials in violation of a court order).  To the contrary, every circuit court that has squarely confronted that issue has held that no such privilege exists.  *See, e.g.*, *United States v. Sterling*, 724 F.3d 482, 491-505 (4th Cir. 2013) (rejecting constitutional or common-law "reporter's privilege"); *In re Special Proceedings*, 373 F.3d 37, 44 (1st Cir. 2004) ("In *Branzburg*, the Supreme Court flatly rejected any notion of a general-purpose reporter's privilege for confidential sources, whether by virtue of the First Amendment or of a newly hewn common law privilege.").

Lichtblau's litigation conduct presents yet another reason to reject his invocation of a qualified reporter's privilege here.  Lichtblau states he has agreed to testify at trial about his confidential communications with Sussmann after Sussmann released him from his promise of confidentiality and Sussmann's counsel agreed to restrict his questioning to the content of those communications.  (The same circumstance would seem to also apply to Rodney Joffe's reported release of Lichtblau from the same promise.)  Lichtblau now seeks to prevent the government from questioning him on any other subject out of fear that his testimony will disclose other confidential sources and unpublished journalistic work product.  *See* Bowman Aff. ¶ 5.  Put simply, Lichtblau seeks to invoke his asserted privilege selectively on the witness stand—waiving the privilege with respect to some topics and invoking it as to others.  *Cf. Miller*, 438 F.3d at 1177 (Tatel, J., concurring in the judgment) (reasoning that "only reporters, not sources, may waive the privilege" that Judge Tatel would have recognized under common law).

The D.C. Circuit has "declined to adopt a selective waiver doctrine" in the context of attorney-client communications that "would allow a party voluntarily to produce documents covered by the attorney-client privilege to one party and yet assert the privilege as a bar to production to a different party." *United States v. Williams Companies, Inc.*, 562 F.3d 387, 394 (D.C. Cir. 2009). "The client cannot be permitted to pick and choose among his opponents, waiving the privilege for some and resurrecting the claim of confidentiality to obstruct others." *Permian Corp. v. United States*, 665 F.2d 1214, 1221 (D.C. Cir. 1981). Privilege holders must instead "treat the confidentiality of attorney-client communications like jewels—if not crown jewels" because courts "will not distinguish between various degrees of 'voluntariness' in waivers of the attorney-client privilege." *In re Sealed Case*, 877 F.2d 976, 980 (D.C. Cir. 1989).

This principle—which restricts a privilege of "ancient lineage and continuing importance," *In re Sealed Case*, 877 F.2d at 980—necessarily governs the novel and qualified reporter's privilege advanced in this case. Sussmann subpoenaed Lichtblau to appear as a witness and Lichtblau has not moved to quash. Lichtblau and defendant Sussmann cannot "tactical[ly] employ[]" the asserted privilege to pick and choose the topics that may be put to Lichtblau on the witness stand. *Permian Corp.*, 665 F.2d at 1221. Privileges are not "tool[s] for selective disclosure." *Ibid*.

## CONCLUSION

The motion for protective order should be denied.  If Lichtblau takes the witness stand at trial, the Court should require him to answer all relevant questions posed to him that fall within the scope of his direct testimony, the criminal charge, or his credibility and reliability.

Respectfully submitted,

JOHN H. DURHAM
Special Counsel

By:

/s/ Jonathan E. Algor
Jonathan E. Algor
Assistant Special Counsel
jonathan.algor@usdoj.gov

Andrew J. DeFilippis
Assistant Special Counsel
andrew.defilippis@usdoj.gov

Michael T. Keilty
Assistant Special Counsel
michael.keilty@usdoj.gov

Brittain Shaw
Assistant Special Counsel
brittain.shaw@usdoj.gov