IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MICHAEL A. SUSSMANN,<br><br>Defendant. | Case No. 21-582 (CRC) |

**REPLY MEMORANDUM IN FURTHER SUPPORT OF
NON-PARTY ERIC LICHTBLAU'S MOTION FOR PROTECTIVE ORDER**

Non-Party Eric Lichtblau has moved, pursuant to Rule 17 of the Federal Rules of Criminal Procedure and the constitutional and common law reporter's privileges, for an order limiting the scope of the parties' examination of him as a trial witness to communications between himself and defendant Michael A. Sussmann. Mr. Sussmann formerly was a confidential source for Mr. Lichtblau's news reporting but he has since waived confidentiality with respect to those communications. *See generally* Mot. for Protective Order ("Mot."), ECF No. 133. While Mr. Sussmann agreed to restrict the scope of his counsel's examination to his communications with Mr. Lichtblau in an effort to reach a compromise that would obviate the need for the present motion, the government refused to enter into the same compromise. *See id.* at 2. And, in its opposition to Mr. Lichtblau's motion, the government has doubled down on its refusal to compromise, instead offering a series of erroneous arguments to support the contention that it "should be permitted to cross-examine Lichtblau about **any** communications he had with **other** individuals . . . regarding the alleged connections between the Trump Organization and Alfa bank." *See* Gov't's Resp. to Mot. for Protective Order ("Resp.") at 2, ECF No. 140 (emphasis added).

Pursuant to the Court's May 20, 2022 Minute Order, Mr. Lichtblau respectfully submits this reply memorandum in response to the government's opposition. As explained below, Rule 17 and the reporter's privilege each prohibit the government from engaging in such invasive and unreasonably broad examination of a journalist regarding his or her newsgathering activities.

**I.      Rule 17 Protects Mr. Lichtblau From "Unreasonable Or Oppressive" Questioning**

As Mr. Lichtblau established in his opening memorandum, a protective order limiting the scope of his examination to "Sussmann Communications Testimony" is warranted in part because any testimony Mr. Lichtblau might offer on topics other than his communications with Mr. Sussmann would lack probative value and likely would be inadmissible as well. *See* Mot. at 3-4. In responding to this proposition, the government does not even attempt to demonstrate why the testimony it seeks beyond that scope would be relevant and admissible, because it cannot.[1] Instead, it claims that Mr. Lichtblau is procedurally barred from raising such objections because he is a non-party. Resp. at 3. As the Court of Appeals has held, however, Rule 17 expressly permits the recipient of a subpoena such as Mr. Lichtblau to seek relief on the grounds that "compliance would be unreasonable or oppressive," and that standard gives rise to a "tripartite requirement of relevancy, admissibility and specificity" with respect to the information sought. *In re Sealed Case*, 121 F.3d 729, 754 (D.C. Cir. 1997). Mr. Lichtblau is therefore

---

[1] The government first asserts that it "should be permitted to cross-examine Lichtblau about any communications he had with [any] individuals, including, but not limited to, Fusion GPS personnel and computer researchers, regarding the alleged connections between the Trump Organization and Alfa bank," then claims it should be permitted to question Mr. Lichtblau about any "exchanges" that he had with **anyone** "concerning Alfa Bank or related matters." *See* Resp. at 2. The government does not explain, nor could it, how such testimony could possibly bear on whether Mr. Sussmann knowingly made a false statement to the FBI in September 2016. Moreover, as discussed below, *infra* n.3, such testimony would be inadmissible hearsay insofar as it addressed what other persons said to Mr. Lichtblau and irrelevant insofar as it addressed opinions Mr. Lichtblau expressed to or questions he asked of other persons.

completely within his rights under Rule 17 to object to unrestricted examination at trial as unreasonable and oppressive where the testimony the government seeks (beyond that limited to the Sussmann Communications Testimony) would likely be both irrelevant and inadmissible. Indeed, the government's position defies common sense: How could a court determine whether a trial subpoena's burden on a witness is unreasonable or oppressive **without** considering the relevance and admissibility of the testimony sought?

The government also does not deny, nor could it, that unrestricted examination of Mr. Lichtblau about his newsgathering would raise the type of "obvious First Amendment problems" this Court identified and addressed in *Chen v. FBI*, 2020 U.S. Dist. LEXIS 242224 (D.D.C. Dec. 24, 2020). The government likewise does not deny, and therefore concedes, that the Court can properly consider such First Amendment interests in determining whether a subpoena is unreasonable or oppressive under Rule 17. *See, e.g.*, *Hopkins v. Women's Div., Bd. of Glob. Ministries*, 238 F. Supp. 2d 174, 178 (D.D.C. 2002) ("It is well understood in this Circuit that when a [party] files an opposition to a motion . . . addressing only certain arguments raised by the [movant], a court may treat those arguments that the [party] failed to address as conceded."). Even without directly addressing the issue of a reporter's privilege, therefore, this Court can and should conclude under Rule 17 that exposing Mr. Lichtblau to unrestricted trial examination would be unreasonable and oppressive because (1) the testimony the government purports to seek is unlikely to satisfy the tripartite standard of relevancy, admissibility and specificity, and (2) such an invasive inquiry into a reporter's source communications would unreasonably invite "an unwelcome chilling effect on First Amendment activity." *Chen*, 2020 U.S. Dist. LEXIS 242224, at *11-12. The Court should therefore grant Mr. Lichtblau's motion

and restrict the scope of the parties' examination of him to his communications with Mr. Sussmann.[2]

