**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| *v.* | Case No. 1:21-cr-00582 (CRC) |
| **MICHAEL A. SUSSMANN,** | |
| *Defendant.* | |

**DEFENDANT'S MOTION TO PRECLUDE
<u>EXAMINATION OF JARED NOVICK REGARDING CERTAIN TOPICS</u>**

Defendant Michael A. Sussmann, by and through his counsel, respectfully moves to preclude the Special Counsel from questioning government witness Jared Novick about (1) Government Exhibits 1801, 1802, and 1200, and any statements contained therein related to the accuracy of the data or its conclusions; (2) implying that a document consistent with Government Exhibit 1801 was found in Mr. Sussmann's office and (3) Mr. Novick's anticipated testimony regarding his belief about Mr. Joffe's motivations

**BACKGROUND**

The defense understands that the Special Counsel may intend to elicit testimony suggesting that a document consistent with Government Exhibit 1801—an undated report titled "Crimson Rhino (CR)"—was found in Mr. Sussmann's office.[1]  It was not.  In addition, the defense expects

---

[1] The Special Counsel late last night indicated to the defense that he intends to introduce through Mr. Novick only Government Exhibits 1800, 1802, and 1200.  Though the Special Counsel did not reference Government Exhibit 1801, he did not respond to an earlier request from the defense regarding the scope of Mr. Novick's anticipated testimony on this topic.  The defense therefore moves to exclude Government Exhibit 1801 and related questioning about the substance of that document out of an abundance of caution.

the Special Counsel to examine Mr. Novick regarding his understanding of Mr. Joffe's political and business motivations, but such testimony is irrelevant and prejudicial and should be excluded.

As background, the Special Counsel obtained the "Crimson Rhino (CR)" report from government witness Jared Novick, the co-founder and CEO of BitVoyant, a cyber defense and intelligence company in which Rodney Joffe had an ownership interest.  The report, which the defense understands involved an analysis into potential money transfers from Russia to the United States involving various individuals associated with the Trump campaign, including Paul Manafort, Carter Page, and Roger Stone—*i.e.*, not the same allegations at issue in this case—contains the following "preliminary result": "[o]bserved no connection that clearly indicated direct communications between said individuals and Russia that would imply money transfers from Russia to the United States within the last 90 days."  Gov. Ex. 1801 at 1; *see also* Gov. Ex. 1802 (document produced by Novick, listing Trump associates).[2]  The Special Counsel apparently intends to suggest through testimony from Mr. Novick that the report's findings are suggestive of a lack of connection between the Trump Organization and Alfa Bank (the allegations at issue here) and that Mr. Sussmann was (by some unknown date) in possession of the report.

But Government Exhibit 1801 was *not* found in Mr. Sussmann's office.  The report that *was* found in Mr. Sussmann's office—which is similarly titled "BitVoyant – Crimson Rhino (CR)"—contained the header "Attorney Client Privileged" and was withheld from production to the Special Counsel on the basis of privilege.  And as the defense explained to the Special Counsel on May 16, 2022, "the 'BitVoyant Crimson Rhino (CR)' document found in Mr. Sussmann's office

---

[2] The defense understands that Government Exhibit 1802 contains a list of Trump affiliates into whom Mr. Joffe requested Mr. Novick investigate in connection with the Crimson Rhino (CR) report.  The exhibit is thus related to Government Exhibit 1801, irrelevant to this case, and inadmissible for the same reasons.

is different" from Government Exhibit 1801—and is in fact exculpatory. *See* May 16, 2022 Email fr. S. Berkowitz, Latham & Watkins LLP, to A. DeFilippis, Special Counsel's Office, Department of Justice. The defense further explained that it could not "describe . . . exactly what the exculpatory nature of the Bitvoyant Crimson Rhino document[] is or the material differences between the two documents" because of the assertion of attorney client privilege, but that it would be willing to request that the Court review both documents *in camera* to provide context for evaluating the proper scope of Mr. Novick's testimony. *Id.*

Despite these representations, the Special Counsel has failed to respond to the defense's questions regarding whether he nevertheless intends to examine Mr. Novick about Government Exhibit 1801. The Special Counsel does, however, intend to introduce, at a minimum, Government Exhibits 1800 (a photo of Mr. Novick, Mr. Joffe, and others), 1802 (a list of Trump affiliates), and 1200 (a chain containing, in part, an email from Victor Oppleman to Zachary Kanner that neither Mr. Novick, Mr. Joffe, nor Mr. Sussmann received, stating, "do what you can and don't explain any of our limitations or whatever to them"). Testimony regarding Government Exhibits 1801 and 1802 would impermissibly encroach on the attorney-client privilege and would be irrelevant and prejudicial under the Court's prior rulings. Government Exhibit 1200 is similarly irrelevant. Likewise, other avenues of examination into Mr. Novick's understanding of Mr. Joffe's political and business motivations, which are entirely disconnected from Mr. Sussmann's knowledge or understanding, would run afoul of Rules 402 and 403. The Special Counsel should be precluded from introducing such testimony.

