1

```
UNCLASSIFIED, COMMITTEE SENSITIVE
```

EXECUTIVE SESSION

PERMANENT SELECT COMMITTEE ON INTELLIGENCE,

U.S. HOUSE OF REPRESENTATIVES,

WASHINGTON, D.C.

INTERVIEW OF:   MICHAEL SUSSMAN

Monday, December 18, 2017

Washington, D.C.

The interview in the above matter was held in Room HVC-304, the Capitol,

commencing at 10:06 a.m.

Present:   Representatives Conaway, Schiff, and Heck.



GOVERNMENT EXHIBIT
**0056**
21-CR-582 CRC

```
UNCLASSIFIED, COMMITTEE SENSITIVE
```

SCO-023511

Appearances:


For the PERMANENT SELECT COMMITTEE ON INTELLIGENCE:


KASH PATEL, SENIOR COUNSEL FOR COUNTERTERRORISM

MARK STEWART, GENERAL COUNSEL

THOMAS EAGER, MINORITY ASSOCIATE PROFESSIONAL STAFF MEMBER




For MICHAEL SUSSMANN:


KATHRYN RUEMMLER, ESQ.

NATALIE RAO, ESQ.

NICK MCQUAID, ESQ.

Latham & Watkins LLP

555 Eleventh Street, NW Suite 1000

Washington, D.C. 20004-1304

SCO-023512

UNCLASSIFIED, COMMITTEE SENSITIVE

MR. PATEL:   Good morning.   This is a transcribed interview of Michael

Sussmann.   Thank you for speaking to us today.   For the record, I am Kash

Patel, senior counsel here at the House Permanent Select Committee on

Intelligence for the majority.   There are also a number of other members and staff

present on behalf of HPSCI who will introduce themselves as the proceedings get

underway.

But before we begin, I wanted to state a few things for the record.   The

questioning will be conducted by members and staff.   During the course of this

interview, members and staff may ask questions during their allotted time period.

Some questions may seem basic, but that is because we need to clearly establish

facts and understand the situation.   Please do not assume we know any facts you

have previously disclosed as part of any other investigation or review.

This interview will be conducted at the unclassified level.

We ask that you give complete and fulsome replies to questions, based on

your best recollection.   If a question is unclear or you are uncertain in your

response, please let us know.   And if you do not know the answer to a question or

cannot remember, simply say so.

You are entitled to have counsel present for you during this interview, and I

see that you have brought them with you.

If at this time, counsel could please state their names for the record.

MS. RUEMMLER:   Good morning.   Kathryn Ruemmler from Latham &

Watkins on behalf of the witness.

MR. MCQUAID:   Good morning.   Nick McQuaid from Latham & Watkins

on behalf of the witness.

UNCLASSIFIED, COMMITTEE SENSITIVE

4
UNCLASSIFIED, COMMITTEE SENSITIVE

MS. RAO:   Natalie Rao from Latham & Watkins on behalf of the witness.

MR. PATEL:   Thank you.   The interview will be transcribed.   There is a reporter making a record of these proceedings so we can easily consult a written compilation of your answers.

Because the reporter cannot record gestures, we ask that you answer verbally.   If you forget to do this, you might be reminded to do so.   You may also be asked to spell certain terms or unusual phrases.

Consistent with the committee's rules of procedure, you and your counsel, upon request, will have a reasonable opportunity to inspect the transcript of this interview in order to determine whether your answers were correctly transcribed. The transcript will remain in the committee's custody, and the committee also reserves the right to request your return for additional questions, should the need arise.

The process for the interview will be as follows:   The majority will be given 45 minutes to ask questions.   Then the minority will be given 45 minutes to ask questions.   Thereafter, we will take a 5-minute break if you desire, after which time the majority will be given 15 minutes to ask questions and the minority will be given 15 minutes to ask questions.   These time limits will be adhered to, and these 15-minute rounds will continue until questioning has been completed.   Time will be kept for each portion of the interview, with warnings given at the 5- and 1-minute marks, respectively.

