**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** *v.* **MICHAEL A. SUSSMANN,** *Defendant*. | Case No. 1:21-cr-00582 (CRC) |

### DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL

Defendant Michael A. Sussmann, by and through his counsel, respectfully moves for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29(a).

### INTRODUCTION

The Special Counsel charged Mr. Sussmann with a single count of making a false statement to the Federal Bureau of Investigation ("FBI") on September 19, 2016, in violation of 18 U.S.C. § 1001(a)(2). Indictment ¶ 46. Specifically, the Indictment alleges that Mr. Sussmann told then-General Counsel of the FBI Jim Baker that "he was not acting on behalf of any client in conveying particular allegations concerning" Donald Trump and Alfa Bank. *Id.* For the last 7 days, the Special Counsel presented his case-in-chief, offering the testimony of 16 witnesses and over 150 exhibits. But quantity is no substitute for quality. The Special Counsel has failed to prove the basic elements of the lone false statement in issue: that (1) Mr. Sussmann, in fact, made the alleged statement; (2) the alleged statement was false; (3) the alleged statement was material; and (4) Mr. Sussmann made the alleged statement knowingly and willfully, i.e., with intent. Failure to establish any one of these elements would alone be sufficient to warrant judgment of acquittal. Yet, the Special Counsel has failed to prove any them such that a reasonable juror could conclude

the Special Counsel has proven his case beyond a reasonable doubt. The Court should therefore grant Mr. Sussmann's Motion for Acquittal.

## BACKGROUND

In the summer of 2016, Mr. Sussmann, a prominent national security and cybersecurity attorney, received suspicious data from a longtime client, Rodney Joffe, that suggested a secret communications channel between the Trump Organization and a Russian bank called Alfa Bank and presented serious national security concerns (the "Alfa Bank allegations"). Indictment ¶ 18; J. Baker Test., Trial Tr. at 841:4-15, 846:23-847:2 (May 19, 2022, AM); M. Elias Test., Trial Tr. at 707:10-15 (May 18, 2022, PM). A respected cyber expert, Rodney Joffe, provided this data to Mr. Sussmann at a time when suspicions about Trump's ties to Russia were being investigated and reported on. *See* Indictment ¶¶ 14, 16-18; J. Baker Test., Trial Tr. at 845:17-23, 882:5-12 (May 19, 2022, AM); J. Baker Test., Trial Tr. at 1074:25-1075:3 (May 19, 2022, PM) (noting the "tremendous amount of activity relative to a Russia investigation that was going on"); D. Martin Test., Trial Tr. at 354:1-5 (May 17, 2022, AM); S. DeJong Test., Trial Tr. at 526:16-527:12 (May 17, 2022, PM). Given the potential serious national security implications, Mr. Joffe sought the help of Mr. Sussmann to share these allegations with the American public. *See* GX-56, at 66-67 (Mr. Sussmann testifying to Congress). To that end, they reached out to reporter Eric Lichtblau of The New York Times who looked into the allegations and began working on a story. J. Baker Test., Trial Tr. at 1181:20-1184:18 (May 20, 2022, AM); Indictment ¶ 25.

Meanwhile, on September 18, 2016, Mr. Sussmann texted his contact at the FBI, then-General Counsel James Baker, to seek a meeting in order to alert him to this development. J. Baker Test., Trial Tr. at 797:11-14 (May 18, 2022, PM). Mr. Sussmann told Mr. Baker he had "sensitive" and "time-sensitive" information, and they scheduled a meeting for the following day. GX-1500,

2

at 4.  Mr. Sussmann added that he was coming "not on behalf of a client or company" but to "help the Bureau."  *Id.*

