<pre>
 1                IN THE UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF COLUMBIA
 2
       - - - - - - - - - - - - - - - x
 3     THE UNITED STATES OF AMERICA,
                                        Criminal Action No.
 4                  Plaintiff,          1:21-cr-00582-CRC-1
                                        Monday, May 16, 2022
 5     vs.                              9:12 a.m.

 6     MICHAEL A. SUSSMANN,             *MORNING SESSION*

 7                  Defendant.
       - - - - - - - - - - - - - - - x
 8

 9     _____

10                      TRANSCRIPT OF JURY TRIAL
            HELD BEFORE THE HONORABLE CHRISTOPHER R. COOPER
11                    UNITED STATES DISTRICT JUDGE
       _____
12     APPEARANCES:

13     For the United States:      ANDREW DeFILIPPIS, ESQ.
                                   JONATHAN EDGAR ALGOR, IV, ESQ.
14                                 MICHAEL T. KEILTY, ESQ.
                                   BRITTAIN SHAW, ESQ.
15                                 SPECIAL COUNSEL'S OFFICE
                                   145 N Street Northeast
16                                 Washington, DC 20002
                                   (212) 637-2231

17     For the Defendant:          SEAN M. BERKOWITZ, ESQ.
                                   MICHAEL BOSWORTH, ESQ.
18                                 CATHERINE YAO, ESQ.
                                   NATALIE HARDWICK RAO, ESQ.
19                                 LATHAM & WATKINS LLP
                                   1271 Avenue of the Americas
20                                 New York, NY 10020
                                   (212) 906-1200

21

22     Court Reporter:            Lisa A. Moreira, RDR, CRR
                                   Official Court Reporter
23                                 U.S. Courthouse, Room 6718
                                   333 Constitution Avenue, NW
24                                 Washington, DC  20001
                                   (202) 354-3187

25
</pre>

```
 1                    P R O C E E D I N G S

 2            THE COURT:  All right.  Good morning, everybody.

 3     Here we are.

 4            All right.  Ms. Jenkins is still dealing with the

 5     jury so the Court will call the case.

 6            We're on the record for Criminal Case 21-cr-582,

 7     The United States vs. Michael Sussmann.  This is our first

 8     day of voir dire.

 9            Do you want to enter your appearances?

10            MR. KEILTY:  Good morning, Your Honor; Michael

11     Keilty, Brittain Shaw, Jonathan Algor, and Andrew DeFilippis

12     for the government.

13            THE COURT:  Okay.  Good morning, everybody.

14            MR. BERKOWITZ:  Good morning, Your Honor; Sean

15     Berkowitz, Michael Bosworth, Natalie Rao, Catherine Yao, and

16     Mr. Sussmann, who is present in court.

17            THE COURT:  Okay.  Good morning, everybody.

18            MR. BERKOWITZ:  Good morning.

19            All right.  Just a few preliminary matters.  Could

20     you folks mic up your bat phone here and press the middle

21     button and make sure they're working.

22            (Pause)

23            THE COURT:  Okay.  If there's anything that a

24     potential juror wants to discuss privately, I will give them

25     the opportunity to speak with us through the circuit phones,
```

1     and this will substitute for traditional bench conferences.

2          All right.  I received your joint strikes for

3     cause, and I filed that on the docket this morning just so

4     that there's a record of which jurors had been stricken for

5     cause by consent, and the Court will grant all of those

6     strikes so those jurors are stricken for cause.

7          I agree with you that, given, you know, the COVID

8     situation, seating four alternates probably makes sense.  At

9     some point today we will -- I'll have a bowl, and I'll have

10    counsel pick four numbers out of the bowl, which will be the

11    alternate seats that no one will know except for the Court

12    and counsel.

13         All right.  While we're waiting, any developments

14    on the CIPA issues?  Are we going to have to hold a hearing,

15    or have you all worked those things out?

16         MR. ALGOR:  Yes, Your Honor.  I believe we've

17    worked out all of the issues.  We provided a summary Friday

18    evening to address some of Your Honor's concerns from that

19    conference; and in addition, we're producing, in declass

20    form, some of the issues related to the first issue.  And so

21    I believe that we're in agreement on that, and that should

22    be sufficient.

23         THE COURT:  Okay.  There's a defense motion

24    pending to limit, I guess, Agent Martin's expert testimony.

25    Is the government planning to file an opposition to that?

1          MS. SHAW:  Good morning, Your Honor.

2          THE COURT:  Good morning.

3          MS. SHAW:  The government was not planning to file

4    one given the pendency of his testimony.  I'm happy to

5    address issues.

6          THE COURT:  We'll deal with that later.

7          All right.  So having reviewed the questionnaires

8    and gotten the joint strikes out of the way, I suspect this

9    will go pretty expeditiously.  I don't anticipate needing

10   all day.  I think you all have a lot more information about

11   each prospective juror than you would have ordinarily

12   through the questionnaires.

13         I might begin with a few follow-up questions for

14   some -- but maybe not all -- of the jurors, and then let you

15   all ask follow-ups based on their responses to the

16   questionnaires.  All right?  And you should approach the

17   lectern.  And we'll start with the government and then the

18   defense.

19         MR. BERKOWITZ:  Great, Your Honor.  I just want to

20   understand mechanically --

21         THE COURT:  Yes.

22         MR. BERKOWITZ:  -- how it will work.  I had

23   understood that we might exercise our first -- our ten

24   strikes once the entire jury is prequalified, and then we

25   would do an additional strike for the four alternates.  But

1    your suggestion of pulling alternates out of --

2            THE COURT:  I'm sorry.  We'll pick the alternate

3    seats just so that -- once we get -- I guess, with four

4    alternates, we'll need probably 36 or 37 qualified jurors.

5    Once we get the qualified jurors, we will bring them all

6    into the courtroom and seat them in the box and in the

7    gallery so that you all know which ones are in the alternate

8    seats.  We will pick lots to determine those seats

9    beforehand.

10           The procedure this morning will be an opportunity

11   for you to exercise your challenges for cause.  So we'll

12   bring each one up.  Before we send them back, each side will

13   have an opportunity to exercise a challenge for cause.  If

14   there's no challenge or the challenge is not accepted, then

15   that juror will be qualified.

16           We'll get to probably 37, 38 qualified jurors, and

17   then we'll bring them all back, and you'll do your

18   peremptories first against the main jurors, and then against

19   the alternate seats.  Okay?

20           MR. BERKOWITZ:  Understood.  Thank you for the

21   clarification.

22           THE COURT:  Yes.

23           Ms. Franklin, how are you?

24           COURTROOM DEPUTY FRANKLIN:  I'm well, sir.

25           THE COURT:  Thanks for helping us out today.

 1          COURTROOM DEPUTY FRANKLIN:  I'm helping you out

 2     today and Ms. Whitney.

 3          THE COURT:  Oh, one other thing, Counsel, we got a

 4     call this morning from Juror No. 193, who is in Slot 10.

 5     She severely sprained her ankle over the weekend and is not

 6     able to join us.  So I will provisionally strike her, and we

 7     would call her only if we needed her, and we got to

 8     tomorrow, okay?  So we'll skip over her.

 9          Okay.  In addition, Counsel, Juror No. 130, who is

10     in Slot 16, her father became gravely ill over the weekend,

11     and she had to leave town; so the Court will strike her for

12     cause.

13          (The following is a bench conference)

14          THE COURT:  All right.  In addition to the full

15     witness list, which each juror will have reviewed with

16     instructions to tell me if they think they recognize or know

17     anyone, we'll have the two pseudonym names at the witness

18     table for them to view, and I will also ask if they could

19     let me know or let us know if they know either of those

20     people as well.  Be a little sensitive about exposing the

21     name, but the names will be written on a piece of paper in

22     front of them, okay?

23          (This is the end of the bench conference)

24          THE COURTROOM DEPUTY:  Your Honor, Juror No. 1113.

25          THE COURT:  Good morning, ma'am.

1              PROSPECTIVE JUROR:  Good morning.

2              THE COURT:  Good morning.  How are you today?

3              PROSPECTIVE JUROR:  Well, thank you.

4              THE COURT:  Did you have a nice weekend?

5              PROSPECTIVE JUROR:  Yes.

6              THE COURT:  Thank you for your service.

7              All right.  I have your questionnaire in front of

8       me.  You work at the Library of Congress; is that right?

9              PROSPECTIVE JUROR:  Yes.

10             THE COURT:  How long have you been doing that?

11             PROSPECTIVE JUROR:  About 20 years.

12             THE COURT:  Uh-huh.  And you're a retrieval

13      technician, so you handle the books; is that right?

14             PROSPECTIVE JUROR:  Yes.

15             THE COURT:  Do you enjoy that?

16             PROSPECTIVE JUROR:  Yes.

17             THE COURT:  All right.  So when I described the

18      case last Wednesday, no recollection of it?  Never heard of

19      it?

20             PROSPECTIVE JUROR:  No.

21             THE COURT:  Didn't know anybody involved?

22             PROSPECTIVE JUROR:  No.

23             THE COURT:  When you were in that big ceremonial

24      courtroom and you learned that you might be on this jury,

25      what did you think about that?

```
1              PROSPECTIVE JUROR:  I count it an honor and a

2       privilege to do my service.

3              THE COURT:  Okay.  And it says you get your news

4       from Facebook and Instagram.  Any other place?

5              PROSPECTIVE JUROR:  Just maybe the news on TV.

6              THE COURT:  Okay.

7              All right.  Counsel.

8              MR. KEILTY:  The government has no questions, Your

9       Honor.

10             THE COURT:  Okay.  Mr. Berkowitz?

11             MR. BERKOWITZ:  Just briefly.

12             Good morning.  How are you doing?

13             PROSPECTIVE JUROR:  Good morning.

14             MR. BERKOWITZ:  You say you served on a jury four

15      times before approximately.

16             PROSPECTIVE JUROR:  About four times.

17             MR. BERKOWITZ:  Great.  Do you remember anything

18      about those cases, whether they were criminal or civil

19      cases?

20             PROSPECTIVE JUROR:  It's been so long.  It's so

21      been long, like one-day service.  It's been a long time.

22             MR. BERKOWITZ:  Okay.

23             All right.  That's all I've got.  Thank you very

24      much.

25             PROSPECTIVE JUROR:  You're welcome.
```

```
 1              THE COURT:  Okay.  Thank you, ma'am.  You may go

 2     back.

 3              All right.  Any challenge to Juror 1113?

 4              MR. KEILTY:  No, Your Honor.

 5              MR. BERKOWITZ:  No, Your Honor.

 6              THE COURT:  All right.  1113 is qualified.

 7              Okay.  857 has been stricken, so we'll move to

 8     528.

 9              THE COURTROOM DEPUTY:  Your Honor, Juror No. 0528.

10              THE COURT:  Okay.  Good morning, sir.

11              PROSPECTIVE JUROR:  Good morning.

12              THE COURT:  Feel free to take your mask off, if

13     you're comfortable doing that.

14              PROSPECTIVE JUROR:  Thank you.

15              THE COURT:  All right.  So the first thing I want

16     to ask you about is you have some child care issues.  You

17     have to serve -- you have to pick up your kids from school

18     by 5:30; is that right?

19              PROSPECTIVE JUROR:  A little bit earlier than

20     that, yes.  My wife is out of town -- or will be out of town

21     as of tomorrow -- for a work trip that was not previewed

22     before.  She's going to Canada.  She's part of an investment

23     fund.

24              THE COURT:  Okay.

25              PROSPECTIVE JUROR:  And we don't have any other
```

1  support here.

2      THE COURT:  Okay.  We would strive to get out of

3  here for 5:00, but there's no guarantee that that will

4  happen depending on what witnesses may be testifying.

5      PROSPECTIVE JUROR:  Of course.

6      THE COURT:  If, for some reason, you couldn't get

7  to the school exactly at 5:30, could they arrange to...

8      PROSPECTIVE JUROR:  I'd have to speak to -- it's

9  actually two schools.  That's another bit of the challenge.

10      THE COURT:  Okay.

11      PROSPECTIVE JUROR:  Unfortunately.

12      THE COURT:  It says here you're an international

13  public policy manager for social responsibility at Amazon.

14  Tell us about that a little bit.

15      PROSPECTIVE JUROR:  Yes.  It's a new role.  I

16  started about five months ago.  So I oversee international

17  public policy regulatory developments in the area of labor

18  and human rights.

19      THE COURT:  Okay.  And before Amazon where were

20  you?

21      PROSPECTIVE JUROR:  I spent about six and a half

22  years at the Responsible Business Alliance in Alexandria,

23  very similar work.  I was senior director of public policy,

24  so engaging with governments on these topics.

25      THE COURT:  And you were at the Commerce

 1    Department before that?

 2              PROSPECTIVE JUROR:  2002 to 2006; a while back,

 3    yes.

 4              THE COURT:  Okay.

 5              Okay.  You contributed to the Hillary Clinton

 6    Campaign; is that right?

 7              PROSPECTIVE JUROR:  Yes.

 8              THE COURT:  You will -- if you were selected to be

 9    a juror on this case, you would hear testimony regarding the

10    campaign.

11              PROSPECTIVE JUROR:  Uh-huh.

12              THE COURT:  Do you think that that would -- your

13    support for the campaign would affect your ability to be

14    fair?  And please be honest and up front.

15              PROSPECTIVE JUROR:  I mean, obviously, with these

16    issues there is an interest.  I would obviously strive for

17    impartiality in all aspects as much as I can.

18              THE COURT:  Your father is a retired attorney?

19              PROSPECTIVE JUROR:  Yes.

20              THE COURT:  What was his practice?

21              PROSPECTIVE JUROR:  Real estate.

22              THE COURT:  No criminal law?

23              PROSPECTIVE JUROR:  I don't believe so, though he

24    may have done some early in his career.  He's retired more

25    than 15 years now.

1          THE COURT:  Okay.  You answered yes to Question

2     87.  If you were selected to serve as a juror, would you be

3     concerned about reactions to your verdict by any other

4     individual group or media organization?

5          And you said that you might have some concerns in

6     that regard.  Why did you say that?

7          PROSPECTIVE JUROR:  Just given the high-profile

8     nature of the case and the trial.  Also, obviously I have a

9     big concern, taking on a new responsibility with a major

10    company, I would always be very cautious not to appear in

11    any public discussion.

12         THE COURT:  Well, we're not using your name here.

13         PROSPECTIVE JUROR:  No, sure.

14         THE COURT:  We don't release the names of jurors.

15    There's a chance someone might see you outside the

16    courthouse.  But given that caveat, who do you think you

17    would be concerned might react negatively?

18         PROSPECTIVE JUROR:  I would be more concerned for,

19    I guess, my employer, just because it's a new position with

20    a major company, high-profile company.

21         THE COURT:  Okay.  Counsel?

22         MR. KEILTY:  Thank you, Your Honor.

23         Good morning.

24         PROSPECTIVE JUROR:  Good morning.

25         MR. KEILTY:  You also mentioned in your

1    questionnaire that you've read some reporting about this

2    case; is that correct?

3              PROSPECTIVE JUROR:  Yes.

4              MR. KEILTY:  And you've formed some opinions about

5    this case?

6              PROSPECTIVE JUROR:  I can't say that I've formed

7    specific opinions.  I wouldn't go that far.  But I have

8    heard of the case.  Just -- I mean, I'm fairly well-read and

9    fairly up to date with the developments, political

10   developments.

11             MR. KEILTY:  And, sir, are you completely

12   confident you can be fair and impartial?

13             PROSPECTIVE JUROR:  I think I would be fair and

14   impartial, but I -- you know, certainly we can't judge --

15   prejudge what may be in your mind at any one point.

16             MR. KEILTY:  Okay.

17             Thank you, Your Honor.

18             MR. BERKOWITZ:  Nothing on behalf of the defense.

19             THE COURT:  Okay.  Let me just follow up, all

20   right?

21             This case certainly has political overtones.

22   You've heard about the case.  You know what those overtones

23   are.  But Hillary Clinton is not on trial here.  Donald

24   Trump is not on trial here.

25             Mr. Sussmann is on trial here for one charge,

1    okay?  And he deserves a fair trial.  The government

2    deserves a fair opportunity to prove its case.

3            I will instruct you that you -- as I did the other

4    day -- that you can't read anything about the case and that

5    you can't, to the extent possible, allow any extraneous

6    information to influence your impartial verdict.  Honestly,

7    how confident are you that you could follow that instruction

8    and give Mr. Sussmann a fair trial?

9            PROSPECTIVE JUROR:  I think I'd be confident that

10   I could give Mr. Sussmann a fair trial and follow that

11   instruction.

12           THE COURT:  Okay.  Anything else, Counsel?

13           MR. BERKOWITZ:  No.

14           THE COURT:  Okay.  Thank you for your service.

15   You can go back to the room.

16           PROSPECTIVE JUROR:  Thank you.

17           THE COURT:  All right.  Any challenge to 528?

18           MR. KEILTY:  Yes, Your Honor.  He seemed to -- it

19   almost seemed you talked him into being fair and impartial.

20   He initially said he wasn't sure if he could be fair and

21   impartial.

22           I think he did also say in the questionnaire that

23   he has strong -- I asked him whether he had strong -- if

24   he's read articles about this case and whether he's formed

25   opinions, but I think in the questionnaire -- and I can

1   double-check -- he says he has strong opinions about the

2   2016 election.

3           Given the fact that he also has donated to both

4   the DNC and HFA, we just have concerns about his

5   impartiality.

6           THE COURT:  Mr. Berkowitz?

7           MR. BERKOWITZ:  Judge, I didn't hear anything in

8   his initial remarks that would suggest that he could not be

9   fair and impartial.  He answered the questions in the

10  questionnaire unequivocally, including 77, 78, indicating

11  that he could be fair and impartial.

12          You specifically asked him a question about it,

13  and he said I'm very confident or I'm confident that I would

14  be fair and impartial.  So I don't think there are any

15  issues with respect to his ability to serve.

16          THE COURT:  Okay.  The Court will deny the

17  government's challenge to 528.  I agree that he expressed a

18  fairly high degree of confidence in his ability to be fair

19  despite some of the questionnaire answers.  So 528 is

20  qualified.

21          And obviously the government can use a peremptory,

22  if it so chooses.

23          THE COURTROOM DEPUTY:  Your Honor, Juror No. 178.

24          THE COURT:  Good morning, sir.

25          PROSPECTIVE JUROR:  Good morning.

```
 1              THE COURT:  How are you?  I hope you had a nice
 2     weekend.  Thank you for your service.
 3              PROSPECTIVE JUROR:  I'm well.
 4              Yes, sir, thank you.
 5              THE COURT:  Okay.  All right.  How long have you
 6     lived in Washington, sir?
 7              PROSPECTIVE JUROR:  Approximately 12 years, sir.
 8              THE COURT:  And you answered that you've not heard
 9     anything about this case or Mr. Sussmann; is that correct?
10              PROSPECTIVE JUROR:  That is correct, sir.
11              THE COURT:  Okay.  So you've formed no opinions
12     about the case?
13              PROSPECTIVE JUROR:  No, sir.
14              THE COURT:  Sir, there's a manila folder there.
15     If you could take a look at those two names in addition to
16     the witness list that you reviewed this morning.  Do you
17     recognize either of those two people?
18              PROSPECTIVE JUROR:  No, sir.
19              THE COURT:  Okay.  So you were involved as a
20     witness in a trial, a robbery trial; is that right?
21              PROSPECTIVE JUROR:  Yes, sir.
22              THE COURT:  How long ago was that?
23              PROSPECTIVE JUROR:  Seven years ago, sir.
24              THE COURT:  Did you form any opinions about
25     criminal trials or the justice process, the criminal justice
```

1    process, as a result of that experience?

2              PROSPECTIVE JUROR:  No, sir.

3              THE COURT:  All right.  You'll see a black phone

4    there with a button in the middle, if you could press that

5    button.

6              And if cleared counsel can join, but not uncleared

7    counsel, please.

8              (The following is a closed conference)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25





1 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

2 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

3 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

4 ▮▮▮▮▮▮▮

5          ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

6          ▮▮▮▮▮▮▮▮▮

7          (This is the end of the closed conference)

8          THE COURT:  Mr. Keilty, any follow-up?

9          MR. KEILTY:  Yes, Your Honor.  Thank you.

10         Good morning.  Thanks for your service.

11         PROSPECTIVE JUROR:  Good morning, sir.  Thank you.

12         MR. KEILTY:  You mentioned in your questionnaire

13 that you work in the cyber security field or you have some

14 experience in cyber security?

