1           UNITED STATES DISTRICT COURT
          FOR THE DISTRICT OF COLUMBIA

2

    * * * * * * * * * * * * * * *   )
3   UNITED STATES OF AMERICA,        )   Criminal Action No.
                                     )   1:21-CR-00582-CRC-1
4                 Plaintiff,         )   Monday, May 16, 2022
                                     )   1:38 p.m.
5      vs.                           )   **AFTERNOON SESSION**
                                     )
6   MICHAEL A. SUSSMANN,             )
                                     )
7                 Defendant.         )
                                     )
8   * * * * * * * * * * * * * * *   )

9

10                TRANSCRIPT OF JURY TRIAL
         BEFORE THE HONORABLE CHRISTOPHER R. COOPER
11               UNITED STATES DISTRICT JUDGE

12

13   APPEARANCES:

14   FOR THE UNITED STATES:   ANDREW DeFILIPPIS, ESQ.
                              JONATHAN EDGAR ALGOR, IV, ESQ.
15                            MICHAEL T. KEILTY, ESQ.
                              BRITTAIN SHAW, ESQ.
16                            SPECIAL COUNSEL'S OFFICE
                              145 N Street, Northeast
17                            Washington, D.C. 20002

18   FOR THE DEFENDANT:       SEAN M. BERKOWITZ, ESQ.
                              MICHAEL BOSWORTH, ESQ.
19                            CATHERINE YAO, ESQ.
                              NATALIE H. RAO, ESQ.
20                            LATHAM & WATKINS, LLP
                              1221 Avenue of the Americas
21                            New York, New York 10020

22   REPORTED BY:             LISA EDWARDS, RDR, CRR
                              Official Court Reporter
23                            United States District Court for the
                                District of Columbia
24                            333 Constitution Avenue, Northwest
                              Washington, D.C. 20001
25                            (202) 354-3269

```
1              THE COURTROOM DEPUTY:  Your Honor, we're back on

2    the record in Criminal Case 21-582, the United States of

3    America versus Michael Sussmann.

4              THE COURT:  We're at 24, counsel, by my count.

5              Did you get your breakout room, Mr. Berkowitz?

6              MR. BERKOWITZ:  We did, your Honor.

7              THE COURT:  Good.

8              MR. BERKOWITZ:  I will certainly not complain

9    about the accommodations.  We appreciate all that

10   Mr. Addaway did.

11             THE COURT:  We aim to please.

12             MR. BERKOWITZ:  There wasn't the separate lunch

13   course which we were expecting, but we took care of that.

14             THE COURT:  Counsel, because we have two

15   additional alternate seats, I would be happy to give each

16   side an additional strike if you want to make a motion.

17   Usually, it's one strike for two alternates; so two strikes

18   for four alternates certainly makes sense.

19             MR. BERKOWITZ:  Judge, we would so move.

20             MR. KEILTY:  That's fine with the Government, your

21   Honor.

22             THE COURT:  You'll have two alternate strikes.

23             THE COURTROOM DEPUTY:  Your Honor, Juror No. 821.

24             (Thereupon, Prospective Juror No. 821 entered the

25   courtroom and the following proceedings were had:)
```

```
 1                    THE COURT:  Good afternoon, ma'am.

 2                    PROSPECTIVE JUROR:  Hello.

 3                    THE COURT:  Feel free to take your mask off if

 4      you'd like.

 5                    PROSPECTIVE JUROR:  I can keep it on, though,

 6      right?

 7                    THE COURT:  You can keep it on.  Feel free.

 8                    Thank you for your service.  We've reviewed your

 9      questionnaire and just have a few followup questions.

10                    PROSPECTIVE JUROR:  Okay.

11                    THE COURT:  So you work at the Sierra Club.  Is

12      that correct?

13                    PROSPECTIVE JUROR:  Yes.

14                    THE COURT:  Tell us what you do there.

15                    PROSPECTIVE JUROR:  I support organizers that are

16      working to move the economy to clean energy.  So I do that

17      through both air movement technology tools, so databases,

18      and then also by managing two of them.

19                    THE COURT:  Do you do any sort of lobbying work or

20      government affairs for the Sierra Club at all?

21                    PROSPECTIVE JUROR:  No.  The folks I support do

22      grassroots organizing, so no direct -- I don't interact with

23      members of Congress at all.

24                    THE COURT:  And I believe that you say that your

25      spouse has worked on elections?
```

```
 1                PROSPECTIVE JUROR:  Yes.

 2                THE COURT:  Can you be a little more specific

 3      about that?

 4                PROSPECTIVE JUROR:  About -- so he worked to elect

 5      candidates, Senate candidates, about five years or so ago in

 6      Montana and Colorado.

 7                THE COURT:  That's just on his own or does he work

 8      for a political organization?

 9                PROSPECTIVE JUROR:  That was on his own, employed

10      as you do on elections, where you're employed for the

11      duration of the election and then you're off to find another

12      job.

13                THE COURT:  And you say that you had not heard

14      about this case before last week?

15                PROSPECTIVE JUROR:  No, I have not.

16                THE COURT:  When I described the case, did you

17      have any initial reactions about the possibility of serving

18      on this jury?

19                PROSPECTIVE JUROR:  No.

20                THE COURT:  Counsel?

21                MR. KEILTY:  Good afternoon.  How are you?

22                PROSPECTIVE JUROR:  Doing okay.  How about

23      yourself?

24                MR. KEILTY:  Doing okay.  Thank you.

25                Just a couple of questions.
```

```
 1                    PROSPECTIVE JUROR:  Uh-huh.

 2                    MR. KEILTY:  With your questionnaire that you

 3        filled out, you mentioned that you have some issues with the

 4        criminal justice system.

 5                    PROSPECTIVE JUROR:  Uh-huh.

 6                    THE COURT REPORTER:  Ma'am, could you please

 7        answer yes or no?

 8                    THE COURT:  Ma'am, maybe you could move a little

 9        closer to the microphone so that the court reporter can pick

10        you up.

11                    PROSPECTIVE JUROR:  Yes, sir.  Sorry.

12                    MR. KEILTY:  In a response, you said that you

13        believe the system is racist --

14                    PROSPECTIVE JUROR:  Yes.

15                    MR. KEILTY:  -- and that the police should be

16        defunded?

17                    PROSPECTIVE JUROR:  Yes.

18                    MR. KEILTY:  Can you elaborate a little more on

19        that?

20                    PROSPECTIVE JUROR:  Yeah.  There are from my

21        understanding -- lots of folks who are in prisons right now

22        who are awaiting trial are mainly people of color coming

23        from Black and Brown communities, and that the law is not

24        applied fairly to folks across all different races.

25                    MR. KEILTY:  And you also seemed to have some
```

1    issues with the FBI.  Is that correct?

2            PROSPECTIVE JUROR:  I just know past

3    investigations.  They have -- yeah.  They dismantled the

4    Black Panther movement.

5            MR. KEILTY:  So there's going to be some witnesses

6    in this case who will be FBI agents.  Given what you just

7    said, are you 100 percent certain you'd be able to listen to

8    their testimony, evaluate it fairly and impartially?

9            PROSPECTIVE JUROR:  Yes.  That case was many, many

10   years ago, the 1970s.

11           MR. KEILTY:  But nothing today about the FBI that

12   really --

13           PROSPECTIVE JUROR:  No.

14           MR. KEILTY:  -- you have strong feelings about?

15           PROSPECTIVE JUROR:  No.

16           MR. KEILTY:  Just going back to one of your

17   questions, you had also commented that your participation in

18   the criminal justice system -- that the exposure you've had

19   to it, you felt like you've been treated fairly?

20           PROSPECTIVE JUROR:  Yes.

21           MR. KEILTY:  And you responded:  "Yes.  I'm

22   white"?

23           PROSPECTIVE JUROR:  Yes.

24           MR. KEILTY:  Do you think other people are not

25   treated fairly?  Is that what --

```
 1              PROSPECTIVE JUROR:  Yes.

 2              MR. KEILTY:  Just going back to the 2016 election,

 3    I think you answered that you did some phone-banking for one

 4    of the candidates.  Is that correct?

 5              PROSPECTIVE JUROR:  That is correct.  I don't

 6    remember that clearly, specifically what electoral

 7    activities I did or did not do.

 8              MR. KEILTY:  Did you donate any money to any of

 9    the candidates?

10              PROSPECTIVE JUROR:  I may have.

11              MR. KEILTY:  But you're not sure?

12              PROSPECTIVE JUROR:  I think I did.  I don't

13    remember clearly.

14              MR. KEILTY:  So neither of the candidates are on

15    trial in this case.

16              PROSPECTIVE JUROR:  Yeah.

17              MR. KEILTY:  Only Mr. Sussmann is on trial.  But

18    their names are going to show up a lot.  Do you have any

19    particularly strong feelings about either candidate which

20    would not allow you to evaluate the evidence in a fair and

21    impartial manner?

22              PROSPECTIVE JUROR:  I have very strong feelings

23    about the past president, but that is separate than this

24    particular case at hand.

25              MR. KEILTY:  Okay.  So you'd be able to -- if the
```

1  Government proved its case beyond a reasonable doubt, you'd

2  be able to come to a verdict?

3          PROSPECTIVE JUROR:  Yes.

4          MR. KEILTY:  And you're 100 percent certain about

5  that?

6          PROSPECTIVE JUROR:  Yes.

7          MR. KEILTY:  Thank you very much.  I appreciate

8  it.

9          PROSPECTIVE JUROR:  Thank you.

10          MR. BERKOWITZ:  Good afternoon.  And thank you for

11  your patience with us today.  Hopefully, we'll be able to

12  move through this quickly.  There was just one additional

13  area that I wanted to follow up on.

14          You indicated in your questionnaire that you have

15  a friend who had worked at the CIA?

16          PROSPECTIVE JUROR:  Yes.  I know very little about

17  that.

18          MR. BERKOWITZ:  I'm sorry?

19          PROSPECTIVE JUROR:  I know very little about my

20  friend who worked at the CIA.

21          MR. BERKOWITZ:  I think that's the way they like

22  it.

23          But there may very well be certain witnesses from

24  the CIA who testify here.  Could you evaluate the testimony

25  of a CIA witness in the same way as you would any other

1    witness and not give it more or less credibility just

2    because they're a CIA agent?

3              PROSPECTIVE JUROR:  Yes.

4              MR. BERKOWITZ:  And I think that that's all that I

5    have for you.  I appreciate it.

6              PROSPECTIVE JUROR:  Thank you.

7              THE COURT:  Ma'am, one of the things that we look

8    for in jurors is that both sides are entitled to folks who

9    are not only willing to express their views about the

10   evidence, but also consider the views of others.  You

11   obviously have some very strong opinions about the criminal

12   justice system, about law enforcement in some cases.

13             Do you think that you would be able to consider

14   the views of others if you were selected for this jury?

15             PROSPECTIVE JUROR:  Yes.

16             THE COURT:  Thank you, ma'am.  You can step down.

17             PROSPECTIVE JUROR:  Thank you.

18             (Thereupon, Prospective Juror No. 821 retired from

19   the courtroom and the following proceedings were had:)

20             THE COURT:  Any challenge, counsel?

21             MR. KEILTY:  No, your Honor.

22             MR. BERKOWITZ:  No, your Honor.

23             THE COURT:  821 is qualified.

24             THE COURTROOM DEPUTY:  Your Honor, Juror No. 133.

25             (Thereupon, Prospective Juror No. 133 entered the

```
 1    courtroom and the following proceedings were had:)

 2              THE COURT:  Good afternoon, ma'am.

 3              PROSPECTIVE JUROR:  Hello.

 4              THE COURT:  How are you?

 5              PROSPECTIVE JUROR:  Well.  Thank you.

 6              THE COURT:  You can feel free to slide your mask

 7    off if you are comfortable doing so.

 8              PROSPECTIVE JUROR:  Okay.

 9              THE COURT:  Thank you for your service.  We've

10    reviewed your questionnaire and just have a few followup

11    questions.  All right?

12              PROSPECTIVE JUROR:  Okay.

13              THE COURT:  And you are a research librarian with

14    Beveridge & Diamond.  Correct?

15              PROSPECTIVE JUROR:  Yes, sir.

16              THE COURT:  And you also are involved in conflicts

17    management?

18              PROSPECTIVE JUROR:  Yes, sir.

19              THE COURT:  Mr. Sussmann, as the questionnaire

20    indicated, was a partner at the Perkins Coie law firm.  Have

21    you had any interactions with that firm or --

22              PROSPECTIVE JUROR:  For conflicts purposes, we

23    don't keep track of the firms that are representing clients

24    on either sides.  It's just the companies.  Our firm does

25    corporate defense, so it's typically company versus company.
```

```
1              THE COURT:  Right.
2              But none of your fellow research librarians -- you
3      don't know any lawyers at that firm?
4              PROSPECTIVE JUROR:  No, sir.
5              THE COURT:  So there may be testimony and
6      documentary evidence in the case regarding law firm billing
7      records and public statements made in law firms and
8      attorney-client relationships.  Would you be able to put
9      aside your involvement in sort of law firm management and
10     assess that evidence impartially?
11             PROSPECTIVE JUROR:  I hope so.
12             THE COURT:  And this case is not about legal
13     ethics.  There may be testimony that may call into question
14     the ethics of a particular lawyer or a particular firm.  You
15     obviously deal with law firm conflicts.
16             Could you decide the case based on the evidence of
17     the charge against Mr. Sussmann apart from any
18     considerations of professional responsibility?
19             PROSPECTIVE JUROR:  No.  There's no issue there.
20             THE COURT:  Your husband works for something
21     called the Do Good Institute.  What is that?
22             PROSPECTIVE JUROR:  It's an institute that he
23     started at the University of Maryland that teaches
24     philanthropy to undergraduate students and social
25     entrepreneurship.  He's been involved in the creation of a
```

1   number of nonprofits in this area and in the country.

2           THE COURT:  And before coming to court last week,

3   you had not heard of this case.  Is that right?

4           PROSPECTIVE JUROR:  No, sir.

5           THE COURT:  Counsel, followup?

6           MR. KEILTY:  No, your Honor.  Thank you.

7           MR. BERKOWITZ:  Good afternoon.  How are you

8   doing?

9           PROSPECTIVE JUROR:  Well.  Thank you.

10          MR. BERKOWITZ:  Good.  I'm Sean Berkowitz.  I

11  represent the Defendant, Michael Sussmann.  I just had a

12  couple of followup questions for you.

13          Could you give us a little bit better sense as to

14  what you do as a conflicts manager so we can understand?  I

15  work at a law firm in sort of a general sense.  But what's

16  your role?

17          PROSPECTIVE JUROR:  Sure.  All of the matters that

18  the firm opens where we typically -- our firm represents

19  corporate clients.  We do only environmental law.  And the

20  government is typically the adverse party in most of our

21  suits.  It's a federal agency or a state agency.

22          And if it's not the Federal Government, then we

23  have a database software program like anyone else uses, and

24  we plug names into a database and we have a record of every

25  interaction that our firm has had with a particular company,

1    any of their subsidiaries, any affiliates, any of those

2    issues.

3              And I produce a report.  It then goes to a

4    committee of shareholders at the firm; and they review those

5    various hits that we get, whether they were adverse or their

6    client contacts, and decide whether the firm can take on the

7    representation.

8              I myself and the people that I supervise don't

9    make those determinations; the shareholders do.

10             MR. BERKOWITZ:  And as Judge Cooper indicated,

11   there may be some testimony about clients, about issues that

12   could potentially implicate ethical issues.

13             Would you be able to separate in the jury room

14   your own personal knowledge from what you heard in the

15   courtroom?

16             PROSPECTIVE JUROR:  Of course.

17             MR. BERKOWITZ:  And I noted that you are

18   incredibly well-read in terms of the breadth of the

19   magazines and so forth.

20             PROSPECTIVE JUROR:  Yes.

21             MR. BERKOWITZ:  The *Post*, the *Journal*, the *Times*.

22   Do you read those all for work?  Do you read them all to get

23   your news?

24             PROSPECTIVE JUROR:  Some of both.  For my job, I

25   review five to six newspapers plus I use a service that

1    collates RSS feeds about news about our clients, news about

2    various environmental laws and those sorts of issues.  But

3    yes.  I think I consume more news resources than the average

4    person, and that's mostly for my job.  Yes.

5           MR. BERKOWITZ:  And where do you get your news

6    from, largely?  Is there one or two organizations or

7    websites that you largely focus on?

8           PROSPECTIVE JUROR:  No.  Really, I'm pretty much

9    an omnivore.  And that is just in recognition of the biases

10   from all parts.

11          And at least for work now, when I'm looking at

12   most of the resources, obviously, for our clients' purposes,

13   we want to -- administration resources are more likely to be

14   friendly with certain publications.  And so there are

15   certain ones that we read that we didn't read in the

16   previous administration, for example.  But that's MSNBC,

17   CNN, *New York Times*, Bloomberg publications for legal news

18   especially.  Pretty much that's where we look today.

19          MR. BERKOWITZ:  Thank you very much for your

20   patience with my questions.  You have a nice day, and I

21   appreciate your willingness to serve.

