```
 1                IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF COLUMBIA
 2
        - - - - - - - - - - - - - - - x
 3      THE UNITED STATES OF AMERICA,
                                        Criminal Action No.
 4                    Plaintiff,        1:21-cr-00582-CRC-1
                                        Thursday, May 26, 2022
 5      vs.                             9:12 a.m.

 6      MICHAEL A. SUSSMANN,

 7                    Defendant.
        - - - - - - - - - - - - - - - x
 8

 9      _____

10                     TRANSCRIPT OF JURY TRIAL
             HELD BEFORE THE HONORABLE CHRISTOPHER R. COOPER
11                     UNITED STATES DISTRICT JUDGE
        _____
12
        APPEARANCES:
13
        For the United States:    ANDREW DeFILIPPIS, ESQ.
14                                 JONATHAN EDGAR ALGOR, IV, ESQ.
                                   MICHAEL T. KEILTY, ESQ.
15                                 BRITTAIN SHAW, ESQ.
                                   SPECIAL COUNSEL'S OFFICE
16                                 145 N Street Northeast
                                   Washington, DC 20002
17                                 (212) 637-2231

18      For the Defendant:        SEAN M. BERKOWITZ, ESQ.
                                   MICHAEL BOSWORTH, ESQ.
19                                 CATHERINE YAO, ESQ.
                                   NATALIE HARDWICK RAO, ESQ.
20                                 LATHAM & WATKINS LLP
                                   1271 Avenue of the Americas
21                                 New York, NY 10020
                                   (212) 906-1200
22

23      Court Reporter:           Lisa A. Moreira, RDR, CRR
                                   Official Court Reporter
24                                 U.S. Courthouse, Room 6718
                                   333 Constitution Avenue, NW
25                                 Washington, DC  20001
                                   (202) 354-3187
```

1                    P R O C E E D I N G S

2            THE COURT:  Okay.  Good morning, everyone.  Why

3    don't you enter your appearances.

4            MR. DeFILIPPIS:  Good morning.

5            THE COURTROOM DEPUTY:  Your Honor, we're back on

6    the record for Criminal Case 21-582, *United States of*

7    *America vs. Michael Sussmann*.

8            MR. DeFILIPPIS:  Good morning, Your Honor; Andrew

9    DeFilippis for the United States.  With me at counsel table

10   are Jonathan Algor, Michael Keilty, and Brittain Shaw.

11           THE COURT:  Good morning, everybody.

12           MR. BERKOWITZ:  Good morning, Your Honor; Sean

13   Berkowitz, Michael Bosworth, Natalie Rao, and Catherine Yao

14   on behalf of Mr. Sussmann, who is present in court.

15           THE COURT:  Good morning.

16           All right.  A couple of housekeeping matters.

17   Juror No. 14 reported last night that she was ill and is

18   still not feeling well this morning so will not be

19   reporting.  Fortunately she tested negative for COVID, so I

20   don't think that is an issue.  So without objection, I would

21   dismiss Juror No. 14 from the jury.

22           MR. DeFILIPPIS:  No objection, Your Honor.

23           MR. BERKOWITZ:  No objection, Your Honor.

24           THE COURT:  Okay.  Juror No. 14 is dismissed from

25   the jury.

1          Okay.  So I understand from counsel that the

2     defense will not be calling Mr. Sussmann; is that correct?

3          MR. BERKOWITZ:  That is correct, Your Honor.

4          THE COURT:  Okay.  Would you like me to inquire

5     briefly?

6          MR. BERKOWITZ:  Sure.

7          THE COURT:  Mr. Sussmann, as I'm sure you know,

8     every criminal defendant has a right to testify, but also a

9     right not to testify.  That is an important right, and it is

10    important that defendants speak with their counsel and

11    review the pros and cons of that decision.

12          Have you spoken with Mr. Berkowitz and

13    Mr. Bosworth and the rest of your team about that decision?

14          THE DEFENDANT:  I have, Your Honor.

15          THE COURT:  And you've chosen not to testify?

16          THE DEFENDANT:  Yes, I have, Your Honor.

17          THE COURT:  Okay.  Anything else, Mr. Berkowitz?

18          MR. BERKOWITZ:  No.

19          THE COURT:  All right.

20          THE DEFENDANT:  Thank you.

21          THE COURT:  Thank you.

22          Okay.  With that, I think we had left on the table

23    certain redactions that were contingent upon the decision of

24    the defendant to testify or not regarding Mr. Elias's

25    testimony from last week.

1          MR. BERKOWITZ:  Correct.

2          THE COURT:  And the Court will essentially strike

3     the questions and answers that were elicited on that topic.

4     And I'll tell you what, I will just call out the transcript

5     line numbers that I've identified, and you guys can write

6     this down.  And if you think that I'm wrong, you can come

7     back, but it's just to save time.

8          This is from Page 760, Line 22, "Answer:  I think

9     you'd have to ask Mr. Sussmann."  That will be redacted from

10    the transcript.

11         Line 24, starting with "but like 'on behalf of' is

12    kind of like a subjective intent thing" through Line 25,

13    that will be redacted, and that was from Mr. DeFilippis's

14    direct examination.

15         And then on redirect, I believe the only thing --

16    there were a number of objections that were sustained.  You

17    wouldn't be referring to those in closing, but then on Line

18    15 of Page 769, starting "other than by asking them" and the

19    answer, "I was going to say ask him," and that's from Lines

20    15 through 17, that will be redacted.

21         And I believe that's it.  So if there's -- if you

22    think it should be more or less, check the transcript, and

23    let me know before closing argument.  Okay?

24         MR. BERKOWITZ:  Yes, Your Honor.  And there was --

25    and we have not previously identified this -- I believe a

1    statement from Mr. Baker that also said "you'd have to ask

2    Mr. Sussmann," or words to that effect.  We can identify the

3    line number of that.

4             THE COURT:  Only -- you asked to redact this

5    because you might excerpt it in closings.  If you're not

6    going to excerpt the Baker testimony -- I vaguely remember

7    that.  It was kind of a nothing burger.

8             MR. BERKOWITZ:  If we get an agreement that

9    they're not going to put that up in closing, then we don't

10   need to do anything more.

11            MR. DeFILIPPIS:  We will not, Your Honor.

12            THE COURT:  Okay.  So we don't need to redact

13   anything from that.  All right.

14            Okay.  So how does this affect our schedule?

15            MR. BERKOWITZ:  So we have -- just to tee up, we

16   have about 19 or 20 exhibits that we have conferred with the

17   government on that we would put in but not publish, Your

18   Honor.  And I'm happy to read those now or in front of the

19   jury; however you want to do it.  We're not intending to

20   publish them, but they would be available to use in argument

21   and closing.

22            THE COURT:  Why don't we do that now.

23            MR. BERKOWITZ:  All right.  Mr. Sussmann moves

24   into evidence Government Exhibit 279 and Government Exhibit

25   554, and also Defense Exhibits 29, 31, 36, 200, 300, 301,

1     302, 307, 405, 440, 516, 519, 818, 824, 825, 829, and 830.

2              THE COURT:  Any objection?

3              MR. DeFILIPPIS:  No objection.

4              THE COURT:  So moved.

5              MR. BERKOWITZ:  There is a stipulation that we

6     have agreed on relative to Mr. Joffe that's essentially one

7     paragraph as well as an exhibit that I expect we would read

8     to the jury.

9              THE COURT:  Okay.

10             MR. BERKOWITZ:  And there's just one other issue.

11    We had proposed last night to the government two specific

12    impeachments of Mr. Baker based on 302 statements that

13    contradict.  We're not going to get into any others, but two

14    statements.  And we informed the prosecution.

15             They object, and they also would -- and I don't

16    want to speak for them, but would want to cross-examine

17    agents about more than just the lines of their notes, which

18    we would object to other than saying "did you write this,"

19    which would be contradictory under 613.