## II. The Reporter's Privilege Separately and Independently Protects Mr. Lichtblau

Mr. Lichtblau further demonstrated in his opening memorandum that, pursuant to the reporter's privilege as recognized in this Circuit, he cannot be compelled to disclose information he received in the course of his newsgathering absent extraordinary circumstances – circumstances not present here. The government responds that (1) there is no such privilege in the context of a criminal trial, *see* Resp. at 4-6; (2) even if the privilege exists it has been overcome, *see id*. at 7; and (3) even if the privilege exists Mr. Lichtblau has waived it, *see id*. at 8-9. The government errs with respect to each contention.

### A. The government places more weight on *Branzburg* than it can bear.

In arguing against the existence of the reporter's privilege, the government chiefly relies on *Branzburg v. Hayes*, 408 U.S. 665 (1972). According to the government, "*Branzburg* resolves the present dispute" in its entirety because, the government contends, the Court of Appeals' decision in *In re Grand Jury Subpoena, Judith Miller* stands for the proposition that "'[w]ithout doubt,' *Branzburg* 'is the end of the matter' when it comes to claims of a 'reporter's privilege' **in criminal cases**." Resp. at 4-5 (emphasis added) (quoting 438 F.3d 1141, 1147 (D.C. Cir. 2005)). The problem for the government is that the D.C. Circuit said nothing of the sort in *Miller*. To the contrary, accurately quoted, the Court of Appeals wrote:

---

[2] The government cites no authority for its additional claim that, "[b]ecause Lichtblau has already agreed to appear at trial and provide testimony, his compliance with the defense subpoena is, by necessity, *not* unreasonable or oppressive." Resp. at 3. That contention is contradicted by the common interpretation of Rule 17, which authorizes a trial court to quash or to **modify** a subpoena.

4

> Unquestionably, the Supreme Court decided in *Branzburg* that there is no First Amendment privilege protecting journalists from appearing **before a grand jury** or from testifying **before a grand jury** or otherwise providing evidence **to a grand jury** regardless of any confidence promised by the reporter to any source. The Highest Court has spoken and never revisited the question. Without doubt, that is the end of the matter.

*Miller*, 438 F.3d at 1147 (emphases added). The Court of Appeals thus interpreted *Branzburg* as rejecting the existence of the constitutional reporter's privilege **only** in the context of federal grand jury investigations. *See also id*. at 1149 (referring to "the law **applicable to grand juries** as set forth in *Branzburg*") (emphasis added). *Branzburg* thus does not limit this Court's ability to modify a **trial** subpoena on the basis that it would violate the constitutional reporter's privilege. *Cf. United States v. R. Enters., Inc.*, 498 U.S. 292, 297 (1991) (noting that "[a] grand jury subpoena is . . . much different from a subpoena issued in the context of a prospective criminal trial, where a specific offense has been identified and a particular defendant charged"); *see also Miller*, 397 F.3d at 987-88 (Tatel, J., concurring) (recognizing that "this circuit has limited *Branzburg* in other contexts"); Mot. at 7-8 (collecting cases recognizing the reporter's privilege).

      **B.**    *Ahn* **is controlling in this Circuit and recognizes the reporter's privilege.**

As Mr. Lichtblau has demonstrated, the Court of Appeals recognized that the reporter's privilege applies in criminal cases in *United States v. Ahn*, 231 F.3d 26, 36 (D.C. Cir. 2000). There, journalists moved to quash a subpoena on the ground that the reporter's privilege protects them from the compelled disclosure of confidential sources, the district court granted that motion, finding "that the reporters' testimony was not 'essential and crucial' to [defendant's] case **and** was not relevant to determining [his] guilt or innocence," and the D.C. Circuit affirmed, stating that "the district court did not make an error of law or abuse its discretion in granting the reporters' motion." *Id*. at 37 (emphasis added). Mr. Lichtblau accordingly has

5

called on this Court to follow *Ahn* and apply the reporter's privilege to limit the scope of his questioning.