**ARGUMENT**

**A.     The Special Counsel Cannot Invite the Jury to Draw a Negative Inference from Privileged Material**

The Special Counsel should not be permitted to suggest, based on the similarity in titles of the two documents, that Government Exhibit 1801 (or the conclusions and findings therein) is the same or substantially similar to the privileged document found in Mr. Sussmann's office.  Doing so would be tantamount to inviting the jury to impermissibly draw a negative inference about the substance of privileged information.  *See Parker v. Prudential Ins. Co. of Am.*, 900 F.2d 772, 775 (4th Cir. 1990) (holding a fact-finder may not draw a negative inference about the substance of information withheld on the basis of privilege because it "would intrude upon the protected realm of the attorney-client privilege"); *Nabisco, Inc. v. PF Brands, Inc.*, 191 F.3d 208, 226 (2d Cir. 1999) ("[W]e know of no precedent supporting [an adverse] inference based on the invocation of the attorney-client privilege."), *abrogated on other grounds by Moseley v. V. Secret Catalogue*, *Inc.,* 537 U.S. 418, 425-48 (2003).

Such an inference would be particularly misleading in this instance, moreover, given that (1) the documents are in fact not the same; and (2) the privileged document found in Mr. Sussmann's office is harmful, not helpful, to the Special Counsel's apparent theory that Mr. Sussmann was aware of information that, in the Special Counsel's view, calls into question the factual accuracy of the Alfa Bank allegations Mr. Sussmann brought to the FBI.  *Cf. Napue v. People of State of Ill.*, 360 U.S. 264, 269 (1959) ("The principle that [the government] may not knowingly use false evidence, including false testimony, to obtain a tainted conviction" is "implicit in any concept of ordered liberty."); *United States v. Ausby*, 916 F.3d 1089, 1092 (D.C. Cir. 2019) (the government cannot knowingly "introduce[] false or misleading testimony or allow[] it to go uncorrected . . . ") (internal citations and quotation marks omitted).

4

So that the Court can more meaningfully evaluate this argument, the defense has obtained consent from Mr. Sussmann's client to provide both documents to the Court for *in camera* review subject to the understanding that such *in camera* review would not result in a waiver of the privilege. *See United States v. Zolin*, 491 U.S. 554, 569 (1989) ("*in camera* review does not destroy the privileged nature" of contested documents); *New York v. Mayorkas*, No. 20-CV-1127 (JMF), 2021 WL 2850631, at *6 (S.D.N.Y. July 8, 2021) ("[T]he Court agrees with Defendants that their submission of the documents to the Court for its *in camera* review did not constitute waiver.").

### B.    Government Exhibits 1801, 1802, and 1200 are Inadmissible

Absent the impermissible (and factually incorrect) suggestion that a document containing similar conclusions to Government Exhibit 1801 was found in Mr. Sussmann's office, Government Exhibits 1801 and 1802 (and/or testimony regarding their substance) are entirely irrelevant because the Special Counsel has not identified *any* evidence suggesting that Mr. Sussmann ever saw them.  The same goes for Government Exhibit 1200, which appears to go to potential "limitations" with underlying data collected by Mr. Novick's team, but which Mr. Sussmann does not appear to have ever received.  *Cf. Sleight v. United States*, 82 F.2d 459, 461 (D.C. Cir. 1936) (finding that courts "uniformly condemn" inviting the jury to "convict upon inferences and deductions . . . as to the guilt of the defendant" without "some substantial evidence"); *United States v. Libby*, 467 F. Supp. 2d 1, 15-16 (D.D.C. 2006) (rejecting attempts to "elicit . . . what others were told" as "simply irrelevant to the defendant's state of mind" in a false statements and perjury case); *United States v. George*, 786 F. Supp. 56, 64 (D.D.C. 1992) (without the "crucial link" that "defendant *knew* what information others had," that information is not material to the defendant's state of mind in an obstruction and false statements case); *United States v. Secord*, 726 F. Supp.

845, 848-49 (D.D.C. 1989) (information of which the defendant had no knowledge is necessarily immaterial to the defendant's state of mind, intent, or motive in a false statements case).