To ensure confidentiality, we ask that you do not discuss this interview with anyone other than your attorneys.   You are reminded that it is unlawful to deliberately provide false information to Members of Congress or staff.   And lastly, the record will reflect that you are voluntarily participating in this interview,

UNCLASSIFIED, COMMITTEE SENSITIVE

UNCLASSIFIED, COMMITTEE SENSITIVE

which will be under oath.

Mr. Sussmann, could you raise your right hand to be sworn.

Do you swear or affirm the testimony you are about to give is the truth, the whole truth, and nothing but the truth?

MR. SUSSMANN:   I do.

Redacted

UNCLASSIFIED, COMMITTEE SENSITIVE

Redacted

SCO-023516

UNCLASSIFIED, COMMITTEE SENSITIVE

Redacted

SCO-023517

8

UNCLASSIFIED, COMMITTEE SENSITIVE



UNCLASSIFIED, COMMITTEE SENSITIVE

SCO-023518

UNCLASSIFIED, COMMITTEE SENSITIVE



SCO-023519

UNCLASSIFIED, COMMITTEE SENSITIVE

Redacted

UNCLASSIFIED, COMMITTEE SENSITIVE

Redacted

UNCLASSIFIED, COMMITTEE SENSITIVE

UNCLASSIFIED, COMMITTEE SENSITIVE

Redacted

UNCLASSIFIED, COMMITTEE SENSITIVE



UNCLASSIFIED, COMMITTEE SENSITIVE



UNCLASSIFIED, COMMITTEE SENSITIVE

Redacted

UNCLASSIFIED, COMMITTEE SENSITIVE



UNCLASSIFIED, COMMITTEE SENSITIVE

Redacted

UNCLASSIFIED, COMMITTEE SENSITIVE



UNCLASSIFIED, COMMITTEE SENSITIVE



UNCLASSIFIED, COMMITTEE SENSITIVE

Redacted

UNCLASSIFIED, COMMITTEE SENSITIVE

# Redacted

UNCLASSIFIED, COMMITTEE SENSITIVE

UNCLASSIFIED, COMMITTEE SENSITIVE



UNCLASSIFIED, COMMITTEE SENSITIVE



Redacted

UNCLASSIFIED, COMMITTEE SENSITIVE



SCO-023534

UNCLASSIFIED, COMMITTEE SENSITIVE



SCO-023535

UNCLASSIFIED, COMMITTEE SENSITIVE



SCO-023536

UNCLASSIFIED, COMMITTEE SENSITIVE

Redacted

SCO-023537

UNCLASSIFIED, COMMITTEE SENSITIVE



Q     Okay, fair enough.   What was your contact with the CIA about?

UNCLASSIFIED, COMMITTEE SENSITIVE

A    So the contact with the CIA was about reporting to them information that was reported to me about possible contacts, covert or at least nonpublic, between Russian entities and various entities in the United States associated with the -- or potentially associated with the Trump Organization.

Q    And when did that contact with the CIA occur, month and year?

A    February 2017.

Q    Where did you get that information from to relay to the CIA?

A    From a client of mine.

Q    Why did you go to the CIA?

A    I initially reached out to the CIA --

MS. RUEMMLER:   Just to be very careful here to make sure that you don't disclose any attorney-client or work product privilege information.   I think you can talk generally about your general purpose in seeking the meeting, but just be careful not to disclose any communications between you and your client.

A    Okay.   I'm sorry, so was the question why?

        BY MR. PATEL:

Q    Yes.

A    Well, so the purpose of the meeting was to share -- you may need to repeat your last question.   I feel like I'm repeating myself.   The purpose was to share information that --

Q    Right.

A    -- we had that might be --

Q    You did say, right, that you had -- you'd received information from a client -- I'm not asking who -- that may be germane to the 2016 election and associates of the Trump campaign or people affiliated with the Trump campaign.

UNCLASSIFIED, COMMITTEE SENSITIVE

UNCLASSIFIED, COMMITTEE SENSITIVE

So my follow-up question was, why did you go to the CIA with this information?

A     Oh, I'm sorry.   And I apologize.   I remember what I was going to say. It was -- it was, in large part, in response to President Obama's post-election IC review of potential Russian involvement in the election.   And in that regard, I had made outreach prior to the change in administration in 2016.   And for reasons known and unknown to me, it took a long time to -- or it took -- you know, it took a while to have a meeting, and so it ended up being after the change in administration.   But --

Q     When did you first reach out to the CIA in this regard?