The next day on September 19, 2019, Mr. Sussmann met with Mr. Baker at FBI headquarters to explain the Alfa Bank allegations and provide Mr. Baker with the underlying raw data and analyses.  *See* J. Baker Test., Trial Tr. at 1040:8-10 (May 19, 2022, PM); Indictment ¶¶ 18-19.  Further, Mr. Sussmann notified Mr. Baker that a major news outlet soon planned to publish a story discussing the allegations.  *See* J. Baker Test., Trial Tr. at 844:22-848:16 (May 19, 2022, AM); Baker Test., Trial Tr. at 1055:5-11 (May 19, 2022, PM); J. Baker Test., Trial Tr. at 1219:12-15 (May 20, 2022 AM).  Only Mr. Sussmann and Mr. Baker attended this meeting.  J. Baker Test., Trial Tr. at 840:8-9 (May 19, 2022, AM); J. Baker Test., Trial Tr. (May 19, 2022, PM), at 1058:21-1059:11.  Neither took notes.  J. Baker Test., Trial Tr. (May 19, 2022, PM), at 1057:15-1058:2.  Mr. Sussmann made clear that he was not asking Mr. Baker to do anything.  *See* J. Baker Test., Trial Tr. at 1219:16-21 (May 20, 2022, AM).

According to Mr. Baker, he shortly thereafter relayed information about the meeting to Assistant Director E. William "Bill" Priestap of the FBI's Counterintelligence Division and, at some point after that, to former FBI Deputy General Counsel Trisha Anderson, among others.  J. Baker Test., Trial Tr. at 852:18-857:18, 870:7-876:12 (May 19, 2022, AM); J. Baker Test., Trial Tr. at 1234:6-9 (May 20, 2022, AM).  Based on notes taken by Mr. Priestap and Ms. Anderson, Mr. Baker communicated the gist of the Alfa Bank allegations and made clear that the information had come from "Prominent Cyber People" or "cyber academics."  GX-242; GX-243.  Mr. Baker apparently also notified Mr. Priestap that Mr. Sussmann "represent[ed] DNC, Clinton Foundation, etc.," GX-243, although Mr. Baker testified that he "must have told Bill [Priestap] about the DNC and the *Clinton campaign*," not the Clinton Foundation.  J. Baker Test., Trial Tr. at 1127:14-15

3

(May 19, 2022, PM) (emphasis added).  For his part, Mr. Priestap does not remember meeting with Mr. Baker and could not testify one way or the other whether it was, in fact, Mr. Baker who provided him the information that formed the basis of his notes.  E.W. Priestap Test., Trial Tr. at 1466:22-1467:18 (May 23, 2022, AM).

Despite Mr. Sussmann's known political affiliations, the FBI promptly began investigating the Alfa Bank allegations because of their national security implications and because the imminent publication of a news story posed an obvious risk:  once the alleged secret communications channel became public, said channel would evaporate, rendering a successful FBI investigation into the channel impossible.  J. Baker Test., Trial Tr. at 849:5-6, 866:9-967:4 (May 19, 2022, AM) ("you don't want the bad guys to know that you're looking at them"); J. Baker Test., Trial Tr. at 1184:24-1185:11 (May 20, 2022, AM).  The FBI accordingly reached out to The New York Times to ask them to hold the story while they investigated.  J. Baker Test., Trial Tr. at 884:7-885:17 (May 19, 2022, AM).  The New York Times obliged.  *Id.* at 913:3-915:16; J. Baker Test., Trial Tr. at 1187:5-11 (May 20, 2022, AM).

Meanwhile, the FBI opened an investigation to evaluate the data and determine whether the allegations raised cause for concern.  *See, e.g.*, S. Hellman Test., Trial Tr. (May 19, 2022, AM), at 371:20-372:11.  During the FBI's investigation, the FBI knew Mr. Sussmann represented the Democratic National Committee ("DNC") based on evidence replete with such references.  *See* J. Baker Test., Trial Tr. at 1053:22-1054:1 (May 19, 2022, PM) ("in [Mr. Baker's] mind [Mr. Baker] knew that [Mr. Sussmann] had been acting as a lawyer for [the DNC and Hillary For America] in connection with the hack"); DX-524 (saying, in Gaynor's handwritten briefing sheet, "Michael Susman[n] DNC Attorney"); R. Gaynor Test., Trial Tr. at 1547:21-1548:2 (May 23, 2022, AM).  To the extent some line agents were unaware of Mr. Sussmann's identity or political affiliations,