15         PROSPECTIVE JUROR:  Yes, sir.

16         MR. KEILTY:  Could you elaborate a little more on

17 that.

18         PROSPECTIVE JUROR:  I worked for the Department of

19 Energy at one time, and I was a cyber security analysis

20 type, and also I worked for DOD and what they call DISA, the

21 Defense Information Systems Agency, where I was a portfolio

22 manager for -- between NSA and DISA, and it was for PKI

23 certifications for the back of a government card.

24         MR. KEILTY:  Okay.

25         PROSPECTIVE JUROR:  I did that kind of program

 1    management, finance side of the House.

 2             MR. KEILTY:  Understood.  Okay.

 3             This case is going to involve some cyber security

 4    issues.  Would you be able to independently evaluate the

 5    evidence as it comes in as opposed to, you know, your past

 6    experience and what you know?

 7             PROSPECTIVE JUROR:  I'm sorry, sir.  Could you --

 8             MR. KEILTY:  So would you be able to -- so you

 9    have some cyber security experience.

10             PROSPECTIVE JUROR:  Yes, sir.

11             MR. KEILTY:  Would you be able to set aside what

12    you know from your experience and just evaluate the evidence

13    impartially as it comes into the trial?

14             PROSPECTIVE JUROR:  Yes, sir.

15             MR. KEILTY:  Okay.  That's it, Your Honor.

16             MR. BERKOWITZ:  Just following up on something

17    that Mr. Keilty asked.

18             Given your knowledge of certain issues related to

19    cyber security and your experience, if the evidence that

20    were presented in trial were different, maybe, than your

21    understanding, would you be willing to accept that the

22    evidence that you need to evaluate is what came in at court

23    and not bring your own specialized knowledge to the jury

24    room?

25             PROSPECTIVE JUROR:  Yes, sir, I could.

```
 1                    MR. BERKOWITZ:  Thank you very much.

 2                    THE COURT:  Okay.  Thank you, sir.  You can step

 3          down.

 4                    All right.  Any challenge?

 5                    MR. KEILTY:  No, Your Honor.

 6                    MR. BERKOWITZ:  No, Your Honor.

 7                    THE COURT:  178 is qualified.

 8                    THE COURTROOM DEPUTY:  Juror No. 1162.

 9                    THE COURT:  Good morning, sir.

10                    PROSPECTIVE JUROR:  Good morning.

11                    THE COURT:  How are you?  You should feel free to

12          take your mask off, if you're comfortable doing so.  Okay?

13                    PROSPECTIVE JUROR:  Okay.

14                    THE COURT:  It's up to you.

15                    All right.  Did you have a good weekend?

16                    PROSPECTIVE JUROR:  It was okay.

17                    THE COURT:  All right.  Okay.  Sir, it says here

18          that you're a storefront owner.  What does that mean?

19                    PROSPECTIVE JUROR:  I have a store in Washington,

20          D.C., in Southeast Washington, D.C.

21                    THE COURT:  Okay.

22                    PROSPECTIVE JUROR:  On Martin Luther King Jr.

23          Avenue.

24                    THE COURT:  And what kind of store is it?

25                    PROSPECTIVE JUROR:  It's an ice cream shop.
```

```
 1                THE COURT:  Ice cream shop.  How's the ice cream?

 2                PROSPECTIVE JUROR:  Pretty good.

 3                THE COURT:  Do you make it yourself, or do you get

 4        it from someplace else?

 5                PROSPECTIVE JUROR:  No.  It's actually provided by

 6        Hershey's.

 7                THE COURT:  And how's business?

 8                PROSPECTIVE JUROR:  It's up and down.

 9                THE COURT:  Looking forward to the summer

10        probably, huh?

11                PROSPECTIVE JUROR:  Yes.

12                THE COURT:  And you've been a security guard in

13        the past?

14                PROSPECTIVE JUROR:  Yes.

15                THE COURT:  And you've heard nothing about this

16        case; is that right?

17                PROSPECTIVE JUROR:  No, I haven't.

18                THE COURT:  So when --

19                PROSPECTIVE JUROR:  Not to my knowledge.

20                THE COURT:  So when we brought you to the big

21        courtroom last week and I described what the case was all

22        about, any initial impressions?  What did you think?

23                PROSPECTIVE JUROR:  I didn't think too much about

24        it.

25                THE COURT:  Okay.  Would you be happy to serve on
```

```
1    a jury?  Excited?  Not excited?

2               PROSPECTIVE JUROR:  Not excited.

3               THE COURT:  Not excited.

4               PROSPECTIVE JUROR:  Yes.

5               THE COURT:  Why is that?

6               PROSPECTIVE JUROR:  I just don't like to play

7    judge and jury with people's lives.

8               THE COURT:  Do you have any religious or ethical

9    or moral problems with judging somebody else?

10              PROSPECTIVE JUROR:  I mean, if I don't have to do

11   it, then I wouldn't do it.  That's just me.  I don't believe

12   in judging people so...

13              THE COURT:  Well, if you were on this jury, you

14   would have to judge somebody one way or the other.  Would

15   that -- would you be uncomfortable doing that?

16              PROSPECTIVE JUROR:  Yes, I would.

17              THE COURT:  Okay.  All right, sir.  Thank you very

18   much.  You can step down.

19              PROSPECTIVE JUROR:  Thank you.

20              Okay.  The Court will strike 1162 for cause based

21   on his reluctance to sit in judgment.

22              THE COURTROOM DEPUTY:  Your Honor, Juror No. 170.

23              THE COURT:  Good morning, ma'am.

24              PROSPECTIVE JUROR:  Good morning.

25              THE COURT:  How are you?
```

```
 1            PROSPECTIVE JUROR:  Good.
 2            THE COURT:  You should feel free to take your mask
 3     off, if you're comfortable doing so.
 4            All right.  Thank you for your service.
 5            So you are a tax attorney; is that right?
 6            PROSPECTIVE JUROR:  Yes.
 7            THE COURT:  And you work at the IRS.
 8            PROSPECTIVE JUROR:  Yes.
 9            THE COURT:  Okay.  And what's your role generally?
10     Disputes or counseling?
11            PROSPECTIVE JUROR:  Not disputes.  So it's
12     research, writing.
13            THE COURT:  Okay.  And you practiced at an
14     accounting firm before that?
15            PROSPECTIVE JUROR:  Yes.
16            THE COURT:  Okay.  During law school or
17     afterwards, have you ever been involved in any criminal law
18     matters or practice criminal law in any respect?
19            PROSPECTIVE JUROR:  No.  I mean, I clerked during
20     law school, but no.
21            THE COURT:  And you clerked on the tax court; is
22     that right?
23            PROSPECTIVE JUROR:  I clerked at a tax court and
24     federal district court just for the summer, so...
25            THE COURT:  Okay.  And your significant other is a
```

1   real estate attorney as well?

2           PROSPECTIVE JUROR:  Yes.

3           THE COURT:  And you haven't heard anything about

4   this case previously?

5           PROSPECTIVE JUROR:  No.

6           THE COURT:  Okay.  Counsel?

7           MR. KEILTY:  Nothing from the government, Your

8   Honor.

9           MR. BERKOWITZ:  Good morning.  How are you doing?

10          PROSPECTIVE JUROR:  Good morning.  Good.

11          MR. BERKOWITZ:  Good.  So I just wanted to ask you

12  a couple of questions.  I think you indicated that your

13  father-in-law's a former prosecutor.

14          PROSPECTIVE JUROR:  Yes.

15          MR. BERKOWITZ:  Where did he work as a prosecutor,

16  if you know?

17          PROSPECTIVE JUROR:  Southern Maryland.  So he

18  lives in Hollywood, Maryland, St. Mary's County.

19          MR. BERKOWITZ:  And he's now a state court judge?

20          PROSPECTIVE JUROR:  Yes.

21          MR. BERKOWITZ:  And do you think that you could be

22  fair in a case like this even though your father-in-law's a

23  former prosecutor?

24          PROSPECTIVE JUROR:  Yes.

25          MR. BERKOWITZ:  And you wouldn't discuss the case

1    with him in any way?

2              PROSPECTIVE JUROR:  No.

3              MR. BERKOWITZ:  And I just want to -- you have, I

4    think, also a low-level security clearance.

5              PROSPECTIVE JUROR:  Yes.  I mean, I think, as part

6    of just being a federal employee, you know, you fill out

7    like a lengthy questionnaire, and then at some point you get

8    a clearance, but it's not like a top security clearance.

9              MR. BERKOWITZ:  Okay.  Thank you very much.

10   Appreciate your time.

11             THE COURT:  Okay.  Thank you, ma'am.  You can step

12   down.

13             Counsel, they're being asked to review the other

14   names before they come in, each one, so...

15             THE COURTROOM DEPUTY:  Your Honor, Juror No. 775.

16             THE COURT:  Good morning, sir.

17             PROSPECTIVE JUROR:  Good morning.

18             THE COURT:  Have a seat, and feel free to take

19   your mask off, if you're comfortable doing so.

20             PROSPECTIVE JUROR:  Sure.

21             THE COURT:  All right.  It says here you are in

22   program management for the D.C. Department of Health and

23   Human Services?

24             PROSPECTIVE JUROR:  Correct.

25             THE COURT:  Okay.  How long have you been doing

1    that?

2              PROSPECTIVE JUROR:  Five years.

3              THE COURT:  Okay.  Do you get involved with SNAP

4    benefits and things like that?

5              PROSPECTIVE JUROR:  Yes, all public assistance

6    benefits.

7              THE COURT:  Okay.  How's the backlog?

8              PROSPECTIVE JUROR:  Very high.

9              THE COURT:  I had a big case involving that.

10             Your mother worked for DOJ for 20 years; is that

11   right?

12             PROSPECTIVE JUROR:  Specifically the FBI, yes.

13             THE COURT:  Okay.  What did she do for the FBI?

14             PROSPECTIVE JUROR:  Analyst.

15             THE COURT:  There will be witnesses in this case

16   from the FBI and a lot of evidence about the FBI, and the

17   FBI is alleged to have been the victim in a sense in this

18   case.  Would your relationship with your mother and her

19   relationship to the FBI affect your ability to assess the

20   evidence fairly?

21             PROSPECTIVE JUROR:  No.

22             THE COURT:  No.  Do you ever talk to her about

23   issues involving the Bureau?

24             PROSPECTIVE JUROR:  Not really, unless it's the

25   subject of a documentary on TV.

```
 1              THE COURT:  Okay.  I'm sorry, and you had not
 2    heard about this case specifically; is that right?
 3              PROSPECTIVE JUROR:  No.
 4              THE COURT:  Any issues with being on this jury one
 5    way or the other?
 6              PROSPECTIVE JUROR:  No.
 7              THE COURT:  Okay.  Counsel?
 8              MR. KEILTY:  Good morning, sir.
 9              PROSPECTIVE JUROR:  Good morning.
10              MR. KEILTY:  Thanks for your service.
11              You mentioned, in one of the questions on the
12    questionnaire that you filed out, in the 2016 election you
13    worked I believe it was voter drives or phone banks.
14              PROSPECTIVE JUROR:  Yes.
15              MR. KEILTY:  Are you comfortable in open court
16    saying for what candidate that was?
17              PROSPECTIVE JUROR:  Sure.
18              MR. KEILTY:  Okay.  Who was that?
19              PROSPECTIVE JUROR:  Joe Biden.
20              MR. KEILTY:  Okay.  That's all I have, Your Honor.
21              MR. BERKOWITZ:  Good morning, sir.  How are you
22    doing?
23              PROSPECTIVE JUROR:  Good morning.  How are you?
24              MR. BERKOWITZ:  Good.  I represent Mr. Sussmann.
25    I just want to ask you a couple of questions to make sure
```

```
1    you could be fair to him, okay?

2              PROSPECTIVE JUROR:  Sure.

3              MR. BERKOWITZ:  Tell us a little bit more about

4    what you do for a living.

5              PROSPECTIVE JUROR:  I work for the D.C. Department

6    of Human Services as an assistant deputy administrator.  I

7    serve as basically a deputy chief of staff to the ESA

8    administrator; so a lot of focus on IT approval management,

9    change management, and issues around that.

10             MR. BERKOWITZ:  And I noted on your questionnaire

11   that you think maybe there are too many lawyers in D.C.

12             PROSPECTIVE JUROR:  Yes.

13             MR. BERKOWITZ:  I don't know that there are a lot

14   of people that would disagree with you, but do you think

15   that you could be fair to Mr. Sussmann, who is one of those

16   lawyers in D.C.?

17             PROSPECTIVE JUROR:  Sure, yes.  I mean, I also

18   worked for a law firm previously so I'm sympathetic to the

19   cause.

20             MR. BERKOWITZ:  Which law firm did you work with?

21             PROSPECTIVE JUROR:  Federal Practice Group.

22             MR. BERKOWITZ:  And do you have any concerns about

23   the fact that Mr. Sussmann worked at a large law firm?  Any

24   issues or concerns about that?

25             PROSPECTIVE JUROR:  No.
```

```
 1              MR. BERKOWITZ:  And you think that you could put
 2    aside any preconceived notions you have, and listen to just
 3    the evidence that comes into the court and judge in a fair
 4    and impartial way?
 5              PROSPECTIVE JUROR:  Yes.
 6              MR. BERKOWITZ:  Okay.  Thank you very much.
 7              PROSPECTIVE JUROR:  Sure thing.
 8              And I guess I should say 2016 would have been
 9    Hillary Clinton, not Joe Biden.
10              THE COURT:  I'm sorry, sir?
11              PROSPECTIVE JUROR:  The 2016 election would have
12    been Hillary Clinton, not Joe Biden.  It was 2020.
13              THE COURT:  Did you get that counsel?
14              MR. KEILTY:  Did you say in 2016 it would have
15    been Hillary Clinton?
16              PROSPECTIVE JUROR:  Hillary Clinton, yes.
17              MR. KEILTY:  Okay.  And in this trial you'll
18    hear a lot about Hillary Clinton.  Would your support for
19    Mrs. Clinton allow you to be fair and impartial?
20              PROSPECTIVE JUROR:  I would hope so, yes.
21              MR. KEILTY:  You would hope so, or you're
22    confident you can be fair and impartial?
23              PROSPECTIVE JUROR:  I'm confident, yes.
24              MR. KEILTY:  Thank you.
25              THE COURT:  Okay.  Nothing further, sir.  You can
```

```
 1    step down.  Have a good day.

 2              Okay.  Any challenge to 775?

 3              MR. KEILTY:  No, Your Honor.

 4              MR. BERKOWITZ:  No.

 5              THE COURT:  Okay.  He is qualified.

 6              I think I failed to qualify 170.  Any objections?

 7              MR. KEILTY:  No, Your Honor.

 8              MR. BERKOWITZ:  No, Your Honor.

 9              THE COURT:  170 is also qualified.

10              THE COURTROOM DEPUTY:  Your Honor, we're going to

11    recall Juror No. 775.

12              THE COURT:  Okay.  Welcome back.

13              PROSPECTIVE JUROR:  I understand the trial date I

14    believe is supposed to go to the 27th, and I have

15    international vacation on the 29th.  So I just wanted to

16    state that on the record.

17              THE COURT:  So the 29th is Memorial Day.

18              PROSPECTIVE JUROR:  Memorial Day weekend.

19              THE COURT:  Where are you going?

20              PROSPECTIVE JUROR:  Barcelona.

21              THE COURT:  Got tickets?

22              PROSPECTIVE JUROR:  I do have tickets.

23              THE COURT:  All right.  Thank you.

24              PROSPECTIVE JUROR:  All right.  Thank you.

25              THE COURT:  All right.  Counsel, we may go beyond
```

1    that so I would propose striking him based on hardship.  Any

2    objection to that?

3              MR. KEILTY:  Not from the government, Your Honor.

4              MR. BERKOWITZ:  Your Honor, I'm very sympathetic

5    to people's travel schedules and so forth.  Having said

6    that, we've got a lot of jurors who have issues and travel

7    things.  I think the plan had been to try and have this case

8    concluded by that time.  We are willing to do, you know,

9    both Fridays as well in order to get it done.

10             So with respect to Your Honor's planning, we would

11   oppose dismissing him based on a vacation that's scheduled

12   over two weeks out.

13             THE COURT:  All right.  What I usually do with

14   planned travel that's outside of the trial window is to

15   provisionally strike the person and go to him or her only if

16   we need them.

17             Here I've been given a two-week estimate for

18   trial, and the jury's going to be deliberating likely into

19   that next week; so I think that's just too close for

20   comfort.

21             So I'm going to -- I'll strike 775 for cause based

22   on his hardship.  But just, as we go forward, you know, I

23   suspect there are going to be people like him, and, you

24   know, unless it's right at the end of that two-week window

25   my practice is to provisionally strike and go to them only

 1    if we need to, okay?

 2              MR. BERKOWITZ:  Thank you, Judge.

 3              THE COURTROOM DEPUTY:  Your Honor, Juror No. 175.

 4              THE COURT:  Good morning, ma'am.

 5              PROSPECTIVE JUROR:  Good morning.

 6              THE COURT:  How are you today?

 7              PROSPECTIVE JUROR:  I'm good.  How are you?

 8              THE COURT:  You should feel free to remove your

 9    mask, if you're comfortable doing it.

10              All right.  So you're retired; is that right?

11              PROSPECTIVE JUROR:  Yes, sir.

12              THE COURT:  You are far too young to be retired.

13              PROSPECTIVE JUROR:  Thank you.

14              THE COURT:  And you worked at the Department of

15    Defense before that?

16              PROSPECTIVE JUROR:  Yes.

17              THE COURT:  And tell us about that.  What did you

18    do for DOD?

19              PROSPECTIVE JUROR:  I did a lot of things.  I

20    did --

21              THE COURT:  If you could speak up just a little

22    bit and speak into that mic so everybody can hear you.

23              PROSPECTIVE JUROR:  Mostly admin stuff, time and

24    attendance -- time-keeping, like that.

25              THE COURT:  Okay.  Did you work in a particular

1    unit or part of DOD?

2              PROSPECTIVE JUROR:  Yes.  I worked for the Corps

3    of Engineers for a while, and I worked for the finance

4    office for a while, and then I worked for resource

5    management.

6              THE COURT:  And it says you worked part time at

7    something called Omniplex.  What is Omniplex?

8              PROSPECTIVE JUROR:  Omniplex.  That was like a

9    security company that did background checks on people that

10   were looking for positions.

11             THE COURT:  And you like Judge Judy, huh?

12             PROSPECTIVE JUROR:  Yes.

13             THE COURT:  If you got on this trial, on this

14   jury, it wouldn't be anything like Judge Judy.

15             PROSPECTIVE JUROR:  Oh, okay.

16             THE COURT:  Okay.  You experienced a shooting; is

17   that correct?

18             PROSPECTIVE JUROR:  Yes, uh-huh.

19             THE COURT:  I'm sorry to hear that.  How long ago

20   was that?

21             PROSPECTIVE JUROR:  That was like back in the

22   '80s.  It was quite a while ago.

23             THE COURT:  All right.  Anything about that

24   incident or how the police handled it or how you were

25   treated make you hesitate to get involved in a criminal jury

```
1     trial?

2                 PROSPECTIVE JUROR:  The only thing I didn't like

3     was they didn't tell us that they had a plea bargain with

4     the guy that did the shooting.  The police officer actually

5     came back and told us what happened --

6                 THE COURT:  Okay.

7                 PROSPECTIVE JUROR:  -- with that case.

8                 THE COURT:  But that wouldn't affect your service

9     in this case, would it?

10                 PROSPECTIVE JUROR:  No, sir.

11                 THE COURT:  Okay.

12                 Counsel?

13                 MR. KEILTY:  Nothing, Your Honor.  Thank you.

14                 MR. BERKOWITZ:  Just briefly.

15                 Good morning.  How are you doing?

16                 PROSPECTIVE JUROR:  Good morning.  I'm good.

17                 MR. BERKOWITZ:  Good.  I represent Michael

18     Sussmann, and I just want to make sure that you can be fair

19     and impartial, if you're selected for the jury.  And the

20     only question I had, based on your questionnaire, was you'd

21     done some work with the Department of Defense and worked

22     with the federal government.

23                 PROSPECTIVE JUROR:  Yes, uh-huh.

24                 MR. BERKOWITZ:  Could you put aside any views

25     you've got about the federal government and evaluate
```

1     Mr. Sussmann based solely on the evidence in this case in a

2     fair and impartial and objective way?