22          PROSPECTIVE JUROR:  Thank you.

23          THE COURT:  So, ma'am, if an article about this

24   case were to pop up on one of your news feeds, could you

25   resist the urge to --

```
1                    PROSPECTIVE JUROR:  As happened this weekend.  And
2        I did not read them.
3                    THE COURT:  Thank you.
4                    PROSPECTIVE JUROR:  My husband even screened them.
5        So we're good.
6                    THE COURT:  Great.  Thank you for your service.
7        You can step down.
8                    PROSPECTIVE JUROR:  Okay.
9                    (Thereupon, Prospective Juror No. 133 retired from
10       the courtroom and the following proceedings were had:)
11                   THE COURT:  Any challenge?
12                   MR. KEILTY:  No, your Honor.
13                   MR. BERKOWITZ:  No, your Honor.
14                   THE COURT:  133 is qualified.
15                   THE COURTROOM DEPUTY:  Juror No. 892.
16                   (Thereupon, Prospective Juror No. 892 entered the
17       courtroom and the following proceedings were had:)
18                   THE COURT:  Good afternoon, sir.  You can have a
19       seat.  Feel free to slip your mask off if you like.
20                   PROSPECTIVE JUROR:  Thank you.
21                   THE COURT:  Thank you for your service.  We've
22       reviewed your questionnaire and just have a few followup
23       questions for you.
24                   So you are a graphic designer; is that right?
25                   PROSPECTIVE JUROR:  That is correct.  Yes.
```

```
1              THE COURT:  What is the Un Group?

2              PROSPECTIVE JUROR:  It is the company that I own

3     and I do my work through.

4              THE COURT:  And who are your client?  Are your

5     clients in any particular industries?

6              PROSPECTIVE JUROR:  Typically nonprofits in the

7     communications sector, things of that nature.

8              THE COURT:  Do you have any government clients,

9     government agencies?

10             PROSPECTIVE JUROR:  No, sir.

11             THE COURT:  And you had not heard about this case

12    until last week.  Is that right?

13             PROSPECTIVE JUROR:  That is correct.

14             THE COURT:  And when I described the case to you

15    and said you might be a potential juror in the case, any

16    first impressions?  What did you think?

17             PROSPECTIVE JUROR:  I've lived in D.C. for nearly

18    15 years, and this is the first time that I've been

19    selected.  So it was -- it sounded like an interesting

20    opportunity.

21             THE COURT:  Counsel?

22             MR. KEILTY:  Nothing, your Honor.  Thank you.

23             MR. BERKOWITZ:  Good afternoon.  How are you

24    doing?

25             PROSPECTIVE JUROR:  Doing well.  Thank you.
```

```
 1              MR. BERKOWITZ:  Good.  My name is Sean Berkowitz,

 2     and I represent the Defendant in this case, Michael

 3     Sussmann.  And I just have a couple questions to make sure

 4     that if you're chosen you could be fair and impartial.  I

 5     want to follow up on a couple things in your questionnaire,

 6     which we appreciate you filling out.

 7              You said the criminal justice system is

 8     historically a symbol of justice.  If you could just expand

 9     on that a little bit, so I understand what your point is

10     there.

11              PROSPECTIVE JUROR:  Sure.  So as I understand it,

12     if something were to happen, you have a right to counsel and

13     you have a right to have your day.  So that's the way I

14     think of it.

15              MR. BERKOWITZ:  So you believe it's currently a

16     symbol of justice as well, or supposed to be?

17              PROSPECTIVE JUROR:  Yes.

18              MR. BERKOWITZ:  And law enforcement officers, you

19     indicated, are bound by their system.  Can you expand on

20     that a little bit?

21              PROSPECTIVE JUROR:  So as I know it, this is the

22     system of justice.  And nobody's come up with another form.

23     So you're sort of bound within the parameters of what the

24     justice system is.  So laws are laws and things of that

25     nature.
```

1          MR. BERKOWITZ:  And finally, the prosecuting

2     attorneys as a general matter.  It says:  Seekers of truth,

3     resolution of issues.  I just want to make sure I understand

4     that as well.

5          PROSPECTIVE JUROR:  I'm sorry.  Could you repeat

6     it one more time?

7          MR. BERKOWITZ:  Yes.  So when asked about

8     prosecuting attorneys, your comment was:  Seekers of truth,

9     resolution of issues.

10          PROSPECTIVE JUROR:  Right.  So as I sort of see

11     it, when you come to court, it's to, you know, get answers

12     and finality.  It wasn't any one, you know -- it wasn't

13     tilted to any one side.  That was just my general thought.

14          MR. BERKOWITZ:  And is there anything about your

15     views of the criminal justice system that would cause you to

16     favor either the prosecution or the defense in a way that

17     would make it so that you might not be impartial?

18          PROSPECTIVE JUROR:  I don't believe so.

19          MR. BERKOWITZ:  And with respect to law

20     enforcement officers, while there aren't going to be police

21     officers that testify, here there would be agents of the

22     Federal Government, FBI agents as well as CIA agents.

23          Do you credit their testimony either higher than

24     the average person or lower than the average person because

25     of your views of the criminal justice system?

```
 1              PROSPECTIVE JUROR:  I wouldn't say that would be
 2     the case.
 3              MR. BERKOWITZ:  And if you were chosen to serve as
 4     a juror, can you think of any reason why you wouldn't be
 5     able to be fair and impartial and evaluate the case based on
 6     what happened in this courtroom as opposed to what might --
 7     what you might know from outside the courtroom?
 8              PROSPECTIVE JUROR:  No.  I don't see there being
 9     any reason that I couldn't be impartial.
10              MR. BERKOWITZ:  I very much appreciate your
11     patience with me.
12              THE COURT:  Okay, sir.  Thank you very much.  You
13     can step down.
14              PROSPECTIVE JUROR:  Thank you.
15              (Thereupon, Prospective Juror No. 892 retired from
16     the courtroom and the following proceedings were had:)
17              THE COURT:  Any challenge?
18              MR. KEILTY:  No, your Honor.
19              MR. BERKOWITZ:  No, your Honor.
20              THE COURT:  892 is qualified.
21              THE COURTROOM DEPUTY:  Your Honor, Juror No. 320.
22              (Thereupon, Prospective Juror No. 320 entered the
23     courtroom and the following proceedings were had:)
24              THE COURT:  Good afternoon, ma'am.
25              PROSPECTIVE JUROR:  Hi.
```

```
 1              THE COURT:  Have a seat.  You can feel free to
 2      take your mask off if you like.
 3              PROSPECTIVE JUROR:  Thanks.
 4              THE COURT:  We've reviewed your questionnaire and
 5      just have a few followup questions for you.  I guess the
 6      first is, you have a commitment on Friday or a flight on
 7      Friday.  The flight leaves at what time?
 8              PROSPECTIVE JUROR:  2:45 from National.
 9              THE COURT:  Did you indicate this on your summons
10      response or --
11              PROSPECTIVE JUROR:  I did.  Yeah.
12              THE COURT:  If you could just step outside the
13      door one second.
14              I'm sorry, ma'am.  This is for a wedding?
15              PROSPECTIVE JUROR:  It is, yes.
16              THE COURT:  This is not something that you could
17      postpone or forego?
18              PROSPECTIVE JUROR:  I mean, I might be able to fly
19      out later.
20              THE COURT:  But this is a friend?
21              PROSPECTIVE JUROR:  It's my partner's cousin.  So
22      it's --
23              THE COURT:  If you could just step outside.
24              PROSPECTIVE JUROR:  Sure.
25              (Thereupon, Prospective Juror No. 320 retired from
```

1    the courtroom and the following proceedings were had:)

2              THE COURT:  Any objection to striking her for

3    cause?

4              MR. KEILTY:  No, your Honor.

5              MR. BERKOWITZ:  No, understanding you're applying

6    this consistently.  So we would not have any objection.

7              THE COURT:  We will strike her for cause for

8    hardship.

9              THE COURTROOM DEPUTY:  Your Honor, Juror No. 125.

10             (Thereupon, Prospective Juror No. 125 entered the

11   courtroom and the following proceedings were had:)

12             THE COURT:  Good afternoon, ma'am.

13             PROSPECTIVE JUROR:  Good afternoon.

14             THE COURT:  Thank you for your service.  You can

15   take your mask off if you like.

16             PROSPECTIVE JUROR:  Okay.

17             THE COURT:  We have reviewed your questionnaire

18   and just have a few followup questions.

19             Where are you employed, ma'am?

20             PROSPECTIVE JUROR:  Where?

21             THE COURT:  Yes.

22             PROSPECTIVE JUROR:  At a company called Quest

23   Decks.

24             THE COURT:  And what kind of company is that?

25   What do you do for them?

1          PROSPECTIVE JUROR:  It's a digital publishing and

2     events company.  I work in marketing.

3          THE COURT:  And what types of events are you

4     involved in the marketing of?

5          PROSPECTIVE JUROR:  I don't work for the event

6     marketing.  But the company does large trade shows and

7     different industries along with small conferences.

8          THE COURT:  And you're on the design side?

9          PROSPECTIVE JUROR:  Audience development.

10         THE COURT:  It seems you have some concerns about

11    big businessmen and lawyers at big law firms.  Can you tell

12    us a bit more about that?

13         PROSPECTIVE JUROR:  I just think especially with

14    the lawyers it becomes more of a business than serving the

15    actual point of bringing justice.

16         THE COURT:  And do you have any experience with

17    lawyers or --

18         PROSPECTIVE JUROR:  I do not.

19         THE COURT:  So this is just your impression?

20         PROSPECTIVE JUROR:  Uh-huh.

21         THE COURT REPORTER:  I'm sorry.  Is that a yes?

22         PROSPECTIVE JUROR:  Yes.  I'm sorry.

23         THE COURT:  So the Defendant in this case,

24    Mr. Sussmann, is a lawyer at a big law firm.  Do you think

25    you could put aside those views and give him a fair trial if

1     you were selected for this jury?

2              PROSPECTIVE JUROR:  Yeah.  Yes.

3              THE COURT:  How certain are you of that?

4              PROSPECTIVE JUROR:  Fairly certain.

5              THE COURT:  And had you heard about this case

6     before?

7              PROSPECTIVE JUROR:  I had not.

8              THE COURT:  When I described the case last week in

9     the big courtroom, what's the first thing that came to your

10    mind?

11             PROSPECTIVE JUROR:  The election, the 2016

12    election.

13             THE COURT:  And do you have strong feelings about

14    the 2016 election?

15             PROSPECTIVE JUROR:  Yes.

16             THE COURT:  Did you vote?

17             PROSPECTIVE JUROR:  Yes.

18             THE COURT:  And obviously, lots of folks have

19    strong feelings about the election or for one candidate or

20    the other.  Neither candidate is on trial here.

21             PROSPECTIVE JUROR:  Right.

22             THE COURT:  Do you think you would have trouble

23    putting those feelings aside if you were selected to this

24    jury?

25             PROSPECTIVE JUROR:  No, I do not.

1          THE COURT:  Counsel?

2          MR. KEILTY:  Good afternoon, ma'am.  How are you?

3          PROSPECTIVE JUROR:  Good.  How are you?

4          MR. KEILTY:  Good.  Thanks for your service today.

5     I appreciate it.

6          Just a couple of questions based off some of your

7     answers in the questionnaire.

8          PROSPECTIVE JUROR:  Okay.

9          MR. KEILTY:  You mentioned that you believe the

10    FBI, DOJ and the CIA need some reform.  Could you just

11    elaborate a little bit on that for us?

12         PROSPECTIVE JUROR:  I think in terms of

13    accountability, I don't have specific cases.  Just my

14    impression based off the news.

15         MR. KEILTY:  Okay.

16         PROSPECTIVE JUROR:  Things seem to happen under

17    the radar.

18         MR. KEILTY:  So there might be witnesses who are

19    going to testify in this trial who are FBI agents and who

20    might be employed by the CIA.

21         Would you be able to listen to their testimony and

22    evaluate the evidence they provide in a fair and impartial

23    manner, notwithstanding those concerns you have?

24         PROSPECTIVE JUROR:  Yes.

25         MR. KEILTY:  Great.

1          I thought in one of the questions in the

2    questionnaire you had mentioned that you might have

3    difficulty sitting in judgment of another person.  Is

4    that --

5          PROSPECTIVE JUROR:  No.  I think --

6          MR. KEILTY:  Did I mischaracterize that?  I'm

7    sorry if I did.

8          PROSPECTIVE JUROR:  I was, I think, getting at

9    that I make judgments based off actions, not who they are

10   and where they come in.

11         MR. KEILTY:  Understood.  Okay.

12         Then last thing I have was that you have some

13   experience in DNS?

14         PROSPECTIVE JUROR:  Very basic.

15         MR. KEILTY:  Because there's going to be some

16   evidence in this case about DNS.  Do you think you'd be able

17   to set aside what you know and evaluate the evidence as it

18   comes in?

19         PROSPECTIVE JUROR:  Yes.

20         MR. KEILTY:  Great.  Thanks very much.  I

21   appreciate it.

22         PROSPECTIVE JUROR:  No problem.

23         MR. BERKOWITZ:  Good afternoon.  I'm Sean

24   Berkowitz.  I'm the defense attorney for Mr. Sussmann.  And

25   I want to make sure that if you are selected that you can be

1    fair and impartial.  I very much appreciate the candor in

2    your questionnaire, and I wanted to follow up on a couple

3    points just to make sure that everybody's comfortable.

4             PROSPECTIVE JUROR:  All right.

5             MR. BERKOWITZ:  You indicated -- and Judge Cooper

6    asked you a little bit about it -- that defense lawyers and

7    lawyers in general have difficulty separating morals from

8    their cases.

9             Do you think that you can put aside any

10   preconceived notions about those concerns and be fair?

11            PROSPECTIVE JUROR:  Yes.

12            MR. BERKOWITZ:  And Mr. Sussmann was a cyber

13   national security lawyer, not a defense lawyer like myself.

14   But I think you also indicated with respect to lawyers you

15   felt that they make a lot of money.  And you wouldn't hold

16   that against Mr. Sussmann or anybody if they made money in

17   their job, would you?

18            PROSPECTIVE JUROR:  No.

19            MR. BERKOWITZ:  And finally, an area that just is

20   a concern because my job today really is to make sure that I

21   ask these questions even if I don't like, you know,

22   necessarily putting people on the spot.  But you asked

23   about -- you mentioned businessmen committing fraud or not

24   paying their taxes or doing that.

25            This is not a case about somebody who didn't pay

162

1    taxes.  It's not a case about a financial fraud or somebody

2    that is pocketing money.  The case relates to somebody

3    allegedly -- Mr. Sussmann allegedly lying to the FBI.

4            PROSPECTIVE JUROR:  Right.

5            MR. BERKOWITZ:  Is there anything about those

6    allegations, you know, of a lawyer from a large law firm

7    lying to the FBI that would make it difficult for you on

8    either side to be less fair to the Government or less fair

9    to Mr. Sussmann because of those basic facts?

10           PROSPECTIVE JUROR:  No.  I think I was providing

11   that information just as background on kind of how I feel.

12   But I understand that this is what is presented in front of

13   us and that's what I have to take --

14           MR. BERKOWITZ:  And then --

15           PROSPECTIVE JUROR:  -- and listen to.

16           MR. BERKOWITZ:  -- it's obviously a very important

17   case to both sides, and we want to make sure that whoever

18   has to sit here for two weeks and listen to us will do so

19   with an open mind.  And it sounds like you're willing to do

20   that?

21           PROSPECTIVE JUROR:  Yes.

22           MR. BERKOWITZ:  I very much appreciate your time.

23           PROSPECTIVE JUROR:  Thank you.

24           THE COURT:  Thank you, ma'am.  You can step down.

25           (Thereupon, Prospective Juror No. 125 retired from

1       the courtroom and the following proceedings were had:)

2                    THE COURT:  Any challenge?

3                    MR. KEILTY:  No, your Honor.

4                    MR. BERKOWITZ:  No, your Honor.

5                    THE COURT:  125 is qualified.

6                    THE COURTROOM DEPUTY:  Your Honor, Juror No. 433.

7                    (Thereupon, Prospective Juror No. 433 entered the

8       courtroom and the following proceedings were had:)

9                    THE COURT:  Good afternoon, sir.

10                   PROSPECTIVE JUROR:  Good afternoon.

11                   THE COURT:  Step right up.  You can feel free to

12      take your mask off if you like.

13                   PROSPECTIVE JUROR:  Sure.

14                   THE COURT:  So we have reviewed your questionnaire

15      and just have a few followup questions for you.

16                   PROSPECTIVE JUROR:  Sure.

17                   THE COURT:  I guess first, before I turn it over

18      to the attorneys:  You obviously are very well-read and you

19      seem to have gained some information about this case before

20      last week.

21                   Just tell us generally what you remember having

22      read and whether you've formed opinions about the case based

23      on what you've read or heard.

24                   PROSPECTIVE JUROR:  Recalling what I read, I was

25      familiar with the -- I guess what they call the Steele

1    dossier.  Not so much Mr. Sussmann, but the kind of general

2    story that was happening at the time, the intrigue around

3    it, the different allegations.  But I did not form any

4    official opinion of what it was.  It was more for me just --

5    more news that was interesting.

6              THE COURT:  So you've not heard of Mr. Sussmann

7    before and have formed no opinion about the merits of this

8    particular case.  Is that fair?