20             So if a witness testified -- Mr. Baker testified,

21    for example, "I disagree with that statement," we would want

22    to put in just the sentence in the note that would

23    contradict his testimony.

24             THE COURT:  Okay.  You lost me.  These would be --

25    are you calling Mr. Baker in your rebuttal case?  No.

1          MR. BERKOWITZ:  I'm sorry, let me try and do it

2     really -- Mr. Baker testified to the sky is blue, for

3     example.

4          THE COURT:  Right.

5          MR. BERKOWITZ:  I'll give you the specifics.  He

6     said the sky is not blue in an interview with the FBI and

7     denied that statement.  You know, "Did you say this to the

8     FBI?"

9          "I disagree with that.  I don't recall making that

10    statement here today.  It's my testimony today that the sky

11    is blue."

12          And we would like to put into evidence that in the

13    FBI Report of Interview on a particular day he said, "the

14    sky is not blue" under 613.

15          THE COURT:  Did you cross him on that when he was

16    on the stand?

17          MR. BERKOWITZ:  I did.  I have the --

18          THE COURT:  Okay.

19          MR. BERKOWITZ:  I have the specific portions.

20          THE COURT:  And so what's the issue with raising

21    that on cross -- I mean, raising that in closings?

22          MR. BERKOWITZ:  I don't know that the impeachment

23    is perfected, but that's what was actually written in the

24    report.

25          THE COURT:  So you need a ruling on that before

1   cross based on whether it was -- whether the courtroom

2   testimony was, in fact, inconsistent with the prior

3   statement?

4           MR. BERKOWITZ:  Yes.  And I can provide you with

5   the --

6           THE COURT:  Please do.

7           MR. BERKOWITZ:  And then that literally would be

8   it, Judge.

9           THE COURT:  But this doesn't take place before the

10  jury.

11          MR. BERKOWITZ:  If you agree -- and I know -- I

12  want to give you an opportunity to do this; I'm sorry we

13  didn't file anything -- that the 302 will be inconsistent

14  and would be allowable under 613, I think that it would need

15  to be done before the jury.  We would propose to either do

16  it in a stipulation or just give them that portion of the

17  relevant 302.

18          The government has said, just in the interest of

19  full disclosure, they would want us to call the agents and

20  have the agents explain more about what they wrote or

21  something, which we would object to because it's really a

22  discrete tack now.  So that's the issue, Judge.

23          THE COURT:  But the 302 doesn't come into

24  evidence.  You would just --

25          MR. BERKOWITZ:  What I would say -- certainly the

1     entire 302 would not come into evidence.  Either the -- we

2     would propose either the sentence that would come into

3     evidence.

4               THE COURT:  Okay.

5               MR. BERKOWITZ:  We would stipulate that that's

6     what they wrote, and leave it at that.  If there's any

7     portion that they would want, under the Rule of

8     Completeness, to suggest that later in the interview he said

9     something different, we would consider it.  But that's the

10    issue.

11              THE COURT:  Okay.

12              MR. DeFILIPPIS:  Your Honor, the government's

13    position here, as a preliminary matter, is that this all

14    could have and should have been done when Mr. Baker was on

15    the stand.  There was direct and redirect on this very

16    point.  So we are not prepared to enter a stipulation as to

17    what the testimony of the two investigators would be.

18              If the defense's position is that they would call

19    those investigators, we're not going to oppose their

20    testimony, but we don't think it's appropriate to simply, in

21    hindsight or retroactively, put a 302 into evidence before

22    the jury.  We think that -- if this has to be done, we think

23    that the appropriate course is to have them testify.

24              And we, you know, want to reserve our ability,

25    depending on how the direct goes, to cross on issues that we

1    think fall within the proper scope.

2            THE COURT:  The direct of the hypothetical agents,

3    if they were to be called?

4            MR. DeFILIPPIS:  Yes, Your Honor.

5            THE COURT:  Okay.  Well, let me review this back

6    in chambers and give you a ruling.

7            MR. BERKOWITZ:  And, Your Honor --

8            THE COURT:  So you need a ruling on this before

9    you close, obviously.

10           MR. BERKOWITZ:  That's the only outstanding issue.

11           THE COURT:  Yes.

12           MR. BERKOWITZ:  There are two cases I can cite to

13   you, if you want to take a look.  *United States vs. McGill*,

14   815 F.3d 846 at 907, which is a D.C. Circuit case; and

15   *U.S. v. Fonseca*, 435 F.3d 369 at 375.

16           THE COURT:  Okay.  Are the agents available to be

17   called?

18           MR. DeFILIPPIS:  They are, Your Honor.  We have

19   them just outside the courtroom.  We didn't want them to

20   hear this proceeding.

21           THE COURT:  Okay.  And if the Court's ruling is

22   you need to call the agents, would you call the agents?

23           MR. BERKOWITZ:  I believe that we would subject to

24   understanding what the scope of cross would be on "Is this

25   what is written in your report?"  I don't know -- I don't

1    want to get into, Your Honor, an extensive rehashing of

2    their entire investigation or even other things that are

3    unrelated to this that were said in the 302.

4           If the agents say "I might have made a mistake,"

5    that's obviously fair game.  I don't know what they would

6    say.  But I really would want to understand what the scope

7    is because I don't want to open a can of worms.  I really

8    just want to ask them that one question.

9           THE COURT:  Okay.

10          MR. BERKOWITZ:  But I would call --

11          THE COURT:  All right.  Putting this aside,

12   whatever the outcome after I read this and the cases, which

13   should not take long one way or the other, you would close.

14          No rebuttal case, I take it.

15          MR. DeFILIPPIS:  No, Your Honor.

16          THE COURT:  The government would close.

17          We are close to a proposed set of final

18   instructions.  I have some questions on a couple of the

19   instructions that I want a little more information on from

20   you all, but we could certainly get the instructions

21   finalized this morning and read to the jury midday.

22          Would the government be prepared to close after

23   that, or not?  And I know that the schedule that we

24   contemplated was Friday, and so I would give you the choice

25   of closing this afternoon or first thing in the morning.

1          MR. DeFILIPPIS:  Your Honor, we did discuss this

2     with defense, and I think the parties' preference would be

3     to do it on Friday as opposed to today.

4          THE COURT:  Okay.  As I indicated earlier, you're

5     going to lose me at about 2:30 on Friday.  And just doing

6     the math on the timing, I think if we're at an hour and a

7     half, hour and 40 minutes or so for both sides, that should

8     be enough time, considering breaks.  If we're at two hours,

9     that implicates the lunch hour and breaks.  And I also have

10    a set of, you know, standard sort of final instructions to

11    them about how to, you know, go about their deliberations.

12    That's another ten minutes.

13         I think anything more than about an hour and 40

14    will intrude on that 2:30 hard stop.

15         MR. BERKOWITZ:  In that regard, Judge, just for

16    your consideration as you go back and think about it, I

17    don't know what you've thought about relative to us closing,

18    you charging them, and then dismissing them for the long

19    weekend and having to come back as opposed to doing it

20    Tuesday morning, which I know may or may not be ideal.  But

21    there is some concern, at least, with doing the closings and

22    then saying, "Have a good weekend.  You can come back and

23    start deliberating."

24         THE COURT:  Well, what I would imagine is -- you

25    know, you're not going to have me, but to let them

1    deliberate, if they want, Friday afternoon.  I doubt if they

2    would be in a position to render a verdict in that amount of

3    time, but to say that if there is a note, it would -- you're

4    going to have to wait until Tuesday for it to be answered;

5    or in the event a verdict is reached on Friday, you would

6    have to wait until Tuesday to present it to the Court.

7         MR. DeFILIPPIS:  And, Your Honor, would -- is it

8    your practice to give one set of instructions all before, or

9    is there certain instructions before and certain after the

10   argument?

11        THE COURT:  All of the, you know, standard

12   instructions and the substantive instructions on the charge

13   will be done before.