Rather than accepting *Ahn* as the law of this Circuit and trying to make the showing required under *Ahn* that unrestricted trial examination of Mr. Lichtblau is "essential and crucial" to its case, the government argues that *Ahn* does not actually mean what it says. For one, the government claims that *Ahn* did not "recognize[] a news-reporter's privilege," but, rather, "the D.C. Circuit simply **assumed** that a privilege existed and found the defendant had failed to overcome his burden in piercing it." Resp. at 7 (emphasis added). That view ignores the clear statement in *Ahn* that it was **not** "an error of law" to quash a subpoena on the basis of the reporter's privilege – *i.e.*, that the privilege is indeed good law. *Ahn*, 231 F.3d at 37. For another, the government argues that, "[t]o the extent any decisional rule can be gleaned from *Ahn*, it is that a qualified reporter's privilege gives way in a criminal proceeding where the reporter has testimony 'relevant to determining [a defendant's] guilt or innocence.'" *See* Resp. at 7 (quoting *Ahn*, 231 F.3d at 37). But this ignores the requirement that the reporter's testimony be "essential and crucial" to the case. *See Ahn*, 231 F.3d at 37. Though it is far from clear whether the government could meet even the relevancy requirement with respect to unrestricted questioning of Mr. Lichtblau, the government has not even attempted to show that the resulting testimony would be "essential and crucial" to its case. Under *Ahn*, therefore, the reporter's privilege protects Mr. Lichtblau from unrestricted questioning at trial and the Court should limit the scope of his examination accordingly.[3]

---

[3] With respect to mere relevance, the government claims that "[e]vidence that Fusion-GPS personnel and other individuals were in contacted [*sic*] with Lichtblau about the same subject matter as Sussmann bears on the central dispute in this proceeding—whether Sussmann was acting as a good citizen, or as a paid advocate for Rodney Joffe and the Hillary Clinton Campaign, when he met with the FBI General Counsel on September 19, 2016." Resp. at 7.

(continued...)

6

### C. Mr. Lichtblau has not made a "selective waiver" of the reporter's privilege.

Finally, the government asserts that, even if the reporter's privilege is available in this Circuit, Mr. Lichtblau has made a "selective waiver" of the privilege by agreeing to testify about his no-longer-confidential communications with Mr. Sussmann. *See* Resp. at 8-9. The government errs here in three respects. First, Mr. Lichtblau has not **waived** anything: Rather, Mr. Sussmann vitiated the privilege, which the Court of Appeals in *Ahn* extended only to confidential source communications, when he released Mr. Lichtblau from the promise of confidentiality that Mr. Lichtblau had given him. In other words, in light of that release, Mr. Sussmann no longer qualifies as a confidential source for Mr. Lichtblau's reporting, and Mr. Lichtblau acknowledged that, in the circumstances of this criminal case in this Circuit, he cannot assert the reporter's privilege to bar otherwise relevant and appropriate inquiry into the no-longer-confidential communications at issue between the two of them. *See* Mot. at 1. Second, even if Mr. Lichtblau—a non-party—could be said to have "waived" the reporter's privilege with respect to one of his sources if he testifies as to communications with that source, that would not justify stripping the protections of the privilege from all of his communications with all of his other, still-confidential sources. Put differently, the fact that Mr. Sussmann chose of his own accord to release Mr. Lichtblau from his promise of confidentiality and to serve a subpoena on Mr. Lichtblau in this matter cannot retract Mr. Lichtblau's promises of

---

(...continued)
Such evidence, however, would have no bearing on and offer no insight into whether Mr. Sussmann made a false statement to the FBI during that meeting, which is, with all due respect to the government, the true "central dispute" in this case. Moreover, anything Mr. Lichtblau conceivably could testify to regarding the government's "coordination" theory would be inadmissible: Testimony as to what others told him would be hearsay not subject to an exception, and what Mr. Lichtblau may have said to others about that theory would not be probative of whether Mr. Sussmann in fact was coordinating with others.

confidentiality to other sources. Third, as the Court of Appeals explained in *United States v. Thompson*, 562 F.3d 387 (D.C. Cir. 2009), a case cited by the government, Resp. at 9 (using incorrect case name), "selective waiver" means "allow[ing] a party voluntarily to produce documents covered by the attorney-client privilege to one party and yet assert[ing] the privilege as a bar to production to a different party." *Id.* at 394. Here, however, Mr. Lichtblau expressly seeks to impose the **same** limits on questioning by **both** parties in order to resolve the subpoena served upon him. For all of these reasons, Mr. Lichtblau has not waived the reporter's privilege as it applies to his communications with his other sources and newsgathering activities.

## CONCLUSION

For the foregoing reasons and those stated in his initial memorandum, Mr. Lichtblau respectfully requests that the Court grant his Motion for Protective Order and limit any questioning he may face at trial to the topic of his communications with the Defendant. Mr. Lichtblau further requests that the Court hear oral argument on his Motion and that, if the Court ultimately decides to allow the government to question him about matters beyond his communications with Mr. Sussmann, it issue a ruling to that effect with sufficient time in advance of Mr. Lichtblau's examination to permit him to seek emergency relief from the Court of Appeals.

Dated: May 22, 2022 	 Respectfully submitted,

**BALLARD SPAHR LLP**

*/s/ Chad R. Bowman*
Jay Ward Brown (D.C. Bar No. 437686)
Chad R. Bowman (D.C. Bar No. 484150)
Maxwell S. Mishkin (D.C. Bar No. 1031356)
1909 K Street NW, 12th Floor
Washington, D.C. 20006-1157
Telephone: (202) 661-2200
Facsimile: (202) 661-229
brownjay@ballardspahr.com
bowmanchad@ballardspahr.com
mishkinm@ballardspahr.com

*Attorneys for Non-Party Eric Lichtblau*