As this Court has stated repeatedly, "information about the accuracy of the data will not be admissible unless Mr. Sussmann opens the door" and "conclusions about the data are not relevant" absent evidence that Mr. Sussmann knew about them. *See* Mot. in Limine Op. & Order at 10, ECF No. 121 (hereinafter, "Mot. In Limine Op. & Order"). Because there is no evidence that places Government Exhibit 1801 in Mr. Sussmann's possession, let alone that places it in Mr. Sussmann's possession before September 19, 2016, the exhibit is irrelevant and should be excluded.

### C.    Testimony Regarding Mr. Novick's Understanding of Mr. Joffe's Motivations Is Irrelevant

For many of the same reasons described above, the Special Counsel should also be precluded from examining Mr. Novick regarding his beliefs as to Mr. Joffe's political and business motivations in gathering the data he ultimately provided to Mr. Sussmann. The defense expects, based on Mr. Novick's grand jury testimony and other material provided to the defense pursuant to the Jencks Act, 18 U.S.C. § 3500, that the Special Counsel will seek to elicit testimony from Mr. Novick regarding statements made to him by Mr. Joffe regarding the gathering of data and that the project was driven by Mr. Joffe's politics and his business desire to put the company "on the map." *See, e.g.*, JN-04 at 46:20-47:9. Apart from the fact that statements made by Mr. Joffe to Mr. Novick about the purpose of the project are inadmissible hearsay, *see* Fed. R. Evid. 802, the Special Counsel has not identified *any* evidence suggesting that Mr. Novick had any idea of what Mr. Sussmann actually knew regarding Mr. Joffe's motivations.

To the contrary, though Mr. Novick has previously stated that Mr. Joffe told Mr. Novick that he "knew a guy in the Democratic Party, or one person removed from the Democratic Party, who had an 'avenue to display the findings,'" *see* JN-02 at 4, Mr. Novick also conceded that he

did not know whether the individual was Mr. Sussmann and, in fact, that when he conducted an internet search for Mr. Sussmann, he "did not think it was his face that he had [previously identified]." *Id.* at 5.   Because Mr. Novick cannot therefore testify to anything regarding Mr. Sussmann's knowledge or state of mind, his testimony is irrelevant. *Cf.* Mot. in Limine Op. & Order at 10 (emails between researchers and Mr. Joffe that were not sent or received by Mr. Sussmann not relevant); *id.* at 5-6 ("The Special Counsel has not proffered sufficient evidence showing that Mr. Sussmann had concerns that the data was obtained inappropriately, or that he had any independent knowledge about the data collection beyond whatever he may have learned from Mr. Joffe through privileged communications.").   In other words, because the Special Counsel has not provided any evidence of the "crucial link" between what others knew and what Mr. Sussmann knew, such evidence should be excluded as irrelevant. *George*, 786 F. Supp. at 64; *Secord*, 726 F. Supp. at 848-49 ("Defendant's state of mind can come only from what he hears or sees.").

In the alternative, such evidence should be excluded pursuant to Federal Rule of Evidence 403 as unduly prejudicial because, among other things, it runs the risk of confusing the jury by conflating Mr. Joffe's motivations with Mr. Sussmann's.  *See Libby*, 467 F. Supp. 2d at 15-16 (excluding evidence that would "cause confusion of the issues" and "needlessly draw the jury's attention away from the actual controversies in this case"); *United States v. Fonseca*, 435 F.3d 369, 376 (D.C. Cir. 2006) (affirming exclusion of evidence that would have led to a "'mini-trial' on a collateral matter").   At bottom, Mr. Joffe's political and business motivations for gathering the data, untethered to anything Mr. Sussmann knew about such motivations, simply do not bear on the narrow false statement charge at issue here.

**CONCLUSION**

For the reasons discussed above, the Special Counsel should be precluded from introducing or questioning Mr. Novick about (1) Government Exhibits 1801, 1802, and 1200, and any statements contained therein related to the accuracy of the data or its conclusions; (2) implying that a document consistent with Government Exhibit 1801 was found in Mr. Sussmann's office; and (3) Mr. Novick's anticipated testimony regarding his belief as to Mr. Joffe's political and business motivations.

Dated:  May 24, 2022

Respectfully submitted,

*/s/Sean M. Berkowitz*
Sean M. Berkowitz (*pro hac vice*)
LATHAM & WATKINS LLP
330 North Wabash Avenue
Suite 2800
Chicago, IL 60611
Tel: (312) 876-7700
Fax: (312) 993-9767
Email: sean.berkowitz@lw.com

Michael Bosworth (*pro hac vice*)
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
Tel: (212) 906-1200
Fax: (212) 751-4864
Email: michael.bosworth@lw.com

Natalie Hardwick Rao (D.C. Bar # 1009542)
Catherine J. Yao (D.C. Bar # 1049138)
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004
Tel: (202) 637-2200
Fax: (202) 637-2201
Email: natalie.rao@lw.com
Email: catherine.yao@lw.com