A     Probably early December, or sometime in December.

Q     2016?

A     2016.

MR. PATEL:   Our time is up.   We'll pick up there when we get off. Mr. Ranking Member.

MR. SUSSMANN:   Okay, thank you.

Redacted

UNCLASSIFIED, COMMITTEE SENSITIVE

UNCLASSIFIED, COMMITTEE SENSITIVE



SCO-023541

UNCLASSIFIED, COMMITTEE SENSITIVE

Redacted

SCO-023542

UNCLASSIFIED, COMMITTEE SENSITIVE



UNCLASSIFIED, COMMITTEE SENSITIVE



UNCLASSIFIED, COMMITTEE SENSITIVE



UNCLASSIFIED, COMMITTEE SENSITIVE



SCO-023546

UNCLASSIFIED, COMMITTEE SENSITIVE



UNCLASSIFIED, COMMITTEE SENSITIVE



SCO-023548

UNCLASSIFIED, COMMITTEE SENSITIVE



SCO-023549

UNCLASSIFIED, COMMITTEE SENSITIVE



SCO-023550

UNCLASSIFIED, COMMITTEE SENSITIVE



UNCLASSIFIED, COMMITTEE SENSITIVE



SCO-023552

UNCLASSIFIED, COMMITTEE SENSITIVE



UNCLASSIFIED, COMMITTEE SENSITIVE



SCO-023554

UNCLASSIFIED, COMMITTEE SENSITIVE



SCO-023555

UNCLASSIFIED, COMMITTEE SENSITIVE



UNCLASSIFIED, COMMITTEE SENSITIVE



UNCLASSIFIED, COMMITTEE SENSITIVE



SCO-023558

UNCLASSIFIED, COMMITTEE SENSITIVE



SCO-023559

UNCLASSIFIED, COMMITTEE SENSITIVE



SCO-023560

UNCLASSIFIED, COMMITTEE SENSITIVE



UNCLASSIFIED, COMMITTEE SENSITIVE

Redacted

SCO-023562

UNCLASSIFIED, COMMITTEE SENSITIVE



UNCLASSIFIED, COMMITTEE SENSITIVE



UNCLASSIFIED, COMMITTEE SENSITIVE



UNCLASSIFIED, COMMITTEE SENSITIVE



SCO-023566

UNCLASSIFIED, COMMITTEE SENSITIVE

Redacted

UNCLASSIFIED, COMMITTEE SENSITIVE



UNCLASSIFIED, COMMITTEE SENSITIVE



UNCLASSIFIED, COMMITTEE SENSITIVE

Redacted

UNCLASSIFIED, COMMITTEE SENSITIVE



UNCLASSIFIED, COMMITTEE SENSITIVE

# Redacted

SCO-023572

UNCLASSIFIED, COMMITTEE SENSITIVE



UNCLASSIFIED, COMMITTEE SENSITIVE



UNCLASSIFIED, COMMITTEE SENSITIVE

# Redacted

Q     No, that's fair.   So let me ask you this question:   When you decided to engage the two principLes, one, Mr. Baker in September, and the general counsel of the CIA in December, you were doing that on your own volition, based on information another client provided you.   Is that correct?

A     No.

Q     So what was -- so did your client direct you to have those conversations?

A     Yes.

Q     Okay.   And your client also was witting of you going to the CIA in February to disclose the information that individual had provided you?

A     Yes.

Q     Back to the FBI.   You obviously had a conversation or you had a meeting at the FBI with Mr. Baker.   Was there anybody else in the room from the FBI in that room with you?

A     No.

Q     Did you ever meet with any -- subsequent to that meeting, did you ever meet with any other representative of the FBI concerning that information that

UNCLASSIFIED, COMMITTEE SENSITIVE

you were sharing with Mr. Baker?

     A    Not that I -- I mean, no.   I was going to say not that I recall, but that would be a tough one to not recall.

     Q    So it was just you and Mr. Baker at the FBI.   There was no other -- no other individuals in the room?

     A    Correct.