4

that was because FBI leadership "made a determination not to share the identity of Mr. Sussmann with the field." R. Gaynor Test., Trial Tr. at 1598:11-16 (May 23, 2022, PM). Special Agent Ryan Gaynor, for example, said he "didn't want to share Mr. Sussmann's name with the agents" because, "if the agents had known there was possible political motivation here, that might have colored the way they conducted the investigation." *Id.* at 1601:10-16. Notwithstanding FBI's fulsome knowledge concerning Mr. Sussmann's background, the FBI's investigation into the Alfa Bank allegations proceeded without delay, and the FBI determined the allegations were unsubstantiated. *See, e.g.*, R. Gaynor Test., Trial Tr. at 1513:7-11 (May 23, 2022, AM); S. Hellman Test., Trial Tr. at 378:12-379:12 (May 19, 2022, AM); J. Baker Test., Trial Tr. at 922:1 (May 19, 2022, AM).

Months later in January 2017, Mr. Sussmann was introduced to retired Central Intelligence Agency ("CIA") officer Mark Chadason, and sought to convey the Alfa Bank and other allegations and requested a meeting with a senior CIA official. M. Chadason Test., Trial Tr. at 1329:15-20 (May 20, 2022, PM). When Mr. Chadason met with Mr. Sussmann, Mr. Sussmann repeatedly told him he had a client, as reflected by Mr. Chadason's formal memorandum memorializing their meeting. *See* GX-809, at 4-5. Mr. Sussmann explained various details about his client, too, including that his client did "not want to be known," was "an engineer with [a] number of patents," had "various projects," "worked with [the Intelligence Community] before," and that his client was "a Republican." *Id.* Mr. Chadason's notes also confirmed that Mr. Sussmann was "openly a Democrat" and "openly told Chadason that he does lots of work with DNC." *Id.* at 4-5. Further, Mr. Sussmann provided Mr. Chadason all this information "because he want[ed] [Mr. Chadason] to pass [it] along to the CIA." M. Chadason Test., Trial Tr. at 1342:22-1343:2 (May 20, 2022, PM).

5

Although Mr. Sussmann "did not" "hide that he was a Democrat," Mr. Chadason appreciated that "[n]o party has a monopoly on patriotism" and otherwise viewed Mr. Sussmann as "credible," so he arranged for Mr. Sussmann to meet with a CIA officer. *Id.* at 1349:15, 1354:13-1355:14, 1357:18-19; *see* Kevin P. Test., Trial Tr. at 1363:16-23 (May 20, 2022, PM). That officer, Kevin P, then met with Mr. Sussmann at the CIA on February 9, 2017, to discuss the Alfa Bank and other allegations. Kevin P. Test., Trial Tr. at 1365:15-17 (May 20, 2022, PM). While the CIA's notes of Mr. Sussmann's meeting with Kevin P. reflected that Mr. Sussmann was not representing a client, Kevin P. had access to Mr. Chadason's materials indicating Mr. Sussmann had a client. *See id.* at 1392:5-1394:20. Kevin P. did not recall asking Mr. Sussmann about this, nor did he ask Mr. Sussmann "if his contact" "was also a client of his." *Id.* at 1393:22-24. Even still, Mr. Sussmann said introducing his contact to the FBI "could be on the table." *Id.* at 1396:9-10. As with the FBI, Mr. Sussmann had come to the CIA "merely . . . to pass along information that he thought would be of interest to the U.S. Government," and left to the CIA "whatever actions they believed were necessary." *Id.* at 1398:2-14.