3                PROSPECTIVE JUROR:  Yes, uh-huh.

4                MR. BERKOWITZ:  Thank you very much.

5                THE COURT:  Okay.

6                PROSPECTIVE JUROR:  You're welcome.

7                THE COURT:  Thank you, ma'am.  You can step down.

8           All right.  Any challenge, Counsel?

9                MR. KEILTY:  No, Your Honor.

10               MR. BERKOWITZ:  No.

11               THE COURT:  Okay.  175 is qualified.

12               THE COURTROOM DEPUTY:  Your Honor, Juror No. 757.

13               THE COURT:  Good morning, ma'am.

14               PROSPECTIVE JUROR:  Good morning.

15               THE COURT:  Feel free to slip your mask off, if

16    you'd like.

17               PROSPECTIVE JUROR:  Okay.

18               THE COURT:  Okay.  Thank you for your service.

19    We've reviewed your questionnaire responses and just have a

20    few questions.

21               What is Cocktail Strategy?

22               PROSPECTIVE JUROR:  So I do a lot of training and

23    education and kind of marketing around two wines, Spear

24    direct brands, to help sell them basically.

25               THE COURT:  Okay.  And you were a bartender

1      before?

2              PROSPECTIVE JUROR:  Yes.

3              THE COURT:  It says you listen to or watch The

4      Dollop.  What is that?

5              PROSPECTIVE JUROR:  It's a podcast that looks at

6      different American history figures that don't necessarily

7      have like the whole story told, and they're two comedians,

8      and they kind of go through the story behind it.

9              THE COURT:  Okay.  And you hadn't heard of this

10     case before last Wednesday?

11             PROSPECTIVE JUROR:  No.

12             THE COURT:  And when we brought you to the big

13     courtroom, and I described the case, any initial impressions

14     about serving on the jury?

15             PROSPECTIVE JUROR:  No, no.  I mean, you know, of

16     course it's hard to not know anything about the overall

17     broad topic just because, you know, we live in the country,

18     but other than that...

19             THE COURT:  Okay.  Counsel?

20             MR. KEILTY:  Good morning, ma'am.  How are you?

21             PROSPECTIVE JUROR:  Good.  How are you?

22             MR. KEILTY:  Good.  Thanks for your service.

23             In the questionnaire that you filled out prior to

24     today you mentioned that you donated to some candidates in

25     2016, in the 2016 election.

```
 1                    PROSPECTIVE JUROR:  Yes.

 2                    MR. KEILTY:  Would you be comfortable telling us

 3       which particular candidate?

 4                    PROSPECTIVE JUROR:  Yes, definitely.  I made a

 5       couple of donations to the overall Democratic National

 6       Party.  I mean, you know, like $25, $50, whatever.

 7                    MR. KEILTY:  Sure.

 8                    PROSPECTIVE JUROR:  And then I donated to I want

 9       to say it was AOC and Hillary and -- I don't remember.

10                    MR. KEILTY:  Okay.  That's good enough.

11                    PROSPECTIVE JUROR:  Yes.

12                    MR. KEILTY:  So this trial is going to involve

13       names like Hillary Clinton.  Would your support for Hillary

14       Clinton preclude you from being completely fair and

15       impartial in this matter?

16                    PROSPECTIVE JUROR:  I'd like to believe not.

17                    MR. KEILTY:  Okay.

18                    PROSPECTIVE JUROR:  It's hard to say without --

19                    MR. KEILTY:  Do you have any strong opinions about

20       the 2016 election?

21                    PROSPECTIVE JUROR:  I believe that it was

22       certified.

23                    MR. KEILTY:  Okay.  And what about the opposing

24       candidate, Donald Trump?  Any strong feelings toward

25       Mr. Trump?
```

1          PROSPECTIVE JUROR:  Yes, as far as -- especially

2     with the 2020 election I do.

3          MR. KEILTY:  Are you 100 percent certain that you

4     can be completely fair and impartial, or is there some doubt

5     in your mind?

6          PROSPECTIVE JUROR:  There's a little doubt in my

7     mind just because, you know, it's hard to totally remove any

8     feelings that you have.

9          MR. KEILTY:  Sure.  Okay.

10          Thank you, Your Honor.

11          MR. BERKOWITZ:  Good morning.  How are you doing?

12          PROSPECTIVE JUROR:  Good morning.  Good.  How are

13     you?

14          MR. BERKOWITZ:  Good.  I represent Michael

15     Sussmann, and I want to ask you some questions just to make

16     sure, if you were chosen, that you could be fair and

17     impartial.

18          You understand that this case involves an

19     allegation about Mr. Sussmann allegedly lying to the FBI?

20     You heard about that.

21          PROSPECTIVE JUROR:  Okay.

22          MR. BERKOWITZ:  And it doesn't involve any

23     political candidates as parties in this case.  And

24     Mrs. Clinton is not on trial and accused of wrongdoing.

25     Mr. Trump is not on trial and accused of wrongdoing.

1        PROSPECTIVE JUROR:  Uh-huh.

2        MR. BERKOWITZ:  Knowing that and knowing that this

3    is about an individual, and the facts will be presented in

4    this courtroom, and the judge would instruct you to listen

5    to the facts as they come from the witnesses and to be

6    impartial and to not let preconceived notions dictate your

7    judgment, could you, as I think you indicated in your

8    questionnaire, be fair, and do you have confidence that you

9    could be fair with all the judge's instructions and to

10   decide the case based solely on the evidence in the

11   courtroom and not any preconceived views you might have?

12        PROSPECTIVE JUROR:  Yes.

13        MR. BERKOWITZ:  Confident?

14        PROSPECTIVE JUROR:  Yes.  Knowing that, yes.

15        MR. BERKOWITZ:  Thank you, Judge.

16        THE COURT:  Okay.  All right.  Thank you, ma'am.

17        PROSPECTIVE JUROR:  Thank you.  And they did tell

18   us to mention I do have a work trip planned for this coming

19   Monday, a week from today, just for the day.

20        THE COURT:  Okay.  What kind of work trip is that?

21        PROSPECTIVE JUROR:  It's like -- it's an

22   educational -- I have like a training thing that I'm

23   supposed to do.

24        THE COURT:  Okay.  Is there someone who could

25   stand in for you, if you were selected for the jury?

```
 1              PROSPECTIVE JUROR:  I'm the only person with my

 2      job.  That's what makes it hard.  So -- and it's like --

 3      it's been lined up for a little while with a team in our

 4      Delaware store.

 5              THE COURT:  Okay.  And the training is in

 6      Delaware?

 7              PROSPECTIVE JUROR:  Yes.  At 5:00 p.m., I want to

 8      say.

 9              THE COURT:  And how difficult would it be to

10      reschedule that training session because you were selected

11      for a federal jury?

12              PROSPECTIVE JUROR:  And it would go through that

13      time period?

14              THE COURT:  The case is estimated to last two

15      weeks.

16              PROSPECTIVE JUROR:  Okay.  I mean, it would be

17      possible, I'm sure, knowing that it is for a federal case.

18              THE COURT:  Okay.  And you could put it off for a

19      few weeks and do it later?

20              PROSPECTIVE JUROR:  Uh-huh, yes.

21              THE COURT:  That was a question.

22              PROSPECTIVE JUROR:  Yes.  Yes.  If I had to, I

23      could do that, yes.

24              THE COURT:  Okay.  Thank you.

25              All right.  Counsel?
```

```
1              MR. KEILTY:  No challenge from the government,

2    Your Honor.

3              THE COURT:  Mr. Berkowitz?

4              MR. BERKOWITZ:  No, Your Honor.

5              THE COURT:  Okay.  757 is qualified.

6              THE COURTROOM DEPUTY:  Your Honor, Juror No. 390.

7              THE COURT:  Good morning, ma'am.

8              PROSPECTIVE JUROR:  Good morning.

9              THE COURT:  How are you?  Feel free to slip your

10   mask off, if you're comfortable doing that.

11             All right.  Thank you for your service.  We've

12   reviewed your questionnaire responses and have just a few

13   follow-up questions for you, okay?

14             So it says you work in -- or your spouse works in

15   IT.  Can you tell me more about that.  What type of IT?

16             PROSPECTIVE JUROR:  Yes.  He just does web

17   development and design.  He works for a deaf phone company

18   called Eyeth Studios, and they just do contracts for people

19   who want websites to be developed for them.

20             THE COURT:  Okay.  Does he work with any political

21   groups or partisan political groups or government, anything

22   like that?

23             PROSPECTIVE JUROR:  They did have a contract with

24   the state of Maryland to develop a deaf digital library, but

25   that is the only political or, I guess, government agency
```

```
1            that I know of.
2                    THE COURT:  Okay.  And you're a speech and
3            language pathologist; is that right?
4                    PROSPECTIVE JUROR:  Correct.
5                    THE COURT:  Okay.  And you previously worked at
6            some place called DMV Beneficiaries.  Tell us about that.
7                    PROSPECTIVE JUROR:  Oh, that is just like a
8            volunteer thing that I do for beneficial insects for people
9            who have house plants and who have gardens.
10                   THE COURT:  Beneficial insects?
11                   PROSPECTIVE JUROR:  Yes.
12                   THE COURT:  Okay.  It says that your partner was
13           involved in a criminal trial back in 2015.
14                   PROSPECTIVE JUROR:  Yes.
15                   THE COURT:  And were you partners then?
16                   PROSPECTIVE JUROR:  No.
17                   THE COURT:  No.  Anything about how he may have
18           been treated through that process make you hesitate to be on
19           a criminal jury?
20                   PROSPECTIVE JUROR:  No.
21                   THE COURT:  Counsel?
22                   MR. KEILTY:  Nothing from the government, Your
23           Honor.
24                   MR. BERKOWITZ:  Just briefly.
25                   Good morning.  I represent Mr. Sussmann.  I note
```

```
 1     that you've been following the Amber Heard and Johnny Depp

 2     case.  Would you still be willing to listen and pay

 3     attention to this case, if it weren't as exciting as that?

 4               PROSPECTIVE JUROR:  Yes.

 5               MR. BERKOWITZ:  Okay.

 6               PROSPECTIVE JUROR:  That one is a little bit too

 7     much for me.

 8               MR. BERKOWITZ:  Understood.

 9               Nothing further.  Thank you very much.

10               THE COURT:  Okay, ma'am.  You can step down.

11               PROSPECTIVE JUROR:  Thank you.

12               THE COURT:  Any challenge?

13               MR. KEILTY:  No, Your Honor.

14               MR. BERKOWITZ:  No.

15               THE COURT:  390 is qualified.

16               THE COURTROOM DEPUTY:  Your Honor, Juror No. 426.

17               THE COURT:  Good morning, ma'am.

18               PROSPECTIVE JUROR:  Good morning.

19               THE COURT:  You can feel free to take your mask

20     off, if you'd like.

21               So we have reviewed your questionnaire and just

22     have a few follow-up questions.

23               PROSPECTIVE JUROR:  Okay.

24               THE COURT:  You work for BOP; is that right?

25               PROSPECTIVE JUROR:  Correct.
```

1          THE COURT:  And tell us what you do for them.

2          PROSPECTIVE JUROR:  Currently I am the supervisory

3    budget analyst in the facilities management branch, and what

4    we do is we oversee all the M&R preparation, which is

5    construction of each 121 facilities in the BOP.  Currently,

6    I mean, I don't have a supervisor, so I am, you know, acting

7    in multiple capacities, you know, managing the M&R

8    appropriations for the agency.

9          THE COURT:  Okay.  One of the things that I will

10   instruct the jurors in this case is that they are not to

11   consider what the punishment may be in the event of a

12   conviction.

13          Given your involvement with BOP, do you think you

14   could follow that instruction?

15          PROSPECTIVE JUROR:  Yes, sir.

16          THE COURT:  Okay.  Counsel?

17          MR. KEILTY:  Nothing, Your Honor.  Thank you.

18          MR. BERKOWITZ:  Good morning.

19          PROSPECTIVE JUROR:  Good morning.

20          MR. BERKOWITZ:  I just -- I represent

21   Mr. Sussmann, and I just had a couple of follow-up

22   questions.

23          I noted in your questionnaire, in response to a

24   question about the criminal justice system, you said that we

25   could improve on the system.  Could you elaborate a little

```
 1    bit?
 2                PROSPECTIVE JUROR:  I think everything can be
 3    improved upon.  I mean, there are injustices that happen on
 4    both sides, and so I think that we all need to improve on,
 5    you know, just the way people are tried and in the laws.  I
 6    just think there's improvement that's due.
 7                MR. BERKOWITZ:  And although you work for the
 8    Bureau of Prisons, which is obviously associated with the
 9    Department of Justice in some way, could you be fair to the
10    defendant, Mr. Sussmann, even though he's being prosecuted
11    by the Department of Justice?
12                PROSPECTIVE JUROR:  Yes.
13                MR. BERKOWITZ:  Okay.  Thank you very much.
14                PROSPECTIVE JUROR:  You're welcome.
15                THE COURT:  Okay.  You can step down, ma'am.
16    Thank you for your service.
17                PROSPECTIVE JUROR:  You're welcome.
18                THE COURT:  All right.  Any challenge?
19                MR. KEILTY:  No, Your Honor.
20                MR. BERKOWITZ:  No, Your Honor.
21                THE COURT:  426 is qualified.
22                THE COURTROOM DEPUTY:  Your Honor, Juror No. 418.
23                THE COURT:  Good morning, ma'am.
24                PROSPECTIVE JUROR:  Good morning.
25                THE COURT:  How are you?  Please have a seat.
```

```
 1                PROSPECTIVE JUROR:  Thank you.

 2                THE COURT:  And you can feel free to take your

 3     mask off, if you're comfortable doing so.

 4                PROSPECTIVE JUROR:  Oh, I'd love to.  Thank you.

 5                THE COURT:  Good.  All right.  Thank you very much

 6     for your service.  How was your weekend?

 7                PROSPECTIVE JUROR:  I'm sorry, please?

 8                THE COURT:  How was your weekend?

 9                PROSPECTIVE JUROR:  Fine.

10                THE COURT:  Okay.  If you could speak into the mic

11     so that the court reporter can pick you up.

12                PROSPECTIVE JUROR:  It's complicated.

13                THE COURT:  Take your time.

14                PROSPECTIVE JUROR:  I'm sorry.

15                THE COURT:  That's all right.

16                PROSPECTIVE JUROR:  A little humor for the

17     courtroom.  Sorry.  Okay.

18                THE COURT:  All right.  So you're retired; is that

19     correct?

20                PROSPECTIVE JUROR:  That's correct.

21                THE COURT:  And you used to work at the Air and

22     Space Museum.

23                PROSPECTIVE JUROR:  I did.

24                THE COURT:  Tell us about that.  What did you do

25     for the Air and Space Museum?
```

1          PROSPECTIVE JUROR:  I was the intern coordinator,

2     and later I was the public programs coordinator.

3          THE COURT:  Sounds like a pretty interesting

4     internship.

5          PROSPECTIVE JUROR:  I hope I made it interesting

6     for the students, yes.

7          THE COURT:  Good.  So you've never heard anything

8     about this case before last Wednesday; is that right?

9          PROSPECTIVE JUROR:  No.

10         THE COURT:  And when we brought you to the big

11    courtroom and told you about the case, what did you think?

12         PROSPECTIVE JUROR:  I didn't know anything.

13         THE COURT:  But what did you think about the

14    prospect of being on the jury in this case?

15         PROSPECTIVE JUROR:  I'm willing to serve.

16         THE COURT:  Okay.

17         All right.  Counsel!

18         MR. KEILTY:  Good morning, ma'am.  How are you?

19         PROSPECTIVE JUROR:  Fine.  Thank you.

20         MR. KEILTY:  Thanks for your service here today.

21    We appreciate it.

22         PROSPECTIVE JUROR:  Oh, thank you.

23         MR. KEILTY:  I think in the questionnaire -- maybe

24    I'm mistaken -- that you said you'd read articles about

25    obviously Hillary Clinton and Donald Trump, but one of the

 1   people who may factor into this trial is an individual by

 2   the name of Jim Baker.  Does that name ring a bell to you?

 3            PROSPECTIVE JUROR:  Well, if it's the person that

 4   was -- I think he was in the Bush Administration.

 5            MR. KEILTY:  Okay.  I think that's a different Jim

 6   Baker.  That's James Baker.

 7            PROSPECTIVE JUROR:  Oh, that's the Jim Baker I

 8   thought it was.

 9            MR. KEILTY:  Okay.  Great.  I appreciate that.

10            And I noticed in the questionnaire you mentioned

11   that you donated to various political campaigns over the

12   years.  Is that correct?

13            PROSPECTIVE JUROR:  Yes.

14            MR. KEILTY:  Okay.  And would you have any issues

15   setting aside your political beliefs and just being fair and

16   impartial in this matter?

17            PROSPECTIVE JUROR:  I can.

18            MR. KEILTY:  Okay.  I appreciate it.  Thank you

19   very much.

20            PROSPECTIVE JUROR:  Thank you.

21            MR. BERKOWITZ:  Good morning.

22            PROSPECTIVE JUROR:  Good morning.

23            MR. BERKOWITZ:  I represent Mr. Sussmann in this

24   case.  I just wanted to make sure that if the judge were to

25   instruct you in this case that you should listen to the

```
 1    evidence that comes in the courtroom and not bring with you

 2    any notions from outside the courtroom, would you be able to

 3    follow that instruction and give Mr. Sussmann a fair and

 4    impartial trial?

 5               PROSPECTIVE JUROR:  I believe so, yes.

 6               MR. BERKOWITZ:  Thank you very much, ma'am.

 7               THE COURT:  Okay.  Ma'am, you can step down.

 8               PROSPECTIVE JUROR:  Thank you.

 9               MR. KEILTY:  No, Your Honor.

10               MR. BERKOWITZ:  No.

11               THE COURT:  Okay.  418 is qualified.

12               THE COURTROOM DEPUTY:  Your Honor, we need to

13    recall Juror No. 426.

14               THE COURT:  Okay.

15               Step right up, ma'am.

16               PROSPECTIVE JUROR:  I just wanted to -- I had two

17    more comments.

18               So I have a doctor's appointment tomorrow, a

19    follow-up from surgery, and I just wanted to know would the

20    process -- I mean, would we know anything by then?

21               And if that -- if like -- is there a possibility

22    that we could be sequestered?  Because I have a mother with

23    mobility issues, and I need to be home like at a certain

24    time just to make sure that she's --

25               THE COURT:  Okay.  Let's take the first one first.
```

```
 1                    PROSPECTIVE JUROR:  Okay.

 2                    THE COURT:  You have a medical follow-up

 3        appointment tomorrow.  What time?

 4                    PROSPECTIVE JUROR:  It's at 9:00 a.m.

 5                    THE COURT:  And how long will it take?

 6                    PROSPECTIVE JUROR:  No more than 45 minutes.  It's

 7        the follow-up from surgery.

 8                    THE COURT:  Would it be difficult to postpone

 9        that, if you were selected for the jury?

10                    PROSPECTIVE JUROR:  I mean, I could reschedule.

11                    THE COURT:  Okay.

12                    PROSPECTIVE JUROR:  I mean, I could.

13                    THE COURT:  We plan to pick a jury today, if

14        possible.

15                    PROSPECTIVE JUROR:  Okay.

16                    THE COURT:  And you could reschedule that?

17                    PROSPECTIVE JUROR:  Uh-huh.

18                    THE COURT:  Okay.  And your second question?  I'm

19        sorry?

20                    PROSPECTIVE JUROR:  I have an elderly mother who

21        has mobility issues, and I just wanted to know like would

22        this interfere with me taking care of her in the evenings

23        when I, you know, come home from work?

24                    THE COURT:  So you will not be sequestered.

25        You're able to go home at around 5:00 -- 5:30 at the
```

```
 1    latest -- every day and come back at 9:00 the next day.
 2               PROSPECTIVE JUROR:  Okay.
 3               THE COURT:  15-minute break in the morning; 15-
 4    minute break in the afternoon; about an hour, hour and a
 5    half for lunch.
 6               PROSPECTIVE JUROR:  All right.
 7               THE COURT:  Would that be all right?
 8               PROSPECTIVE JUROR:  That's doable.  Thank you,
 9    sir.
10               THE COURT:  Thank you.
11               PROSPECTIVE JUROR:  Thank you.
12               THE COURT:  Okay.  No issues, Counsel?
13               THE COURTROOM DEPUTY:  Your Honor, Juror No. 1023.
14               THE COURT:  Step right up, ma'am.  Good morning.
15    Feel free to take your mask off, if you're comfortable.
16               PROSPECTIVE JUROR:  I'll keep it on.
17               THE COURT:  Okay.  All right.  It says here you
18    are in the healthcare field; is that right?
19               PROSPECTIVE JUROR:  Yes.
20               THE COURT:  And what is it exactly that you do?
21               PROSPECTIVE JUROR:  Digital health policy.
22               THE COURT:  All right.  And how long have you been
23    doing that?
24               PROSPECTIVE JUROR:  About ten years.
25               THE COURT:  Okay.  And it says you have a close
```

```
1    friend who works in the U.S. Attorney's Office for the

2    District of Columbia.

3              PROSPECTIVE JUROR:  No longer.

4              THE COURT:  No longer.

5              PROSPECTIVE JUROR:  She was on detail, but it just

6    ended.

7              THE COURT:  Okay.  And how close of a friend, and

8    would your friendship with her and her relationship to the

9    U.S. Attorney's Office affect your ability to be fair in

10   this case in any way, do you think?

11             PROSPECTIVE JUROR:  It would not affect my ability

12   to be fair.

13             THE COURT:  And you have a friend who works for

14   the Senate judiciary committee; is that right?

15             PROSPECTIVE JUROR:  Yes.

16             THE COURT:  And what does she do with them?

17   Immigration?

18             PROSPECTIVE JUROR:  Yes.

19             THE COURT:  Okay.  And you witnessed a shooting

20   back in 2020?

21             PROSPECTIVE JUROR:  I did in my neighborhood.

22             THE COURT:  And did you wind up being a witness in

23   that case?

24             PROSPECTIVE JUROR:  No.

25             THE COURT:  Counsel?
```

1          MR. KEILTY:  Good morning.

2          PROSPECTIVE JUROR:  Good morning.

3          MR. KEILTY:  Thanks for your service today.  I

4     appreciate it.