9              PROSPECTIVE JUROR:  That's fair.  I mean, I've

10   known -- I've heard his name connected to the case, but not

11   thought much about it or made any opinions about the case.

12             THE COURT:  In Question 89, you say that this

13   seems politically motivated.  Tell us why you said that and

14   what -- or what basis you would have to say that and what

15   you mean.

16             PROSPECTIVE JUROR:  Sure.  For me, I was just

17   noticing the various political connections to the

18   accusations against Trump, the Hillary Clinton Campaign,

19   Barr and how this kind of case was initiated.  And all those

20   connections together seem to me to be, again, politically

21   motivated in one way or another.  I'm not sure which side.

22             Sorry.  Was there another question at the end of

23   your question?

24             THE COURT:  What was the basis of those

25   conclusions?  I think you've --

```
 1              PROSPECTIVE JUROR:  My final conclusion was it

 2      just seemed to me quite suspect.

 3              THE COURT:  Now, Mr. Sussmann is on trial on one

 4      count, which involves a charge that he lied to a government

 5      agency, namely the FBI.  We're not here to relitigate the

 6      2016 election.  Donald Trump's not on trial; Hillary Clinton

 7      is not on trial.  Putting aside what you may feel about the

 8      political motivations of why we're here, could you give

 9      Mr. Sussmann a fair trial just based on the evidence that is

10      presented in this courtroom?

11              PROSPECTIVE JUROR:  Yes.  I believe so.

12              THE COURT:  Do you have any hesitation about that?

13              PROSPECTIVE JUROR:  No.

14              THE COURT:  Counsel?

15              MR. KEILTY:  Good afternoon.  How are you?

16              PROSPECTIVE JUROR:  Good.

17              MR. KEILTY:  Thanks for your service.  I

18      appreciate it.

19              You said that you think the prosecution is suspect

20      and that you think it's politically motivated.

21              The judge just asked you if you can give

22      Mr. Sussmann a fair trial.  Can you be fair to the

23      Government if you think this is a politically motivated

24      trial?

25              PROSPECTIVE JUROR:  I think that would be
```

1    difficult.

2              MR. KEILTY:  Okay.  Why would it be difficult?

3              PROSPECTIVE JUROR:  To me, it seems -- and this is

4    my uneducated, naive opinion -- but it seems like a lot of

5    time, money and effort.

6              MR. KEILTY:  Okay.  You also said that -- while

7    you said you're not aware of Mr. Sussmann or the allegations

8    in the indictment, you've read about the Steele dossier and

9    other aspects of the 2016 election.  And you said you've

10   discussed this case -- you said you discussed this case with

11   various friends.  Do you mean you discussed those general

12   2016 allegations with various friends?

13             PROSPECTIVE JUROR:  Correct.

14             MR. KEILTY:  And what has been the tenor of those

15   discussions?

16             PROSPECTIVE JUROR:  I wouldn't say positive or

17   negative.  It was more curiosity, intrigue.

18             MR. KEILTY:  So there's going to be FBI agents who

19   will testify in this case.  There will be CIA people

20   testifying in this case.  Do you think you can be fair and

21   impartial and evaluate the evidence that those witnesses

22   bring in?

23             PROSPECTIVE JUROR:  I do.

24             MR. KEILTY:  But you don't think you can be fair

25   and impartial to the Government writ large, since you think

1    this is politically motivated?  Is that --

2              PROSPECTIVE JUROR:  I think that's accurate.

3              MR. KEILTY:  Thank you.  I appreciate it.

4              MR. BERKOWITZ:  Very briefly.

5              So it is important, sir -- and I'm Sean Berkowitz;

6    I represent Mr. Sussmann -- that both sides get a fair and

7    impartial juror.  And it sounds like you might not be able

8    to give the Government a fair trial.  Is that right?

9              PROSPECTIVE JUROR:  That is a possibility.  Yes,

10   sir.

11             MR. BERKOWITZ:  Nothing else, Judge.

12             THE COURT:  Thank you, sir.  You can step down.

13             (Thereupon, Prospective Juror No. 433 retired from

14   the courtroom and the following proceedings were had:)

15             MR. KEILTY:  You're going to be shocked, Judge, to

16   hear this, but we'd move to strike for cause.

17             THE COURT:  Motion granted.

18             THE COURTROOM DEPUTY:  Your Honor, Juror No. 517.

19             (Thereupon, Prospective Juror No. 517 entered the

20   courtroom and the following proceedings were had:)

21             THE COURT:  Good afternoon, ma'am.  How are you?

22             PROSPECTIVE JUROR:  Good afternoon.

23             THE COURT:  Feel free to take your mask off if

24   you're comfortable doing so.

25             So we've read your questionnaire and just have a

```
1    few followup questions.
2                You are closing on a condo on Thursday?
3            PROSPECTIVE JUROR:  No.
4            THE COURT:  I'm sorry.  I think I have the wrong
5    number.
6            PROSPECTIVE JUROR:  I'm 517.
7            THE COURT:  Hold on.  You are not closing on a
8    condo on Thursday.
9            PROSPECTIVE JUROR:  No.
10           THE COURT:  You work for the Smithsonian, for the
11   Museum of American History?
12           PROSPECTIVE JUROR:  I do, yes.
13           THE COURT:  And tell us what you do.
14           PROSPECTIVE JUROR:  I'm a museum specialist in the
15   numismatics department, which is the coins, currencies,
16   metals.
17           THE COURT:  What a cool job.
18           PROSPECTIVE JUROR:  I agree.  Thank you.
19           THE COURT:  How long have you been doing that?
20           PROSPECTIVE JUROR:  Almost seven years.  About
21   seven years.
22           THE COURT:  And you had not heard anything about
23   this case before last week.  Is that right?
24           PROSPECTIVE JUROR:  No.  I feel like I should say
25   I saw a headline.  I did not read an article.  But just like
```

```
 1        in the last couple days.
 2               THE COURT:  When I described to you what the case
 3        was about, what popped into your head, if anything?
 4               PROSPECTIVE JUROR:  Last week?
 5               THE COURT:  Yes.
 6               PROSPECTIVE JUROR:  I mean, I remembered that the
 7        2016 election was kind of a mess and there was a lot of
 8        shenanigans happening.  That's what I thought of.
 9               THE COURT:  But in terms of serving on the jury.
10        Excited?  Not excited?
11               PROSPECTIVE JUROR:  I have not been called for a
12        jury before, so somewhat exciting, but also not.
13               THE COURT:  Do you have any concerns about being
14        on the jury?
15               PROSPECTIVE JUROR:  I don't think so.
16               THE COURT:  Counsel?
17               MR. KEILTY:  Good afternoon.  How are you?
18               PROSPECTIVE JUROR:  Good.  Thanks.
19               MR. KEILTY:  Thanks for your service today.
20               Just a couple of questions about some of the
21        answers on your questionnaire.  You said you might have some
22        issues with redactions?
23               PROSPECTIVE JUROR:  Yeah.
24               MR. KEILTY:  So there are going to be documents, I
25        believe, that are going to be redacted.  Just elaborate a
```

 1   little more on that issue for us.

 2          PROSPECTIVE JUROR:  Well, I guess I was kind of

 3   thinking, you know, we're already hearing like two sides of

 4   the story; and then if we're not getting all of the

 5   information, that might make it harder.  I don't know -- I

 6   mean, depending what we still are -- what information we're

 7   still getting, maybe that's not relevant.

 8          MR. KEILTY:  If the judge would instruct you to

 9   disregard those redactions, would you be able to do that?

10          PROSPECTIVE JUROR:  I could try, I guess.

11          MR. KEILTY:  Now, you talked about the 2016

12   election.  Obviously, people have very strong feelings about

13   both of the candidates.

14          PROSPECTIVE JUROR:  Yes.

15          MR. KEILTY:  You answered that you strongly

16   dislike Mr. Trump --

17          PROSPECTIVE JUROR:  And.

18          MR. KEILTY:  -- and that you are not sure you

19   could be impartial?

20          PROSPECTIVE JUROR:  Yeah; if this was someone on

21   his team or something.

22          MR. KEILTY:  So this is not -- neither Mr. Trump

23   nor Ms. Clinton are on trial here.  You'll hear -- but their

24   names will appear frequently and you'll hear about the

25   campaigns.

1    Even though you harbor some of these very strong

2    feelings, would you be able to evaluate the evidence in an

3    impartial manner?

4    PROSPECTIVE JUROR:  I think if it's not, like,

5    directly about Trump, then probably.

6    MR. KEILTY:  Well, I think part of the evidence

7    here might -- I don't want to get into it, but -- so

8    Mr. Trump's name is going to be involved here.  Could you be

9    impartial?

10    PROSPECTIVE JUROR:  I could try.  I could try,

11    yeah.  I don't know.

12    THE COURT:  Let me take a crack at this.

13    MR. KEILTY:  Thank you.

14    THE COURT:  As I understand it, part of the

15    Government's case will be that Mr. Sussmann sought a meeting

16    with the FBI as part of an effort to disseminate negative

17    information regarding the Trump Campaign on behalf of the

18    Clinton Campaign.

19    PROSPECTIVE JUROR:  Okay.

20    THE COURT:  I'm not saying that that happened or

21    that that didn't happen, but you may hear something about

22    it.

23    PROSPECTIVE JUROR:  Okay.

24    THE COURT:  As Mr. Keilty said, neither -- this

25    case is not about -- it's not an effort to relitigate the

```
1    2016 campaign.  Mr. Trump's not on trial and Ms. Clinton is
2    not on trial, nor their companies.  But the question is:
3    Given that set of facts, would you be able simply to assess
4    Mr. Sussmann's guilt or innocence based on the evidence
5    that's presented at trial?
6              PROSPECTIVE JUROR:  Based on what you said, yes.
7    I think I understand it better.  I could be impartial.
8              MR. KEILTY:  Great.  Thank you, Judge.  That was
9    much more artfully said than I did, my stammering up here.
10             Just one last question, ma'am.  You said one of
11   the issues that was bothersome to you is that large
12   companies are able to gather, like, data from various people
13   through the Internet or various other places.  Could you
14   just talk a little more about that, of why that's a concern?
15             PROSPECTIVE JUROR:  I don't know much about that,
16   like, detailed-wise.  But I just feel like there's a lot of
17   information about all of us out there all the time.  And
18   I -- like the number of targeted ads I get on Instagram are
19   just astounding.  So that kind of thing.
20             MR. KEILTY:  I anticipate in this trial there will
21   be some evidence of people gathering large amounts of what
22   some people might consider private data.  Would that be a
23   concern to you?  Would you still -- would you be able to be
24   fair and impartial if you had heard -- assuming that what
25   they were doing was legal?
```

1          PROSPECTIVE JUROR:  Assuming it was legal, I think

2     it would be fine.

3          MR. KEILTY:  Great.

4          Thank you, your Honor.

5          MR. BERKOWITZ:  Good afternoon.  I'm Sean

6     Berkowitz.  I represent Mr. Sussmann.  And we're all

7     interested in just making sure that you're able to serve as

8     a fair and impartial juror if you're chosen in this case.  I

9     wanted to follow up briefly on one area that Mr. Keilty did

10    not that had to do with redactions.

11         And like everybody, we're curious if there's a

12    document that shows something was taken out and you want to

13    know what's under there.  You indicated in your

14    questionnaire that if the judge instructed you what the law

15    was, you would follow it.  And I guess if the judge said,

16    "Do not speculate as to what's under there and only look at

17    what is there," because the judge determines these issues,

18    and "Don't hold it against either party," do you think you

19    could follow that instruction?

20         PROSPECTIVE JUROR:  I think so.  If -- yeah.  As

21    long as it doesn't feel like I'm missing a key part of

22    information, you know.  If the judge is saying don't worry

23    about it, then I think I could be okay with it.

24         MR. BERKOWITZ:  And you would listen to -- if he

25    would give you an instruction -- I don't know what it would

1      be because that's his job, of course -- but would tell you

2      what you could and couldn't do with it, you feel like you

3      can follow his instructions?

4                  PROSPECTIVE JUROR:  Uh-huh.

5                  MR. BERKOWITZ:  Yes?

6                  PROSPECTIVE JUROR:  Yes.  I'm a rule-follower,

7      generally.  So...

8                  MR. BERKOWITZ:  Thank you.

9                  THE COURT:  Let me put it this way:  A trial is

10     not like a debate.  Right?  The only evidence that's

11     presented is the evidence that the Court allows to be

12     presented that's consistent with the Rules of Evidence.  So

13     the jury doesn't hear everything that the parties may want

14     to bring forward.

15                 PROSPECTIVE JUROR:  Okay.

16                 THE COURT:  And the same is -- you see that with

17     redactions.  The information might be completely irrelevant

18     to the charges; it might be duplicative of other information

19     or for some other reason it's not allowed to be presented to

20     the jury.  And I will instruct the jury that they are not to

21     speculate as to what's behind those redactions and that

22     there is a reason consistent with the rules why the

23     information is redacted.

24                 Would you have trouble following that instruction?

25                 PROSPECTIVE JUROR:  No.  That's fine.

```
1                    THE COURT:  Thank you.

2                    PROSPECTIVE JUROR:  Thank you.

3                    MR. KEILTY:  Judge, if I could ask one followup to

4       that.

5                    THE COURT:  Sure.

6                    MR. KEILTY:  So you wouldn't have a problem if in

7       this case you felt the Government proved its case beyond a

8       reasonable doubt -- you wouldn't hold it against the

9       Government that there are -- you might have lingering doubts

10      of what's under those redactions if the Government had

11      proved its case beyond a reasonable doubt.  Is that correct?

12                   PROSPECTIVE JUROR:  Yeah.  If they've separately

13      proven it, no worries.

14                   THE COURT:  Thank you very much.  And sorry about

15      that condo.

16                   PROSPECTIVE JUROR:  I wish it was me.

17                   (Thereupon, Prospective Juror No. 517 retired from

18      the courtroom and the following proceedings were had:)

19                   THE COURT:  Any challenge?

20                   MR. KEILTY:  No, your Honor.

21                   MR. BERKOWITZ:  No, your Honor.

22                   THE COURT:  517 is qualified.

23                   THE COURTROOM DEPUTY:  Juror No. 874.

24                   (Thereupon, Prospective Juror No. 874 entered the

25      courtroom and the following proceedings were had:)
```

```
 1                    THE COURT:  Good afternoon, sir.

 2                    PROSPECTIVE JUROR:  Good afternoon.

 3                    THE COURT:  How are you?

 4                    PROSPECTIVE JUROR:  Good.  How are you?

 5                    THE COURT:  You can take your mask off if you

 6          like.

 7                    PROSPECTIVE JUROR:  All right.

 8                    THE COURT:  So your wife is scheduled to give

 9          birth a week from tomorrow?

10                    PROSPECTIVE JUROR:  That's right.

11                    THE COURT:  And you don't want to be there?

12                    PROSPECTIVE JUROR:  I mean, I'd like to be there.

13                    THE COURT:  I'm sure your wife would like you to

14          be there, too.

15                    PROSPECTIVE JUROR:  Yes.  Yeah.

16                    THE COURT:  You can step down, sir.

17                    (Thereupon, Prospective Juror No. 874 retired from

18          the courtroom and the following proceedings were had:)

19                    THE COURT:  The Court will strike 874 for

20          hardship, even though he did not view it as a hardship.

21                    (Laughter.)

22                    THE COURTROOM DEPUTY:  Your Honor, Juror No. 723.

23                    (Thereupon, Prospective Juror No. 723 entered the

24          courtroom and the following proceedings were had:)

25                    THE COURT:  Good afternoon, ma'am.
```

```
 1                  PROSPECTIVE JUROR:  Good afternoon.
 2                  THE COURT:  Please have a seat.
 3                  PROSPECTIVE JUROR:  Thank you.
 4                  THE COURT:  And you can take your mask off if
 5       you're comfortable doing so.
 6                  PROSPECTIVE JUROR:  Okay.
 7                  THE COURT:  I just have a few questions for you.
 8                  We've reviewed your questionnaire.  And in one of
 9       the answers, you said as a Muslim you might not be able to
10       pass judgment on someone?
11                  PROSPECTIVE JUROR:  Yes.
12                  THE COURT:  Is that right?
13                  PROSPECTIVE JUROR:  Yes.
14                  THE COURT:  So that would make it hard for you to
15       be a juror in this trial.  Isn't that correct?
16                  PROSPECTIVE JUROR:  Yes.
17                  THE COURT:  If you could just step down.  Thank
18       you.
19                  PROSPECTIVE JUROR:  Thank you.  You're welcome.
20                  (Thereupon, Prospective Juror No. 723 retired from
21       the courtroom and the following proceedings were had:)
22                  THE COURTROOM DEPUTY:  Your Honor, Juror No. 764
23       [sic].
24                  (Thereupon, Prospective Juror No. 474 entered the
25       courtroom and the following proceedings were had:)
```

```
 1                    THE COURT:  I'm sorry, Ms. Jenkins.  Did we skip
 2        474?
 3                    THE COURTROOM DEPUTY:  474?
 4                    THE COURT:  Are you 474?
 5                    PROSPECTIVE JUROR:  Yes.
 6                    THE COURT:  Okay.  So we're all on the same page.
 7                    Thank you very much for your service.  You can
 8        slip your mask off if you're comfortable doing so.
 9                    PROSPECTIVE JUROR:  Okay.
10                    THE COURT:  We've reviewed your questionnaire and
11        have just a followup question or two.
12                    You have a funeral to attend on Wednesday; is that
13        correct?
14                    PROSPECTIVE JUROR:  Yes; in Florida.
15                    THE COURT:  And you've purchased the ticket?
16                    PROSPECTIVE JUROR:  Yes.
17                    THE COURT:  I take it you want to go?
18                    PROSPECTIVE JUROR:  Pardon me?
19                    THE COURT:  You'd like to go?
20                    PROSPECTIVE JUROR:  I would.  Very much so.
21                    THE COURT:  You can step down.
22                    PROSPECTIVE JUROR:  Okay.  Thank you.
23                    (Thereupon, Prospective Juror No. 474 retired from
24        the courtroom and the following proceedings were had:)
25                    THE COURT:  The Court will strike 474 for cause
```

1     for her hardship.  And I don't think I struck 723, but she's

2     struck as well, the one before.