14        And then I will just tell them, you know, only

15   communicate with me through a note; this is how you should

16   go about selecting your foreperson; you know, don't tell me

17   how you've split in any way; how to send out a note; how to

18   go" -- you know, the standard deliberation-related

19   instructions.  That will be the last thing they hear.  Okay?

20        MR. BERKOWITZ:  Thank you, Your Honor.

21        THE COURT:  All right.  So let me consider this.

22   Then we'll come back, bring the jury out, and go from there.

23   All right?

24        (Recess taken)

25        THE COURT:  All right.  I've read the information

1    the defense handed up as well as the cases.  I would agree

2    that the excerpts from the 302 are admissible as evidence of

3    a prior inconsistent statement under 613(b).  The

4    impeachment should have been completed while Mr. Baker was

5    on the stand.

6            I would ordinarily, given the number of witnesses

7    and everything that's gone on in this trial, just go ahead

8    and admit it nonetheless, but to the extent there is an

9    issue as to whether the agents wrote down the statement

10   properly and the agents are here, why don't we call them for

11   a limited direct and cross simply about the accuracy of

12   those statements in the 302.

13           Fair enough?

14           MR. DeFILIPPIS:  Your Honor, I think, if you're

15   going to allow the admission of the 302s, I think we --

16           THE COURT:  Well, the excerpts and any other

17   excerpts under the Rule of Completeness that you would like

18   to propose.

19           MR. DeFILIPPIS:  So I think first defense informed

20   us at the break that they wouldn't seek to call Mr. Fuhrman.

21   As to the second --

22           THE COURT:  Also, are we just talking about the

23   first statement about whether he would have taken the

24   meeting?

25           MR. DeFILIPPIS:  Yes, that's the only one at issue

```
 1    now.
 2              THE COURT:  Okay.
 3              MR. DeFILIPPIS:  And if Your Honor's ruling is
 4    that the 302 can come in on that, then I think we would not
 5    require testimony.
 6              THE COURT:  Okay.  And are we agreed as to what
 7    excerpt from the 302 would be admitted?
 8              MR. DeFILIPPIS:  Your Honor, if we could just let
 9    you know soon just on the exact portions?  But we'll reach
10    an agreement.
11              THE COURT:  Okay.  And I would also say that this
12    obviously goes to a central issue in the case so I think
13    it's important that the jury hear.  Okay?
14              MR. DeFILIPPIS:  Thank you, Your Honor.
15              (Pause)
16              MR. BERKOWITZ:  So, Your Honor, we've reached an
17    agreement.
18              What I intend to do is I will read the Joffe
19    stipulation, and then I will publish a portion of the 302.
20    So the date of the 302 -- and it's not a 302; I think it's a
21    Report of Investigation -- as well as redact other than this
22    excerpt paragraph, which we've agreed to, and I will read in
23    that this is -- these are notes of an interview taken by a
24    Department of Justice investigator of Mr. Baker on March 4,
25    2022, and then I will read them.
```

```
 1              THE COURT:  Okay.  And so the actual document will
 2     not be marked?
 3              MR. BERKOWITZ:  I would like to mark the redacted
 4     document -- I think we agreed to that -- and publish it.
 5     We'll mark it as 832.
 6              THE COURT:  And it will go back?
 7              MR. BERKOWITZ:  Correct.
 8              THE COURT:  I think 613(b) permits that.
 9              MR. DeFILIPPIS:  That's fine, Your Honor.
10              THE COURT:  Okay.
11              MR. BERKOWITZ:  We'll get that.
12              THE COURT:  All right.  I think we're ready for
13     our jury, finally.
14              (Jury enters courtroom)
15              THE COURT:  Okay.  Please be seated, everybody.
16              All right.  Good morning, everyone.  Thank you
17     very much for your patience.  We've had to resolve a couple
18     of legal issues this morning, which is why it's taken some
19     time, but I think that we have streamlined the case
20     somewhat.
21              Before I talk about the schedule, you will notice
22     that Juror No. 14 from the back row is not with us today.
23     She has not been feeling well, and we have excused her from
24     the jury for that reason.  You can rest assured that she has
25     tested negative for COVID; but if that were to change, we
```

1    will let you know.  Okay?

2            So we're just going to proceed apace.  That is why

3    we select alternate jurors, for contingencies like this.

4    All right?

5            Mr. Berkowitz.

6            MR. BERKOWITZ:  Thank you, Your Honor.  I have a

7    stipulation and one document to read, and then we'll be

8    done.

9            "It is hereby stipulated and agreed by and between

10   the undersigned parties as follows:

11           "Paragraph 1.  Rodney Joffe and certain companies

12   with which he was affiliated, including officers and

13   employees of those companies, have provided assistance to

14   and received payment from multiple agencies of the United

15   States government.  This has included assistance to the

16   United States intelligence community and law enforcement

17   agencies on cyber security matters.  Certain of those

18   companies have maintained contracts with the United States

19   government resulting in payment by the United States of tens

20   of millions of dollars for the provision of, among other

21   things, Domain Name System ('DNS') data.  These contracts

22   included classified contracts that required company

23   personnel to maintain security clearances.

24           "Paragraph 2.  This stipulation marked as Defense

25   Exhibit 831 is admissible in evidence at trial."

1          THE COURT:  Very well.

2          By now you all know what stipulations are, and

3    that will be sent back to the jury.

4          MR. BERKOWITZ:  And I would ask to publish, just

5    for the Court and counsel, Defense Exhibit 832 for

6    identification, and, if appropriate, I will move it into

7    evidence.

8          MR. DeFILIPPIS:  No objection.

9          THE COURT:  So moved.

10         MR. BERKOWITZ:  These are notes of the DOJ

11   investigator of an interview with Mr. Baker on March 4,

12   2022, who was interviewed at his residence.  And the notes

13   read in pertinent part as follows:

14         "Baker said that he was prompted to take the

15   meeting requested by Sussmann in the 9/18/2016 text message

16    for two reasons:  first, because Sussmann's text request on

17   9/18/2016 specifically refers to the subject matter as

18   'time-sensitive' and 'sensitive'; and second, because Baker

19   trusted Sussmann.  Baker does not believe that the fact that

20   Sussmann stated specifically in his text message that he was

21   acting on his own and not for a client factored heavily into

22   his decision to meet with Sussmann the very next day.  Baker

23   said he would ordinarily have met with Sussmann on the basis

24   of mutual trust and Sussmann's claim of the sensitivity of

25   the issue.  It was the perception of sensitivity that

1    prompted Baker to make and schedule time right away for the

2    Sussmann meeting.  Otherwise, according to Baker, he would

3    have asked his executive assistant to schedule a routine

4    meeting with Sussmann."

5              Thank you.  You can take that down.

6              And with that, the defense would rest its case,

7    Your Honor.

8              THE COURT:  Very well.

9              Mr. DeFilippis?

10             MR. DeFILIPPIS:  Nothing from the government, Your

11   Honor.

12             THE COURT:  Does the government rest?

13             MR. DeFILIPPIS:  Yes, Your Honor.

14             THE COURT:  Okay.  Ladies and gentlemen, as you've

15   heard, the defense has rested.  The government has also

16   rested its case.  It will not be calling a rebuttal --

17   putting on a rebuttal case, so at this point all of the

18   evidence is now in.

19             As you may recall from sort of the outline of the

20   trial that I gave you early last week, the next phase of the

21   case is jury instructions.

22             Now, because things have gone a little bit more

23   quickly than we anticipated, I have not had an opportunity

24   to meet with both sides and to go over the instructions and

25   to give each side an opportunity to object or to suggest

1    changes to the instructions that I will give you, and so we

2    need an opportunity to do that this morning.

3              Once we have done that, we will instruct you.

4    That should take probably about an hour usually.  And the

5    law requires me to read the instructions to you, which I

6    will do.