     Q    And did you give the same -- did you give the documents that you gave CIA in February of '17 to Mr. Baker in September of '16?

     A    I left documents with Mr. Baker.   I just want to be careful.   I don't recall if they were the same.   I mean, I can't -- I don't -- I left documents with Mr. Baker.   I left documents with CIA.   I don't know when you say they're the same, I'm not sure if they were identical or --

     Q    So you may have left some different documents with Mr. Baker in September that were --

     A    Or an update, or one -- a document may have been updated.

     Q    Okay.   So the batch that the CIA received in February was presumably different than the batch that the FBI received in September, the preceding year, generally speaking?

     A    Well, I just don't want to say that they're --

     Q    The exact same.

     A    -- the same.

     Q    And there was no FBI follow-up at all to you or your client regarding that information that you're aware of?

     A    No.

     Q    Okay.   I want to ask you, so you mentioned that your client directed

UNCLASSIFIED, COMMITTEE SENSITIVE

UNCLASSIFIED, COMMITTEE SENSITIVE

you to have these engagements with the FBI and the CIA and to disseminate the information that client provided you.   Is that correct?

A     Well, I apologize for the double negative.   It isn't not correct, but when you say my client directed me, we had a conversation, as lawyers do with their clients, about client needs and objectives and the best course to take for a client.

And so it may have been a decision that we came to together.   I mean, I don't want to imply that I was sort of directed to do something against my better judgment, or that we were in any sort of conflict, but this was -- I think it's most accurate to say it was done on behalf of my client.

Q     Okay.   At what time did your -- when did your client approach you with this information that you shared with the FBI and CIA?

A     I think I already answered that.

Q     Was that prior to September of '16, or was it in the summer?   Was it in June?   So you said your client -- you received information in June.   Is that correct?   June or summer.

A     I think I was directed by my lawyer to give you a season.   So I think I said summer.

Q     Okay, fair enough.   I apologize.   Did you talk to any individuals or persons that you knew were journalists or representatives of media organizations with the same information that you brought to the attention of the FBI and CIA?

A     No.   But I think that the -- can I rephrase your question?

Q     Sure.

A     I did speak with people about the nature of the same -- the nature of the information.   But in terms of providing the same information, the answer is no. But I don't want to give you a no to that answer and I feel like it would be

UNCLASSIFIED, COMMITTEE SENSITIVE

UNCLASSIFIED, COMMITTEE SENSITIVE

misleading.   So I didn't provide the same information to anyone else, but I did

discuss -- I did discuss the subject matter of what --

Q    What you were aware of?

MS. RUEMMLER:   To members of the media, just to be clear --

MR. SUSSMANN:  Yes.   Okay.

MS. RUEMMLER:   -- because that was the question that was asked.

BY MR. STEWART:

Q    But you never gave those documents to any members or journalists

that you knew were media individuals?

A    No.   I provided -- I provided documents, and I can't -- I can't say that

they were the same documents or not.

Q    Did you ever --

A    They weren't dissimilar in any meaningful way.

Q    Did you give those documents to anybody that you knew would

further -- would -- that you had reason to believe would disseminate that

information to the media?

A    No.

Q    In other words, did you give the information to a third party with the

understanding that that person may provide that information?

A    No.

Q    So the information you had you only gave to the FBI, the CIA.   You

never disseminated those materials to anybody.   No other third party other than

the FBI and the CIA?

A    No.

Q    Okay.

UNCLASSIFIED, COMMITTEE SENSITIVE

A    No, no.   No, mean --

Q    No, meaning you did disseminate?

A    Yes.   And I apologize.   I thought I was clear.

Q    So who else did you disseminate that information to, in terms of hard copies of documents?

A    Just to be clear, whether it's similar information or the exact information, I'm not clear.

Q    Okay.

A    But I shared that information with The New York Times --

Q    Okay.

A    -- The Washington Post, and a writer or reporter for Slate.

Q    And what was the timeframe of those engagements with those media representatives?   Was it in 2016 or was it this year, in 2017?

A    2016.

Q    After the election?

A    No.

Q    Okay.   So all of those were before the election?

A    Yes.

Q    Would you be willing to tell us who you met with at The New York Times?