Nearly five years after these events, the Special Counsel charged Mr. Sussmann with making a single false statement to the FBI during his meeting with Mr. Baker on September 19, 2016. Indictment ¶ 46. In particular, he alleged that Mr. Sussmann falsely told Mr. Baker that "he was not acting on behalf of any client" when, in fact, he was acting on behalf of both the Clinton Campaign and Mr. Joffe. *Id.* Trial began on May 17, 2022. The Special Counsel rested his case-in-chief on May 25, 2022. Given the insufficiency of evidence Special Counsel provided to prove his case,[1] Mr. Sussmann now moves for judgment of acquittal.

---

[1] Given the posture of this Rule 29 Motion, Mr. Sussmann herein relies solely on the evidence and testimony offered during the Special Counsel's case-in-chief, which does not include the testimony of Robby Mook.

6

**LEGAL STANDARD**

Federal Rule of Criminal Procedure 29(a) provides that, before submission to the jury and "[a]fter the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a).

"In passing upon a motion for judgment of acquittal the trial court must view the evidence in the light most favorable to the Government giving full play to the right of the jury to determine credibility, weigh the evidence and draw justifiable inferences of fact." *United States v. Davis*, 562 F.2d 681, 683 (D.C. Cir. 1977). "[I]f there is no evidence upon which a reasonable mind might fairly conclude guilt beyond reasonable doubt, the motion must be granted." *Curley v. United States*, 160 F.2d 229, 232-33 (D.C. Cir. 1947); *see also Davis*, 562 F.2d at 683 (judgment of acquittal is proper "when there is no evidence upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt").

Mr. Sussmann is charged with violating 18 U.S.C. § 1001(a)(2). Criminal liability under 18 U.S.C. § 1001(a)(2) arises when, "in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, [a person] knowingly and willfully . . . makes any materially false, fictitious, or fraudulent statement or representation." 18 U.S.C. § 1001(a)(2). Therefore, to establish a Section 1001(a)(2) offense, the government must prove beyond a reasonable doubt that a defendant: (1) made a "statement or representation"; (2) that was "false, fictitious, or fraudulent"; (3) given "knowingly and willfully"; (4) that was "material[]"; and (5) that was made in a "manner within the jurisdiction of the executive . . . branch of the Government of the United States." *See United States v. Moore*, 612 F.3d 698, 700-01 (D.C. Cir. 2010) (quoting 18 U.S.C. § 1001(a)(2)).

**ARGUMENT**

**A.     The Special Counsel Has Not Proved that Mr. Sussmann Made the Charged Statement**

As a threshold matter, the Special Counsel had to establish beyond a reasonable doubt that Mr. Sussmann, in fact, made the alleged statement to the FBI. That is, the Special Counsel had to prove that, on September 19, 2016, Mr. Sussmann told Mr. Baker "that he was not acting on behalf of any client in conveying particular allegations concerning" Donald Trump and Alfa Bank. Indictment ¶ 46.

The Special Counsel leans on the say-so of Mr. Baker, but Mr. Baker's recollection has been anything but reliable. Mr. Baker testified that he is now "100 percent confident" that Mr. Sussmann said "I'm not here on behalf of any particular client," J. Baker Test., Trial Tr. at 842:13-14 (May 19, 2022, AM), and a text on September 18, 2019, from Mr. Sussmann generally corroborates that view, GX-1500, at 4. But Mr. Baker only arrived as his "present recollection" through the "very particular, well-formulated, specific questions" by the Special Counsel and after being refreshed with notes taken by Bill Priestap. J. Baker Test., Trial Tr. at 1093:15-1094:25, 1128:10-12 (May 19, 2022, PM). And the text on September 18 in no way proves what, if anything, Mr. Sussmann said to Mr. Baker on the operative date—September 19.