5          So I think, in the questionnaire that you filled

6     out prior to today, you mentioned that it's your opinion

7     that the U.S. needs stricter privacy laws.

8          PROSPECTIVE JUROR:  Yes.

9          MR. KEILTY:  Can you elaborate a little more on

10    that?

11         PROSPECTIVE JUROR:  Yes.  I work in the digital

12    health field, and I work on privacy as it relates to health

13    data that falls outside of the federal health data

14    protection law HIPAA.

15         MR. KEILTY:  Okay.

16         PROSPECTIVE JUROR:  And so that is where -- I work

17    on that issue.

18         MR. KEILTY:  Okay.  In this case you might hear

19    about Internet data that was collected by certain

20    individuals in certain groups.

21         PROSPECTIVE JUROR:  Uh-huh.

22         MR. KEILTY:  Would you have any difficulty being

23    fair and impartial if you learned about that type of

24    information being collected?

25         PROSPECTIVE JUROR:  No.  As it falls within the

```
 1    current laws, no.

 2              MR. KEILTY:  Okay.  Great.

 3              Thanks, Your Honor.

 4              MR. BERKOWITZ:  Good morning, and thank you for

 5    your service.

 6              PROSPECTIVE JUROR:  Good morning.

 7              MR. BERKOWITZ:  I represent Mr. Sussmann.  He was

 8    a national security and privacy lawyer, is a national

 9    security and privacy lawyer, and there will be testimony

10    about that.  Have you ever heard of Mr. Sussmann?

11              PROSPECTIVE JUROR:  No.

12              MR. BERKOWITZ:  And would the fact that he

13    practices in that space and works for companies in that

14    space prevent you in any way from being fair and impartial

15    towards him?

16              PROSPECTIVE JUROR:  No.

17              MR. BERKOWITZ:  And if the judge instructed you,

18    as I expect he would, to listen to only the evidence in the

19    Court as to what actually happened in this case and to not

20    bring any knowledge or expertise that you may have based on

21    your lobbying and digital efforts, I'm assuming that you

22    would be able to do that and to only pass judgment based on

23    what you hear in the courtroom.

24              PROSPECTIVE JUROR:  Yes.

25              MR. BERKOWITZ:  Thank you very much.
```

```
 1                    PROSPECTIVE JUROR:  Thank you.

 2                    THE COURT:  All right.  You can step down.

 3                    Okay.  Any objection to 1023?

 4                    MR. KEILTY:  No, Your Honor.

 5                    MR. BERKOWITZ:  No.

 6                    THE COURT:  She is qualified.

 7                    THE COURTROOM DEPUTY:  Your Honor, Juror No. 225.

 8                    THE COURT:  Good morning, ma'am.

 9                    PROSPECTIVE JUROR:  Good morning.

10                    THE COURT:  Feel free to take your mask off, if

11     you'd like.

12                    All right.  You're a Spanish teacher; is that

13     right?

14                    PROSPECTIVE JUROR:  That's correct.

15                    THE COURT:  And is school over?

16                    PROSPECTIVE JUROR:  Yes, Washington, D.C., the

17     British School of Washington.

18                    THE COURT:  And is school over for the year?

19                    PROSPECTIVE JUROR:  Not yet.

20                    THE COURT:  Not yet.

21                    PROSPECTIVE JUROR:  Not yet.

22                    THE COURT:  So would serving on this jury prevent

23     you from teaching?

24                    PROSPECTIVE JUROR:  Yes.

25                    THE COURT:  But you said that there would be no
```

1      reason for you not to serve.

2                 PROSPECTIVE JUROR:  Exactly.

3                 THE COURT:  But you can just take it off?

4                 PROSPECTIVE JUROR:  Yes.

5                 THE COURT:  Okay.

6                 All right.  And you had heard nothing about this

7      case before you filled out your questionnaire last week?

8                 PROSPECTIVE JUROR:  That's correct.

9                 THE COURT:  All right.  And when I told you what

10     the case was about, did you have any impressions about

11     serving on the jury?

12                PROSPECTIVE JUROR:  No.

13                THE COURT:  No.  Not one way or the other?  Were

14     you excited or disappointed or --

15                PROSPECTIVE JUROR:  Actually excited, yes.

16                THE COURT:  Okay.  So no reason why you wouldn't

17     want to serve then?

18                PROSPECTIVE JUROR:  That's correct.

19                THE COURT:  Okay.  Counsel?

20                MR. KEILTY:  Nothing from the government, Your

21     Honor.

22                MR. BERKOWITZ:  Nothing.  Thank you very much.

23                THE COURT:  All right.  You can step down.  Thank

24     you very much.

25                Any objection?

```
 1              MR. KEILTY:  No, Your Honor.
 2              MR. BERKOWITZ:  No, Your Honor.
 3              THE COURT:  225 is qualified.
 4              THE COURTROOM DEPUTY:  Your Honor, Juror No. 683.
 5              THE COURT:  Good morning, sir.
 6              PROSPECTIVE JUROR:  Good morning.
 7              THE COURT:  How are you doing?  Feel free to take
 8     your mask off, if you'd like.
 9              All right.  How was your weekend?
10              PROSPECTIVE JUROR:  It was good.
11              THE COURT:  Good.  All right.  We've reviewed your
12     questionnaire.  We just have a few follow-up questions for
13     you.
14              PROSPECTIVE JUROR:  Gotcha.
15              THE COURT:  You work at Ace Hardware; is that
16     right?
17              PROSPECTIVE JUROR:  Yes, sir.
18              THE COURT:  And before that you were involved with
19     something called MIOV.  MLOV.
20              PROSPECTIVE JUROR:  Yes, sir.
21              THE COURT:  Tell us about that.
22              PROSPECTIVE JUROR:  It was a summer youth
23     employment program targeted to community work for people of
24     color, immigrants, migrants.  So we did a lot of things like
25     organizing protests, finding things we can do to improve
```

```
 1    various things in our communities, and what can benefit the

 2    person right next to you.

 3                THE COURT:  Okay.

 4                All right.  Counsel, follow-up?

 5                MR. KEILTY:  No, Your Honor.  Thank you.

 6                MR. BERKOWITZ:  I don't have anything.  Thank you

 7    very much.

 8                THE COURT:  All right, sir.  Thank you very much.

 9    You can step down.

10                PROSPECTIVE JUROR:  Yes.

11                THE COURT:  Any challenge?

12                MR. KEILTY:  No, Your Honor.

13                MR. BERKOWITZ:  No, Your Honor.

14                THE COURT:  683 is qualified.

15                THE COURTROOM DEPUTY:  Your Honor, Juror No. 942.

16                THE COURT:  Good morning, ma'am.

17                PROSPECTIVE JUROR:  Good morning.

18                THE COURT:  How are you?

19                PROSPECTIVE JUROR:  Fine.

20                THE COURT:  Feel free to take your mask off, if

21    you'd like.

22                So you are a -- you work in the Department of

23    Interior; is that right?

24                PROSPECTIVE JUROR:  Yes, sir.

25                THE COURT:  As a lawyer.  And tell us generally
```

1        what you do.

2              PROSPECTIVE JUROR:  I retired two years ago, but I

3        was in the solicitor's office, the Department of Mental

4        Resources.

5              THE COURT:  Did you litigate --

6              PROSPECTIVE JUROR:  No.

7              THE COURT:  -- or counsel?

8              And your husband's also a lawyer?

9              PROSPECTIVE JUROR:  Yes, sir.

10             THE COURT:  Okay.  And you were a law clerk in the

11       Eastern District of Louisiana; is that right?

12             PROSPECTIVE JUROR:  Yes, sir.

13             THE COURT:  So if we excluded lawyers from juries

14       in Washington, D.C., we would never be able to pick a jury.

15       But one of the dangers of having or one of the risks of

16       having lawyers on a jury is that sometimes they might

17       dominate the discussion and not allow for free flow of ideas

18       back in the jury room.  Would that be an issue with you?

19             PROSPECTIVE JUROR:  I don't think so.

20             THE COURT:  Okay.

21             Counsel, follow-up?

22             MR. KEILTY:  No, Your Honor.

23             MR. BERKOWITZ:  Just briefly.

24             Good morning, and thank you for your service.

25             PROSPECTIVE JUROR:  You're welcome.

1          MR. BERKOWITZ:  My name is Sean Berkowitz.  I

2     represent Mr. Sussmann.

3          PROSPECTIVE JUROR:  Uh-huh.

4          MR. BERKOWITZ:  I just wanted to follow up on the

5     judge's last question relating to being a lawyer and perhaps

6     dominating the discussion, as some people accuse me of doing

7     occasionally in things.

8          There will likely be testimony about things such

9     as clients, billing records, things of that nature that

10    lawyers might have a specialized knowledge of that other

11    people would not.  Do you think that you would be able to

12    put to the side any preconceived knowledge you had as a

13    lawyer about those issues and listen only to what the

14    witnesses on the stand had to say even if it might be

15    inconsistent with what your practice was?

16         PROSPECTIVE JUROR:  I think I certainly can, but I

17    really -- what I would say is that I've been a law clerk,

18    and I've been a general counsel for oil companies, and

19    mostly oil and gas related items, so as far as those kinds

20    of things like billable hours, I've never been -- I've never

21    practiced in a large law firm.

22         MR. BERKOWITZ:  God bless you.

23         PROSPECTIVE JUROR:  I agree.

24         MR. BERKOWITZ:  And you, I think, had some

25    connections to the U.S. Attorney's Office; is that right?

```
 1              PROSPECTIVE JUROR:  When I was in the Eastern

 2      District, of course.  I mean, as a law clerk certainly

 3      you -- you know, you know the United States attorneys or

 4      the -- but I think you're exposed, as a law clerk, to all of

 5      the attorneys that appear before the judge.

 6              MR. BERKOWITZ:  Was that in New Orleans?

 7              PROSPECTIVE JUROR:  It was in New Orleans.

 8              MR. BERKOWITZ:  And I expect that you could put

 9      aside any views or biases you might have in favor of federal

10      prosecutors and defense attorneys and revaluate this case

11      solely on the merits of --

12              PROSPECTIVE JUROR:  I have seen both.

13              MR. BERKOWITZ:  Yes, understood.  And you'll

14      understand --

15              PROSPECTIVE JUROR:  Good and bad on both sides.

16              MR. BERKOWITZ:  As have I.

17              And you understand the Napoleonic Code wouldn't be

18      in play here, right?

19              I'm kidding.

20              PROSPECTIVE JUROR:  No.  I agree.

21              MR. BERKOWITZ:  Thank you very much.

22              PROSPECTIVE JUROR:  You're welcome.

23              THE COURT:  Okay.  Thank you, ma'am.  You can step

24      down.

25              All right.  Any challenge?
```

```
 1              MR. KEILTY:  No, Your Honor.

 2              MR. BERKOWITZ:  No, Your Honor.

 3              THE COURT:  942 is qualified.

 4              All right.  We're skipping 507.  Next is 373.

 5              THE COURTROOM DEPUTY:  Your Honor, Juror No. 373.

 6              THE COURT:  Good morning, ma'am.

 7              PROSPECTIVE JUROR:  Good morning.

 8              THE COURT:  How are you?

 9              PROSPECTIVE JUROR:  Good.  How are you?

10              THE COURT:  Good.  Feel free to slip your mask

11         off, if you're comfortable doing so.

12              PROSPECTIVE JUROR:  Okay.

13              THE COURT:  Thank you for your service.  We've

14         reviewed your questionnaire, and I just have a few follow-up

15         questions.

16              So you're a lawyer, correct?

17              PROSPECTIVE JUROR:  I am.

18              THE COURT:  And you do insurance -- policy side

19         insurance litigation?

20              PROSPECTIVE JUROR:  Correct.

21              THE COURT:  Okay.  And you were at DLA Piper for a

22         number of years, including as a partner.

23              PROSPECTIVE JUROR:  Correct.

24              THE COURT:  As I just told another potential

25         juror, if we were to disqualify all lawyers from juries in
```

1    D.C., we wouldn't have a jury.

2              PROSPECTIVE JUROR:  Understood.

3              THE COURT:  But one of the dangers of having

4    lawyers as jurors is the tendency, perhaps, to dominate the

5    discussion or to, you know, play an undue role in jury

6    deliberations because of your legal background.  Would that

7    be an issue with you, do you think?

8              PROSPECTIVE JUROR:  I don't believe it would be,

9    no.

10             THE COURT:  Okay.  And this trial will involve

11   testimony and evidence regarding a large law firm, Perkins

12   Coie.  You've obviously heard of it, I would assume, as well

13   as things like billing records and internal policies and

14   potentially press releases and things like that.

15             With your experience at a big law firm, do you

16   think that would negatively affect your ability to

17   impartially consider that evidence?  Or, linking up to my

18   earlier question, do you think you might have a tendency to

19   dominate the conversation back in the jury room about those

20   sorts of law firm issues?  Would you be able to facilitate

21   sort of full and fair discussion of those issues?

22             That was a very long question.

23             PROSPECTIVE JUROR:  I don't believe that I would

24   dominate, and I -- the latter half of your question, I

25   think, called for a different answer than I would have

1    answered to the rest, but I don't think it would be an issue

2    in terms of deliberations.

3              THE COURT:  Okay.  Any views one way or the other

4    about the Perkins Coie firm?

5              PROSPECTIVE JUROR:  No.

6              THE COURT:  Any interactions with them while you

7    were in private practice?

8              PROSPECTIVE JUROR:  I've never had any

9    interactions.  I know one attorney, who I didn't know super

10   well, but thought highly of, but -- who went there.  I

11   haven't had any communications with that attorney since they

12   moved there.

13             THE COURT:  All right.  And you previously served

14   on a jury in a drug case; is that correct?

15             PROSPECTIVE JUROR:  Correct.

16             THE COURT:  And you answered yes with an asterisk

17   to the question "Is there anything about that experience

18   that would make you hesitant to serve on a jury again?"

19             PROSPECTIVE JUROR:  Yes.

20             THE COURT:  And I can't quite make out everything

21   that you said, but tell us about that.

22             PROSPECTIVE JUROR:  I guess I would say that I

23   found it to be a difficult -- more difficult experience than

24   I even expected kind of coming from the other side of

25   things, and I think it's difficult to sit in judgment of

 1     another person.

 2              That was my experience.  It didn't stop me from

 3     being able to fulfill my duties, but I did find it a

 4     difficult process.

 5              THE COURT:  How might that relate to this trial?

 6     Does it make you hesitate to serve on a jury here; or, if

 7     you were selected, would you fulfill your obligation and do

 8     the best you can?

 9              PROSPECTIVE JUROR:  I would fulfill my obligation

10     and do the best I could.

11              THE COURT:  And had you heard about this case

12     before last week?

13              PROSPECTIVE JUROR:  I had not.

14              THE COURT:  Okay.

15              All right.  Counsel, follow-up?

16              MR. KEILTY:  Good morning.  How are you?

17              PROSPECTIVE JUROR:  Good morning.

18              MR. KEILTY:  Thanks for your service today.  I

19     appreciate it.

20              Just going back to what the judge was talking

21     about, that you said you found it difficult to sit in

22     judgment of another person.  I'm sure we all do.  But if the

23     government proved its case beyond a reasonable doubt, are

24     you 100 percent certain you could reach a verdict here?

25              PROSPECTIVE JUROR:  Yes.

1      MR. KEILTY:  Okay.  In the questionnaire you
2  filled out you also mentioned that you had donated to some
3  candidates in the 2016 election.
4      PROSPECTIVE JUROR:  I think what I said was that I
5  believe I did or thought I probably did.  I don't have a
6  specific recollection of doing so, but it certainly seems
7  possible.
8      MR. KEILTY:  Okay.  Do you have any incredibly
9  strong feelings about either candidate in that election that
10  would not allow you to be fair and impartial in this matter?
11      PROSPECTIVE JUROR:  In the 2016 election?
12      MR. KEILTY:  Yes.  You're going to hear both names
13  throughout this trial.
14      PROSPECTIVE JUROR:  Yes.  I would certainly say
15  that I have strong feelings about candidates in the
16  election.
17      MR. KEILTY:  Right.  And the candidates are not on
18  trial here at all.
19      PROSPECTIVE JUROR:  Sure.
20      MR. KEILTY:  Just Mr. Sussmann.  But you'll hear
21  their names, so I'm just trying to...
22      PROSPECTIVE JUROR:  Sure.  I mean, I don't think
23  that it would preclude me from fulfilling my, you know,
24  obligations as a juror.
25      MR. KEILTY:  Can you -- are you 100 percent

 1    certain of that, or no?  Do you have a little bit of --

 2              PROSPECTIVE JUROR:  No, I'm 100 percent certain.

 3              MR. KEILTY:  Okay.  Thank you.  I appreciate it.

 4              MR. BERKOWITZ:  Good morning.

 5              PROSPECTIVE JUROR:  Good morning.

 6              MR. BERKOWITZ:  I represent Mr. Sussmann, who, as

 7    you've heard, at times relevant to this case was a partner

 8    at the law firm of Perkins Coie, so like you he was an

 9    attorney in big law.

10              Is there anything about the fact that he is an

11    attorney or was an attorney in Big Law and you were an

12    attorney in Big Law that would make it difficult for you to

13    serve on this jury in any way?

14              PROSPECTIVE JUROR:  I don't think so.

15              MR. BERKOWITZ:  That's really all I have.  Thank

16    you very much.

17              PROSPECTIVE JUROR:  Okay.  Thank you.

18              THE COURT:  You answered yes to the question, if

19    selected you might be concerned about reactions to your

20    verdict by other people, and, again, you had an asterisk by

21    that.  Can you elaborate on that?