3                 THE COURTROOM DEPUTY:  Your Honor, juror number --

4                 THE COURT:  Hold on one second.  We're changing

5     books here.

6                 Okay, Lauren.

7                 THE COURTROOM DEPUTY:  Your Honor, calling Juror

8     No. 764.

9                 (Thereupon, Prospective Juror No. 764 entered the

10    courtroom and the following proceedings were had:)

11                THE COURT:  Good afternoon, ma'am.

12                PROSPECTIVE JUROR:  Hello.

13                THE COURT:  How are you?

14                PROSPECTIVE JUROR:  Good.  How are you?

15                THE COURT:  Feel free to take your mask off if you

16    like.

17                Thank you for your service.  We've reviewed your

18    questionnaire and just have a few followup questions for

19    you.  All right?

20                You work for the Council on Foreign Relations; is

21    that correct?

22                PROSPECTIVE JUROR:  Yes.

23                THE COURT:  Tell us what you do for them.

24                PROSPECTIVE JUROR:  I'm a human resources

25    coordinator.  I hire the interns and also full-time staff.

```
1              THE COURT:  So do you get involved on the policy
2       side at all?
3              PROSPECTIVE JUROR:  No.
4              THE COURT:  And before last week, you had not
5       heard about this case.  Is that right?
6              PROSPECTIVE JUROR:  No.
7              THE COURT:  So when I described the case in the
8       big courtroom, what was the first thing that popped into
9       your mind about either the case or being a juror on the
10      case?
11             PROSPECTIVE JUROR:  I was surprised because I
12      didn't know that it would be high-level and that I should
13      avoid looking at it in the news.  But I'm happy to serve if
14      that's what's required.
15             THE COURT:  Counsel?
16             MR. KEILTY:  Good afternoon.  How are you?
17             PROSPECTIVE JUROR:  Good.
18             MR. KEILTY:  Thanks for your service today.
19             In the questionnaire, you mentioned that your
20      grandfather was -- worked for the CIA at one time?
21             PROSPECTIVE JUROR:  Yes.
22             MR. KEILTY:  Do you have any -- do you know
23      whether that was a good experience, a bad experience for
24      him?
25             PROSPECTIVE JUROR:  A good experience.  He always
```

```
 1    spoke highly of the CIA.

 2              MR. KEILTY:  So if we have witnesses from the CIA

 3    testifying in this trial, you'd have no issues being fair

 4    and impartial?

 5              PROSPECTIVE JUROR:  No.

 6              MR. KEILTY:  Either way, to either the Government

 7    or the defense?

 8              PROSPECTIVE JUROR:  No.

 9              MR. KEILTY:  You also mentioned your father worked

10    for Senator Corker.  What exactly did he do generally?

11              PROSPECTIVE JUROR:  So he was a senior staffer on

12    the Senate Foreign Relations Committee, working primarily in

13    Europe and South and Central America.

14              MR. KEILTY:  Great.  That's all I have.  Thanks

15    very much.

16              PROSPECTIVE JUROR:  Absolutely.

17              MR. BERKOWITZ:  Good afternoon.  How are you

18    doing?

19              PROSPECTIVE JUROR:  Good.  How are you?

20              MR. BERKOWITZ:  Good.

21              My name is Sean Berkowitz, and I represent Michael

22    Sussmann in this case.  And this whole process is designed

23    to ensure that whoever is ultimately lucky enough to be

24    selected to serve on a jury is fair and impartial.  And I

25    just had a couple of questions based on your questionnaire.
```

1          You indicated something about a meeting in the

2     Oval Office when a gentleman, Josh Holt, was released.  Can

3     you give us just a little bit of background on that so I can

4     understand what that's about?

5          PROSPECTIVE JUROR:  Yes.  So my father, when he

6     worked for Senator Corker, was involved in helping to get

7     Josh Holt released from prison.  My understanding, he was

8     imprisoned because somebody had planted weapons while he was

9     in Venezuela.  And my dad helped to bring him home.  And

10    upon his return home, he went to the White House, the Oval

11    Office.  My father was with him and met Trump in the Oval

12    Office.

13          MR. BERKOWITZ:  And your father worked for Senator

14    Corker.  And I don't need to inquire what was discussed at

15    the dinner table when you were growing up.  But do you

16    understand that although this case may have some political

17    aspects to it, your job if you were to serve as a juror

18    would be to evaluate the evidence as it's presented in this

19    case and not bring any preconceived notions or biases from

20    outside to the table?

21          PROSPECTIVE JUROR:  Yes.  Absolutely.  It was

22    always impressed upon me growing up that, you know, there

23    are good people, bad people and it's not necessarily a

24    partisan issues, but sort of making sure that you're

25    listening to all sides.

```
 1              MR. BERKOWITZ:  Can you think of any reason why
 2     you wouldn't be able to be a fair and impartial juror and if
 3     the Government met its burden, rule in their favor and if
 4     they didn't meet their burden, rule in the favor of
 5     Mr. Sussmann?
 6              PROSPECTIVE JUROR:  No.
 7              MR. BERKOWITZ:  Thank you.
 8              THE COURT:  Thank you, ma'am.  You can step down.
 9              PROSPECTIVE JUROR:  Thank you.
10              (Thereupon, Prospective Juror No. 764 retired from
11     the courtroom and the following proceedings were had:)
12              MR. KEILTY:  Nothing, your Honor.
13              MR. BERKOWITZ:  No, your Honor.
14              THE COURT:  764 is qualified.
15              THE COURTROOM DEPUTY:  Your Honor, Juror No. 337.
16              (Thereupon, Prospective Juror No. 337 entered the
17     courtroom and the following proceedings were had:)
18              THE COURT:  Step right up, sir.  How are you this
19     afternoon?
20              PROSPECTIVE JUROR:  Good.
21              THE COURT:  Feel free to take your mask off if
22     you're comfortable, and speak into the mic.  We've reviewed
23     your questionnaire and just have a couple of followup
24     questions.
25              It says you're a director at BDO.  Tell us a
```

1    little more specifically about what you do.

2              PROSPECTIVE JUROR:  So I work with the

3    not-for-profit industry within D.C. on the advisory side.

4              THE COURT:  Do you have any government clients?

5              PROSPECTIVE JUROR:  A couple, whether it be

6    government contractors, not-for-profit, assistance or that

7    get government funding.

8              THE COURT:  Which agencies are your clients?

9              PROSPECTIVE JUROR:  So it's DAI, Abt Associates.

10   It could be -- I'm trying to think of a couple others --

11   InterHealth, HHI 360, a lot of health organizations that get

12   federal funding.

13             THE COURT:  But no government contracts directly?

14             PROSPECTIVE JUROR:  They may get government

15   contracts.  It may be part of their portfolio.

16             THE COURT:  And you had not heard about this case

17   before last week; is that right?

18             PROSPECTIVE JUROR:  No.

19             THE COURT:  When I described the case to you, any

20   initial impressions about the case itself or about the

21   possibility of being a juror?

22             PROSPECTIVE JUROR:  Nothing comes to mind.

23             THE COURT:  And you've never served as a juror

24   before; is that right?

25             PROSPECTIVE JUROR:  That's right.

```
 1                    THE COURT:  Counsel?
 2                    MR. KEILTY:  Thank you, your Honor.
 3               Good afternoon.  How are you?
 4               PROSPECTIVE JUROR:  Good.
 5                    MR. KEILTY:  Thank you for serving today.
 6               Just a couple of questions.  Understanding the
 7    2016 election, a lot of people have very strong views,
 8    whether it's one candidate or the other.  Do you hold any --
 9    and again, neither of those candidates are on trial here.
10    Mr. Sussmann is on trial.  But do you have any particularly
11    strong views that wouldn't allow you to evaluate the
12    evidence in this matter in a fair and impartial way?
13                    PROSPECTIVE JUROR:  No.  I have strong views, but
14    I don't think it would --
15                    MR. KEILTY:  I'm sorry?
16                    PROSPECTIVE JUROR:  It wouldn't impair.  No.
17                    MR. KEILTY:  Great.
18               Is there any other issue that's maybe not in a
19    question in the questionnaire that you can think of that
20    might impair your ability to be a fair and impartial juror
21    in this case?
22                    PROSPECTIVE JUROR:  No.
23                    MR. KEILTY:  Great.  Thank you.
24                    THE COURT:  You're a naturalized citizen?
25                    PROSPECTIVE JUROR:  Yes.
```

```
 1              THE COURT:  How long have you been naturalized?

 2              PROSPECTIVE JUROR:  It's been seven years.

 3              MR. BERKOWITZ:  Just briefly.  Thank you very much

 4    for your service and your patience with all of us today.  My

 5    name is Sean Berkowitz and I represent Mr. Sussmann, who's

 6    at the table there.

 7              Our job as lawyers, everybody in this courtroom,

 8    is to try and make sure that we are seating a jury of people

 9    who will be fair and impartial and listen to the case that's

10    presented here.  And it sounds like you feel you'd be able

11    to do that?

12              PROSPECTIVE JUROR:  Yes.

13              MR. BERKOWITZ:  Do you have any concerns based on

14    knowledge of issues outside of the court that would prevent

15    you from being a fair and impartial juror?

16              PROSPECTIVE JUROR:  No.

17              MR. BERKOWITZ:  And you mentioned, I think, that

18    you work at BDO and serve not-for-profits?

19              PROSPECTIVE JUROR:  Primarily.

20              MR. BERKOWITZ:  How long have you been in that

21    line of work?

22              PROSPECTIVE JUROR:  Four and a half years.

23              MR. BERKOWITZ:  What did you do before that?

24              PROSPECTIVE JUROR:  I worked in international

25    development with nonprofits.
```

```
 1              MR. BERKOWITZ:  I don't have anything further.  I
 2     appreciate your time.
 3              PROSPECTIVE JUROR:  Okay.
 4              THE COURT:  Thank you, sir.  You can step down.
 5              PROSPECTIVE JUROR:  Thanks.
 6              (Thereupon, Prospective Juror No. 337 retired from
 7     the courtroom and the following proceedings were had:)
 8              THE COURT:  Any challenge?
 9              MR. KEILTY:  No, your Honor.
10              MR. BERKOWITZ:  No, your Honor.
11              THE COURT:  337 is qualified.
12              THE COURTROOM DEPUTY:  Your Honor, Juror No. 409.
13              (Thereupon, Prospective Juror No. 409 entered the
14     courtroom and the following proceedings were had:)
15              THE COURT:  Step right up, sir.  Good afternoon.
16              PROSPECTIVE JUROR:  Good afternoon.
17              THE COURT:  You can feel free to take your mask
18     off if you like.
19              We've read your questionnaire and just have a
20     couple followups.  Let's start with this trip that you have
21     scheduled starting, I guess, Wednesday.
22              PROSPECTIVE JUROR:  Yes.
23              THE COURT:  Tell me about that.
24              PROSPECTIVE JUROR:  Four friends of mine planned
25     this last year.  It's kind of a special get-together,
```

```
 1     Thursday, Friday, Saturday, Sunday.

 2              THE COURT:  Did you disclose that when you

 3     responded to your summons?

 4              PROSPECTIVE JUROR:  Yes, I did.

 5              THE COURT:  I take it you want to go on that trip?

 6              PROSPECTIVE JUROR:  Yes, please.

 7              THE COURT:  You can step out.

 8              PROSPECTIVE JUROR:  Thank you.

 9              (Thereupon, Prospective Juror No. 409 retired from

10     the courtroom and the following proceedings were had:)

11              THE COURT:  The Court will strike 409 for cause

12     based on his conflict.

13              THE COURTROOM DEPUTY:  Your Honor, Juror No. 984.

14              (Thereupon, Prospective Juror No. 984 entered the

15     courtroom and the following proceedings were had:)

16              THE COURT:  Good afternoon, ma'am.

17              PROSPECTIVE JUROR:  Hello.

18              THE COURT:  Thank you for your service.  Feel free

19     to take your mask off if you like.

20              So you are a project manager for an engineering

21     firm; is that correct?

22              PROSPECTIVE JUROR:  Yes.

23              THE COURT:  And your primary client is a federal

24     agency.  Can you say which agency?

25              PROSPECTIVE JUROR:  That is the Social Security
```

```
 1    Administration.

 2              THE COURT:  And your significant other is an

 3    engineer as well?

 4              PROSPECTIVE JUROR:  No.  He works for a lobbying

 5    firm.

 6              THE COURT:  Oh, I'm sorry.

 7              PROSPECTIVE JUROR:  A trade association.

 8              THE COURT:  And which one?

 9              PROSPECTIVE JUROR:  The American Bankruptcy

10    Institute for bankruptcy lawyers.

11              THE COURT:  And before your husband started

12    working for the trade association, did he have a political

13    background?

14              PROSPECTIVE JUROR:  Yes.

15              THE COURT:  Did he work on the Hill or --

16              PROSPECTIVE JUROR:  He worked for Hillary

17    Clinton's campaign in 2008.

18              THE COURT:  Now, obviously, the Clinton Campaign

19    or Hillary Clinton will not be on trial in this case, but

20    you will hear the campaign's name mentioned.

21              In 2008?  Is that right?  Not 2016?

22              PROSPECTIVE JUROR:  No.

23              THE COURT:  Mr. Sussmann has been charged, as I

24    said on Wednesday, with making a false statement to a

25    government agency, being the FBI.  But the Government will
```

1    undoubtedly argue in this case that he did not disclose that

2    he was representing the Clinton Campaign if, in fact, he was

3    or not.  So the Clinton Campaign will play a role in this

4    case, but obviously is not directly on trial.

5         Would your husband's affiliation with the campaign

6    back in '08 affect your ability to assess one way or the

7    other that allegation?

8         PROSPECTIVE JUROR:  No.

9         THE COURT:  Are you sure about that?

10        PROSPECTIVE JUROR:  Yes.

11        THE COURT:  Had you heard about the case before?

12        PROSPECTIVE JUROR:  I have heard of Mr. Sussmann

13    in the news.  I do not remember everything that has to do

14    with that in the news.

15        THE COURT:  So no details about the case?

16        PROSPECTIVE JUROR:  No.

17        THE COURT:  Counsel?

18        MR. KEILTY:  Good afternoon.  How are you?

19        PROSPECTIVE JUROR:  Good.

20        MR. KEILTY:  Thanks for your service today.  I

21    appreciate it.

22        So the judge asked you about your partner's 2008

23    work with the Hillary Clinton Campaign, and you said you

24    could be fair and impartial.  With respect to 2016, it's not

25    going to shock you --

1              THE COURT:  I'm sorry.  Just to be clear, 2012.

2      Right?

3              PROSPECTIVE JUROR:  Sorry.  I wrote that wrong.

4      It was 2008.  I wrote down 2012.

5              THE COURT:  There wasn't one in 2012.

6              PROSPECTIVE JUROR:  No, there wasn't.  I didn't

7      put that down correctly.  Sorry.

8              MR. KEILTY:  With respect to 2016, you won't be

9      shocked, right, that people have strong opinions about both

10     candidates in 2016.  Is there anything about either one of

11     those candidates, being Mr. Trump or Mrs. Clinton, that

12     wouldn't allow you to be a fair and impartial juror here,

13     recognizing that neither one of those people are on trial?

14             PROSPECTIVE JUROR:  Sorry.  Can you repeat that?

15             MR. KEILTY:  Sure.

16             So people have strong opinions about Mr. Trump and

17     Mrs. Clinton.  You may have a strong opinion about one or

18     both of them.

19             Is there anything about those opinions in 2016

20     which would not allow you to be a fair and impartial juror

21     here, recognizing that neither Mrs. Clinton nor Mr. Trump

22     are on trial, but the Defendant?

23             PROSPECTIVE JUROR:  No.

24             MR. KEILTY:  Thank you.

25             MR. BERKOWITZ:  Good afternoon.  I'm Sean

1    Berkowitz.  I represent Mr. Sussmann, who is the Defendant

2    here.

3              I think, as with everyone, we want to make sure

4    that whoever is ultimately selected for the jury is fair and

5    impartial and isn't coming with any preconceived notion.  So

6    I'll just put it to you directly:  Do you believe that you

7    would be able to listen to the evidence and all of the

8    evidence in a fair and impartial and objective way before

9    rendering a verdict?