7              Because the schedule has been accelerated

8    somewhat, these folks had planned on giving their closing

9    arguments tomorrow, and they've requested that they still be

10   allowed that time to prepare their arguments, and I have

11   granted that.  So we will then have closing arguments first

12   thing tomorrow morning.  And hopefully the added time will

13   give the parties an opportunity to organize the evidence and

14   to hone their arguments in a crisp and efficient fashion so

15   that we can get that done promptly tomorrow morning, and

16   then you will either start your deliberations tomorrow

17   afternoon or, depending, in part, upon what you all want to

18   do, Tuesday morning.  All right?

19             So why don't we -- we will release you for about

20   an hour, but please be prepared to come back in an hour, and

21   we will see where we are.  I'm not sure how many disputes

22   there may be, so it may take a little longer than that, but

23   why don't we plan on being back here in one hour.

24             No discussions about the case.  No research about

25   the case.

```
 1                (Jury exits courtroom)

 2           THE COURT:  All right.  Have a seat.

 3           All right.  Before we give you all a set of

 4      proposed final instructions, I had a couple of questions.

 5      Do you all have the instructions in front of you?

 6           I guess the first one, in Joint Requested

 7      Instruction No. 2, which is a summary of the allegations,

 8      the instruction says that the indictment alleges that on or

 9      about September 19, 2016, Mr. Sussmann, et cetera, and that

10      he stated to the general counsel of the FBI that he was not

11      acting on behalf of any client.

12           I guess the overall issue is whether the jury can

13      convict on only the statement in the meeting or on the

14      statement in the text message the night before.  This

15      instruction would appear, because it's on or about September

16      19th, to include both statements, but I think that should be

17      made clear to the jury.  And if it's only the second

18      statements, then I would suggest saying "namely that

19      Mr. Sussmann stated to the general counsel of the FBI in a

20      meeting or in a meeting on September 19th that he was not

21      acting on behalf of any client."

22           MR. ALGOR:  We would agree with that, Your Honor.

23           THE COURT:  Okay.  Good.

24           MR. BOSWORTH:  Your Honor, respectfully, I think

25      we don't agree with that.
```

1          The defense's position is that the government, in

2     its opening statement, made clear that the statement that

3     they were focusing on, the alleged false statement, was the

4     statement made at the meeting with Jim Baker.

5          THE COURT:  That's what they just agreed to.

6          MR. BOSWORTH:  Then respectfully we agree.

7          THE COURT:  Okay.  So we will revise that to make

8     clear that the charge relates to the meeting.  And should we

9     leave the "on or about" language?  Because it's "on," it's

10    not "about," right?

11         And usually there's an "on and about" instruction

12    which says that it doesn't have to be the exact date, but

13    here we're talking about an exact date.

14         MR. ALGOR:  I think with Your Honor's -- the way

15    you had actually just explained it, it made sense to me that

16    it was referring to on September 19th.

17         THE COURT:  Okay.  So we will take "or about" out

18    of the instruction.  I could see that being the first note

19    back.

20         MR. ALGOR:  Understood.

21         THE COURT:  All right.  And the second question is

22    on the defense's request for a good faith instruction.

23    Typically, as I read the pattern instructions, that

24    instruction is usually given in a case involving an element

25    of willfulness or knowingly making a statement.  But the

```
1    question is what evidence of good faith is there now in

2    evidence to support the instruction?

3              In other words, good faith is generally a defense

4    to a knowing and willful statement provided there's evidence

5    in the record of good faith.

6              MR. ALGOR:  Yes, Your Honor.  And this is with

7    respect, just to be clear, to Mr. Sussmann's Requested

8    Instruction No. 9?

9              THE COURT:  Yes.

10             MR. BOSWORTH:  Okay.  I think --

11             THE COURT:  Well, it could either be a separate

12   instruction or it could be an add-on to the "knowing and

13   willful" element of the charge.

14             MR. BOSWORTH:  Yes.  And so I think we agree that

15   having a stand-alone instruction is not necessary.

16             THE COURT:  Okay.

17             MR. BOSWORTH:  We do think, though, that it is

18   important to clarify that you cannot have acted willfully as

19   the law intends or means it, meaning with a bad purpose, to

20   disobey the law, if, in fact, you are acting with a good

21   faith understanding that you are not doing anything wrong.

22             So if there is a way to include language

23   clarifying that "willfully" means with a bad purpose to

24   disobey the law and that someone cannot have acted willfully

25   if they acted with, you know, good faith and no intent to
```

1    violate the law, that kind of instruction would be

2    sufficient, in our view.

3             THE COURT:  Okay.  Does the government object to

4    adding not a stand-alone instruction, but as a last sentence

5    in Joint Requested Instruction No. 7, which is the fourth

6    element, knowing and willful conduct:  "The defendant's

7    conduct is not willful if it was the result of a good faith

8    understanding that he was acting within the requirements of

9    the law"?

10            MR. ALGOR:  I'm just trying to understand.  So

11   it's basically just saying the inverse of the prior

12   sentence?  Is that --

13            THE COURT:  So the prior sentence would be "An act

14   is done willfully if it is done with an intention to do

15   something the law forbids; that is, with a bad purpose to

16   disobey the law."  And that's straight from the pattern.

17            MR. ALGOR:  Right.

18            THE COURT:  And a next sentence would be, "The

19   defendant's conduct is not willful if it was the result of a

20   good faith understanding that he was acting within the

21   requirements of the law."

22            MR. ALGOR:  Your Honor, I think that the first

23   sentence is perfectly appropriate.  I don't know why we have

24   to add the second sentence.

25            THE COURT:  Okay.

1           MR. ALGOR:  But to me it doesn't -- the first

2     sentence the jurors will understand and will have to apply,

3     and so I don't think that the second sentence really adds

4     anything.

5           THE COURT:  All right.  Well, we'll probably add

6     it, but think about whether you want to lodge an objection

7     to it, and you can raise it once you get the final

8     instructions.

9           MR. ALGOR:  Understood.

10           THE COURT:  Okay.  Those were the two questions

11     that came to mind, but we'll take it up later.  All right?

12           So it should take us 30 minutes or so, okay?

13           (Recess taken)

14           THE COURT:  All right.  Have you all had an

15     opportunity to review the instructions?

16           MR. ALGOR:  Yes, Your Honor.

17           THE COURT:  Okay.  So this is, for the record, a

18     continuation of our charge conference.

19           Let me just flag a few of the proposed

20     instructions, and then you can lodge your objections or

21     point out any typos or inaccuracies otherwise.

22           In the function of the jury instruction, the

23     defense had suggested adding political leanings to the list

24     of, you know, race, ethnic, origin, or gender considerations

25     that the jury obviously should not be influenced by.  The

1    government opposed that.  And I want -- you know, just --

2    obviously politics played a role in the evidence and relates

3    to the evidence, but, you know, it strikes me as important

4    that the jury may want to be -- we may want to remind the

5    jury that they are not to make any decisions based on

6    Mr. Sussmann's political leanings, their own political

7    leanings, and the Special Counsel's political leanings.

8              You know, should we mention something along those

9    lines?  And I'm open to your views and suggestions about how

10   to do that.

11             MR. ALGOR:  Yes, Your Honor.  We would agree with

12   the bracketed language as it is for political views; so we

13   would agree with that.

14             THE COURT:  Okay.  Political views?  Political

15   leanings?  Political affiliations?  What's the best way --

16   and should I stress it more than just that?

17             Should I tell them, look, you know, obviously

18   you've heard a lot about politics, but you shouldn't allow

19   your views or Mr. Sussmann's views or the Special Counsel's

20   views, whatever they may be, affect your decision in this

21   case?

22             MR. ALGOR:  I think that would be appropriate as

23   well.  I know you've done that during voir dire early on,

24   and so I don't think that that would be inconsistent with

25   what they've heard, but it would be a good reminder.