MS. RUEMMLER:   I think you can answer that.   Just be precise whether it's meeting or by phone or --

MR. SUSSMANN:   So it was Eric Lichtblau (ph) with The New York Times.

BY MR. STEWART:

Q    And who did you -- were there others?

UNCLASSIFIED, COMMITTEE SENSITIVE

A    No.

Q    Who did you meet with at The Washington Post?

A    Ellen Nakashima.

Q    And Slate?

A    Frank Foer, F-o-e-r, F-e-o-r.   Franklin.

Q    Were you aware -- are you aware that the information you provided actually made its way into written articles that were published as a result of the information you shared?

MS. RUEMMLER:   If you know.

MR. SUSSMANN:   Yes.

        BY MR. STEWART:

Q    And what are the dates of those articles, to the best of your knowledge?

A    So the Slate article was the end of October, early November; and the Times made a passing reference to it around that time as well.

Q    Late October, early November?

A    Uh-huh.

Q    And that information, to the best of your knowledge, that was reported in those publications, was of the same flavor or generally similar to the information you conveyed to the FBI and CIA?

A    Yes.

MR. STEWART:   Sir, do you have any more questions on this?   I'm going to go through a couple.

MR. CONAWAY:   So who came first, the FBI, then the journalists, or the journalists, the FBI, CIA?   What was the pecking order?

UNCLASSIFIED, COMMITTEE SENSITIVE

UNCLASSIFIED, COMMITTEE SENSITIVE

MR. SUSSMANN:   Journalists, FBI.   Well, they're sort of mixed.

Journalists and FBI are mixed and then CIA later.

MR. CONAWAY:   All right, thanks.

Redacted

UNCLASSIFIED, COMMITTEE SENSITIVE



SCO-023582

UNCLASSIFIED, COMMITTEE SENSITIVE



UNCLASSIFIED, COMMITTEE SENSITIVE

Redacted

Q     Okay.   Back to your client.   I know you can't divulge the name of your client.   I asked you whether you -- whether that client was Glenn Simpson, Peter Fritsch, or Thomas Kattan (ph), which you confirmed that it was none of those individuals.   Was your client Fusion GPS or Bean LLC?

A     So my client was not Fusion GPS.   And I have never heard of Bean LLC.

Q     Okay.

A     Which also, I think, allows me to say it was not Bean LLC.   I don't know Bean LLC.

Q     Fair enough.   Okay.   Actually, kind of a segue, because I want to talk a little bit about Fusion GPS.   Redacted

Redacted

UNCLASSIFIED, COMMITTEE SENSITIVE

UNCLASSIFIED, COMMITTEE SENSITIVE



UNCLASSIFIED, COMMITTEE SENSITIVE



SCO-023586

UNCLASSIFIED, COMMITTEE SENSITIVE



SCO-023587

UNCLASSIFIED, COMMITTEE SENSITIVE



UNCLASSIFIED, COMMITTEE SENSITIVE

SCO-023588

UNCLASSIFIED, COMMITTEE SENSITIVE



UNCLASSIFIED, COMMITTEE SENSITIVE



UNCLASSIFIED, COMMITTEE SENSITIVE



SCO-023591

UNCLASSIFIED, COMMITTEE SENSITIVE

Redacted

SCO-023592

UNCLASSIFIED, COMMITTEE SENSITIVE



SCO-023593

UNCLASSIFIED, COMMITTEE SENSITIVE

Redacted

UNCLASSIFIED, COMMITTEE SENSITIVE

SCO-023594

UNCLASSIFIED, COMMITTEE SENSITIVE



Redacted

UNCLASSIFIED, COMMITTEE SENSITIVE

Redacted

UNCLASSIFIED, COMMITTEE SENSITIVE

SCO-023597

UNCLASSIFIED, COMMITTEE SENSITIVE



SCO-023598

UNCLASSIFIED, COMMITTEE SENSITIVE



UNCLASSIFIED, COMMITTEE SENSITIVE



SCO-023600

UNCLASSIFIED, COMMITTEE SENSITIVE

# Redacted

UNCLASSIFIED, COMMITTEE SENSITIVE

# Redacted

UNCLASSIFIED, COMMITTEE SENSITIVE