Mr. Baker's recollection of his meeting with Mr. Sussmann has otherwise been scattershot. In 2018, for instance, Mr. Baker told Congress that he did not remember Mr. Sussmann "specifically saying that he was acting on behalf of a particular client." J. Baker Test., Trial Tr. at 1084:9-13 (May 19, 2022, PM); GX- 57, at 53. Next, in 2019, Mr. Baker told the Office of Inspector General that Mr. Sussmann had mentioned "some number of people that were his clients." GX-65, at 30; J. Baker Test., Trial Tr. at 960:17-18 (May 19, 2022, AM); J. Baker Test., Trial Tr. at 1101:8 (May 19, 2022, PM). And most recently in 2020, Mr. Baker told the Special

8

Counsel that "Mr. Sussmann did not specify that he was representing a client regarding the matter" and that Mr. Baker did not "ask if he was representing a client." J. Baker Test., Trial Tr. at 1112:16-1114:5 (May 19, 2022, PM). Mr. Baker's inconsistent and (at times) nonexistent memory on this issue makes his now-claimed perfect memory lack any credibility.

The Special Counsel's proof on the fundamental question of what Mr. Sussmann said is additionally deficient because Mr. Baker has no memory of the bulk of what was said during a thirteen-minute phone call between Mr. Sussmann and Mr. Baker on September 21, 2016, two days after their initial meeting. *See* GX-1400, at 93; J. Baker Test., Trial Tr. at 1069:3-1072:4 (May 19, 2022, PM). When pressed, Mr. Baker could not preclude the possibility that Mr. Sussmann had told Mr. Baker that he needed to consult with his client before sharing the name of the news organization that would publish the Alfa Bank story. *See* J. Baker Test., Trial Tr. at 1069:3-1072:4 (May 19, 2022, PM). A text Mr. Sussmann sent to Mr. Baker later that day—in which he told Mr. Baker he was "working on [his] request"—accords with that understanding. *See* GX-1500, at 8.

Consistent with these events, in the ensuing months Mr. Sussmann made clear that he represented clients in connection with the Alfa Bank allegations. When he met with Mr. Chadason, for example, he "did not" "hide that he was a Democrat," was "openly a Democrat," "openly told Chadason that he does lots of work with DNC," and "said that he represents a CLIENT." GX-809, at 4-5; M. Chadason Test., Trial Tr. at 1357:18-19 (May 20, 2022, PM). The FBI, including Mr. Baker, also knew Mr. Sussmann represented clients in connection to the Alfa Bank allegations. In March 2017, the FBI briefed senior Department of Justice leadership and made clear that they understood that Mr. Sussmann *did* represent a client in connection with the Alfa Bank matter. J. Baker Test., Trial Tr. at 1080:7-1082:18 (May, 19, 2022, PM); DX-558; DX-559. If that were

9

an incorrect statement of the facts, a reasonable person would expect Mr. Baker to have corrected the facts as he ostensibly knew them at the time—Mr. Baker did not. J. Baker Test., Trial Tr. at 1081:24-1082:11 (May, 19, 2022, PM).

At bottom, the Special Counsel's presentation of evidence has revealed confusing and inconsistent answers to the most basic question of this case: what did Mr. Sussmann actually say in his meeting with Mr. Baker? Hearing this evidence, a reasonable juror necessarily would have a reasonable doubt as to what exactly Mr. Sussmann said. The Special Counsel has thus not surmounted its first hurdle.

### B. The Special Counsel Has Not Proved Falsity

Next, even if the evidence established what Mr. Sussmann actually said to Mr. Baker, the Special Counsel also had to establish beyond a reasonable doubt that the alleged statement was false. "To 'falsify' means to make an untrue statement that is untrue at the time made and is known to be untrue at the time made." 2 Modern Federal Jury Instructions ¶ 36.01, Instruction 36-12, "False Statements," "False, Fictitious or Fraudulent Statement"; *see, e.g.*, *United States v. Mensah*, 737 F.3d 789, 804 (1st Cir. 2013) (affirming similar instruction).