22              And before you do, your name will not be public.

23    You'll be referred to by your juror number.  After the

24    trial, you can choose or not choose to speak about the

25    trial, including to the press.

```
 1            With that, would you have any concern about
 2   conforming your judgment to someone else's view?
 3            PROSPECTIVE JUROR:  With that caveat, no.  And I
 4   answered that question just in the interest of full
 5   disclosure.  I didn't have a lot of information.  But no.
 6            THE COURT:  Okay.  Any follow-up, Counsel?
 7            MR. KEILTY:  No, Your Honor.
 8            THE COURT:  Thank you very much.
 9            PROSPECTIVE JUROR:  Can I make a statement, which
10   is -- two things.
11            One, I did want to just -- again, in the interest
12   of full disclosure, I was scrolling through the Washington
13   Post today and did see a reference to the headlines.  I
14   scrolled really quickly past it, but didn't read anything.
15   I just wanted to add that addendum to my disclosure.
16            Also, I think there was a question asked about
17   whether a two-week trial would be a hardship, and I just --
18   and, again, I suspect that this may be the case for a number
19   of people on the panel, but I just wanted to point out it
20   didn't have a specific deadline, but I will say that a two-
21   week trial, given my current workload, will certainly cause
22   some difficulties.  And I'll just -- I guess I'll leave it
23   at that because, you know, I'm at a small firm now, and so
24   it will cause some difficulties.
25            THE COURT:  Let's assume that you're selected for
```

1   the jury, and the trial lasts, you know, into next week, and

2   the jury gets the case for deliberations.  It's up to the

3   jury how long it wishes to deliberate.  There's no set limit

4   on that timeline.

5          If you were on the jury, would it -- would you be

6   distracted by your work obligations?  Would you be able to

7   give the deliberations and the trial your full attention

8   notwithstanding that there may be stuff going on in the

9   office?

10          PROSPECTIVE JUROR:  I mean, I would certainly do

11   my absolute best.

12          THE COURT:  All right.  And there are no, I take

13   it, trial deadlines or anything like that?

14          PROSPECTIVE JUROR:  And that's the reason I

15   answered.  I don't have a trial deadline.  I don't have a

16   deposition or anything that would...

17          THE COURT:  Great.  Thank you very much.  You may

18   step down.

19          PROSPECTIVE JUROR:  Thank you.

20          THE COURT:  Okay.  Any challenge to 373?

21          MR. KEILTY:  No, Your Honor.

22          MR. BERKOWITZ:  No, Your Honor.

23          THE COURT:  Okay.  She is qualified.

24          THE COURTROOM DEPUTY:  Your Honor, Juror No. 1197.

25          THE COURT:  Good morning, sir.

```
 1                   PROSPECTIVE JUROR:  Good morning.

 2                   THE COURT:  Have a seat.  Feel free to slip your

 3       mask off, if you are comfortable doing so.

 4                   We've read your questionnaire and just have a few

 5       follow-up questions for you.

 6                   PROSPECTIVE JUROR:  Okay.

 7                   THE COURT:  So you have a familiarity with cyber

 8       security, IT, domain name systems data.  It was somewhat

 9       difficult for me to tell, but what is your occupation, and

10       what exactly did you study with regard to anything about

11       those subjects?

12                   PROSPECTIVE JUROR:  Yes.  So I'm a senior software

13       engineering manager.  I worked in software development, IT,

14       all that stuff so...

15                   THE COURT:  And where are you employed?

16                   PROSPECTIVE JUROR:  A company called Arcadia in

17       D.C.

18                   THE COURT:  What kind of software does Arcadia

19       develop?

20                   PROSPECTIVE JUROR:  Energy, utility software.

21                   THE COURT:  Okay.  Does it supply the government,

22       the federal government, with software?

23                   PROSPECTIVE JUROR:  No.

24                   THE COURT:  Okay.  And if you were on this jury,

25       you would hear testimony regarding cyber security and domain
```

1    name systems.  One of the risks of putting someone on a jury

2    with specialized technical expertise is that they might, A,

3    dominate the discussion of those topics once you're back in

4    the jury room or have a view different from the view that is

5    expressed by the evidence and the witnesses.

6              Would that be a problem with you, or would you

7    sort of foster cooperative discussions back there?

8              PROSPECTIVE JUROR:  Hard to answer.  I would like

9    to say that yes, I would, but, in all honesty, it would be

10   hard to separate out what I know from...

11             THE COURT:  Okay.  And you had not heard of this

12   case; is that correct?

13             PROSPECTIVE JUROR:  Correct.

14             THE COURT:  When I described the case on

15   Wednesday, did you have any impressions about the

16   possibility of serving on a jury?

17             PROSPECTIVE JUROR:  No.

18             THE COURT:  All right.  Counsel?

19             MR. KEILTY:  Good morning, sir.  How are you?

20             PROSPECTIVE JUROR:  Good morning.

21             MR. KEILTY:  Thanks for your service today.  I

22   appreciate it.

23             In your questionnaire that you filled out prior to

24   today, you mentioned that you had applied at some point for

25   a job at the CIA; is that correct?

```
 1                  PROSPECTIVE JUROR:  That's correct, yes.
 2                  MR. KEILTY:  And you didn't get that job; is that
 3       right?
 4                  PROSPECTIVE JUROR:  No.
 5                  MR. KEILTY:  Would there be anything about that
 6       experience -- bad, good -- that would not allow you to be
 7       fair and impartial here in this case?
 8                  PROSPECTIVE JUROR:  No.
 9                  MR. KEILTY:  And I say it because there are
10       potentially CIA witnesses in this case.  So you could be
11       fair and impartial?
12                  PROSPECTIVE JUROR:  Yes.  It was very long ago.
13                  MR. KEILTY:  Okay.  Thank you.
14                  MR. BERKOWITZ:  Good morning.
15                  PROSPECTIVE JUROR:  Good morning.
16                  MR. BERKOWITZ:  My name is Sean Berkowitz.  I
17       represent the defendant in this case, Michael Sussmann.  I
18       have just a little follow-up from what the judge had asked
19       you.
20                  I noted that you indicated in your questionnaire
21       that you had some familiarity with DNS data.
22                  PROSPECTIVE JUROR:  Uh-huh.
23                  MR. BERKOWITZ:  What, generally, are you aware of
24       relative to that?  What's the level of knowledge?
25                  PROSPECTIVE JUROR:  I mean, not day-to-day
```

1    basis, but as a normal function of my job, like, I have to

2    operate -- I have to manage like our domain name systems at

3    work.  And, yes, I've been in charge of setting that up for

4    different companies over my career, so I'm pretty familiar.

5              MR. BERKOWITZ:  And if there was an expert that

6    was qualified and testified about DNS issues, would you be

7    able to put aside any knowledge that you have that might be

8    inconsistent with what the expert would testify to?

9              PROSPECTIVE JUROR:  Like I said before, I'd like

10   to think that I could, but it's hard to guarantee that I

11   wouldn't be able to separate out my own knowledge of those

12   topics from whatever I was hearing.

13             MR. BERKOWITZ:  Okay.  I think, Judge, that's all

14   I've got.

15             THE COURT:  Okay.  Thank you, sir.  You can step

16   down.

17             PROSPECTIVE JUROR:  I'm supposed to mention I

18   recognize two names from the list.

19             THE COURT:  Is that the main list there?

20             PROSPECTIVE JUROR:  Yes.

21             THE COURT:  Who do you recognize?

22             PROSPECTIVE JUROR:  Marc Elias and David Martin.

23             THE COURT:  Let's take the first one.  Marc Elias.

24             PROSPECTIVE JUROR:  So I doubt it's the same one,

25   but it's the father of a woman who I went to high school

```
 1    with in New York.

 2              THE COURT:  All right.  And Mr. Martin?

 3              PROSPECTIVE JUROR:  Another student my age who I

 4    went to high school with?

 5              THE COURT:  Does he work for the FBI?

 6              PROSPECTIVE JUROR:  I don't think so, no.

 7              THE COURT:  I think you're fine.

 8              PROSPECTIVE JUROR:  Cool.

 9              THE COURT:  Any challenge to 1197?

10              MR. KEILTY:  Not from the government, Your Honor.

11              MR. BERKOWITZ:  Your Honor, Mr. Sussmann would

12    like to challenge this juror on the issue that he has

13    specialized technical knowledge with respect to one of the

14    key issues in the case that is the subject of the only

15    expert testimony.  And while he said he would like to think

16    that he would try, he said that he really couldn't guarantee

17    it both in response to your question, and I tried to ask him

18    an open-ended question about that as well, and he said he

19    would struggle with it.

20              And it sometimes can be hard to separate out your

21    own expertise from another's, and I would worry that in the

22    jury room he would become a shadow expert, if you will, on

23    these issues.  And so we would challenge him.

24              THE COURT:  All right.  I'll deny that challenge.

25    We're not getting into the accuracy of the data.  As you
```

1    know, the expert is intended just to give the jury an

2    overview of the data, and I would certainly expect him to

3    bring his everyday experience to that just like anyone else.

4    And he struck me as someone who is a pretty conscientious

5    guy.

6            So we'll overrule your challenge on that.  1197 is

7    qualified.

8            Are you folks ready for a short break?

9            MR. KEILTY:  That's fine, Your Honor.

10           THE COURT:  Why don't we take 10 or 15 minutes.

11   We're making good progress.

12           (Recess taken)

13           THE COURT:  All right.  Counsel, so we're going to

14   aim for 38, and we're at 15 by my count.

15           MR. BERKOWITZ:  That's correct.  We're getting

16   there.

17           THE COURT:  Making good progress.

18           THE COURTROOM DEPUTY:  Your Honor, calling Juror

19   No. 715.

20           THE COURT:  Very well.

21           Okay.  Good morning, ma'am.  Thank you for your

22   patience.  You can feel free to slip your mask off, if you'd

23   like.  We've read your questionnaire and just have a few

24   follow-up questions.

25           It says here you work some place called Seven

1    Letter.

2               PROSPECTIVE JUROR:  Yes.

3               THE COURT:  Tell us what Seven Letter is.

4               PROSPECTIVE JUROR:  It's a PR firm.

5               THE COURT:  Okay.  And what sort of PR?

6    Commercial or government?  Any politics?

7               PROSPECTIVE JUROR:  Commercial mostly.  There is

8    some government work.

9               (Interruption)

10              THE COURT:  Okay.  If everyone could turn their

11   electronics off, I'd appreciate it.

12              Some?

13              PROSPECTIVE JUROR:  I'm on the operations side.  I

14   don't work with clients.

15              THE COURT:  Okay.  And you were in hospitality, it

16   says, for a couple of years before that.

17              PROSPECTIVE JUROR:  Yes.

18              THE COURT:  Doing what?

19              PROSPECTIVE JUROR:  I worked for a co-working

20   group with a commercial real estate firm.

21              THE COURT:  Okay.  And you had not heard of this

22   case before last week?

23              PROSPECTIVE JUROR:  No, sir.

24              THE COURT:  All right.  Any impressions about the

25   possibility of serving on a jury when I described the case

1    for you last week?

2              PROSPECTIVE JUROR:  No, sir.

3              THE COURT:  No, okay.

4              Counsel, any follow-up?

5              MR. KEILTY:  No, Your Honor.  Thank you.

6              MR. BERKOWITZ:  Just briefly.

7              Good morning.  It's still morning, I think.  I'm

8    Sean Berkowitz, and I represent the defendant in this case,

9    Michael Sussmann.

10             I think that I noted that you might know somebody

11   in the FBI; is that right?

12             PROSPECTIVE JUROR:  Yes.

13             MR. BERKOWITZ:  And can you tell us a little bit

14   more about that?

15             PROSPECTIVE JUROR:  Yes.  I know one person, a

16   friend of mine from college that I've stayed in touch with

17   who lives in the area.

18             MR. BERKOWITZ:  Okay.  And my job, at least today,

19   is to make sure that we are able to select a fair and

20   impartial jury who will be fair to Mr. Sussmann, and I

21   assume that the fact that you have an acquaintance and a

22   college friend who turned out to be an FBI agent wouldn't

23   affect your ability to be fair in a case where the

24   allegation is that the FBI is a quasi victim?

25             PROSPECTIVE JUROR:  No, it would not affect it.

1          MR. BERKOWITZ:  Okay.  And you would listen to the

2     evidence in the court that comes in, and render your verdict

3     solely based on what you heard in court and not based on any

4     other preconceived notions?

5          PROSPECTIVE JUROR:  Yes.

6          MR. BERKOWITZ:  Thank you very much.

7          THE COURT:  Okay.  Thank you.  You can step down.

8          Any challenge, Counsel?

9          MR. KEILTY:  No, Your Honor.

10          MR. BERKOWITZ:  No.

11          THE COURT:  715 is qualified.

12          THE COURTROOM DEPUTY:  Your Honor, Juror No. 1131.

13          THE COURT:  Good morning, ma'am.

14          PROSPECTIVE JUROR:  Good morning.

15          THE COURT:  Feel free to slip your mask off, if

16     you're comfortable doing so.

17          All right.  We've read your questionnaire and just

18     have a few follow-up questions for you, okay?  And you're

19     not working at the moment; is that right?

20          PROSPECTIVE JUROR:  Correct.

21          THE COURT:  And you're a teacher by training?

22          PROSPECTIVE JUROR:  Yes.

23          THE COURT:  Kindergarten teacher?

24          PROSPECTIVE JUROR:  I did gymnastics for about

25     eight years, and then I worked at an early education center

```
 1    for about -- they were like two years old.

 2              THE COURT:  And are you a former gymnast yourself,

 3    or a current gymnast?

 4              PROSPECTIVE JUROR:  Former.

 5              THE COURT:  Okay.  What was your event?

 6              PROSPECTIVE JUROR:  I preferred floor routine.

 7              THE COURT:  And you've not heard anything about

 8    this case; is that right?

 9              PROSPECTIVE JUROR:  Correct.

10              THE COURT:  And did you -- what was your first

11    thought when I described the case for you last week?

12              PROSPECTIVE JUROR:  No thoughts.  I figured it

13    would be a pretty boring case, honestly.

14              THE COURT:  I'm sorry?

15              PROSPECTIVE JUROR:  I said I figured it would be a

16    pretty boring case, honestly.

17              THE COURT:  Would you have any problem serving on

18    the jury in this case?

19              PROSPECTIVE JUROR:  No.

20              THE COURT:  Okay.  Counsel?

21              MR. KEILTY:  Nothing further, Your Honor.

22              MR. BERKOWITZ:  Good morning.  My name is Sean

23    Berkowitz.  I represent the defendant, Mr. Sussmann, in this

24    case.

25              Other than potentially having to sit through what
```

```
1     will hopefully not be a boring case, if we can do anything

2     about it, any concerns or issues that you have about being

3     able to be fair and impartial to Mr. Sussmann in this case?

4               PROSPECTIVE JUROR:  No.  No issues.

5               MR. BERKOWITZ:  Thank you very much.

6               PROSPECTIVE JUROR:  No problem.

7               THE COURT:  All right.  You can step down.

8               Any challenge?

9               MR. KEILTY:  No, Your Honor.

10              MR. BERKOWITZ:  No, Your Honor.

11              THE COURT:  1131 is qualified.

12              THE COURTROOM DEPUTY:  Your Honor, Juror No. 586.

13              THE COURT:  Good morning, sir.

14              PROSPECTIVE JUROR:  Good morning.

15              THE COURT:  How are you?  Thank you for your

16     service.

17              PROSPECTIVE JUROR:  Thank you.

18              THE COURT:  Feel free to slip your mask off, if

19     you'd like.

20              All right.  We've reviewed your questionnaire and

21     just have a few follow-up questions for you.

22              The first one is tell me what the Bureau of the

23     Fiscal Service is.

24              PROSPECTIVE JUROR:  It's a bureau of the Treasury

25     Department that basically is like the accounting pipes of
```

1    the federal government.  So we move all the money.

2              THE COURT:  Okay.

3              PROSPECTIVE JUROR:  Yes.

4              THE COURT:  So you're an important guy when

5    there's a shutdown; is that right?

6              PROSPECTIVE JUROR:  I still go to work, that's

7    right.

8              THE COURT:  And you had not heard about this case

9    before last week?

10             PROSPECTIVE JUROR:  No.

11             THE COURT:  Any impressions about the possibility

12   of serving on a jury when I described the case for you?

13             PROSPECTIVE JUROR:  No.

14             THE COURT:  None one way or the other?

15             PROSPECTIVE JUROR:  No.

16             THE COURT:  Counsel?

17             MR. KEILTY:  Good morning.  How are you?

18             PROSPECTIVE JUROR:  Good.  Thank you.

19             MR. KEILTY:  Thanks for your service today.  We

20   appreciate it.

21             Just very quickly, in the questionnaire that you

22   filled out prior to today, you mentioned that you had

23   donated to a 2016 presidential campaign; is that right?

24             PROSPECTIVE JUROR:  Primaries, I think.

25             MR. KEILTY:  The primaries, okay.  Do you mind

1    saying in open court who you donated to or...?

2              PROSPECTIVE JUROR:  It would have been on the

3    Democratic side.  Probably a couple of campaigns.

4              MR. KEILTY:  Okay.  That's fine.  That's good.

5              Let me ask you, you might hear, during the course

6    of this trial, the names of both candidates in 2016.

7              PROSPECTIVE JUROR:  Uh-huh.

8              MR. KEILTY:  Neither one of them is on trial here.

9    The defendant's on trial.  But do you have any strong

10   feelings about either candidate that might not allow you to

11   be fair and impartial when the evidence comes in?

12             PROSPECTIVE JUROR:  I don't believe so, no.

13             MR. KEILTY:  Okay.  And you also mentioned that

14   you had some issues with the strength of our nation's

15   privacy laws.

16             PROSPECTIVE JUROR:  Yes.

17             MR. KEILTY:  Can you elaborate a little more on

18   that?

19             PROSPECTIVE JUROR:  I'm not a policy expert, but

20   technology moves very quickly, and I haven't seen a lot of

21   change in the way privacy laws have been updated or

22   addressed.

23             MR. KEILTY:  Okay.

24             PROSPECTIVE JUROR:  So it might be more of a

25   presumption on my part, but, you know...

```
 1                    MR. KEILTY:  Okay.  Thank you.

 2                    MR. BERKOWITZ:  Good morning.  How are you doing?

 3                    PROSPECTIVE JUROR:  Good.  Thank you.

 4                    MR. BERKOWITZ:  Thank you very much for coming in

 5        and for your patience with the process.

 6                    I represent Michael Sussmann.  My name's Sean

 7        Berkowitz, and I just had a couple of follow-up questions.

 8                    PROSPECTIVE JUROR:  Sure.

 9                    MR. BERKOWITZ:  Could you tell us a little bit

10        more about your day-to-day responsibilities at work so I can

11        have a better understanding of what you do?

12                    PROSPECTIVE JUROR:  Sure.  Sure.  So right now I'm

13        in kind of a new position called chief customer officer.

14        It's part of the government's general move to do the

15        services in a way that's more friendly to citizens.  So if

16        you come and file your taxes, it should be painless, or as

17        painless as it can be.

18                    Prior to that, because I've only been in that

19        position since January, I was what's called a senior advisor

20        on the career side of the department in domestic finance.  A

21        lot of people have that title, but basically I worked with

22        an assistant secretary, who is a career, helping him kind of

23        manage the day-to-day.  So it's kind of chief of staffy like

24        in that function, but his responsibility is over the Bureau

25        of the Fiscal Service, which, again, is kind of like the
```

1     pipes of the federal government.  So all of the accounting

2     payments, collections, things like that go through there

3     so...

4            MR. BERKOWITZ:  All right.  So if I have some

5     complaints to register down the line about the taxes, I'll

6     talk to you.

7            PROSPECTIVE JUROR:  I would like to clarify, I do

8     not work for the IRS.

9            MR. BERKOWITZ:  We'll shift gears.

10           And you had some, perhaps not criticism, but some

11    suggestions of reform that could be done in my line of work

12    via the criminal justice system.  Anything that is worth

13    sharing or that might color your ability to be fair in a

14    case like this?

15           PROSPECTIVE JUROR:  I don't think so.  I thought

16    about that and the reason that I wrote it.