10             PROSPECTIVE JUROR:  Yes.

11             MR. BERKOWITZ:  Thank you.

12             THE COURT:  Nothing else.  Thanks.

13             PROSPECTIVE JUROR:  So we don't expect this to go

14   until after the first weekend or until the first weekend of

15   June.  Correct?

16             THE COURT:  So the parties estimate that the case

17   will last throughout next week.  And then once the jury

18   begins to deliberate, it will be up to the jury to decide

19   how long to deliberate.  And we have no control over that.

20   So that's the best I can tell you.

21             PROSPECTIVE JUROR:  Okay.  Thank you.

22             (Thereupon, Prospective Juror No. 984 retired from

23   the courtroom and the following proceedings were had:)

24             THE COURT:  Counsel?

25             MR. KEILTY:  No objection, your Honor.

```
1              MR. BERKOWITZ:  No objection, your Honor.

2              THE COURT:  984 is qualified.

3              THE COURTROOM DEPUTY:  Your Honor, Juror No. 360.

4              (Thereupon, Prospective Juror No. 360 entered the

5     courtroom and the following proceedings were had:)

6              THE COURT:  Good afternoon, sir.

7              PROSPECTIVE JUROR:  Good afternoon.

8              THE COURT:  How are you?

9              PROSPECTIVE JUROR:  Very well.

10             THE COURT:  Feel free to slip your mask off if you

11    like.

12             PROSPECTIVE JUROR:  Okay.

13             THE COURT:  We've reviewed your questionnaire and

14    just have a few followup questions.  You work at the State

15    Department; is that right?

16             PROSPECTIVE JUROR:  Yes, sir.

17             THE COURT:  And you are career, not political?

18             PROSPECTIVE JUROR:  Correct.  Civil servant.

19             THE COURT:  Did you work there when Mrs. Clinton

20    was secretary of state?

21             PROSPECTIVE JUROR:  Yes, I did.

22             THE COURT:  Any interactions with her or her

23    office?

24             PROSPECTIVE JUROR:  No.

25             THE COURT:  What does your work entail?
```

```
1              PROSPECTIVE JUROR:  I work in the part of the
2     State Department that deals with conflict-affected countries
3     like Iraq, Afghanistan, Sudan.
4              THE COURT:  And you had heard of the special
5     counsel's investigation prior to last week, but none of the
6     details related to this case.  Is that right?
7              PROSPECTIVE JUROR:  Correct.  I had heard of the
8     investigation, but no parties named in it.
9              THE COURT:  Is there anything about having worked
10    at the State Department while Secretary Clinton was there or
11    otherwise that would make you hesitate to serve as a juror
12    in this case?
13             PROSPECTIVE JUROR:  No, sir.
14             THE COURT:  Counsel?
15             MR. KEILTY:  Good afternoon.  How are you?
16             PROSPECTIVE JUROR:  Good afternoon.  Thanks.
17    Well.
18             MR. KEILTY:  Thanks for your service today.
19             Just a couple of questions.  You mentioned that
20    you had heard of the broader special counsel investigation,
21    sometimes known as the Durham investigation.  Is there
22    anything about this investigation that would make you not be
23    a fair and impartial juror?
24             PROSPECTIVE JUROR:  No.
25             MR. KEILTY:  And you mentioned in the
```

1   questionnaire, sir, that your wife is involved with national

2   security groups.  Could you just expand on that a little

3   more?

4            PROSPECTIVE JUROR:  Yeah.  I was trying to think

5   of the associations.  And there are a few groups that are

6   geared towards advancing women working in national security,

7   so helping to mentor them and to help them understand about

8   the field.

9            MR. KEILTY:  Is there anything else after filling

10   out this questionnaire that you want to tell the Court or

11   the parties?  Any reason why you couldn't be a fair and

12   impartial juror in this case?

13            PROSPECTIVE JUROR:  No.

14            MR. KEILTY:  Thank you very much.

15            MR. BERKOWITZ:  Good afternoon.  My name is Sean

16   Berkowitz, and I represent Mr. Sussmann.  I just have a

17   couple of follow-up questions for you based on your

18   questionnaire.

19            You indicated, I believe, that you know of the

20   broader Durham investigation?

21            PROSPECTIVE JUROR:  Yes.

22            MR. BERKOWITZ:  Can you just expand on what it is

23   you know?

24            PROSPECTIVE JUROR:  All I know, it was set in

25   place to make sure that all the information that was given

1    to the FBI was, in fact, true and that there was no -- there

2    was nothing illegal about the information that was given to

3    the FBI or to any part of the U.S. Government.

4         MR. BERKOWITZ:  And do you have any views,

5    positive or negative, about the overall Durham

6    investigation?

7         PROSPECTIVE JUROR:  No.

8         MR. BERKOWITZ:  And you don't think the knowledge

9    that you have about that would cause you one way or the

10   other to be -- to favor either the prosecution or the

11   defense in this case?

12        PROSPECTIVE JUROR:  No.

13        MR. BERKOWITZ:  Just give me a little more detail,

14   sir, about what you do at the Department of State, just so I

15   can make sure I understand.

16        PROSPECTIVE JUROR:  Sure.  So I have been with

17   them since 2007.  I'm in an office that focuses on countries

18   that either are at risk of conflict or have gone into

19   conflict.  I deployed to Afghanistan in 2008 and 2009 to

20   work alongside our U.S. military to help bring together the

21   civilian parts, the diplomats, the development and the

22   military side in support of U.S. national interests.  I've

23   led teams working on similar issues for Sudan, South Sudan.

24        And so my job is basically to -- part of the

25   national security architecture.  I am an office director, so

1    I oversee about 15 folks, work very closely with the U.S.

2    military and our development officers and international

3    partners.

4              MR. BERKOWITZ:  And is that the reason you have

5    some level of security clearance?

6              PROSPECTIVE JUROR:  Correct.  I possess the

7    security clearance since 2006 because of the sensitive

8    information that I have access to.

9              MR. BERKOWITZ:  Thank you for your service today

10   and more broadly, sir.

11             PROSPECTIVE JUROR:  Thank you.

12             THE COURT:  Thank you, sir.  You can step down.

13             (Thereupon, Prospective Juror No. 360 retired from

14   the courtroom and the following proceedings were had:)

15             MR. KEILTY:  No objection, your Honor.

16             MR. BERKOWITZ:  No objection.

17             THE COURT:  360 is qualified.

18             THE COURTROOM DEPUTY:  Your Honor, Juror No. 477.

19             (Thereupon, Prospective Juror No. 477 entered the

20   courtroom and the following proceedings were had:)

21             THE COURT:  Good afternoon, ma'am.

22             PROSPECTIVE JUROR:  Good afternoon.

23             THE COURT:  Please have a seat.  Feel free to slip

24   your mask off if you're comfortable.

25             Thank you for your service.  We have reviewed your

```
1    questionnaire and just have a few followup questions for

2    you.  Okay?

3                PROSPECTIVE JUROR:  Okay.

4                THE COURT:  First of all, your birthday is on

5    Wednesday.

6                PROSPECTIVE JUROR:  Correct.

7                THE COURT:  Now, I know that you've made plans to

8    go to a museum.  But if you had to spend your birthday with

9    us, would you hold that against anybody?

10               PROSPECTIVE JUROR:  Yes, because I paid a lot of

11   money to go to this exhibit.

12               THE COURT:  And what time is your appointment at

13   the exhibit?

14               PROSPECTIVE JUROR:  12:00.

15               THE COURT:  And how long would you be there?

16               PROSPECTIVE JUROR:  Two hours is what they're

17   saying on their website.  However, some of the reviews have

18   said as many as four hours they've been there.

19               THE COURT:  Well, I'm going to let you celebrate

20   your birthday on Wednesday.  All right?

21               PROSPECTIVE JUROR:  Thank you.

22               THE COURT:  You can step down.

23               (Thereupon, Prospective Juror No. 477 retired from

24   the courtroom and the following proceedings were had:)

25               THE COURT:  The Court will strike 477 for cause
```

1     based on hardship.

2                    THE COURTROOM DEPUTY:  Your Honor, Juror No. 975.

3                    (Thereupon, Prospective Juror No. 975 entered the

4     courtroom and the following proceedings were had:)

5                    THE COURT:  Step right up, sir.  Good afternoon.

6     And thank you for your patience.  Feel free to slip off your

7     mask if you'd like.

8                    PROSPECTIVE JUROR:  Sure.  Thank you.  Good

9     afternoon.

10                    THE COURT:  So we've reviewed your questionnaire

11     and just have a few followup questions for you.  It says

12     you're a federal lobbyist.  What sorts of issues or

13     industries do you lobby on behalf of?

14                    PROSPECTIVE JUROR:  Generally, energy,

15     environmental, natural resource and, just for fun,

16     healthcare.

17                    THE COURT:  And I'm sorry.  Had you heard of this

18     case before you came to court last week?

19                    PROSPECTIVE JUROR:  I have not, no.

20                    THE COURT:  And when I described the case, did you

21     have any initial impressions about the case itself or the

22     possibility of serving on this jury?

23                    PROSPECTIVE JUROR:  No, I did not.

24                    THE COURT:  And you work -- you're not a lawyer,

25     but you work at a law firm.  Is that right?

1          PROSPECTIVE JUROR:  That's right.  I'm what we

2     call a principal.  So I'm a non-attorney partner in the

3     firm.

4          THE COURT:  There may be testimony and other

5     evidence at this trial about things like law firm billing

6     records and the formation of attorney-client relationships.

7     Would you have any trouble sort of putting your knowledge of

8     how that might be done at your law firm aside and judging

9     the evidence in this case?

10         PROSPECTIVE JUROR:  I would not have a problem

11    with that.  I mean, that is background knowledge that I

12    have, having worked there for almost 22 years.  But I

13    certainly would look at the case based on the facts.

14         THE COURT:  Counsel?

15         MR. KEILTY:  Good afternoon.  How are you?

16         PROSPECTIVE JUROR:  Doing well.  How are you?

17         MR. KEILTY:  Hanging in there.  Thanks for your

18    service.  Just a couple of questions.

19         Is there anything about -- so part of this case is

20    going to focus on the 2016 election.  I understand that a

21    lot of people have very strong feelings about the two

22    candidates who ran in that race.  Is there anything about

23    either one of those candidates -- because they're not on

24    trial here, but, for example, the Clinton Campaign and

25    Mr. Trump's name will come up quite frequently.  Is there

1    anything about either one of those entities that wouldn't
2    allow you to be a fair and impartial juror here?
3              PROSPECTIVE JUROR:  No.
4              MR. KEILTY:  Okay.  You listed that you interned
5    for Senator D'Amato.
6              PROSPECTIVE JUROR:  I did.
7              MR. KEILTY:  Was that in college or what was that?
8              PROSPECTIVE JUROR:  That was -- yes.  It was
9    during college.
10             MR. KEILTY:  And generally what were you doing for
11   Senator D'Amato?
12             PROSPECTIVE JUROR:  I started answering phones in
13   his Mid Manhattan office, which was a fascinating first job,
14   and then I was doing some research when I came back to D.C.
15   and worked in his Capitol Hill office.  It was related to
16   recovering personal items of Holocaust families and getting
17   those items back to the families, the surviving family
18   members.
19             MR. KEILTY:  Interesting.
20             Just generally, since you filled out the
21   questionnaire, is there anything you thought of that would
22   kind of get in the way of you being a fair and impartial
23   juror in this trial?
24             PROSPECTIVE JUROR:  No.  I don't think so.
25             MR. KEILTY:  Thanks very much.  I appreciate it.

```
 1              PROSPECTIVE JUROR:  Sure.

 2              THE COURT:  Let me ask you one question before

 3    Mr. Berkowitz.

 4              You mentioned that a family member pled guilty to

 5    a fraud count?

 6              PROSPECTIVE JUROR:  Yes.  Wire fraud.

 7              THE COURT:  Is there anything about that

 8    experience or the relationship with that family member that

 9    would make you hesitate to get involved in a criminal case

10    like this?

11              PROSPECTIVE JUROR:  No.  And I probably should

12    have put in my answer that I am not close with this family

13    member.  But I wanted to be honest on the form and make sure

14    that you were aware of that particular situation.

15              THE COURT:  And to the extent that that family

16    member was prosecuted by federal law enforcement and

17    prosecutors like these folks, do you hold that against them?

18              PROSPECTIVE JUROR:  No, I don't.  Again, I was --

19    I'm aware of the situation.  I am not close to it.  But I

20    just wanted to be completely honest in my response.

21              MR. BERKOWITZ:  Good afternoon.

22              PROSPECTIVE JUROR:  Good afternoon.

23              MR. BERKOWITZ:  I'm Sean Berkowitz, and I

24    represent Mr. Sussmann in this matter.  Our job collectively

25    here is to make sure that we seat a fair and impartial jury.
```

1   And I appreciate you taking the time to fill out your

2   questionnaire.  I just had a couple of followup questions on

3   that.

4            As a lobbyist, do you -- it sounds like a whole

5   broad spectrum of areas from the environment to healthcare.

6   Do you lobby any particular political party or is your

7   lobbying across the aisle, so to speak?

8            PROSPECTIVE JUROR:  No.  It's across the aisle.

9   I've lobbied members of Congress and their staff on both

10  sides of the aisle as well as administrations that were

11  being led by folks on both sides of the aisle.

12           MR. BERKOWITZ:  I take it that the PAC, or

13  political action committee, of the firm that you manage, you

14  similarly allocate funds across the aisle without a

15  particular focus on a party.  Is that fair or is it

16  different?

17           PROSPECTIVE JUROR:  That is correct.  But I

18  will -- let me just say that as a standing practice within

19  that PAC that I manage and cochair, we do not and have not

20  contributed to presidential campaigns.  So it really is

21  focused on federal candidates for Congress.

22           MR. BERKOWITZ:  And that's all I have.  Thank you

23  very much.  I appreciate your time.

24           PROSPECTIVE JUROR:  Sure.

25           THE COURT:  Thank you very much.  You can step

1    down.

2              PROSPECTIVE JUROR:  Thank you.

3              (Thereupon, Prospective Juror No. 975 retired from

4    the courtroom and the following proceedings were had:)

5              MR. KEILTY:  No challenge, your Honor.  Thank you.

6              MR. BERKOWITZ:  No objection.

7              THE COURT:  975 is qualified.

8              THE COURTROOM DEPUTY:  Your Honor, Juror No. 573.

9              (Thereupon, Prospective Juror No. 573 entered the

10   courtroom and the following proceedings were had:)

11             THE COURT:  Good afternoon, ma'am.

12             PROSPECTIVE JUROR:  Good afternoon.

13             THE COURT:  How are you?

14             PROSPECTIVE JUROR:  I'm well.  Thanks.

15             THE COURT:  Good.

16             Feel free to take your mask off if you're

17   comfortable doing so.

18             PROSPECTIVE JUROR:  Thank you.

19             THE COURT:  We've reviewed your questionnaire and

20   just have a few followup questions.  First off, you have a

21   trip planned for this Friday.  Is that correct?

22             PROSPECTIVE JUROR:  Yes.  That's correct.

23             THE COURT:  What time are you leaving town?

24             PROSPECTIVE JUROR:  That'll be a 1:00 flight.

25             THE COURT:  I'm sorry?

```
 1              PROSPECTIVE JUROR:  A 1:00 p.m. flight.
 2              THE COURT:  Is this a trip that you want to take?
 3              PROSPECTIVE JUROR:  Yes.
 4              THE COURT:  Going somewhere fun?
 5              PROSPECTIVE JUROR:  Yes.
 6              THE COURT:  Where?
 7              PROSPECTIVE JUROR:  New Orleans.
 8              THE COURT:  There you go.  All right.  We're going
 9     to let you take your trip.
10              PROSPECTIVE JUROR:  Thank you.  I appreciate it.
11              THE COURT:  You can step down.
12              PROSPECTIVE JUROR:  Thank you.
13              (Thereupon, Prospective Juror No. 573 retired from
14     the courtroom and the following proceedings were had:)
15              THE COURT:  The Court will strike 573 for cause
16     based on her conflict.
17              THE COURTROOM DEPUTY:  760.
18              (Thereupon, Prospective Juror No. 760 entered the
19     courtroom and the following proceedings were had:)
20              THE COURT:  Good afternoon, ma'am.
21              PROSPECTIVE JUROR:  Hello.
22              THE COURT:  How are you?
23              PROSPECTIVE JUROR:  I'm well.  How are you?
24              THE COURT:  Good.  Thank you for your patience.
25     You can take your mask off if you like.
```

```
 1                    PROSPECTIVE JUROR:  Okay.

 2                    THE COURT:  You work at the Peace Corps; is that

 3       right?

 4                    PROSPECTIVE JUROR:  Yes.

 5                    THE COURT:  How long have you been there?

 6                    PROSPECTIVE JUROR:  Two and a half years.

 7                    THE COURT:  And you were a Peace Corps member?

 8                    PROSPECTIVE JUROR:  I was a Peace Corps volunteer.

 9       Yeah.  Yes.

10                    THE COURT:  And you had not heard of this case,

11       correct, until last week?

12                    PROSPECTIVE JUROR:  Correct.

13                    THE COURT:  And when I described the case to you,

14       did you have any reactions to it or the possibility of

15       serving as a juror?

16                    PROSPECTIVE JUROR:  No.

17                    THE COURT:  Did you have any issues or concerns

18       about serving as a juror in this case?

19                    PROSPECTIVE JUROR:  No, I do not.

20                    THE COURT:  Counsel?

21                    MR. KEILTY:  Good afternoon.  How are you?

22                    PROSPECTIVE JUROR:  Hi.  How are you?

23                    MR. KEILTY:  Good.  Thank you.  Thanks for your

24       service today.  I appreciate it.

25                    Just a quick question.  So the events that you're
```

1    going to hear about in this trial take place surrounding the

2    2016 election.  And we all know that we all have very strong

3    feelings and opinions about that election and certain people

4    like a certain candidate and certain people don't like a

5    certain candidate.