1          THE COURT:  Okay.

2          MR. ALGOR:  If we could just focus on this, the

3   function of the jury, I think, Your Honor, we'd also request

4   some language regarding jury nullification.  We think that

5   that's appropriate here in this case tied to the politically

6   charged -- you know, that this could be considered a

7   politically charged case.

8          In addition, obviously during trial we learned

9   about one of the jurors having a connection to the

10  defendant, and so we think that a jury nullification --

11         THE COURT:  You learned about one of the juror's

12  daughters having a connection to his daughter through some

13  team, right?

14         MR. ALGOR:  Yes.

15         THE COURT:  No personal connection, just so we're

16  clear.

17         MR. ALGOR:  Understood, Your Honor.  And, you

18  know, you went through and questioned her, and she said she

19  could be fair and impartial.

20         But regardless, we still believe that some kind of

21  language regarding jury nullification would be appropriate.

22         THE COURT:  I'm not sure what instruction it is,

23  but there's a typical instruction saying that if you find

24  that the government has met its burden, it is your

25  obligation or it's your duty to convict.  That's aimed at

1    jury nullification.

2            MR. ALGOR:  That, I think -- we can propose some

3    language, but I think that would be the core of it, yes.

4            THE COURT:  Okay.  I think it should be in there.

5    If it's not in there, I'm happy to put that instruction in

6    there because that is fairly standard.  I'm not sure if we

7    overlooked that or not.

8            I think we gave it in the preliminary

9    instructions.  It's usually in the reasonable doubt

10   instruction, I think.

11           MR. BOSWORTH:  Your Honor, we think it's in

12   Instruction 9 on Page 4.

13           THE COURT:  Right.  In Instruction 9, the burden

14   of proof instruction, it reads, "If you find that the

15   government has proved beyond a reasonable doubt every

16   element of the offense with which Mr. Sussmann is charged,

17   it is your duty to find him guilty of that offense.  On the

18   other hand, if you find the government has failed to prove

19   any element of an offense beyond a reasonable doubt, you

20   must find that Mr. Sussmann is not guilty of that offense."

21           MR. ALGOR:  Again, Your Honor, I think it --

22   consistent with the preliminary instructions, I think with

23   the function of the jury it would be helpful for that,

24   understanding that you're getting into it in burden of

25   proof.

1                But when you're talking through regarding

2       someone's race, ethnic origins, political views, that is an

3       important -- it's important to highlight that.

4                THE COURT:  So just to reiterate that concept

5       earlier on?

6                MR. ALGOR:  Yes, Your Honor.

7                THE COURT:  Okay.  I don't have any problem with

8       doing that.

9                MR. BOSWORTH:  Your Honor, briefly.  We agree the

10      language as is on political views is sufficient.  We

11      actually don't think that or wouldn't suggest the Court do

12      more to call attention to the political nature of the case.

13      I'm not sure exactly what the Court has in mind, and

14      obviously we defer to you, but we think this piece gets at

15      it.

16               On the other point that you were just discussing

17      with Mr. Algor, no objection to your flagging up front that

18      they have a duty to convict, if they prove it, and a duty to

19      acquit, if they don't.

20               THE COURT:  Okay.  We'll think about the first

21      point.

22               And on the political issue, there's also

23      Instruction No. 12, which tells them that the nature of the

24      charges should not be considered as well, so that reinforces

25      the concept some.

1          All right.  Instruction No. 19, testimony of an

2    immunized witness.  I think we had Ms. Seago in mind, but

3    I'm not sure the jury knows that she was immunized, so I

4    don't think there's a need for that instruction.  Agreed?

5          MR. ALGOR:  Yes, Your Honor, we agree.

6          THE COURT:  Okay.

7          All right.  We changed Instruction 24 consistent

8    with our earlier discussion to focus it on the meeting on

9    September 19th.

10         Okay.  On the materiality instruction, we took a

11   little bit of the government's formulation as well as a

12   little bit of the defense's formulation.

13         The defense obviously objects to the "any other

14   function" language.  Your objection is noted for the record.

15         And we included, "A statement is not material if

16   it relates to an ancillary, nondeterminative fact or to a

17   trivial detail."  That's a, you know, compilation of much of

18   the case law that was cited in the motion to dismiss order.

19         On the good faith instruction, consistent with the

20   parties' views, we did not include a separate good faith

21   defense instruction, but rather simply one sentence in the

22   knowing and willful conduct element instruction.  "The

23   defendant's conduct is not willful if it was the result of a

24   good faith understanding that he was acting within the

25   requirements of the law."

1          That's essentially a mirror of the sentence that

2     comes before.  The government has proposed yet another

3     sentence that is sort of more related to this case.  I think

4     that's a fair argument for you to make in closing, but we're

5     not going to include that.  The sentence we included is

6     right from the pattern instruction.

7          You can be heard.

8          MR. ALGOR:  Thank you, Your Honor.

9          So obviously, Your Honor, we think that the

10    additional sentence would add clarity to the jury so it's

11    not confused, you know, when it's reading this instruction

12    and then adding "good faith" behind it, which is normally

13    not a part of this instruction.

14          And in addition, we would ask that you strike the

15    word "bad."  So it would be "with a purpose to disobey the

16    law" instead of "with a bad purpose."  Obviously it's

17    specific intent, but we don't think that is -- it means evil

18    intent, and so we don't think that the word "bad" is

19    appropriate there.

20          MR. BOSWORTH:  Your Honor, on the last point

21    first, I think the parties jointly proposed the language

22    that included "bad" initially and cites, although I don't

23    have the underlying materials, the modern federal jury

24    instructions on this point.  We think "a bad purpose to

25    disobey the law" is the appropriate formulation, which the

1        government previously agreed to.

2                On the additional sentence, I think, you know,

3        we've shared the view that saying more about good faith, you

4        know, starts to veer into argument about this case and

5        oppose that.

6                THE COURT:  All right.  Let me go back to the

7        pattern and see what it says about "bad."  I think it's

8        redundant.  If the purpose is to disobey the law, then by

9        definition that's a bad purpose.  So I'm not sure that "bad"

10       is doing a lot of work, frankly, and needs to be there, but

11       let's see what the pattern says.

12               All right.  Theory of the defense.  I usually

13       always give or I do almost always give a theory of the

14       defense instruction, if the defense requests one.  This one

15       was provided, you know, some time ago, and the defense

16       reserved the right to change it so...  It's Instruction 31.

17               MR. BOSWORTH:  That's still our theory.

18               THE COURT:  Okay.  We'll instruct on that theory.

19               All right.  Anything else?

20               MR. BOSWORTH:  Your Honor, just one small point.

21               THE COURT:  Sure.

22               MR. BOSWORTH:  On Instruction No. 12, we would

23       just ask that the reference to "charges" be made singular.

24       One is enough here.

25               THE COURT:  Yes.

1          MR. BOSWORTH:  Thank you.

2          MR. ALGOR:  We have no objection.

3          THE COURT:  Yes.

4          Mr. Algor?

5          MR. ALGOR:  Your Honor, we have nothing else.

6          THE COURT:  Okay.  So we will remove the immunity

7    instruction, renumber everything, make the conforming

8    changes, and then bring the jury back and read that one.

9    All right?

10          And we'll send 12 copies back with the jury when

11    they get the case tomorrow afternoon.

12          All right.  This will take probably 10 or 15

13    minutes.

14          (Recess taken)

15          THE COURT:  All right.  On the word "bad," we

16    consulted the pattern.  It's in the pattern, so I'm just

17    going to instruct on the pattern.

18          MR. ALGOR:  Your Honor, if I could have just one

19    second?

20          THE COURT:  Sure.

21          MR. ALGOR:  It looks like in Instruction 3 that

22    you added a paragraph.  It's referencing the Special

23    Counsel, and I think in other instances you had just

24    referenced "the government," and so just to be consistent,

25    we'd ask "the government."