The alleged statement was not false because the Special Counsel has offered no proof that Mr. Sussmann in fact was at the meeting with Mr. Sussmann "on behalf of" clients. To this point, the Special Counsel principally depends on billing records and testimony that Mr. Sussmann represented to Hillary For America and Mr. Joffe during the relevant time period. *See, e.g.*, L. Seago Test., Trial Tr. at 605:14-18 (May 18, 2022, AM); M. Elias Test., Trial Tr. at 656:4:-664:19 (May 18, 2022, AM); M. Elias Test., Trial Tr. at 715:14-716:7, 728:3-14, 762:21-23 (May 18, 2022, PM). Mr. Sussmann does not contest that he represented these (and other) clients in Summer and Fall 2016. He was, after all, a practicing attorney.

Fatally, the Special Counsel has failed to go the extra step to explain how Mr. Sussmann represented these clients in connection with his specific meeting with Mr. Baker on September 19, 2016. With respect to the Clinton Campaign, the Special Counsel's case-in-chief made clear that Mr. Sussmann did not. Mr. Sussmann was neither instructed nor authorized to go to the FBI on the Clinton Campaign's behalf. Elias Test., Trial Tr. at 757:21-25, 767:21-768:3 (May 18, 2022, PM); D. Fine Test., Trial Tr. at 567:10-23 (May 18, 2022, AM). And Mr. Sussmann's then-law firm partner, Marc Elias said "no," Mr. Sussmann did not "go to the FBI on September 19th on behalf of the [Hillary For America] campaign." M. Elias Test., Trial Tr. at 760:20-25 (May 18, 2022, PM). That makes sense, the record revealed, because Mr. Sussmann bringing allegations to the FBI would have been *harmful* to the Clinton Campaign, not helpful. *See id.* at 758:8-759:24.

With respect to Mr. Joffe, the Special Counsel again makes no showing how Mr. Sussmann represented him in connection with the September 19 FBI meeting. Mr. Sussmann wanted to help Mr. Joffe disseminate to the American public these allegations implicating national security. *See* M. Elias Trial Tr. at 762:11-23 (May 18, 2022, PM). But the Special Counsel has not presented any competent evidence showing that Mr. Joffe's business interests were advanced by Mr. Sussmann meeting with the FBI.

Moreover, when Mr. Sussmann approached the FBI (and later the CIA) with the Alfa Bank allegations, Mr. Sussmann did not ask anything of the government agencies in return. When he met with Mr. Baker at the FBI, for example, he "did not ask [Mr. Baker] to specifically do anything," and instead told Mr. Baker to "take whatever action [he] think[s] is appropriate." J. Baker Test., Trial Tr. at 1219:16-1220:14 (May 20, 2022, AM). Similarly, when Mr. Sussmann went to the CIA, he conveyed that he just wanted to pass information along that might be of concern to the government but did not "require feedback." Kevin P. Test., Trial Tr. at 1398:2-17

11

(May 20, 2022, PM). Mr. Sussmann leaving the agencies to their own devices in this fashion reveals a person acting out of genuine concern for national security, not an attorney furthering a client's interests.

In the end, then, had Mr. Sussmann allegedly told Mr. Baker in the meeting on September 19, 2016, that he was not there "on behalf of" any client, it would have been truthful. The Special Counsel has not proven falsity beyond a reasonable doubt.

### C. The Special Counsel Has Not Proved Materiality

Additionally, the Special Counsel had to prove beyond a reasonable doubt that the alleged false statement was material—an "essential element" of Section 1001(a)(2). *United States v. Verrusio*, 762 F.3d 1, 20 (D.C. Cir. 2014). A statement is material only if it has "a natural tendency to influence, or is capable of influencing, either a discrete decision or any other function of the [government] agency to which it was addressed," here the FBI. *United States v. Moore*, 612 F.3d 698, 701 (D.C. Cir. 2010). This, in turn, requires that the Special Counsel clearly answer: "(a) 'what statement was made?' and (b) 'what decision was the agency trying to make?'" *United States v. Gaudin*, 515 U.S. 506, 512 (1995). Assuming the Special Counsel has provided evidence to answer these questions, he must also answer the "ultimate question: (c) 'whether the statement was material to the decision.'" *Id.*