17           Again, similar to the data stuff, I'm not a policy

18    expert in any means, but in 250 years as a country laws

19    don't tend to keep up with society.  They tend to come after

20    society has moved in a general direction.  So, you know,

21    whether it be kind of the way drug enforcement has happened

22    or anything like that, like there's room for improvement any

23    time.

24           MR. BERKOWITZ:  And I expect there would not be

25    any testimony about drugs in this case, but anything -- and

1    our job here really is to try and make sure that we get

2    people who are willing to be fair and keep an open mind.  Is

3    there anything that isn't evident from your questionnaire or

4    the questions today that would prevent you from being able

5    to serve as a fair and impartial juror in this case?

6                PROSPECTIVE JUROR:  I don't think so, no.

7                MR. BERKOWITZ:  I really appreciate your time.

8                PROSPECTIVE JUROR:  Okay.  Thank you.

9                THE COURT:  Thank you, sir.  You can step down.

10               PROSPECTIVE JUROR:  I have a couple of names that

11   I recognize.

12               THE COURT:  From the main list?  Who do you know?

13               PROSPECTIVE JUROR:  I'm familiar with the name

14   James Baker.

15               THE COURT:  This is not the former secretary of

16   the treasury -- not the Bush Administration official.

17               PROSPECTIVE JUROR:  Okay.

18               THE COURT:  Different James Baker.

19               PROSPECTIVE JUROR:  Okay.  Heard the name.

20               Michael Horowitz sounds familiar, but for whatever

21   reason I have in my head the novelist.

22               THE COURT:  Not the DOJ Inspector General?

23               PROSPECTIVE JUROR:  Okay.  And Robby Mook; I know

24   he worked with the Clinton Campaign.

25               But I don't know any of them personally.

```
1              THE COURT:  Okay.  Thank you.

2              PROSPECTIVE JUROR:  That's it.  Thank you.

3              THE COURT:  Any challenge, Counsel?

4              MR. KEILTY:  No, Your Honor.

5              MR. BERKOWITZ:  No, Your Honor.

6              THE COURT:  586 is qualified.

7              THE COURTROOM DEPUTY:  Your Honor, Juror No. 399.

8              THE COURT:  Good morning, ma'am.

9              PROSPECTIVE JUROR:  Hello.

10             THE COURT:  Thank you for your service.  You can

11      feel free to slip your mask off, if you'd like.

12             All right.  We've reviewed your questionnaire and

13      just have a few follow-up questions for you, okay?

14             PROSPECTIVE JUROR:  Okay.

15             THE COURT:  You're retired; is that right?

16             PROSPECTIVE JUROR:  Yes.

17             THE COURT:  And you were in grants management

18      before that?

19             PROSPECTIVE JUROR:  Yes.

20             THE COURT:  Tell us a little bit about that.

21             PROSPECTIVE JUROR:  I worked for nonprofit

22      organizations all throughout my career and at the time was

23      fundraising, which meant I wrote grants for foundations,

24      private foundations, and then some individual fundraising,

25      and then also communications work.
```

1          THE COURT:  And you had not heard about this case

2     before last week; is that correct?

3          PROSPECTIVE JUROR:  Correct.

4          THE COURT:  All right.  And when I described the

5     case for you last week, did you have any initial impressions

6     about the possibility of serving on the jury?

7          PROSPECTIVE JUROR:  No, not regarding the case,

8     but I don't know if this is the time to bring it up.  My

9     greatest concern is I'm scheduled to start physical therapy

10    on Thursday for a pinched nerve.

11         THE COURT:  Okay.  Are you in pain because of the

12    pinched nerve?

13         PROSPECTIVE JUROR:  A little bit.

14         THE COURT:  Would it affect your ability to sit in

15    one place for extended periods of time?

16         PROSPECTIVE JUROR:  Yes, uh-huh.

17         THE COURT:  Okay.

18         All right.  Counsel, follow-up?

19         MR. KEILTY:  No, Your Honor.

20         THE COURT:  I'm sorry.  Are you taking any

21    medication for your pinched nerve?

22         PROSPECTIVE JUROR:  Pardon?

23         THE COURT:  Are you taking any medication?

24         PROSPECTIVE JUROR:  Prednisone.

25         THE COURT:  And that doesn't help?

1          PROSPECTIVE JUROR:  It's helping.  I can walk,

2     which I couldn't do a little while ago, but the physical

3     therapy was recommended as the next step.

4          THE COURT:  Okay.  But you think you'd have

5     trouble sitting in one place and concentrating?

6          PROSPECTIVE JUROR:  Unfortunately, yes.

7          THE COURT:  Okay.  Mr. Berkowitz.

8          MR. BERKOWITZ:  Just briefly.

9          Thank you very much.  I apologize for your

10    discomfort.  I represent Michael Sussmann, and I -- there's

11    one answer on your questionnaire that I wanted to just get a

12    little bit better sense of.

13          I think you said you hold lawyers to a high

14    standard, which I understand and respect.  I would want to

15    make sure that in this case, if you were chosen to serve as

16    a juror, my client, Mr. Sussmann, is an attorney and that

17    you wouldn't hold him to a higher standard than any other

18    defendant in a criminal case, and you would follow the

19    judge's instructions on what to do, and not say that he has

20    to meet a higher burden, so to speak.

21          PROSPECTIVE JUROR:  I would not hold any

22    individual higher than another -- to higher standards than

23    another, no.

24          MR. BERKOWITZ:  Thank you so much.

25          PROSPECTIVE JUROR:  Uh-huh.

1          THE COURT:  Okay.  Ma'am, you can step down.

2     Thank you very much.

3          PROSPECTIVE JUROR:  Okay.  Sorry.  I thought I'd

4     be better by now.  Thank you.

5          THE COURT:  All right.  The Court will strike 399

6     for cause based on her pinched nerve and inability to sit

7     without pain as well as her physical therapy appointment

8     next week.

9          Okay.  We are -- 644 has been stricken so we're up

10    to 1085.

11         THE COURTROOM DEPUTY:  Your Honor, Juror No. 1085.

12         THE COURT:  Good morning, ma'am.

13         PROSPECTIVE JUROR:  Good morning.

14         THE COURT:  How are you?

15         PROSPECTIVE JUROR:  Good.  How are you?

16         THE COURT:  Good.  Feel free to take your mask

17    off, if you'd like.

18         All right.  We have reviewed your questionnaire

19    and just have a few follow-up questions for you, okay?

20         PROSPECTIVE JUROR:  Okay.

21         THE COURT:  You're an accountant; is that correct?

22         PROSPECTIVE JUROR:  That is correct.

23         THE COURT:  And how long have you been doing that?

24         PROSPECTIVE JUROR:  2012 or 2011.

25         THE COURT:  Okay.  And did I read that your sister

1    is a defense lawyer?

2              PROSPECTIVE JUROR:  That is correct.

3              THE COURT:  Do you talk to her about her cases or

4    the criminal justice system at all?

5              PROSPECTIVE JUROR:  Not about her cases, no.

6              THE COURT:  Okay.  Do you talk about the criminal

7    justice system?

8              PROSPECTIVE JUROR:  In conversation I think she's

9    mentioned that.  Whenever something happens in the news, she

10   talks about it.

11             THE COURT:  Okay.  You know, obviously there are

12   two sides here.  There's a defense side, and there's a

13   prosecution side.  Would your sister's work as a defense

14   lawyer influence or affect your ability to be fair in a

15   criminal case?

16             PROSPECTIVE JUROR:  No.

17             THE COURT:  And what's the nature of her practice?

18   What kinds of cases does she take?

19             PROSPECTIVE JUROR:  I don't really know.  We don't

20   talk about it that much.

21             THE COURT:  Okay.  And you had not heard about

22   this case before last week?

23             PROSPECTIVE JUROR:  I had not.

24             THE COURT:  And when I described the case to you,

25   did you have any initial impressions, either of the case or

```
 1    about the possibility of serving on the jury?

 2              PROSPECTIVE JUROR:  No.

 3              THE COURT:  Okay.  Counsel?

 4              MR. KEILTY:  Good morning.  How are you?

 5              PROSPECTIVE JUROR:  Good.  How are you?

 6              MR. KEILTY:  Great.  Thank you for your service

 7    today.  Appreciate it.

 8              PROSPECTIVE JUROR:  Thanks.

 9              MR. KEILTY:  You mentioned -- just picking up on

10    the judge's theme about the criminal justice system.

11              PROSPECTIVE JUROR:  Uh-huh.

12              MR. KEILTY:  You mentioned it needs work.  Can you

13    just elaborate a little more on that?

14              PROSPECTIVE JUROR:  I think that the criminal

15    justice system tends to favor those who created it, which

16    are those who are wealthy, and those who are white and male.

17              MR. KEILTY:  Okay.  And you mentioned with respect

18    to law enforcement that they need better training.  So there

19    will be some law enforcement officers who will be witnesses

20    in this case.

21              PROSPECTIVE JUROR:  Okay.

22              MR. KEILTY:  Would you have any problem being fair

23    and impartial in evaluating their testimony and the evidence

24    presented by them?

25              PROSPECTIVE JUROR:  I don't believe so, no.
```

1        MR. KEILTY:  Okay.  Great.  Thank you.

2        THE COURT:  Let me ask you this.  Do your views

3    about the justice system relate to what I will colloquially

4    call sort of street crime or violent crime as opposed to

5    what I will call business crime or white collar crime?

6        PROSPECTIVE JUROR:  Say it again.  Do my views --

7    are they because of the differences between street crime and

8    white collar crime?

9        THE COURT:  Let me rephrase it.

10       Does the critique of the system that you just

11   provided for us apply to all types of crime, or were you

12   specifically talking about certain aspects of the criminal

13   justice system?

14       PROSPECTIVE JUROR:  I think that those two types

15   of crime that you mentioned are treated differently, and I

16   do think, yes, statistically, if you look at those who are,

17   you know, in cases for street crime or for white collar

18   crime, sure.  I mean, I'm sure that that plays into it.

19       THE COURT:  Okay.  Well, Mr. Sussmann is not --

20   has not been accused of any type of violence or street crime

21   or drugs or guns or anything like that.  Given your general

22   views of the criminal justice system, do you think you'd be

23   able to give him a fair trial?

24       PROSPECTIVE JUROR:  I do.

25       THE COURT:  Mr. Berkowitz?

1          MR. BERKOWITZ:  Good morning.  I think it's

2     still morning.  My name is Sean Berkowitz, and I represent

3     Mr. Sussmann, who is the defendant, in this case.

4          I noted that you indicated that you were self-

5     employed, and serving for two weeks might make you less than

6     secure.  And I don't want to delve into all of the issues,

7     but would you be resentful if you were chosen for the jury

8     in a way that could impact your ability to be fair?

9          PROSPECTIVE JUROR:  Resentful, no.

10          MR. BERKOWITZ:  Would you be willing to -- well,

11     first of all, do you think you would be able to serve -- I

12     understand you'd be less than secure, but you would be able

13     to do it even though it would be an inconvenience?

14          PROSPECTIVE JUROR:  Yes, I would.

15          MR. BERKOWITZ:  Okay.  And jury service is, I

16     think, an important inconvenience that happens, I think, to

17     a lot of people, and so I don't belittle it; but what I want

18     to do is make sure that whatever aggravation associated with

19     coming to court every day doesn't reflect poorly on my

20     client, who has his, certainly, right to his day in court,

21     correct?

22          PROSPECTIVE JUROR:  Understood, yes.

23          MR. BERKOWITZ:  And with respect to the questions

24     about the criminal justice system -- and I know Judge Cooper

25     asked you some follow-up questions related to that.  My

1    client is a white male.  And, you know, your general views,

2    which I'm not going to disagree with, are those things that

3    you could put to the side and evaluate the case based on the

4    evidence that's presented in the courtroom and not bring any

5    preconceived notions or hold it either against the

6    prosecution or the defense and decide this case based solely

7    on what you hear in the court?

8                PROSPECTIVE JUROR:  I believe I can do that, yes.

9                MR. BERKOWITZ:  And if you're chosen, we would ask

10   you to do so.  And so I appreciate your candor both in

11   sharing your views but also in being willing to judge the

12   case on its own merits.  Thank you.

13               PROSPECTIVE JUROR:  Thank you.

14               THE COURT:  Okay.  Thank you, ma'am.  You can step

15   down.

16               Oh, I'm sorry, do you recognize any of those

17   names?

18               PROSPECTIVE JUROR:  So the trust estate and tax

19   firm that I do contract work for, we do have a client named

20   James Baker.  If he is married to a Darsie Cahall Baker,

21   then that's my client.

22               MR. KEILTY:  Your Honor, we believe there's a

23   relation there.

24               THE COURT:  Okay.  So just to be clear, your firm

25   does tax work for Mr. Baker and his wife?

```
 1              PROSPECTIVE JUROR:  So I do contract work for the

 2     firm that does tax work for Jim and his wife.  I don't

 3     believe they do their estate stuff.

 4              THE COURT:  Okay.  And have you ever worked on

 5     matters for Mr. Baker and his wife in your capacity as a

 6     contractor?

 7              PROSPECTIVE JUROR:  Yes, I have.  I prepared his

 8     returns for the past two or three years, and then this most

 9     recent tax season I reviewed their tax returns.

10              THE COURT:  Okay.  Have you ever met him?

11              PROSPECTIVE JUROR:  I'm sorry?

12              THE COURT:  Have you ever met him?

13              PROSPECTIVE JUROR:  I don't know that he's come

14     into the -- if I have, it was just really quick.

15              THE COURT:  Okay.  Have you spoken to him on the

16     phone about his returns?

17              PROSPECTIVE JUROR:  Yes.

18              THE COURT:  Exchanged emails about his return?

19              PROSPECTIVE JUROR:  Yes.

20              THE COURT:  Okay.

21              PROSPECTIVE JUROR:  With both Jim and his wife.

22              THE COURT:  Through those interactions, have you

23     formed any impressions about them personally?

24              PROSPECTIVE JUROR:  Personally, no.

25              THE COURT:  Okay.
```

 1          Counsel, any follow-up?

 2          MR. KEILTY:  Despite this relationship with

 3   Mr. Baker, if Mr. Baker may testify in this case, would you

 4   be able to be fair and impartial?

 5          PROSPECTIVE JUROR:  Yes.

 6          MR. KEILTY:  Okay.

 7          MR. BERKOWITZ:  Hello, again.  Hi.

 8          So it's possible that in this case the credibility

 9   of Mr. Baker could be at issue; in other words, whether his

10   testimony from the stand is accurate or not accurate.  Do

11   you think, despite the fact that there's the professional

12   relationship, that you would be able to make an evaluation

13   of whether he's telling the truth or not?  You could find,

14   if the evidence showed that he was not telling the truth or

15   if the evidence showed that he was?

16          PROSPECTIVE JUROR:  I believe so.

17          MR. BERKOWITZ:  Would it be difficult to do that

18   given the business relationship that you have, to put aside

19   what you know from the interactions with him professionally

20   and to pass on his credibility?

21          PROSPECTIVE JUROR:  It would not be difficult.

22          MR. BERKOWITZ:  All right.  And the judge asked

23   you whether you have any, I think, personal impressions of

24   him -- and I may be mischaracterizing it -- and you said no;

25   personal, no.  Do you have any impressions of him

1    whatsoever?

2              PROSPECTIVE JUROR:  Professionally I know that --

3    I know how frequently he changes jobs.  That was the first

4    thought that I had.

5              MR. BERKOWITZ:  Okay, Judge.  Nothing --

6              THE COURT:  Have you drawn any conclusions from

7    the fact that he may have frequently changed jobs other than

8    just that he works different places?

9              PROSPECTIVE JUROR:  It has helped him.  He's made

10   some good changes.

11             THE COURT:  Okay.  Great.  Thank you, ma'am.

12             All right.  You just never know, do you?  Any

13   challenges?

14             MR. KEILTY:  No, Your Honor.

15             MR. BERKOWITZ:  Reluctantly, Judge, I -- until

16   that last kind of interaction that she knows him.

17             Mr. Baker's credibility is going to be among the

18   key issues in the trial.  It's not as if she works at an

19   office where somebody else has worked on this thing.  She

20   does his tax returns.  She interacts with him professionally

21   and his wife and knows him, and I respectfully think it

22   might be difficult to not bring that knowledge of a

23   professional relationship to evaluate his credibility in

24   this case.

25             And so we would -- we believe there is -- there

 1  are grounds for a cause strike to this juror.

 2          THE COURT:  All right.  She was pretty adamant and

 3  steadfast that she could disregard that and evaluate his

 4  testimony fairly, so I'm going to overrule your objection.

 5  But you should feel free, obviously, to use a strike on it.

 6          THE COURTROOM DEPUTY:  Your Honor, Juror No. 593.

 7          THE COURT:  Good morning, ma'am.

 8          PROSPECTIVE JUROR:  Good morning.

 9          THE COURT:  Thank you for your patience.  Feel

10  free to slip your mask off, if you're comfortable doing so.

11          PROSPECTIVE JUROR:  Okay.

12          THE COURT:  All right.  We've reviewed your

13  questionnaire and just have a few follow-up questions.

14          It says you're a program coordinator for Virginia

15  Tech; is that right?

16          PROSPECTIVE JUROR:  That's correct.

17          THE COURT:  Tell us what that -- tell us what you

18  do.

19          PROSPECTIVE JUROR:  So I work in the center for

20  leadership and global sustainability, and mostly work with

21  the masters of national resources, with their students.

22          THE COURT:  Okay.  And you don't have to be?

23  Physically present.

24          PROSPECTIVE JUROR:  No.  I'm working remotely

25  right now.

1          THE COURT:  Okay.  All right.  And you did not

2     know anything about the case before last week?

3          PROSPECTIVE JUROR:  I did not.

4          THE COURT:  Okay.  Any first impressions after I

5     described what the case is about and the fact that you

6     potentially could be a juror?

7          PROSPECTIVE JUROR:  Not necessarily, no.

8          THE COURT:  Okay.  You had somewhat of a negative

9     opinion of lawyers.  Tell us why you said what you said, if

10    you remember.

11         PROSPECTIVE JUROR:  I'm not sure if I remember

12    exactly what I said, but I think --

13         THE COURT:  They just try to win their cases and

14    don't necessarily care about what's fair or just.

15         PROSPECTIVE JUROR:  I'm not sure exactly where I

16    kind of came up with that, but I have been on juries before

17    so I think my impression was that both sides, you know,

18    can't be correct so there's got to be something there.

19         THE COURT:  Okay.  And if you were selected for

20    the jury in this case, would you be able to assess the

21    evidence presented here in court fairly?

22         PROSPECTIVE JUROR:  Yes.

23         THE COURT:  Without being colored by what you may

24    think of defense lawyers or prosecutors generally?

25         PROSPECTIVE JUROR:  I think so.

1          THE COURT:  Okay.  And you mentioned prior jury

2     experiences.  Anything about those experiences make you

3     hesitate to serve on a jury in this case?

4          PROSPECTIVE JUROR:  No.

5          THE COURT:  Okay.  Counsel?

6          MR. KEILTY:  Good morning.  How are you?

7          PROSPECTIVE JUROR:  Good morning.

8          MR. KEILTY:  Thanks for your service today.  I

9     appreciate it.  Just a couple of questions.

10          On your questionnaire that you filled out, you

11     mentioned that you went to the same college as Hillary

12     Clinton, Wellesley, and that you previously met her before.

13     Can you elaborate?  Have you just met her in passing at the

14     college, or do you have a relationship with Mrs. Clinton?

15          PROSPECTIVE JUROR:  It was just in passing.

16          MR. KEILTY:  Okay.  During the course of this

17     trial, Mrs. Clinton's name and her campaign in 2016 will be

18     at issue.  She's not on trial herself obviously, but is

19     there anything about your feelings towards Mrs. Clinton or

20     anyone else that would not allow you to be fair and

21     impartial in this trial?