6            Do you hold any strong opinions that would inhibit

7    you from being a fair and impartial juror in this case?  And

8    recognizing that you should know that neither Donald Trump

9    nor Hillary Clinton is on trial here; it's Mr. Sussmann.

10   But their names will be, you know -- will be floating around

11   the trial.  So is there anything about that that would make

12   it difficult for you to be fair and impartial?

13           PROSPECTIVE JUROR:  No.

14           MR. KEILTY:  Is there anything else that you can

15   think of that maybe you didn't put on the questionnaire that

16   we should know about which might make it difficult for you

17   to be fair and impartial to either side, either the

18   Government or Mr. Sussmann?

19           PROSPECTIVE JUROR:  No, not that I can think of.

20           MR. KEILTY:  Great.  Thank you very much.

21           PROSPECTIVE JUROR:  Thank you.

22           MR. BERKOWITZ:  Good afternoon.

23           PROSPECTIVE JUROR:  Hi.

24           MR. BERKOWITZ:  I'm Sean Berkowitz, and I

25   represent Mr. Sussmann.  And we just have a couple of

1    questions for you to make sure that if you are chosen you

2    could be fair and impartial.

3          I noted in your questionnaire that you have

4    friends or at least a close friend who's in law enforcement?

5          PROSPECTIVE JUROR:  Yes.

6          MR. BERKOWITZ:  And you generally believe that law

7    enforcement people are good people?

8          PROSPECTIVE JUROR:  Yes.  I believe that most are

9    good people.

10          MR. BERKOWITZ:  There will be testimony from law

11    enforcement officials here, particularly from the Federal

12    Bureau of Investigation as well as the CIA.  If you were

13    instructed that you should not give their testimony more

14    weight than you would to other people just because they

15    happen to be in law enforcement, is that an instruction that

16    you could follow?

17          PROSPECTIVE JUROR:  Yes.  I do not believe that

18    people who are in law enforcement are necessarily more

19    trustworthy than others.  So yes.

20          MR. BERKOWITZ:  And you would evaluate them like

21    you would any other witness?

22          PROSPECTIVE JUROR:  Yes.

23          MR. BERKOWITZ:  That's all I have.  Thank you very

24    much.

25          PROSPECTIVE JUROR:  Thank you.

```
1               THE COURT:  Thank you, ma'am.  You may step down.

2               PROSPECTIVE JUROR:  Thank you.

3               (Thereupon, Prospective Juror No. 760 retired from

4       the courtroom and the following proceedings were had:)

5               THE COURT:  Any challenge?

6               MR. KEILTY:  No objection, your Honor.

7               MR. BERKOWITZ:  No objection, your Honor.

8               THE COURT:  760 is qualified.

9               So three more, by my count.

10              MR. BERKOWITZ:  Yes.

11              THE COURTROOM DEPUTY:  Judge, Juror 12 didn't

12      appear.  The one after this one.

13              THE COURT:  Okay.

14              THE COURTROOM DEPUTY:  Juror No. 869 [sic].

15              (Thereupon, Prospective Juror No. 689 entered the

16      courtroom and the following proceedings were had:)

17              THE COURT:  Step right up, sir.  How are you?

18              PROSPECTIVE JUROR:  Good afternoon.

19              THE COURT:  Ms. Jenkins, you said 869.  I think

20      it's 689.

21              THE COURTROOM DEPUTY:  I'm sorry.  Yes.  Correct.

22      My apologies.  689.

23              THE COURT:  Thank you for your service.  You can

24      feel free to slip your mask off if you like.

25              So you're a mortician; is that correct?
```

```
 1              PROSPECTIVE JUROR:  Yes, sir.

 2              THE COURT:  And you run the home there?

 3              PROSPECTIVE JUROR:  I do.

 4              THE COURT:  And it wouldn't be a hardship for you

 5      to take off work for a couple weeks?

 6              PROSPECTIVE JUROR:  It would be.  Yes, sir.

 7              THE COURT:  How much of a hardship?

 8              PROSPECTIVE JUROR:  I can't predict death; but

 9      when it happens, I'm the last responder.

10              THE COURT:  Do you have an assistant?  Do you have

11      an embalmer?  Do you do the embalming?

12              PROSPECTIVE JUROR:  I do.

13              THE COURT:  And you have a staff of six, you say?

14              PROSPECTIVE JUROR:  Yes, your Honor.

15              THE COURT:  And would there be folks that could

16      fill in for you even though it would be inconvenient?

17              PROSPECTIVE JUROR:  They're not licensed.

18              THE COURT:  We're going to let you step down.

19      Okay?

20              PROSPECTIVE JUROR:  Thank you.

21              (Thereupon, Prospective Juror No. 689 retired from

22      the courtroom and the following proceedings were had:)

23              THE COURT:  The Court will strike 689 for cause

24      based on his work hardship.

25              And Juror No. 12 was a no-show, unfortunately, so
```

1    he will be stricken as well.

2              THE COURTROOM DEPUTY:  Juror No. 505.

3              (Thereupon, Prospective Juror No. 505 entered the

4    courtroom and the following proceedings were had:)

5              THE COURT:  Step right up, ma'am.  Good to see

6    you.

7              PROSPECTIVE JUROR:  Good afternoon.

8              THE COURT:  Feel free to take your mask off if you

9    like.

10             We've reviewed your questionnaire and just have a

11   few follow-up questions for you.

12             You work for an outfit called Integra.  Is that

13   right?

14             PROSPECTIVE JUROR:  Business Integra.  Yes.

15             THE COURT:  Business Integra.  And tell me what

16   Business Integra does and what you do for them.

17             PROSPECTIVE JUROR:  They're a government

18   contractor.  And I work on a project that they have with

19   NASA.  And I am the management of training and events for

20   that program.

21             THE COURT:  Do they have any contracts with the

22   Justice Department or the FBI or any of the intelligence

23   agencies to your knowledge?

24             PROSPECTIVE JUROR:  I don't know.  It's possible.

25   They have federal contracts.

```
 1                    THE COURT:  But you don't work on those accounts?

 2                    PROSPECTIVE JUROR:  No.

 3                    THE COURT:  You also do event coordination?

 4                    PROSPECTIVE JUROR:  As a side business.  Yes.

 5                    THE COURT:  And you had not heard anything about

 6       this case until last week; is that right?

 7                    PROSPECTIVE JUROR:  Correct.

 8                    THE COURT:  And any reactions after I described

 9       what the case was about?  Any reactions about being on the

10       jury?

11                    PROSPECTIVE JUROR:  No.

12                    THE COURT:  Counsel, followup?

13                    MR. KEILTY:  Good afternoon, ma'am.  How are you?

14                    PROSPECTIVE JUROR:  Good afternoon.

15                    MR. KEILTY:  Thank you for your service today.

16                    Just a couple of questions for me.  You mentioned

17       in the questionnaire that you have two longtime friends who

18       work for the FBI?

19                    PROSPECTIVE JUROR:  Yes.

20                    MR. KEILTY:  Do you know what they do for the FBI?

21                    PROSPECTIVE JUROR:  No.  One I know did

22       investigations.  The other, I don't know.

23                    MR. KEILTY:  So part of this case involves the

24       Defendant's involvement with the FBI.  And we expect that

25       there will be FBI witnesses in this case.  Is there anything
```

1    about that -- your friends' experience with the FBI, either

2    good or bad, that would not allow you to be a fair and

3    impartial juror here in this case?

4             PROSPECTIVE JUROR:  No.

5             MR. KEILTY:  You also mentioned in the

6    questionnaire that the name Jim Baker sounded familiar.  Do

7    you recall that?  I think you checked "Jim Baker sounds

8    familiar," unless I'm looking at this wrong.

9             PROSPECTIVE JUROR:  Yes.  It could be that I just

10   don't remember.  It sounded familiar at the time.

11            MR. KEILTY:  But right now, the name Jim Baker

12   doesn't mean anything to you?

13            PROSPECTIVE JUROR:  No.

14            MR. KEILTY:  Now, this case will also -- it

15   centers around the 2016 timeframe and the election in 2016.

16   We totally understand that people have very strong feelings

17   about one candidate or the other, one campaign or the other.

18   Neither one of those candidates or campaigns are on trial

19   here; Mr. Sussmann is.  But is there something about either

20   one of those candidates or campaigns that you have very

21   strong feelings about that wouldn't allow you to be fair and

22   impartial in this case?

23            PROSPECTIVE JUROR:  No.

24            MR. KEILTY:  Thank you very much.  I appreciate

25   it.

```
 1          PROSPECTIVE JUROR:  You're welcome.
 2          MR. BERKOWITZ:  Good afternoon.
 3          PROSPECTIVE JUROR:  Good afternoon.
 4          MR. BERKOWITZ:  My name's Sean Berkowitz, and I
 5  represent the Defendant, Michael Sussmann.
 6          I really just want to follow up on one aspect of
 7  your questionnaire.  You indicated that if you were selected
 8  to serve on the jury, that your business would pay for one
 9  week and not necessarily two.  And the trial is expected to
10  last two weeks.  I think the words you chose is it would be
11  "less than desirable" to have to take your vacation time to
12  spend it with us.
13          PROSPECTIVE JUROR:  Right.
14          MR. BERKOWITZ:  Irrespective -- the judge can
15  decide what is appropriate or not.  But if you were selected
16  to serve and had to serve that second week, would you hold
17  it against either the Government or Mr. Sussmann in any way
18  or be resentful in a way that would prevent you from being
19  fair and impartial?
20          PROSPECTIVE JUROR:  No.
21          MR. BERKOWITZ:  That's really all I ask and care
22  about.  So thank you very much.
23          PROSPECTIVE JUROR:  You're welcome.
24          THE COURT:  Thank you, ma'am.  You can step down.
25          PROSPECTIVE JUROR:  Okay.
```

```
 1                    (Thereupon, Prospective Juror No. 505 retired from
 2         the courtroom and the following proceedings were had:)
 3                    MR. KEILTY:  No objection, your Honor.
 4                    MR. BERKOWITZ:  No objection.
 5                    THE COURT:  505 is qualified.
 6                    THE COURTROOM DEPUTY:  Your Honor, Juror No. 237.
 7                    (Thereupon, Prospective Juror No. 237 entered the
 8         courtroom and the following proceedings were had:)
 9                    THE COURT:  Good afternoon, sir.
10                    PROSPECTIVE JUROR:  Good afternoon.
11                    THE COURT:  Thank you for your patience.  Feel
12         free to take your mask off if you're comfortable doing so.
13                    We have reviewed your questionnaire and just have
14         a few followup questions for you.  You're a submarine
15         designer; is that right?
16                    PROSPECTIVE JUROR:  I would call myself an
17         engineer, sir.
18                    THE COURT:  And you have read about the case and
19         heard about the case before this week?
20                    PROSPECTIVE JUROR:  Yes.  Yes, sir.
21                    THE COURT:  Tell me generally what you've heard
22         about the case and whether you've drawn any impressions
23         about the case from what you may have read or heard.
24                    PROSPECTIVE JUROR:  So I have heard -- I want to
25         stress it's been a couple months since I've read anything
```

216

```
 1    about this, so memories are a little hazy.
 2              THE COURT:  Fair enough.
 3              PROSPECTIVE JUROR:  A general background of the
 4    impetus behind the case, a general summary of the charges of
 5    the case.  Not much more than that, sir.  To expand, I think
 6    about having read a summary a couple months ago that I
 7    recall from that.
 8              THE COURT:  Do you recall having formed a view
 9    about the merits of the case either one way or the other
10    when you read that stuff a few months ago?
11              PROSPECTIVE JUROR:  No, sir.
12              THE COURT:  When you heard me describe the case
13    and when you figured out what case it was last week, did you
14    have any initial impressions about serving on a jury?
15              PROSPECTIVE JUROR:  No, sir.
16              THE COURT:  Counsel?
17              MR. KEILTY:  Good afternoon, sir.  How are you?
18              PROSPECTIVE JUROR:  Well, sir.  Thank you.
19              MR. KEILTY:  Thank you for your service today.  I
20    appreciate it.
21              Just a couple things.  It says you're a submarine
22    engineer.  But you have colleagues who work in the
23    cybersecurity area.  Is that correct?
24              PROSPECTIVE JUROR:  That is correct.  Yes.
25              MR. KEILTY:  Do you work with cybersecurity issues
```

```
 1    or no?

 2                 PROSPECTIVE JUROR:  So every office within the DOD

 3    that handles procurement is supposed to have personnel who

 4    handle cybersecurity.  And on occasion, systems that I am

 5    on, which are mechanical in nature but which can be

 6    controlled by electronic chips and such like that, I've been

 7    handed questionnaires to fill out.  And I know the people

 8    who work with cybersecurity, but I would not say I do it

 9    myself.

10                 MR. KEILTY:  So you're not a cybersecurity expert?

11                 PROSPECTIVE JUROR:  Not in any way.  No, sir.

12                 MR. KEILTY:  Thank you.

13                 You also wrote that you have a friend who works at

14    the CIA.  Is that correct?

15                 PROSPECTIVE JUROR:  Your Honor?  Do I --

16                 THE COURT:  Without naming the person, do you know

17    someone who works at the CIA?

18                 PROSPECTIVE JUROR:  Yes.

19                 MR. KEILTY:  We're not getting into details about

20    it, but there may be witnesses from the CIA who might

21    testify in this case.  Is there anything about your friend's

22    experience one way or the other that would impair your

23    ability to be fair and impartial in this case?

24                 PROSPECTIVE JUROR:  No, there is not.

25                 MR. KEILTY:  And I think you mentioned your mom
```

1    was a former ambassador in the State Department?

2              PROSPECTIVE JUROR:  That's correct.

3              MR. KEILTY:  Do you recall what years that was,

4    approximately?

5              PROSPECTIVE JUROR:  It was somewhat recent.  So

6    she was the charge d'affaires in Norway from the early

7    aughts.  She was the ambassador to Equatorial Guinea up

8    until a couple of years ago.

9              MR. KEILTY:  Did she work under Secretary Clinton?

10             PROSPECTIVE JUROR:  Well, yes.  Everybody who

11   worked at the Department of State, including all career

12   ambassadors, would have --

13             MR. KEILTY:  Understood.

14             But during the time period when Secretary Clinton

15   was secretary of state, your mom was employed by the State

16   Department?

17             PROSPECTIVE JUROR:  I'd have to check.  Maybe, but

18   I'm not sure.

19             MR. KEILTY:  Is there anything -- so 2016 -- you

20   know, you've read some things about this case.  The 2016

21   election, people hold very strong views on it, about the

22   candidates, about the campaigns.  Is there anything --

23   recognizing that neither Mr. Trump nor Mrs. Clinton are on

24   trial in this case, but Mr. Sussmann is the Defendant, but

25   is there anything about either one of those entities that

```
1    would cause you not to be able to be a fair and impartial

2    juror here?

3               PROSPECTIVE JUROR:  Sorry.  Could you repeat that?

4               MR. KEILTY:  Sure.

5               PROSPECTIVE JUROR:  There was a lot of negatives

6    and double negatives there.

7               MR. KEILTY:  So do you hold any particularly

8    strong views about either Mr. Trump or Mrs. Clinton that

9    would impair your ability to be a fair and impartial juror

10   here?

11              PROSPECTIVE JUROR:  No, I do not.

12              MR. KEILTY:  That was a much easier question than

13   I had asked.

14              PROSPECTIVE JUROR:  Yeah.  I had to watch out for

15   that one.

16              MR. KEILTY:  I think that's all I have, your

17   Honor.  Thank you.

18              THE COURT:  And I just noticed that you were a

19   summer intern at the State Department at some point.

20              PROSPECTIVE JUROR:  Yes.

21              THE COURT:  And was that when Hillary Clinton was

22   secretary of state?

23              PROSPECTIVE JUROR:  It was.

24              THE COURT:  Did you meet her?  Did you interact

25   with her office at all?
```

1          PROSPECTIVE JUROR:  I was in a conference room

2     with several hundred other people where she essentially said

3     hello to us.  That was the extent of my interaction with

4     her.

5          MR. BERKOWITZ:  Good afternoon.  Thank you for

6     your patience.  My name is Sean Berkowitz, and I represent

7     Mr. Sussmann in this matter.  I just have a couple of

8     questions for you as we determine the makeup of the jury

9     here.

10          You indicated that you had read some articles, and

11     Mr. Keilty asked you a little bit about that; and you said

12     that you had read some articles about the impetus of the

13     investigation.  Can you expand on that at all in terms of

14     what your knowledge is of that issue?

15          PROSPECTIVE JUROR:  Certainly.  Again, I want to

16     emphasize these are articles from months ago, so my

17     recollections are not necessarily going to be clear.  I'll

18     give you what I remember.  I'm not going to promise it's

19     accurate.  It's been a while.