1          THE COURT:  That's fine.

2          MR. ALGOR:  Thank you.

3          THE COURT:  And oftentimes there may be typos in

4     the written version.  I'll try to note them as I go through.

5     If you can do the same, we can compare notes at the end.

6          (Jury enters courtroom)

7          THE COURT:  Okay.  Thank you for your patience,

8     everyone.  We have worked out our final instructions, which

9     I will now read for you.

10          Ladies and gentlemen, you have now heard all of

11     the evidence in the case.  Before you begin your

12     deliberations, I am going to instruct you on the law.  I

13     will start with some general rules of law and then talk

14     about the specific charges alleged here and some of the

15     specific issues in this case.  Some of these rules will

16     repeat what I have told you in my pre -- what I told you in

17     my preliminary instructions and some of the instructions

18     that I have given you throughout the trial.

19          I will provide each of you with a copy of my

20     instructions.  During your deliberations, you may, if you

21     want, refer to these instructions.  While you may refer to

22     any particular portion of the instructions, you are to

23     consider the instructions as a whole, and you may not follow

24     some and ignore others.  If you have any questions about the

25     instructions, you should feel free to send me a note.

1     Please leave your instructions in the jury room when you

2     conclude your deliberations.

3            As I said last week, my function is to conduct

4     this trial in an orderly, fair, and efficient manner; to

5     rule on questions of law; and to instruct you on the law

6     that applies in this case.  It is your duty to accept the

7     law as I instruct you.  You should consider all the

8     instructions as a whole.  You may not ignore or refuse to

9     follow any of them.

10           Your function, as the jury, is to determine what

11    the facts are in this case.  You are the sole judges of the

12    facts.  While it is my responsibility to decide what is

13    admitted as evidence during the trial, you alone decide what

14    weight, if any, to give to that evidence.  You alone decide

15    the credibility or believability of the witnesses.

16           You should determine the facts without prejudice,

17    fear, sympathy, or favoritism.  You should not be improperly

18    influenced by anyone's race, ethnic origin, gender, or

19    political views, including your own.  Decide the case solely

20    from a fair consideration of the evidence.

21           If you find that the government has proven its

22    case beyond a reasonable doubt, based on the evidence, it is

23    your duty to find the defendant guilty.  On the other hand,

24    if you find that the government has failed to prove any

25    element of the offense beyond a reasonable doubt, you should

1    find Mr. Sussmann not guilty.

2            You may not take anything I may have said or done

3    during the trial as indicating how I think you should decide

4    this case.  If you believe that I have expressed or

5    indicated any such opinion, you should ignore it.  The

6    verdict in this case is your responsibility and yours alone.

7            If any reference by me or any of the attorneys of

8    the evidence is different from your own memory of the

9    evidence, it is your memory that should control during

10   deliberations.

11           During the trial, I have permitted those jurors

12   who wanted to take notes to do so.  You may take your

13   notebooks with you to the jury room and use them during your

14   deliberations, if you wish.  As I told you at the beginning

15   of trial, your notes are only to be an aid to your memory.

16   They are not evidence in the case, and they should not

17   replace your own memory of the evidence.  Those jurors who

18   have not taken notes should rely on their own memory of the

19   evidence.  The notes are intended to be for the note-taker's

20   own personal use.

21           During your deliberations, you may consider only

22   the evidence properly admitted in this trial.  The evidence

23   in this case consists of the sworn testimony of the

24   witnesses, the exhibits that were admitted into evidence,

25   and the facts and testimony stipulated to by the parties.

1          During the trial, you were told that the parties

2     had stipulated, or agreed, to certain facts.  You should

3     consider any stipulation of fact to be undisputed evidence.

4          When you consider the evidence, you are permitted

5     to draw, from the facts that you find have been proven, any

6     reasonable inferences that you feel are justified in light

7     of your experience.  You should give any evidence the weight

8     that you think it is fairly entitled to receive.

9          The statements and arguments of the lawyers are

10    not evidence.  They are only intended to assist you in

11    understanding the evidence.  Likewise, the questions of the

12    lawyers are not evidence.

13         As I've explained previously, the defendant was

14    charged in this case via an indictment.  An indictment is

15    merely the formal way of accusing a person of a crime.  You

16    must not consider the indictment as evidence of any kind.

17    You may not consider it as any evidence of Mr. Sussmann's

18    guilt or draw any inference of guilt from it.

19         Every defendant in a criminal case is presumed to

20    be innocent.  The presumption of innocence remains with the

21    defendant throughout the trial unless and until the

22    government has proven he is guilty beyond a reasonable

23    doubt.  This burden never shifts throughout the trial.  The

24    law does not require Mr. Sussmann to prove his innocence or

25    produce any evidence at all.

1          If you find that the government has proved beyond
2     a reasonable doubt every element of the offense with which
3     Mr. Sussmann is charged, again, it is your duty to find him
4     guilty of that offense.
5          On the other hand, if you find the government has
6     failed to prove any element of the offense beyond a
7     reasonable doubt, you must find Mr. Sussmann not guilty.
8          Again, the government has the burden of proving
9     Mr. Sussmann guilty beyond a reasonable doubt.
10         Some of you may have served as jurors in civil
11    cases, where it is only necessary to prove that a fact is
12    more likely true than not or, in some cases, that its truth
13    is highly probable.
14         In criminal cases such as this one, the
15    government's proof must be more powerful than that.  It must
16    be beyond a reasonable doubt.
17         Reasonable doubt, as the name implies, is a doubt
18    based on reason; a doubt for which you have a reason based
19    on the evidence or lack of evidence in the case.
20         If, after careful, honest, and impartial
21    consideration of all of the evidence, you cannot say that
22    you are firmly convinced of the defendant's guilt, then you
23    have a reasonable doubt.
24         Reasonable doubt is the kind of doubt that would
25    cause a reasonable person, after careful and thoughtful

1    reflection, to hesitate to act in the graver or more

2    important matters in life.  However, it is not an imaginary

3    doubt, nor a doubt based on speculation or guesswork.  It is

4    a doubt based on reason.

5          The government is not required to prove guilt

6    beyond all doubt, or to a mathematical or scientific

7    certainty; its burden is to prove guilt beyond a reasonable

8    doubt.

9          There are two types of evidence from which you may

10   determine what the facts are in this case:  direct evidence

11   and circumstantial evidence.  When a witness, such as an

12   eyewitness, asserts actual knowledge of a fact, that

13   witness's testimony is direct evidence.  On the other hand,

14   evidence of facts and circumstances from which reasonable

15   inferences may be drawn is circumstantial evidence.

16         Let me give you an example.  Assume you look

17   outside and see snow falling.  If you testified in court

18   about what you saw, your testimony would be direct evidence

19   that it was snowing.

20         But now assume that you look outside and do not

21   see snow on the ground, and then go to sleep and wake up and

22   see snow on the ground the next morning.  Your testimony

23   about what you saw would be circumstantial evidence that it

24   had snowed overnight.

25         Both direct and circumstantial evidence are

1     acceptable means of proving a fact.  The law does not favor

2     one form over the another.  It is for you to decide how much

3     weight to give any particular evidence, whether direct or

4     circumstantial.  Circumstantial evidence does not require a

5     greater degree of certainty than direct evidence.  In

6     reaching a verdict in this case, you should consider all of

7     the evidence presented, both direct and circumstantial.

8             One of the questions that you were asked when we

9     were selecting the jury was whether the nature of the charge

10    itself would affect your ability to reach a fair and

11    impartial verdict.  I asked that question because you must

12    not allow the nature of a charge to affect your verdict.

13    You must consider only the evidence that has been presented

14    in this case in reaching a fair and impartial verdict.