Critically, in answering these questions, the Special Counsel must establish a close nexus between the alleged false statement and the governmental decision in issue. In this Circuit, as elsewhere, the guiding principle is that a showing of materiality is more demanding than a showing of relevance. *Weinstock v. United States*, 231 F.2d 699, 701 (D.C. Cir. 1956) ("A statement may be relevant but not material."); *United States v. Johnson*, 19 F.4th 248, 259 (3d Cir. 2021) (Information presented to the government can be "'relevant,' but ultimately still immaterial—after all, '"relevance" and "materiality" are not synonymous.'" (citation omitted)).

The Special Counsel has utterly failed to establish materiality because all of the admitted evidence and testimony reveals that Mr. Sussmann's alleged false statement had no nontrivial effect—nor could it have had any effect—on the FBI's decision-making. As multiple FBI witnesses confirmed, the FBI was always bound to investigate the Alfa Bank allegations given their national security implications, irrespective of any political motivations. *See, e.g.*, J. Baker, Trial Tr. at 1198:18-21 (May 20, 2022, AM) ("if, in fact, . . . th[e] matters reflected serious national security concerns, the FBI would have wanted them"); S. Hellman Test., Trial Tr. at 478:13-17 (May 17, 2022, PM) (saying, on the "technical side," he "would not have changed [his] analysis"). In other words, there was no world in which the Alfa Bank allegations would not have been investigated by the FBI.

To the extent the Special Counsel suggests Mr. Sussmann's partisan affiliations mattered, his case-in-chief belies that assertion. Down the FBI's chain of command, Mr. Sussmann's Democratic bona fides were apparent. Mr. Baker told Mr. Priestap that Mr. Sussmann represented the DNC and Clinton Campaign. *See* GX-243 (Mr. Priestap's notes saying Mr. Sussmann "represent[ed] DNC, Clinton Foundation, etc."); J. Baker Test., Trial Tr. at 1127:14-15 (May 19, 2022, PM). The FBI leadership who requested and oversaw the opening of the investigation were aware of this. *See* C. Heide Test., Trial Tr. at 1886:8-9 (May 24, 2022, AM) (two FBI agents discussing the evidence Mr. Baker received from Mr. Sussmann said the material had come from "a lawyer *representing DNC and Clinton*" (emphasis added)); DX-511. Mr. Gaynor knew it. *See* R. Gaynor Test., Trial Tr. at 1560:18-22 (May 23, 2022, PM); DX-524. And to whatever extent the investigating agents might not have known of Mr. Sussmann's affiliations, that was by design, as FBI leadership specifically decided "not to share the identity of Mr. Sussmann with the field." *Id.* at 1598:11-16. Mr. Gaynor explained: he "didn't want to share Mr. Sussmann's name

13

with the agents" because, "if the agents had known there was possible political motivation here, that might have colored the way they conducted the investigation." *Id.* at 1601:10-16. At the very least, nothing Mr. Sussmann said influenced that internal FBI decision.

Finally if Mr. Sussmann's or his clients' identities were paramount, a reasonable jury would have expected the FBI to interview Mr. Sussmann, his source, or his clients. No such interviews occurred. *See, e.g.*, J. Baker Test., Trial Tr. at 843:14-18 (May 19, 2022, AM); J. Baker, Trial Tr. at 1199:6-14 (May 20, 2022, AM); E.W. Priestap Test., Trial Tr. at 1468:6-14 (May 23, 2022, AM); R. Gaynor Test., Trial Tr. at 1528:23-1529:16 (May 23, 2022, AM); J. Baker Test., Trial Tr. at 1059:14-25 (May 19, 2022, AM).