22          PROSPECTIVE JUROR:  I would be -- I think so.

23     I --

24          MR. KEILTY:  Go ahead.

25          PROSPECTIVE JUROR:  Sorry.  Go ahead.

```
 1              MR. KEILTY:  No.  I'm sorry.  I didn't mean to

 2       interrupt you.  Could you explain that.

 3              PROSPECTIVE JUROR:  I mean, the fact that I've

 4       gone to the same school as her and same events and I've met

 5       her before, I think I would be kind of more towards her side

 6       on some things.

 7              MR. KEILTY:  Okay.  You also mentioned in the

 8       questionnaire that you have some concerns about law

 9       enforcement.

10              In this trial there are going to be FBI witnesses

11       who are going to testify and other law enforcement officers.

12       Would you have any problem evaluating their testimony and

13       the evidence they present fairly?

14              PROSPECTIVE JUROR:  I don't think so.

15              MR. KEILTY:  Okay.  And just going back to your --

16       you said that you would not be able to evaluate evidence

17       about -- that might involve the Clinton Campaign in an

18       impartial manner.

19              PROSPECTIVE JUROR:  I don't think I would.

20              MR. KEILTY:  Okay.  Thank you, Your Honor.

21              MR. BERKOWITZ:  Good morning.

22              PROSPECTIVE JUROR:  Good morning.

23              MR. BERKOWITZ:  How are you doing?

24              My name is Sean Berkowitz.  I represent the

25       defendant in this case, Mr. Michael Sussmann.  I just had a
```

1    couple of follow-up questions for you.

2            The case, as Judge Cooper indicated last week in

3    the big ceremonial courtroom, relates to allegations that

4    Mr. Sussmann made a false statement to the FBI.  Neither --

5    Hillary Clinton is not on trial.  She's not going to be a

6    witness in this case.  Do you think that you could be fair

7    and impartial in evaluating the evidence that's presented in

8    this case relative to what Mr. Sussmann said to the FBI and

9    follow the judge's instructions and judge him solely based

10   on what you hear in this case?

11           PROSPECTIVE JUROR:  Yes.

12           MR. BERKOWITZ:  And the fact that you may or may

13   not like a candidate for president -- everybody has a choice

14   for president presumably -- it wouldn't affect your ability

15   to evaluate Mr. Sussmann in a fair and impartial way, would

16   it?

17           PROSPECTIVE JUROR:  No.

18           MR. BERKOWITZ:  Now, you said some things about

19   lawyers, which I certainly understand, and I just want to

20   make sure that, like Mr. Sussmann, as a defendant, you would

21   view him based on what happens.  You would view the lawyers

22   in this case based on what we did in this case and not based

23   on any preconceived notions you might have of lawyers from

24   other cases.  Right?

25           PROSPECTIVE JUROR:  Correct.

1          MR. BERKOWITZ:  We'd get a fair shot with you as

2     well, right?

3          PROSPECTIVE JUROR:  Sure.

4          MR. BERKOWITZ:  Okay.  Thank you.

5          THE COURT:  Okay.  You can step down.  Thank you

6     very much.

7          Did you know any people from the list that we

8     gave?

9          PROSPECTIVE JUROR:  I didn't, no.

10          THE COURT:  Okay.

11          All right.  Any objections?

12          MR. KEILTY:  Your Honor, the government would move

13     to strike this juror for cause.  The heart of this case is

14     whether Mr. Sussmann was representing the Clinton Campaign

15     when he walked into the FBI.  She just said she couldn't be

16     impartial with evidence that relates to the Clinton

17     Campaign.  Then she contradicted herself and said she could,

18     when Mr. Berkowitz asked.

19          THE COURT:  Let me just pull up the transcript.

20          (Pause)

21          THE COURT:  All right.  Let's call her back.

22          Ms. Jenkins, could you call back 593.

23          THE COURTROOM DEPUTY:  Yes, Your Honor.

24          Your Honor, recalling Juror No. 593.

25          THE COURT:  Ma'am, I just have one follow-up

1      question for you.

2              PROSPECTIVE JUROR:  Sure.

3              THE COURT:  When you were questioned by

4      Mr. Keilty, you said that because you had gone to the same

5      school with Hillary Clinton that you might favor her on some

6      things, and then you responded to Mr. Berkowitz that you

7      thought that you could be fair to Mrs. Clinton and the

8      campaign on issues that might come up at trial.  I just want

9      to make it clear that we explore a little bit about that.

10             As Mr. Berkowitz said, the Clinton Campaign is not

11     on trial.  Hillary Clinton is not on trial.  Donald Trump is

12     not on trial.  But this charge involves an allegation that

13     Mr. Sussmann was not forthcoming or misrepresented the fact

14     that he did not represent the Clinton Campaign when, in

15     fact, according to the government, he did.

16             And so given that, do you think that -- and I'd

17     like an honest answer -- that you would be able to evaluate

18     the evidence on that question fairly and impartially despite

19     the fact that you and she went to the same school?

20             PROSPECTIVE JUROR:  I'm not sure if I could.

21             THE COURT:  Okay.  Thank you.

22             PROSPECTIVE JUROR:  Okay.

23             THE COURT:  All right.  The Court will sustain the

24     government's objection to 593.

25             All right.  And Lauren, with respect to 1085, on

1    further reflection, the Court will sustain the defense's

2    challenge to her.  While I don't think she has formed any

3    opinion of Mr. Baker personally or professionally that

4    would influence her deliberations, I think a concern that

5    Mr. Berkowitz did not mention is the financial interest;

6    that, you know, she's a contractor.

7         She expressed some hesitation about, you know, not

8    being able to work for a couple of weeks during the trial,

9    and if that's one of the accounts that she works for, I

10   think that the possibility that she might be influenced by a

11   client and the loss of that business is grounds for cause,

12   so we will strike 1085.

13        THE COURTROOM DEPUTY:  Your Honor, calling Juror

14   No. 290.

15        THE COURT:  Good morning, sir.  How are you?

16        PROSPECTIVE JUROR:  Good.  Thank you.

17        THE COURT:  Thank you for your patience and for

18   your service.  You can slip your mask off, if you'd like.

19        You're a medical illustrator; is that right?

20        PROSPECTIVE JUROR:  Yes, Your Honor.

21        THE COURT:  And how long have you been doing that?

22        PROSPECTIVE JUROR:  For 16 years.

23        THE COURT:  And it says that your partner works

24   for a big law firm; is that right?

25        PROSPECTIVE JUROR:  Yes, Your Honor.

```
1              THE COURT:  Are they a lawyer?

2              PROSPECTIVE JUROR:  No.

3              THE COURT:  Okay.  They work in HR; is that right?

4              PROSPECTIVE JUROR:  HR.

5              THE COURT:  Okay.  There may be some testimony in

6    this case about law firm billing records.  Does your partner

7    deal with billing records at all?  Is that something you all

8    might have talked about at some point?

9              PROSPECTIVE JUROR:  I don't know the answer to

10   that.

11             THE COURT:  Okay.  And you didn't know anything

12   about the case before last week?

13             PROSPECTIVE JUROR:  No, Your Honor.

14             THE COURT:  When I described the case for you in

15   the big courtroom, what was the first thing that came to

16   mind?

17             PROSPECTIVE JUROR:  I'm not familiar with anybody

18   in the description except for James Baker.  I've heard that

19   name before.  I've read it.

20             THE COURT:  Okay.  Do you think that's the James

21   Baker who was in the Reagan and Bush Administrations?

22             PROSPECTIVE JUROR:  I'm not sure of the answer.

23             THE COURT:  Okay.  Counsel?

24             MR. KEILTY:  Nothing, Your Honor.  Thank you.

25             MR. BERKOWITZ:  Just briefly.
```

```
 1          Hello.  I'm Sean Berkowitz, and I'm a lawyer
 2   representing Mr. Sussmann.  I just had a question.  I
 3   reviewed your questionnaire.  You obviously heard the
 4   questions and didn't see anything that raised any concerns,
 5   but I just want to make sure.
 6          Is there anything that you're aware of that would
 7   prevent you from being a fair and impartial juror in this
 8   case to both sides in evaluating the evidence in the case
 9   based on what you hear from the witness stand and not based
10   on anything else?
11          PROSPECTIVE JUROR:  Not that I'm aware of.
12          MR. BERKOWITZ:  Okay.  And you would be willing to
13   do that, if the judge instructed you, and to follow his
14   instructions?
15          PROSPECTIVE JUROR:  Yes.
16          MR. BERKOWITZ:  Okay.  Thank you so much.
17          PROSPECTIVE JUROR:  Thank you.
18          THE COURT:  Thank you.  You can step down.
19          PROSPECTIVE JUROR:  Okay.  Thank you.
20          THE COURT:  All right.  Any challenge?
21          MR. KEILTY:  No, Your Honor.
22          MR. BERKOWITZ:  No, Your Honor.
23          THE COURT:  290 is qualified.
24          Counsel, we're going to try to get through 1016
25   and then take lunch.
```

```
 1                  THE COURTROOM DEPUTY:  Your Honor, Juror No. 329.

 2                  THE COURT:  Step right up, sir.

 3                  PROSPECTIVE JUROR:  Good morning, Your Honor.

 4                  THE COURT:  Good morning.  I think it's probably

 5     afternoon now, but good afternoon.

 6                  PROSPECTIVE JUROR:  Good afternoon, Your Honor.

 7                  THE COURT:  Feel free to slip that mask off, if

 8     you're comfortable doing so.

 9                  PROSPECTIVE JUROR:  Thank you.

10                  THE COURT:  You can have a seat.

11                  All right.  So we've reviewed your questionnaire

12     and just have a few follow-up questions.

13                  PROSPECTIVE JUROR:  Sure.

14                  THE COURT:  You're a security guard?

15                  PROSPECTIVE JUROR:  In Northwest Washington, off

16     of Connecticut Avenue.

17                  THE COURT:  At a store or a restaurant?

18                  PROSPECTIVE JUROR:  Office building.

19                  THE COURT:  It says your wife is a community

20     supervisor agent for the federal government.  What part of

21     the government does she work for and what does she do?

22                  PROSPECTIVE JUROR:  She's a parole officer for the

23     Department of Justice.

24                  THE COURT:  Okay.  So for the D.C. government?

25                  PROSPECTIVE JUROR:  Yes, Your Honor.
```

```
 1              THE COURT:  Got it.  That's a hard job.

 2              PROSPECTIVE JUROR:  It's for the federal -- it's a

 3     federal government job.

 4              THE COURT:  So she's a probation officer?

 5              PROSPECTIVE JUROR:  Yes, sir.

 6              THE COURT:  Is she a probation officer in this

 7     court?

 8              PROSPECTIVE JUROR:  I'm not sure.  She works for

 9     CSOSA, so would that be --

10              THE COURT:  They service this court, but she's not

11     a federal probation officer.

12              PROSPECTIVE JUROR:  Okay.

13              THE COURT:  But I understand the confusion.

14              PROSPECTIVE JUROR:  Yes.  Don't tell her I don't

15     know what she do.

16              THE COURT:  I won't tell her.

17              And you'd never heard of this case before last

18     week?

19              PROSPECTIVE JUROR:  No, I haven't, sir.

20              THE COURT:  And when I described the case, did you

21     have any -- what was the first thing that came to mind?

22              PROSPECTIVE JUROR:  First thing that came to mind

23     was I might be taken off from work to be a juror.  That's

24     the first thing that came to my mind.

25              THE COURT:  Do you have any problem with that?
```

```
1              PROSPECTIVE JUROR:  No, I don't.

2              THE COURT:  Okay.  Counsel?

3              MR. KEILTY:  Nothing, Your Honor.  Thank you.

4              MR. BERKOWITZ:  Good afternoon.  Thank you for

5     coming down and being patient with us today.

6              PROSPECTIVE JUROR:  Sure.

7              MR. BERKOWITZ:  You work as a security guard.

8     Your wife works in some capacity with the Department of

9     Justice.  This case involves an allegation that my client,

10    Michael Sussmann, lied to the FBI, which is a law

11    enforcement branch.  Do you think that you could be fair and

12    evaluate the evidence about this case without any regard to

13    favoring law enforcement or disfavoring them?

14             PROSPECTIVE JUROR:  Yes, I think I'll be fair.

15    I'm pretty sure.  I'll be fair to answer the question, sure.

16             MR. BERKOWITZ:  And do you think that, given your

17    background in quasi law enforcement and security guards,

18    that you would place the testimony of FBI agents and give

19    them more credibility than other witnesses, or would you

20    give them the same level of evaluation?

21             PROSPECTIVE JUROR:  I'll give them the same level

22    of evaluation because I'm a special police officer.  I don't

23    favor one or the other.  I just go with basically the facts

24    of what's happening.

25             MR. BERKOWITZ:  Okay.  So you'd be able to
```

1     evaluate their testimony.  And if your sense was they

2     weren't being accurate, you would be okay with that?  If

3     your sense was they were being accurate, you'd be okay with

4     that as well?

5           PROSPECTIVE JUROR:  If they weren't being accurate

6     or if they was being accurate, that wouldn't be fair -- if

7     it's accurate, yes.  I'll be fair with the questions.

8           MR. BERKOWITZ:  And let me just ask it in a

9     clearer way than I did.

10          If you believed, based on the testimony of the

11    case, that a particular FBI agent was not being truthful,

12    you would be able to -- you would be able to make that

13    judgment, correct?

14          PROSPECTIVE JUROR:  Of course.  I hope so, yes.

15          MR. BERKOWITZ:  Okay.  I really appreciate your

16    candor and your willingness to serve on the jury, sir.

17          PROSPECTIVE JUROR:  Oh, thank you.

18          THE COURT:  Thank you, sir.  You can step down.

19          PROSPECTIVE JUROR:  Thank you, Judge.

20          THE COURT:  All right.

21          Okay.  Any challenge?

22          MR. KEILTY:  No, Your Honor.

23          MR. BERKOWITZ:  No, Your Honor.

24          THE COURT:  329 is qualified.

25          THE COURTROOM DEPUTY:  Your Honor, we're going to

1      recall Juror No. 329.

2                    THE COURT:  Okay.

3                    PROSPECTIVE JUROR:  Sorry about that, Your Honor.

4                    THE COURT:  Step right up.  Welcome back.

5                    PROSPECTIVE JUROR:  I just forgot to mention on

6      the 24th of May I have a doctor's appointment.

7                    THE COURT:  Okay.  Is that an appointment that you

8      could reschedule, if you're selected for the jury in this

9      case?  And you will know whether you were on the jury today.

10                   PROSPECTIVE JUROR:  It is rescheduled for that

11     day.  I could reschedule though, but it's a rescheduled date

12     that I rescheduled.

13                   THE COURT:  You could push it back, if you were

14     selected?

15                   PROSPECTIVE JUROR:  Yes.

16                   THE COURT:  Okay.  Thank you.

17                   THE COURTROOM DEPUTY:  Your Honor, Juror No. 731.

18                   PROSPECTIVE JUROR:  Good morning.

19                   THE COURT:  Good afternoon, ma'am.

20                   PROSPECTIVE JUROR:  Good afternoon.

21                   THE COURT:  Thank you for your patience, and feel

22     free to remove your mask, if you're comfortable doing so.

23                   PROSPECTIVE JUROR:  Thank you.

24                   THE COURT:  All right.  So we've reviewed your

25     questionnaire and have just a few follow-up questions for

1     you.

2              Both you and your husband are partners at big law

3     firms?

4              PROSPECTIVE JUROR:  Yes, sir.  I'm not a partner.

5     I'm a risk and compliance attorney.  It's an administrative

6     role.

7              THE COURT:  Okay.  And you work with the general

8     counsel on compliance issues?

9              PROSPECTIVE JUROR:  Yes.

10             THE COURT:  All right.  So there's going to be

11    testimony at this trial about things like law firm billing

12    records and attorney-client relationships and potentially

13    the issuance of public statements and press releases by a

14    big law firm.  Would your experience at Blank Rome, do you

15    think, unduly -- would your experience make it difficult for

16    you to be fair and impartial to assess testimony like that?

17             PROSPECTIVE JUROR:  I don't think so, no, sir.

18             THE COURT:  Okay.  And as I told a number of other

19    potential jurors, if we were to exclude all lawyers from

20    D.C. juries we would never have a jury, but one of the

21    dangers of selecting jurors is that -- who are lawyers is

22    that they will bring their legal expertise unduly to bear in

23    the deliberations in the case.  And given your

24    responsibilities for dealing with sort of big law compliance

25    issues, do you think that would be a problem, if you were

1      selected?

2                  PROSPECTIVE JUROR:  No, sir, I don't think so.  I

3      mean, as you say, I am familiar with those issues, but I

4      would hope I could.

5                  THE COURT:  Okay.  And have you run across Perkins

6      Coie in your practice?

7                  PROSPECTIVE JUROR:  No, sir.  I'm aware of the

8      firm.  Obviously I've heard of them, but I don't think I've

9      had any direct dealings with them.

10                 THE COURT:  And your husband's a lawyer as well?

11                 PROSPECTIVE JUROR:  Yes.  He's a partner at King &

12     Spalding.

13                 THE COURT:  Do you know if he's been adverse to

14     Perkins or worked with Perkins or had any connections with

15     Perkins?

16                 PROSPECTIVE JUROR:  I don't know.  I don't believe

17     I've ever heard him mention them, but, I mean, again, I'm

18     sure he's aware of the firm, but...

19                 THE COURT:  Okay.  And Mr. Sussmann is on trial

20     for a specific offense, which is making a false statement to

21     the FBI.  He is not on trial for any legal ethics violations

22     or violations of the, you know, code of professional

23     responsibility, but there may be -- I don't know, but there

24     may be testimony regarding what some might view as conduct

25     that would violate some professional code.  Could you put

1    that aside and just focus on the criminal charge that brings

2    us here?

3            PROSPECTIVE JUROR:  Yes, sir, I believe so.

4            THE COURT:  And, I'm sorry, had you heard of the

5    case before?

6            PROSPECTIVE JUROR:  So I believe I have.  I can't

7    remember any details, but Mr. Sussmann's name sounds

8    familiar.  And I think also, Mr. -- Special Counsel Durham's

9    name.  I feel like I've read about the case.  I don't

10   remember the details.  I suspect I will remember as -- you

11   know, if I were to hear more, but I don't remember anything.

12           THE COURT:  Okay.  But nothing specific?

13           PROSPECTIVE JUROR:  No.

14           THE COURT:  All right.  Counsel?

15           MR. KEILTY:  Good afternoon.  How are you?

16           PROSPECTIVE JUROR:  Good afternoon.  Well.

17           MR. KEILTY:  Thanks for your service today.  I

18   appreciate it.

19           PROSPECTIVE JUROR:  Thank you.

20           MR. KEILTY:  You mentioned in the questionnaire

21   that, in relation to your work at Blank Rome, you do some

22   cyber security research?

23           PROSPECTIVE JUROR:  Yes.  I mean, again, I'm not a

24   technology lawyer, but I've done research on sort of, you

25   know, requirements and I guess it was the ISO standards and

 1    some of those types of cyber security requirements for law

 2    firms from the compliance side.

 3              MR. KEILTY:  Okay.  So in this case you might hear

 4    some testimony and there will be some evidence about various

 5    cyber security issues, DNS data.  Is all that stuff -- would

 6    you be able to separate your knowledge from what you've

 7    learned outside and just accept the evidence and listen to

 8    the testimony -- I mean, accept the evidence -- evaluate the

 9    evidence and listen to the testimony and be fair and

10    impartial?

11              PROSPECTIVE JUROR:  Yes, I believe so.

12              MR. KEILTY:  Okay.  You also mentioned that in the

13    2016 election you may have donated some money to one of the

14    candidates; is that correct?

15              PROSPECTIVE JUROR:  So I think I actually think --

16    I started to write that, and I believe it was actually the

17    2020 election.  I can't remember if I made a donation in

18    2016.

19              I did support one candidate over the other, but I

20    don't recall if I made an actual donation.  I don't think I

21    did that year, but I'm sure I did in 2020.

22              MR. KEILTY:  I think you said you likely donated

23    to Hillary Clinton but that --

24              PROSPECTIVE JUROR:  Had I donated to a candidate,

25    that's how I would have done it.

1          MR. KEILTY:  And did you have any incredibly

2     strong feelings about either candidate back in 2016 that --

3     and I say this because neither of the candidates are on

4     trial here.  Mr. Sussmann's on trial.  But their names will

5     be raised.

6          Is there anything about either one of those

7     campaigns that wouldn't allow you to evaluate the evidence

8     fairly and impartially?