20          I understand that there was an -- a report that

21     was created by, I believe, a British man and that there was

22     a special counsel investigation into that report.  Later, I

23     believe there was a special counsel investigation into the

24     beginning of the first special counsel investigation that

25     resulted in the charges here.

1           MR. BERKOWITZ:  A lot of special counsels.

2           PROSPECTIVE JUROR:  Yeah.

3           MR. BERKOWITZ:  And would you be able to put aside

4      your knowledge of any issues that you may have read from

5      months ago, as vague as the recollection may be, and

6      evaluate the case here based on what goes on in the

7      courtroom as opposed to what you might have heard or read

8      outside of the courtroom?

9           PROSPECTIVE JUROR:  I could.  Yes.

10          MR. BERKOWITZ:  And in this case, I think the

11     judge will instruct you that what you hear in evidence is

12     what you should pay attention to and not what others might

13     have said outside the courtroom.  It sounds like you're

14     comfortable with that?

15          PROSPECTIVE JUROR:  I am.  Yes.

16          MR. BERKOWITZ:  You work for the United States

17     Navy.  Thank you for your service.  And you've had family

18     who work for the government.

19          PROSPECTIVE JUROR:  Correct.

20          MR. BERKOWITZ:  It is a large government.  The

21     special counsel works for the government.  Mr. Sussmann

22     worked in private practice.  Would your work for the

23     government cause you to favor the prosecution in any way,

24     shape or form because they are also under the same umbrella

25     of the government?

```
 1                    PROSPECTIVE JUROR:  It would not.

 2                    MR. BERKOWITZ:  You could be fair?

 3                    PROSPECTIVE JUROR:  I could be fair.

 4                    MR. BERKOWITZ:  That's all I have.  Thank you.

 5                    PROSPECTIVE JUROR:  Thank you.

 6                    THE COURT:  Thank you, sir.  You can step down.

 7                    PROSPECTIVE JUROR:  Thank you.

 8                    (Thereupon, Prospective Juror No. 237 retired from

 9         the courtroom and the following proceedings were had:)

10                    THE COURT:  Any challenge?

11                    MR. KEILTY:  No, your Honor.  Thank you.

12                    MR. BERKOWITZ:  No, your Honor.

13                    THE COURT:  237 is qualified.

14                    THE COURTROOM DEPUTY:  974.

15                    (Thereupon, Prospective Juror No. 974 entered the

16         courtroom and the following proceedings were had:)

17                    THE COURT:  Good afternoon, sir.  Thank you for

18         your patience.  Feel free to take your mask off if you like.

19                    We have read your questionnaire and just have a

20         few followup questions for you.

21                    PROSPECTIVE JUROR:  Okay.

22                    THE COURT:  Starting off, you work at the Library

23         of Congress; is that correct?

24                    PROSPECTIVE JUROR:  Yes.

25                    THE COURT:  And tell us generally what a
```

```
 1    production control specialist is.

 2              PROSPECTIVE JUROR:  I just -- I assign work.  We

 3    make Braille and audio for blind people and I assign the

 4    work and then make payment when the work is done.

 5              THE COURT:  And your wife is a veteran postal

 6    inspector; is that correct?

 7              PROSPECTIVE JUROR:  Yes.

 8              THE COURT:  Obviously, she is federal law

 9    enforcement.  This case is being prosecuted by federal law

10    enforcement.  Is there anything about your wife's position

11    that would cause you to favor the prosecution side over the

12    defense side in this case?

13              PROSPECTIVE JUROR:  No.

14              THE COURT:  You're sure about that?

15              PROSPECTIVE JUROR:  Yeah.  I mean, we don't really

16    discuss her work very often, so I don't have strong feelings

17    one way or the other.

18              THE COURT:  And you had not heard anything about

19    this case before last week.  Is that right?

20              PROSPECTIVE JUROR:  Correct.

21              THE COURT:  And any impressions?  Did you form any

22    impressions after I described the case to you last week

23    either about the case itself or about serving on the jury?

24              PROSPECTIVE JUROR:  No.  None.

25              THE COURT:  Counsel?
```

1          MR. KEILTY:  Thank you, your Honor.

2          Good afternoon.  How are you?

3          PROSPECTIVE JUROR:  Okay.  Thank you.

4          MR. KEILTY:  Just a couple of followup questions.

5     First of all, I'm intrigued about --  sail maker?  You were

6     a sail maker for a number of years?

7          PROSPECTIVE JUROR:  Yes.  Back in Chicago.

8          MR. KEILTY:  So is there anything -- so you

9     mentioned that you donate to a couple of organizations, one

10    being the Cato Institute --

11         PROSPECTIVE JUROR:  Yes.

12         MR. KEILTY:  -- the other one being the Reason

13    Foundation.

14         PROSPECTIVE JUROR:  Yes.

15         MR. KEILTY:  I'm familiar with the Cato Institute.

16    What is the Reason Foundation?

17         PROSPECTIVE JUROR:  They're similar.  It's a

18    libertarian organization.  They run *Reason* magazine, among

19    other things.

20         MR. KEILTY:  Oh, okay.  Got you.

21         So the 2016 election was somewhat controversial.

22    People hold strong opinions about both candidates.  Is there

23    anything about either candidate that would not allow you to

24    be a fair and impartial juror here in this case?

25         PROSPECTIVE JUROR:  Nothing that I can think of.

1    No.

2                MR. KEILTY:  Is there anything since you've filled

3    out your questionnaire that you think either party, the

4    Government or the Defendant, should know about which might

5    affect your ability to be fair in this case?

6                PROSPECTIVE JUROR:  Nothing that comes to mind.

7    No.

8                MR. KEILTY:  Thanks very much.  I appreciate it.

9                PROSPECTIVE JUROR:  Sure.

10               MR. BERKOWITZ:  Good afternoon.

11               PROSPECTIVE JUROR:  Hi.

12               MR. BERKOWITZ:  My name's Sean Berkowitz, and I

13   represent the Defendant, Michael Sussmann.

14               I just wanted to follow up on an area that Judge

15   Cooper had inquired about; and that is the status of your

16   wife as a postal inspector, her position.  In that position,

17   are you aware if she works with assistant United States

18   attorneys prosecuting crimes?

19               PROSPECTIVE JUROR:  It's possible.  But I don't

20   think she's been involved in any court cases in the last few

21   years, at least.  She works at headquarters now, whereas she

22   used to be more involved as an agent working and prosecuting

23   cases.  But lately, the last few years, she works just at

24   the headquarters.

25               MR. BERKOWITZ:  And this case, as Judge Cooper

1    said when we were in the ceremonial courtroom last week,

2    relates to allegations that my client lied, made

3    misrepresentations, to the FBI, who are also federal agents

4    like your wife.  She's obviously not an FBI agent.

5              And it's really important to us that we seat a

6    jury who won't bring any preconceived notions or concerns

7    based on their personal experiences.  And it sounds like you

8    think you should be able to do that, but it is incumbent on

9    me to ask directly.  Do you think, even though the

10   allegations in this case relate to lying to a federal law

11   enforcement officer, that you could be fair despite the fact

12   that your wife is also a federal law enforcement officer?

13             PROSPECTIVE JUROR:  Oh, absolutely.  I mean, I

14   consider myself an impartial person.  So I'm not swayed by

15   that one way or the other.

16             MR. BERKOWITZ:  That's what I needed to hear.  And

17   I really appreciate your candor.

18             PROSPECTIVE JUROR:  Sure.

19             THE COURT:  You can step down, sir.  Thank you

20   very much.

21             PROSPECTIVE JUROR:  Okay.

22             (Thereupon, Prospective Juror No. 974 retired from

23   the courtroom and the following proceedings were had:)

24             THE COURT:  Any challenge?

25             MR. KEILTY:  No, your Honor.  Thank you.

```
 1                  MR. BERKOWITZ:  No, your Honor.

 2                  THE COURT:  974 is qualified.

 3                  So that is 38 by my count.

 4                  THE COURTROOM DEPUTY:  Yes, your Honor.

 5                  THE COURT:  So we're going to stop there.  We'll

 6       take a break and Ms. Jenkins will use the time to assemble

 7       our 38.  And we're going to seat them in order, starting

 8       with the box and then the juror seats in the first two rows

 9       on the right side.

10                  Ladies and gentlemen, nothing personal, but we're

11       going to need all of the seats to array our potential jurors

12       before the two sides exercise their peremptory strikes.

13                  We will have a bowl when we come back to pick the

14       alternate seats so that you will know which are the

15       alternate seats before the jurors return.  And then we will

16       have you fill out the forms.  Ten peremptories for the

17       defense, six peremptories for the Government on the main

18       seats and then two strikes each and a second round against

19       the alternate seats.

20                  Then we'll allow you all to -- we'll have

21       Ms. Jenkins collect both sheets, exchange them and then I

22       will move folks around.  So we will take --

23                  How long do we need, Ms. Jenkins?  Ten or 15

24       minutes?

25                  THE COURTROOM DEPUTY:  Twenty.
```

```
 1                THE COURT:  We'll take a 20-minute break.

 2                Mr. Berkowitz?

 3                MR. BERKOWITZ:  Can I -- Judge, I do want to make

 4     sure I've got it correctly.

 5                THE COURT:  Yes.

 6                MR. BERKOWITZ:  There are 38 jurors that have been

 7     prequalified.  They will come in in the order --

 8                THE COURT:  Yes.

 9                MR. BERKOWITZ:  -- of what we evaluated them at.

10     And when you pull seats, I just want to make sure I

11     understand that.  Is it possible that the last eight people

12     that we qualify -- will those be the alternates that we

13     select or there are two strikes against or it might not be?

14                THE COURT:  No.  So what will happen is we will

15     seat --

16                THE COURTROOM DEPUTY:  Sixteen.

17                THE COURT:  -- 16 people in the jury box.  It's

18     not the box, because they're spread out.  But

19     hypothetically, if Seat No. 6 is one of the alternates, you

20     will know who is sitting in Seat No. 6 so you will know not

21     to exercise your first round of strikes against Seat No. 6,

22     but to wait until the alternate strikes.

23                MR. BERKOWITZ:  Okay.  And we exercise our first

24     ten.  They exercise six.  If there's no matches, it would

25     presumably mean 16 would be struck and there would be 12
```

1    that would be qualified and then there would be whatever

2    number left?

3                THE COURT:  Correct.

4                MR. BERKOWITZ:  Thank you.  That helps clarify.  I

5    appreciate it.

6                THE COURT:  If there are any questions throughout

7    the process, just put your hand up.  Ask Ms. Jenkins.  Pick

8    up the bat phone if it's something you want to talk about

9    off the record.

10               MR. BERKOWITZ:  Okay.

11               THE COURTROOM DEPUTY:  This Court will stand in

12   recess.  You may be dismissed.

13               (Thereupon a recess was taken, after which the

14   following proceedings were had:)

15               THE COURT:  Counsel, please be seated.  So we're

16   going to need all these seats.  Maybe not the front row, but

17   I think all the seats in the gallery I believe we're going

18   to need.

19               (Whereupon, certain unidentified individuals

20   vacated seats in the courtroom gallery.)

21               THE COURT:  We're back on the record.

22               (Whereupon, the following proceedings were had at

23   sidebar outside the presence of the jury:)

24               THE COURT:  We're going to pick our alternate

25   numbers.  We'll have the Government first.

```
 1                    Ms. Shaw, how about you?  Ladies first.  Pick two

 2      numbers.

 3                    MS. SHAW:  Two?

 4                    THE COURT:  Yes.

 5                    MS. SHAW:  (Extracts numbers from bowl.)

 6                    THE COURT:  Someone from the defense?  Don't be

 7      shy.

 8                    MS. YAO:  (Extracts numbers from bowl.)

 9                    THE COURT:  The first two alternate seats are ▊

10      and ▊.  So ▊ is the first alternate; ▊ is the second

11      alternate; the third alternate is ▊; and the fourth

12      alternate is Seat ▊.

13                    Got it?

14                    MR. KEILTY:  Yes, sir.

15                    (Whereupon, the following proceedings were had in

16      open court:)

17                    THE COURT:  You all have the diagram?

18                    MR. BERKOWITZ:  No.

19                    THE COURT:  Can we get both sides the diagram?

20      It's where the numbers are with the red dots.  It might be

21      helpful for them to visualize it if they have a courtroom

22      diagram.

23                    THE LAW CLERK:  We don't have a new version.  I

24      can get a copy of the old version.

25                    THE COURT:  Get a copy of the old version, please.
```

```
 1              THE LAW CLERK:  I'll do that.

 2              THE COURT:  You'll get the diagram.  But just to

 3     go over it, starting in the front of the box from left to

 4     right, 1, 2; first row, 3, 4, 5, 6; top row, 7, 8, 9, 10;

 5     the first row behind the Government, left to right, 11, 12,

 6     13; second row behind the Government, 14, 15, 16.

 7              Got it?

 8              MR. KEILTY:  Yes, your Honor.

 9              THE COURT:  Counsel?

10              (Whereupon, the following proceedings were had at

11     sidebar outside the presence of the jury:)

12              THE COURT:  Are we clear?

13              MR. BERKOWITZ:  I think so.

14              THE COURT:  Let's make sure we're clear.

15              So we have qualified 38 jurors.  The first 16 will

16     be seated in the marked seats.  So that's effectively your

17     jury box in normal times.  Right?

18              MR. BERKOWITZ:  Understood.

19              THE COURT:  The last two jurors, assuming everyone

20     from the morning shows back up, will be out of play.  You

21     can strike anyone either from the box or from the gallery so

22     long as they're not in those alternate seats.

23              MR. BERKOWITZ:  Understood.  I think I've got it.

24     Yes.

25              THE COURT:  So that process will result in 12
```

1    regular jurors.  Okay?  And then we will do another round of

2    two strikes each, and you can strike either from the gallery

3    or against one of the four alternate seats.  And that

4    process will result in the four alternate jurors.

5              MR. BERKOWITZ:  Understood.

6              THE COURT:  Great.  Thanks.

7              (Whereupon, the following proceedings were had in

8    open court:)

9              THE COURTROOM DEPUTY:  Your Honor, the jury panel.

10             (Whereupon, the prospective jury panel entered the

11   courtroom at 4:15 p.m. and the following proceedings were

12   had:)

13             THE COURT:  Ladies and gentlemen, thank you very

14   much for your patience.  This is the next phase of jury

15   selection, where I will work with the parties to pick 16 of

16   you to serve as either alternate or regular jurors in this

17   matter.  And it's going to take a little time.

18             We would normally have the jury box full, but

19   because of COVID and the social distancing rules, we have

20   spread you out a little more than we would normally do.  And

21   so it's a little more difficult conceptually both for me and

22   for the lawyers.