15            The weight of the evidence is not necessarily

16    determined by the number of witnesses testifying for each

17    side; rather, you should consider all the facts and

18    circumstances in evidence to determine which of the

19    witnesses you believe.  You may find that the testimony of a

20    smaller number of witnesses on one side is more believable

21    than the testimony of a greater number of witnesses on the

22    other side, or you might find the opposite.

23            The lawyers in this case sometimes objected when

24    the other side asked a question, made an argument, or

25    offered evidence that the objecting lawyer believed was not

1   proper.  You must not hold such objections against the

2   lawyer who made them or the party he or she represents.  It

3   is the lawyers' responsibility to object to evidence that

4   they believe is not admissible.

5        If, during the course of the trial, I sustained an

6   objection to a lawyer's question, you should ignore the

7   question, and you must not speculate as to what the answer

8   would have been.

9        If, after a witness answered a question, I ruled

10   that the answer should be stricken, you should ignore both

11   the question and the answer, and they should play no part in

12   your deliberations.

13        The law treats prior inconsistent statements

14   differently depending on the circumstances in which they

15   were made.  I will now explain how you should evaluate those

16   statements.

17        You have heard evidence that certain witnesses

18   made a statement on an earlier occasion, and that this

19   statement may be inconsistent with his or her testimony here

20   at trial.  It is for you to decide whether the witness made

21   such a statement and whether, in fact, it was inconsistent

22   with the witness's testimony here at trial.  If you find

23   such an inconsistency, you may consider the earlier

24   statement in judging the credibility of the witness, but you

25   may not consider it as evidence that what was said in the

1    earlier statement was true.

2              You have also heard evidence that certain

3    witnesses made an earlier statement under oath, subject to

4    the penalty of perjury, at a prior proceeding before

5    Congress or before the grand jury, and that this statement

6    may be inconsistent with his or her testimony here at trial.

7              If you find that the earlier statement -- the

8    earlier sworn statement -- is inconsistent with the

9    witness's testimony here in court, you may consider this

10   inconsistency in judging the credibility of the witness.

11   You may also consider the earlier statement as evidence that

12   what was said in the earlier statement was true.

13             In determining whether the government has proved

14   the charges against the defendant beyond a reasonable doubt,

15   you must consider the testimony of all of the witnesses who

16   have testified.

17             You are the sole judges of the credibility of the

18   witnesses.  You alone determine whether to believe any

19   witness and the extent to which a witness should be

20   believed.

21             Judging a witness's credibility means evaluating

22   whether the witness has testified truthfully and also

23   whether the witness accurately observed, recalled, and

24   described the matters about which he or she testified.

25             You may consider anything that in your judgment

1      affects the credibility of any witness.  For example, you

2      may consider the demeanor and the behavior of the witness on

3      the witness stand; the witness's manner of testifying;

4      whether the witness impresses you as a truthful person;

5      whether the witness impresses you as having an accurate

6      memory and recollection; whether the witness has any motive

7      for not telling the truth; whether the witness had a full

8      opportunity to observe the matters about which he or she has

9      testified; whether the witness has any interest in the

10     outcome of the case or friendship or hostility toward other

11     people involved in the case.

12             In evaluating the accuracy of a witness's memory,

13     you may consider the circumstances surrounding the event,

14     including any circumstances that would impair or improve the

15     witness's ability to remember the event, the time that

16     elapsed between the event and any later recollections of the

17     event, and the circumstances under which the witness was

18     asked to recall details of the event.

19             You may consider whether there are any

20     consistencies or inconsistencies in a witness's testimony or

21     between the witness's testimony and any previous statements

22     made by that witness.  You may also consider any

23     consistencies or inconsistencies between the witness's

24     testimony and any other evidence that you credit.  You may

25     consider whether any inconsistencies are the result of

1   lapses in memory, mistake, misunderstanding, intentional

2   falsehood, or differences in perception.

3          Inconsistencies or disparities in the testimony of

4   a witness, or between the testimony of different witnesses,

5   may or may not cause you to discredit such testimony.  Two

6   or more people witnessing an incident or transaction may see

7   it or hear it differently.  An innocent misrecollection,

8   like a failure of recollection, is not an uncommon

9   experience.

10          In weighing the effects of the inconsistency or

11   discrepancy, always consider whether it pertains to a matter

12   of important or unimportant detail, and whether the

13   inconsistency or discrepancy results from innocent error or

14   intentional falsehood.

15          You may consider the reasonableness or

16   unreasonableness, the probability or improbability of the

17   testimony of a witness in determining whether to accept it

18   as true and accurate.  You may consider whether the witness

19   has been contradicted or supported by other evidence that

20   you credit.

21          If you believe that any witness has shown himself

22   or herself to be biased or prejudiced for or against either

23   side, you may consider and determine whether such bias or

24   prejudice has colored the testimony of the witness so as to

25   affect the desire and capability of that witness to tell the

1    truth.

2           You should give the testimony of each witness such

3    weight as in your judgment it is fairly entitled to receive.

4           A law enforcement officer's testimony should be

5    evaluated by you just as any other evidence in the case.  In

6    evaluating the officer's credibility, you should use the

7    same guidelines that you apply to the testimony of any

8    witness.  In no event should you give either greater or

9    lesser weight to the testimony of any witness merely because

10   he or she is a law enforcement officer.

11          Every defendant in a criminal trial has an

12   absolute right not to testify.  Mr. Sussmann has chosen to

13   exercise this right.  You must not hold this decision

14   against him, and it would be improper for you to speculate

15   as to the reason or reasons for his decision.  You may not

16   draw any inference of guilt from his decision not to

17   testify.

18          Early on in the case you heard the testimony of

19   Special Agent Martin, who expressed opinions concerning DNS

20   data.  If scientific, technical, or other specialized

21   knowledge might assist the jury in understanding the

22   evidence or in determining a fact in issue, a witness who

23   possesses knowledge, skill, experience, training, or

24   education may testify and state an opinion concerning such

25   matters.  You are not bound to accept this witness's

1    opinion.

2         If you find that the opinion is not based on

3    sufficient education or experience, that the reasons

4    supporting the opinion are not sound, or that the opinion is

5    outweighed by other evidence, you may completely or

6    partially disregard the opinion.  You should consider this

7    evidence with all the evidence in the case and give it as

8    much weight as you think it fairly deserves.

9         During the course of the trial a number of

10   exhibits were admitted into evidence.  Sometimes only

11   portions of an exhibit were admitted, such as portions of a

12   longer document, or a document with some words or pictures

13   blacked out or otherwise removed.  As I have explained

14   previously, there are a variety of reasons why only a

15   portion of an exhibit is admitted, including that the other

16   portions are inadmissible or implicate an individual's

17   privacy.

18        As you examine the exhibits, and you see portions

19   where there appear to be omissions, you should consider only

20   the portions that were admitted.  You should not guess as to

21   what has been taken out or why, and you should not hold it

22   against either party.  You are to decide the facts only from

23   the evidence that is before you.

24        Both the government and the defense have presented

25   exhibits in the form of charts and summaries.  I decided to

1   admit these charts and summaries in addition to the

2   underlying documents that they represent in order to save

3   time and to avoid unnecessary inconvenience.  You should

4   consider these charts and summaries as you would other

5   evidence.

6          Someone's intent ordinarily cannot be proved

7   directly because there is no way of knowing what a person is

8   actually thinking, but you may infer someone's intent from

9   the surrounding circumstances.  You may consider any

10  statement made or acts done by Mr. Sussmann and all other

11  facts and circumstances received in evidence which indicate

12  his intent.

13         You may infer, but are not required to infer, that

14  a person intends the natural and probable consequences of

15  acts he intentionally did or intentionally did not do.

16         It is entirely up to you, however, to decide what

17  facts to find from the evidence you received during this

18  trial.  You should consider all the circumstances in

19  evidence that you think are relevant in determining whether

20  the government has proved beyond a reasonable doubt that

21  Mr. Sussmann acted with the necessary state of mind.

22         Okay.  I will now turn to the specific charge in

23  this case.