The Special Counsel's case-in-chief did not establish Section 1001(a)(2)'s materiality requirement.

### D.   The Special Counsel Has Not Proved Intent

Finally, in order establish Mr. Sussmann's intent, the Special Counsel must prove beyond a reasonable doubt that Mr. Sussmann made the alleged false statement "knowingly and willfully." 18 U.S.C. § 1001(a)(2). "An act is done knowingly if it is done purposely and voluntarily, as opposed to mistakenly or accidentally," and "[a]n act is done willfully if it is done with an intention to do something the law forbids, that is, with a bad purpose to disobey the law." 2 Modern Federal Jury Instructions ¶ 36.01, Instruction 36-13, "False Statements," "Knowing and Willful Conduct"; *see, e.g.*, *United States v. Whab*, 355 F.3d 155, 159 (2d Cir. 2004) (affirming same instruction).

The Special Counsel has not proven that Mr. Sussmann intended to make a false statement. Instead, all evidence points to Mr. Sussmann genuinely desiring to aid the FBI in its efforts to protect the American people. Mr. Sussmann acted in good faith. He repeatedly conveyed—in his September 18 text, in his September 19 meeting with Mr. Baker, and in subsequent communications with the FBI and CIA—that his principal motivation in sharing the Alfa Bank

14

allegations was to help to the government and protect the national security. *See* J. Baker Test., Trial Tr. at 1025:15-18 (May 19, 2022, PM); M. Chadason Test., Trial Tr. at 1352:25-1353:6 (May 20, 2022, PM).

Thus, even assuming that the Special Counsel proved that Mr. Sussmann made the alleged statement, that it was false, and that it was material (the Special Counsel did not), nothing in the Special Counsel's case-in-chief provides any basis for a juror to conclude that Mr. Sussmann intentionally misled the FBI. Lying to the FBI would have jeopardized Mr. Sussmann's reputation and destroyed his career. *See* M. Chadason Test., Trial Tr. at 1354:19-22 (May 20, 2022, PM) ("Mr. Sussmann, who has twelve years in DOJ and a powerful DC lawyer who has no reason as far as I know" to provide incredible information.); J. Baker Test., Trial Tr. at 1204:12-24 (May 20, 2022, AM). What would he gain? Nothing. His alleged clients, the Clinton Campaign and Mr. Joffe, who wanted to publish these allegations were affirmatively worse off because he went to the FBI, which stopped the story. M. Elias Test., Trial Tr. at 758:8-759:24 (May 18, 2022, PM). And Mr. Baker confirmed that Mr. Sussmann did not ask for anything in return for the information he provided. J. Baker Test., Trial Tr. (May 20, 2022, AM), at 1219:16-21.

In the words of Mr. Baker, Mr. Sussmann did not "lie" to the FBI "because [he] had no intention of deceiving" the FBI. J. Baker Test., Trial Tr. at 1102:20-21 (May 19, 2022, PM). Much like the above elements, then, the Special Counsel has floundered to prove Mr. Sussmann's intent.

## CONCLUSION

For the above reasons, this Court should grant Defendant's Motion for Acquittal.

Dated: May 27, 2022                          Respectfully submitted,

*/s/ Sean M. Berkowitz*
Sean M. Berkowitz (*pro hac vice*)
LATHAM & WATKINS LLP
330 North Wabash Avenue
Suite 2800
Chicago, IL 60611
Tel: (312) 876-7700
Fax: (312) 993-9767
Email: sean.berkowitz@lw.com

Michael Bosworth (*pro hac vice*)
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
Tel: (212) 906-1200
Fax: (212) 751-4864
Email: michael.bosworth@lw.com

Natalie Hardwick Rao (D.C. Bar # 1009542)
Catherine J. Yao (D.C. Bar # 1049138)
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004
Tel: (202) 637-2200
Fax: (202) 637-2201
Email: natalie.rao@lw.com
Email: catherine.yao@lw.com