9          PROSPECTIVE JUROR:  I mean, I certainly had a

10    strong preference for one campaign over the other and one

11    candidate over the other.  I hope and believe I could put

12    that aside, to listen to the evidence, but --

13         MR. KEILTY:  Okay.

14         PROSPECTIVE JUROR:  -- I certainly had a strong

15    preference for one candidate over the other.

16         MR. KEILTY:  Understood.  Hope and believe is

17    different than being 100 percent certain you would be able

18    to evaluate the evidence fairly.

19         PROSPECTIVE JUROR:  Yes, I believe I could -- yes,

20    I believe I could.

21         MR. KEILTY:  Okay.

22         PROSPECTIVE JUROR:  And I certainly would make --

23    I have every intention of doing so.  I believe I could, yes.

24         MR. KEILTY:  Okay.  Great.  Thank you.

25         PROSPECTIVE JUROR:  Thank you.

```
1              MR. BERKOWITZ:  Good afternoon.  How are you
2      doing?
3              PROSPECTIVE JUROR:  Good.  Thank you.  Good
4      afternoon.
5              MR. BERKOWITZ:  I'm told we're going to get to
6      break for lunch soon so that's a positive.  I'll try not to
7      prolong that too much.
8              My name is Sean Berkowitz.  I represent Michael
9      Sussmann, along with my colleagues.
10             I note that you had said you had a friend that may
11     have worked at Latham & Watkins at one point.
12             PROSPECTIVE JUROR:  Correct.
13             MR. BERKOWITZ:  Is there anything about your
14     relationship with your friend that would cause you to favor
15     or disfavor Latham & Watkins in this case?
16             PROSPECTIVE JUROR:  No.  I mean, I have a
17     generally good opinion of the firm, but I have also worked
18     in enough law firms to understand that one listens to the
19     evidence about the matter, not depending on one's feelings
20     about the firm.
21             I should also mention I did not mention on my -- I
22     realized afterwards.  I believe Latham may have represented
23     one or both of Blank Rome or Dickstein.  I have a vague
24     memory of dealing with attorneys from Latham in my work.
25             I can't remember the details, but, again, I don't
```

1    believe that would color my impression any way.  I did want

2    to mention that.

3              THE COURT:  And no one from the defense team?

4              PROSPECTIVE JUROR:  No, none of those names

5    sounded familiar.  It would have been in the professional

6    responsibility area.

7              MR. BERKOWITZ:  So in that regard, if you could

8    help me understand -- it's very thorough.  It almost looks

9    like it was written by a lawyer, your questionnaire.

10   Explain what it is you do in your role at Blank Rome so I

11   make sure I understand.

12             PROSPECTIVE JUROR:  I primarily do research --

13             THE COURT REPORTER:  I'm going to ask you to slow

14   down.

15             PROSPECTIVE JUROR:  Oh, of course.  Sorry.

16             I primarily do research for the general counsel,

17   and that's similar to the work I did at Dickstein.  I work

18   part time, primarily from home, because our general counsel

19   is located in Philadelphia so -- and I do research on

20   professional responsibility issues, if there are, you know,

21   questions about a particular -- the type of questions that

22   come up in a large law firm.  Sort of internal general

23   counsel type work, and then primarily I do memos and emails

24   and that sort of thing.

25             I very rarely deal with -- I mean, I might deal

1    with other attorneys within the firm.  I very rarely deal

2    with outside parties.  So, you know, I don't try cases or

3    anything like that.

4         MR. BERKOWITZ:  I think I understand.  We have a

5    general counsel's office.  So that helps me understand.

6         Let me ask you this then.  With respect to the

7    work that you do, you obviously will have experience and

8    knowledge about ethics rules and practices at law firms and

9    so forth.  There may be testimony about that.  I don't know

10   that it will be relevant or not, but there may be testimony.

11   Could you, in the jury room, put aside your own personal

12   knowledge about those issues and listen to what the evidence

13   is as opposed to say, well, I know from my work here that

14   that's not right and it shouldn't be done?

15        Could you separate those two?  Sometimes it can be

16   difficult; sometimes it can be done.  What do you think

17   about that?

18        PROSPECTIVE JUROR:  Yes, I think I could.  I mean,

19   obviously I would bring my information with me.  I would

20   certainly try to put that aside.  I would make every effort

21   to do that.  I don't think it would be appropriate to

22   consider that information, so obviously I would try to put

23   that aside.

24        I mean, it's difficult, I think, to completely

25   forget what you spend time doing, but certainly I would make

1    that effort.

2              MR. BERKOWITZ:  And you would, if the judge

3    instructed you, follow his rules and evaluate this case on

4    its own merits as opposed to any other thoughts that you

5    have?

6              PROSPECTIVE JUROR:  Yes, certainly.

7              MR. BERKOWITZ:  Okay.  I appreciate your time.

8              PROSPECTIVE JUROR:  Thank you.  May I mention two

9    scheduling questions?

10             The first is I don't know if we have a sense what

11   time my group will be leaving today.  I just needed to make

12   arrangements for someone else to pick up my daughter.  Do we

13   have a sense of what time that might be today?

14             THE COURT:  Certainly before 5:00.  Probably

15   before that as well.

16             PROSPECTIVE JUROR:  Thank you.

17             THE COURT:  It's somewhat of a moving target, as

18   you can imagine.

19             PROSPECTIVE JUROR:  Of course.  And I don't -- I

20   hope you don't mind my asking.  I just wanted to make

21   arrangements.

22             And my second question is, do you know -- tomorrow

23   morning I will, unfortunately, need to drop her off.  If we

24   come in, would it be possible for me to come in at 9:00,

25   instead of 8:00, tomorrow, if that's necessary?  My husband

1   is traveling so I just -- he can't give her a ride tomorrow.

2           THE COURT:  We'll get started at 9:00, so if you

3   were selected for the jury, you would come right up, and

4   we'd get started as close to 9:00 as possible.

5           PROSPECTIVE JUROR:  Thank you.  I just wanted to

6   mention those two things.

7           THE COURT:  No, no problem whatsoever.

8           PROSPECTIVE JUROR:  Thank you.

9           MR. BERKOWITZ:  Judge, there was one -- I'm sorry,

10  you did note on your questionnaire that you had travel from

11  the 27th to the 30th.  Now, the 27th is a Friday, and I

12  expect that the 28th through the 30th are Memorial Day

13  weekend.  When on Friday, the 27th, are your travel plans?

14          PROSPECTIVE JUROR:  So it's not formal.  We're

15  planning to drive to New York for the day.  We have a hotel

16  room that evening.  My -- I have family from out of town

17  visiting so ideally as early in the day as possible, but we

18  don't have a set train ticket or anything like that.

19          MR. BERKOWITZ:  And I note that --

20  congratulations.  It looks like your daughter's winning an

21  award on the 24th at 2:30.  I certainly don't want to be the

22  one to ask, and I don't know what the schedule would be.

23          If we were in court, and it were not something

24  that you could be excused for, would that be okay, or would

25  you be resentful?

1          PROSPECTIVE JUROR:   No, I certainly would not be

2    resentful.  I understand this takes precedence over a high

3    school award.  I just mentioned it, in case it was possible.

4          MR. BERKOWITZ:  Thank you.

5          PROSPECTIVE JUROR:  Thank you.

6          THE COURT:  Any challenge to 731?

7          MR. KEILTY:  No, Your Honor.

8          MR. BERKOWITZ:  No, Your Honor.

9          THE COURT:  She is qualified.

10          THE COURTROOM DEPUTY:  Juror No. 952.

11          THE COURT:  Okay.  Good afternoon, sir.

12          PROSPECTIVE JUROR:  Good afternoon.

13          THE COURT:  Thank you for your patience.  You can

14    take your mask off, if you'd like.

15          All right.  We're reviewed your questionnaire and

16    just have a few follow-up questions for you, okay?

17          PROSPECTIVE JUROR:  Okay.

18          THE COURT:  So it says here you're a client

19    service associate with Jamal Ellesworth.  What is Jamal

20    Ellesworth?

21          PROSPECTIVE JUROR:  He's my employer, I'm sorry.

22          THE COURT:  Okay.  What kind of work do you do?

23          PROSPECTIVE JUROR:  I do production for Howard

24    University.

25          THE COURT:  Okay.  What kind of production?

```
1              PROSPECTIVE JUROR:  Printing, posters, designing

2      posters.

3              THE COURT:  And so Mr. Ellesworth has a contract

4      with Howard; is that right?

5              PROSPECTIVE JUROR:  Yes.

6              THE COURT:  Okay.  So you grew up in D.C.?

7              PROSPECTIVE JUROR:  Yes, I did.

8              THE COURT:  Okay.  And how old are you, sir?

9              PROSPECTIVE JUROR:  I am 25 years old.

10             THE COURT:  And it says here you like to play

11     video games; is that right?

12             PROSPECTIVE JUROR:  That's correct.

13             THE COURT:  What's your favorite games?

14             PROSPECTIVE JUROR:  Favorite one is probably Elden

15     Ring.

16             THE COURT:  I'm sorry, one more time.

17             PROSPECTIVE JUROR:  Elden Ring.

18             THE COURT:  Okay.  The lawyers may know what that

19     is.  I don't know.

20             And you hadn't heard about this case until last

21     week; is that right?

22             PROSPECTIVE JUROR:  Yes, correct.

23             THE COURT:  And when I described the case to you,

24     what's the first thing that came to your mind?

25             PROSPECTIVE JUROR:  Nothing really.
```

1          THE COURT:  Nothing really?

2          PROSPECTIVE JUROR:  Yes.

3          THE COURT:  Okay.  Counsel?

4          MR. KEILTY:  Nothing.  Thank you, Your Honor.

5          THE COURT:  Do you have any problems being a juror

6     in this case?

7          PROSPECTIVE JUROR:  No.  It's my first time doing

8     this.

9          MR. BERKOWITZ:  Just briefly.

10          Good afternoon.  My name is Sean Berkowitz.  I

11     represent the defendant, Michael Sussmann, in this matter.

12          This is your first time potentially serving on

13     jury duty, it sounds like.  Do you understand that you would

14     be asked to follow the judge's instructions and listen to

15     the facts in the case and decide the case based on what

16     happens in this courtroom and not anything outside the

17     courtroom?

18          PROSPECTIVE JUROR:  Yes.

19          MR. BERKOWITZ:  And do you think that you could

20     serve as a fair and impartial juror to both sides in this

21     matter and give them the rights that they're entitled to?

22          PROSPECTIVE JUROR:  Yes.

23          MR. BERKOWITZ:  I appreciate it, sir.

24          PROSPECTIVE JUROR:  Okay.  Thank you.

25          THE COURT:  All right.  Thank you very much.  You

1    can step down.

2                    PROSPECTIVE JUROR:  Thank you.

3                    Okay.  Any challenge?

4                    MR. KEILTY:  No, Your Honor.

5                    MR. BERKOWITZ:  No, Your Honor.

6                    THE COURT:  952 is qualified.

7                    All right.  Two more, and then lunch.

8                    THE COURTROOM DEPUTY:  Your Honor, Juror No. 9.

9                    THE COURT:  Welcome, ma'am.

10                   PROSPECTIVE JUROR:  Hi.

11                   THE COURT:  Thank you for your patience.  Feel

12   free to take your mask off, if you'd like.

13                   All right.  We have reviewed your questionnaire

14   and just have a couple of follow-up questions for you.  It

15   says here you're a research temp with Whitman Associates.

16   Tell us what Whitman Associates is.

17                   PROSPECTIVE JUROR:  It's a temp agency, a temp

18   agency.

19                   THE COURT:  All right.  And what sort of research

20   do you do?

21                   PROSPECTIVE JUROR:  Survey research on foundations

22   and grant makers regarding their benefits and salaries.

23                   THE COURT:  Okay.  And you were at some place

24   called ICF before that.

25                   PROSPECTIVE JUROR:  Correct, for ten years.

```
1              THE COURT:  What is ICF?

2              PROSPECTIVE JUROR:  It's a consulting firm.

3              THE COURT:  Okay.  And what did you do for them?

4              PROSPECTIVE JUROR:  Various things, but mostly

5    some survey research and then help with websites.

6              THE COURT:  Okay.  So were you on the technical

7    side at all?

8              PROSPECTIVE JUROR:  Just uploading things online,

9    basically that.

10             THE COURT:  And you had not heard of this case

11   until last week; is that correct?

12             PROSPECTIVE JUROR:  Correct.

13             THE COURT:  And when I described the case to you,

14   did you have any initial impressions.

15             PROSPECTIVE JUROR:  No.

16             THE COURT:  Any problems serving on the jury?

17             PROSPECTIVE JUROR:  No.

18             THE COURT:  Okay.  And do you think you would be

19   able to give Mr. Sussmann a fair trial and just listen to

20   the evidence and assess the evidence and nothing else?

21             PROSPECTIVE JUROR:  Yes.

22             THE COURT:  Okay.  Counsel?

23             MR. KEILTY:  Good afternoon, ma'am.  How are you?

24             PROSPECTIVE JUROR:  Good.

25             MR. KEILTY:  Thanks for your service today.  I
```

```
 1    appreciate it.
 2             Just one question.  You answered, in the
 3    questionnaire you filled out prior to today, that you did
 4    some phone banking for a candidate back in 2016.  Do you
 5    hold -- so neither candidate is on trial here.  It's only
 6    the defendant.  But those names -- Mr. Trump and
 7    Mrs. Clinton, those names might be featured prominently in
 8    some of the testimony.
 9             Do you hold strong opinions that would not allow
10    you to evaluate -- about either of those people that would
11    not allow you to evaluate the evidence fairly and
12    impartially given the fact -- I don't mean to interrupt you.
13    Fully understanding that a lot of people hold very strong
14    opinions about those, but the question is, would those
15    opinions allow you to evaluate testimony evidence fairly?
16             PROSPECTIVE JUROR:  Yes, I think I could evaluate
17    that fairly, correct.
18             MR. KEILTY:  Okay.  And you think you can, or
19    are you --
20             PROSPECTIVE JUROR:  I will.
21             MR. KEILTY:  -- 100 percent certain you can?
22             PROSPECTIVE JUROR:  Yes, I will.
23             MR. KEILTY:  Okay.  Thank you.
24             MR. BERKOWITZ:  Good afternoon.  My name is Sean
25    Berkowitz, and I represent the defendant, Michael Sussmann,
```

1    in this case.

2          I noted that you said that serving on the jury

3    could potentially have some ramifications from a hardship

4    standpoint.  And I don't want to delve too much into your

5    personal situation, but would you be able to serve on the

6    jury and would you be able to do so in a way that doesn't

7    hold your service against either of the parties?

8          PROSPECTIVE JUROR:  Correct.  I can serve.  I just

9    don't get paid, if I don't work.

10          MR. BERKOWITZ:  And so I understand that that's

11    not something most people like to do, to not get paid for

12    what they're doing.

13          Let me ask you this.  Do you think that it would

14    cause you to resent any of the parties because you're here

15    for a couple of weeks, or do you think that you could put

16    aside the personal hardship that jury service would bring to

17    you -- as it does, unfortunately, to many -- and evaluate

18    the case in a fair way without regard to the inconvenience

19    that it would cause you?

20          PROSPECTIVE JUROR:  No, it wouldn't cause me to

21    resent.

22          MR. BERKOWITZ:  And any reason that you can think

23    of that you couldn't be a fair and impartial juror and

24    listen to the case and evaluate it based on what happens

25    inside this courtroom and without regard to anything else?

```
 1                    PROSPECTIVE JUROR:  No.

 2                    MR. BERKOWITZ:  Okay.  I very much appreciate your

 3         candor and your willingness to serve.

 4                    THE COURT:  Okay.  Thank you.  You can step down.

 5                    PROSPECTIVE JUROR:  Okay.

 6                    THE COURT:  All right.

 7                    MR. KEILTY:  No, Your Honor.

 8                    MR. BERKOWITZ:  No, Your Honor.

 9                    THE COURT:  All right.  Juror 9 is qualified.

10                    THE COURTROOM DEPUTY:  Juror No. 1016.

11                    THE COURT:  Good afternoon, sir.

12                    PROSPECTIVE JUROR:  Good morning.  Oh, sorry.

13                    THE COURT:  Time flies.  It's a long day.

14                    All right.  Thank you for your service and for

15         your patience.  Feel free to slip your mask off, if you're

16         comfortable.

17                    PROSPECTIVE JUROR:  Oh, okay.

18                    THE COURT:  All right.  We have read your

19         questionnaire and just have a few follow-up questions for

20         you, all right?

21                    PROSPECTIVE JUROR:  Yes.

22                    THE COURT:  You're a mechanic; is that right?

23                    PROSPECTIVE JUROR:  Yes, sir.

24                    THE COURT:  How long have you been doing that?

25                    PROSPECTIVE JUROR:  About 30, 32 years probably.
```

1          THE COURT:  Uh-huh.  So sitting on this jury would

2     be a little different than your day job, huh?

3          PROSPECTIVE JUROR:  Exactly.

4          THE COURT:  How do you feel about that?

5          PROSPECTIVE JUROR:  Sitting here is no problem.

6     It's just another day of work, I consider it.

7          THE COURT:  Did you grow up in D.C.?

8          PROSPECTIVE JUROR:  Yes, sir.

9          THE COURT:  Lived here all your life?

10         PROSPECTIVE JUROR:  Yes.

11         THE COURT:  And it says that you have -- you

12    didn't list any prior jury service.  How could you be a D.C.

13    citizen all your life and not serve on a jury?

14         PROSPECTIVE JUROR:  I don't know.  I just...  It

15    happened.

16         THE COURT:  All right.  And you've never heard of

17    this case before?

18         PROSPECTIVE JUROR:  No.

19         THE COURT:  And when I described the case last

20    week, what's the first thing that came to your mind?

21         PROSPECTIVE JUROR:  Nothing specifically came to

22    my mind that I can recollect.  It was just a case that I

23    might have to serve on.

24         THE COURT:  So you don't have any trouble serving

25    on this jury?

1        PROSPECTIVE JUROR:  No.

2        THE COURT:  All right.  Counsel?

3        MR. KEILTY:  Nothing, Your Honor.  Thank you.

4        MR. BERKOWITZ:  Just briefly.

5        I'm told we get to go to lunch after this so I

6   won't take up too much of anybody's time.  I'm Sean

7   Berkowitz.  I represent Michael Sussmann in the matter.

8        And you indicated -- Judge Cooper said you've been

9   here a long time and haven't served on a jury.  Have you

10  ever before been called down to jury service and been

11  questioned like this?

12       PROSPECTIVE JUROR:  Yes.  I remember being called

13  down with a yellow piece of paper and all.  I guess I

14  appeared, and I wasn't called or anything, I guess.

15       MR. BERKOWITZ:  Okay.  And can you think of

16  anything that would prevent you from being fair and

17  impartial to my client, who is accused of making a false

18  statement to the FBI?

19       PROSPECTIVE JUROR:  No, I can be fair and

20  impartial, listen to it.

21       MR. BERKOWITZ:  Okay.  We very much appreciate you

22  coming down and your willingness to serve, sir.  Thank you.

23       PROSPECTIVE JUROR:  Okay.

24       THE COURT:  All right.  Sir, you can step down.

25  Thank you.

1                    Any challenge, Counsel?

2                    MR. KEILTY:  No, Your Honor.  Thank you.

3                    MR. BERKOWITZ:  No, Your Honor.

4                    THE COURT:  Okay.  1016 is qualified.

5                    Ms. Jenkins, how long do you need for lunch?

6                    THE COURTROOM DEPUTY:  One hour, Your Honor.

7                    THE COURT:  One hour.  By my clock it is 12:36,

8       let's try to get back by 1:35, all right?  We'll stand in

9       recess.

10                    (Lunch recess taken)

11

12                  **CERTIFICATE OF OFFICIAL COURT REPORTER**

13

14                    I, LISA A. MOREIRA, RDR, CRR, do hereby

15      certify that the above and foregoing constitutes a true and

16      accurate transcript of my stenographic notes and is a full,

17      true and complete transcript of the proceedings to the best

18      of my ability.

19           Dated this 16th day of May, 2022.

20

21                                  /s/Lisa A. Moreira, RDR, CRR
                                    Official Court Reporter
22                                  United States Courthouse
                                    Room 6718
23                                  333 Constitution Avenue, NW
                                    Washington, DC 20001
24

25