23             So just to make sure we're all on the same page,

24   I'm going to ask Ms. Jenkins to do a roll call just so that

25   all of the lawyers and I know where each of the jurors are

```
 1    seated.  Okay?
 2              THE COURTROOM DEPUTY:  Ladies and gentlemen, as I
 3    call your number, please give us an audible "here" and raise
 4    your hand.
 5              Juror No. 113?
 6              PROSPECTIVE JUROR:  Here.
 7              THE COURTROOM DEPUTY:  528?
 8              PROSPECTIVE JUROR:  Here.
 9              THE COURTROOM DEPUTY:  178?
10              PROSPECTIVE JUROR:  Here.
11              THE COURTROOM DEPUTY:  170?
12              PROSPECTIVE JUROR:  Here.
13              THE COURTROOM DEPUTY:  175?
14              PROSPECTIVE JUROR:  Here.
15              THE COURTROOM DEPUTY:  757?
16              PROSPECTIVE JUROR:  Here.
17              THE COURTROOM DEPUTY:  390?
18              PROSPECTIVE JUROR:  Here.
19              THE COURTROOM DEPUTY:  426?
20              PROSPECTIVE JUROR:  Here.
21              THE COURTROOM DEPUTY:  418?
22              PROSPECTIVE JUROR:  Here.
23              THE COURTROOM DEPUTY:  1023?
24              PROSPECTIVE JUROR:  Here.
25              THE COURTROOM DEPUTY:  225?
```

```
 1              PROSPECTIVE JUROR:  Here.

 2              THE COURTROOM DEPUTY:  683?

 3              PROSPECTIVE JUROR:  Here.

 4              THE COURTROOM DEPUTY:  942?

 5              PROSPECTIVE JUROR:  Here.

 6              THE COURTROOM DEPUTY:  373?

 7              PROSPECTIVE JUROR:  Here.

 8              THE COURTROOM DEPUTY:  1197?

 9              PROSPECTIVE JUROR:  Here.

10              THE COURTROOM DEPUTY:  715?

11              PROSPECTIVE JUROR:  Here.

12              THE COURTROOM DEPUTY:  1131?

13              PROSPECTIVE JUROR:  Here.

14              THE COURTROOM DEPUTY:  0586?

15              PROSPECTIVE JUROR:  Here.

16              THE COURTROOM DEPUTY:  0290?

17              PROSPECTIVE JUROR:  Here.

18              THE COURTROOM DEPUTY:  0329?

19              PROSPECTIVE JUROR:  Here.

20              THE COURTROOM DEPUTY:  0731?

21              PROSPECTIVE JUROR:  Here.

22              THE COURTROOM DEPUTY:  0952?

23              PROSPECTIVE JUROR:  Here.

24              THE COURTROOM DEPUTY:  0009?

25              PROSPECTIVE JUROR:  Here.
```

```
 1                THE COURTROOM DEPUTY:  1016?

 2                PROSPECTIVE JUROR:  Here.

 3                THE COURTROOM DEPUTY:  0821?

 4                PROSPECTIVE JUROR:  Here.

 5                THE COURTROOM DEPUTY:  0133?

 6                PROSPECTIVE JUROR:  Here.

 7                THE COURTROOM DEPUTY:  0892?

 8                PROSPECTIVE JUROR:  Here.

 9                THE COURTROOM DEPUTY:  0125?

10                PROSPECTIVE JUROR:  Here.

11                THE COURTROOM DEPUTY:  0517?

12                PROSPECTIVE JUROR:  Here.

13                THE COURTROOM DEPUTY:  0764?

14                PROSPECTIVE JUROR:  Here.

15                THE COURTROOM DEPUTY:  0337?

16                PROSPECTIVE JUROR:  Here.

17                THE COURTROOM DEPUTY:  0984?

18                PROSPECTIVE JUROR:  Here.

19                THE COURTROOM DEPUTY:  0360?

20                PROSPECTIVE JUROR:  Here.

21                THE COURTROOM DEPUTY:  0975?

22                PROSPECTIVE JUROR:  Here.

23                THE COURTROOM DEPUTY:  0760?

24                PROSPECTIVE JUROR:  Here.

25                THE COURTROOM DEPUTY:  0505?
```

```
 1                    PROSPECTIVE JUROR:  Here.

 2                    THE COURTROOM DEPUTY:  0237?

 3                    PROSPECTIVE JUROR:  Here.

 4                    THE COURTROOM DEPUTY:  And 0974?

 5                    PROSPECTIVE JUROR:  Here.

 6                    THE COURTROOM DEPUTY:  Any member of the panel

 7       whose number I did not call?

 8                    Your Honor, we have a qualified panel of 38.

 9                    THE COURT:  So the parties are going to work a

10       little bit to compare their notes.  And so just sit tight

11       for a little bit.

12                    (Whereupon, counsel confer privately.)

13                    THE COURT:  Counsel?

14                    (Whereupon, the following proceedings were had at

15       sidebar outside the presence of the jury:)

16                    MR. BERKOWITZ:  I just wanted to confirm who the

17       two jurors that are out of play are.

18                    THE COURT:  So the last two, 237 and 974.

19                    MR. BERKOWITZ:  Okay.  That's what I thought.

20                    And the ones before them were likely in the

21       alternate pool, at least the last couple before them?  I can

22       do the math.  But okay.

23                    THE COURT:  That's right.

24                    MR. BERKOWITZ:  Thank you.

25                    (Whereupon, the following proceedings were had in
```

```
1    open court:)

2              MR. ALGOR:  Your Honor?

3              (Whereupon, the following proceedings were had at

4    sidebar outside the presence of the jury:)

5              MR. ALGOR:  Your Honor, I apologize.  I'm just

6    making sure we understand the guidance.

7              So the alternates for the seats, can we go over

8    the juror numbers for the four that we've read off just so

9    we're clear on that?  We're tracking ██, ██ --

10             THE COURT:  Hold on.

11             THE COURTROOM DEPUTY:  Your Honor, I can do it to

12   make it easier.

13             THE COURT:  Let Ms. Jenkins do it.

14             MR. ALGOR:  Sure.

15             THE COURTROOM DEPUTY:  Counsel, the alternate

16   jurors in the seat numbers are Juror No. ████, which is Seat

17   No. █, so Alternate Seat No. █; Juror No. ████, which is in

18   Seat █; Juror No. ████, which is in Seat No. ██; and Seat

19   ██, which is Juror No. ████.

20             MR. ALGOR:  Great.

21             MR. BERKOWITZ:  And one other question, since I

22   have everybody.  Our understanding is that Jurors ███, ███,

23   ███ and ███ are the final four alternates.  Those are in

24   Seats ██ through ██.  So they would be out of play at least

25   in the initial strikes?
```

```
1            THE COURT:  That's correct.

2            Is that correct, Ms. Jenkins?

3            THE COURTROOM DEPUTY:  One second, your Honor.

4            I'm sorry, counsel.  Can you give the line number

5    for the first juror number that you provided?

6            MR. BERKOWITZ:  Yes.  ███, which is Juror No. ███;

7    ███, which is ███; ███, which is ███; and ███, which is ███.

8            THE COURTROOM DEPUTY:  No, counsel.  We're going

9    to do the strikes on the -- the alternates are the alternate

10   seats that you selected.  Those are the numbers the judge

11   just provided.

12           MR. BERKOWITZ:  Understood.  But those are only

13   four, and there are eight that we'll be striking from.

14           THE COURT:  So, Mr. Berkowitz, let's assume that

15   your peremptories all overlap.  There's no telling how far

16   down we'd get to the list.  So if you want to strike someone

17   either from -- you can't strike against those four seats.

18   You can strike against any of the 36 in the pool, but you

19   would run -- if you just go with the next four, you might

20   not get there if all of the peremptories overlap.

21           MR. BERKOWITZ:  You see, I think that that's what

22   I'm trying to evaluate, because there are 12 jurors plus 16

23   strikes, which suggests a total of 28; and then the four

24   alternates is 32.  And so even if all 16 are used, the four

25   alternates that have been identified, we should only get up
```

1    to 32.

2              THE COURTROOM DEPUTY:  Your Honor, if I can

3    explain it this way, I think it makes it a little bit

4    simpler for the parties:

5              Counsel, we have 38 individuals that are

6    qualified.  We have 16 that are currently in the box.  Out

7    of the 16 in the box, there are four alternates.  The

8    initial peremptory strikes were against those ten

9    individuals for the defense, six for the Government.  Those

10   are the seats that are not alternate seats.

11             You may strike one in the box, top to bottom.

12   That is not an alternate.  Once we get to the alternate

13   strikes, you cannot strike against those four seats.  You

14   could take a strike at that time against those four seats.

15             THE COURT:  But, Lauren, his question is, you

16   know, obviously he can strike against people in the gallery

17   that he doesn't want to replace, anyone that's struck from

18   the box.

19             And my point is that you may run the risk of

20   cutting off the alternates at the last four, that, you know,

21   we would fill those seats with people before the last four.

22   If, for instance, there weren't 16 peremptory strikes, there

23   could be just ten if the Government had the same six as you

24   did.

25             MR. BERKOWITZ:  I completely understand that.  I

1   guess I'm trying to confirm -- and I apologize if I'm not

2   being clear -- in no event could Juror No. ■ be in the

3   first 12 based on the process that we're going through?

4           THE COURT:  That's correct.  That's correct.

5           MR. BERKOWITZ:  Okay.  Yes.  Very good.

6           (Whereupon, the following proceedings were had in

7   open court:)

8           THE COURT:  Ladies and gentlemen, this is the

9   section of jury selection that I call musical chairs.

10  Ms. Jenkins is going to have some of you stand up and be

11  replaced by others of you who are in the gallery.

12          MR. KEILTY:  Your Honor, could the Government have

13  a couple minutes?  We're just considering an issue.

14          THE COURT:  Very well.

15          (Counsel confer privately.)

16          MR. KEILTY:  Thank you, your Honor.

17          THE COURT:  Bear with us, ladies and gentlemen.

18  We're getting there.

19          THE COURTROOM DEPUTY:  Ladies and gentlemen, as I

20  call your juror number, for those that are seated I'm going

21  to ask you to stand.  The next number that I'm going to

22  call, I'm going to ask you to take that seat.

23          Juror No. 528, if you'd please stand.

24          Juror No. 1131, I'm going to ask you to take that

25  seat.  If you could just swap seats with her.  Thank you.

```
 1                    Juror No. 178, please stand.

 2                    Juror No. 0586, I'm going to ask you to take the

 3       seat.

 4                    Juror No. 170, please stand.

 5                    Juror No. 0290, take their seat.

 6                    Juror No. 175, will you please stand.

 7                    Juror No. 0731, if you can take that available

 8       seat.

 9                    Juror No. 426, please stand.

10                    Juror No. 0952, if you'd take the seat.

11                    Juror No. 225, please stand.

12                    Juror No. 1016, I'm going to ask you to take that

13       seat.

14                    Juror No. 1197, please stand.

15                    I'm sorry.  Give me one second.

16                    Actually, I'm going to ask Juror No. 0942 to

17       please stand.  Thank you.

18                    Juror No. 0517, you're going to take Seat 13.

19                    Juror No. 1197, please stand again.  Thank you.

20                    I'll have Juror No. 0764 take that seat.

21                    Your Honor, the replacement seats have been

22       mentioned at this time.

23                    (Counsel confer privately.)

24                    THE COURTROOM DEPUTY:  Juror No. 757, please

25       stand.
```

```
1              Juror No. 760, please take that seat.

2              Juror No. 1023, please stand.

3              Juror No. 505, please take that seat.

4              Ladies and gentlemen, these are the selected

5      panel.

6              THE COURT:  Counsel?

7              (Whereupon, the following proceedings were had at

8      sidebar outside the presence of the jury:)

9              THE COURT:  All right.  This is your jury.  Any

10     objections at all?

11             MR. BERKOWITZ:  No, your Honor.

12             MR. KEILTY:  No, your Honor.

13             THE COURT:  Thank you.

14             (Whereupon, the following proceedings were had in

15     open court:)

16             THE COURT:  Okay, ladies and gentlemen.  If you

17     are not seated in the jury box here or in the first two rows

18     of the gallery on my right side, you will be excused.  If

19     the jury office is still open -- I'm not sure that it is.

20             Ms. Jenkins, what would you like them to do?

21             THE COURTROOM DEPUTY:  Ladies and gentlemen, you

22     all can leave for the day.  I will notify the jury office.

23     Please call tomorrow after hours -- I mean, after hours to

24     figure out further service.

25             THE COURT:  Ladies and gentlemen, thank you very
```

1    much for your service.  Picking a jury is more of an art

2    than a science.  These folks have put a lot of time and

3    effort into this.  You should take nothing from the fact

4    that you are being excused.

5            Thank you very much for your service, and have a

6    good day.

7            (Whereupon, the unselected members of the

8    prospective jury panel exited the courtroom at 5:10 p.m. and

9    the following proceedings were had:)

10           THE COURT:  All right, ladies and gentlemen.  As

11   you may have guessed, you are our jury.  If you could all

12   please stand and raise your right hands to be sworn in.

13           (Whereupon, the jury was duly sworn and

14   impaneled.)

15           THE COURTROOM DEPUTY:  Thank you.  You may be

16   seated.

17           THE COURT:  All right, ladies and gentlemen.

18   We're going to excuse you for the day and ask you to come

19   back by 9:00 a.m. tomorrow morning and to check in in the

20   courtroom where you've been taking your breaks.  That will

21   be your break room and ultimately the jury deliberation

22   room.

23           I will emphasize to you the instruction that I

24   gave you last week about not doing any independent research

25   about the case, not discussing the case with anyone,

1    including the members of the jury.  You all may not discuss

2    the case with each other until all of the evidence is in and

3    I invite you to retire for your deliberations at the end of

4    the case.

5           We'll come back tomorrow morning at 9:00 a.m.  I

6    will give you a brief set of preliminary instructions just

7    as a roadmap for what to expect in the case and some of the

8    ground rules that we will follow.  That will be followed by

9    the parties' opening statements in the case.  All right?

10          I know this has been a long day.  Thank you for

11   your patience.  Go home.  Get a good night's sleep and come

12   back ready to work tomorrow morning.

13          (Whereupon, the jury exited the courtroom at 5:12

14   p.m. and the following proceedings were had:)

15          THE COURT:  Please be seated.

16          Thank you, Ms. Franklin.

17          Who do we expect tomorrow?

18          MR. KEILTY:  Your Honor, I would expect that the

19   Government's first witness would be Special Agent Martin,

20   the expert, followed by Special Agent Hellman, Debbie Fine,

21   Marc Elias, Steve DeJong.  I highly doubt we'll get much

22   past there.

23          THE COURT:  That's fine.

24          MR. KEILTY:  I want to --

25          THE COURT:  On Martin, there's a pending

1        scope-of-the-expert-testimony motion.  So I'll need to

2        resolve that before he testifies?

3                   MR. KEILTY:  Yes, your Honor.

4                   Your Honor, just to flag one more issue for you:

5        Unfortunately, one of our witnesses, Jared Novick, has come

6        down with COVID.  So our understanding is that per the CDC

7        guidelines he'll be able to travel on Thursday morning.  So

8        we'll have to push him to the latter part of the

9        Government's case in chief.

10                  THE COURT:  Okay.

11                  MR. KEILTY:  I just wanted to flag that issue for

12       the Court.

13                  THE COURT:  On that issue, folks, we're now in the

14       same pod.  The case numbers in D.C. have been increasing.

15       Fortunately, folks don't seem to be getting as sick or going

16       to the hospital, but it's really out there.  So now that

17       we're in the pod, be careful what you do outside of the

18       courtroom, because we could end up having to take a break or

19       even worse.

20                  MR. KEILTY:  Yes, your Honor.

21                  Your Honor, there was the issue of Mr. Steele, the

22       issue of...

23                  THE COURT:  So for the Steele issue and the

24       scope-of-the-expert-testimony issue, we'll give you some

25       guidance on both of those in the morning before openings.

```
 1                    How long do you think you need?

 2                    MR. KEILTY:  For openings, your Honor?

 3                    THE COURT:  Yes.

 4                    MR. KEILTY:  Twenty minutes, approximately, your

 5         Honor.

 6                    THE COURT:  And who will be giving the opening?

 7                    MR. KEILTY:  Ms. Shaw.

 8                    THE COURT:  And, Mr. Berkowitz, about the same

 9         amount?  Mr. Bosworth?

10                    MR. BOSWORTH:  I think we'd go a little longer,

11         roughly 30 to 40 minutes.

12                    THE COURT:  Again, I try not to put people on the

13         clock, but I do hold you to your estimates.

14                    Anything else?

15                    MR. BERKOWITZ:  I have one or two items.

16                    THE COURT:  Sure.

17                    MR. BERKOWITZ:  Marc Elias is up for tomorrow.  As

18         you know, there are probably going to be privilege issues

19         associated with his testimony.  We understand from talking

20         to the privilege holders that they would hew to the

21         assertions that were in his grand jury, and we're going to

22         try and work with that.  The questions he answered there

23         would be on limits.  To the extent that there are related

24         ones, we think we're okay with them.

25                    I would like to do all we can not to have somebody
```

1      pop up from the gallery and object on privilege.  And to the

2      extent that Government counsel has not already conferred

3      with those folks, if they're going to go off of that.

4                THE COURT:  That sounds fine.  I haven't read his

5      grand jury testimony.  What were the basic guardrails?

6                MR. BERKOWITZ:  As best I can tell, your Honor --

7      and we'll provide you a copy tomorrow morning for sure --

8      the guardrails seem to be that if he was communicating

9      substance to or receiving substance from one of the

10     privilege holders asserting a privilege, but a topic that

11     was covered not necessarily or a direction -- a failure to

12     do something or a direction not to do it was not viewed as

13     privileged.

14               THE COURT:  Well, you obviously have the benefit

15     of the Court's ruling on the privilege log documents.

16               MR. BERKOWITZ:  Yes.  For sure.  I don't think

17     there was anything inconsistent.

18               THE COURT:  All right.

19               MR. BERKOWITZ:  And exchanging of opening slides

20     tomorrow morning, you said?

21               THE COURT:  That's fine.  That's fine.

22               So we'll expect you here at 8:30.  I'll be

23     available at 8:30 and we can go over any preliminary matters

24     then.

25               MR. DeFILIPPIS:  Your Honor, just one or two other

1   matters.

2           The motion that was filed by counsel for

3   Mr. Lichtblau in *The New York Times*, the Government's

4   working on a response.  We want to get that one right;

5   however, it involved some issues of institutional

6   importance.

7           We've spoken to the defense and the defense has

8   spoken to counsel for Mr. Lichtblau.  They would both

9   consent to a two-day adjournment of our deadline to file our

10  response if Mr. Lichtblau's counsel could do either a reply

11  or an oral argument on that.  So we wanted to move the Court

12  for that and see if the Court would be amenable to that.

13          THE COURT:  That's fine.

14          MR. DeFILIPPIS:  Thank you, your Honor.

15          THE COURT:  It's been a long day.  Get a good

16  night's sleep.  We'll see you in the morning.

17          (Proceedings concluded.)

18

19

20

21

22

23

24

25

1                                **CERTIFICATE**

2

3                    I, LISA EDWARDS, RDR, CRR, do hereby

4       certify that the foregoing constitutes a true and accurate

5       transcript of my stenographic notes, and is a full, true,

6       and complete transcript of the proceedings produced to the

7       best of my ability.

8

9

10                    Dated this 16th day of May, 2022.

11

12                    /s/ Lisa Edwards, RDR, CRR
                      Official Court Reporter
13                    United States District Court for the
                        District of Columbia
14                    333 Constitution Avenue, Northwest
                      Washington, D.C. 20001
15                    (202) 354-3269

16

17

18

19

20

21

22

23

24

25