24         The indictment alleges that Michael Sussmann made

25  one false statement to the Federal Bureau of Investigation

1    in violation of 18 USC 1001(a)(2).

2              Specifically, the Indictment alleges that in a

3    meeting on September 19, 2016, Mr. Sussmann did willfully

4    and knowingly make a materially false, fictitious, and

5    fraudulent statement or representation in a matter before

6    the FBI in violation of 18 USC 1001(a)(2); namely, that

7    Mr. Sussmann stated to the General Counsel of the FBI that

8    he was not acting on behalf of any client in conveying

9    particular allegations concerning Alfa-Bank and Donald

10   Trump, when, in fact, he was acting on behalf of specific

11   clients, namely Rodney Joffe or the Clinton Campaign.

12             In order to prove the defendant guilty of the

13   crime charged, the government must prove beyond a reasonable

14   doubt five separate elements, which I will now list.

15             First, that on September 19, 2016, the defendant

16   made a statement or representation;

17             Second, that the statement or representation was

18   false, fictitious, or fraudulent;

19             Third, that this statement or representation was

20   material;

21             Fourth, that the false, fictitious, or fraudulent

22   statement was made knowingly and willfully;

23             And fifth, that the statement or representation

24   was made in a matter within the jurisdiction of the

25   Executive Branch of the United States government.

1              So let's go through each of those elements.

2              The first element that the government must prove

3    beyond a reasonable doubt is that the defendant made a

4    statement or representation.

5              The second element that the government must prove

6    beyond a reasonable doubt is that the statement or

7    representation was false, fictitious, or fraudulent.

8              A statement or representation is "false" or

9    "fictitious" if it was untrue when made and known at the

10   time to be untrue by the person making it or causing it to

11   be made.  A statement or representation is "fraudulent" if

12   it was untrue when made and was made or caused to be made

13   with the intent to deceive the government agency, in this

14   case the FBI.

15             The third element the government must prove beyond

16   a reasonable doubt is that the defendant's statement or

17   representation was material.

18             A statement is material if it has a natural

19   tendency to influence, or is capable of influencing, either

20   a discrete decision or any other function of the government

21   agency to which it is addressed.  Proof of actual reliance

22   on the statement by the government is not required.

23   Accordingly, the government is not required to prove that

24   the statement actually influenced a decision or other

25   function of the FBI.

1          However, a statement is not material if it relates

2     to an ancillary, nondeterminative fact, or to a trivial

3     detail.  A statement may be relevant but not material.

4          The fourth element that the government must prove

5     beyond a reasonable doubt is that the defendant acted

6     knowingly and willfully.

7          An act is done knowingly if it is done purposely

8     and voluntarily, as opposed to mistakenly or accidentally.

9          An act is done willfully if it was done with an

10     intention to do something that the law forbids; that is,

11     with a bad purpose to disobey the law.

12          A defendant's conduct is not willful if it was the

13     result of a good faith understanding that he was acting

14     within the requirements of the law.

15          As I have told you, the fifth element with respect

16     to each count is -- or with respect to the count is that the

17     statement or representation be made with regard to a matter

18     within the jurisdiction of the Executive Branch of the

19     United States.  As I believe the parties have stipulated, I

20     will charge you that the FBI is part of the Executive Branch

21     of the United States.

22          To be within the jurisdiction of the Executive

23     Branch of the government of the United States means that the

24     statement must concern an authorized function of that

25     branch.

 1              Mr. Sussmann denies the charge against him and

 2      maintains his innocence.  He contends that the government

 3      has failed to prove beyond a reasonable doubt that, one,

 4      what Mr. Sussmann actually said to Mr. Baker; two, that the

 5      statement was false; three, that Mr. Sussmann intended to

 6      say something false; and four, that the statement was

 7      material.

 8              All right.  So with that, those are the

 9      instructions that should guide your deliberations.  We will

10      reconvene at 9:00 a.m.

11              And I will give you some final instructions after

12      closing arguments tomorrow regarding how you might approach

13      and structure your deliberations in delivering your verdict

14      and things such as that.

15              But for now, we are going to release you for the

16      remainder of the afternoon.

17              Even though all of the evidence is in and you've

18      been instructed on the law, you are still not to discuss the

19      case with anyone, including other members of the jury, or to

20      do any independent research about the case or expose

21      yourself to any press about the case.  All right?

22              So we will be on a pretty tight schedule in the

23      morning, so if you could try to be here as close to 9:00 as

24      possible.  We want to get started promptly with the closing

25      arguments.

```
1              All right.  So anything else, Counsel, before the
2    jury leaves?
3              MR. BERKOWITZ:  Nothing from the defense, Your
4    Honor.
5              MR. ALGOR:  Nothing from the government, Your
6    Honor.
7              THE COURT:  Okay.  So enjoy your afternoon, folks,
8    and we will see you back here tomorrow morning.
9              (Jury exits courtroom)
10             THE COURT:  Okay.  I caught a couple of nits, but
11   nothing significant.  Right?
12             MR. ALGOR:  Yes, Your Honor.  And I think you
13   corrected a few of them as you were reading so...
14             THE COURT:  Okay.
15             All right.  Good luck in your preparations.
16             MR. DeFILIPPIS:  Your Honor, very briefly on the
17   Elias transcript.
18             THE COURT:  Yes.
19             MR. DeFILIPPIS:  Just to confirm -- just to be
20   clear on what the Court intended to do.  At Page 769 -- I'll
21   give everyone a chance to --
22             THE COURT:  Yes, I don't have that in front of me.
23   Why don't I go get it?
24             MR. DeFILIPPIS:  Yes, sure.  Thank you, Your
25   Honor.
```

```
 1                    (Pause)
 2            THE COURT:  Have a seat.
 3            MR. DeFILIPPIS:  Yes, Your Honor, and just
 4    focusing on Page 769 of Mr. Elias's redirect.
 5            THE COURT:  Yes.
 6            MR. DeFILIPPIS:  And we can put it up on the
 7    screen, if that's helpful.
 8            THE COURT:  Okay.
 9            MR. DeFILIPPIS:  So I think, Your Honor, we spoke
10    to the defense.  What we've highlighted in -- and it may be
11    a little more than Your Honor was intending to redact, but I
12    think the parties agree that what's highlighted in pink here
13    would be the appropriate redactions.
14            THE COURT:  That's consistent with what we had.
15            MR. DeFILIPPIS:  Okay.  Great, Your Honor.
16            THE COURT:  So you can talk about the billing
17    records, but not the "other than."
18            MR. DeFILIPPIS:  Yes, not the "other than."  Thank
19    you.
20            THE COURT:  Okay.
21            Okay.  Anything else?
22            MR. BERKOWITZ:  Looking forward to seeing you
23    tomorrow, Your Honor.
24            THE COURT:  Yes.  And I think if we're in the
25    one/forty combined and one/forty, I think we should be able
```

1    to get it in by lunch, which is what I would like to try to

2    do, okay, assuming people are here on time.

3                MR. BERKOWITZ:  We'll try to be here on time.

4                THE COURT:  I figured you would be.

5                All right.  We're adjourned.  We'll see you in the

6    morning.

7                (Whereupon the hearing was

8                 adjourned at 12:24 p.m.)

9

10                  **CERTIFICATE OF OFFICIAL COURT REPORTER**

11

12               I, LISA A. MOREIRA, RDR, CRR, do hereby

13    certify that the above and foregoing constitutes a true and

14    accurate transcript of my stenographic notes and is a full,

15    true and complete transcript of the proceedings to the best

16    of my ability.

17         Dated this 26th day of May, 2022.

18

19                                    /s/Lisa A. Moreira, RDR, CRR

20                                    Official Court Reporter
                                      United States Courthouse
21                                    Room 6718
                                      333 Constitution Avenue, NW
22                                    Washington, DC 20001

23

24

25